# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (214) 434-1594
SHAWN@SHEARERLAW.PRO

---

September 12, 2017

**Via ECF**
Honorable Frederic Block, U.S.D.J.
U.S District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Barger v. First Data Corporation et al.* - Civil Action No. 1:17-cv-4869
             Plaintiff's Response to Request for Pre-Motion Conference [Docket No. 8]

Dear Judge Block:

           *"It is not down in any map; true places never are."* – Herman Melville

      Our world is electronically connected. First Data, in its 2017 SEC 10-K, states that it operates in more than 100 countries, serves over 6 million businesses and more than 4,000 financial institutions, and processes electronic payments at a rate of 2,800 transactions per second (including through its processing facilities on Long Island). First Data employs more than 24,000 employees world-wide. It was within this complex international operation that the Plaintiff was hired to transform the culture of First Data's world-wide sales force.

      Defining where any "event" happened within a corporation like First Data can be difficult. It is even more difficult when, despite Plaintiff's numerous requests for information, First Data and its counsel have refused to identify any individual who actually exercised corporate authority to terminate the Plaintiff. We may never know the exact geographic "location" of all events alleged in the Complaint. But, if a map must be applied in this case, we do know that all roads lead to First Data's office in Melville.

## Venue Legal Standards

      In analyzing whether venue is proper, substantial weight is accorded a plaintiff's choice of forum, and the court must accept all of the allegations in the complaint as true, construe all reasonable inferences in the plaintiffs favor, and view all the facts in a light most favorable to plaintiff. *Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 720 (2d Cir. 2013); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F. Supp. 918, 936 (S.D.N.Y. 1989).

      Venue can be proper in multiple districts. Venue is appropriate in each district where a substantial part of the events or omissions occurred. Venue is appropriate in a district even if a greater portion of events occurred elsewhere. *Continental Ins. Co. v. Securi Enters., Inc.*, 2010 U.S. Dist. LEXIS 94123, 2010 WL 3702559, at *2 (E.D.N.Y. 2010). "The venue standard

acknowledges the more porous borders of the electronic age, where events can be influenced anywhere in the world by fax, phone and keystroke, and recognizes that a person acting predominantly in one state can easily cause his or her acts to have effects outside the borders of that state." *Astor Holdings, Inc. v. Roski*, 2002 U.S. Dist. LEXIS 758 *22-23; 2002 WL 72936 (SDNY 2002). The question of substantiality is qualitative, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply a qualitative count of contacts. *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 432-433 (2d Cir. 2005). Where there are some acts which took place within the plaintiff's chosen forum, they are properly deemed "significant" or "substantial" if they have a "close nexus to the claims." *Id.* at 433. A "substantial part of the events or omissions" giving rise to Plaintiff's claims occurred in the EDNY, specifically Melville.

## Melville, New York

The Defendants admit that First Data is a resident of the EDNY for purpose of 28 U.S.C. §1391. First Data's office in Melville is the company's epicenter for human resources management and decisions. Worldwide human resources (including leave, records, benefits, hiring, firing, etc.) are managed from First Data's Melville office. First Data has two individuals designated as "Co-Head, Global Human Resources": Janelle Bergquist and Defendant Karen Whalen (SVP of HR). Both Ms. Bergquist and Defendant Whalen operate out of First Data's office in Melville. First Data's entire worldwide human resources functions report to Melville.

First Data admitted in its EEOC Position Statement (incorporated into the Complaint [Complaint Exhibit B]) that Defendant Whalen was intimately involved in HR's management of the Plaintiff's employment, leave, and termination. Defendant Whalen is responsible for the operation of First Data's FMLA Leave Management Team. Defendant Whalen also is First Data's resident expert and spokesperson for FMLA leave policies. In August 2016, and then in January 2017 just days after Mr. Barger received his termination notice, the Omaha World Herald eschewed local First Data HR, and instead interviewed Ms. Whalen in Melville with respect to First Data's FMLA leave policy.[1] In April 2017, Ms. Whalen represented First Data in a discussion of its cultural transformation on leave issues in an educational video produced by HR Works, an HR consulting firm.[2] All aspects of Plaintiff's FMLA experience, from leave application through termination, were managed by Defendant Whalen in Melville.

