# THE LAW OFFICE OF SHAWN SHEARER, P.C.
3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (214) 434-1594
SHAWN@SHEARERLAW.PRO

December 8, 2017

**Via ECF**
Honorable Frederic Block, U.S.D.J.
U.S District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Barger v. First Data Corporation et al.* - Civil Action No. 1:17-cv-4869
              Request for Rule 12(c), (f) Pre-Motion Conference

Dear Judge Block:

      This firm represents Plaintiff Steven Barger (Plaintiff) in the above referenced action. Plaintiff submits that after the filing of the answer [Docket No. 19] ("Answer") to Plaintiff's complaint [Docket No. 1], as a matter of law, Plaintiff is entitled to judgment on the pleadings against Defendants First Data Corporation, Bisignano, Charron and Marino as to those Defendants' liability under the FMLA, Defendants' knowing violation of the FMLA, and damages in the amount set forth in the Complaint's prayer. Under Rule 2.A. of the Court's Individual Motion Practices, Plaintiff requests a pre-motion conference to address his anticipated motion pursuant to Rule 12(c), or, in the alternative, pursuant to Rule 56 (Rule 12(d)), and Rule 12(f).

Even reading the pleadings in the light most favorable to, and drawing all <u>reasonable</u> inferences in favor of, the Defendants, Plaintiff is entitled to judgment without any further judicial process. Defendants attempts to avoid an admit/deny response to their EEOC Position Statement are *de facto* admissions of the allegations contained in the Complaint. Defendants' response "the document speaks for itself" in itself further incorporates the document into the pleadings, and Defendants do not deny the contents of their EEOC Position Statement.

      **1.**     **Prima Facie FMLA Violation.** The Complaint alleges, and the Answer does not deny, all facts necessary to establish a *prima facie* case that Defendants violated the FMLA: (a) Plaintiff was an "eligible employee" under the FMLA; (b) Defendants were "employers" under the FMLA (First Data is undeniably an employer; Bisignano, Charron, and Marino were CEO, EVP and EVP, respectively, with authority over Plaintiff, a SVP); (c) Plaintiff was entitled to, and took, FMLA leave to address his serious health condition (throat cancer); (d) Plaintiff's FMLA leave was approved by Defendants and approved leave expired on January 16, 2017; (e) on January 10, 2017, Plaintiff provided Defendants requisite physician authorization to return to work on January 17, 2017; (f) Defendants accepted Plaintiff's written medical clearance to return to work; (g) at the conclusion of approved, qualified leave, Plaintiff was entitled to reinstatement to the position previously held or to an equivalent position with the same terms and benefits that existed prior to leave *29 USC §2614(a)*; (h) on January 13, 2017 Defendants advised Plaintiff that he had been terminated and was not to return to work; (i) Defendants violated *29 USC §2615(a)(1)* by interfering with, restraining, and denying the Plaintiff's exercise of, or attempt to exercise, his right to return under the FMLA and failing to offer an alternative position even at reduced compensation despite hundreds of available job openings; (j) Defendants violated *29*

Honorable Frederic Block, U.S.D.J.
December 8, 2017 Page 2

*USC §2614(a)(1),(2)* by terminating Plaintiff as retaliation for exercising his right to timely return from approved FMLA leave; and (k) the temporal proximity between Plaintiff's exercise of his right to return from leave (delivering medical clearance) and his notice of termination (3 days) gives rise to an inference of retaliation against Plaintiff for exercising his right to return to work under the FMLA. Defendants did not terminate Plaintiff while he was on leave and long-term disability. Defendants only terminated Plaintiff promptly after his exercise of his right to return from approved leave. Plaintiff relied on EVP Marino's assurance, less than 60 days prior, that Plaintiff's position would be available upon conclusion of his leave and he would be reinstated upon delivery of written medical clearance.

      **2.** **Willful, Knowing, Lack of Good Faith; Damages**. Defendants admit in the Answer that First Data has a sophisticated human resources department and has a leave department charged with responsibility for complying with the FMLA. Given this admitted expertise, knowledge, and structure, and the Defendants admitted, and declared emphasis on inclusivity in the workplace, Defendants knew that the termination of Plaintiff was a violation of the FMLA, and Defendants had no good faith, reasonable grounds for believing their conduct was not a violation of the FMLA. Plaintiff is entitled to the *ad damnum* amount set forth in the complaint, interest, liquidated damages, fees and costs. *29 USC §2615(a)(1)(A), (a)(3)*.

