Shawn E. Shearer (*Pro Hac Vice*)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (214) 434-1594
*shawn@shearerlaw.pro*

Stephen M. Zeitlin (Bar No. 1106962)
David A. Zeitlin (Bar No. 2857082)
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, NY 11201
Telephone: (718) 522-5644
*david@zeitlinlawfirm.com*

Attorneys for Plaintiff
Steven B. Barger

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION, a Delaware corporation; and FRANK BISIGNANO, DAN CHARRON, ANTHONY MARINO, KAREN WHALEN, and RHONDA JOHNSON, each an individual<br><br>Defendants. | **Case No. 1:17-cv-4869**<br><br>**SUPPLEMENTAL COMPLAINT**<br><br>**(Assigned to the Honorable Frederic Block)** |

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff Steven Barger ("Barger" or

"Plaintiff") files this Supplemental Complaint ("Supplemental Complaint") alleging claims

under the Americans with Disabilities Act 42 U.S.C. §12101 *et seq..* against First Data

Corporation ("Defendant" or "First Data") that could not have been pled prior to the Equal

Opportunity Commission issuing its Notice of Right to Sue pursuant to 29 C.F.R. §1601.28 with respect to those claims. The Complaint [ECF No.1] (the "Complaint") in this case was filed on August 18, 2017. All capitalized terms not otherwise defined herein have the meaning ascribed in the Complaint.

### RELATED EEOC PROCEEDINGS

1. As set forth in Paragraphs 3 through 14 of the Complaint, on March 6, 2017, the Atlanta Office of the Equal Employment Opportunity Commission ("EEOC") received a Charge of Discrimination filed by Barger against Defendant First Data (the "EEOC Charge") alleging violations of the Americans with Disabilities Act ("ADA"), and retaliation related to Barger's raising of these issues prior to termination, all related to the same events described in the Complaint.

2. At the time of filing the Complaint, the EEOC had not issued Plaintiff a Notice of Right to Sue pursuant to 29 C.F.R. §1601.28.

3. A Notice of Right to Sue, dated January 10, 2018, pursuant to 29 C.F.R. §1601.28 was issued by the EEOC, and was received by Plaintiff on January 18, 2018 (the "Right to Sue Letter").

4. A true and correct copy of the Right to Sue Letter is attached hereto as Exhibit Supp-A.

5. As provided in the Right to Sue Letter and 42 U.S.C. § 2000e-5(f)(l), Plaintiff must bring suit within 90 days of receipt of the Right to Sue Letter.

6. Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff files this Supplemental Complaint to allege ADA causes of action based on the EEOC's issuance of the Right to Sue Letter subsequent to filing the original Complaint.

## JURISDICTION AND VENUE

7. The causes of action set forth in this Supplemental Complaint involve the application of the Americans with Disabilities Act 42 U.S.C. §12101 *et seq.* ("ADA").

8. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (original jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States).

9. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this district, including without limitation the transfer of Plaintiff's job responsibilities to this district.

## PARTIES

10. Plaintiff is an individual formerly employed by First Data.

11. The Defendant First Data Corporation is a Delaware corporation doing business in this district, having a place of business in this district at 378 Burns St, Forest Hills, NY 11375, 1307 Walt Whitman Rd, Melville, NY 11747, among others. Counsel for Defendant First Data has agreed to accept service of this Supplemental Complaint.

## SECOND CAUSE OF ACTION – AMERICAN'S WITH DISABILITIES ACT

**A. General ADA Allegations Applicable to all ADA Claims**

12. Defendant is a "covered entity" as defined in 29 U.S.C. §12111(2).

13. Plaintiff was an "employee" (as defined in 29 U.S.C. §12111(4)) of First Data.

14. Plaintiff was and is a "qualified individual" (as defined in 29 U.S.C. §12111(8)).

15. Plaintiff's throat cancer is a "disability" (as defined in 29 U.S.C. §12102(1), "disability") as it impaired "major life activity" (as defined in 29 U.S.C. §12102(2)(A)), including impairing a "major bodily function" (as defined in 29 U.S.C. §12102(2)(B)) -- the normal growth of cells.

16. Plaintiff's condition during and after his recovery from laryngectomy surgery was a "disability" (as defined in 29 U.S.C. §12102(1)).

17. Plaintiff's speech after surgery is now aided by a prosthetic device.

18. The removal of Plaintiff's voice box in surgery impaired a "major life activity."

19. Plaintiff requested leave as an accommodation for his recovery from his surgical procedures.

20. Leave is a "reasonable accommodation" (as defined in 29 U.S.C. §12111(9)).

21. From October 24, 2016 through January 16, 2017, Plaintiff took FMLA leave approved by Defendant.

22. Leave required by the FMLA is not an "undue hardship" (as defined in 29 U.S.C. §1211(10)) as such leave is required to be provided by statute by all employers subject to the FMLA requirements.

23. Defendant Marino's text message to Plaintiff on November 19, 2016 acknowledges that Defendant knew of its obligation under the ADA to provide leave as a reasonable accommodation for Plaintiff to "fully concentrate on getting strong and be back soon," describing the appointment of an "interim" leader of the Training Group, and promising Plaintiff on return from leave his salary would be restored and he would be given a comparable job.

