Shawn E. Shearer (TX Bar No. 24049493)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (214) 434-1594
*shawn@shearerlaw.pro*

Stephen M. Zeitlin (Bar No. 1106962)
David A. Zeitlin (Bar No.2957082)
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, NY 11201
Telephone: (718) 522-5644
*david@zeitlinlawfirm.com*

Attorneys for Plaintiff
Steven B. Barger

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | **Case No. 1:17-cv-4869-FB-LB**<br><br>**PLAINTIFF'S NOTICE OF MOTION; MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)**<br><br>**(Assigned to the Honorable Frederic Block)** |

## <u>NOTICE OF MOTION</u>

NOW comes the Plaintiff, Steven B. Barger ("Barger" or "Plaintiff"), by and through his

counsel, files this Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) against

Defendant's First Data Corporation ("First Data"), Frank Bisignano ("Bisignano"), Dan Charron

("Charron") and Anthony Marino ("Marino")[1], and hereby moves this court pursuant to Fed. R.

---

[1] The Plaintiff was a Senior Vice President of First Data at the time of his termination. Plaintiff is seeking judgment against Defendants First Data, Bisignano, Charron and Marino, and not against Defendants Whalen and Johnson,

Civ. P. 12(c) for partial judgment on the pleadings (and documents incorporated into the pleadings) and that this court determine, find, and rule as a matter of law as follows:

(i)   Defendants First Data, Bisignano, Marino and Charron interfered with Plaintiff's right to restoration under the FMLA 29 USC §2614 & 2615;

(ii)  The Plaintiff is entitled to judgment in the amount of the *ad damnum* set forth in the prayer plus interest on back-pay;

(iii) Defendants conduct entitles Plaintiff to doubling of damages awarded as provided in 29 USC §2617(a)(1)(A)(iii); and

(iv)  Plaintiff is entitled to recover fees and costs pursuant to 29 USC §2617(a)(3).

As an alternative, this motion seeks that the court determine, find and rule as a matter of law as follows:

(i)   Defendants First Data, Bisignano, Marino and Charron interfered with Plaintiff's right to restoration under the FMLA 29 USC §2614 & 2615;

(ii)  Defendants conduct entitles Plaintiff to doubling of damages awarded pursuant to 29 USC §2617(a)(1)(A)(i) & (ii) as provided in 29 USC §2617(a)(1)(A)(iii);

(iii) Plaintiff is entitled to recover fees and costs 29 USC §2617(a)(3)*;* and

(iv)  The amount of damages to be awarded pursuant to 29 USC §2617(a)(1)(A), together with fees and costs to be paid under 29 USC §2615(a)(3) are to be tried.

---

because First Data was the corporation employing Plaintiff, Defendant Bisignano is the CEO of First Data, and Defendants Charron and Marino are both Executive Vice Presidents of First Data. Plaintiff is only seeking judgment against the individual defendants that had corporate rank and authority in excess of his at the time of his termination. Defendants also admit Plaintiff's position/job reported to both Defendants Charron and Marino during the periods at issue in the Complaint [Complaint & Answer ¶¶ 74, 139 & 140].

DATED February 2, 2018

THE LAW OFFICE OF SHAWN SHEARER, P.C.


By:/s/ Shawn Shearer
Shawn Shearer
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (214) 434-1594
*shawn@shearerlaw.pro*
Attorneys for Plaintiff

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL**

**JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)**

<u>**TABLE OF CONTENTS**</u>

I.      **ARGUMENT SUMMARY** ..................................................... 1

II.     **FACTUAL BACKGROUND** .................................................. 2

III.    **RULE 12(c) - LEGAL STANDARDS** ..................................... 5

IV.     **JUDGMENT ON THE PLEADINGS FOR FMLA INTEREFERENCE** .................. 6

  A.   **FMLA Legal Standards** ........................................... 6

  B.   **FMLA Interference Based on the Pleadings** ....................... 7

  C.   **FMLA Statute and Department of Labor Regulations Do Not Provide a Defense** .. 11

    1. **Plaintiff's position was restructured, not eliminated.** .......... 12

    2. **The exception to the right to reinstatement in 29 C.F.R. §825.216 is inconsistent with the FMLA and not entitled to deference.** ....................... 13

    3. **The exception to reinstatement in 29 C.F.R. §825.216 is NOT applicable to the termination of the Plaintiff by Defendants** ..................... 17

V.      **NONE OF DEFENDANTS' AFFIRMATIVE DEFENSES APPLY TO STRICT LIABILITY INTERFERENCE** ........................................... 20

VI.     **LIQUIDATED DAMAGES; FEES & COSTS** ............................. 21

VII.    **CONCLUSION** .................................................... 24

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL

# JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp 2d 668, 673 (W.D. Va. 2001) ............... 11, 20

*Brumbalogh v Camelot*, 427 F.3d 996, 1004 (6th Cir. 2005) ............................................. 10,11, 18

*Burns Int'l Sec. Servs. v. International Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir.1994)................................................................................................................. 5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)........................................ 5

*Chandler v. Specialty Tieres of America, Inc.*, 283 F.3d 818, 827 (6th Cir. 2002) ..................... 21

*Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) ............. 15, 16

*Cortec Indus. V. Sum Holding*, 949 F.2d 42 (2d Cir. 1991) ............................................... 5

*Diaz v. Fort Wayne Corp.*, 131 F.3d 711, 712 (7th Cir. 1997)...................................... 11

*Espinoza v. Mex-Am Café LLC*2015 WL 5431949 (M.D.N.C. 2015) ......................................... 20

*Fusion Capital Fund II, LLC v. Millennium Holding Group, Inc.*, 2008 WL 719247 at *1-2 (N.D.Ill. 2008)............................................................................................................... 20

*George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 552 (2d Cir.1977)................................................................................................................. 5

*Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993)16

*Graziado v. Culinary Institute of America* 817 F.3d 415, 422 (2d Cir. 2016)............................ 9

*Graziado v. Culinary Institute of America* 817 F.3d 415, 424 (2d Cir. 2016)............................ 7

*Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999) .......................................... 22

*I.H. v. Cumberland Valley Sch. Dist.*, 2012 WL 2979038 at *13 (M.D.Pa. 2012)....................... 6

*In re Aberl*, 78 F.3d 241, 244 (6th Cir.1996)...................................................................... 17

*James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013)................................... 10, 18

*Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ...... 17

*Kegerise v. Susquehanna T'ship Sch. Dist.*, 321 F.R.D. 121, 123 (M.D.Pa. 2016)....................... 6

*Liu v. Amway*, 347 F.3d 1125, 1136 (9th Cir. 2003)............................................................. 11

*Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011) ..................................................... 11

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).............................................................................................................................. 15

*Persky v. Cendant Corporation*, 547 F.Supp2d 152, 156 (D.Conn. 2008)..................................... 21

*Reich v. Southern New England Telecomms. Corp*, 121 F.3d 58, 71 (2d Cir. 1997) ................... 21

*Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir.2009) ................................................................ 5

*Rogers v. City of Troy*, 148 F.3d 52, 56 n.2 (2d Cir 1998) ........................................................... 22

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988) ......................................... 5

*Sharif v. United Airlines*, 841 F.3d 199, 203 (4th Cir. 2016) ............................................... 11, 20

*Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) ............................................................................. 5

*Smith v. Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008)................................................. 11

*Stanton v. North State Acceptance, LLC.*, 2013 WL 3910153 at *3 (M.D.N.C. 2013)............... 20

*United States v. Hayward,* 6 F.3d 1241, 1245 (7th Cir. 1993) ..................................................... 15

*United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339–40 (6th Cir.2000)................... 17

*Walls v. Central Condra Costa Traanit. Auth.*, 653 F.3d 963 (9th Cir. 2011) ............................... 7

*Williams v. Shenango*, 986 F.Supp 309, 316-318 (W.D. Pa. 1997)....................................... 11, 20

*Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir.1989)..................................... 17

*Woods v. START Treatment & Recovery Centers, Inc*., 864 F.3d 158, 165-166 (2d Cir. 2017) .... 7

## Statutes

29 U.S.C. §2611 et seq.................................................................................................................... 1

29 U.S.C. §2611(11) ...................................................................................................................... 7

29 U.S.C. §2611(2) .................................................................................................................... 6, 7

29 U.S.C. §2611(4) ........................................................................................................................ 7

29 U.S.C. §2611(e)(1) .................................................................................................................... 7

29 U.S.C. §2612 ....................................................................................................................... 5, 12

29 U.S.C. §2612(a)(1) ............................................................................................................... 7, 11

29 U.S.C. §2612(a)(1)(D) .............................................................................................................. 7

29 U.S.C. §2614(a)(1) ........................................................................... 13, 14, 15, 16, 17, 18, 19

29 U.S.C. §2614(a)(3) ....................................................................................................... 13, 14, 15

29 U.S.C. §2614(a)(4) .................................................................................................................... 9

29 U.S.C. §2615(a)(1) ................................................................................................................ 6, 22

29 U.S.C. §2617.................................................................................................................... 6, 19, 20

29 U.S.C. §2614 ........................................................................................................................... 22

Rules

Fed. R. Civ. P. 8(b) ........................................................................................................ 5

Fed. R. Civ. P. 12(c) ...................................................................................................... 4

Regulations

29 C.F.R. §825.113 – 825.115 ....................................................................................... 7

29 C.F.R. §825.214 ....................................................................................... 11, 13, 16, 18

29 C.F.R. §825.216 .............................................................................................. 11, 13

29 C.F.R. §825.216(a)............................................................................................. passim

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)**

This case seeks redress for the violation of the Plaintiff's federally protected rights under

the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2611 et seq. The case was initiated

with the filing of a Complaint on August 8, 2017 (the "Complaint") [Docket #1]. The Defendants

filed a joint Answer and Affirmative Defenses (the "Answer") on November 20, 2017. [Docket

#19] On December 8, 2017, Plaintiff requested a pre-motion conference. [Docket #25] The pre-

motion conference was held on January 26, 2018.

**I.     ARGUMENT SUMMARY**

The following are plead in the Complaint and admitted in the Answer leave no remaining

fact questions for consideration on Plaintiff's claim that the Defendants interfered with his

FMLA protected right to be restored to employment and the end of his leave: (i) On January 10,

2017, the Plaintiff was an employee of Defendant First Data was on FMLA leave approved by

First Data; (ii) Per Defendant First Data's direct instruction in its letter approving Plaintiff's

FMLA leave request [Complaint Exhibit-G], the SOLE REQUIREMENT for Plaintiff to secure

his return to work at the conclusion of leave was that he provide First Data a physician's

authorization stating that Plaintiff was medically cleared to return to work. (III) On January 10,

2017, Defendant Johnson, in her capacity as Vice President of Human Resources for Defendant

First Data, ACCEPTED PLAINTIFF'S PHYSICIAN'S RETURN TO WORK

AUTHORIZATION and Plaintiff stated to Johnson that he was returning to work.

Plaintiff's compliance with the requirement to obtain a physician's authorization and

Defendants' acceptance of that authorization triggered Defendants' absolute duty under the

FMLA to restore Plaintiff to his position or an equivalent position. Defendants admit they failed

to restore Plaintiff to his position or an equivalent position despite having accepted his

physician's authorization. Defendants' purported intentions or business justifications are irrelevant as interference with a right to be restored is a strict liability offense entitling Plaintiff to the damages set forth in the FMLA. .

II.   <u>FACTUAL BACKGROUND</u>

Plaintiff was continually employed as a Senior Vice President of Defendant First Data in its Atlanta office from June 2014 to February 28, 2017.  [Complaint & Answer ¶28] Plaintiff's annual salary remained $480,000 his entire tenure with First Data.  [Complaint & Answer ¶41] Plaintiff received annual bonuses of approximately $250,000 per year. [Complaint & Answer ¶28; Complaint Exhibit J]

In February 2016, Plaintiff was diagnosed with invasive cancer on his vocal cords. [Complaint ¶93] Plaintiff advised Defendants Charron and Marino of his diagnoses and his physician's radiation recommendations. [Complaint & Answer ¶94] Defendant Bisignano advised Barger to seek a second opinion from Bisignano's physician in Tampa, Florida. [Complaint & Answer ¶¶96-98] Plaintiff underwent 28 separate radiation treatments during March and April 2016. [Complaint ¶101] Plaintiff did not take FMLA leave during these radiation treatments. [Complaint & Answer ¶102] In August 2016, Plaintiff's physicians advised that the radiation treatments had been ineffective and laryngectomy surgery was required. [Complaint ¶111] Plaintiff Barger advised Defendants Bisignano, Marino, Charron and Johnson that his surgery was scheduled for September 6, 2016 in Tampa. [Complaint & Answer ¶113] Plaintiff's surgery was conducted as scheduled and he remained in Tampa for seven weeks under his doctors' care and observation, including a second surgery to assist the healing of surgical wounds. [Complaint ¶¶115-117] Plaintiff did not take leave and continued to work remotely during his surgical recovery. [Complaint & Answer ¶118] Defendants admit that it was

Plaintiff's choice to refuse leave during radiation, surgery and more than two months of his recovery, and admit that Defendants did not force Plaintiff to take leave during this radiation, surgery and recovery period. [Complaint & Answer ¶119]

