## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| STEVEN B. BARGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04869-FB-LB |
| | ) | |
| FIRST DATA CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## OPPOSITION OF DEFENDANTS FIRST DATA CORPORATION, FRANK BISIGNANO, DAN CHARRON, AND ANTHONY MARINO TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

III.    FEDERAL RULE OF CIVIL PROCEDURE 12(C) ................................. 3

IV.    LEGAL ARGUMENT ..................................................................................... 4

   A.  PLAINTIFF'S MOTION IS PREMATURE BECAUSE WHETHER THE INDIVIDUAL DEFENDANTS ARE "EMPLOYERS" UNDER THE FMLA INVOLVES OUTSTANDING QUESTIONS OF FACT AND LAW ................................................................................................ 4

   B.  PLAINTIFF'S MOTION IS PREMATURE BECAUSE WHETHER PLAINTIFF WAS ON FMLA-PROTECTED LEAVE AT THE TIME HE REQUESTED TO RETURN TO WORK IS A QUESTION OF FACT EVIDENT FROM THE PLEADINGS ................................................ 7

   C.  EVEN IF PLAINTIFF WAS ELIGIBLE TO RETURN TO WORK AT THE TIME OF HIS REQUEST, HE WAS NOT DENIED REINSTATEMENT ................................................ 10

   D.  EVEN IF PLAINTIFF WAS ELIGIBLE TO RETURN TO WORK AT THE TIME OF HIS REQUEST, AND EVEN IF HE WAS NOT REINSTATED, DEFENDANTS HAVE A VALID DEFENSE UNDER 29 CFR § 825.216 ................................................................................ 11

   E.  PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES BECAUSE DEFENDANTS DENIED LIABILITY AND THERE IS NO EVIDENCE OF DAMAGES. ........................................ 18

V.     CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

CASES

*Blankenship v. Buchanan Gen. Hosp.*,
  140 F. Supp. 2d 668 (W.D. Va. 2001) ...................................................13

*Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.*,
  2007 WL 3232244 (E.D.N.Y. Oct. 31, 2007) ..........................................6

*Estrada v. Cypress Semiconductor (Minn.) Inc.*,
  616 F.3d 866 (8th Cir. 2010) .................................................................13

*Gabriel v. Colo. Mountain Med., P.C.*,
  628 F. App'x 598 (10th Cir. 2015) ....................................................13, 16

*Geromanos v. Columbia Univ.*,
  322 F. Supp. 2d 420 (S.D.N.Y. 2004).....................................................17

*Gomez v. United States*,
  No. 09-22148-CIV, 2010 WL 3834211 (S.D. Fla. Sept. 28, 2010)...........6

*Graziadio v. Culinary Institute of Am.*,
  817 F.3d 415 (2d Cir. 2016)..........................................................4, 5, 6, 7

*Helton v. Wesley Health Sys., LLC*,
  No. 2:15-CV-20-KS-MTP, 2016 WL 913271 (S.D. Miss. Mar. 9, 2016)..............19

*Hyldahl v. AT&T*,
  2010 WL 1417966 (E.D. Mich. Mar. 23, 2010) ......................................19

*Jeffers v. Redlands Comty. Coll. Bd. of Regents*,
  2012 WL 137412 (W.D. Okla. Jan. 18, 2012) ........................................13

*Kilvitis v. County of Luzerne*,
  52 F. Supp. 2d 403 (M.D. Pa. 1999) ........................................................7

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
  274 F.3d 706 (2d Cir. 2001)....................................................................18

*Lacey-Manarel v. Mothers Work, Inc.*,
  2002 WL 506664 (S.D.N.Y. Mar. 29, 2002) ..........................................17

*Lehtinen v. Town of Greenport*,
  2014 WL 3477037 (N.D.N.Y. July 11, 2014) .........................................17

*Philipp v. Jerome H. Remick & Co.*,
  145 F. Supp. 756 (S.D.N.Y. 1956) ........................................................3, 7

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988)................................................................3

*Sheppard v. Beerman*,
    18 F.3d 147 (2d Cir. 1994).................................................................3

*Sista v. CDC Ixis N. Am., Inc.*,
    445 F.3d 161 (2d Cir. 2006)..............................................................13

*State Farm Mut. Auto. Ins. Co. v. Riley*,
    199 F.R.D. 276 (N.D. Ill. 2001)..........................................................6

*Sunderlin v. First Reliance Standard Life Ins. Co.*,
    235 F. Supp. 2d 222 (W.D.N.Y. 2002)...............................................6

*Thompson v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc.*,
    No. 07-CV-1047, 2008 WL 5377712 (E.D. Wis. Dec. 22, 2008)............6

*Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
    No. 16-CV-6609 (VSB), 2017 WL 4402567 (S.D.N.Y. Sept. 30, 2017)............3, 7

*Verby v. Paypal, Inc.*,
    2014 WL 1689684 (D. Neb. Apr. 29, 2014)......................................13

*Williams v. Shenango, Inc.*,
    986 F. Supp. 309 (W.D. Pa. 1997).....................................................13

*Yashenko v. Harrah's NC Casino Co., LLC*,
    446 F.3d 541 (4th Cir. 2006) .......................................................15, 16

*Ziccarelli v. NYU Hosps. Ctr.*,
    247 F. Supp. 3d 438 (S.D.N.Y. 2017)...............................................5, 7

**STATUTES**

29 U.S.C. § 2614.................................................................................13

29 U.S.C. § 2614(a)........................................................................8, 11

29 U.S.C. § 2614(a)(1)..................................................................14, 15

29 U.S.C. § 2614(a)(3)........................................................................14

29 U.S.C. § 2614(a)(3)(B)........................................................14, 16, 17

29 U.S.C. § 2615(a)(1)..................................................................13, 15

29 U.S.C. § 2617(a)(1)(A)(iii).............................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 825.216(a)................................................................................................12, 14, 16

29 C.F.R. § 825.301(d) ...............................................................................................................8

29 CFR § 825.216 .......................................................................................................... passim

60 Fed. Reg. 2180, 2216 (1995) ...............................................................................................17

S. Rep. No. 102-68 (1991) ........................................................................................................16

WRIGHT & MILLER, FED. PRAC. & PROC § 1368 (3d ed.) ...............................................................3

Defendants First Data Corporation ("First Data"), Frank Bisignano, Dan Charron, and Anthony Marino (collectively, "Defendants"), by and through their undersigned counsel, oppose the Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) ("Motion") filed by Plaintiff Steven b. Barger ("Plaintiff" or "Barger").

## I.      INTRODUCTION

Plaintiff filed a Complaint alleging that both corporate and individual Defendants violated the Family and Medical Leave Act ("FMLA"). (ECF No. 1).[1] Defendants filed a joint Answer and Affirmative Defenses, denying all of the substantive allegations regarding liability and asserting a number of defenses. (ECF No. 19). The Court then ordered that discovery proceed.

Plaintiff has now filed a Rule 12(c) motion for judgment on the pleadings, which is generally a procedural tactic employed by the defense. Plaintiff has concluded from reviewing Defendants' Answer that based on the pleadings, he is entitled to judgment on his FMLA interference claim against First Data and three of the five individual defendants. In his Motion, Plaintiff repeatedly cites to facts not in the record and asserts legal conclusions that are unsupported by law, including the claim that the FMLA imposes strict liability on an employer so no defense exists when an employer does not return an employee to work. Simply stated, Defendants' Answer as to the claim of FMLA interference raises a host of factual and legal questions that preclude judgment on the pleadings, and therefore, the Motion should be denied.

---

[1] Plaintiff has since filed a Supplemental Complaint to bring a claim under the Americans with Disabilities Act ("ADA") against First Data. (ECF No. 34). Defendants opposed this filing on the grounds that the proper vehicle to raise this claim was for Plaintiff to file an Amended Complaint instead of a Supplemental Complaint. Thus, the pleadings are no longer closed under Fed. R. Civ. P. 12(c) because Defendant First Data needs to file a response to the new allegations and cause of action contained in the Supplemental Complaint. Accordingly, the Motion should be deemed moot and Plaintiff should be required to refile it after the pleadings are closed. Out of an abundance of caution, Defendants are serving this Opposition on the Plaintiff by the deadlines established by the Court.

Furthermore, a party cannot ignore direct denials of critical allegations yet move for judgment on the pleadings without consequences. Under the standards imposed by Fed. R. Civ. P. 11(b), Defendants should also be awarded their attorneys' fees and costs incurred for having to respond to the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2017, Plaintiff filed a 282-paragraph Complaint asserting FMLA claims against First Data, Bisignano, Charron, Marino, Johnson, Whalen, and Lori Graesser (First Data's Assistant General Counsel, who has since been dismissed as a defendant). (*See* ECF No. 1, Compl.). The Complaint alleges that Defendants violated the FMLA by not reinstating Plaintiff following the conclusion of his leave and by retaliating against him for taking leave. (*See* ECF No. 1, Compl. Count I). Even though the only claim pled was under the FMLA, Plaintiff attached extraneous materials to his Complaint such as his charge of discrimination alleging violations of the ADA and the Age Discrimination in Employment Act ("ADEA") and First Data's Position Statement (the "Position Statement") filed by its counsel with the Equal Employment Opportunity Commission ("EEOC"). (*See, e.g.*, *See* ECF No. 1, Compl. Ex. B).

