# EXHIBIT 1

Shawn E. Shearer (*Pro Hac Vice*)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (214) 434-1594
*shawn@shearerlaw.pro*

Attorneys for Plaintiff
Steven B. Barger

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION, *et al.*<br><br>Defendants. | Case No. 1:17-cv-4869 |

**NOTICE OF RULE 30(b)(6) DEPOSITION**

PLEASE TAKE NOTICE that pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff in the above-captioned case (the "Plaintiff") will take the oral deposition, under oath, of the First Data Corporation ("First Data") through one or more officers, directors, agents or other representatives who shall be designated to testify on First Data's behalf regarding all information known or reasonably available to First Data with respect to the subject matters identified in Exhibit A. Plaintiff requests that First Data provide written notice at least five (5) business days before the deposition of the name(s) and employment position(s) of the individual(s) designated to testify on First Data's behalf.

This deposition shall commence on June 13, 2018 Regus – One Glenlake Parkway, Suite 650 & 700, Atlanta, Georgia, 30328, or at such other time and location as agreed upon by the parties, and shall be taken before a duly certified court reporter and notary public or other person

authorized by law to administer oaths. The deposition will be recorded by stenographic and video means.

Dated: April 23, 2018

THE LAW OFFICE OF SHAWN SHEARER, P.C.

Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (214) 434-1594
*shawn@shearerlaw.pro*

Attorneys for Plaintiff

**EXHIBIT A**
**Barger v. First Data et al.**

## DEFINITIONS

As used below, the terms defined below have the following meanings:

1. "First Data" means First Data Corporation, and all its majority owned subsidiaries.

2. "Plaintiff" means Steven B. Barger, the plaintiff in this case.

3. "Complaint" means the Complaint and Supplemental Complaint filed by Plaintiff in this case.

4. "Answer" means the Answer the Complaint and the Answer to the Supplemental Complaint filed by any of the defendants in this case.

5. The terms "and" shall mean 'or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

6. The term "any" shall also mean "all" and *vice versa*.

7. The term "concerning" or "relating" shall mean relating to, referring to, describing, evidencing, constituting, consisting of, discussing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing, or bearing any other logical or factual connection.

8. All of the following shall apply and are intended to bring within the scope of these requests any response that might otherwise be omitted. The use of a word in any tense shall be construed as the use of that word in all tenses. The singular includes the plural, and the plural includes the singular. The term "including" means "including but not limited to." The terms "and" and "or" encompass both "and" and "or" (thus, "and" or "or" means "and/or"). Words in the masculine, feminine or neuter form shall include all of the other genders as well.

# TOPICS

## TOPIC 1 –ACCOUNTING AND FINANCIAL DISCLOSURE

(a) First Data's accounting (financial accounting, general ledger accounting, and tax accounting) policies and procedures, and the policies, and the procedure for documenting and auditing those accounting policies and procedures.

(b) First Data's accounting processes and procedures (financial accounting, general ledger accounting, and tax accounting) for treatment of compensation for employment and benefits, such as hourly employee compensation, salaried employee compensation, paid-time-off ("PTO"), unpaid leave, paid leave, vacation pay, sick time, personal time, personal days, FMLA leave, all other types of leave arrangements, hourly-PTO, salaried PTO, and any alternative compensation and benefit arrangements.

(c) First Data's accounting (financial accounting, general ledger accounting, and tax accounting) for employees on payroll, receiving payment of short-term disability benefits, or receiving payment of long-term disability benefits, and any combination of the above, including a description of, and explanation of, the accounting treatment and meaning of the accounting technical terms used in First Data's document production to date (e.g. references to "SD6" in the context of disability payments, and other accounting coding references, terminology, and references used within First Data).

(d) First Data's written and unwritten internal processes and procedures for preparing and filing First Data's financial reports and disclosures with the SEC (10-Q, 10-K, 8-K, 14A, S-1, S-3, S-8, Forms 3, 4 and 5, etc.), as well as the processes and procedures for obtaining auditors consent, audit committee approval, board approval, and signatures of required officers for those filings.

(e) First Data's financial disclosures within its SEC filings, including without limitation, the accounting treatment and financial statement disclosure of reserves, cost controls, restructuring charges, and the 2018 fourth quarter tax treatment.

(f) The preparation and disclosure process, and content of, the Management Discussion and Analysis section of First Data's 10-Qs and 10-Ks for the quarterly and annual periods during First Data fiscal years 2016, 2017, and 2018.

(g) First Data's processes and procedures for receiving, processing, and addressing employee concerns and reports of accounting irregularities, including all audit committee for receiving and responding to employee or auditor accounting policy and implementation concerns and/or issues reported.

(h) First Data's processes and procedures for the creation, amendment, and audit of its internal control policies and procedures.

(i) First Data's internal control policies and procedures for all technological systems used by First Data's human resources department, payroll, and its supporting functions, including without limitation the internal control policies and procedures for all mobile applications deployed to any First Data employee or contractor by First Data, the origin/designer/d of all mobile applications deployed, and all persons or entities receiving information collected or sent by those mobile applications.

(j) First Data's current internal controls and procedures applicable to employee and independent contractor compensation and benefits.

(k) First Data's accounting (financial accounting, general ledger accounting, and tax accounting) for all aspects of a "reduction-in-force", as that term is used in the Answer in this case, including without limitation all aspects of the differences in accounting treatment between terminations in a "reduction-in-force" and a termination outside of a "reduction-in-force", if any.

