# EXHIBIT 2



**SAUL EWING ARNSTEIN & LEHR** LLP

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

April 30, 2018

### THE PURPOSE OF THIS LETTER IS TO RESOLVE A DISCOVERY DISPUTE UNDER FED. R. CIV. P. 20(C) AND LOCAL RULE 26.5

<u>Via Electronic and First Class Mail</u>

Shawn E. Shearer, Esquire
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204

Re:     *Steven B. Barger v. First Data Corporation et al.*
        Civil Case No. 1:17-cv-4869

Dear Shawn:

This letter acknowledges receipt of the Notice of Rule 30(b)(6) Depositions ("Notice") and accompanying cover e-mail dated April 23, 2018.[1] Before addressing each of the topics you have identified in the Notice, we must first take note of language contained in your April 23, 2018 email in which you wrote:

> With regard to your commentary as to the review of the 30(b)(6) topics, you know that the standard to be applied is not relevance.

Not only is your statement wrong, but it also demonstrates a fundamental misunderstanding about the purpose of discovery under the Federal Rules of Civil Procedure. Relevancy has and always will be the cornerstone of discovery. The 2015 amendments to the

---

[1] We presume that you selected June 13, 2018 as a deposition date in Atlanta as a placeholder. Be advised that we are not available on that date, but once we come to an agreement on the topics that are relevant for a 30(b)(6) witness(es), we will work with you to schedule depositions at mutually agreeable dates, times and locations as we have done so far with respect to the upcoming depositions of Frank Bisignano, Josh King, Robin Ording, Karen Whalen and Tony Marino. As set forth below, we have also identified Jennifer Voycheske, Amy Steffen and Stephanie Pulverenti as fact and 30(b)(6) witnesses who have relevant knowledge and information, all of whom are in Omaha. Unfortunately, their scheduled depositions in late March needed to be postponed due to my mother in law's death and funeral, but they remain available to be deposed.

Shawn E. Shearer, Esq.
April 30, 2018
Page 2

Federal Rules have made this even more abundantly clear with the inclusion of proportionality as a key element of all discovery.

This case is not a securities class action or a shareholders' derivative suit, nor does it involve a mass data breach, or a class or collective action under wage and hour laws, which is what even the most cursory of reviews of the topics contained in the Notice would suggest it is. Rather, in his Complaint and Supplemental Complaint, Plaintiff Steven Barger has set forth two causes of action creating the following legal issues: (i) did First Data and the individual Defendants interfere with his rights under the Family and Medical Leave Act by not reinstating his employment; (ii) did First Data and the individual Defendants retaliate against Barger for exercising his FMLA rights; and (iii) did First Data fail to accommodate Barger's disability under the Americans with Disabilities Act. First Data and the individual Defendants deny these allegations and assert that Barger's employment was terminated for legitimate business reasons by being including in a reduction in force as part of a company-wide reorganization. These are the issues for which discovery is appropriate.

It seems evident that Plaintiff seeks to use discovery in this case for purposes that have nothing to do with his claims under the FMLA and ADA. This is illustrated by your April 20, 2018 email which makes reference to a recent article in Bloomberg. In that email you wrote:

> When three First Data executives, Bisignano (CEO), Chiarello (President) and Cavicchia (SVP) are all mentioned in connection with a Peter Theil software enterprise that monitors employee communications, and related to Zuckerberg, Musk and privacy invasions, and Mr. Bisignano is implicated as a leak of JP Morgan Chase information to the New York Times while he was CEO of First Data, all of the information regarding the systems included in your document production as relevant the Plaintiff and his employment are very relevant issues to be addressed as part of Plaintiff's discovery. This is in addition to the fact that First Data is a data collection and aggregation company that, as part of its business model, aggregates transaction information and sells it as part of its business. As you know, Judge Block is currently serving on the 9th Circuit, where any actions against Theil, Zuckerberg, or Musk may be brought. I think he will be interested in this issue.

Nothing in the article you mention has any relevance to Barger's claims that he was discharged for being sick. It appears that your reference to the article is a desperate effort to create some nexus to depose Pete Cavicchia, a First Data executive, who has nothing to do with this case. For that reason, we reject your threat from one of your latest emails that "Mr. Cavicchia [mentioned in the article] will be deposed, whether or not it is as a 30(b)(6) designee." For the record, the Rules do not allow the Plaintiff to determine who will serve as First Data's corporate witnesses.

