# EXHIBIT A

# FjudiTHE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (214) 434-1594
SHAWN@SHEARERLAW.PRO

May 10, 2018

**THE PURPOSE OF THIS LETTER IS TO RESOLVE A DISCOVERY DISPUTE**

<u>Via Electronic Mail</u>

Gary B. Eidelman
Saul Ewing Arnstein & Lehr
500 E. Pratt Street, Suite 900
Baltimore Maryland 21202

      Re:    *Steven Barger v. First Data Corporation et al.*
                  Civil Case No. 1:17-cv-4869

Dear Gary:

      I want to follow-up on the call this afternoon we held to discuss your issues regarding the revised scope of Rule 30(b)(6) depositions I sent you on May 3, 2018. It is clear that we have a fundamental difference as to relevance, potential relevance, likely to lead to the discovery of admissible evidence on the issues in this case, especially on IT and accounting/planning/projection matters. I will simply say that you have put at issue the DRIFT (Deceptive Reduction-In-Force Theory), or as you will try to categorize it a reduction-in-force taking place over 2.5 years with no reduction in head count and no reduction in SG&A expense. The Plaintiff is entitled to discovery to answer your affirmative defenses and the Plaintiff is entitled to discovery to demonstrate any affirmative defense is pretext for unlawful conduct.

      If we get to the question of the application of the *McDonnell Douglas* analysis, a place I do not think we even need to go on a straight FMLA interference claim, I will be able to prove a prima facia case. You will no doubt raise your DRIFT defense, and at that point a burden is placed on the Plaintiff to show that the DRIFT is pretext. The Plaintiff was terminated and had his access cut-off from First Data's systems in November 2016. The only party possibly in possession of information to substantiate that the termination of Plaintiff was deceptive, subterfuge, and pretext is the Defendant First Data.  By definition, the proof of "pretext" under *McDonnell Douglas* requires an inquiry into areas outside of the obvious in order to demonstrate the employer's violation of the law under the guise of misleading language and actions. To prove pretext, more discovery is necessary than taking the Defendants' word for it. The whole purpose of the pretext prong is to prove that the Defendants' word is not trustworthy. To meet that burden, the Plaintiff must engage in discovery outside of the word of the violators of the law. The veracity of those individuals has been put into issue by you. Defendants' have put at issue their motivation and the reality of the DRIFT. Your objections to the 30(b)(6) areas of discovery are designed only to deny the Plaintiff the ability to obtain evidence in support of its position that the use of the term "RIF" is nothing more than a description  to as cover for illegal actions. Your

position is that because First Data constantly fires employees, First Data is entitled to violate the law at will. Your position completely guts the purpose and meaning of employee protections. "WE CONSTANTLY FIRE" IS NOT A DEFENSE!

You are outside counsel for First Data, a company that processes nearly 40% of all credit and debit card transactions world-wide, and is majority owned by KKR & Co., Kohlberg, Kravis and Roberts. For you to take any issue with discovery of information regarding the accounting and projections of headcount reductions (actual and projected), as disclosed in First Data's public filings (and the accounting supporting those numbers) as being irrelevant to this case is beyond my understanding. Your position is that the DRIFT is a RIF: to make that distinction, the accounting and projection issues are critical. It is all about the numbers, that is why KKR, JP Morgan Chase, and Willis alumni are the star witnesses. To even imply that the numbers, both actual and projected, are not at issue in the veracity of your DRIFT claims is without merit.

Today on our call, you represented to me that Mr. Bisignano (CEO scheduled for deposition on May 23, 2018) and Mr. Marino (EVP of HR scheduled for deposition on June 1, 2018) will be able to answer all of my accounting and projection questions. I hope they can, and I do not want to run to the court when they are unable to do so when you have had the opportunity to declare both an IT expert (I suggested SVP Cavicchia) and an accounting expert (you suggested Cagwin and even had him reserve dates to give a deposition). Letting me depose an accountant and an IT expert for a half of a day each is much more judicially efficient than bringing these issues before the court. That is not to mention, much more efficient for your client given the rates you are charging to continually obstruct.

We can discuss the issues you have with the 30(b)(6) requests, particularly those related to accounting and IT with Judge Bloom. It just seems unfathomable to me that the world's largest aggregator of data finds it burdensome to produce a witness to discuss the technological and accounting aspects of FIRST DATA'S operations. First Data has placed the *bona fides* of the DRIFT at issue. The Plaintiff is entitled to test the underpinnings of that alleged defense.

I have revised Exhibit A to the 30(b)(6) notice again, to further incorporate our conversation.  This is the second revision in my attempt to make the Defendant in this case "happy" about the scope of discovery regarding their violations of the FMLA and ADA. The fast that you have produced pages and pages of documents (many duplicates, all pdfs and unable to be deduped) trying to overwhelm me does not excuse the Defendant First Data from putting forth a witness able to explain First Data's legal hold process, the systems utilized and sold by the Plaintiff while he was employed, and First Data's legal hold procedures and processes. All of these issues are relevant to this case and there is no burden on the largest aggregator of data in the world to produce them and someone to discuss how it all works.

