

Gary B. Eidelman<br>
Phone:  (410) 332-8975<br>
Fax:  (410) 332-8976<br>
Gary.Eidelman@saul.com<br>
www.saul.com

August 15, 2018

**Via ECF**
Honorable Lois Bloom, U.S.M.J.
U. S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: ***Steven B. Barger v. First Data Corporation et al.***
    **Civil Case No. 1:17-cv-4869**
    **Request for Extension of Discovery Period**

Dear Judge Bloom:

  Plaintiff Steven Barger's deposition took place last Friday, August 10, 2018. He was unable to answer a number of substantive questions regarding fees he charged First Data, claiming that Philip D. Morgan, his accountant and Grant Barger, his son who ran Barger Group LLC, could answer those questions. Defendants want to serve subpoenas *duces tecum* on Morgan, Barger Group LLC, and Grant Barger before taking their depositions. Because fact discovery in this case ends on August 31, 2018, Defendants request an extension of the discovery deadline to allow sufficient time for these subpoenas to issue and depositions to take place. The granting of this extension will not impact the overall schedule because expert discovery does not close until September 28, 2018.[1]

  **A.** ***Barger's Testimony Regarding Compensation.*** Beginning on or about March 15, 2014, Barger was hired by First Data as a consultant at the rate of $30,000 per month. On June 30, 2014, he became a full time employee of First Data, earning $40,000 per month, in addition to incentive compensation and equity. In ¶34 of his Complaint, Barger alleged that:

> In deciding to accept the position with First Data, and leave his consulting business to move to Atlanta, Barger relied upon the representation of First Data

---

[1] On Sunday, August 13, 2018, the undersigned asked Barger's counsel to consent to these depositions occurring after the fact discovery cutoff. *See* August 12, 2018 email from Gary B. Eidelman, Esq. to Shawn Shearer, Esq., attached as **Ex. A**. Opposing counsel declined, which has necessitated this letter motion. *See* August 13, 2018 letter from Shawn Shearer, Esq. to Gary B. Eidelman, Esq., attached as **Ex. B**.

Honorable Lois Bloom, U.S.M.J.
August 15, 2018
Page 2

> that the future financial benefit of equity grants he would receive from First Data <u>would more than offset the reduction of his base income</u>.

*See* ECF No. 1 (emphasis supplied). Barger went on to allege in ¶36 of his Complaint that:

> Barger was informed, during the negotiation of his possible employment, that First Data was in the process of preparing for a $3.5 billion private equity offering as a precursor to its planned public offering of equity, and that the public offering would involve KKR selling shares to the market to liquidate a portion of its investment in First Data, and that the offering would create a market for the shares to be issued upon Barger's exercise of his stock options included in his proposed compensation package as an incentive for Barger to join First Data <u>and leave his lucrative consulting business</u>.

*Id.* (emphasis supplied). In Barger's Answer to Defendant First Data's Interrogatory No. 17, which requested information regarding his work history, Barger stated that from 2005 until he was hired by First Data, he worked as a "full time consultant" at the rate of $3,000 per day plus expenses. *See* Barger Answer to First Data Interrogatory No. 17, attached as **Ex. C.**

Joseph Plumeri, at the time a First Data senior executive, relied on Barger's representations regarding the amount of his monthly income in establishing the rate for the consulting agreement and ultimately his compensation for employment. During discovery, Barger produced his income tax returns for 2010-2017, which paint a far different picture from his claims of a "lucrative consulting business" that he was induced to leave. *See* ECF No. 1 at ¶36. For instance, Schedule C of his 2013 federal income tax return (the year before he was hired as a consultant/employee by First Data) indicates that Barger had gross receipts of less than $17,000 for the entire year (less than 6 days of consulting fees at his alleged $3,000 a day rate) and that after expenses were applied, his 2013 adjusted gross income was a negative number. His AGI for 2012 also was a negative number. His 2014 tax returns do not reflect the almost $200,000 in consulting fees First Data paid him under the Consulting Agreement before he became a W2 employee.[2]

