

Gary B. Eidelman
Phone:  (410) 332-8975
Fax:  (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

August 24, 2018

**Via ECF and Federal Express**
Honorable Lois Bloom, U.S.M.J.
U. S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Steven B. Barger v. First Data Corporation et al.*
      Civil Case No. 1:17-cv-4869
      Motion to Compel Deposition of E.J. Jackson

Dear Judge Bloom:

  Before addressing the substantive reasons to deny Plaintiff's motion to compel the deposition of E.J. Jackson, the Court should first understand the procedural posture under which this request for additional depositions arises.[1] Barger has taken 10 depositions, which is the limit imposed by Fed. R. Civ. P. 30(a)(2)(i).[2] He is now seizing upon the recent Order extending the discovery period to allow Defendants to take depositions of Plaintiff's accountant and son based on serious issues regarding damages as an excuse to justify this motion.[3]

  Plaintiff first complains that 10 depositions is not enough because he elected to sue not only his former employer, but also five individuals under the FMLA.[4] The decision to sue the individual defendants under the FMLA was solely up to Plaintiff. When asked why he sued them, Barger admitted that he had no idea who was responsible for denying him the opportunity

---

[1] Plaintiff's motion to compel additional 30(b)(6) witnesses is being addressed separately.
[2] Deponents were CEO **Frank Bisignano**; **Dan Charron**, EVP Global Business Solutions (Barger's assigned organization); **Tony Marino**, EVP, Chief Human Resources Officer; **Karen Whalen**, former SVP, HR; **Rhonda Johnson**, VP, HR (supported Barger's team; **Robin Ording**, VP, HR, Talent Development (took over the Sales Training Group in addition to her regular duties); **Matt Cagwin**, SVP, Chief Accounting Officer; **Josh King**, former SVP, Global Communications and Corporate Affairs; **Amy Steffen**, VP, HR (former head of HR Service Center); and **Kathi Benhardt**, VP, HR, Workforce Planning and Analytics.
[3] Plaintiff's self-serving supplemental interrogatory answers do not cure the serious improprieties with his tax returns and billing to First Data when he was hired as a consultant before he became an employee.
[4] Plaintiff also sued a sixth individual under the FMLA, Lori Graesser, First Data Associate General Counsel and head of Employment Law, but dismissed her without prejudice at this Court's urging. When Plaintiff was asked how Graesser could have retaliated against him when the money offered by the Company during severance negotiations increased, he could not answer, testifying that "my attorney is telling me it was in bad faith and I agree with my attorney." Barger Dep. Rough Trans. 239:21-22, **Exhibit A**. Claiming a lack of knowledge and deflecting to his attorney or the pleadings was a common refrain during the deposition when pressed for facts to support his claims.

500 E. Pratt Street ◆ Suite 900 ◆ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ◆ Fax: (410) 332-8862

DELAWARE   FLORIDA   ILLINOIS   MARYLAND   MASSACHUSETTS   NEW JERSEY   NEW YORK   PENNSYLVANIA   WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

Honorable Lois Bloom, U.S.M.J.
August 24, 2018
Page 2

to come back to work and that by suing everyone (except for his direct supervisor who put him on the RIF list), he could find out.[5] This is the classic definition of an impermissible fishing expedition. It was Plaintiff's choice, and his alone, to sue so many employees of First Data and he should not be rewarded for causing the Defendants to spend hundreds of thousands of dollars defending individuals against bogus claims by allowing him to take additional depositions. Having failed to demonstrate that good cause exists, the motion to compel should be denied on that ground alone.

Turning to the merits, on May 16, 2018, Plaintiff's counsel advised that he wanted to depose Jackson in early July because he was going to be in the Bay Area where Jackson works. When opposing counsel asked the reasonable question as to how Jackson's testimony was relevant to Barger's FMLA and ADA claims, Mr. Shearer responded "you can ask Defendant Charron what relevance he believes Mr. Jackson may have," a response to a discovery inquiry which to this day is remarkable.[6]

There is not a scintilla of evidence that Jackson's hiring had anything to do with Plaintiff or his termination, yet Plaintiff claims that Jackson must be his replacement because his hiring was announced publicly on January 13, 2017, the same day Barger was notified that his SVP job running the Sales Training Group was eliminated as of February 28, 2017. The undisputed testimony has been that Barger was included in a restructuring that impacted hundreds of employees, including dozens of VPs, SVPs, and an EVP, based on the legitimate, non-discriminatory business reason that First Data did not need an employee at Barger's enormous salary and bonus level running a training group. Jackson was not Plaintiff's replacement; Ording was. The evidence is undisputed that Plaintiff's duties rolled up to Ording, first on an interim basis and then permanently. The non-discriminatory reasons for terminating Plaintiff, who had been running the Sales Training Group as a full time job, may be best exemplified by the undisputed fact that Ording took over his "full time" job duties, while continuing to handle all of her other duties and responsibilities.[7] Plaintiff certainly cannot claim to have been prejudiced by not being permitted to take Ording's deposition when hers was the first deposition in this case.

