# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____
                                    )
STEVEN B. BARGER,                   )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Case No. 1:17-cv-04869-FB-LB
                                    )
                                    )
FIRST DATA CORPORATION, *et al.*,   )
                                    )
            Defendants.             )
_____ )

**DECLARATION OF JENNIFER VOYCHESKE IN SUPPORT OF THE OPPOSITION OF DEFENDANTS FIRST DATA CORPORATION, FRANK BISIGNANO, DAN CHARRON, AND ANTHONY MARINO TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

I, Jennifer Voycheske, hereby declare and certify as follows:

1. My name is Jennifer Voycheske. I am above the age of majority and am competent to provide this written sworn testimony under oath.

2. This Declaration is submitted in opposition to the Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) (the "Motion") filed by Plaintiff Steven B. Barger ("Barger"). This Declaration is based upon my personal knowledge.

3. I am a citizen of the State of Nebraska residing in Omaha.

4. My title is Manager Human Resources Operations for First Data Corporation ("First Data"). I have held this position for two years, 10 months. Prior to my current position, I held a number of various Human Resources positions at First Data for an approximate 12 and one-half years.

5.  My current job duties and responsibilities include managing First Data employees' leaves of absence, including but not limited to leaves under the Family and Medical Leave Act ("FMLA") and First Data's short-term and long-term disability plans. As part of these duties and responsibilities, I track available leave and leave taken, communicate with employees about their leave, pay and benefits, and coordinate with First Data's third party administrator, MetLife, which handles short-term and long-term disability claims for First Data.

6.  I am familiar with Barger's leave of absence resulting from his surgery, which began in the Fall of 2016. I communicated with Barger and his wife, Marilyn Barger, several times in late 2016 and January 2017, about his leave and associated benefits.

7.  I am aware that in Barger's Complaint, he alleges that his FMLA leave began on October 24, 2016, and was scheduled to end on January 16, 2017. As set forth below, those allegations are not completely accurate and do not reflect what actually transpired with respect to Barger's leave.

8.  First Data received Barger's FMLA paperwork on December 15, 2016, which indicated that his leave of absence began on October 24, 2016. Based on this information and in accordance with FMLA regulations, Barger was approved for 12 weeks of FMLA leave, retroactive from October 24, 2016 through January 16, 2017.

9.  To confirm that his FMLA leave had been approved, First Data sent Barger a letter dated December 15, 2016, notifying him of the dates for which his leave was approved. These letters are automatically generated by First Data's system and are sent via U.S. mail to the employee. I have reviewed <u>Exhibit G</u> to Barger's Complaint and believe it to be a true and correct copy of this December 15, 2016 letter.

10. On December 21, 2016, after Barger's paid time off had been exhausted, I emailed Barger explaining his option to transition to short-term disability, which paid 66.67% of an employee's normal rate of pay. A true and correct copy of my email communication to Barger is attached as Exhibit 1.

11. On January 5, 2017, I advised Barger that MetLife had not yet approved his short-term disability claim and that he should reach out directly to MetLife to ensure that he provided the necessary information so that his pay would not be impacted. *See* Ex. 1.

12. Barger replied to my email and said that MetLife had approved his short-term disability benefits from September 4, 2016, through October 15, 2016, and that MetLife needed additional information from his doctor to extend the benefit. *See* Ex. 1. This was new information because Barger was now reporting that his leave did not actually begin on October 24, 2016, but on September 5, 2016, some 7 ½ weeks earlier.

13. Because the September 5, 2016, date conflicted with First Data's records, I advised Barger of the discrepancy and asked him to confirm the date he began missing work. *See* Ex. 1.

14. When I spoke with Barger on the phone, he clarified that he began missing work on September 5, 2016, instead of October 24, 2016.

15. I also contacted MetLife to confirm when Barger's leave began. I obtained a computer screenshot from MetLife indicating that it had approved Barger's short-term disability benefits beginning September 4, 2016, and not October 24, 2016. A true and correct copy of this screenshot is attached as Exhibit 2.

16. I advised other members of First Data's Leave Management team about the discrepancy. I informed them that since both Barger and MetLife had confirmed that Barger's

leave began September 5, 2016, (not October 24, 2016), we needed to recalculate the start date of his FMLA leave to September 5, 2016, and recalculate his pay and benefits. A true and correct copy of this email is attached as Exhibit 3.

17. Based on the information that First Data received from Barger and MetLife, First Data's records were changed to reflect that Barger's FMLA leave start date was September 5, 2016.

18. Because this change impacted the date range of Barger's FMLA leave, First Data sent him a letter dated January 5, 2017, advising that his FMLA leave was approved from September 5, 2016, through November 28, 2016. I inputted the information in the system to generate the January 5, 2017 letter, a true and correct copy of which is attached as Exhibit 4.

19. The January 5, 2017 letter stating that Barger's FMLA leave began on September 5, 2016, and expired on November 28, 2016, was not included as an exhibit to Barger's Complaint.

20. After First Data sent Exhibit 4 to Barger, he never contacted me to ask any questions about this letter or the change in his FMLA approval dates.

21. It is not unusual to adjust the dates of an employee's FMLA leave when First Data receives new medical information from an employee or MetLife, even if it requires First Data to retroactively designate leave as FMLA-approved leave in accordance with FMLA regulations.

22. According to First Data's records, Barger's 12 weeks of FMLA leave ended on November 28, 2016.

23. As stated in paragraph 16 above, the change in Barger's FMLA start date necessitated a recalculation of his pay. Accordingly, I reviewed Barger's payroll records from

2016 and 2017 when he was on a leave of absence. I am aware that in Barger's Complaint, he alleges that he was not restored to work on January 10, 2017, following the conclusion of his leave of absence. According to First Data's records, however, he was paid his full salary and benefits through February 28, 2017, as set forth below.

24. True and correct copies of Barger's pay stubs covering the pay period of January 15, 2017, through February 28, 2017, are attached as Exhibit 5.

25. As shown in Exhibit 5, these pay stubs demonstrate that Barger was being paid his full wages as a W-2 employee during this time at the rate of $20,000 per pay period, which equals $480,000 when annualized.

26. The pay stubs also show pre-tax deductions for benefits like his 401(k) retirement account—deductions which indicate that such payments were typical compensation rather than another type of payment such as severance.

I declare under 28 U.S.C. § 1746 and penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 20, 2018

*Jennifer Voycheske*
Jennifer Voycheske