

Gary B. Eidelman<br>
Phone: (410) 332-8975<br>
Fax: (410) 332-8976<br>
Gary.Eidelman@saul.com<br>
www.saul.com

September 4, 2018

**Via ECF**

Honorable Lois Bloom, U.S.M.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Steven B. Barger v. First Data Corporation et al.*
               Civil Case No. 1:17-cv-4869
               Motions to Compel Production of Voycheske Prior Sworn Testimony and
               Salary Information on E.J. Jackson

Dear Judge Bloom:

      Defendants oppose Plaintiff's Motion to Compel Defendant First Data Corporation to produce the prior sworn testimony of Jennifer Voycheske in *Fountain v. First Data Merchant Services,* Case No. 1:14-cv- 00121-LM (D. NH) (ECF No. 59). Defendants also oppose another Motion to Compel involving E.J. Jackson, this time for his salary information (ECF No. 60). Defendants oppose both Motions for the following reasons:

      1.     Plaintiff mischaracterizes the allegations and nature of the *Fountain* case in an effort to compel the production of testimony from a case having nothing to do with this one. In *Fountain*, an employee had taken intermittent leave in 2009, 2011, and 2012. The employee was terminated in 2013 for poor performance after receiving an Improvement Action Plan in late 2012 for her performance deficiencies. After being advised she was in termination status in early 2013, she filed another request for FMLA for a cosmetic procedure. The principal claim in that case was whether the company terminated the employee for poor performance or in retaliation for exercising her rights to take FMLA leave over several years. That case did not involve retroactive designation of leave under the FMLA, nor did it have anything to do with a reduction-in-force.

      Barger attaches select pages from the deposition transcript of Voycheske in *Fountain* to his Motion to Compel and based on that testimony, Barger makes untrue generalizations about the issues in that case for the proposition that First Data's leave records are inaccurate and that what Voycheske testified before is somehow relevant to his case. Voycheske testified about an Excel spreadsheet that she did not create, which tracked Fountain's leave requests from 2009-2013. Apparently, the final entry on that document was not accurate. Her prior testimony provides no basis whatsoever to compel the production of that deposition testimony in this case.

500 E. Pratt Street ♦ Suite 900 ♦ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ♦ Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

Honorable Lois Bloom, U.S.M.J.
September 4, 2018
Page 2

      2.     More significant is that Barger claims that discovery has revealed that First Data's FMLA leave records in this case are not accurate. That is not true. First Data's records regarding Barger's FMLA leave are accurate, particularly since the information used to calculate his FMLA leave came directly from him and his doctors.

      On or about December 15, 2016, First Data received a completed Certification of Health Care Provider ("CHP") from Barger's doctor. The CHP is the U.S. Department of Labor form used to determine, among other things, if an employee has a serious health condition that qualifies the employee for FMLA leave. Barger's treating doctor wrote on the CHP that October 22, 2016 was the start date for Barger's incapacity due to a serious health condition. The CHP also indicated that he had been hospitalized from October 22-24, 2016. Upon receipt of the CHP, Voycheske, in her role as Manager of First Data's leave of absence department, approved Barger for FMLA leave retroactive to October 24, 2016. She mailed Barger a letter dated December 15, 2016, advising him that his FMLA leave would last from October 24, 2016, until January 16, 2017. *See* ECF No. 37-1, Declaration of Jennifer Voycheske in Support of Defendants' Opposition to Barger's Rule 12(c) Motion filed 2/27/2018 (Voycheske Dec.), at 30, ¶¶ 8-9. Barger has never contended that this retroactive application was unlawful.

      Voycheske and others at First Data were assisting Barger with documents that he needed his doctor to submit to MetLife regarding his eligibility for short term disability. MetLife administers First Data's STD program and determines medical eligibility, but First Data pays the benefits out of payroll in the form of salary continuation. On January 5, 2017, Voycheske emailed Barger and his wife and advised that MetLife had still not approved Barger's STD. She provided the name and phone of his MetLife claim manager to contact. Shortly after receiving Voycheske's email, Barger responded by email that the MetLife claim manager had called and approved his STD from **9/4/2016 until 10/15/2016,** and that she was waiting for additional information to extend the leave until 12/3/2016. *See* Voycheske Dec., at 31, ¶¶ 11-12 and Ex. 1 (emphasis added).

      The 9/4/2016 date did not match what First Data had in its records, so Voycheske responded by email that the Company's records from Barger's physician indicated 10/22/2016 as the date he started missing work. Voycheske emailed Barger and asked simple questions: **"[W]hen did you start missing work?"** and "**Can you clarify when you stopped working? Was it 9/4/16 or 10/22/16?**" *See* Voycheske Dec., at 31, ¶ 13 and Ex. 1 (emphasis added). Barger responded by email:

                      "<u>9/4. My operation was 9/6</u>."

*See* ECF No. 51, Supplemental Declaration of Jennifer Voycheske in Support of Defendants' Opposition to Barger's Rule 12(c) Motion filed 7/16/2018 (Voycheske Supp. Dec.), at 1-2, ¶ 4 and Ex. 6. Voycheske then checked the MetLife portal that tracks STD information for First Data employees. Those records confirmed what Barger had just told her: MetLife had determined that Barger's disability date was 9/4/2016. Voycheske Dec., at 31, ¶ 15 and Voycheske Supp. Dec., at 2, ¶ 5 and Ex. 7.

      Based on this new information that came directly from Barger and as confirmed by MetLife's records, Voycheske readjusted Barger's FMLA start date in accordance with 29 C.F.R. § 825.301(d), the DOL regulation that permits an employer to retroactively designate FMLA leave. On January 5, 2017, Voycheske mailed Barger an updated FMLA letter which stated that his FMLA leave start date was 9/5/2016 and that his FMLA leave was exhausted on 11/28/2016. Voycheske Dec., at 31-32, ¶¶ 16-22.

      Nothing in either of Voycheske's Declarations suggests that First Data's records are not accurate, nor has there been any testimony from her or anyone that First Data erred in processing Barger's FMLA leave. Her testimony in the *Fountain* case (which had nothing to do with FMLA retroactivity) has no bearing on one of the legal issues to be determined by the Court in this case: whether First Data was justified under the facts and the law to recalculate Barger's FMLA start date based on the 9/4/2016 "stop working" date <u>that he gave to Voycheske</u>, as confirmed by MetLife's records.

      Prior testimony in an unrelated case is not relevant to Barger's claims in this case. *See Godson v. Eltman, Eltman & Cooper, PC*, No. 11-CV- 0764S(SR), 2017 WL 77109, at *2 (W.D.N.Y. Jan. 9, 2017) (granting defendant's motion for protective order where plaintiff sought deposition transcripts from another lawsuit because plaintiff could obtain information by asking questions in depositions and that producing the transcripts would reveal confidential information not relevant to the dispute and spur even more discovery disputes). Had Barger taken Voycheske's deposition when he had the chance, he could have asked her about the spreadsheet that had an error in the *Fountain* case.

      3.      Barger also seeks to compel First Data to admit or deny E.J. Jackson's salary range. In opposition to this Motion, First Data incorporates its Opposition to the Motion to Compel E.J. Jackson's deposition. *See* ECF No. 57 filed 8/24/2018.

      For these reasons, Plaintiff's Motions to Compel should be denied.

                                    Respectfully submitted,

                                      */s/ Gary B. Eidelman*

                                    Gary B. Eidelman

cc:      Counsel of Record (via ECF)