Defendant Whalen (SVP of HR) is the direct superior to Defendant Johnson (VP of HR). Under this corporate reporting structure, Defendant Whalen, in Melville, gave Defendant Johnson the corporate directive to call Plaintiff and advise him of his termination.

Defendant Marino notified Plaintiff on November 19, 2016 that while on leave, Plaintiff's Training Group would be transferred to Robin Ording (VP of HR) on an "interim" basis. Robin Ording reports directly to Defendant Whalen. Ms. Ording maintains her office in

---

[1] See http://www.omaha.com/money/gender-neutral-single-use-questions-remain-regarding-workplace-restroom-policies/article_deb15d18-eab8-58f3-b0db-11a0b888e026.html;
See also, http://www.omaha.com/eedition/sunrise/articles/a-parental-leave-arms-race/article_58707d98-ebd0-5775-9400-18e0691ab51a.html
[2] https://www.youtube.com/watch?v=X_x0SFauGeE

---------------------------------------------------------------
**THE LAW OFFICE OF SHAWN SHEARER, P.C.**
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204

Melville. The transfer of the Training Group to Ms. Ording moved the entire Training Group from reporting to Plaintiff in Atlanta to reporting to Ms. Ording in Melville.

### **Defendants Hiding the Ball – Plaintiff's Forum Selection Decision- Conclusion**

Between February and August 2017, the Plaintiff requested that First Data provide copies of corporate governance documents, board resolutions authorizing termination, its corporate reporting structure, and proof of officer authority, and Plaintiff requested that First Data identify the individual who exercised corporate authority to terminate the Plaintiff. Plaintiff made these requests, in writing, to Defendants Johnson, Marino, and Graesser, and to Defendants' counsel, more than 15 separate times. These requests also were made at least five times in telephone conversations with First Data's in-house and outside counsel. During these six months, First Data neither answered any of Plaintiff's questions nor produced any of the requested documents. Defendants still have not identified the officer who terminated Plaintiff, nor have they provided proof of anyone's corporate authority to do so.

The Defendants' continual obfuscation forced the Plaintiff to evaluate where to bring this claim. In doing so, the Plaintiff relied upon Defendants' representations to the EEOC, Defendant Whalen's intimate involvement in Plaintiff's employment and termination, her management of First Data's leave programs, her status as leave expert and public spokesperson, and the transfer of Plaintiff's training group to Ms. Ording. The Plaintiff selected the EDNY where Ms. Whalen and Ms. Ording are located, and where the Co-Heads of Global Human Resources operate First Data's world-wide employment policies. Substantial weight should be afforded to Plaintiff's selection of forum, especially when the close nexus to the events are so clear.

The Defendants do not present one specific venue in which they are willing to acknowledge events, of which they are sole cause, took place, nor do they deny that substantial events giving rise to the claim took place in EDNY. First Data's EEOC filing admits the nexus with the EDNY by describing Defendant Whalen's and Ms. Ording's involvement. The global, electronic nature of First Data's business does not obscure reality, and cannot be used by First Data to intentionally create legal confusion where none exists. Defendants cannot deny the reality that Melville was substantially involved in the events set forth in the Complaint.

Defendants' proposed venue or transfer motion has no purpose other than wasting the valuable time of Mr. Barger and this court, and continuing Defendants' elusiveness in a desperate attempt to evade the penalties awaiting for their dishonest, illegal, and morally bankrupt actions. First Data does not want to face the consequences that will inevitably soil the sandbox that is their worldwide human resources domain in Melville. Defendants are transparently forum shopping for no purpose other than to elude the judgment of this particular court.

Substantial weight should be afforded to Plaintiff's selection. The nexus to EDNY is clear, and venue is completely proper in this district under 28 U.S.C. §1391(b)(2).

> Very truly yours,
> /s/ Shawn E. Shearer
> Shawn E. Shearer

------------------------------------------------------------------
**THE LAW OFFICE OF SHAWN SHEARER, P.C.**
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204