      **3.** **Pretext.**[1] The entire defense relies upon Defendant's assertion that Plaintiff was included in a "company-wide reduction in force," alleged in their EEOC Position Statement to have begun in "late 2016." The allegations in the Complaint, as admitted in the Answer, show that the Plaintiff's "inclusion" in the RIF is *post facto* recreation of events. The Answer admits that on November 19, 2016, Defendant Marino, acknowledging that Plaintiff's job belonged to Plaintiff, assured him that his job, salary and benefits would be restored to at the end of his FMLA leave, and advised him that his responsibilities were being safeguarded by Robin Ording (in Melville) on an "interim" basis. It is indisputable that Plaintiff was not part of a "late 2016" RIF because he was not terminated in 2016. Defendants admit that in November 2016, First Data informed Plaintiff that to return to work he must first obtain written medical clearance. Plaintiff was not part of a RIF as of January 10, 2017, when Defendant Johnson, a veteran VP of HR, accepted Plaintiff's private medical document, obtained solely for the purpose of satisfying Defendants' conditions for Plaintiff 's exercise of his protected right to return to work. Plaintiff simultaneously notified Johnson that he would return January 17, 2017 per the terms of his FMLA leave expiration on January 16, 2017, a holiday. Acceptance of Plaintiff's medical document serves as Defendants' admission that they remained his employer on January 10, 2017. Had Plaintiff been in a RIF on January 10, 2017, Defendants must have refused any document containing his private medical information, and advised him of his termination on the spot. Rather, Defendants accepted the document satisfying Plaintiff's only condition to return. Defendants admit that 72 hours elapsed between acceptance of Plaintiff's medical authorization and his notification of termination. Defendants also admit that no written documents provided to

---

[1] The Answer does not raise any issues as to performance. Defendants admit that Plaintiff was never subject to a written or oral performance review. Defendants admit Plaintiff's supervisor gave him a 4.5 out of 5 on a 360 degree review. There are no facts alleged in the Answer to support performance as a justification. Moreover, citing multiple reasons for termination merely raises the specter that all of those reasons are pretext to cover violations of the FMLA.

Honorable Frederic Block, U.S.D.J.
December 8, 2017                                                                                                       Page 3

Plaintiff from January 13, 2017 to his termination date on February 28, 2017 indicated that Plaintiff was included in a RIF. Defendants' story is implausible, it is simply *post facto* pretext.

      Defendants admit the temporal proximity between Plaintiff's delivery of medical authorization on January 10, 2017 and their January 13, 2017 phone call advising him of his termination. Defendants also admit that despite Defendant Marino's promises to the contrary, Plaintiff's duties became the permanent and sole the responsibilities of Ms. Ording upon his termination. <u>It was Plaintiff's exercise of his right to return that triggered the permanent assignment of his job to Ms. Ording.</u> **Plaintiff's job was not eliminated, it simply moved to Melville, but was not offered to him**. Assuming there, in fact, was a "company-wide reduction in force," Plaintiff could only have been included retroactively, and only as a result of exercise of his FMLA right to return. Based solely on the pleadings, it is irrefutable that Plaintiff's delivery of his return to work authorization triggered his termination, and the Defendants' alleged RIF is a pretext to cover violations of the FMLA by their failure to reinstate, provide an equivalent position, or even offer a lesser position with lesser salary and benefits. Defendants admit that hundreds of positions were available at the time of Plaintiff's termination (evidence of which has been destroyed as alleged in the Complaint). Defendants admit failure to offer Plaintiff even one of these posted job openings, or any other job. Defendants wrongly assumed that Plaintiff would not return from leave. Mr. Barger was not terminated while on leave during the alleged "late 2016" RIF, nor was he terminated prior to January 13, 2017. **It was only upon Plaintiff satisfying Defendants' imposed condition for return from FMLA leave that Plaintiff was terminated**. Defendants' conduct deprived Plaintiff his right to return under the FMLA and was in retaliation for the exercise of those rights. The pleadings establish that Plaintiff's inclusion in a "RIF" is a *post facto* fabrication by Defendants.

      **4.**      **Affirmative Defenses.** None of the affirmative defenses are pled with any particularity and no facts are pled to support any of those defenses. Nearly all of the affirmative defenses amount to nothing more than restatements of Defendant's prior responses to the Complaint allegations or unsupported legal conclusions. Venue is proper as Plaintiff's job responsibilities were moved to Melville. Defendants had the opportunity to plead facts to support their venue assertions, but have failed to do so. A motion will also request that the court strike most, if not all, of the affirmative defenses pursuant to Rule 12(f).

      **5.**      **Conclusion.** Plaintiff requests a conference to discuss its filing of motions pursuant to Rules 12(c) and 12(f).The Defendants admit the facts necessary for a *prima facie* case. All of Defendants justifications for termination in the answer are pretext. Defendants failed to comply with the FMLA. Plaintiff's Rule 12(c) motion would seek the following: (i) a determination that the Defendants violated the FMLA; (ii) a determination that the Plaintiff is entitled to the *ad damnum* amount set forth in the prayer; (iii) that the Defendants' conduct entitles Plaintiff to liquidated damages, fees, and costs under *29 USC §2615(a)(1)(A), (a)(3)*. As alternatives, the motion would seek either (a) a determination that the Defendants willfully and knowingly violated the FMLA with the amount of damages/liquidated damages to be tried; or (b) a determination that the Defendants violated the FMLA with the issues of a knowing violation, and damages/liquidated damages to be tried.

      Very truly yours,
      /s/ Shawn E. Shearer

------------------------------------------------------------

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204