### B. Failure to Reasonably Accommodate

24. In order to be a reasonable accommodation, approved unsalaried leave requires a return from leave when employee is able to perform the job functions, unless that unpaid leave becomes an undue hardship on the employer before employee is able to perform the job functions.

25. Unpaid leave without a return when able to perform the essential functions of the job, with or without an accommodation, does not accommodate anything other than the employee being unpaid and unable to return to work.

26. Unpaid leave without a return requirement is neither reasonable nor an accommodation.

27. Unpaid leave without a correlated reinstatement is merely an illegal termination based on a disability.

28. Plaintiff's leave as a reasonable accommodation was not an undue hardship on Defendant.

29. Plaintiff's leave as a reasonable accommodation could not be an undue hardship on Defendant because Plaintiff was on statutorily required FMLA leave and scheduled his return from that leave.

30. Defendant's failure to reinstate Plaintiff to his position, after Plaintiff delivered his physician's return to work authorization on January 10, 2017, violated 29 U.S.C. §12112(a) because Defendant failed to complete the last step of the agreed reasonable accommodation - reinstatement from leave.

31. Defendant's failure to reinstate Plaintiff at completion of his leave was a knowing and intentional violation of the ADA.

**C. Discrimination Based on Disability and Perceived Disability**

32. No officer or director of Defendant personally saw Plaintiff between November 3, 2016 and January 10, 2017.

33. On January 10, 2017, Plaintiff was able to perform the essential functions of his job with or without accommodation.

34. Defendant acted to deny reinstatement of Plaintiff to his position based on Defendant Marino's observations and perception of Plaintiff's disability derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

35. Defendant acted to terminate Plaintiff based on Defendant Marino's observations and perception of Plaintiff's disability derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

36. Defendant Marino is the only officer of First Data to personally observe Plaintiff during the period between Plaintiff's surgery on September 6, 2016 and Defendant's acceptance of Plaintiff's physician's written authorization to return to work on January 10, 2017.

37. Defendant's decision to appoint Ms. Ording "interim" leader of the Training Group took place after Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

38. Defendant's decision to appoint Ms. Ording "interim" leader of the Training Group was based on Defendant Marino's observations during, and his perceptions derived from, Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

39. Ms. Ording remains leader of Defendant's Training Group.

40. Defendant's decision to require Plaintiff to take leave occurred less than three weeks after Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

41. Defendant's decision to refuse reinstatement of Plaintiff from leave occurred after Defendant Marino's personal to visit to Plaintiff's residence on November 3, 2016.

42. Defendant's decision to refuse reinstatement of Plaintiff was based on observations and perception of Plaintiff's abilities and disabilities derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

43. Defendant's decision to terminate Plaintiff occurred after Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

44. Defendant's decision to terminate Plaintiff was based upon Defendant Marino's observations and perception of Plaintiff's abilities and disabilities derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

45. Defendant Marino visited Plaintiff's residence on November 3, 2016 to gather information regarding Plaintiff's disabilities for purposes of making decisions regarding Plaintiff's employment.

46. Defendant did not require Plaintiff to take leave prior to Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

47. Based on Defendant Marino's observations on November 3, 2016, Defendant required Plaintiff to take leave.

48. Other than Plaintiff's physician's authorization to return to work, the only first-hand information available to Defendant regarding Plaintiff's disabilities, and ability to perform the essential functions of the job, at the time of Defendant's failure to reinstate Plaintiff from leave, was provided by Defendant's highest ranking human resources Officer, Defendant Marino, based upon his observations and perception of Plaintiff's disabilities derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

49. Other than Plaintiff's physician's authorization to return to work, the only first-hand information available to Defendant regarding Plaintiff's disabilities, and ability to perform the essential functions of the job, at the time of Defendant's termination of Plaintiff, was provided by Defendant's highest ranking human resources Officer, Defendant Marino, based on

his observations and perception of Plaintiff's disabilities derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

50. First Data's animus towards their employees with disabilities is evidenced in the second paragraph of Section 1.4, on page 4, of the EEOC Response, in which Defendant directly criticized Plaintiff for speaking openly at work about his disabilities.

51. Defendant's failure to reinstate Plaintiff was based on First Data's admitted revulsion towards disabled employees engaging in any on-the-job dialogue about their disabilities.

52. Defendant's termination of Plaintiff was based on First Data's admitted revulsion towards disabled employees engaging in any on-the-job dialogue about their disabilities

53. First Data's EEOC Response admits that its disabled employees are downgraded with respect to performance if the disabled employee does so much as speak about their disability with, or in the presence of, other First Data employees.

54. First Data's EEOC Response demonstrates direct discrimination against Plaintiff based solely on his discussion of his disabilities.

55. Defendant's failure to reinstate Plaintiff based on perceived or actual disabilities violated 29 U.S.C. §12112(a).

56. Defendant's termination of Plaintiff based on perceived, not actual, inability to perform the essential functions of the job violated 29 U.S.C. §12112(a).