On November 3, 2016, Defendant Marino, First Data's Executive Vice President of Human Resources, visited Plaintiff at his personal residence. [Complaint & Answer ¶128]. On November 18 & 19, 2016 Defendant Marino advised Plaintiff by letter and text that First Data had decided Plaintiff should be placed on First Data's standard leave; Plaintiff needed to submit FMLA leave approval paperwork, Plaintiff's compensation would be moved from regular payroll to First Data's short-term, then long-term, disability benefits and insurance policies; and Plaintiff was to cease working on First Data business and not to return to the office while on leave. [Complaint & Answer ¶¶131,134; Complaint Exhibits D & E] When Defendant Marino notified Plaintiff by text message that he was being required to take leave, Plaintiff immediately asked the question "I am fired?" [Complaint & Answer ¶149; Complaint Exhibit E] In his text response, Defendant Marino represented and assured Plaintiff that he was "not fired" and that upon Plaintiff's return his salary would be restored and he would be given a comparable job. [Complaint & Answer ¶150; Complaint Exhibit E] On November 19, 2016, Marino advised Plaintiff by text message that Robin Ording would be named "interim" leader of the Training Group led by Plaintiff. [Complaint & Answer ¶136; Complaint Exhibit E] Prior to taking leave, Plaintiff was a Senior Vice President reporting to Executive Vice President Jeff Hack in the Global Sales and Solutions organization, who in turn reported to Defendant Charron. [Complaint & Answer ¶ 139] Upon taking "interim" control of Plaintiff's organization, Robin Ording reported to Defendant Whalen, who in turn reported to Defendant Marino, head of First Data's human resources organization. [Complaint & Answer ¶140]

After being advised by Defendant Marino that First Data had decided that Plaintiff must take leave, Plaintiff formally requested FMLA leave for the period ending January 16, 2017. [Complaint & Answer ¶152] By letter dated December 15, 2016 from First Data's Leave Management Team, First Data approved Plaintiff's request for FMLA leave for the period commencing October 24, 2016 and ending on January 16, 2017, and directed Plaintiff that he must deliver a completed health care provider return to work certification in order to be restored to work. [Complaint & Answer ¶¶158, 159, 162; Complaint Exhibit G]

On Tuesday, January 10, 2017, Plaintiff hand delivered his physicians authorization to Defendant Johnson (VP of Human Resources) and Plaintiff advised Johnson that he would return to work. [Complaint & Answer ¶164; Complaint Exhibit H]. In the afternoon of Friday January 13, 2017 (three days after Plaintiff declared he would return to work, mere hours before the close of business on the last business day prior to Plaintiff's scheduled and approved return from leave), by telephone, Defendant Johnson advised Plaintiff that he was being terminated by First Data effective February 28, 2017.  Plaintiff was told he should not return to work or come to First Data's office as scheduled on January 17, 2017. [Complaint & Answer ¶166  During the period between January 13, 2017 and February 28, 2017, Barger and First Data, through their counsel, attempted, unsuccessfully, to reach a mutually agreed severance agreement, and Barger was terminated on February 28, 2017 without a severance agreement and release. [Complaint & Answer ¶¶169, 174].

### III.     RULE 12(c) - LEGAL STANDARDS

Judgment on the pleadings is appropriate where the parties do not dispute material facts and the court can reach judgment on the merits simply by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). In deciding a motion for judgment on the pleadings, the court must accept as true all of the non-movant's well pled factual allegations and draw all reasonable inferences therefrom in favor of the non-moving party. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994). Unless it appears beyond doubt that the non-movant can prove no set of facts in support of his position that would entitle him to relief, the court cannot grant a motion for judgment on the pleadings. *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 552 (2d Cir.1977). The court should grant a Rule 12(c) motion, however, if the movant is entitled to judgment as a matter of law. *See Burns Int'l Sec. Servs. v. International Union, United Plant Guard Workers of Am.,* 47 F.3d 14, 16 (2d Cir.1994).

On a Rule 12(c) motion, the court considers:

> [T]he complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case. *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir.2009).

> A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint. *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)).

For example, documents such as the prospectus considered in *Cortec Indus. V. Sum* Holding, 949 F.2d 42 (2d Cir. 1991) and the Annual Report on Form 10-K filed by First Data Corporation

filed with the Securities and Exchange Commission as referenced herein may be considered.[2]

## IV.   JUDGMENT ON THE PLEADINGS FOR FMLA INTEREFERENCE

### A.   FMLA Legal Standards

The FMLA establishes two entitlements for eligible employees: (i) the entitlement to take leave, 29 U.S.C. §2612, and (ii) upon completion of leave, the entitlement to be restored to the position of employment held by the employee when the leave commenced or to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 U.S.C. §2614(a).[3]

Defendants interference violated 29 U.S.C. §2615(a)(1):

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

---

[2] With respect to the references to the Answer herein, Plaintiff relies upon Fed. R. Civ. P. 8(b). Rule 8(b) provides that in a response to a complaint's allegations, the defendants have four options: (i) admit; (ii) deny; (iii) admit or deny specifically if responses to parts of the allegations are different; or (iv) disclaim based on lack of knowledge or information sufficient to form a belief about the truth of the allegation. Failure to specifically deny an allegation, or satisfy the requirements to disclaim, or admit and deny the parts of an allegation, requires the Plaintiff's allegations to be admitted for failure of Defendants to deny. *Kegerise v. Susquehanna T'ship Sch. Dist.*, 321 F.R.D. 121, 123 (M.D.Pa. 2016); *I.H. v. Cumberland Valley Sch. Dist.*, 2012 WL 2979038 at *13 (M.D.Pa. 2012). Statements in the Answer similar to "the document speaks for itself" or "admit the Complaint refers to a document that speaks for itself" or "allegation states a legal conclusion for which no response is required" do not satisfy the requirements of Rule 8(b). Allegations in a complaint as to the authenticity of a document, the contents of a document, and a statement of a legal conclusion, all require that the answer admit, deny, or state a lack knowledge. *Lane v. Page*, 272 F.R.D. 581, 602 - 603 (D.N.M. 2011)("Responses that document speak for themselves and that allegations are legal conclusions do not comply with rule 8(b)'s requirements."); see also *Thompson v. Ret Plan for Employees of S.C. Johnson & Sons, Inc.,* 2008 WL 5377712 at *1-2 (E.D. Wis. 2008)("Rule 8 does not permit a defendant to respond only by stating that the plaintiff's allegations 'constitute conclusions of law' . . . Similarly, Rule 8 does not permit a defendant to respond that the document 'speaks for itself'); *State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 278 (N.D. Ill. 2001)("A responsive pleading indicating that document 'speaks for itself' is insufficient and contrary to the Rules of Civil Procedure")  Failure to answer an allegation in a manner consistent with Rule 8(b)(1)-(5) is deemed an admission of that allegation under Rule 8(b)(6).

[3] In reality, these two rights (leave and restoration) are two sides of the same coin. An employee taking unpaid FMLA leave and then being terminated while on leave means there was no leave, the employee was simply terminated without receiving pay while believing there was a right to restoration. Without the right to restoration, the right to leave is meaningless. Simply sending an employee off to 12 weeks of unpaid leave with the thought that they will be restored, just to be terminated, is not leave at all. The right to restoration is integral to the right to take leave. A watering down of the right to restoration (especially when hiding behind language like "reduction-in-force") makes the right to take leave in the statute irrelevant and is antithetical to the declared Congressional purposes for the FMLA to provide employees security while on leave to treat their own health conditions or to care for family.