Defendants filed their Answer on November 20, 2017, and denied all of the substantive allegations regarding their potential liability under the FMLA as pled in the Complaint. (*See* ECF No. 19, Answer at ¶¶ 1-17, 19, 21-26, 29, 32, 34, 36-37, 39, 44, 46-54, 56-58, 60, 63, 65-73, 75-76, 78-79, 82, 87-89, 92, 96, 109-110, 125, 138, 141, 146, 148, 164, 166-167, 170-171, 173, 176, 182, 185-187, 189-199, 205-209, 211-213, 216, 218, 220, 222-223, 225-236, 242-249, 251-270, 273-275, 277, 279-282).

On January 22, 2017, Plaintiff served substantial discovery requests (Interrogatories, Document Requests, and Requests for Admission) on Defendants, seeking documents and

information necessary to support his allegations as well as seeking documents and information on the issues raised in Defendants' Affirmative Defenses.

Despite all of the denials and affirmative defenses in the Answer, and in the face of requesting discovery on factual issues, Plaintiff filed the instant Motion, arguing that these Defendants admitted liability on the FMLA interference claim. Plaintiff is completely wrong.

## III.    FEDERAL RULE OF CIVIL PROCEDURE 12(c)

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). In ruling on such a motion, a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-movant. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (citing *Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.*, 835 F.2d 980, 982 (2d Cir. 1987)).

Typically it is *defendants*, rather than *plaintiffs*, who file Rule 12(c) motions. This is reflected in Plaintiff's Motion where not one single case involves the court granting a *plaintiff's* motion under Rule 12(c). However, the same principles apply. "[T]he plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." WRIGHT & MILLER, FED. PRAC. & PROC § 1368 (3d ed.) (citing *Sheppard*, 18 F.3d at 147 (district court improperly resolved factual issue in dispute)). *See also Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 16-CV-6609 (VSB), 2017 WL 4402567, at *4 (S.D.N.Y. Sept. 30, 2017) (denying plaintiff's motion for judgment on the pleadings where defendant's denials in its answer created material disputes of fact); *Philipp v. Jerome H. Remick & Co.*, 145 F. Supp. 756, 757 (S.D.N.Y. 1956) (denying plaintiff's motion for judgment on the pleadings

because "material allegations in the complaint are denied by the defendant" therefore "raising

important issues of fact").

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's Motion is Premature Because Whether the Individual Defendants are "Employers" Under the FMLA Involves Outstanding Questions of Fact and Law.

To prevail on his claim for FMLA interference, Plaintiff concedes that he must establish

that Defendants Bisignano, Charron, and Marino are "employers" under the FMLA, 29 U.S.C.

§ 2611(4). (Mot. at 7).[2] The Second Circuit recently held that individuals may be deemed

"employers" for purposes of the FMLA only when they meet certain requirements. *Graziadio v.*

*Culinary Institute of Am.*, 817 F.3d 415 (2d Cir. 2016), a decision cited by Plaintiff in his Motion

at pages 8-9. In *Graziadio*, the Second Circuit adopted the "economic reality" test borrowed

from the Fair Labor Standards Act to analyze individual liability under the FMLA, explaining

that:

> Under this test, courts ask whether the alleged employer possessed
> the power to control the worker in question, with an eye to the
> 'economic reality' presented by the facts of each case. To do so,
> they consider a nonexclusive and overlapping set of factors,
> intended to encompass the totality of circumstances. These factors
> include whether the alleged employer (1) had the power to hire and
> fire the employees, (2) supervised and controlled employee work
> schedules or conditions of employment, (3) determined the rate
> and method of payment, and (4) maintained employment records.

817 F.3d at 422 (internal quotation and citations omitted). *See also Ziccarelli v. NYU Hosps.*

*Ctr.*, 247 F. Supp. 3d 438, 446 (S.D.N.Y. 2017) (noting that the test "is a factual inquiry that

---

[2] Defendants raise this particular argument with respect to Bisignano, Charron, and Marino—i.e., the individual Defendants against whom Plaintiff brought the instant Motion. According to footnote 1 of the Motion, Plaintiff is not seeking judgment against the other individual Defendants—Whalen and Johnson—because he "is only seeking judgment against the individual defendants that had corporate rank and authority in excess of [Plaintiff's] at the time of his termination." (Mot. at 2, fn. 1). If superior "corporate rank and authority" is the method by which Plaintiff has chosen the targets of his claims, then Plaintiff appears to be admitting that his claims against Whalen and Johnson are meritless. Accordingly, the FMLA claims against Whalen and Johnson should be dismissed.

does not bear on the sufficiency of the pleadings") (quoting *Smith v. Westchester County*, 769 F.
Supp. 2d 448, 475 (S.D.N.Y. 2011)). In applying the economic reality test to the facts at issue in
*Graziadio*, the court overturned the district court's grant of summary judgment to the defendants,
finding that a significant factual dispute existed as to whether the employer's human resources
director was in fact, plaintiff's "employer" in economic reality and under the FMLA.

Here, Plaintiff must have recognized that there are certain allegations he must plead to
establish that Bisignano, Charron, and Marino are "employers" under the economic reality test
for purposes of the FMLA. Paragraph 176 of the Complaint alleges:

> Each Individual Defendant (Bisignano, Marino, Charron, Whalen,
> Graesser, and Johnson) possessed the power to control Barger's
> employment with First Data, to fire Barger, to exercise supervisory
> authority over Barger, to determine Barger's compensation, and to
> maintain records regarding Barger's employment.

(ECF No. 1, Compl. ¶ 176). These factors track the economic reality test as adopted by
*Graziadio*. The Individual Defendants answered the allegations of Paragraph 176 as follows:

> The allegations in Paragraph 176 of the Complaint set forth a legal
> conclusion for which no response is required. To the extent a
> further response is required, *the allegations are denied*.

 (ECF No. 19, Answer ¶ 176 (emphasis added)). Additionally, Defendants' fourth Affirmative
Defense in the Answer states:

> The individual Defendants do not fall within the definition of
> "employer" under the FMLA.

(ECF No. 19, Answer at p. 39). It is clear from the pleadings that the individual Defendants
*denied* all of the factual allegations necessary for Plaintiff to establish that they are "employers"
under the FMLA.[3]

---

[3] Footnote 2 of the Motion makes the sweeping conclusion that any statement in the Answer which
provides that a "document speaks for itself" or that an "allegation states a legal conclusion for which no response is
required" constitutes an admission under Rule 8(b)—*even if* that statement also contains a proviso that "to the extent

Plaintiff ignores Defendants' denial of his allegations, and instead focuses on the direct

and indirect reporting relationships between Barger, Charron, Marino, and Bisignano—an

element that is not included in the specific factors of the *Graziadio* economic reality test. (Mot.

at 8-9).[4] Plaintiff's argument that "each [individual Defendant] acted directly or indirectly in the

interest of First Data towards him and, therefore, each is an 'employer'" is not supported by any

law in this circuit. It cannot be overlooked that Plaintiff does not cite to any case to support his

theory. It is not enough for Plaintiff to broadly claim that Bisignano, Charron, and Marino

qualify as employers under the FMLA simply because he says so, particularly where Defendants

have denied any and all factual allegations in the Complaint which address the issue of their

status as employers under the economic reality test. In addition, Defendants have asserted an

affirmative defense on this very issue. (ECF No. 1, Compl. ¶ 176; ECF No. 19, Answer ¶ 176

and p. 39).

As in *Graziadio*, here, a material dispute exists over whether the individual Defendants

controlled Plaintiff such that, in economic reality, they were his "employers." The dispute cannot

---

a further response is required, the allegations are denied." Plaintiff cites not one case within the Second Circuit to support this outlandish and impractical proposition. In fact, the practice of stating that a complaint contains a legal conclusion to which no response is required, but denying the allegation to the extent a response is required, is an accepted form of pleading within courts in the Second Circuit. *See Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 234 fn. 10 (W.D.N.Y. 2002) (treating defendant's answer as a denial where it wrote "Whether [an entity] is the plan administrator is a legal conclusion to which an admission or denial is not required. To the extent an admission or denial is required, defendant [] denies the same"); *see also Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc*., 2007 WL 3232244, at *4 (E.D.N.Y. Oct. 31, 2007) (even when a defendant defaults in not answering a complaint "[a]lthough factual allegations in a complaint are deemed admitted upon default, legal conclusions are not"); *Gomez v. United States,* No. 09-22148-CIV, 2010 WL 3834211, at *2 (S.D. Fla. Sept. 28, 2010) (where the party first noted that the document "speaks for itself" but then went on to "deny any and all liability and any and all penalties," the court held that the party denied the allegations in the paragraph). Even if the Court were to agree with Plaintiff's argument, the proper recourse is to grant Defendants leave to amend their Answer. *See State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 278 (N.D. Ill. 2001); *Thompson v. Ret. Plan for Employees of S.C. Johnson & Sons, Inc*., No. 07-CV-1047, 2008 WL 5377712, at *4 (E.D. Wis. Dec. 22, 2008).