(l) First Data's methods, processes and systems for determining the number of employees of First Data at any given time.

(m) First Data's processes, procedures, documentation, delegation, resolutions, and grants of authority regarding employee and officer authority to expend corporate funds, commit the corporation to contracts, and to settle disputes regarding the business and litigation First Data.

## TOPIC 2 – INFORMATION TECHNOLOGY

(a) Functionality, access, and business purposes of all the information technology systems referred to within Defendants' document production, and and other systems involved in Plaintiff's scope of employment, including the Palantir technology utilized in products and services provided by First Data (e.g. Insightics, Insight, etc.), in other technology and systems sold and marketed by First Data, and within and included within the product offerings that employees trained by Plaintiff were tasked by First Data to sell. These systems, include, but are not limited to, GOOD, MSS, OOO, 1DC account, internal e-mail, systems used by the e-mail "loahelp", Palantir programs, apps, and systems, all cloud, internally hosted or externally hosted systems (including SAAS systems) for communications with MetLife regarding disability insurance benefits, systems used in all screen shots produced in the initial document production, Hagerstown Mainframe (North/South/Concord/BANA) and Denver Mainframe (SY1/EFTPS), PeopleSoft, VPN, and any other internally hosted, cloud hosted or SAAS systems utilized by First Data in its human resources, compensation, and accounting functions.

(b) The functionality and data recording and retention capabilities of all mobile applications and programs, including Good and any Palantir based applications and programs, used by Plaintiff as part of First Data's employee mobile operating

    functionality to access First Data's information systems (including third-party systems to which First Data has access or from which First Data receives data and information).

(c) First Data's social media content, connectivity, access, and internal controls and procedures (including any content, connectivity, access and internal controls for outsourced social media content editors, providers, crawlers, etc.).

(d) First Data's capabilities, procedures, implementation, and retention of information gathered from employee mobile devices, and/or applications used by employee mobile devices to access First Data's systems, including without limitation Good and VPN.

## TOPIC 3 – HUMAN RESOURCES AND EMPLOYEE BENEFITS

(a) First Data's disability insurance benefits, including the negotiation and execution of the operative documents for First Data's disability insurance benefits in place during the relevant periods of the current litigation.

(b) Term and conditions of all equity-based compensation plans and agreements relevant to the stock option and restricted stock awards by First Data to Plaintiff, and any other equity-based compensation plans and agreements in effect between January 2013 and February 2017.

(c) Terms and conditions of all of First Data's severance, separation, OWBPA, WARN, reduction-in-force, and any other similar employment termination plans, policies, agreements, and procedures in effect between January 2013 and present.

(d) First Data's plans, policies and procedures for the implementation and execution of any "reduction-in-force" (as that term is used in the Answer) during the period between January 2014 and present.

(e) First Data's plans, policies and procedures for the implementation and execution of the FMLA, ADA, other leave, terms and conditions of employment, and other relevant terms and conditions of employment included with the document production by First Data in this case.

(f) The circumstances and conditions under which First Data has provided any OWBPA disclosures between January 2014 and present.

(g) First Data's methods, processes and systems for determining the number of employees of First Data at any given time.

## TOPIC 4 – CORPORATE GOVERNANCE AND CORPORATE RECORDS

(a) General description of First Data's legal hold process including all details of that policy and specific steps that were taken in this case to implement a legal hold, including without limitation, the timing of issuing the legal hold and to whom it was issued, substance of the legal hold communication (if the communication is not considered privileged), process for tracking and follow-up with the legal hold sources to ensure understanding and compliance with the hold process, whether there are any auto-delete processes in place at First Data, and if so, whether there where and what steps were taken to disable them and when those steps were taken.

(b) First Data's process, procedure, documentation, and retention of information for the implementation of any "reduction-in-force", as that term is used in the Answer, during any time after January 1, 2015, including, without limitation, First Data's process, procedure and documentation of the decision to implement a "reduction-in-force", First Data's process, procedure, and documentation of any approvals by the board, committee of the board, management committee, human resources, and/or management to implement a "reduction-in-force", and the criteria used to select potential and actual individuals to be included in that "reduction-in-force"

(c) First Data's process, procedure, location, and responsibility for the maintenance of corporate governance records, including, without limitation, minutes of the board of directors, minutes of any committee of the board of directors, minutes of any committee of management or officers, maintenance of records regarding the implementation of any "reduction-in-force" (as used in the Answer), and any other official action (e.g. contracts) by an officer or agent of First Data related to governance records.

(d) First Data's processes, procedures, documentation, delegation, resolutions, and grants of authority regarding employee and officer authority to expend corporate funds, commit the corporation to contracts, and to settle disputes regarding the business and litigation First Data.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2018, I transmitted the attached document and a copy of the same to the following CM/ECF registrant via e-mail to each of their CM/ECF registered e-mail addresses:

>Gary Eidelman
>Saul Ewing Arnstein & Lehr
>500 E. Pratt Street, Suite 900
>Baltimore Maryland 21202-3133
>
>Gillian Cooper
>Saul Ewing Arnstein & Lehr
>650 College Road East, Suite 400
>Princeton, NJ 08540-6603
>
>*Attorneys for Defendants*

/s/ Shawn Shearer