We have been cooperating and will continue to cooperate and provide discovery. For those topics that are relevant to Barger's claims under the FMLA and ADA, we have and will designate 30(b)(6) witnesses to testify as to each of the topics. However, the Notice is replete

with topics that have nothing to do with this case. It is this lack of relevancy that forms the basis of our client's objections to many of the topics in the Notice.

### A.     <u>Legal Standards for Rule 30(b)(6) Topics</u>

Rule 30(b)(6) permits a notice of deposition to be directed to an organization. The party seeking the deposition must serve a notice of deposition that describes "with ***reasonable particularity*** the matters for examination." (emphasis added). Under this standard, the topics contained in the notice must not be overbroad. *See Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) ("[A]n overly broad Fed.R.Civ.P. 30(b)(6) notice subjects the noticed party to an impossible task, because, where it is not possible to identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."). Instead, the topics noticed must be specific as to subject area and have discernible boundaries, which means that topics must be explicitly stated. *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) ("[G]eneric descriptions of categories are insufficient to provide defendants with information sufficient to satisfy the 'reasonable particularity' standard.").

"A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *City of New York v. Fedex Ground Package Sys., Inc.*, 2016 WL 1718261, at *5 (S.D.N.Y. Apr. 27, 2016). Despite that the rules of discovery are intended to be given a broad and liberal construction, the rules do not permit discovery of matters that are not relevant to the issues in the case. *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999).

Rule 30(b)(6) topics, as constrained by Rule 26, must be tailored to the claims and defenses at issue in the case. Rule 26(b)(1) dictates the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Under Rule 26(b)(1), information is discoverable "if it is relevant to any party's claim or defense and is proportional to the needs of the case." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 2018 WL 1515711, at *9 (E.D.N.Y. Mar. 28, 2018) (citing Rule 26 Advisory Committee Notes to 2015 Amendments).

Under this standard, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013). Before the objecting party is required to advance reasons to dispute relevancy, the requesting party must make the initial showing of why

Shawn E. Shearer, Esq.
April 30, 2018
Page 4

the information sought is relevant in the first place. *Winfield v. City of New York*, 2018 WL 716013, at *4 (S.D.N.Y. Feb. 1, 2018) ("The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive.").

The Federal Rules also dictate that relevant information sought must be proportional to the needs of the case. Proportionality and relevancy are intertwined topics that work on a sliding scale, meaning that "the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi*, 2016 WL 616386, at *14. Even where discovery sought is relevant, the proportionality test requires that the request be tailored to the FMLA and ADA claims at issue in the instant litigation. *N. Shore-Long Island*, 2018 WL 1515711, at *1. *Liberty Mut. Fire Ins. Co. v. J.&S. Supply Corp.*, 2015 WL 13649824, at *5 (S.D.N.Y. June 29, 2015).

This letter, which is intended to resolve a discovery dispute, in part identifies those topics we contend lack the requisite relevancy to Barger's FMLA and ADA claims. The letter also identifies the witnesses who you can question as to topics that are relevant. We invite Plaintiff to carry his burden of demonstrating that the disputed topics are relevant and are not being interposed for an improper purpose.

**B.      Responses and Objections to Plaintiff's Proposed Rule 30(b)(6) Topics**

The Notice contains 28 separate topics broken down by category: Topic 1 (Accounting and Financial Disclosure): Topic 2 (Information Technology); Topic 3 (Human Resources and Employee Benefits); and Topic 4 (Corporate Governance and Corporate Records). We will discuss each category in turn.

**Topic 1 -Accounting And Financial Disclosure**

(a)      *First Data's accounting (financial accounting, general ledger accounting, and tax accounting) policies and procedures, and the policies, and the procedure for documenting and auditing those accounting policies and procedures.*

**Objection to Topic 1(a)**: Defendant objects to Topic 1(a) because First Data's overall accounting, general ledger, tax accounting policies and procedures, and the auditing of those policies and procedures are not relevant or proportional to Barger's individualized claims for wrongful termination under the FMLA and ADA. First Data will provide witnesses who can testify as to the economics of Barger's employment and his inclusion in the reorganization.