Gary Eidelman
May 10, 2018																				Page 3

    You have been served Notices of 30(b)(6) Depositions to occur June 12, 2018. The Plaintiff will respond to your discovery motion however presented. It is unfortunate that we will be bringing these issues before the court, when having a few short depositions over these very simple accounting and IT issues would have sufficed. But, it is your choice to take this route.

        Very truly yours,

        Shawn E. Shearer

**EXHIBIT A**
**Barger v. First Data et al.**

**DEFINITIONS**

As used below, the terms defined below have the following meanings:

1. "First Data" means First Data Corporation, and all its majority owned subsidiaries.

2. "Plaintiff" means Steven B. Barger, the plaintiff in this case.

3. "Complaint" means the Complaint and Supplemental Complaint filed by Plaintiff in this case.

4. "Answer" means the Answer the Complaint and the Answer to the Supplemental Complaint filed by any of the defendants in this case.

5. The terms "and" shall mean 'or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

6. The term "any" shall also mean "all" and *vice versa*.

7. The term "concerning" or "relating" shall mean relating to, referring to, describing, evidencing, constituting, consisting of, discussing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing, or bearing any other logical or factual connection.

8. All of the following shall apply and are intended to bring within the scope of these requests any response that might otherwise be omitted. The use of a word in any tense shall be construed as the use of that word in all tenses. The singular includes the plural, and the plural includes the singular. The term "including" means "including but not limited to." The terms "and" and "or" encompass both "and" and "or" (thus, "and" or "or" means "and/or"). Words in the masculine, feminine or neuter form shall include all of the other genders as well.

# TOPICS

## TOPIC 1 –ACCOUNTING AND FINANCIAL DISCLOSURE

(a) ~~First Data's accounting (financial accounting, general ledger accounting, and tax accounting) policies and procedures, and the policies, and the procedure for documenting and auditing those accounting policies and procedures.~~

~~(b)~~(a)   First Data's accounting processes and procedures (financial accounting, general ledger accounting, and tax accounting) for treatment of compensation for employment and benefits, such as hourly employee compensation, salaried employee compensation, paid-time-off ("PTO"), unpaid leave, paid leave, vacation pay, sick time, personal time, personal days, FMLA leave, all other types of leave arrangements, hourly-PTO, salaried PTO, and any alternative compensation and benefit arrangements.

~~(c)~~(b)   First Data's accounting (financial accounting, general ledger accounting, and tax accounting) for employees on payroll, receiving payment of short-term disability benefits, or receiving payment of long-term disability benefits, and any combination of the above, including a description of, and explanation of, the accounting treatment and meaning of the accounting technical terms used in First Data's document production to date (e.g. references to "SD6" in the context of disability payments, and other accounting coding references, terminology, and references used within First Data).

~~(d)~~(c)   First Data's processes and procedures for preparing and filing First Data's financial reports and disclosures with the SEC with respect to the disclosures (financial and otherwise) contained therein regarding First Data's employee compensation practices, historical accounting practices and publicly disclosed financial information, and forward-looking statements as to employee costs and cost controls.

~~(e)~~(d)   First Data's financial disclosures within its SEC filings regarding the accounting treatment and financial statement disclosure of law suit liability reserves, cost controls (reduction in force), restructuring charges (charges related to severance and terminations), and the 2017 fourth quarter tax treatment (solely for purposes of comparing employee termination "savings" to net income given a large one-time event in the fourth quarter of 2017).

~~(f)~~(e)   First Data's processes and procedures for the creation, amendment, and audit of its internal control policies and procedures related to the categorization and treatment of payments to employees and former employees, by First Data and by any third-party insurer, under GAAP (United States Generally Accepted Accounting Principals) and also under the non-GAAP financial measure defined as "Adjusted Net Income" (which by definition excludes restructuring costs and expenses, which includes costs of severance and other costs of termination) disclosed in First Data's SEC filings.

(g)(f)   First Data's accounting (financial accounting, general ledger accounting, and tax accounting) for all aspects of a "reduction-in-force", as that term is used in the Answer in this case, including without limitation all aspects of the differences in accounting treatment between terminations in a "reduction-in-force" and a termination outside of a "reduction-in-force", if any.

## TOPIC 2 – INFORMATION TECHNOLOGY

(a) Functionality, access, and business purposes of all the information technology systems (i) referred to within Defendants' document production, and (ii) involved in Plaintiff's scope of employment, including. This request includes testimony as to the technology and systems the First Data sales force trained by Plaintiff's Sales Transformation Group sold and marketed for First Data. These systems, included in (i) and (ii), based on Plaintiff's discovery review to date (and based on the exhibits to the Voycheske Affidavit in support of Defendants' response to Plaintiff's Rule 12(c) Motion) include GOOD, MSS, OOO, 1DC account, internal e-mail, systems used by the e-mail "loahelp", Palantir programs, apps, and systems, all cloud, internally hosted or externally hosted systems (including SAAS systems) for communications with MetLife regarding disability insurance benefits, systems used in all screen shots produced in the initialDefendants' document production, Hagerstown Mainframe (North/South/Concord/BANA) and Denver Mainframe (SY1/EFTPS), PeopleSoft, VPN, and any other internally hosted, cloud hosted or SAAS systems utilized by First Data in its human resources, compensation, and accounting functions.