Barger could not answer questions regarding these discrepancies or anything about his tax returns, claiming that we needed to question his accountant about his tax returns. *See* excerpts from Barger's "rough" deposition transcript, attached as **Ex. D** at 47-49, 59, 64, 206. He also testified that Barger Group LLC (his son's company) billed for his consulting services and then distributed to him a fraction of what was billed. *Id.* at 37-40. There exists a large discrepancy between his 3 ½ months of consulting services under the Consulting Agreement and what was actually billed and collected by Barger Group LLC.[3]

---

[2] Plaintiff marked the referenced income tax returns "Confidential" so they are not attached. If the Court requests, they can be produced *in camera*.

[3] On June 20, 2014, Barger Group LLC submitted an invoice for $50,000 for "final consulting services" for the period March-June 2014. There is no provision in the Consulting Agreement between Barger and First Data for such a fee. Barger testified that the payment was for the use of his intellectual property but could not cite to a license

**B.** *The Requested Discovery Goes to Barger's Damages.* Barger is seeking almost $16 million in damages, including 10 years of front pay. Plaintiff's allegations in the Complaint and his answers to interrogatories regarding the "lucrative consulting business" he left to join First Data are not supported by the documents he produced or his testimony. Since First Data based the amount of money to pay Barger on his representations of what he was earning, First Data needs discovery into this "after-acquired evidence" in connection with his claims for damages. First Data witnesses will testify that had the Company known of either Barger's misrepresentations about his consulting fees and/or his $50,000 bill for intellectual property, action would have been taken against him, up to and including termination.

In *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995), the Supreme Court ruled that after-acquired evidence cannot be used to bar relief under an employment discrimination statute.[4] However, the Court ruled that after-acquired evidence may render an employee ineligible for front pay, reinstatement and limit the amount of back pay to the period between when the unlawful discrimination occurred and the date on which the discovery of the after-acquired evidence was made. Judge Block has recognized and applied the rationale of *McKennon* to deny an award of front pay. *See Norris v. New York City Coll. of Tech.*, 2009 WL 82556, at *10 (E.D.N.Y. Jan. 14, 2009). Courts in the Second Circuit have recognized the applicability of *McKennon. See, e.g., Vichare v. AMBAC Inc.,* 106 F.3d 457, 468 (2d Cir. 1996) (applying rationale of *McKennon* to deny front pay); *Altman v. New Rochelle Public School District*, 2014 WL 2809134, at *14-15 (S.D.N.Y. June 19 2014). *See also EEOC v. Rose Casual Dining, L.P.,* 2004 WL 614806, at *10 (E.D.P.A. Mar. 5, 2004) (granting defendant summary judgment on issue of reinstatement and front pay where the plaintiff had inflated her prior salary); *Jones v. Ravens, Inc*., 108 F. Supp. 2d 803, 812 (N.D. Oh. 2000) (holding defendant not liable under the ADA and finding that the after-acquired evidence doctrine barred any damages because plaintiff inflated his salary during salary negotiations).

**C.** *The Request for an Extension is Reasonable.* This is the first request for an extension of discovery in this matter. Defendants have produced more than 51,000 pages of documents and have responded or still need to respond to multiple sets of interrogatories, 15 sets of document requests, and requests for admissions. To date, Plaintiff has taken eight depositions with two more scheduled in Omaha on August 21st and 22nd. Plaintiff will not be prejudiced by this extension of time and the requested extension will not impact the briefing deadlines.

For these reasons, Defendants request that the discovery cutoff be extended to permit them to subpoena documents from and take the depositions of Philip D. Morgan, Plaintiff's accountant and Grant Barger, his son who ran Barger Group LLC, on or before September 28, 2018.

Respectfully submitted,
/s/
Gary B. Eidelman

cc: Counsel of Record (via ECF)

---

agreement. *See* **Ex. D** at 21-23. More importantly, the Consulting Agreement specifies that use of whatever intellectual property Barger may have used was included in the consulting fee.

[4] Unlike *McKennon*, Defendants do not concede that Plaintiff has or can establish liability under the FMLA or ADA.