Despite telling counsel on several occasions that Jackson had nothing to do with the Sales Training Group and that there was no basis to depose him, on June 8, 2018, Mr. Shearer nonetheless served a Notice of Intention to Take Oral Deposition of E.J. Jackson for July 2, 2018, in California. Twenty minutes later, Defendants' counsel responded "we have repeatedly objected to the deposition of EJ Jackson in this case as being completely irrelevant."[8] On no less than three occasions after June 8, 2018, counsel advised Mr. Shearer that there was no basis upon

---

[5] Barger Dep., **Exhibit A** at 82:2-84:22. It will be Defendants' position on summary judgment that there were and are no facts to have justified the inclusion of most of the individuals as defendants under the FMLA. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (listing the factors for individual liability under the FMLA).

[6] Email dated May 16, 2018, at 12:28 p.m. from Shawn Shearer to Gary Eidelman, **Exhibit B**.

[7] Ording led a restructuring of the Sales Training Group which reduced headcount by half, saving the Company upwards of $2 million per year in personnel expense.

[8] Email dated June 8, 2018, titled "RE: Barger v First Data – Notice of Deposition – EJ Jackson," **Exhibit C**.

Honorable Lois Bloom, U.S.M.J.
August 24, 2018
Page 3

which to depose Jackson and that he would not be produced for a deposition.[9] Despite these repeated notifications, including the one from the day before cited in the motion to compel, Mr. Shearer inexplicably hired a court reporter and put on the record that neither Jackson nor counsel posted for the deposition. Why counsel, knowing full well that Jackson would not be appearing, would still appear at the deposition and create a record remains a mystery. The Court will recall that Mr. Shearer engaged in similar behavior once before, which became the subject of an emergency telephone conference on June 12, 2018, when the Court denied Barger's first motion to compel.

Contrary to the representations in the motion, Barger has not been denied the opportunity to take discovery to try and prove the relevance of Jackson's hiring. Jackson had been employed as a SVP at SAP, running a substantial business unit, something Barger never did at First Data. CEO Frank Bisignano testified that Jackson had been originally hired in early 2017, to lead the Integrated Solutions Group (ISG), which at the time was identified as First Data's largest growth initiative. After First Data invested $1.6 billion in acquiring 2 companies in the ISG space, First Data transferred Jackson to run First Data's security and fraud business, which Bisignano testified was a business unit worth several hundred million dollars in revenue, again something Barger had never done. Bisignano also testified that the recruiting process had lasted for months. Bisignano Dep. 237:14-239:25.[10]

EVP Charron also testified about the process that led to Jackson's hiring and his role at First Data. Charron testified that Jackson was initially hired to run ISG but after the acquisitions referenced above, he starting running the security software group, a business that works with software developers to help integrate First Data's payment application and security applications into their software. When asked how Jackson's group related to the Sales Training Group that had been led by Barger, Charron testified that the two had nothing to do with each other. The sales group for which Barger's group provided training does "merchant acquiring sales, processing sales" while the security and fraud group led by Jackson is "a specific group that deals directly with the software groups." Charron Dep. at 118:15-122:20.

Plaintiff cannot satisfy his burden under Fed. R. Civ. P. 26(b) and 37, to demonstrate why Jackson should be produced when he has no testimony that is relevant or proportional to Barger's discrimination claims. The motion to compel Jackson's deposition should be denied.

Respectfully submitted,

*/s/ Gary B. Eidelman*

Gary B. Eidelman

cc:     Counsel of Record (via ECF)

---

[9] *See* Letter dated June 17, 2018 titled Deposition Scheduling, **Exhibit D**; Email dated June 18, 2018, titled "Depositions of Voycheske, Steffen, Pulverenti," **Exhibit E**; Email dated July 2, 2018, titled "RE: Barger v. First Data – Letter re: 26(a) Disclosures and Depositions," **Exhibit F**.

[10] Pursuant to the Confidentiality Order, ECF 23, the transcripts of Bisignano and Charron are marked confidential and will be filed under seal upon request by the Court.