57. Defendant's termination of Plaintiff based on perceived or actual disabilities violated 29 U.S.C. §12112(a).

58. Defendant's failure to reinstate Plaintiff based on perceived or actual disabilities was a knowing and intentional violation of the ADA.

59. Defendant never witnessed Plaintiff on the job after Plaintiff's surgery, and Defendant was in no position to determine Plaintiff's performance, or ability to perform, of the essential functions of the job because Plaintiff was terminated before he could return from approved leave.

60. Defendant's termination of Plaintiff based on perceived or actual disabilities was a knowing and intentional violation of the ADA.

### D. Retaliation

61. No officer or director of Defendant saw Plaintiff between Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016 and Plaintiff's delivery of his physician's return to work authorization to Defendant Johnson on January 10, 2017.

62. Defendant's decision to terminate Plaintiff was based on Defendant Marino's observation of Plaintiff's disabilities during Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016.

63. Plaintiff obtained a physician's return to work authorization and delivered it to Defendant on January 10, 2017.

64. Defendant Johnson and Defendant accepted Plaintiff's physician's return to work authorization on January 10, 2017.

65. On January 10, 2017, Plaintiff was fully capable of performing the same job duties he performed immediately prior to his surgery.

66. Defendant never attempted to observe Plaintiff between November 3, 2016 and January 10, 2017.

67. Defendant never attempted to observe Plaintiff after November 3, 2016 for purposes of determining Plaintiff's ability or inability to perform the essential functions of the job.

68. Defendant relied on the observations and perceptions of Plaintiff's disabilities, and Plaintiff's ability or inability to perform the essential functions of the job, of Defendant Marino, First Data's highest ranking human resources officer, derived from his personal visit to Plaintiff's residence on November 3, 3017 in deciding to not reinstate Plaintiff after leave.

69. Defendant relied on First Data's highest ranking human resources officer, Defendant Marino's November 3, 2016 observations and perception of Plaintiff's disabilities and ability or inability to perform the essential functions of the job in deciding to terminate Plaintiff.

70. During the period between January 10, 2017 and the filing of the Complaint, Plaintiff was never given the opportunity to enter any First Data Office.

71. Within days after receiving notice of termination, Plaintiff was handed his personal belongings by Defendant in front of Defendant's office building.

72. Defendant's acceptance of Plaintiff's physician's return to work authorization and request to return to work on January 10, 2017 triggered Defendant's obligation to complete the reasonable accommodation of leave.

73. Defendant's acceptance of Plaintiff's physician's return to work authorization triggered First Data's ADA obligation to engage in an interactive process addressing Plaintiff's return to work and, if requested, additional reasonable accommodation of his disability in performing the essential functions of his job.

74. Defendant's failed to complete the agreed reasonable accommodation allowing Plaintiff to return to work.

75.     By failing to allow Plaintiff to return at the end of his leave, Defendant assured that the interactive process addressing Plaintiff's return and job performance never began.

76.     Defendant retaliated against Plaintiff when, on January 10, 2017, Plaintiff exercised the final step of his leave accommodation by providing notification of his return to work and Defendant responded with notice of termination on January 13, 2017.

77.     Defendant failed to reinstate Plaintiff because he advised Defendant that his reasonable accommodation of leave was no longer required and he was ready and able to return to his job.

78.     Defendant terminated Plaintiff because he advised Defendant that the reasonable accommodation of leave was no longer required and he was ready and able to return to his job.

79.     Failure to allow Plaintiff's return to work after receiving the physician's return to work authorization resulted in Defendant's failure to engage in an interactive process regarding accommodation of Plaintiff's disabilities upon return to his position after completion of the reasonable accommodation of leave.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against the Defendant on all Causes of Action and providing the following relief:

(i)   Compensatory damages under as back-pay, and front-pay to age 82, or such other period as may be proven at trial, including lost wages, salary, bonuses, life insurance, stock options, and restricted stock units; and

(ii)  Interest on the compensatory damages determined under 29 U.S.C. §2617(a)(1)(A)(i)(I) at the prevailing rate (see U.S.C. §2617(a)(1)(A)(ii)); and

(iii) Liquidated damages under 29 U.S.C. §2617(a)(1)(A)(iii) in an amount equal to the sum of compensatory damages and interest; and

(iv)  ADA punitive damages in the amount of $600,000 ($300,000 for each of the two violations of the ADA – failure to accommodate and discrimination (direct or in retaliation); and

(v)   Reasonable attorney's fees, reasonable expert witness fees, and other costs; and

    (vi)    That Plaintiff be granted a trial by jury as to all issues in the Complaint and this Supplemental Complaint; and

    (vii)    Negative inferences or such other remedies be imposed for Defendants' destruction of evidence, as the Court deems appropriate; and

    (viii)    Such other and further relief, including equitable relief, as the Court deems appropriate.

Dated: February 14, 2018

THE LAW OFFICE OF SHAWN SHEARER, P.C.


By:\_\_\_/s/ Shawn Shearer_____
Shawn Shearer (P*ro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (214) 434-1594
*shawn@shearerlaw.pro*

Attorneys for Plaintiff