The Second Circuit recently wrote in *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 165-166 (2d Cir. 2017) (emphasis added and internal quotation marks omitted):

> The <u>Family and Medical Leave Act</u>, 29 U.S.C. § 2601 *et seq.*, <u>provides</u> <u>broad</u> <u>protections</u> to employees who need to take time away from work to deal with serious health conditions of the employee or her family. <u>An employee has the right to return to</u> <u>the position she held before taking leave, or to an equivalent position with equivalent</u> <u>employment benefits, pay, and other terms and conditions of employment.</u> . . . <u>FMLA</u> <u>claims come in at least two varieties: interference and retaliation.</u> *See Potenza v. City* *of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (per curiam). <u>In a general sense, an</u> <u>employee brings an "interference" claim when her employer has prevented or</u> <u>otherwise impeded the employee's ability to exercise rights under the FMLA.</u> *See* *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). "Retaliation" claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. *See Potenza*, 365 F.3d at 168. The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

The Complaint alleges that Defendants are liable for both interference and for retaliation. In this Motion, Plaintiff is seeking judgment on his FMLA interference claim. Defendants admit interference with Plaintiff's right to be restored. Defendants are strictly liable for the damages.

### B. <u>FMLA Interference Based on the Pleadings</u>

To prevail under the FMLA interference theory, the Plaintiff must establish (i) that he is an "eligible employee" pursuant to 29 U.S.C. §2611(2); (ii) the Defendant is an "employer" pursuant to 29 U.S.C. §2611(4); (iii) the employee was entitled to leave under the FMLA pursuant to 29 U.S.C. §2612(a)(1); (iv) the employee gave the employer the required notice of intention to take leave pursuant to 29 U.S.C. §2611(e)(1); and (v) the employer denied the employee the FMLA benefits to which he was entitled. *Graziado v. Culinary Institute of America* 817 F.3d 415, 424 (2d Cir. 2016); <u>see also</u>, *Walls v. Central Contra Costa Transit.* *Auth.*, 653 F.3d 963 (9th Cir. 2011)(refusal to reinstate interferes with employee's rights under the FMLA). Based solely on the Complaint's factual allegations admitted in the Answer, there is

no factual disputes material to Plaintiff's interference claim in this Motion. The Defendants admit all of the fact necessary to establish their strict liability for interference with Plaintiff's exercise of his right to restoration under the FMLA.

- **Eligible Employee** – Defendants admit that Plaintiff was an "eligible employee" (as defined in 29 29 U.S.C. §2611(2)) entitled to 12 weeks of FMLA leave pursuant to 29 U.S.C. §2612(a)(1)(D). [Complaint & Answer ¶32 & 76] Plaintiff's cancer diagnoses, surgery, and recovery were all "serious health conditions" as defined 29 U.S.C. §2611(11). [Complaint & Answer ¶ 159; Exhibit G to Complaint – FMLA Leave Approval Letter dated December 15, 2016 from First Data Leave Management Team to Plaintiff Barger] See 29 C.F.R. §825.113 – 825.115.

  - **Employer** – The term "employer" means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, and includes any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer. 29 U.S.C. §2611(4) First Data was Plaintiff's employer for purpose of the FMLA [Complaint & Answer ¶32 & 76]. First Data has more than 24,000 employees. See page 15 of First Data Annual Report on Form 10-K for the fiscal period ending December 31, 2016 filed with the Securities and Exchange Commission. [4] Defendant Marino's admitted demand that Plaintiff take FMLA leave, that he complete and submit the FMLA leave paperwork to obtain approval of his requested leave, and the Leave Management Group's letter approving Plaintiff's FMLA leave [Complaint Exhibits D & G] are in themselves admissions that First Data considered itself Plaintiff's "employer" for purposes of the FMLA. Plaintiff was the head of the

---

[4] See https://www.sec.gov/Archives/edgar/data/883980/000162828017001722/a12311610-k.htm

"Training Group" at First Data. The "Training Group" reported to Defendant Charron (indirectly through EVP Jeff Hack), and upon appointment of Ms. Ording as the interim" head of the "Training Group" in November 2016, Ms. Ording reported to Defendant Whalen (SVP of HR) who in turn reported to Defendant Marino). [Complaint & Answer ¶¶ 74, 139 & 140]. Both Defendant Charron and Defendant Marino, Executive Vice Presidents, report to Defendant Bisignano, the Chief Executive Officer of First Data and the ultimate officer of the entity. [Complaint & Answer ¶ 22] Defendants First Data, Bisignano, Charron and Marino each acted directly or indirectly in the interest of First Data towards Plaintiff Barger and, therefore, each is an "employer" for purposes of the FMLA. *Graziado v. Culinary Institute of America* 817 F.3d 415, 422 (2d Cir. 2016).

- **Eligible for Leave; Provided Notice of, and was Granted, FMLA Leave.** Defendants admit that the Plaintiff was eligible for FMLA leave, requested FMLA leave, and Defendants approved that requested leave for the period ending January 16, 2017. [Complaint & Answer ¶¶ 2(ii), 152, 158, 159, 160; Complaint Exhibit G]

- **Denial of FMLA Restoration** – Defendants admit (i) on January 10, 2017 Plaintiff delivered his physicians release to work authorization to Defendant Johnson and requested reinstatement and (ii) Defendants did not restore Plaintiff to his position or an equivalent position as requested. [Complaint & Answer ¶ 215]

Based solely on these admitted plead facts, applied to the factors set forth by the 2nd Circuit in *Graziado,* the Plaintiff must prevail, as a matter of law, against the Defendants for interference with Plaintiff's FMLA right to be restored. There are no fact issues to consider. None of the Defendants' excuses matter once the obligation and duty to restore was triggered by Defendants' acceptance of Plaintiff's physician's return to work authorization.

> Once an employee submits a statement from [his] health care provider which indicates that [he] may return to work, the employer's <u>duty</u> to reinstate him has been triggered under the FMLA. *Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005); <u>see</u> also *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013).