[4] Similarly, "corporate rank and authority in excess of [Plaintiff's]" is not a determinative factor of the economic reality test. (*See* Mot. at fn. 1, *supra*). If Plaintiff is choosing to rely solely on formal reporting structures and superior "corporate rank and authority" as a means of establishing who is an "employer" under the FMLA, then not only does his Motion against Bisignano, Charron, and Marino fail for the reasons described in this Section, but his claims against Whalen and Johnson also fail.

be decided on the face of the pleadings alone pursuant to Fed. R. Civ. P. 12(c).[5] *See Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 414-16 (M.D. Pa. 1999) (denying motion for judgment on the pleadings as to whether defendant qualified as an "employer" under the FMLA because "[a]dditional discovery is needed in order to determine the extent of [defendant's] control over the terms and conditions of [plaintiff's] employment."); *see also Ziccarelli*, 247 F. Supp. 3d at 446;*Vasquez*, 2017 WL 4402567, at *4; *Philipp*, 145 F. Supp. at 757. It is uncontroverted that the pleadings raise issues of fact that preclude a motion for judgment on the pleadings against Defendants Barger, Charron, and Marino under the FMLA as a matter of law.

### B.    Plaintiff's Motion is Premature Because Whether Plaintiff was on FMLA-Protected Leave at the Time he Requested to Return to Work Is a Question of Fact Evident From the Pleadings.

Barger's Motion for judgment on his FMLA interference claim rests on a flawed conclusion that he was an FMLA-protected employee on January 10, 2017, when he provided his physician's authorization, and therefore, he had an absolute right to be restored to work. (*See, e.g.*, Mot. at 13, 17-19). Plaintiff's argument is ignoring a critical factual and legal dispute established by the pleadings: whether Plaintiff was on FMLA-protected leave on January 10, 2017, when he notified First Data that he was ready to return to work. The pleadings demonstrate that Defendants deny that Barger was on FMLA leave on January 10, 2017.

When First Data initially received Plaintiff's FMLA paperwork, the documents indicated that his leave of absence began on October 24, 2016. Based on this date, First Data approved FMLA leave for 12 full weeks, retroactive from October 24, 2016, through January 16, 2017, as

---

[5] In fact, Plaintiff implicitly acknowledges a factual dispute on this point by serving discovery requests aimed at determining which of Defendants exercised supervisory authority over Plaintiff, and the contours of any such authority. (*See, e.g.*, Interrogatory No. 1 to First Data; Request for Admission No. 2 to First Data). If it were obvious from the face of the pleadings that the Defendants were "employers" for purposes of the FMLA, such discovery would be unnecessary.

approved by Department of Labor regulations. *See* 29 C.F.R. § 825.301(d). First Data sent a

letter to Barger confirming these dates. (*See* ECF No. 1, Compl. Ex. G).

Plaintiff devotes no fewer than 13 pages in the Motion to the argument that as an

employee out on FMLA leave, he had an absolute right to restoration of employment at the

conclusion of his leave. (Mot. at 7-20). For example, he quotes and emphasizes the provision of

29 U.S.C. § 2614(a) providing that an eligible employee taking leave "<u>shall be entitled on return</u>

<u>from</u> such <u>leave</u> . . . <u>to be restored</u> . . ." (Mot. at 12 (emphasis in original)). To support his

Motion, Plaintiff cites to Paragraph 2(ii) of the Complaint:

> First Data approved Barger's FMLA leave for the period from
> October 24, 2016 to January 16, 2017;

Defendants answered ¶ 2(ii) of the Complaint as follows:

> Admitted. By way of further answer, additional FMLA leave was
> *approved retroactively to cover the period from September 5, 2016*
> *through November 28, 2016.*

(ECF. No. 1, Compl. and ECF No. 19, Answer ¶ 2(ii) (emphasis added)). As established by the

Answer to Paragraph 2(ii), the 12-week period of FMLA leave relied on by Barger to support his

claim is different than the 12-week period of FMLA leave that Defendants identify in their

Answer to Paragraph 2(ii).

Defendants do not solely rely on Paragraph 2(ii) of the Answer to assert that Barger's

FMLA leave ended on November 28, 2016, as Plaintiff's Complaint makes reference to the same

facts. First Data's Position Statement to the EEOC, which Plaintiff appended to and made a part

of his Complaint, further explains that Barger's FMLA leave actually began on September 5,

2016, instead of October 24, 2016:

> Based on the date that his physician used in the FMLA
> certification, Barger's initial leave date was set as October 24,
> 2016. Subsequently, the Company received other medical

> documentation from Barger that used September 5, 2016, as the
> date for leave purposes and when MetLife processed the STD, it
> confirmed that was the date. For FMLA purposes, Barger's leave
> date was set as September 5, 2016, so that his FMLA leave would
> expire on November 28, 2016. After his FMLA leave expired,
> Barger remained out on ADA leave until January 13, 2017.

(ECF. No. 1, Compl. Ex. B, p. 5, fn. 1).[6] Defendants' Sixth Affirmative Defense also asserts that

"Plaintiff cannot establish a prima facie case of FMLA interference because he was not denied

FMLA benefits to which he was entitled." (ECF No. 19, Answer at p. 39).

The person with knowledge of the change to Barger's leave date was Jennifer Voycheske,

a First Data Human Resources Manager responsible for Leave Management, who was helping

Barger with various leave issues. As Voycheske was assisting Barger with his application for

short-term disability, she learned that his leave had actually begun on September 5, 2016, some

six weeks earlier than previously reported. Barger confirmed to Voycheske that the new date was

correct. She also confirmed that September 5, 2016, was the correct date in the records of

MetLife, First Data's third-party administrator for its short and long-term disability programs.

(*See* Declaration of Jennifer Voycheske ("Voycheske Decl.")).

After receiving this confirmation, Voycheske corrected the start date of Barger's FMLA

leave in First Data's system to September 5, 2016, which in turn caused a new letter to be

automatically generated and mailed to Barger setting forth the adjusted dates of his FMLA leave.

By the time Voycheske received the correct date, Barger's FMLA leave had long since expired.

Accordingly, the letter sent to him on January 5, 2017, listed the full 12 weeks of leave and

advised Barger that:

---

[6] Defendants do not concede that statements in the Position Statement constitute admissions of fact or any other type of evidence, and expressly reserve the right to challenge Plaintiff's reliance on the Position Statement as part of his claims. Defendants cite to the Position Statement here only because it would be prejudicial to allow Plaintiff to include it as part of his pleadings but then deny Defendants the right to acknowledge it (and the factual disputes it creates) in opposing Plaintiff's motion for judgment on the pleadings.

**Your FMLA exhausted on 11/28/16. Approval for additional
time is being requested from your business unit.**

(Voycheske Decl. at ¶ 18, Ex. 4. (emphasis in original)). Plaintiff never questioned, nor raised

concerns with Voycheske about the new FMLA dates in the January 5, 2017 letter.

It follows that at the time Barger indicated he was ready to return to work, he was no

longer on FMLA-protected status.[7] If Barger was not on FMLA leave at the time he indicated

that he was ready to return, then Defendants cannot be liable for "interfering" with his FMLA

rights. As set forth above, there is no basis in fact or law for Barger to prevail on his Rule 12(c)

Motion that the pleadings entitle him to judgment against Defendants for interference with his

rights under the FMLA. His Motion should be denied.

Conversely, while Defendants have not moved for judgment on the pleadings pursuant to

Rule 12(c), based on First Data's January 5, 2017 letter to Barger, which indicates that his full 12

weeks of FMLA leave began on September 5, 2016, and expired on November 28, 2016, well-

before he notified First Data that he was ready to return to work on January 10, 2017, Barger

should be required, pursuant to Fed. R. Civ. P. 56(f)(1), to show cause as to why judgment

should not be entered in favor of all of Defendants with respect to his FMLA interference claim

because he was not an otherwise FMLA-eligible employee at the time he decided to return to

work.

### C. Even if Plaintiff Was Eligible to Return to Work at the Time of his Request, he Was Not Denied Reinstatement.

Assuming that Plaintiff could somehow overcome the hurdle that he was no longer

eligible to be reinstated in January 2017, he is not entitled to judgment on his interference claim

---

[7] Plaintiff's repeated assertion that Plaintiff and First Data were in an employee-employer relationship on January 10, 2017, when he requested reinstatement is a red herring. (*See, e.g.*, Mot. at 18). Just because Plaintiff was an employee who was once eligible for FMLA leave, took his FMLA leave, and exhausted his FMLA leave entitlement, he is not forever cloaked with FMLA restoration rights.

because there is a question of fact as to whether he was reinstated. 29 U.S.C. § 2614(a) provides

generally that an employee taking FMLA leave:

> shall be entitled, on return from such leave—
> (A) to be restored by the employer to the position of
> employment held by the employee when the leave commenced; or
> (B) to be restored to an equivalent position with equivalent
> employment benefits, pay, and other terms and conditions of
> employment.

Despite Plaintiff's argument, the pleadings indicate that he was not denied reinstatement

and terminated when he decided to return to work. After Plaintiff advised that he was ready to

return, he was restored to full pay and benefits while First Data tried to negotiate a severance

package with him. (*See* ECF No. 1, Compl. ¶ 169; Voycheske Decl. at ¶¶ 23-26). During this

time period, he earned over $60,000 (or the equivalent of $480,000 annually, which was his base

salary) until his employment was terminated. (*See* Voycheske Decl. at ¶ 24, Ex. 5, attaching

Barger's pay stubs for the period). Accordingly, it would be improper to grant his Motion as it

relates to his interference claim because there is a dispute as to whether Barger was reinstated

prior to his termination.