With respect to this topic and others below, the following facts are undisputed. Throughout his employment, Barger was an at-will employee. His offer letter provided for a starting annual base salary of $480,000 and incentive compensation of $250,000. In December of 2016, First Data paid Barger an incentive bonus in cash of $174,000 while he was on leave, even though bonuses are not typically paid until the following February. This was the same bonus

amount he had been paid for 2015 even though the bonus pool was 5% less. There was no provision in his offer letter for severance.

First Data has and will continue to produce documents demonstrating that Barger was included in a cost-saving reorganization of the Company beginning in 2017 which impacted close to 350 mid- to high-level employees. The documents provide supporting details on the approximately $44 million in projected annual compensation and fringe benefit savings to be achieved from the termination of the group of employees, including Barger. The documents also provide information on the one-time costs for severance that the Company was projected to incur from the millions of dollars set aside to pay severance to the employees, including Barger. First Data has also produced documents which show that an existing employee, Robin Ording, assumed the leadership of the Sales Transformation Group, while continuing her other duties and responsibilities. Sales Transformation is the group that had been led by Barger. These documents also detail the cost-saving measures undertaken by Ording, which led to a reduction of over $2 million in North America payroll expense for 2017.

First Data's accounting and audit procedures are not relevant to the claims or defenses in this action and are not proportional to the needs of the case. Without waiving its objections, if Barger has questions about the compensation and benefits saved by the reorganization that may be relevant to his individualized claims of discrimination, he will have the opportunity to question CEO Frank Bisignano and EVP Tony Marino, both of whom were intimately involved in the process. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(b)   *First Data's accounting processes and procedures (financial accounting, general ledger accounting, and tax accounting) for treatment of compensation for employment and benefits, such as hourly employee compensation, salaried employee compensation, paid-time-off ("PTO"), unpaid leave, paid leave, vacation pay, sick time, personal time, personal days, FMLA leave, all other types of leave arrangements, hourly-PTO, salaried PTO, and any alternative compensation and benefit arrangements.*

**Objection to Topic 1(b)**: Defendant incorporates by reference its Objection to Topic 1(a). By way of further objection, First Data's overall accounting practices and policies regarding compensation, benefits, and various forms of leave for exempt and non-exempt employees are not at issue in this case and have nothing to do with Plaintiff's FMLA and ADA claims for wrongful discharge. Without waiving its objections, if Plaintiff has questions regarding his compensation and benefits, including his FMLA, ADA, STD and LTD leaves of absence, First Data has already identified three fact and 30(b)(6) witnesses (Jennifer Voycheske, Amy Steffen and Stephanie Pulverenti) who have specific knowledge of and are available to testify to First Data's leave and benefits policies as regards to Barger. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(c)   *First Data's accounting (financial accounting, general ledger accounting, and tax*

Shawn E. Shearer, Esq.
April 30, 2018
Page 6

*accounting) for employees on payroll, receiving payment of short-term disability benefits, or receiving payment of long-term disability benefits, and any combination of the above, including a description of, and explanation of, the accounting treatment and meaning of the accounting technical terms used in First Data's document production to date (e.g. references to "SD6" in the context of disability payments, and other accounting coding references, terminology, and references used within First Data).*

**Objection to Topic 1(c)**: Defendant incorporates by reference its Objection to Topic 1(b). By way of further objection, there are no allegations in the Complaint or Supplemental Complaint that Plaintiff was not paid short-term disability or long-term disability. Without waiving its objections, First Data has produced documents regarding these leave policies and correspondence demonstrating efforts by First Data employees to provide advice and support to Barger and his wife in connection with his application for leave benefits. Jennifer Voycheske, Amy Steffen and Stephanie Pulverenti can provide testimony to Barger if he has any questions regarding his leave. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(d)  *First Data's written and unwritten internal processes and procedures for preparing and filing First Data's financial reports and disclosures with the SEC (10-Q, 10-K, 8-K, 14A, S-1, S-3, S-8, Forms 3, 4 and 5, etc.), as well as the processes and procedures for obtaining auditors consent, audit committee approval, board approval, and signatures of required officers for those filings.*

**Objection to Topic 1(d)**: Defendant objects to Topic 1(d) as lacking relevancy. As noted above, the individual employment discrimination claims in this case do not implicate federal securities laws or relate in any way to filings with federal regulatory agencies. This is a single plaintiff employment discrimination case and the damages Barger seeks are not material for purposes of federal securities laws. Defendant further objects to Topic 1(d) as failing to state with particularity the information being sought.[2]