(b)  The functionality and data recording and retention capabilities of all mobile applications and programs, including Good and any Palantir based applications and programs, used by Plaintiff as part of First Data's employee mobile operating functionality to access First Data's information systems (including third-party systems to which First Data has access or from which First Data receives data and information).

(c) First Data's social media content, connectivity, access, and internal controls and procedures (including any content, connectivity, access and internal controls for outsourced social media content editors, providers, crawlers, etc.) for posting and deleting available positions for employment with First Data and is subsidiaries.

(d) First Data's capabilities and procedures to collect information from mobile devices and/or mobile applications used by First Data employees, including without limitation what is referred to within Defendants' document production as Good and VPN, and the policies and capabilities for retaining the information collected from those devices or applications.

    (e) First Data's technological systems used by First Data's human resources department, payroll, and its supporting functions.

**TOPIC 3 – HUMAN RESOURCES AND EMPLOYEE BENEFITS**

(a) First Data's employee disability insurance benefits and group life insurance benefits in force during Plaintiff's tenure of employment with First Data.

(b) Term and conditions of all equity-based compensation plans and agreements relevant to the stock option and restricted stock awards by First Data to Plaintiff.

(c) Terms and conditions of all of First Data's severance, separation, OWBPA, WARN, reduction-in-force, and any other similar employment termination plans, policies, agreements, and procedures in effect during the period of Plaintiff's employment by First Data.

(d) The circumstances and conditions under which First Data has provided any OWBPA or WARN notifications from the time of Plaintiff's employment by First Data until present.

(e) First Data's plans, policies and procedures for the implementation and execution of the FMLA, ADA, other leave, terms and conditions of employment, and other relevant terms and conditions of employment included with the document production by First Data in this case.

**TOPIC 4 – CORPORATE GOVERNANCE AND CORPORATE RECORDS**

(a) General description of First Data's legal hold process including all details of that policy and specific steps that were taken in this case to implement a legal hold, including without limitation, the timing of issuing the legal hold and to whom it was issued, substance of the legal hold communication (if the communication is not considered privileged), process for tracking and follow-up with the legal hold sources to ensure understanding and compliance with the hold process, whether there are any auto-delete processes in place at First Data, and if so, whether there where and what steps were taken to disable them and when those steps were taken.

(b) First Data's process, procedure, documentation, and retention of information for the implementation of any "reduction-in-force", as that term is used in the Answer, during any time after January 1, 2015 through December 31, 2017, including, without limitation, First Data's process, procedure and documentation of the decision to implement a "reduction-in-force", First Data's process, procedure, and documentation of any approvals by the board, committee of the board, management committee, human resources, and/or management to implement a "reduction-in-force", and the criteria used to select potential and actual individuals to be included in that "reduction-in-force"

(c) First Data's process, procedure, location, and responsibility for the maintenance of corporate governance records, including, without limitation, minutes of the board of directors, minutes of any committee of the board of directors, minutes of any committee of management or officers, maintenance of records regarding the implementation of any

    "reduction-in-force" (as used in the Answer), and any other official action (e.g. contracts) by an officer or agent of First Data related to governance records.

(d) First Data's processes, procedures, documentation, delegation, resolutions, and grants of authority regarding employee and officer authority to expend corporate funds, commit the corporation to contracts, and to settle disputes regarding the business and litigation First Data.

## TOPIC 5 – WORK FORCE PLANNING AND ANALYTICS

(a) First Data's processes, procedures, documentation, and planning for the creation of, and as to the content of, documents produced, in draft and final form (as full reports or executive summaries) in Defendants' document production to date entitled "OA Impact Analysis," "OA Impact Executive Summary", or similar words and acronyms referring to First Data's analysis and planning of the impact of terminations on departments within First Data and the financial impact of terminations on First Data as a whole.

(b) The estimation processes and formulas used in preparing and modeling cost savings, headcount, and other data included in the drafts and final versions of all reports and documents included in Defendants' document production to date reflecting First Data's employee and management planning and projecting the future financial and other impacts of employee terminations (e.g. the processes and formula's for creating the spreadsheets, tables, and slides included in all the various OA Impact documents included in Defendants' production).

(c) The processes, procedures, documentation of the creation of, and the content of, the Sales Transformation Review Internal Consulting Reports (draft, complete and executive summary) included in Defendants' document production to date.

(d) First Data's processes and procedures for the development and modification of the spreadsheets included in Defendants' production to date with Bates numbers FDC00048216 through FDC00048233, and the content of those spreadsheets.