29 U.S.C. §2614(a)(4) provides the Defendants MAY "have a uniformly applied practice or policy that requires each such employee to receive certification from the healthcare provider of the employee that the employee is able to resume work…" It was Defendants sole choice to require a physician's authorization for Plaintiff to return. This requirement demonstrates First Data's intimate knowledge of FMLA practices and their complete knowledge of the Plaintiff's compliance with the only requirement to secure his restoration to his position.  A request for restoration is the only possible purpose for requiring the Plaintiff to obtain physician's certification. First Data could have chosen NOT to require a physician's authorization, but once that condition was imposed, and Defendant Johnson, on behalf of Defendant First Data, accepted the authorization, Plaintiff's request to be restored was formalized and his rights under the FMLA triggered. Yet, the Plaintiff was not restored. Had Plaintiff been terminated prior to January 10, 2017, First Data had every opportunity to advise him that there was no longer a need for the authorization, or Johnson should have rejected the authorization outright when it was delivered. The Defendants did neither. Defendants admit Johnson is a long-time, career, human resources professional. She should not have accepted a physician's authorization to return to work containing personal medical information if Plaintiff was no longer an employee of First Data. Once the letter was accepted, the Defendants were required to restore Plaintiff to his position or an equivalent position. Defendants' failure violated the FMLA. Any speculation, if raised, that other employment related issues which potentially could have resulted in legitimate termination of Plaintiff at a later time MAY have occurred after Plaintiff was restored, is wholly irrelevant conjecture. We can never know, because Plaintiff was not restored, and any such

issues could never be addressed. Defendants admit their interference. Defendants are strictly

liable for interfering Plaintiff's right to restoration from FMLA leave.

The *McDonnell Douglas* burden-shifting analysis used in FMLA retaliation claims does

not apply to claims of interference with entitlements. *Diaz v. Fort Wayne Corp.*, 131 F.3d 711,

712 (7th Cir. 1997); *Liu v. Amway*, 347 F.3d 1125, 1136 (9th Cir. 2003); *Blankenship v. Buchanan*

*Gen. Hosp.*, 140 F.Supp 2d 668, 673 (W.D. Va. 2001). Claims for FMLA interference are strict

liability offenses and the employer's intent or business justifications are irrelevant. *Sharif v.*

*United Airlines*, 841 F.3d 199, 203 (4th Cir. 2016); *Blankenship* at 673; *Williams v. Shenango*,

986 F.Supp 309, 316-318 (W.D. Pa. 1997) (interference with FMLA rights is a strict liability

offense);  *Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp 988, 996-7 (N.D. Ga 1990)

**"**Legitimate business reason" is not a defense to an interference claim. The employer's intent is

irrelevant. *Williams* at 318; *Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011); *Smith v.*

*Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008).

The Plaintiff delivered his return to work authorization, and the Defendants accepted that

authorization. That delivery and acceptance triggered the Defendants' duty to restore Plaintiff.

*Brumbalogh v Camelot*, 427 F.3d 996, 1004 (6th Cir. 2005). The Defendants admit liability for

interfering with Plaintiff's FMLA right to be restored to his position or an equivalent position

after his request for reinstatement.

### C.  FMLA Statute and Department of Labor Regulations Do Not Provide a Defense

The entitlement to leave under the FMLA is set forth in 29 U.S.C. §2612(a)(1):

> [A]n eligible employee underlined shall be entitled to a total of 12 workweeks of underlined leave
> during any 12-month period . . . because of a serious health condition that makes
> the employee unable to perform the functions of the position of such employee.

This entitlement to FMLA leave is absolute and without exceptions. *Diaz v. Fort Wayne Foundry*

*Corp.*, 131 F.3d 711 (7th Cir. 1997). The entitlement to restoration under the FMLA is set forth in

29 U.S.C. §2614(a):

(1) [A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave <u>shall be entitled on return from</u> such <u>leave</u> –

(A) <u>to be restored</u> by the employer to the position of employment held by the employee when the leave commenced; or

(B) <u>to be restored</u> to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment. . . .

(3) Nothing in this section shall be construed to entitle any **restored employee** to . . .

(B) Any <u>right</u>, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave.

The Department of Labor regulation, 29 C.F.R. §825.214 implementing the right to

restoration provides:

On return from FMLA leave, an employee is <u>entitled to be returned</u> to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. <u>An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.</u>

## 1. <u>Plaintiff's position was restructured, not eliminated.</u>

The Defendants admit that Plaintiff's position was not eliminated as part of a reduction-in-

force. The Defendants' deliberate misuse of the term "reduction-in-force" is a red herring.[5] The

Defendants admit Plaintiff's job merely moved from Plaintiff to Robin Ording (Atlanta to

Melville, NY). The Defendants admit Plaintiff was advised by Defendant Marino on November

---

[5] The FMLA and its regulations never use the term reduction-in-force or RIF. These terms have become short-hand in judicial decisions and employer lingo. There is no exception to the right to restore because an employee was included in a RIF. If the DOL regulation 29 C.F.R. §825.216 is valid, which Plaintiff questions below, the focus is on whether or not the position was eliminated, not whether the individual was included in a RIF. In this case, Plaintiff's job still existed and, Defendants admit, that job was taken by Ms. Ording. In reality, looking at the pleadings, it was Ms. Ording's prior position that was eliminated and Plaintiff's job was given to Ms. Ording. Plaintiff's job was not eliminated.

19, 2016 that Ms. Ording would be the "interim" leader of Plaintiff's Training Group. [Complaint & Answer ¶¶136] The Answer admits that only one employee, Ms. Ording, assumed all of the duties and responsibilities held by Plaintiff at the time he took leave. Defendants admit Ms. Ording continued to have those duties and responsibilities from the time she was appointed "interim" leader to cover for Plaintiff while he was on leave through at least the time of filing the Answer. [Complaint & Answer ¶¶146, 211]

Plaintiff's job was not eliminated. Plaintiff's job merely moved, the job was assumed by Ms. Ording, as part of Defendant Marino's organization instead of Defendant Charron's. [Complaint & Answer ¶¶139, 140] This is exactly the type of restructuring addressed in 29 C.F.R. §825.214 which provides that Plaintiff was entitled to reinstatement to an equivalent position even if he had been replaced or his position restructured to accommodate his absence. Accepting the authorization triggered Defendants' <u>duty</u> to restore. *Brumbalogh v. Camelot* 427 F.3d 996, 1004 (6th Cir. 2005). Defendants admit they failed to restore Plaintiff [Complaint & Answer ¶172], and in doing so, admit an intentional violation of the FMLA right to restoration.

### 2. <u>The exception to the right to reinstatement in 29 C.F.R. §825.216 is inconsistent with the FMLA and not entitled to deference.</u>

. The language of the FMLA regarding the entitlement to leave in 29 U.S.C. §2612 ("<u>an eligible employee shall be entitled to leave</u>") has been held to be absolute. Despite nearly identical language to that used by Congress to establish the right to take leave in 29 U.S.C. §2612, the language in §2914 right to restoration ("<u>any eligible employee who takes leave . . . shall be entitled on return from such leave to be restored</u>") inexplicably has been interpreted otherwise and the Department of Labor ("DOL") promulgated 29 C.F.R. §825.216 attempting to place conditions on the entitlement to restoration (condition that are contradictory, not only to the FMLA's statutory language in 29 U.S.C. §2614(a), but also with the DOL's regulation 29

C.F.R. §825.214 providing for an entitlement to return even if a positions has been replaced or restructured. The DOL's very questionable regulation (discussed below), 29 C.F.R. §825.216 provides:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. <u>An employer must be able to show</u> that an <u>employee would not otherwise have been employed</u> **at the time reinstatement is requested** in order to deny restoration to employment. For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. <u>An employer would have the burden of proving</u> that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration. <u>Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position</u>. . . .