### D. Even if Plaintiff Was Eligible to Return to Work at the Time of his Request, and Even if he was Not Reinstated, Defendants have a Valid Defense Under 29 CFR § 825.216.

Ignoring well-established case law, a DOL regulation on point, and the legislative history

of the FMLA, Plaintiff advances the theory that judgment should be entered on the pleadings

arguing the FMLA is a strict liability statute, and therefore, he had an absolute right to

reinstatement. Without conceding that Plaintiff was entitled to be reinstated, his argument is

incorrect because First Data's decision to include him in a company-wide reduction in force (*See*

ECF No. 19, Answer at ¶¶ 2(v)-(x), 90-92, 166, 168) is a legitimate business reason and serves

as a defense to Barger's claim for FMLA interference. Twenty-nine C.F.R. § 825.216(a)

provides that an employer may choose not to return an employee to work after an FMLA leave if the employee would have been separated regardless. It is evident from his Motion that Plaintiff disagrees with judicial decisions to the contrary and he claims that the Department of Labor exceeded its regulatory authority to enact 29 C.F.R. § 825.216(a). Given the state of the law, there is no basis to award judgment on the pleadings to Barger on his claim of FMLA interference.

Plaintiff argues that Defendants are strictly liable for interfering with his FMLA rights because he was not restored to his position after he submitted his return to work authorization on January 10, 2017. (Mot. at 9). Without citing any legal authority, Barger surmises: "First Data could have chosen NOT to require a physician's authorization, but once that condition was imposed, and Defendant Johnson, on behalf of Defendant First Data, accepted the authorization, Plaintiff's request to be restored was formalized and his rights under the FMLA triggered." (*Id.* at 10). According to Plaintiff, "[n]one of the Defendants' excuses matter" because FMLA interference is a strict liability offense. (*Id.* at 9, 11).

Nothing in the legislative history of the FMLA makes any reference to "strict liability." Plaintiff does not cite, and Defendant is not aware, of any case in the Second Circuit holding that the FMLA imposes strict liability.[8] Although there are not any Second Circuit cases on point, the overwhelming majority of cases to have addressed this issue have ruled that the FMLA does not

---

[8] The three cases Plaintiff cites in his Motion are unpersuasive. *Sharif v. United Airlines, Inc.*, is an FMLA retaliation case in which the Fourth Circuit ruled in the employer's favor and did not even mention the phrase "strict liability." 841 F.3d 199 (4th Cir. 2016). The two other cases, *Shenango* and *Blankenship,* are older cases decided by district courts outside of the Second Circuit and not particularly illuminating for purposes of deciding the instant Motion. *See Williams v. Shenango, Inc.*, 986 F. Supp. 309, 317-18 (W.D. Pa. 1997) (announcing a strict liability standard but denying summary judgment because of material factual disputes regarding employer's interference); *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 673 (W.D. Va. 2001) (noting *Shenango*'s analysis but ultimately citing 29 C.F.R. § 825.216(a) and holding that "the employer may avoid liability by showing, by a preponderance of the evidence, that the employee would not have otherwise been employed at the time reinstatement was requested").

impose strict liability. *See, e.g., Gabriel v. Colo. Mountain Med., P.C.,* 628 F. App'x 598, 602 (10th Cir. 2015) ("[Plaintiff's] overarching argument is that an employer violates the FMLA if it does not reinstate the employee, no matter what the reason. But the FMLA does not impose strict liability." (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) ("Section 2615(a)(1) is . . . not a strict liability statute") and 29 C.F.R. § 825.216(a))); *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010) ("[T]he FMLA is not a strict-liability statute. An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave. . . . Therefore, an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.") (internal quotation marks and citations omitted); *Jeffers v. Redlands Comty. Coll. Bd. of Regents*, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012) (similar); *Verby v. Paypal, Inc.*, 2014 WL 1689684, at *13 (D. Neb. Apr. 29, 2014) (similar); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) ("The FMLA provides that at the end of an employee's leave the employee has the right to return to the position he held before the leave or its equivalent, see 29 U.S.C. § 2614, though this right is not absolute.").

Plaintiff is forced to concede "that several circuits have determined that the right to restoration in 29 U.S.C. §2614(a)(1) is limited by the exception in 29 U.S.C. §2614(a)(3), and that DOL regulation, 29 C.F.R. §825.216(a), is a reasonable interpretation of the statute and subject to deference." (Mot. at 14). Plaintiff disagrees with these decisions because their application will cause the dismissal of his FMLA claim. As Plaintiff acknowledges, 29 C.F.R . § 825.216(a) provides:

(a) *An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.* An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:

(1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. *An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.* Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position.

(emphasis added); *see also* 29 U.S.C. § 2614(a)(3)(B) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.").

First Data's Position Statement and Defendants' Answer to the Complaint assert that Plaintiff's employment was terminated as a result of a company-wide reduction-in-force having nothing to do with Plaintiff's FMLA leave. (*See, e.g.*, ECF No. 19, Answer at ¶¶ 2(v)-(x), 90-92, 166, 168, p. 29 (Fifth, Sixth, and Seventh Affirmative Defenses); ECF No. 1, Compl. Ex. B). Defendants have denied liability under 29 U.S.C. § 2615(a)(1), laid the foundation for their defense, and already supplied the record with evidence supporting it. (*See, e.g.*, ECF No. 19, Answer ¶¶ 1-2, 90-92, 166, 168, 189-199, 205-208, 211-213, 227-231, p. 29 (Fifth, Sixth, and Seventh Affirmative Defenses); ECF No. 1, Compl. Ex. B).[9]

---

[9] Plaintiff's argument that Defendants' Affirmative Defenses are "merely repetition of denials" and "irrelevant to the arguments set forth in this motion" indicates a misunderstanding of the purpose of answers and

In response, Plaintiff argues that 29 C.F.R. § 825.216 is inconsistent with the FMLA and not entitled to deference under the *Chevron* analysis. (Mot. at 15). Although there is no Second Circuit case dealing with this argument, the Fourth Circuit addressed this precise issue in *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547-48 (4th Cir. 2006). Like here, the plaintiff in *Yashenko* first claimed that 29 U.S.C. § 2614(a)(1) cloaked him with an absolute entitlement to restoration. *Id.* at 547. The court disagreed, explaining that:

> Every other circuit to consider an argument like Yashenko's has concluded that § 2614(a) of the FMLA provides an employee only a limited right to restoration to his previous employment position. In particular, an employer can avoid liability under the FMLA if it can prove that it would not have retained an employee had the employee not been on FMLA leave.

*Id.* (internal quotation marks omitted; collecting various Circuit Court cases). The plaintiff also argued that the regulation was contrary to the plain language of the statute since it contemplates a "restored employee." *Id.* The court again disagreed, holding:

> Yashenko's reading of § 2614(a)(3)(B)—confining its limitation to employees who have been restored to their previous position of employment—ignores the broad statutory command that "[n]othing" in § 2614 entitles a restored employee to 'any . . . position of employment' to which he would not have been entitled 'had the employee not taken the leave." 29 U.S.C.A. § 2614(a)(3)(B). Yashenko's failure to consider this statutory command is particularly significant because the plain language of this command clearly contradicts the meaning he ascribes to the phrase "restored employee."

*Id.* at 547-48. The *Yashenko* court did, however, acknowledge some ambiguity in the statute which could, and should, be resolved by looking to the regulation. *Id.* at 548. In applying the *Chevron* analysis, the court held that 29 C.F.R. § 825.216 addressed precisely the issue of

---

affirmative defenses. (Mot. at 20). A defendant is not required to set forth affirmative facts in responding to a complaint. *See* Fed. R. Civ. P. 8(b). If Plaintiff takes issue with the Affirmative Defenses in Defendants' Answer, the proper recourse is a motion to strike under Rule 12(d)—not a motion for judgment on the pleadings.

whether there are limitations on an employer's obligation to reinstatement employee. *Id.* It

explained:

> Considering § 825.216(a) in conjunction with the entire statutory
> scheme Congress has enacted, clearly the construction adopted by
> the Secretary of Labor reflects a reasonable interpretation of §
> 2614(a)(3)(B). Construing § 2614(a)(3)(B) as qualifying the right
> to restoration for all employees taking FMLA leave, the Secretary
> avoids the anomalous results that would arise under an absolute
> entitlement scheme. And the Secretary's construction, unlike
> Yashenko's, is entirely compatible with Congress's efforts to
> pursue the goals of the FMLA in a manner that "accommodates the
> legitimate interests of employers." 29 U.S.C.A. § 2601(b)(3). For
> these reasons, we find § 825.216 to be a reasonable construction of
> the FMLA, and we defer to the Secretary of Labor's interpretation
> of § 2614(a).

*Id.* at 548-49.[10] This Court should do the same.