(e)  *First Data's financial disclosures within its SEC filings, including without limitation, the accounting treatment and financial statement disclosure of reserves, cost controls, restructuring charges, and the 2018 fourth quarter tax treatment.*

**Objection to Topic 1(e)**: Defendant incorporates by reference its Objection to Topic 1(d). Plaintiff also seeks information on the fourth quarter of 2018 which does not exist. Defendant further objects to Topic 1(e) as failing to state with particularity the information being

---

[2] This topic is also vague because it is unclear what the requested designee should be prepared to speak about. This topic does not conform to the Rule 30(b)(6) "reasonable particularity" requirement. *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) ("[G]eneric descriptions of categories are insufficient to provide defendants with information sufficient to satisfy the 'reasonable particularity' standard."); *see also Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) ("[A]n overly broad Fed.R.Civ.P. 30(b)(6) notice subjects the noticed party to an impossible task, because, where it is not possible to identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.").

24507910.1 04/30/2018

sought. *See* fn.2.

  (f) *The preparation and disclosure process, and content of, the Management Discussion and Analysis section of First Data's 10-Qs and 10-Ks for the quarterly and annual periods during First Data fiscal years 2016, 2017, and 2018.*

  **Objection to Topic 1(f)**: Defendant incorporates by reference its Objection to Topics 1(d) & 1(e). If Plaintiff has any questions regarding references to the reorganization stated in the 10-Q for Q1 filed in May 2017 and the 10-Q for Q2 filed in August 2017, he will have the opportunity to question CEO Frank Bisignano at his deposition.

  (g) *First Data's processes and procedures for receiving, processing, and addressing employee concerns and reports of accounting irregularities, including all audit committee for receiving and responding to employee or auditor accounting policy and implementation concerns and/or issues reported.*

  **Objection to Topic 1(g)**: Defendant objects to Topic 1(g) as not relevant or proportional to the claims for discrimination or the defenses in this case. There are no allegations in the Complaint or Supplemental Complaint that Barger raised concerns or reported any accounting irregularities in connection with his employment. First Data's procedures for handling accounting irregularities are not an issue in this discrimination case. Defendant further objects to Topic 1(g) as failing to state with particularity the information being sought. *See* fn.2.

  (h) *First Data's processes and procedures for the creation, amendment, and audit of its internal control policies and procedures.*

  **Objection to Topic 1(h)**: Defendant objects to Topic 1(h) as not relevant or proportional to the claims for discrimination or the defenses in this case. There are no allegations in the Complaint or Supplemental Complaint that Barger raised concerns regarding First Data's internal controls, which are not an issue in this discrimination case. Defendant further objects to Topic 1(h) as failing to state with particularity the information being sought. *See* fn.2.

  (i) *First Data's internal control policies and procedures for all technological systems used by First Data's human resources department, payroll, and its supporting functions, including without limitation the internal control policies and procedures for all mobile applications deployed to any First Data employee or contractor by First Data, the origin/designer/d of all mobile applications deployed, and all persons or entities receiving information collected or sent by those mobile applications.*

  **Objection to Topic 1(i)**: Defendant objects to Topic 1(i) as not relevant or proportional to the claims for discrimination or the defenses in this case. There are no allegations in the Complaint or Supplemental Complaint that issues regarding the technological systems used by First Data's human resources department or anything connected to the mobile applications deployed to any First Data employee or contractor by First Data, have anything to do with Barger's claims that he was discriminated against in violation of the FMLA and ADA.

Defendant further objects to Topic 1(i) as failing to state with particularity the information being sought. *See* fn.2.

Without waiving its objections, First Data has identified witnesses in Omaha who are prepared to testify as the human resources systems involved in the administration of his FMLA leave. To the extent Barger is trying to raise an issue with regard to his connectivity with First Data while he was on leave, First Data will stipulate that until November 22, 2016, Barger had mobile connectivity and was able to communicate with First Data employees through his First Data email account and that he sent and received email from First Data. First Data will also stipulate that on or about November 22, 2016, Barger's connectivity was disconnected due to his medical leave. After November 22, 2016, Barger communicated with First Data employees via his personal email account and via text messages. Barger can question Tony Marino, Karen Whalen and Rhonda Barger regarding the disabling of his access. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(j) *First Data's current internal controls and procedures applicable to employee and independent contractor compensation and benefits.*

**Objection to Topic 1(j)**: Defendant objects to Topic 1(j) as vague, ambiguous and without meaning. Defendant further objects on the grounds that the information sought is not relevant to the claims or defenses at issue in this case because there are no allegations in the Complaint or Supplemental Complaint that Defendant was not properly compensated during his employment or that he did not receive the benefits to which he was entitled. Defendant further states that Barger was an employee so any discovery regarding independent contractors is nonsensical. Defendant further objects to Topic 1(j) as failing to state with particularity the information being sought. *See* fn.2.