The Plaintiff acknowledges that several circuits have determined that the right to restoration in 29 U.S.C. §2614(a)(1) is limited by the exception in 29 U.S.C. §2614(a)(3), and that DOL regulation, 29 C.F.R. §825.216, is a reasonable interpretation of the statute and subject to deference.[6]

The Plaintiff respectfully disagrees with these decisions. The language used by Congress in 29 U.S.C. §2614(a)(3) is very clear.

> Nothing in this section shall be construed to entitle any **restored employee** to . . . Any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave.

The limitation passed by Congress in the statute clearly refers to a "restor**ed** employee"; past

---

[6] <u>See</u> *Yashenko v. Harrah's NC Casino*, 446 F.3d 541 (4th Cir. 2006); *Throneberry v. McGehee Desha County Hosp.,* 403 F.3d 972, 977 (8th Cir.2005); *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 245 (6th Cir.2004); *McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1108 (10th Cir.2002); *Rice v. Sunrise Express, Inc.,* 209 F.3d 1008, 1018 (7th Cir.2000); and *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1354 (11th Cir.2000).

tense. The plain language of the statute provides that an employee that took FMLA leave, and has been restored is not entitled to any greater rights, benefits, or positions of employment. For the exception in 29 U.S.C. §2614(a)(3) to apply, the employee must first be restored to the position or equivalent position under 29 U.S.C. §2614(a)(1).

The DOL, however, in its restoration exception regulation 29 C.F.R. §825.216(a), has interpreted the term "restored employee" in the statute to include "employee on FMLA leave." "Restored" defined as including "on leave" is inconsistent with the plain language of the statute providing that an employee on leave is "entitled to restoration" at the end of leave.

The FMLA was passed by Congress three years after the passage of the American's with Disabilities Act ("ADA"). The statutory "limitation" in Section 2614(a)(3) merely provides that once an employee is restored to employment, the FMLA provides no further benefits or rights to an employee. If a restored employee seeks additional benefits or accommodations, the terms of the ADA or other statutes, but not the FMLA, would apply. Section 2614(a)(3)'s reference to "restored employees" cannot reasonably be interpreted to apply to unrestored employee on leave.

In applying the *Chevron* analysis to address judicial deference to executive agency's rules, the first step is to determine whether the statute in question is ambiguous or silent on the specific question at issue. If a statute is not ambiguous or silent on a question, an agency's interpretation and regulation contrary to the statutory language is not entitled to deference.   *See Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). When a statute's language is unambiguous, the court must apply that language without considering other factors. *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010); *United States v. Hayward,* 6 F.3d 1241, 1245 (7th Cir. 1993).

In this case, the statute is very clear that an employee on FMLA leave is entitled to be

restored - 29 U.S.C. §2614(a)(1): any eligible employee who takes FMLA leave is "<u>entitled</u> on return from such leave – <u>to be</u> restor<u>ed</u>." There also is no ambiguity in 29 U.S.C. §2614(a)(3) as it refers in the past tense to a "restor<u>ed</u> employee."

### *"TO BE OR NOT TO BE: THAT IS THE QUESTION" –William Shakespeare*

An "employee entitled <u>to be</u> restored" and a "restored employee" are two different concepts. One is <u>not yet "restored"</u> and the other <u>has been "restored"</u>. The term "restored employee" cannot mean an employee on leave entitled "<u>to be</u> restored" at the end of leave. Congress chose the words of the statute carefully, and Congress chose the future tense in (a)(1) ("employee entitled <u>to be</u> restored"), and chose the past tense in (a)(3) ("restored employee"). There was no statutory gap-filling required by the Department of Labor. If the statute is clear, the executive and the judiciary cannot substitute their own interpretation of the Congressional mandate. If Congress did not intend the past tense, and it meant an employee entitled <u>to be</u> restored may be terminated, it would have used the same "<u>to be</u>" future tense in (a)(3) as it had used in (a)(1) of the same sub-section of the statute. Congress did not do so – (a)(1) refers to employees "<u>to be</u>" restored and (a)(3) refers to employees that have been restored. The DOL regulation directly contradicts this plain, unambiguous meaning of the statute. If Congress wishes for the DOL's contrary interpretation to be the law, the remedy is for Congress to amend the statute, not for the DOL or the judiciary to turn cartwheels to divine Congressional intent from otherwise clear language. **"**[I]f the intent of Congress is clear, that is the end of the matter." *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (*quoting Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))  In fact, courts have a duty to refrain from reading a phrase into a statute when Congress has left it out. *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124

L.Ed.2d 118 (1993); *United States v. Health Possibilities, P.S.C.,* 207 F.3d 335, 339–40 (6th Cir.2000). "It is not the Court's role to address perceived inadequacies in [a statute]." *In re Aberl,* 78 F.3d 241, 244 (6th Cir.1996) (quoting *Wolf Creek Collieries v. Robinson,* 872 F.2d 1264, 1269 (6th Cir.1989).

The DOL's regulation, 29 C.F.R. §825.216(a), is contradictory to the clear language of the statute, and even contrary to the DOL's regulation that provides that an employee is entitled "<u>to be</u>" restored even if a position is replaced or restructured while on leave. .  "<u>To be</u>" means "<u>to be</u>". The DOL regulation allowing an employee on leave "<u>not to be</u>" restored is contradictory to the clear statutory language entitling employees returning from FMLA leave are "<u>to be</u>" restored (and contradicts to 29 C.F.R. §825.214, the DOL's regulation providing an employee is entitled "<u>to be</u>" restored even if a position is replaced or restructured). 29 C.F.R. §825.216(a) regulation (i) is not entitled to deference under *Chevron,* and (ii) is not a defense to the Defendants' failure to restore to Plaintiff's his position or an equivalent position as required.

### 3.   The exception to reinstatement in 29 C.F.R. §825.216 is NOT applicable to the termination of the Plaintiff by Defendants

If the court determines that the 29 C.F.R. §825.216(a) is entitled to *Chevron* deference, that regulation still does not provide a defense to the admitted interference with Plaintiff's entitlement to restoration. In pertinent part, the exception to restoration in 29 C.F.R. §825.216(a), is limited and it places the burden on the employer:

> An employer must be able to show that an employee would not otherwise have been employed **at the time reinstatement is requested** in order to deny restoration to employment.

The Defendants have admitted in the Answer that they will be unable to meet this standard, and therefore judgment on the pleadings is required.