Moreover, contrary to Plaintiff's position, the legislative history of the FMLA

demonstrates that Congress and the DOL *intended* § 825.216(a) to cover similar situations. The

Senate Committee on Labor and Human Resources issued a report explaining 29 U.S.C. §

2614(a)(3)(B) and noting "for example, . . . if, but for being on leave, an employee would have

been laid off, the employee's right to reinstatement is whatever it would have been had the

employee not been on leave when the layoff occurred." S. Rep. No. 102-68, at 48 (1991).

The DOL echoed the Senate Committee's view in responding to public comments on the

regulations. 60 Fed. Reg. 2180, 2216 (1995). For example, several businesses asked about the

application of 29 C.F.R. § 825.216 when an employer goes through a downsizing while an

employee is on leave, asking "must the employee still be kept on leave for the remainder of the

planned FMLA leave if he or she would have been permanently laid off when the downsizing

---

[10] Even if, contrary to *Yashenko* and years of case law precedent, the regulation is invalid, courts have come
to the conclusion on their own—without reliance on 29 C.F.R. § 825.216—that an employee seeking to be restored
following FMLA leave has no greater protection against employment termination for reasons unrelated to FMLA
than the employee did before taking leave. *See Gabriel v. Colo. Mountain Med., P.C.*, 628 F. App'x at 602.

occurred?" *Id*. The DOL responded that "an eligible employee under FMLA is entitled to no greater right of employment than if leave had not been taken." *Id*. The DOL stated that this position was supported by the legislative history of the FMLA and quoted the above language from the Senate Committee report. Thus, the legislative and regulatory history of the FMLA demonstrates that this issue was contemplated and resolved in favor of the proposition that reinstated employees do not have greater rights than they would if they had never went on leave.

Many courts have relied on 29 U.S.C. § 2614(a)(3)(B) and 29 C.F.R. § 825.216 to refuse to impose liability on an employer where, like here, an employee was discharged prior to restoration, reasoning that the discharge would have occurred regardless of the employee's exercise of FMLA rights. *See, e.g.*, *Lacey-Manarel v. Mothers Work, Inc.*, 2002 WL 506664, at *2 (S.D.N.Y. Mar. 29, 2002) (holding that plaintiff's FMLA claim failed because the employer terminated the plaintiff's employment while she was out on leave based on "a substantial reorganization, prompted by legitimate business considerations, that affected the positions of numerous manager-level employees"); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 428 (S.D.N.Y. 2004) ("The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination."); *Lehtinen v. Town of Greenport*, 2014 WL 3477037, at *10 (N.D.N.Y. July 11, 2014) (granting employer's motion for summary judgment because "the evidence shows that Plaintiff was terminated for her poor performance, the extent of which appears to have been fully realized during Plaintiff's FMLA leave."); *see also Kosakow v. New Rochelle Radiology Assocs.*, *P.C.*, 274 F.3d 706, 733 (2d Cir. 2001) ("[I]f it were determined that [the employer] terminated [the employee] for financial reasons unrelated to her leave, that termination would not be in violation of the FMLA.").

At this very early stage in the proceedings, whether First Data's reasons for including Barger within the reduction in force fall within the safe harbor of 29 C.F.R. § 825.216, and remains an issue for the trier of fact. Drawing all inferences from the pleadings in favor of Defendants, a motion for judgment on the pleadings could not be more inappropriate.

**E.      Plaintiff is Not Entitled to Any Damages Because Defendants Denied Liability and there is No Evidence of Damages.**

Despite no evidence of damages, Plaintiff's Motion concludes with a request that this Court award him all of the damages stated in the *ad damnum* including back pay, front pay for 10 years, lost benefits, interest, and liquidated damages. (Mot. at 23). Of course, the Answer denies Barger's entitlement to any damages. (ECF No. 19, Answer ¶¶ 1, 277, 279-282). The Federal Rules of Civil Procedure require far more than demanding damages in a complaint before they are awarded.

By way of example, Plaintiff's assertion that the Court should award liquidated damages based on the pleadings is unreasonable. Plaintiff believes that just like his claim for strict liability under the FMLA, liquidated damages should also be automatic under the statute. Notwithstanding, Plaintiff concedes that the award of liquidated damages under the FMLA requires the court to determine whether a defendant acted in good faith and had reasonable grounds for its action. (Mot. at 21; *see* 29 U.S.C. § 2617(a)(1)(A)(iii)). The determinations required by Section 2617(a)(1)(A)(iii) cannot be made on the pleadings alone, but instead require the court to hear evidence on factual issues regarding the defendant's actions and its intent in taking them. *See Hyldahl v. AT&T*, 2010 WL 1417966, at *5 (E.D. Mich. Mar. 23, 2010) ("Accordingly, an evidentiary hearing is necessary to determine whether Plaintiff is entitled to liquidated damages."); *Helton v. Wesley Health Sys., LLC*, No. 2:15-CV-20-KS-MTP, 2016 WL 913271, at *3-4 (S.D. Miss. Mar. 9, 2016) (denying defendant's motion for partial summary

18

judgment as to FMLA liquidated damages because "there exist genuine issues of material fact regarding Defendant's good faith and the reasonableness of its belief that its actions did not violate the FMLA."). Tellingly, Plaintiff has not cited a single case awarding a plaintiff liquidated damages under the FMLA on a Rule 12(c) motion.

Instead, Plaintiff makes a sweeping and false assertion that "Defendants admit in the pleadings that they neither acted in good faith nor reasonably" apparently since Defendants "do not allege anything affirmative as to their review of any RIF, the termination of the Plaintiff, or their examination of applicable law." (Mot. at 22). This statement is without any legal or evidentiary support. Once again, Plaintiff has chosen to ignore the plain language of the pleadings. Paragraph 230 of the Complaint alleges:

> Defendants' violations of the FMLA were not based on Defendants' good faith and reasonable belief that refusal to allow Barger to return timely from his FMLA leave, refusal to restore Barger to his employment, salary, pay and benefits of his or an equivalent position, and termination of Barger, were compliant with FMLA.

(ECF No. 1, Compl. ¶ 230), to which Defendants responded:

> Denied.

(ECF No. 19, Answer ¶ 230). In furtherance of their denials, Defendants also asserted the following affirmative defenses regarding Plaintiff's demand for damages:

> **Fourteenth Affirmative Defense**
> Defendants acted reasonably and in good faith at all times with regard to the employment decisions at issue in the Complaint.

> **Fifteenth Affirmative Defense**
> For purposes of preserving a defense, Plaintiff has failed to mitigate his damages, if any.

(ECF No. 19, Answer at pp. 40-41). To the extent Plaintiff is claiming that Defendants were required to affirmatively plead facts regarding their review of the reduction-in-force, Plaintiff's

termination of employment, or the Defendants' examination of applicable law regarding same, Plaintiff misunderstands the purpose of an answer.[11]

Damages under the FMLA—whether liquidated or otherwise—cannot be awarded simply because Plaintiff demands them in a Complaint. Defendants denied liability for violating the FMLA, denied that their actions were not taken in good faith and were unreasonable, and put forth affirmative defenses regarding their actions and raised a factual issue regarding Plaintiff's mitigation efforts. (*See generally* ECF No. 19, Answer). Asking this Court to award all of the damages in the *ad damnum* in the Complaint is premature and entirely inappropriate.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for Partial Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) be denied in its entirety, that the Court issue an order to show cause why summary judgment should not be entered in favor of the Defendants on Plaintiff's claim for interference under the FMLA, and that the Court issue notice pursuant to Fed. R. Civ. P. 11 to Plaintiff with an opportunity to be heard as to why attorneys' fees and costs should not be awarded to Defendants for having to respond to the Motion, which lacks basis in fact and law and which was filed for an improper purpose.

---

[11] *See supra*, fn. 9.

Dated: February 20, 2018

Respectfully submitted,

*/s/ Gary B. Eidelman*
Gary B. Eidelman
Saul Ewing Arnstein & Lehr LLP
500 East Pratt Street, Suite 900
Baltimore, Maryland 21202
T: (410) 332-8975
gary.eidelman@saul.com

Gillian A. Cooper
Saul Ewing Arnstein & Lehr LLP
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
gillian.cooper@saul.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

_____

STEVEN B. BARGER,             )

            )

         Plaintiff,       )

            )

     v.            )     Case No. 1:17-cv-04869-FB-LB

            )

            )

FIRST DATA CORPORATION, *et al.*,   )

            )

        Defendants.    )

_____)

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of Defendants First Data Corporation ("First Data"), Frank Bisignano, Dan Charron, and Anthony Marino's (collectively, "Defendants") (1) memorandum of law in opposition to Plaintiff Steven B. Barger's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), (2) the Declaration of Jennifer Voycheske, with Exhibits, and (3) this Certification of Service were served on the following counsel via electronic mail and Federal Express:

Stephen M. Zeitlin, Esq.
David A. Zeitlin, Esq.
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, New York 11201
T: (718) 522-5644
david@zeitlinlawfirm.com
*Attorneys for Plaintiff*

Shawn E. Shearer, Esq.
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
T: (214) 434-1594
shawn@shearerlaw.pro
*Attorneys for Plaintiff*

_/s/ Gary B. Eidelman_
Gary B. Eidelman

Dated: February 20, 2018

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

———————————————————————————

STEVEN B. BARGER,

                Plaintiff,

      v.