Without waiving its objections, First Data identifies Tony Marino, Karen Whalen, Rhonda Johnson, Jennifer Voycheske, Amy Steffen and Stephanie Pulverenti as witnesses who can testify as to Barger's compensation and benefits. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(k) *First Data's accounting (financial accounting, general ledger accounting, and tax accounting) for all aspects of a "reduction-in-force", as that term is used in the Answer in this case, including without limitation all aspects of the differences in accounting treatment between terminations in a "reduction-in-force" and a termination outside of a "reduction-in-force", if any.*

**Objection to Topic 1(k)**: Defendant incorporates by reference its Objections to Topics 1(a) & 1(b). Defendant further objects to Topic 1(k) as failing to state with particularity the information being sought. *See* fn.2.

(l) *First Data's methods, processes and systems for determining the number of*

*employees of First Data at any given time.*

**Objection to Topic 1(l):** Defendant objects to Topic 1(l) to the extent it is required to produce a witness to testify as to the methods, processes, and systems it uses to determine the number of its employees and further objects on the grounds that First Data's method for counting employees is not relevant to Barger's claims.

Without waiving this objection, Defendant is producing First Data employees as witnesses, including the CEO and the EVP of Human Resources, who can testify as to the number of First Data employees. This information is also published in the Company's annual report. To the extent that Plaintiff seeks this information to satisfy the jurisdictional requirements of the FMLA and the ADA, First Data will stipulate that it employs the requisite number of employees to be considered an employer for purposes of these statutes.

(m) *First Data's processes, procedures, documentation, delegation, resolutions, and grants of authority regarding employee and officer authority to expend corporate funds, commit the corporation to contracts, and to settle disputes regarding the business and litigation First Data.*

**Objection to Topic 1(m).** Defendant objects to Topic 1(m) on the grounds that corporate authority is not at issue in this case. Without waiving its objection, Plaintiff is deposing Frank Bisignano, First Data's CEO, so he can ask him questions about authority to pay Barger his full bonus in 2016, to include him in the reorganization, or to offer him a generous severance package.

### Topic 2 - Information Technology

(a) *Functionality, access, and business purposes of all the information technology systems referred to within Defendants' document production, and other systems involved in Plaintiff's scope of employment, including the Palantir technology utilized in products and services provided by First Data (e.g. Insightics, Insight, etc.), in other technology and systems sold and marketed by First Data, and within and included within the product offerings that employees trained by Plaintiff were tasked by First Data to sell. These systems, include, but are not limited to, GOOD, MSS, OOO, 1DC account, internal e-mail, systems used by the e-mail "loahelp", Palantir programs, apps, and systems, all cloud, internally hosted or externally hosted systems (including SAAS systems) for communications with MetLife regarding disability insurance benefits, systems used in all screen shots produced in the initial document production, Hagerstown Mainframe (North/South/Concord/BANA) and Denver Mainframe (SY1/EFTPS), PeopleSoft, VPN, and any other internally hosted, cloud hosted or SAAS systems utilized by First Data in its human resources, compensation, and accounting functions.*

**Objection to Topic 2(a):** Defendant objects to Topic 2(a) because its information and technology systems are not at issue in this case in which Barger is claiming that he was wrongfully terminated in violation of the FMLA and ADA. Defendant further objects on the grounds that to the extent there is a shred of relevancy, this topic is not stated with reasonable

particularity. In *Winfield v. City of New York*, 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018), the court observed that depositions regarding data systems are generally conducted for two primary reasons:

> (1) to learn about where and how ESI is created or obtained, accessed, stored, maintained, backed up and preserved, and/or destroyed; and (2) to learn about specific software programs and data that may or will be analyzed by experts, including sources of data, completeness of data, validity of data, meaning of various data fields and categories, reporting capabilities, and other technical details about the data. They serve to aid discovery and the search for relevant information and/or provide an explanation of data produced and authentication of ESI.