- Plaintiff applied for, and First Data approved, FMLA leave for the period ending on January

16, 2017. [Complaint & Answer ¶152]

- First Data required that Plaintiff obtain the physician's return to work authorization before he could be restored. [Complaint & Answer ¶¶158, 159, 162]

- On January 10, 2017, Plaintiff exercised his entitlement to restoration and requested reinstatement by delivering his physician's authorization. [Complaint & Answer ¶164]

- On January 13, 2017, Defendants advised Plaintiff of his termination as of February 28, 2017, and directed him not to return to the office. [Complaint & Answer ¶166]

By admittedly accepting Plaintiff's medical clearance, Defendants' admit that they remained Plaintiff's employer on January 10, 2017. Defendants would have refused any document containing his private medical information, and advised him of his termination on the spot, if it were not the Plaintiff's employer. Once the authorization was accepted, First Data had a duty to reinstate Plaintiff. *Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005); see also *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013).

DOL regulation 29 C.F.R. §825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed **at the time reinstatement is requested** in order to deny restoration to employment.") is inapplicable to the facts as admitted by Defendants. Given the facts admitted by the Defendants, it is not possible for Defendants to prove that on January 10, 2017 Plaintiff would not have been employed if he had been at work. On January 10, 2017, Plaintiff had not been terminated or laid-off, Plaintiff had not been advised of a "RIF" and On January 10, 2017, Plaintiff's position was not eliminated and was still being held by Ms. Ording on an "interim" basis. [Complaint & Answer ¶¶136]  On January 10, 2017, Plaintiff was still employed and requested reinstatement when Defendants accepted Plaintiff's physician's authorization. Then, three days after reinstatement to his position was requested, Defendants

advised Plaintiff of his termination. Termination of the Plaintiff after his request for reinstatement interfered with his entitlement to restoration under the FMLA even as interpreted by the DOL in 29 C.F.R. §825.216(a) <u>Plaintiff was an employee and had not been terminated at the time reinstatement was requested on January 10, 2017</u>. It will be impossible for Defendants to prove Plaintiff "would not otherwise have been employed when reinstatement was requested" because he was employed when he requested reinstatement and his position was not eliminated, it was merely given to another employee in violation of the FMLA.

DOL regulation 29 C.F.R. §825.214 requiring restoration even if a job is replaced or restructured while on leave, not DOL regulation 29 C.F.R. §825.216(a), applies to these admitted facts. If the Plaintiff's position had been restructured to report through the human resources group and was being held by Ms. Ording on an "interim" basis (as admitted in the Answer), upon requesting reinstatement, Plaintiff was entitled to his position or an equivalent position.[7] DOL regulation 29 C.F.R. §825.216(a) is of no consequence at the point the Plaintiff delivered his physician's release and requested reinstatement. Notification of termination of Plaintiff on January 13, 2017 is an admitted, direct violation of Plaintiff's right to restoration. Failure to allow an employee to return from FMLA leave, per se, interferes and denies exercise of rights under 29 U.S.C. §2614(a)(1).

Based solely on the pleadings, Defendants admit liability under 29 U.S.C. §2615(a)(1) for denying Plaintiff's FMLA right to be restored. Excuses such a "reduction-in-force" or "performance" are of no consequence. Once the Plaintiff's medical release was delivered, the Plaintiff's right to restoration was triggered. Defendants admit Plaintiff was not restored. The

---

[7] Defendants did not even offer Plaintiff a position with lesser benefits, pay, and other terms or conditions of employment despite hundreds of open job postings. [Complaint & Answer ¶¶214, 215]

employer's intent or "business justification" are irrelevant to the interference claim. *Sharif v. United Airlines*, 841 F.3d 199, 203 (4th Cir. 2016); *Blankenship* at 673; *Williams v. Shenango*, 986 F.Supp 309, 316-318 (W.D. Pa. 1997) (interference with FMLA rights is a strict liability offense)

## V.    NONE OF DEFENDANTS' AFFIRMATIVE DEFENSES APPLY TO STRICT LIABILITY INTERFERENCE

Interference with FMLA rights is a strict liability violation. None of the affirmative defenses set forth in the Answer can justify such a strict liability violation. Affirmative Defenses 1, 2, 3, 4, 5, 6, 7, 11, and 14 are not affirmative defenses at all, but merely repetition of denials set forth in the line-by-line responses to the Complaint. The Answer's affirmative defenses 8, 9, 10, 12, 13, and 15 are irrelevant to the arguments set forth in this motion and strict liability interference. The Answer's affirmative defense 16, 17, 18, 19, and 20 do not provide sufficient notice to the Plaintiff and are not pled in a manner consistent with Rule 8. "At a minimum a statement of an affirmative defense must give notice to an opponent of its basis and go beyond mere conclusions. *Stanton v. North State Acceptance, LLC.*, 2013 WL 3910153 at *3 (M.D.N.C. 2013). A "laundry list" of affirmative defenses that do not identify the asserted flaws in the Complaint in a manner sufficient to satisfy the notice pleading standards imposed on defendants as well as plaintiffs are disfavored. *Fusion Capital Fund II, LLC v. Millennium Holding Group, Inc.*, 2008 WL 719247 at *1-2 (N.D.Ill. 2008). A defense must be more than bare—bones conclusory allegations which merely name a legal theory but do not indicate how the theory is connected to the case at hand. *Espinoza v. Mex-Am Café LLC* 2015 WL 5431949 (M.D.N.C. 2015) All of the affirmative defenses set forth in the Answer are inapplicable to this motion for judgment for interference with Plaintiff's right to restoration under the FMLA because Defendants duty to restore was triggered by delivery and acceptance of the physicians authorization, Defendants admit not

fulfilling their duty to restore, and Defendants are strictly liable for that violation.

## VI.   LIQUIDATED DAMAGES; FEES & COSTS

Plaintiff is therefore entitled to recover damages pursuant to 29 U.S.C. §2617(a)(1)(A)(i) &

(ii) (back pay, front pay, lost benefits, and interest on back pay and lost benefits).  In addition,

Plaintiff is entitled to the doubling of that award pursuant to 29 U.S.C. §2617(a)(1)(A)(iii) plus

fees and costs under 29 U.S.C. §2617(a)(3).

In *Persky v. Cendant Corporation*, 547 F.Supp2d 152, 156 (D.Conn. 2008)(emphasis

added):

> The FMLA provides that an employer "**shall** be liable" for liquidated damages
> when it interferes with an employee's substantive rights under the Act. 29 U.S.C.
> § 2617(a)(1)(A). Under the Act, liquidated damages are an amount equal to the
> compensation denied or lost to an employee, plus interest, by reason of the
> employer's violation of the statute. *Id.* 'Doubling of an award is the norm under
> the FMLA, because a plaintiff is awarded liquidated damages in addition to
> compensation lost." *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 929 (5th
> Cir.1999). "The deterrent of double damages found in the FMLA ... prevents
> employers from gambling on their ability to evade providing coverage, and
> therefore, acts as insurance that employees will not be denied FMLA benefits.'
> *Rhoads v. F.D.I.C.,* 956 F.Supp. 1239, 1262 (D.Md.1997), *aff'd in part, rev'd in
> part on other grounds,* 257 F.3d 373 (4th Cir.2001); *see also Herman v. RSR Sec.
> Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir.1999) ("[l]iquidated damages are not a
> penalty exacted by the law, but rather compensation to the employee occasioned
> by the delay in receiving wages due caused by the employer's violation of the [the
> statute].").