FIRST DATA CORPORATION, *et al.*,

               Defendants.

———————————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:17-cv-04869-FB-LB

**DECLARATION OF JENNIFER VOYCHESKE IN SUPPORT OF THE OPPOSITION
OF DEFENDANTS FIRST DATA CORPORATION, FRANK BISIGNANO, DAN
CHARRON, AND ANTHONY MARINO TO PLAINTIFF'S MOTION FOR PARTIAL
<u>JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)</u>**

I, Jennifer Voycheske, hereby declare and certify as follows:

        1.      My name is Jennifer Voycheske. I am above the age of majority and am

competent to provide this written sworn testimony under oath.

        2.      This Declaration is submitted in opposition to the Motion for Partial Judgment on

the Pleadings pursuant to Rule 12(c) (the "Motion") filed by Plaintiff Steven B. Barger

("Barger"). This Declaration is based upon my personal knowledge.

        3.      I am a citizen of the State of Nebraska residing in Omaha.

        4.      My title is Manager Human Resources Operations for First Data Corporation

("First Data"). I have held this position for two years, 10 months. Prior to my current position, I

held a number of various Human Resources positions at First Data for an approximate 12 and

one-half years.

5.     My current job duties and responsibilities include managing First Data employees' leaves of absence, including but not limited to leaves under the Family and Medical Leave Act ("FMLA") and First Data's short-term and long-term disability plans. As part of these duties and responsibilities, I track available leave and leave taken, communicate with employees about their leave, pay and benefits, and coordinate with First Data's third party administrator, MetLife, which handles short-term and long-term disability claims for First Data.

6.     I am familiar with Barger's leave of absence resulting from his surgery, which began in the Fall of 2016. I communicated with Barger and his wife, Marilyn Barger, several times in late 2016 and January 2017, about his leave and associated benefits.

7.     I am aware that in Barger's Complaint, he alleges that his FMLA leave began on October 24, 2016, and was scheduled to end on January 16, 2017.  As set forth below, those allegations are not completely accurate and do not reflect what actually transpired with respect to Barger's leave.

8.     First Data received Barger's FMLA paperwork on December 15, 2016, which indicated that his leave of absence began on October 24, 2016. Based on this information and in accordance with FMLA regulations, Barger was approved for 12 weeks of FMLA leave, retroactive from October 24, 2016 through January 16, 2017.

9.     To confirm that his FMLA leave had been approved, First Data sent Barger a letter dated December 15, 2016, notifying him of the dates for which his leave was approved. These letters are automatically generated by First Data's system and are sent via U.S. mail to the employee. I have reviewed Exhibit G to Barger's Complaint and believe it to be a true and correct copy of this December 15, 2016 letter.

10.     On December 21, 2016, after Barger's paid time off had been exhausted, I emailed Barger explaining his option to transition to short-term disability, which paid 66.67% of an employee's normal rate of pay. A true and correct copy of my email communication to Barger is attached as Exhibit 1.

11.     On January 5, 2017, I advised Barger that MetLife had not yet approved his short-term disability claim and that he should reach out directly to MetLife to ensure that he provided the necessary information so that his pay would not be impacted. *See* Ex. 1.

12.     Barger replied to my email and said that MetLife had approved his short-term disability benefits from September 4, 2016, through October 15, 2016, and that MetLife needed additional information from his doctor to extend the benefit. *See* Ex. 1. This was new information because Barger was now reporting that his leave did not actually begin on October 24, 2016, but on September 5, 2016, some 7 ½ weeks earlier.

13.     Because the September 5, 2016, date conflicted with First Data's records, I advised Barger of the discrepancy and asked him to confirm the date he began missing work. *See* Ex. 1.

14.     When I spoke with Barger on the phone, he clarified that he began missing work on September 5, 2016, instead of October 24, 2016.

15.     I also contacted MetLife to confirm when Barger's leave began. I obtained a computer screenshot from MetLife indicating that it had approved Barger's short-term disability benefits beginning September 4, 2016, and not October 24, 2016. A true and correct copy of this screenshot is attached as Exhibit 2.

16.     I advised other members of First Data's Leave Management team about the discrepancy. I informed them that since both Barger and MetLife had confirmed that Barger's

- 3 -

leave began September 5, 2016, (not October 24, 2016), we needed to recalculate the start date of his FMLA leave to September 5, 2016, and recalculate his pay and benefits. A true and correct copy of this email is attached as <u>Exhibit 3</u>.

17.     Based on the information that First Data received from Barger and MetLife, First Data's records were changed to reflect that Barger's FMLA leave start date was September 5, 2016.

18.     Because this change impacted the date range of Barger's FMLA leave, First Data sent him a letter dated January 5, 2017, advising that his FMLA leave was approved from September 5, 2016, through November 28, 2016. I inputted the information in the system to generate the January 5, 2017 letter, a true and correct copy of which is attached as <u>Exhibit 4</u>.

19.     The January 5, 2017 letter stating that Barger's FMLA leave began on September 5, 2016, and expired on November 28, 2016, was not included as an exhibit to Barger's Complaint.

20.     After First Data sent <u>Exhibit 4</u> to Barger, he never contacted me to ask any questions about this letter or the change in his FMLA approval dates.

21.     It is not unusual to adjust the dates of an employee's FMLA leave when First Data receives new medical information from an employee or MetLife, even if it requires First Data to retroactively designate leave as FMLA-approved leave in accordance with FMLA regulations.

22.     According to First Data's records, Barger's 12 weeks of FMLA leave ended on November 28, 2016.

23.     As stated in paragraph 16 above, the change in Barger's FMLA start date necessitated a recalculation of his pay. Accordingly, I reviewed Barger's payroll records from

- 4 -

2016 and 2017 when he was on a leave of absence. I am aware that in Barger's Complaint, he alleges that he was not restored to work on January 10, 2017, following the conclusion of his leave of absence. According to First Data's records, however, he was paid his full salary and benefits through February 28, 2017, as set forth below.

24.     True and correct copies of Barger's pay stubs covering the pay period of January 15, 2017, through February 28, 2017, are attached as Exhibit 5.

25.     As shown in Exhibit 5, these pay stubs demonstrate that Barger was being paid his full wages as a W-2 employee during this time at the rate of $20,000 per pay period, which equals $480,000 when annualized.

26.     The pay stubs also show pre-tax deductions for benefits like his 401(k) retirement account—deductions which indicate that such payments were typical compensation rather than another type of payment such as severance.

I declare under 28 U.S.C. § 1746 and penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 20, 2018

Jennifer Voycheske

# Exhibit 1



**From:** VOYCHESKE, JENNIFER L.
**Sent:** Thursday, January 05, 2017 4:27 PM
**To:** Steve Barger
**Subject:** RE: Leave of Absence Pay Breakdown

Thanks Steve.  Can you clarify when you stopped working? Was it on 9/4/16 or 10/22/16?

Thanks again.

**From:** Steve Barger [mailto:steve@thebargergroup.com]
**Sent:** Thursday, January 05, 2017 4:24 PM
**To:** VOYCHESKE, JENNIFER L.
**Subject:** Re: Leave of Absence Pay Breakdown

You're correct. I plan on returning Jan 17. Will get dr approval on 10th.
Not sure why Ruth indicated differently.

Steve Barger
"Find your purpose and live it"

**From:** VOYCHESKE, JENNIFER L. <jennifer.Voycheske@firstdata.com>
**Sent:** Thursday, January 5, 2017 4:19:12 PM
**To:** Steve Barger; 'mjmsbb@yahoo.com'

**Cc:** Johnson, Rhonda J.
**Subject:** RE: Leave of Absence Pay Breakdown

Hi Steve,

Our records from your physician indicates you didn't start missing work until 10/22/16.  When did you start missing work?

In addition, we have paid you through 12/31/16.  In order to provide additional pay beyond that date, we will need MetLife's approval to do so.

Thank you!

**From:** Steve Barger [mailto:steve@thebargergroup.com]
**Sent:** Thursday, January 05, 2017 3:07 PM
**To:** VOYCHESKE, JENNIFER L.; 'mjmsbb@yahoo.com'
**Cc:** Johnson, Rhonda J.
**Subject:** Re: Leave of Absence Pay Breakdown

Ruth called and said she approved pay from 9/4 until 10/15. She is waiting for additional info from doctor to extend payment to 12/3.

Steve Barger
"Find your purpose and live it"

**From:** VOYCHESKE, JENNIFER L. <jennifer.Voycheske@firstdata.com>
**Sent:** Thursday, January 5, 2017 1:44:39 PM
**To:** 'mjmsbb@yahoo.com'; Steve Barger
**Cc:** Johnson, Rhonda J.
**Subject:** RE: Leave of Absence Pay Breakdown

Good Afternoon Marilyn and Steve,

I hope this email finds you well and having enjoyed the New Year.  I wanted to reach out to you to let you know that MetLife has not yet approved Steve's Short Term Disability claim, so we are not able to issue any pay on Steve's 1/13/2017 paycheck unless we receive approval by 1/6/2017 (tomorrow).  I encourage you to reach out to them directly, if you haven't already, to discuss what additional information they may need from you to get the claim approved.  Once we receive approval from MetLife, we will resume payment.