*Id.* at 5. At best, only Number 1 above has any possible connection with this case.

The "reasonable particularity" standard requires the 30(b)(6) topics to be specific as to subject area and have discernible boundaries, which means that topics must be explicitly stated. *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) ("[G]eneric descriptions of categories are insufficient to provide defendants with information sufficient to satisfy the 'reasonable particularity' standard."). The topics should also be substantively and temporally relevant to the claims or defenses, given that 30(b)(6) notices are still "subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *City of New York v. Fedex Ground Package Sys., Inc.*, 2016 WL 1718261, at *5 (S.D.N.Y. Apr. 27, 2016). In cases like this one, where the proposed topics seem to concern "discovery on discovery" and/or complex data, "even greater specificity is required to ensure that the witness can prepare for the deposition, that the deposition is productive, and that the parties' time is not wasted on topics that do not relate to core claims or defenses." *Winfield*, 2018 WL 840085, at *5.

Addressing the important interests in specificity for 30(b)(6) topics, the *Winfield* court determined that the following three factors should be considered to determine whether a notice satisfies the specificity requirement:

(1)   the nature of the topics;

(2)   whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and

(3)   whether a reasonable person reading the notice would understand how to prepare for the deposition.

*Id.* The court went on the state that in the data systems context, a number of other factors are considered to determine if the notice complies with the reasonable particularity standard:

(1)   the number of data systems identified in the notice;

> (2) the level of specificity required about each system;
>
> (3) the number of witnesses needed to respond to the topics identified in the notice;
>
> (4) the costs and burden on the corporate party to adequately prepare the witnesses; and
>
> (5) the availability of other methods to obtain all or some of the information sought that might be less burdensome or costly, particularly in light of the number of topics and witnesses required by the notice.

*Id.* at *6.

No reasonable person(s) could adequately prepare for a 30(b)(6) deposition(s) for Topic 2(a), particularly when I previously advised you that much of what you have listed are not systems, but either a reference to emails or components of a data network. *See N. Shore-Long Island,* 2018 WL 1515711, at *11 ("Where the breadth and volume of the data requested is potentially vast, proportionality principles require tailoring production to the subject matter of the litigation and the parties involved.").[3]

Without waiving its objections, First Data can produce a witness to testify regarding how email is maintained and secured at First Data if that is what you are really seeking. Please advise if you would like us to identify a 30(b)(6) witness for this purpose. If there is other specific information regarding First Data's information technology systems or data network that is relevant to Barger's claims of discrimination, I invite you to amend Topic 2(a) with the requisite specificity.

(b) *The functionality and data recording and retention capabilities of all mobile applications and programs, including Good and any Palantir based applications and programs, used by Plaintiff as part of First Data's employee mobile operating functionality to access First Data's information systems (including third-party systems to which First Data has access or from which First Data receives data and information).*

**Objection to Topic 2(b)**: Defendant incorporates by reference its Objections to Topics 1(i) and 2(a).

(c) *First Data's social media content, connectivity, access, and internal controls and procedures (including any content, connectivity, access and internal controls for outsourced social media content editors, providers, crawlers, etc.).*

**Objection to Topic 2(c)**: Defendant incorporates by reference its Objections to Topic 2(a). Without waiving its objection, First Data will produce a witness in New York to testify as

---

[3] Topic 2(a) also requests a corporate designee to discuss "the Palantir technology utilized in products and services provided by First Data." This topic request is apparently based on your April 20, 2018 email, where you made reference to Judge Block's purported interest in Palantir, something that has nothing to do with Barger's case.