The court may only decline to impose liquidated damages where an employer proves that

the act or omission which violated §2615 was in good faith and that it had reasonable grounds

for believing that the act or omission was not a violation. 29 U.S.C. §2617(a)(1)(A)(iii). The

employer must show *both* good faith *and* reasonable grounds for the act or omission. *Chandler v.

Specialty Tieres of America, Inc.*, 283 F.3d 818, 827 (6th Cir. 2002). Good faith requires more

than ignorance of the prevailing law. *Reich v. Southern New England Telecomms. Corp*, 121

F.3d 58, 71 (2d Cir. 1997) (discussing the similar liquidated damages provision under the

FLSA); <u>see</u> <u>also</u> *Persky* 547 F.Supp2d at 157. The employer bears the burden of establishing both subjective good faith and objective reasonableness, and this burden "is a difficult one to meet . . . and double damages are the norm, single damages are the exception." *Reich*, 121 F.3d at 71; <u>see</u> <u>also</u> *Rogers v. City of Troy*, 148 F.3d 52, 56 n.2 (2d Cir 1998)(stating that the good faith exception under the FLSA "has been construed narrowly"); *Persky* 547 F.Supp2d at 156 (discussing that the legislative history of the FMLA reveals Congress intended the remedial measures of the FMLA to mirror those of the FLSA); *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999) (FLSA liquidated damages are not a penalty, but compensation to the employee for the delay in receiving wages unpaid due to the employer's violation of the statute).

Defendants admit in the pleadings that they neither acted in good faith nor reasonably. First, the Defendants do not allege anything affirmative as to their review of any RIF, the termination of the Plaintiff, or their examination of applicable law.

The Defendants actually plead that they know the law and that a special group inside of the human resources department is charged with complying with the FMLA. Defendants admit:

(i)   Defendant Marino, EVP of First Data's Human Resources Department has decades of experience in the human resources field and knowledge of the FMLA, and experience in hiring and firing decision. [Complaint & Answer ¶229a, b; Complaint Exhibit I]

(ii)  Lori Graesser, an attorney in First Data's legal department, has more than 21 years of human resources, employment law, and labor law experience and is responsible for legal advice to First Data's Human Resources Department, employment legal compliance and the negotiation and litigation of employee terminations. [Complaint & Answer ¶229c,f]

(iii) Defendant Johnson is a Vice President of Human Resources of First Data with significant years of experience in the human resources field, knowledge of the FMLA,

and experience in hiring and firing decision. [Complaint & Answer ¶229d]

(iv)  First Data has established a leave dedicated group with its human resources department, the Leave Management Team at the First Data HR Service Center. The Leave Management Team's responsibilities are to assure First Data's operations comply with the FMLA. [Complaint & Answer ¶229g,h]; and

Most importantly

(v)  **Defendants Marino, Whalen and Johnson, EVP, SVP and VP in First Data's human resources department, knew their obligations under the FMLA on January 10, 2017 when Plaintiff presented, and Defendant Johnson accepted, Plaintiff's return to work authorization from his physician.** [Complaint & Answer ¶229n]

It is inconceivable that a team of such experienced human resources and legal professional were not aware of their obligations under the FMLA when taking action to discharge Plaintiff. Defendant Marino even acknowledged those obligations in his text messages of November 19, 2016 in which he nearly quoted the statute when he told the Plaintiff that he was not being fired, just placed on leave, and that "when you return your salary restores and you will be given a comparable job." [Complaint & Answer ¶¶136, 150]

Based solely on the pleadings, the Defendants did not act in good faith or reasonably (as defined for FMLA purposes above) when terminating the Plaintiff. The Plaintiff is entitled, as a matter of law, to doubling of damages.

An award of Plaintiff's reasonable fees and costs is also required under 29 USC §2617(a)(3)(the court "**shall**, in addition to any judgment for the plaintiff, a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.")

## VII.    <u>CONCLUSION</u>

Defendants admit they interfered with Plaintiff's right to be restored to his position or an equivalent position at the end of his FMLA leave. At the moment the Defendants accept Plaintiff's physician's return to work certification, Defendants were under a duty to restore Plaintiff under 29 U.S.C. §2914(a)(1). Mere conjecture does not create factual issues. Plaintiff was not part of a reduction-in –force when he delivered his physician's certification and requested reinstatement. Plaintiff was still an employee when his physician's authorization was accepted by First Data. At that time Plaintiff Barger had an absolute, clearly stated, statutory right <u>to be</u> restored. The DOL regulation 29 C.F.R. §825.216(a) is inapplicable once reinstatement is requested and is not entitled to defense. There is no justification (RIF, performance, after acquired evidence, etc.), as interference with FMLA rights are strict liability offenses and the Defendants intent is irrelevant.

For the foregoing reasons, the Plaintiff moves the Court pursuant to Fed. R. Civ. P. 12(c) for partial judgment on the pleadings (and documents incorporated into the pleadings) that this court determine, find, and rule as a matter of law as follows:

(i)    Defendants First Data, Bisignano, Marino and Charron interfered with Plaintiff's right to restoration under the FMLA 29 USC §2614 & 2615;

(ii)    The Plaintiff is entitled to judgment in the amount of the *ad damnum* set forth in the prayer plus interest on back-pay (($730,000 x 6) plus interest on back-pay and benefits plus the value of Plaintiff's options and restricted stock based on the market value of shares as traded);

(iii)    Defendants conduct entitles Plaintiff to doubling of damages awarded as provided in 29 USC §2617(a)(1)(A)(iii); and

(iv)  Plaintiff is entitled to recover fees and costs pursuant to 29 USC §2617(a)(3).

As an alternative, this motion seeks that the court determine, find and rule as a matter of law, as follows:

(i)   Defendants First Data, Bisignano, Marino and Charron interfered with Plaintiff's right to restoration under the FMLA 29 USC §2614 & 2615;

(ii)  Defendants conduct entitles Plaintiff to doubling of damages awarded pursuant to 29 USC §2617(a)(1)(A)(i) & (ii) as provided in 29 USC §2617(a)(1)(A)(iii);

(iii) Plaintiff is entitled to recover fees and costs 29 USC §2617(a)(3); and

(iv)  The amount of damages to be awarded pursuant to 29 USC §2617(a)(1)(A), together with fees and costs to be paid under 29 USC §2615(a)(3) are to be tried.

DATED February 6, 2018

THE LAW OFFICE OF SHAWN SHEARER, P.C.

By:/s/ Shawn Shearer
Shawn Shearer
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (214) 434-1594
*shawn@shearerlaw.pro*
Attorneys for Plaintiff