MetLife can be reached at 877-638-4332.  Your claim manager is Ruth and her extension is ext. 6534.

Please let me know if you have additional questions.

Thank you!

*Jennifer Voycheske*
*HR Manager: Leave Management & HR Solutions*
*First Data, 7301 Pacific Street, Omaha, NE 68114*
*Office: 402-777-3708 | Mobile: 402-212-2863*

Jennifer.Voycheske@firstdata.com | firstdata.com



**From:** VOYCHESKE, JENNIFER L.
**Sent:** Wednesday, December 21, 2016 1:49 PM
**To:** mjmsbb@yahoo.com; Steve Barger (steve@thebargergroup.com)
**Cc:** Johnson, Rhonda J.
**Subject:** Leave of Absence Pay Breakdown

Hi Steve and Marilyn,

It was a pleasure speaking with the both of you today.  I hope I was able to clearly explain Steve's pay benefit while he is on his leave of absence and that this written breakdown will give you some comfort from a financial perspective.

As I stated on the call, Steve's physician indicated that his leave of absence needed to begin on 10/24/2016 and has projected that Steve will need to remain out until approximately 3/1/2017.  As we discussed, if you are able to return earlier than 3/1/2017 that is great, we just need confirmation from your physician that you are released to return and on what date.  In terms of your pay, below you will find a breakdown of how the benefit time that you had available when your leave began has been paid to you while you are out.

Let's start with your benefit time. When your leave began you had the following benefit time available for payout:
- **92.00 hours** of accumulated sick time (sick bank)
- **40.00 hours** of current sick time (2016 grant)
- **16.00 hours** of personal time
- **160.00 hours** of vacation

One thing I want to ensure you are aware of is how payroll calculates hours paid for salaried employee's on a leave of absence.  As you know, since salaried employees are paid on the 16th and 31st each month, that usually doesn't equal exactly 10 working days/80.00 hours per pay period; it often accounts for 11 or 12 working days. In order to account for that extra time, payroll calculates a pay period for salaried employees as equal to 86.67 hours versus the 80.00 hours used for hourly employees.  That calculation is also used when paying benefit time during a leave of absence.  The total hours paid each pay period totals 86.67 hours.

Ok, so let's now look at how you have been paid since your leave began on 10/24/17 to ensure 100% pay for as long as possible.

- On your paycheck dated **10/31/2015** (10/15-10/31), you were paid **39.40** hours of regular worked time and **47.27** hours of accumulated sick; which equals a full **86.67 hours**

- On your paycheck dated **11/15/2016** (11/01-11/15), you were paid the remaining **44.73** hours of your accumulated sick, then **40.00** hours of current sick, and finally **1.94** hours of personal; which equals a full **86.67 hours**

- On your paycheck dated **11/30/2016** (11/16-11/30), you were paid the remaining **14.06** hours of personal and **72.61** hours of vacation; which equals a full **86.67 hours**

- On your paycheck dated **12/15/2016** (12/1-12/15), you were paid **86.67** hours of vacation, thus a full paycheck

As of 12/16/2016 your benefit time was exhausted, thus the remaining time you are out through the 90 day STD period (approximately 01/20/2017) you will be paid the short term disability benefit of 66 2/3% of your normal rate of pay.  As of today, we have not yet received the approval from MetLife, our STD vendor, thus we aren't able to pay any disability on the 12/31/16 check yet.  Once we receive that approval, we will issue pay for 12/16/16 through 12/31/16.  I am hoping we receive that approval this week, so there will not be a delay in pay.  Once STD has been approved, I will follow up via email to let you know, so you are wondering about that piece.

That is where we are today.  If you have any questions or concerns, please feel free to reach out to me via email or phone.

Take care and have a happy holiday!!

**Jennifer Voycheske**
*HR Manager: Leave Management & HR Solutions*
*First Data, 7301 Pacific Street, Omaha, NE 68114*
*Office: 402-777-3708* | *Mobile: 402-212-2863*

Jennifer.Voycheske@firstdata.com | firstdata.com

## First Data.

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify First Data immediately by replying to this message and deleting it from your computer.

# Exhibit 2

| Employee: Edit | SSN: |
|---|---|
| BARGER, STEVE | XXX-XX-0102 |

| Date of Birth: Edit | ID Number: 🔲 Edit |
|---|---|
| 09/14/1944 | 247809 |

| Claim Type: | Claim Number: |
|---|---|
| Short Term Disability | 351612168339 |
| | Associated with LTD claim: |
| | 711701191341 |

**Date Last Worked:** Edit
09/01/2016

**New Search: Check a Claim**

Claim Number [ ] go

Claim Questions: 1-888-608-6665
Technical Questions: 1-877-9METWEB

[Employee Claim Summary]   [Attending Physician Forms]

## Message / Attachments

**Add Message / Attachment**

You can send messages or attachments to MetLife by clicking the above link. Due to the sensitive nature of these messages, they will not be viewable on the web.

## Claim Status: CLOSED - 01/18/2017

**Explanation:** Our records show the employee has not yet returned to work, but the claim has reached the maximum benefit period allowable according to the disability plan.

## Return to Work (RTW) Information

**Edit Return to Work Date**

**Actual RTW Date:** - Edit

## General Claim Information

**Edit More Information** ⌄

| **Claim Received Date:** | 12/16/2016 | **Work-Related Absence:** Edit No |
|---|---|---|
| **Benefit Start(Approved From) Date:** | 09/18/2016 | **Workers' Compensation Filed:** - |
| **Benefit Through(Approved Through) Date:** | 12/03/2016 | **Accident Date:** Edit - |
| **Date of Disability:** | 09/04/2016 | |
| **Maximum Benefit Duration Date:** | 12/03/2016 | |

# Exhibit 3

**Kennedy, Lindsey C.**

| | |
|---|---|
| **From:** | VOYCHESKE, JENNIFER L. |
| **Sent:** | Thursday, January 05, 2017 6:40 PM |
| **To:** | Luebbe, Melinda (Non-Employee) |
| **Cc:** | Hedrick, Debra; Steffen, Amy |
| **Subject:** | RE: Steve Barger  #247809 |
| | |
| **Importance:** | High |

Hi Mindy,

It looks like MetLife approved Steve from 9/4/16 through 10/15/16 before they suspended the claim awaiting additional information. I have advised Steve that we don't have any medical information confirming he missed work prior to 10/22/2016.  He has clarified he began missing work on 9/5/2016.  Based on MetLife's approval, we need to back date his leave start date to 9/5/2016 and recalc his pay.  Steve states that his claim Manager at MetLife verbally advised him that she is going to approve the claim through the STD Max Duration of 12/03/2016, but obviously we have not seen that yet. If and when we receive this approval, I am thinking we may still owe him some additional SD6.  Can you confirm that?

If you can hold on looking to recoup the SD6 we paid in good faith on 12/31/16 until we know the outcome of his claim approval, I would appreciate it.  In the meantime, I have been as clear as I can with Steve that he is currently not scheduled to be paid on 1/15/17 since we do not have STD approval.

I have redone his FMLA panels to reflect his true leave dates, so you should see this come over on tomorrow's initials and approvals reports.

More to come.  I appreciate your patience and flexibility on this one.

Jen

**From:** Luebbe, Melinda (Non-Employee) //
**Sent:** Wednesday, January 04, 2017 5:52 PM
**To:** VOYCHESKE, JENNIFER L.
**Cc:** Hedrick, Debra
**Subject:** FW: Steve Barger #247809
**Importance:** High

Hi Jen,

I paid him a full check for 12/30/16.  I show this is still not approved in MetLife.  The only thing out there is a suspended claim for 9/4/16 – 10/15/16.  Please advise.

Thank you,
Mindy

**From:** VOYCHESKE, JENNIFER L.
**Sent:** Wednesday, December 21, 2016 4:59 PM
**To:** Luebbe, Melinda (Non-Employee)
**Cc:** Hedrick, Debra
**Subject:** FW: Steve Barger #247809
**Importance:** High

Hi Mindy,

Although we have not received STD for Steve Barger yet, I have gotten approval to pay him 86.67 of SD6 on his 12/30/16 paycheck.  Can you process this on tomorrow's pay run?

I greatly appreciate your help!

Jen

**From:** Steffen, Amy
**Sent:** Wednesday, December 21, 2016 4:53 PM
**To:** VOYCHESKE, JENNIFER L.
**Subject:** RE: Steve Barger

I approve this.

**Amy Steffen**
VP, North America HR Operations
First Data, 7301 Pacific Street, Omaha, NE 68114
Office: 402-777-3536 | Mobile: 402-332-8037

Amy.Steffen@firstdata.com | firstdata.com

First Data.

**From:** VOYCHESKE, JENNIFER L.
**Sent:** Wednesday, December 21, 2016 4:52 PM
**To:** Steffen, Amy
**Subject:** Steve Barger

Hi Amy,

Steve Barger's STD approval is currently pending and payroll is running tomorrow to pay all salaried OAs on 12/30/16.  Can we add 86.67 of SD6 pay to Steve's 12/30 check, understanding approval of STD is highly likely, so as not to negatively impact him while on his leave?

Please advise.

Thank you!