Shawn E. Shearer, Esq.
April 30, 2018
Page 12

to the use of its social media for recruiting. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(d)   *First Data's capabilities, procedures, implementation, and retention of information gathered from employee mobile devices, and/or applications used by employee mobile devices to access First Data's systems, including without limitation Good and VPN.*

**Objection to Topic 2(d)**: Defendant incorporates by reference its Objections to Topics 1(i), 2(a) & 2(b).

**Topic 3 - Human Resources And Employee Benefits**

(a)   *First Data's disability insurance benefits, including the negotiation and execution of the operative documents for First Data's disability insurance benefits in place during the relevant periods of the current litigation.*

**Objection to Topic 3(a)**: Defendant objects to Topic 3(a) on the grounds that the information sought is not relevant to the claims in this case. There is no claim in this case under ERISA for denial of benefits under First Data's disability insurance programs. There is also absolutely no connection between First Data's negotiation of its long term insurance contracts and Barger's claims. Without waiving its objections, First Data has produced the summary plan description for its benefits programs and has identified Jennifer Voycheske, Amy Steffen, and Stephanie Pulverenti who can respond to questions as to Barger's entitlement to short term and long term disability benefits. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(b)   *Term and conditions of all equity-based compensation plans and agreements relevant to the stock option and restricted stock awards by First Data to Plaintiff, and any other equity-based compensation plans and agreements in effect between January 2013 and February 2017.*

**Objection to Topic 2(b)**: Defendant objects to Topic 2(b) as irrelevant to the claims at issue in this case to extent that it seeks testimony on "any equity-based agreements in effect between January 2013 and February 2017" that do not involve Barger, who did not become a First Data employee until June 2014. Without waiving its objections, First Data has produced documents relating to Barger's stock options and restricted stock awards and will produce a witness at a time, date, and location to be determined to answer questions about the terms and conditions of Barger's awards.

(c)   *Terms and conditions of all of First Data's severance, separation, OWBPA, WARN, reduction-in-force, and any other similar employment termination plans, policies, agreements, and procedures in effect between January 2013 and present.*

**Objection to Topic 2(c)**: Defendant objects to Topic 2(c) as being not relevant or proportional to the claims in this single plaintiff employment discrimination lawsuit. Defendant further objects on the grounds that there are no claims in this case under the Older Workers Benefit Protection Act or the Worker Adjustment Retraining and Notification Act. Defendant further objects to this request to the extent it seeks information outside the time frame of the issues in Barger's Complaint and Supplemental Complaint -- September 2016 – March 2017.

Without waiving its objections, First Data has produced the severance agreement that was presented to Barger on January 13, 2017, and has also produced documents regarding the reorganization that included him at that time. Plaintiff can question numerous witnesses about the terms and conditions of his severance agreement and the reduction in force including Tony Marino, Karen Whalen, and Rhonda Johnson, all of whom were in the Human Resources Department at the time of his termination. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(d)   *First Data's plans, policies and procedures for the implementation and execution of any "reduction-in-force" (as that term is used in the Answer) during the period between January 2014 and present.*

**Objection to Topic 3(d)**: Defendant objects to Topic 3(d) to the extent it seeks discovery on any reduction in force not involving Barger as being irrelevant to the individualized claims in this FMLA and ADA case. Without waiving its objections, First Data has produced numerous documents regarding the reduction in force that included Barger. Barger can question the individual Defendants regarding the subject reduction in force. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(e)   *First Data's plans, policies and procedures for the implementation and execution of the FMLA, ADA, other leave, terms and conditions of employment, and other relevant terms and conditions of employment included with the document production by First Data in this case.*

**Response to Topic 3(e)**: Defendant has already identified Jennifer Voycheske, Amy Steffen, and Stephanie Pulverenti as fact and 30(b)(6) witnesses who can testify as to Barger's FMLA and ADA leave. Barger can also question Tony Marino, Karen Whalen, and Rhonda Johnson as to the other terms and conditions of his employment. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(f)   *The circumstances and conditions under which First Data has provided any OWBPA disclosures between January 2014 and present.*

**Objections to Topic 3(f)**: Defendant objects to Topic 3(f) as not being relevant to the claims in this case. Plaintiff has not sued First Data for age discrimination so the OWBPA is not relevant to any claims or defenses. Defendant further objects to the temporal scope of this topic

as being overly broad and burdensome, not proportional to the needs of this case and seeks information outside the time frame of the issues in Barger's Complaint and Supplemental Complaint -- September 2016 – March 2017.

      (g)    *First Data's methods, processes and systems for determining the number of employees of First Data at any given time.*

      **Objections to Topic 3(f)**: Topic 3(f) is identical to Topic 1(l). Defendant incorporates by reference its Objection to Topic 1(l).