*Jennifer Voycheske*
*HR Manager: Leave Management & HR Solutions*
*First Data, 7301 Pacific Street, Omaha, NE 68114*
*Office: 402-777-3708 | Mobile: 402-212-2863*

Jennifer.Voycheske@firstdata.com | firstdata.com

First Data.

# Exhibit 4

**First Data.**

7301 Pacific Street A19
Omaha, NE 68114-5447

01/05/2017

Steve Barger
95 Tamarisk Drive
Atlanta, GA  30342

Dear Steve:

Your request for a leave of absence meets the criteria and qualifies as a leave under the Family and Medical Leave Act ("FMLA"), and therefore has been approved for the following dates:

Leave Start Date:                         09/05/2016
Expected Return to Work Date:        11/28/2016

**Your FMLA exhausted on 11/28/2016.  Approval for additional time is being requested from your business unit.**

Reminder: If you have not yet spoken with a MetLife representative regarding short-term disability (STD), please contact MetLife directly at 1-877-MET-4FDC (1-877-638-4332) Monday through Friday from 8 a.m. to 8 p.m. eastern time to begin this process. Failure to contact MetLife to initiate the short-term disability claim process may result in a pay delay and/or discrepancy in pay.

**Compliance Training:** If you are assigned compliance training while on a leave of absence, and that training becomes overdue, you will receive one or more overdue notices upon your return to work.  Please ensure you take the applicable training within one week of your return to work to ensure compliance.

In addition, because your leave request is due to your own serious health condition, the attached Physician's Return to Work form must be completed and sent to Leave Management prior to your return. This information should be faxed to 1-866-620-8941.

If you have any questions, please contact Leave Management at 1-888-348-4835, Option #1.

Sincerely,

Leave Management Team
First Data HR Service Center

# Exhibit 5

# First Data.

**Steve Barger**

95 Tamarisk Drive

Atlanta, GA 30342

USA

*First Data Merchant Svcs Group*

6200 South Quebec Street STE 450A Payroll Tax Dept
Greenwood Village CO 80111

| | | |
|---|---|---|
| Pay Date | 01/31/2017 | |
| Advice # | 4112297 | |
| Pay Period Start | 01/16/2017 | |
| Pay Period End | 01/31/2017 | |
| W-4 Fed Withholding | M | |
| W-4 Primary State Withholding | S | |

## Additional Tax Withholding

| | |
|---|---|
| Fed | $0.00 |
| State | $0.00 |
| Local | $0.00 |

## Exemptions

| | |
|---|---|
| Fed | 2 |
| State | 0 |
| Local | 0 |

| Earnings Totals | Current | YTD |
|---|---|---|
| Gross Pay | $22,000.00 | $22,000.00 |
| Net Pay | $11,848.84 | $11,848.84 |

| Deduction Totals | Current | YTD |
|---|---|---|
| Taxes | $8,687.26 | $8,687.26 |
| Other Deductions | $1,463.90 | $1,463.90 |

| Earnings Detail | Current | YTD |
|---|---|---|
| **CostGTLIFE | $341.96 | $341.96 |
| In Lieu No | $22,000.00 | $22,000.00 |

| Deductions Detail | Current | YTD |
|---|---|---|
| *Total Statutory* | | |
| Federal W/H Tax | $5,737.77 | $5,737.77 |
| Social Sec Tax | $1,385.20 | $1,385.20 |
| Medicare Tax | $323.96 | $323.96 |
| GA W/H Tax | $1,240.33 | $1,240.33 |
| *Total Total Statutory* | $8,687.26 | $8,687.26 |
| *Total Voluntary* | | |
| *401(K) | $1,100.00 | $1,100.00 |
| Supp Life | $363.90 | $363.90 |
| *Total Total Voluntary* | $1,463.90 | $1,463.90 |

| Other Information | | |
|---|---|---|
| Employee ID | | 247809 |
| Adj Prd Start Date | | 01/16/2017 |
| Adj Prd End Date | | 01/31/2017 |

| Distributions | | Current |
|---|---|---|
| 2799 | | $11,848.84 |

Messages

Questions? Contact the Employee Resource Line at (888) 348-4835 and select Option 1.
* - Before Tax Deduction excluded from Federal Taxable Amount
** - Taxable Benefit Included in Federal Taxable Amount

Case 1:17-cv-04869-FB-LB   Document 37-1   Filed 02/27/18   Page 48 of 49 PageID #: 525

# First Data.

**Steve Barger**

95 Tamarisk Drive

Atlanta, GA 30342

USA

| | |
|---|---|
| Pay Date | 02/15/2017 |
| Advice # | 4117541 |
| Pay Period Start | 02/01/2017 |
| Pay Period End | 02/15/2017 |
| W-4 Fed Withholding | M |
| W-4 Primary State Withholding | S |

## Additional Tax Withholding

| | |
|---|---|
| Fed | $0.00 |
| State | $0.00 |
| Local | $0.00 |

## Exemptions

| | |
|---|---|
| Fed | 2 |
| State | 0 |
| Local | 0 |

*First Data Merchant Svcs Group*

6200 South Quebec Street STE 450A Payroll Tax Dept
Greenwood Village CO 80111

| Earnings Totals | Current | YTD |
|---|---|---|
| Gross Pay | $20,000.00 | $42,000.00 |
| Net Pay | $11,110.37 | $22,959.21 |

| Deduction Totals | Current | YTD |
|---|---|---|
| Taxes | $7,707.68 | $16,394.94 |
| Other Deductions | $1,181.95 | $2,645.85 |

| Earnings Detail | Current | YTD |
|---|---|---|
| **CostGTLIFE | $170.98 | $512.94 |
| In Lieu No | $20,000.00 | $42,000.00 |

| Deductions Detail | Current | YTD |
|---|---|---|
| *Total Statutory* | | |
| Federal W/H Tax | $5,038.27 | $10,776.04 |
| Social Sec Tax | $1,250.60 | $2,635.80 |
| Medicare Tax | $292.48 | $616.44 |
| GA W/H Tax | $1,126.33 | $2,366.66 |
| *Total Total Statutory* | $7,707.68 | $16,394.94 |
| *Total Voluntary* | | |
| *401(K) | $1,000.00 | $2,100.00 |
| Supp Life | $181.95 | $545.85 |
| *Total Total Voluntary* | $1,181.95 | $2,645.85 |

| Other Information | | |
|---|---|---|
| Employee ID | | 247809 |
| Adj Prd Start Date | | 02/01/2017 |
| Adj Prd End Date | | 02/15/2017 |

| Distributions | Current |
|---|---|
| 2799 | $11,110.37 |

Messages
Questions? Contact the Employee Resource Line at (888) 348-4835 and select Option 1.
* - Before Tax Deduction excluded from Federal Taxable Amount
** - Taxable Benefit Included in Federal Taxable Amount

Case 1:17-cv-04869-FB-LB   Document 37-1   Filed 02/27/18   Page 49 of 49 PageID #: 526

# First Data.

**Steve Barger**

95 Tamarisk Drive

Atlanta, GA 30342

USA

| | |
|---|---|
| Pay Date | 02/28/2017 |
| Advice # | 4124208 |
| Pay Period Start | 02/16/2017 |
| Pay Period End | 02/28/2017 |
| W-4 Fed Withholding | M |
| W-4 Primary State Withholding | S |

## Additional Tax Withholding

| | |
|---|---|
| Fed | $0.00 |
| State | $0.00 |
| Local | $0.00 |

## Exemptions

| | |
|---|---|
| Fed | 2 |
| State | 0 |
| Local | 0 |

**First Data Merchant Svcs Group**
6200 South Quebec Street STE 450A Payroll Tax Dept
Greenwood Village CO 80111

| Earnings Totals | Current | YTD |
|---|---|---|
| Gross Pay | $20,000.00 | $62,000.00 |
| Net Pay | $11,110.37 | $34,069.58 |

| Deduction Totals | Current | YTD |
|---|---|---|
| Taxes | $7,707.68 | $24,102.62 |
| Other Deductions | $1,181.95 | $3,827.80 |

| Earnings Detail | Current | YTD |
|---|---|---|
| **CostGTLIFE | $170.98 | $683.92 |
| In Lieu No | $20,000.00 | $62,000.00 |

| Deductions Detail | Current | YTD |
|---|---|---|
| *Total Statutory* | | |
| Federal W/H Tax | $5,038.27 | $15,814.31 |
| Social Sec Tax | $1,250.60 | $3,886.40 |
| Medicare Tax | $292.48 | $908.92 |
| GA W/H Tax | $1,126.33 | $3,492.99 |
| *Total Total Statutory* | $7,707.68 | $24,102.62 |
| *Total Voluntary* | | |
| *401(K) | $1,000.00 | $3,100.00 |
| Supp Life | $181.95 | $727.80 |
| *Total Total Voluntary* | $1,181.95 | $3,827.80 |

| Other Information | | |
|---|---|---|
| Employee ID | | 247809 |
| Adj Prd Start Date | | 02/16/2017 |
| Adj Prd End Date | | 02/28/2017 |

| Distributions | Current |
|---|---|
| 2799 | $11,110.37 |

Messages
Questions? Contact the Employee Resource Line at (888) 348-4835 and select Option 1.
* - Before Tax Deduction excluded from Federal Taxable Amount
** - Taxable Benefit Included in Federal Taxable Amount