## Topic 4 - Corporate Governance And Corporate Records

      (a)    *General description of First Data's legal hold process including all details of that policy and specific steps that were taken in this case to implement a legal hold, including without limitation, the timing of issuing the legal hold and to whom it was issued, substance of the legal hold communication (if the communication is not considered privileged), process for tracking and follow-up with the legal hold sources to ensure understanding and compliance with the hold process, whether there are any auto-delete processes in place at First Data, and if so, whether there where and what steps were taken to disable them and when those steps were taken.*

      **Objection to Topic 4(a)**: Defendant objects to Topic 4(a) on the grounds that it seeks information and communications protected by the attorney-client privilege and work product doctrines. "[L]itigation hold letters are generally protected from discovery as privileged or attorney-work product unless a preliminary showing of spoliation is made." *Tracy v. NVR, Inc.*, 2012 WL 1067889, at *6 (W.D.N.Y. Mar. 26, 2012) (quoting *Major Tours, Inc. v. Colorel*, 2009 WL 2413631 (D.N.J. 2009)). To the extent this topic seeks information related to Plaintiff's allegation of destruction of evidence of job postings (see Compl. ¶¶ 270-275), Defendant has produced to Plaintiff a complete list of all of its available jobs from September 2016 to April 2018 (FDC00047377). Plaintiff will also have the opportunity to question the witness designated for Topic 2(c) regarding the use of social media to promote job openings, including Twitter.

      (b)    *First Data's process, procedure, documentation, and retention of information for the implementation of any "reduction-in-force", as that term is used in the Answer, during any time after January 1, 2015, including, without limitation, First Data's process, procedure and documentation of the decision to implement a "reduction-in-force", First Data's process, procedure, and documentation of any approvals by the board, committee of the board, management committee, human resources, and/or management to implement a "reduction-in-force", and the criteria used to select potential and actual individuals to be included in that "reduction-in-force"*

      **Objection to Topic 4(b)**: Defendant objects to Topic 4(b) to the extent that it seeks discovery of information outside of the reduction in force that involved Barger. Without waiving its objections, Barger will have the opportunity to question the individual Defendants who have knowledge of the process used to select Barger for inclusion in the early 2017 reduction in force. Barger will also have the opportunity to question CEO Frank Bisignano regarding any issues

Shawn E. Shearer, Esq.
April 30, 2018
Page 15

relating to the need for Board approval. To the extent that testimony on this topic arises in one of the already-scheduled or to-be-scheduled depositions, Defendant may stipulate to that portion of the testimony as being provided under Rule 30(b)(6).

(c) *First Data's process, procedure, location, and responsibility for the maintenance of corporate governance records, including, without limitation, minutes of the board of directors, minutes of any committee of the board of directors, minutes of any committee of management or officers, maintenance of records regarding the implementation of any "reduction-in-force" (as used in the Answer), and any other official action (e.g. contracts) by an officer or agent of First Data related to governance records.*

**Objection to Topic 4(c)**: Defendant incorporates by reference its objections to Topic 1(d) – (f). Defendant further objects to Topic 4(c) on the grounds that First Data's corporate governance records are not relevant to FMLA and ADA claims. Defendant further objects on the grounds that First Data's process, procedure, locations, and responsibility for corporate records, including minutes of the Board of Directors, have nothing to do with Barger's claims of discrimination. Defendant further objects on the grounds that contracting authority of officers or agents of First Data is not an issue in this case of discrimination. Without waiving this objection, Barger will have the opportunity to question CEO Frank Bisignano, EVP Dan Charron, and EVP Tony Marino (all of whom are Section 16 officers of First Data), as to the authority to include Barger in the reduction in force and any requisite Board approval.

(d) *First Data's processes, procedures, documentation, delegation, resolutions, and grants of authority regarding employee and officer authority to expend corporate funds, commit the corporation to contracts, and to settle disputes regarding the business and litigation First Data.*

**Objections to Topic 4(d)**: Topic 4(d) is identical to Topic 1(m). Defendant incorporates by reference its Objection to Topic 1(m).

---

Fed. R. Civ. P. 26(c) requires that a motion for protective order include a certification "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Our intent is to resolve this dispute so that First Data can produce witnesses who are prepared to answer your questions about topics that are relevant to this lawsuit. Please advise when we can schedule a conference call to discuss the matters described in this letter. I look forward to hearing from you at your earliest convenience.

Very truly yours,

*Gary B.E.*

Gary B. Eidelman

cc: Counsel of record