Shawn E. Shearer (TX Bar No. 24049493)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (972) 803-4499
*shawn@shearerlaw.pro*

Attorneys for Plaintiff
Steven B. Barger

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | **Case No. 1:17-cv-4869-FB-LB**<br><br>**RULE 72(a) OBJECTION TO ORDER RE: DENIAL OF PLAINTIFF'S MOTION TO COMPEL RULE 30(b)(6) DESIGNEES AND DESPOSTITIONS [ECF NO. 55]**<br><br>**(Assigned to the Honorable Frederic Block)** |

**TO THE COURT AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**

**NOTICE IS HEREBY GIVEN** that pursuant to Fed .R. Civ. P. 72(a), Plaintiff STEVEN B.

BARGER ("Plaintiff") objects to entry of the Magistrate's Order of September 4, 2018 denying

Plaintiff's Motion to Compel 30(b)(6) Designees and Depositions [ECF 55] with respect to the

following 30(b)(6) topics contained in Plaintiff's Notice of 30(b)(6) Deposition served on

Defendant First Data Corporation ("First Data") on May 22, 2018:

Topic 1(c) -   First Data's internal control policies and procedures for the technological
systems used by First Data's human resources department, payroll, and leave
management;

Topic 3(a) -   The processes that were available to Plaintiff to apply to receive First Data's
disability insurance benefits, the process through which Plaintiff did apply to
receive First Data's disability insurance benefits, and the terms of the

**RULE 72(a) OBJECTION TO ORDER**          1

disability insurance policies under which Plaintiff applied for benefits;

Topic 3(b) -   Terms and conditions of all equity-based compensation plans and agreements relevant to the stock option and restricted stock awards by First Data to Plaintiff; and

Topic 3(d) -   First Data's plans, policies and procedures for the implementation of FMLA, ADA, and other leave programs.

Plaintiff further requests an order that Defendant First Data either (i) designate and produce properly prepared Rule 30(b)(6) witnesses on these topics or (ii) be precluded from presenting witnesses testifying as to these topics (whether written or live testimony) in the remaining proceedings of this case. Plaintiff further seeks such sanctions under Rule 37 as the Court determines to be just and equitable.

This Objection and request for relief are based on this Notice and the accompanying Memorandum of Points and Authorities.

DATED:        September 13, 2018

Respectfully Submitted,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

_____/s/ Shawn Shearer_____
SHAWN SHEARER
shawn@shearerlaw.pro

Attorney for Plaintiff
Steven B. Barger

**RULE 72(a) OBJECTION TO ORDER**            2

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**

**RULE 72(a) OBJECTION TO ORDER**

<u>**TABLE OF CONTENTS**</u>

I.     **BACKGROUND** ................................................................. 2

   A.   **Justification for Noticed 30(b)(6) Topics** ................................ 2

   B.   **Notice of 30(b)(6) Deposition Background** .............................. 5

II.    **STANDARD OF REVIEW – RULE 72(a)** ................................ 6

III.   **LEGAL STANDARDS – RULE 30(b)(6) AND RULE 37**................. 7

IV.   **30(b)(6) TOPICS SUBJECT OF THIS OBJECTION** ................ 12

   A.   **First Data's Equity Plans and Agreements** ........................... 12

   B.   **First Data's Leave Policies and Procedures** ......................... 13

   C.   **First Data's Disability Benefits – Relationship to FMLA Leave Approval**............... 14

   D.   **First Data's Human Resources Systems and MetLife Interface** ............................... 17

     1. Out-of-Office System ("OOO") and PeopleSoft System ("PeopleSoft")........................ 17

     2. MetLife Disability Benefit Interface................................................. 20

V.    **CONCLUSION AND REQUEST FOR RELIEF** ........................ 24

**EXHIBITS**
**A -**  **Letter Motion to Compel 30(b)(6) Designees and Depositions [ECF 55] dated August 22, 2018**

**B -**  **Transcript of September 4, 2018 Hearing Before Magistrate Bloom**

**C -**  **Notice of 30(b)(6) Deposition dated May 22, 2018**

**D -**  **Transcripts of June 7 & 8 No-Shows by First Data for 30(b)(6) Depositions**

**E -**  **Notice of Rule 30(b)(6) Depositions (Revised) dated July 10, 2018**

**F -**  **July 27, 2018 E-mail from Defense Counsel Refusing to Produce 30(b)(6) Witnesses**

**G -**  **Declaration dated February 20, 2018 ("First Voycheske Declaration")**

**H -**  **"Supplemental" Declaration dated July 16, 2018 ("Second Voycheske Declaration")**

**I -**  **Letter from Shearer to Eidelman Delivered February 21, 2018, 9:12 a.m. re: Testimony in February 20, 2018 First Voycheske Declaration**

**J -**  **Marked Version of "Screenshot" – Exhibit 2 to First Voycheske Declaration**

**K -**  **"Supplemental" "Screenshot" - Exhibit 7 to Second Voycheske Declaration**

**L -**  **Leave Approval E-mails**

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S

## RULE 72(a) OBJECTION TO ORDER

### TABLE OF AUTHORITIES

**Cases**

*Aventis v. Sandoz*, 272 F.R.D. 391, 393 (D.N.J. 2011)..................................................... 8

*Black Horse Lane Assoc. v. Dow Chemical*, 228 F.2d 275, 304 (3rd Cir. 2000) ............................ 8

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 37 (D. Mass. 2001)......... 8

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770–71 (9th Cir.1995)............................................................................................................ 10

*DeFazio v. Wallis*, 459 F.Supp2d 159, 163 (E.D.N.Y 2006) ...................................................... 6

*Easley v. Cromartie*, 532 US 234, 242 (2001)..................................................................... 6

*Eid v. KLM and Delta Airlines*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015) ........................................ 8

*Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016).................................... 20

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 540 (D. Nev. 2008). 8

*Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008). 9

*Gucci v. Costco*, 2000 WL 60209 at \*3 (S.D.N.Y. 2000) ....................................................... 9, 14

*In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 382 (ED Pa 2006) .................................... 8

*In re Sulfuric Acid Antitrust Litigation*, 2005 WL 1994105 (E.D. Ill. 2005) .................................. 9

*Koumoulis v. Indep. Fin. Mktg. Grp.*, 29 F.Supp.3d 142, 145 (E.D.N.Y. 2014)........................... 6

*Kyoei Fire & Marine Ins. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) ....... 8

*Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981) ..... 8

*Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 127 (D. Md. 2002)..................................... 8

*Prokosch v. Catalina Lighting Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) .................................. 8

*QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) .............................. 8

*Quality Aero Technology, Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) ........................................................................................................... 9

*Reilly v. Natwest Markets* 181 F.3d 253 (2d Cir. 1999) ...................................................... 8, 9, 17

*Ross v. Youth Consultation Service, Inc.*, 2016 WL 7476352 (D. N.J. 2016) ............................... 24

*S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) ........................................................ 8

*Soroof Trading v. GE Fuel Cell Systems*,2013 WL 1286078 at \*2 (S.D.N.Y. 2013)..................... 8

*State Farm Mut. Auto. Ins. Co v. New Horizont, Inc.* 254 F.R.D. 227, 234-5 (E.D. Pa. 2008)...... 9

*Tailored Lighting v. Osram Sylvania Prod.*, 255 F.R.D. 340 (W.D.N.Y. 2009)........................... 8

*United States v. 281 Syosset Woodbury Rd.*, 862 F.Supp. 847, 851 (E.D.N.Y. 1994) .................. 6

**Statutes**

28 U.S.C. § 636(b)(1)(A) .................................................................................................. 6

**Rules**

Fed. R. Civ. P. 30(b)(6) ...................................................................................... passim

Fed. R. Civ. P. 37(a)(3)(B)(ii)............................................................................. 10

Fed. R. Civ. P. 37(b)(2)(A) ................................................................................. 11

Fed. R. Civ. P. 5.2(a) ......................................................................................... 22

Fed. R. Civ. P. 72(a) ............................................................................................. 6

Fed. R. Civ. P. 76(a) ............................................................................................. 1

**Regulations**

29 C.F.R. §825.301(a).......................................................................................... 19

29 C.F.R. §825.301(d) ........................................................................................ 19

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 72(a) Plaintiff objects (this "Objection") to entry of the

Magistrate's minute order of September 4, 2018 (the "Order")[1] denying Plaintiff's Motion [ECF

55] to Compel 30(b)(6) Designees and Depositions [ECF 55] (Exhibit A, the exhibits to

Plaintiff's Motion are attached to ECF 55] with respect to the following topics contained in

Plaintiff's May 22, 2018 Notice of 30(b)(6) Deposition to First Data Corporation ("First Data"):

Topic 1(c) -   First Data's internal control policies and procedures for the technological
systems used by First Data's human resources department, payroll, and leave
management;

Topic 3(a) -   The processes that were available to Plaintiff to apply to receive First Data's
disability insurance benefits, the process through which Plaintiff did apply to
receive First Data's disability insurance benefits, and the terms of the
disability insurance policies under which Plaintiff applied for benefits;

Topic 3(b) -   Terms and conditions of all equity-based compensation plans and agreements
relevant to the stock option and restricted stock awards by First Data to
Plaintiff; and

Topic 3(d) -   First Data's plans, policies and procedures for the implementation of FMLA,
ADA, and other leave programs.

With due deference to Magistrate Bloom, Plaintiff believes the Order, entered after hearing,[2] is

clearly erroneous, contrary to the law, and made without providing specific reasoning for denial.

Plaintiff requests an order that Defendant First Data either (i) designate and produce properly

prepared Rule 30(b)(6) witnesses on these topics or (ii) be precluded from presenting witnesses

testifying as to these topics (whether written or live testimony) in the remaining proceedings of

this case. Plaintiff further seeks such sanctions under Rule 37 as the Court determines to be just

and equitable.

---

[1]   The relevant portion of the Order is: "This Court held a discovery conference in this matter on September 4,
2018. As discussed on the record, plaintiff's motion to compel admissions regarding E.J. Jackson (ECF No. 60) is
granted. Plaintiff's remaining motions to compel (ECF Nos 55, 56, 59) are denied."

[2]   Exhibit B contains the complete transcript of the September 4, 2018 hearing before Magistrate Bloom. The
hearing addressed four motions. The discussion of the 30(b)(6) Motion subject of this Objection begins on page 21
of that transcript.

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                    1

## I.     BACKGROUND

Defendants have attempted to manufacture a defense based on the procedures of the corporate defendant and then obstructed Plaintiff's access to 30(b)(6) testimony from that defendant about its processes and procedures. Defendant First Data has not testified the entire 7-months of discovery and the Order blesses that result and Defendants obstruction. The 30(b)(6) topics have been noticed for four months. Defendants have not sought any protective orders. First Data simply obstructed and refused to appear for noticed depositions.

### A.  Justification for Noticed 30(b)(6) Topics

This is a FMLA & ADA case asserting damages including lost income and equity. Defendants assert a retroactive redesignation of Plaintiff's FMLA leave as a defense. This defense is supported by a sworn declaration, and a purported "supplemental" declaration, to the effect that the medical analysis by First Data's short-term disability ("STD") benefit claim administrator (MetLife) evaluating STD eligibility, directly influenced First Data's independent and separate decision to retroactively change Plaintiff's FMLA leave start date to a much earlier date than originally requested and originally designated by First Data. In January 2017, Plaintiff's leave was redesignated so that it expired on November 28, 2016 -- Plaintiff's leave expired the date five days after leave was first requested, two weeks before leave was first approved, five weeks before the redesignation occurred. [ECF 37-1 at page 29 and ECF 51] The corporate processes that could lead to such an anomalous result must be discovered by 30(b)(6) testimony, no single individual could know how this could happen. Plaintiff asserts that this retroactive redesignation is inconsistent with the law and interfered with Plaintiff's right to reinstatement under the FMLA. The 30(b)(6) topics at issue all go to Plaintiff's challenge to this retroactive redesignation defense and to Plaintiff's proof of damages. Testimony from the

corporate defendant on the leave management, benefits, and compensation practices in the

30(b)(6) topics is critical to completing a reasonable evidentiary catalog to be used by this Court

in deciding the retroactive redesignation defense. This discovery requires inquiry into all known

questions raised by that defense and its supporting declarations, including, among others: [3]

(i)     The authority and process by which an HR manager in Omaha purportedly overrode the previous leave start date decisions of senior executives in New York and Atlanta (Plaintiff's immediate EVP superior, and the EVP of human resources);

(ii)    Explanation of the indefensible story of how Plaintiff had 160 hours of PTO available, then this HR manager, in December 2016, applied Plaintiff's available PTO to the period from when Plaintiff was forced onto leave in November through mid-December 2016, then in January 2017 she changed that previous allocation and retroactively applied that available PTO to the period from surgery in early September until early October,  and then she used those bogus retroactive changes to PTO to justify retroactive redesignation of FMLA leave;

(iii)   Whether the retroactive redesignation of leave was an after-the-fact action, taken to justify the asserted defense that the Plaintiff was unprotected by the FMLA and included in a "reduction-in-force", as pretext to prevent the exercise of Plaintiff's right to return;

(iv)    Whether the revocation of the reasonable accommodation granted to Plaintiff by senior management allowing him to work remotely at full, regular pay, from the hospital and home while recovering from surgery violated the ADA;

(v)     Whether retroactively redesignating the period when Plaintiff was working remotely at full pay to Plaintiff using PTO and STD while on leave violated the ADA by unilaterally reducing Plaintiff's compensation based solely on a disability;

(vi)    Whether the standards for a determination of disability benefit eligibility has even a

---

[3]     At first glance, this may appear to be a list of fact issues to be tried. That conclusion is inaccurate and not the case, especially if the 30(b)(6) testimony occurs. These listed issues should ultimately be determined to be irrelevant to application of the law, as they arise merely because the Defendants' are attempting to kick-up enough dust to create fake fact issues. Retroactive redesignation is not permitted when the corporation had full knowledge of Plaintiff's condition the entire period from the date of his surgery forward. The Defendants' admit the following: (i) Plaintiff underwent laryngectomy surgery on September 6, 2016; (ii) Plaintiff did not take leave or PTO from the date of his surgery until being forced onto leave by First Data on November 19, 2016; (iii) on December 15, 2016 First Data designated Plaintiff's FMLA leave for a period ending January 16, 2017 and (iv) on January 10, 2017 Defendant Rhonda Johnson accepted Plaintiff's physician's return to work authorization. At the moment the return to work authorization was accepted, Plaintiff was entitled to be reinstated to his position or an equivalent position. Plaintiff was notified of his termination on January 13, 2017 at the close of business of the business day prior to his scheduled return to work. First Data's failure to reinstate constituted interference with Plaintiff's rights under the FMLA – full stop, no further analysis necessary. Defendants forcing Plaintiff to leave, and revoking his remote access accommodation, and retroactively applying PTO and STD to prior full pay periods, violated the ADA. However, if there is any possibility that these listed issues arising from the asserted retroactivity defense are to be tried, the Plaintiff is entitled to discovery of potentially relevant 30(b)(6) testimony regarding the Defendant's assertions.

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                       3

scintilla of relevance (as asserted in two contradictory declarations already submitted by Defendants) to the standards for designating FMLA leave; and

(vii) Whether the disability benefits administrator (MetLife) had any right to collect Plaintiff's medical information and then give that information to First Data where it was used by First Data to retroactively redesignate Plaintiff's FMLA leave start date.

These are significant core issues, raised by the assertion of the retroactivity defense, that require 30(b)(6) depositions to overcome the significant asymmetrical access to relevant information.

**There also are significant issues as to the lack of truthfulness, intentional deceptiveness, and facial inconsistencies of the two sworn statements that have already been submitted to the Court by First Data and its counsel in support of the redesignation defense.** Further inquiries and discovery into these issues through 30(b)(6) testimony is required to avoid the effects similar to those surrounding the "sham affidavit doctrine" – that is, the Defendants are falsely creating fact issues by the intentional misuse of declarations, and will likely do so again in Rule 56 motions. Rule 30(b)(6) depositions of First Data will provide Plaintiff the ability to discover the corporation's position before even more witnesses and "sham affidavits" come out of the woodwork to manufacture fact issues.

The noticed 30(b)(6) topics go directly to Defendant First Data's handling of Plaintiff's ADA accommodations and FMLA leave. It would be error to allow this case to proceed to Rule 56 motions, and any following trial, without the corporate defendant testifying on the topics. If Plaintiff refused to be deposed, the result would be contempt or dismissal. Defendants likewise should not be allowed to refuse to designate and appear <u>twice</u> without any consequences.[4]

---

[4]    On August 17, 2018, the Court extended the termination of fact discovery from August 31, 2018 to September 28, 2018, based on Defendant's request to pursue the depositions of third-parties (Plaintiff's tax preparer and Plaintiff's employer prior to First Data), on an unjustified fishing expedition based on facts misrepresented to the Court regarding the relationship of Plaintiff to First Data's Vice Chairman of the Board. [ECF 54] Yet, while Defendants are using this extra time granted by the Court to burden, subpoena, and seek to depose <u>third-parties</u> for the period of 2010 (four years prior to Plaintiff's hiring by First Data) through today (including the past four years when Plaintiff was employed by First Data or restarting his consulting business), the Order denies Plaintiff's ability to depose a <u>named party</u> in the case, First Data. It is significant prejudice to Plaintiff for Defendants to be allowed extra time to bother and burden third-parties on irrelevant issues while the Plaintiff cannot depose the corporate

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                                                    4

**B.  Notice of 30(b)(6) Deposition Background**

On May 22, 2018, Plaintiff noticed Defendant First Data for 30(b)(6) depositions to be held June 7th (and 8th if needed). Exhibit C. The topics for deposition, including those set forth above, were attached as Exhibit A to that Notice. First Data never objected to the topics and never sought a protective order. First Data failed to designate witnesses and failed to appear on June 7th and 8th. Exhibit D.

On June 11, 2018, Plaintiff filed a motion to compel designations and depositions on the 30(b)(6) topics [ECFs 46-50] ("First 30(b)(6) Motion"). On June 12th, after a telephonic hearing, Magistrate Bloom did not compel 30(b)(6) designations and depositions, but directed the parties to meet and confer on scheduling issues. For the remainder of June and July, defense counsel continued to refuse to commit to the designation or production of 30(b)(6) witnesses – often declaring available dates and then withdrawing those dates. [See ECF 55-4]

Because First Data would not designate witnesses or agree to 30(b)(6) deposition dates, on July 10th Plaintiff noticed the 30(b)(6) deposition for July 30th and 31st in Brooklyn (dates Defendants previously indicated were available). Exhibit E. Over the next two weeks, First Data refused to designate witnesses. On July 27th First Data confirmed in writing that it would not produce 30(b)(6) witnesses at the designated time and place, and again no-showed the 30(b)(6) depositions. See Exhibit F. This was First Data's second failure to comply with a validly issued and served subpoena without ever filing for protective order or filing an objection to the noticed topics. Those repeated non-appearances are designed to intentionally and improperly prolong the discovery process and to hide witnesses so as to allow Defendants greater flexibility to manufacture facts later in this proceeding.

---

defendant. The Order, in effect, blesses of Defendant's willful refusal to designate and produce witnesses.

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                    5

Throughout August, Plaintiff continued to request 30(b)(6) witnesses be designated and presented for deposition. Pursuant to the original scheduling order in this case, fact discovery was to be completed by August 31, 2018. With that deadline looming, on August 22, 2018 the Plaintiff filed a letter motion [ECF 55] ("Second 30(b)(6) Motion") again requesting that Defendant First Data be ordered to designate and produce witnesses to address the topics set forth in the May 22, 2018 30(b)(6) Notice. After a September 4, 2018 hearing (See Exhibit B transcript), Magistrate Bloom in the Order denied the Second 30(b)(6) Motion in its entirety.

## II.     STANDARD OF REVIEW – RULE 72(a)

This Objection is Plaintiff's only procedural vehicle to obtain the Defendant's 30(b)(6) testimony that is critical to proper adjudication of this case and to avoid further prejudice in future dispositive motions or trial. Plaintiff cannot assign error without timely objecting, and because of Plaintiff counsel's responsibility to the client, this Objection must be raised at this time. The Order and this Objection are subject to Rule 72(a). *United States v. 281 Syosset Woodbury Rd.*, 862 F.Supp. 847, 851 (E.D.N.Y. 1994). Fed. R. Civ. P. 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

A magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the district judge absent a "clearly erroneous or contrary to law" finding. *Koumoulis v. Indep. Fin. Mktg. Grp.*, 29 F.Supp.3d 142, 145 (E.D.N.Y. 2014)(citing 28 U.S.C. § 636(b)(1)(A)).[5]

---

[5] See *Easley v. Cromartie*, 532 US 234, 242 (2001)(clearly erroneous fact standard); *DeFazio v. Wallis*, 459 F.Supp2d 159, 163 (E.D.N.Y 2006)(contrary to law standard)

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                         6

With deference to Magistrate Bloom's consideration of the Second 30(b)(6) Motion, the resulting Order denying 30(b)(6) testimony is clearly erroneous and contrary to the law. The Order and the transcript of the hearing do not clearly set forth the basis for Magistrate Bloom's denial, so this Objection cannot be tailored to directly address her reasoning. The Order deprives Plaintiff of essential discovery that has been properly sought and noticed and has not been subject to motions for protective orders or challenges to the noticed topics. The Order will have significant, prejudicial, impact on the remainder of this litigation (e.g. Rule 56 motions and trial will include First Data witnesses testifying as to disability benefits and leave management topics on which the Order denies Plaintiff 30(b)(6) discovery). First Data should not be allowed to field witnesses to testify in this case on topics included in the 30(b)(6) Notice when the Plaintiff has been twice denied the opportunity to depose the corporate defendant so as to limit the potential for new stories to be concocted later. The Order does substantial prejudice to Plaintiff and is contrary to Rule 30(a) and Rule 30(b)(6). This risk of prejudice is significant. Before discovery was even completed, Defendants submitted on the record two knowingly, inconsistent sworn declarations. Further misuse of declarations can be anticipated and 30(b)(6) deposition testimony provides a check on that potential abuse. First Data's refusal to designate and produce witnesses is sanctionable under Rule 37. For the fairness of the process, First Data must be ordered to designate and produce 30(b)(6) witnesses on the noticed topics or be denied the ability to present witnesses on these topics during the remainder of this case.

### III.    LEGAL STANDARDS – RULE 30(b)(6) AND RULE 37

Fed. R. Civ. P. 30(b)(6) provides two simple commands to a corporate deponent (emphasis added):

> In its notice or subpoena, a party may name as the deponent a public or private
> corporation, a partnership, an association, a governmental agency, or other entity
> and must describe with reasonable particularity the matters for examination. The

named organization **MUST** then **DESIGNATE** one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated **MUST TESTIFY** about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

A 30(b)(6) "designee" is not simply testifying about matters within his or her personal knowledge like a fact witness. Rather, a 30(b)(6) witness is speaking for the corporation about matters to which the corporation has reasonable access and the designee is obligated to perform a reasonable inquiry into the topics prior to testifying. *Reilly v. Natwest Markets*, 181 F.3d 253, 268 (2d Cir. 1999). The corporate deponent has an obligation to prepare the designee on the noticed topics so as to provide full, accurate, and non-evasive testimony. *Aventis v. Sandoz*, 272 F.R.D. 391, 393 (D.N.J. 2011).[6] The designee must prepare by gathering "corporate knowledge" and must testify beyond just personal knowledge or involvement. *Eid v. KLM*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015).[7]

---

[6]   The scope of a 30(b)(6) deposition is coextensive with Rule 26(b)(1), but the witness has a duty to be prepared to testify, beyond personal knowledge and involvement, on at least those topics identified in the 30(b)(6) notice of deposition. *Tailored Lighting v. Osram Sylvania Prod.*, 255 F.R.D. 340 (W.D.N.Y. 2009)  *Soroof Trading Dev. Co. v. GE Fuel Cell Systems*, 2013 WL 1286078 at *2 (S.D.N.Y. 2013); *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 382 (ED Pa 2006). Producing an unprepared witness is tantamount to a failure to appear. *Kyoei Fire & Marine Ins. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007); *Black Horse Lane Assoc. v. Dow Chemical*, 228 F.3d 275, 304 (3rd Cir. 2000). The burden on the corporation to prepare a designee on the noticed topics is not a justification for failing to designate or prepare. See, e.g., *Prokosch v. Catalina Lighting Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000); *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 540 (D. Nev. 2008); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 37 (D. Mass. 2001) ("Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.").

[7]   Courts regularly hold that to meet Rule 30(b)(6)'s obligations the deponent "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed… as to the relevant subject matter." *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (quoting *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981)). A Rule 30(b)(6) witness's testimony also is required to go beyond facts known to the organization. The witness must be prepared to testify about the organization's subjective beliefs and opinions. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. NC 1996). In doing so, the witness will be required to provide the organization's interpretation of documents and events to the extent this can be determined and provide an explanation for how the facts of the case support the organization's contentions. *Id.*; *Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 127 (D. Md. 2002). A court can

"The distinct status of a 30(b)(6) deposition is confirmed by the Advisory Committee Notes to the 1993 amendments to the Federal Rules of Civil Procedure which expressly state that for purposes of calculating the number of depositions in a case, a 30(b)(6) deposition is counted as a single deposition, regardless of the number of witnesses designated." *Sabre v. Frist Dominion Capital, LLC*, 2001 WL 1590544 at *1 (S.D.N.Y. 2001); *Advisory Committee Notes* to 1993 amendments to Rule30(a); *Quality Aero Technology, Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002). [8]

One purpose of Rule 30(b)(6) is to curb the "bandying" by which officers testify in turn, as individual fact witnesses as to personal knowledge, and each disclaims knowledge of specific facts that clearly must be, and are, known to some person(s) in the organization. *Gucci v. Costco*, 2000 WL 60209 at *3 (S.D.N.Y. 2000). This "bandying" is exactly what has occurred in Plaintiff's depositions in this case - each witness knowing only enough to say they could not speculate, but that someone else at the company has the answer to Plaintiff's questions on the specifics of leave, disability benefits, and human resources systems and controls. The corporation possesses the knowledge to answer and has an affirmative duty to designate and

---

go as far as precluding an organization from providing other witnesses at trial or from offering any testimony on the subjects for which witnesses are not presented for deposition or on topical questions that the designee could not answer. See *Reilly v. Natwest Markets*, 181 F.3d 253, 269 (2d Cir. 1999); *QBE Ins. Corp. v. Jorda Enters., Inc*., 277 F.R.D. 676, 681 (S.D. Fla. 2012); *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008).

[8] "[A] Rule 30(b)(6) deposition should be treated as one deposition, no matter how many designees testify, for purposes of the 10–deposition limit. This limitation has a readily discernable logic, as large corporations . . . may require testimony from multiple officers . . . [A] contrary rule would place an unfair constraint on the number of depositions allowed to parties needing to conduct Rule 30(b)(6) depositions." *State Farm Mut. Auto. Ins. Co v. New Horizont, Inc.* 254 F.R.D. 227, 234-5 (E.D. Pa. 2008). "The Advisory Committee's explanation of why Rule 30(b)(6) depositions were to be treated differently from individual depositions for "purposes of" the ten deposition rule, is readily apparent. As the instant case demonstrates, Rule 30(b)(6) deposition notices routinely specify a number of topics of inquiry, which often necessitate the designation of multiple witnesses. . . . If each witness were counted separately, a party could easily exhaust the number of allowable depositions . . . . The Advisory Committee Notes make clear that the drafters intended to avoid that problem by counting a 30(b)(6) deposition as a single deposition, regardless of how many individuals were required to be designated to comply with a 30(b)(6) notice." *In re Sulfuric Acid Antitrust Litigation*, 2005 WL 1994105 (E.D. Ill. 2005).

prepare a 30(b)(6) witnesses. The Plaintiff should not be required to waste his depositions and time, blindly foraging for the answers from fact witnesses, who are not required to prepare and are as limited to their personal knowledge, when everyone involved knows the corporation has the answer. The defense has used fact witnesses to obstruct by "bandying" questions. A corporation's claim of lack of knowledge as a response to an interrogatory on these topics would not be tolerated. Similarly, it should not be tolerated in the 30(b)(6) context. The 30(b)(6) process is designed to prevent the Defendants' games of evasion and keep-away.

The May 22, 2018 30(b)(6) subpoena included topics stated with reasonable particularity, specificity, and narrowness in scope. First Data never filed an objection to the topics. First Data intentionally chose to refuse to designate person(s) to testify.[9] Despite Plaintiff's two attempts to compel 30(b)(6) witnesses, Magistrate Bloom has refused to compel designations of representatives to testify about information known or reasonably available to the organization on the designated topics. Fed. R. Civ. P. 37(a)(3)(B)(ii)

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) . . .

The Second Circuit held in *Reilly v. Natwest Markets*, 181 F.3d 253, 268 (2d Cir. 1999):

> Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, **the corporation MUST produce someone familiar with that subject.** *See* Fed.R.Civ.P. 30(b)(6); James Wm. Moore *et al., Moore's Federal* Practice, ¶ 30.25[3] (3d ed.1998). To satisfy Rule 30(b)(6), **the corporate deponent has an AFFIRMATIVE DUTY to make available "such number of persons as will" be able "to give complete, knowledgeable and binding answers"** on its behalf. *Securities & Exchange Comm'n v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y.1992) (quotations omitted); *see Moore's Federal Practice,* at ¶ 30.25. **When a party fails to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the preclusion of evidence.** *See* Fed.R.Civ.P. 37(b)(2)(B); *see, e.g., Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.,* 67 F.3d 766, 770–71 (9th Cir.1995).

---

[9] One witness was produced by First Data to address a portion of the topics contained in the single notice of 30(b)(6) depositions - compensation/benefits accounting, litigation reserves, and accounting treatment for reductions-in-force – but no witnesses have been designated or produced on the remaining topics in the 30(b)(6) notice.

The outright refusal of a corporation to produce prepared 30(b)(6) witnesses in violation of its affirmative duty cannot be glossed over lightly as a mere discovery dispute unworthy of consideration. A party to this litigation is refusing to give a deposition. **First Data, a named corporate defendant in this case, is intentionally, and repeatedly, refusing to present witnesses to testify on its behalf, at properly noticed depositions, on matters central to the case at bar.** There would be significant penalties if the Plaintiff had refused to be deposed – likely contempt or dismissal. This Court similarly should not tolerate the defendant with access to the most information in the case to refuse to provide deposition testimony. The sanctions for refusal to produce a 30(b)(6) witness are in Fed. R. Civ. P. 37(b)(2)(A), and such sanctions are significant, making the Order of utmost importance, requiring review:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6). . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . .
>
>    (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
>    (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; . . .
>
>    (vi)    rendering a default judgment against the disobedient party; . . .

Magistrate Bloom's denial of Plaintiff's Second 30(b)(6) Motion is clearly erroneous and contrary to the law. It is error to allow the closure of fact discovery, and for this case to proceed to Rule 56 motions and trial, without the opportunity of the Plaintiff to depose the only corporate defendant on the fundamental 30(b)(6) topics discussed below. The Court cannot allow this FMLA/ADA case to move through the past 7-months of fact discovery without the Plaintiff being allowed to obtain the corporate employer's testimony on its FMLA, ADA, benefits, and compensation policies.

## IV.    30(b)(6) TOPICS SUBJECT OF THIS OBJECTION

### A. <u>First Data's Equity Plans and Agreements</u>

The Plaintiff seeks that the Court compel First Data to designate and present for deposition a witness to address the following topic:

> Topic 3(b) -    Terms and conditions of all equity-based compensation plans and agreements relevant to the stock option and restricted stock awards by First Data to Plaintiff.

This topic is narrow in scope as it is limited only to those equity compensation plans and agreements received by Plaintiff while employed by First Data. For purposes of Rule 26(b)(1), testimony on this topic is relevant to at least three issues in the case:

(i) <u>Calculation of damages, back-pay and front-pay</u>. Upon Plaintiff's termination, his unvested restricted stock awards were canceled. Had Plaintiff been reinstated and continued to be employed, these awards would have vested and Plaintiff would have continued to receive additional equity awards. The value of those forfeited and lost awards must be determined for damages calculations and the terms of the equity plans and policies will impact valuation;

(ii) <u>Vesting while an employee is on leave or collecting long-term disability benefits.</u> During his deposition, Defendant Marino testified in general terms as to plan amendments and equity award agreement changes implemented a year or two prior to Plaintiff's termination. More specific testimony from a prepared witness on the terms and conditions of vesting while an employee is on disability benefits will go to damages and pretext issues. Plaintiff contends that he would not have been terminated had he not exercised his right to reinstatement and been content to remain on disability benefits funded by an insurer, not First Data. Had Plaintiff not exercised his FMLA right to return, Plaintiff believes that the equity plans may have provided that his forfeited equity awards may have continued vesting. A termination caused solely by the exercise of his FMLA right to return resulted in the forfeiture of equity – a loss caused by

exercising FMLA rights is interference with those statutory rights.

(iii) <u>Damages Mitigation</u>. There are terms and conditions within some of First Data's equity plans and awards that appear to purport to place non-compete, non-solicitation, and similar restrictions on employees receiving equity awards. Plaintiff is aware that First Data has taken the position that these restrictions apply to terminated employees. These restrictions, if applied, may limit Plaintiff ability to mitigate by prohibiting him from seeking employment or consulting with First Data's competitors and others similar businesses.

### B. <u>First Data's Leave Policies and Procedures</u>

The Plaintiff seeks that the Court compel First Data to designate and present for deposition a witness to address the following topic:

Topic 3(d) -   First Data's plans, policies and procedures for the implementation of FMLA, ADA, and other leave programs.

This is an FMLA/ADA case. It is unconscionable for this Plaintiff to be forced to address Rule 56 motions and go to trial without having deposed a properly prepared 30(b)(6) witness on the corporation's applicable FMLA and ADA programs. Plaintiff is entitled to depose a witness prepared to speak as to corporate knowledge, and without the ability to shirk this topic claiming lack of personal knowledge or involvement, and simply referring Plaintiff to others for answers as has happened to date.[10]

Defendants took the position in their 12(c) Opposition [ECF 37-1] that Plaintiff's FMLA leave had expired, due to the retroactive redesignation, prior to January 10, 2017 when Plaintiff's

---

[10] For example, a corporate representative must be forced to explain the numerous leave notifications constantly changing dates and pay status, with different recipients on different dates, and with no consistency as to those involved in the decision. <u>See Exhibit</u> L. What is interesting is that all of these leave notifications and approvals are from November, December and January, yet First Data's sworn position now is that leave was retroactively determined to have begun in September and Plaintiff's 12-weeks of FMLA leave was exhausted just a week after he was forced onto leave in November and weeks before that forced leave was even approved in December.

medical return to work authorization was accepted by a First Data VP of HR, and Plaintiff's date to return was scheduled. When the VP of HR accepted that authorization, no mention was made by HR that Plaintiff's FMLA leave had be retroactively redesignated or that his leave had allegedly expired in November 2016, just a <u>week</u> after he was forced on leave.  Defendants' position is that because the FMLA leave was "exhausted" due to retroactive change, the FMLA right to reinstatement did not apply. Plaintiff vehemently disagrees. The need for 30(b)(6) discovery on the issue is critical to the resolution of the case if Defendants persist with this theory. First Data's plans, policies and procedures for the implementation of FMLA leave and ADA leave are extremely relevant, discovery on these topics is proportional to the needs of the case (it is the case), and discovery is not duplicative.  Every human resources professional deposed as a fact witness to date (EVP, SVP, and four VPs – none claiming to be experts in the day-today implementation of leave policies) has done exactly what 30(b)(6) is designed to prevent, each "bandying" the issue to others and disclaiming personal knowledge.  See *Gucci v. Costco*, 2000 WL 60209 at *3 (S.D.N.Y. 2000). Someone at First Data has the information to answer Plaintiff's questions.  Plaintiff has been forced to "guess" and each time run into the same evasive testimony.

First Data, the corporate employer, must be compelled to designate, prepare, and present a 30(b)(6) witness to testify as to First Data's leave policies and procedures in this FMLA case. Any other result would be manifestly unjust to the Plaintiff.

### C.  <u>First Data's Disability Benefits – Relationship to FMLA Leave Approval</u>

The Plaintiff seeks that the Court compel First Data to designate and present for deposition a witness to address the following topic:

Topic 3(a) -     The processes that were available to Plaintiff to apply to receive First Data's disability insurance benefits, the process through which Plaintiff did apply to receive First Data's disability insurance benefits, and the terms of the

disability insurance policies under which Plaintiff applied for benefits.

The interaction between First Data's short-term disability benefits administration and First Data's approval and designation of FMLA leave has been put at issue by the Defendants. In the Defendants' 12(c) Opposition [ECF 37-1], Defendants referred to their EEOC Position Statement in which they stated "the Company received other medical documentation from Barger that used September 5, 2016, as the date for leave purposes[11] and when MetLife processed STD [short-term disability], it confirmed that was the date." [ECF 37-1 at pages 8-9] It is obvious from this statement, that the process used by First Data and MetLife for disability benefit applications directly impacts First Data's decisions as to FMLA leave designations, even though the standards for qualifying for disability and those for FMLA leave are not the same.

The 12(c) Opposition was supported, initially, by the sworn declaration of human resources manager, Jennifer Voycheske [ECF 37-1 beginning at page 29] (the "First Voycheske Declaration")[12] (Exhibit F) dated February 20, 2018, and then by a second sworn "supplemental" declaration of Ms. Voycheske [ECF 51] (the "Second Voycheske Declaration")[13] (Exhibit G) filed five months after the first declaration without explanation or procedural justification, and without any new developments, but only changes to Ms. Voycheske's alleged recollections of historical occurrences. In the First Voycheske Declaration ¶¶ 12 to 15, Ms. Voycheske testified

---

[11]   Plaintiff disputes this statement. Plaintiff Barger did not personally provide any medical documentation to either First Data or MetLife.

[12]   The Plaintiff also sought to compel copies of prior deposition testimony of Ms. Voycheske in *Fountain v. First Data* in which she also testified as to the inaccuracy of First Data's leave records. [ECF 59] Magistrate Bloom also denied that motion on September 4, 2018. Plaintiff is not objecting to that order; however, as these proceedings move forward, Plaintiff believes the error in this decision will become obvious.

[13]   The Second Voycheske Declaration is a "sham affidavit" that was a correction of prior known false testimony and not a "supplement" as represented. Plaintiff can prove that the Second Voycheske Declaration was presented by Defense counsel as a "supplement" when counsel knew that it was, in truth, a correction of the knowingly inaccurate testimony in the First Voycheske Declaration. Defense counsel intentionally misrepresented the nature of the Second Voycheske Declaration and knowingly did not advise the Court of their knowledge that the Second Voycheske Declaration was a "correction" and retraction of prior sworn testimony.

that she relied on medical information collected by MetLife for disability eligibility purposes to

then make First Data's independent decision to retroactively change Plaintiff's FMLA leave

designation to match MetLife's still in process STD benefit investigation.[14] There is absolutely

no requirement that start dates for FMLA leave and STD benefits be the same. First Data and

Ms. Voycheske concocted this concept solely for purposes of manufacturing this defense. In both

declarations it is Ms. Voycheske's sworn testimony that on January 5, 2017 she looked at, and

took, screenshots of information provided by MetLife to inform First Data's FMLA leave

retroactive redesignation decision.[15]

    It is impossible to even begin to make sense of Ms. Voycheske's inconsistent sworn

statements about her decision to use information supplied from MetLife for purposes of making

her alleged retroactive redesignation of Plaintiff's FMLA leave without deposing a 30(b)(6)

designee of First Data regarding the subjects specified in Topic 3(a) - The methods used for the

application and processing of First Data's disability benefits that are asserted to inform First

---

[14]    Plaintiff's position is that because First Data does not have a written short-term disability plan, and there is no written evidence that Plaintiff Barger ever completed a disability benefits application, there was no justification at all for MetLife to be collecting Plaintiff's medical information other than through misrepresentations by First Data of the terms and conditions, or lack thereof, of its short-term disability plans. Testimony regarding disability benefits will go directly to the question of whether the medical information MetLife collected should ever have been collected at all, and whether it should have been used to inform First Data as to when Plaintiff's FMLA leave began. As Plaintiff's counsel noted during the September 4, 2018 hearing, there is a difference between the standards for STD eligibility and FMLA leave designation. A medical condition and absence from the work place justifying one does not necessarily justify the other. There are employees receiving STD benefits that are not on FMLA leave and there are employees on FMLA leave that are not receiving STD benefits. The two are not inextricably linked. But, without justification, Voycheske swears she requires STD and FMLA start dates to be linked.

[15]    As discussed in detail in IV.D.2 of this Memorandum below, the testimony in the First Voycheske Declaration regarding the "screenshot" attached as Exhibit 2 to that declaration was knowingly, and intentionally misrepresented to the Court as being something other than what it obviously is. That screenshot could not have possibly been taken on January 5, 2017, as sworn by Ms. Voycheske. The falsity of the testimony was obvious from the face of the document. It must have been because of this glaring, knowingly presented, inaccuracy, among others, that the Second Voycheske Declaration was submitted with a new screenshot as a cover to avoid a retraction of knowingly misrepresented testimony. Within hours of receiving the First Voycheske Declaration, Plaintiff's counsel advised Defendant's counsel that the First Voycheske Declaration contained perjured testimony and offered to allow a re-write without the declaration. Exhibit I. Defendant's counsel did not re-write and knowingly decided to file an obviously false and misrepresented declaration.

Data's FMLA leave designation decisions.[16] Defendants will try to offer witnesses and

declarations on these topic in the future (which will be evidence that topics are within the

purview of Rule 26(b)(1)). However, Defendants should be prohibited from doing so if First

Data fails to designate and present 30(b)(6) witnesses during discovery. See *Reilly v. Natwest*

*Markets,* 181 F.3d 253 (2d Cir. 1999)(prohibition under Rule 37).

### D.  First Data's Human Resources Systems and MetLife Interface

The Plaintiff seeks that the Court compel First Data to designate and present for

deposition a witness to address the following topic:

Topic 1(c) -    First Data's internal control policies and procedures for the technological systems
used by First Data's human resources department, payroll, and leave
management.

#### 1.  Out-of-Office System ("OOO") and PeopleSoft System ("PeopleSoft")

Throughout document production and depositions to date, two systems used by First

Data's human resources department are continually mentioned – the "OOO" system and the

"PeopleSoft" system.

Plaintiff's understanding is the OOO system provides a mechanism for an exempt

employee, such as the Plaintiff, to report days used for PTO (sick days, vacation days, etc.). The

testimony to date as to who has access to the OOO system to make entries declaring exempt

employee absences as PTO has been "bandied" about in the testimony of human resources

officers,[17] yet no definitive answer has been given. Someone at First Data knows who has the

access to make PTO entries in an employee's OOO file.  The fuzzy, qualified, sort-of, consensus

---

[16]   Plaintiff has no need of Voycheske's further testimony given her sworn declaration are both internally
inconsistent and contradict each other. Plaintiff knows what Voycheske claims she did. Plaintiff needs testimony
from the corporation about how the process is designed to work, not more stories about one unsupervised individual
may have done.

[17]   See e.g. Defendant Johnson Deposition (164:3 – 165:21; 191:17-192:5); Amy Steffen Deposition 37:24-39:5)

is that only the employee, the employee's immediate superior, and possibly Defendant Marino, have access to declare days missed from work as PTO. Defense counsel has admitted that Plaintiff Barger and his supervisor never reported any "PTO" for Plaintiff from surgery until his notification of termination. Yet, somehow, Ms. Voycheske a manager level employee (the hierarchy in descending order - CEO, EVP, SVP, VP, director, manager), says that she or someone else made changes to apply Plaintiff's available 160 hours of PTO initially to the period of mid-November 2016 to mid-December 2016, and then reconfigured that PTO to apply to the period from early September 2016 to early October 2016 when no such entries had been made in OOO by Plaintiff or his supervisor at any time during those months.[18] As represented by Defense counsel at the September 4th hearing, Plaintiff's superiors intentionally did not force Plaintiff to take leave or PTO at any time between September 6th and November 19th. [See transcript, Exhibit B, 34:9-11; 36:22-37:24; 38:6-24] The processes, controls and procedures for access to the OOO system has a significant impact on the case. According Defendants, someone, other than Plaintiff Barger and his direct superiors made changes to retroactively apply PTO to periods for which Plaintiff and his superior officers had agreed he was to remain on working on regular payroll. The ability to access and retroactively change pay records and time record, and the corporate controls around assuring such records are not wrongly modified, are relevant to (i) pretext, (ii) damages, (iii) determining leave start dates; and (iv) Ms. Voycheske's veracity.

---

[18]    In ¶10 of the First Voycheske Declaration, Ms. Voycheske swears that "On December 21, 2016, after Barger's paid time off had been exhausted, I e-mailed Barger explaining the option to transition to short-term disability . . .", but all other evidence indicates that Plaintiff had 160 hours of unused PTO available that was not retroactively applied to September and October until January or later. The First Voycheske Declaration on this PTO issue is circular. Voycheske swears she contacted Plaintiff on 12/21 because his PTO was exhausted and STD unapproved, and then she claims to collect information from the STD application process after that date and obtains evidence from MetLife that STD would start in September as her justification for retroactively applying PTO and leave starting in September causing the exhaustion of PTO prior to 12/21. Ms. Voycheske's statement looks like a dog chasing its tail. The sworn fact that PTO was exhausted on 12/21 could not possibly have proceeded discovery of the information from MetLife upon which the retroactive application of PTO relied. Her story is non-sensical. There cannot be both available PTO to retroactively apply in January and PTO having been exhausted when she contact Plaintiff on 12/21. It is also completely inconsistent with Defense counsel's representation to the Court on September 4th that Plaintiff did not take any PTO prior to November 19th.

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                                    18

First Data's PeopleSoft system appears to be a general human resources management tool that tracks all personnel file information – name, address, reporting structure, job history, etc. In addition, PeopleSoft appears to have information regarding whether or not an employee is active or on a leave of absence. Documents have been produced in discovery indicating that from the date of Plaintiff's surgery through sometime in the first week of January 2017 Plaintiff's PeopleSoft profile reflected him as active and not on any form of leave. The documents also show that someone changed Plaintiff's records more than four months after surgery to reflect a leave of absence for periods he was on full payroll. The issue of PeopleSoft access has also been "bandied" about in depositions.[19] Plaintiff's contention is that the reason he was not reflected as being on leave in that system is because he was not on leave; he was working remotely. Plaintiff requires information as to the controls on modifying PeopleSoft data. This discovery is relevant not only because of the alleged retroactive changes, but also to know who could have made the changes and chose not to do so while Plaintiff was recovering and working remotely. Defense counsel admitted during the September 4th hearing that Plaintiff did not take leave or PTO during the period between his surgery and his forced leave in November 2016. First Data's senior officers have testified that they had knowledge of Plaintiff's condition and remote work from September 6, 2016 through November 19, 2016 and intentionally kept him on regular, full payroll. Therefore, First Data, the corporation, had this same knowledge. A leave manager learning what is already known by the corporation's senior management is not grounds for the retroactive redesignation of leave; such redesignation is not permitted by FMLA regulation 29 C.F.R. §825.301(d). First Data was aware of the Plaintiff's condition beginning on September 6, 2016 and never took action to designate leave under 29 C.F.R. §825.301(a) until forcing leave.

---

[19] Defendant Johnson Deposition 131:11-132:20; 160:9-163:22; 191:17-194:13

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                    19

The discovery as to OOO and PeopleSoft access is also relevant to the issue of the individual defendants status as an "employer" for purposes of the FMLA under *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016). The ability to make changes to the designation of Plaintiff's time in the OOO and PeopleSoft systems goes directly to control over the Plaintiff's terms and conditions of employment.[20]

## 2. MetLife Disability Benefit Interface

The First Voycheske Declaration and the Second Voycheske Declaration have directly put at issue the systems for communication and information transfer between First Data and MetLife, the alleged short-term disability benefit administrator for First Data.[21] As noted above,

---

[20]    During the September 4, 2018 hearing before Magistrate Bloom, Plaintiff's counsel was asked as to why an interrogatory was not specifically asked as to who made changes to Plaintiff's information in OOO and PeopleSoft. Plaintiff's reasons are as follows: (i) because the 30(b)(6) topics were outstanding and Plaintiff believed designees would be presented for deposition, Plaintiff chose to use his 25 interrogatories of First Data in a different manner; (ii) the issue is not only who changed the information, but also who could have made the changes but did not make changes while Plaintiff was working remotely (thus, evidence of agreement that Plaintiff was working on an accommodation and not using PTO or on FMLA leave while recovering); and (iii) while the Plaintiff has not bothered the Court with the inadequacies of Defendants' interrogatory responses, suffice it to say, the hopes of a complete response to an interrogatory were minimal, if not non-existent – a motion to compel a response to an interrogatory likely would have been required anyway.

[21]    Plaintiff does not believe that MetLife is authorized to process First Data's short-term disability benefits as they existed in 2016 and 2017, and correspondingly MetLife was not ever entitled to collect information from Plaintiff Barger's physicians and then supply that information to First Data.  In Plaintiff's Second Set of Requests for Admission (RFA 7 & 8), Plaintiff asked for an admission that First Data was unable to produce a written "employee welfare benefit plan" (as defined in ERISA) established for purposes of providing "short-term disability benefits" or a written short-term disability insurance contracts. In response, Defendant First Data stated that under Department of Labor regulations, "First Data's short-term disability benefits are a form of exempt self-funded salary continuation, paid from the Company's general assets, and are exempt from ERISA coverage." First Data also referred Plaintiff to an agreement with MetLife for the provision of short-term disability benefit determination and administration services pursuant to a Disability Plan Advice-to-Pay Administrative Services Agreement with Bates numbers FDC00052654-84 (the "ASA"). The statements in response to the RFAs by First Data are inconsistent with the terms of the ASA. For example, the first recital to the ASA (FDC00052657) provides "First Data Corporation has established and sponsors and maintains an employee welfare benefit plan, as this term is defined under the Employee Retirement Income Security Act of 1974, as amended, that provides disability income benefits to specified current and former employees (referred to herein as the "Plan(s)")." In the definitions, the ASA references a "Named ERISA Claims Review Fiduciary" (FDC00052658). The ASA also contains a provision (FDC00052662) in which "[First Data] hereby represents to MetLife, for MetLife's reliance thereon, that the Plan is an employee welfare benefit Plan as defined in ERISA." Moreover, the ASA provides that "[First Data] will furnish MetLife with a copy of the Plan documents." (FDC00052663). Yet, in response to the RFAs, First Data admits there are no written plan documents to provide and its short-term disability benefits are exempt from ERISA. If there are no plan documents and the plan is not an ERISA plan, MetLife was never authorized under the ASA to collect Plaintiff's medical information and certainly not authorized to share information improperly collected with First Data for its use in making decisions regarding Plaintiff's FMLA leave. These questions go directly to the disability benefit and

---

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                             20

the interaction between MetLife's disability information gathering and First Data's FMLA leave

designation is an essential fact to making sense of the alleged acts of Ms. Voycheske, a manager

in Omaha, making a unilateral (and unsupervised) decision to retroactively redesignate Plaintiff's

leave contrary to the prior real-time actions and decisions of senior management in New York

and Atlanta (including the CEO, the EVP of Human Resources, and the two EVP's in Global

Business Solutions to whom Plaintiff reported), all of whom were aware of Plaintiff's surgery,

medical condition and remote work and intentionally chose not to designate leave and keep

Plaintiff on regular payroll for months.

In the First Voycheske Declaration, Ms. Voycheske swears that on January 5, 2017, she

screenshotted the MetLife disability benefit interface to obtain information regarding the date of

the Plaintiff's disability for STD purposes. [22] In support of this allegation, she attached as Exhibit

---

human resources technology issues subject of the motion to compel 30(b)(6) testimony – Topics 1(c) and 3(a).

[22]   Voycheske also claims to have received leave information from Barger. During the September 4, 2018 hearing before Magistrate Bloom, there was a discussion of Plaintiff's interpretation of Ms. Voycheske's question to him regarding his last day worked. Plaintiff Barger testified in his deposition that he interpreted the question to mean his last day physically in the office. Defense counsel has repeatedly mocked Plaintiff's response. Exhibit B Transcript 30:3-14. That mockery is out-of-line. Plaintiff is not a human resources professional. Even the HR professionals at First Data charged with work policies are confused by the question of "last day worked" and Plaintiff's interpretation of physical presence is consistent with the testimony of the Defendants in this case. Plaintiff's confusion regarding the "last day worked" question was echoed by **Defendant Rhonda Johnson, a VP of Human Resources, in her deposition** on June 27, 2018 (if three HR professionals don't know the answer, why is Plaintiff's understanding subject to counsel's mockery?):

Q: Who, then, would be able to identify Mr. Barger's last day of work in the system?
A: **When you say "last day of work", in what sense? On the premises?** (Johnson 155:12-15)
Q: So they [HR Help Desk/HR Service Center] don't have a system of their own that would track the last day worked?
A: **It depends on what you mean by "last day worked."** (Johnson 158:9-12)
Q: So why is she [VP Pulverenti HR Benefits] asking you the same question that's been asked several times, which is: What was the last day worked for Steve in PeopleSoft? Why is she asking you?
A: I am not sure why she is asking, but generally, again, our HR teams in other areas will reach out to the HR business partner. We're the liaison between the business.
Q: The topic has me confused, because at one point you ask Jennifer Voycheske what Mr. Barger's last day worked was; at one point Miss Voycheske asked Mr. Barger what his last day work is; and now Stephanie Pulverenti is asking you what Mr. Barger's last day of work is. Who should have the answer?
A: **I cannot speculate on that. I'm not sure. I don't have any insight into whom.**
(Johnson 212:16 – 213:7)

**OBJECTION TO ORDER PURSUANT TO FRCP 72(a)**                                                     21

2 to the declaration what she swears is a true and accurate copy of the screenshot taken on January 5, 2017. This statement was clearly false when made.[23] The "screenshot" attached as Exhibit 2 to the First Voycheske Declaration could not possibly have been taken on January 5, 2017 (copies of the relevant portions of the First Voycheske Declaration and its Exhibit 2 have been marked to show this impossibility and others). See Exhibit J. In the screenshot sworn to have been taken on January 5, 2017, the field labeled "Claim Status" indicates "Closed – 1/18/2017." This field, unlike others, does not contain an "Edit" button – i.e. First Data cannot change this field. This screenshot was clearly taken on or after January 18, 2017 (after Plaintiff was notified of his termination), not on January 5, 2017 (before Plaintiff was notified of his termination) as sworn. Ms. Voycheske's statement that the "screenshot" was reviewed on January 5, 2017 was knowingly false when made in her declaration.

**The First Voycheske Declaration, dated February 20, 2018**, was supplied to Plaintiff's counsel as part of the 12(c) Motion briefing process and was not filed with the Court until the entire motion briefing package was completed. Within hours of receiving the First Voycheske Declaration attached in support of the 12(c) Opposition, Plaintiff's counsel advised Defense counsel that the declaration contained perjured statements and offered to allow the Defendants to withdraw the opposition, redraft that opposition, and Plaintiff would advise the court of a revised briefing schedule. See Exhibit H. Defense counsel did not agree and permitted the First Voycheske Declaration to be filed with the Court with full knowledge the Plaintiff's position was that known, factually incorrect statements were included therein.[24]

---

[23]    As filed by Defendants, this supposed "screenshot" violated Fed. R. Civ. P. 5.2(a) as Plaintiff's full name, date of birth, and his short-term and long-term disability benefit claim numbers were filed unredacted by Defendants. In filing this screenshot as exhibits to this Objection, Plaintiff has redacted the 5.2(a) information from the screenshots in Exhibits G and J to avoid repeating Defendants violation.

[24]    The clearly erroneous MetLife screenshot is not the only knowing inaccuracy in the First Voycheske

**The Second Voycheske Declaration, dated July 16, 2018**, five months after the first

declaration, is titled a "Supplemental Declaration." In ¶5 of the Second Voycheske Declaration,

Ms. Voycheske on the eve of her deposition attempts to back-out of her sworn statement from

February, but does not quite go all the way to declaring her first statement to be false:

> Paragraph 15 of my [First] Declaration refers to <u>Exhibit 2</u>, a computer screenshot
> from MetLife indicating the date of Mr. Barger's disability was "9/4/16." Upon
> further review, I also viewed another computer screenshot from MetLife which at
> the top states "Info as of 01/04/2017" which reflects that MetLife had approved Mr.
> Barger's Disability Date as September 4, 2016, with a Benefit Start Date of
> September 18, 2016, a date which takes into consideration the 14 day waiting
> period applicable to short-term disability. A copy of the computer screenshot is
> attached as <u>Exhibit 7</u>.

In examining what was attached to the Second Voycheske Declaration as the

"screenshot" in Exhibit 7 (<u>Exhibit</u> J) and comparing it to the "screenshot" attached to the First

Voycheske Declaration as Exhibit 2 (<u>Exhibit</u> K) , it is obvious that the two documents are not

from the same system and they do not look anything alike. Moreover, the Exhibit 7 "screenshot"

(<u>Exhibit</u> K) does not look like a screenshot at all, but rather a generated spreadsheet or table. In

addition, the Exhibit 7 "screenshot" bears no indicia that it is a document generated by MetLife's

---

Declaration. In Plaintiff's request for a pre-motion conference to discuss a motion to strike the declarations [ECF 52] Plaintiff noted the issues with the intentional redaction of information in Exhibit 1 of the First Voycheske Declaration. The Second Voycheske Declaration merely unredacted these e-mails and claimed that in preparing for her July deposition Ms. Voycheske realized she had been advised by e-mail (those e-mails that were redacted from her first declaration) and she changed her testimony. The knowing deception as to the inaccuracies in the First Voycheske Declaration is obvious as Ms. Voycheske was scheduled to be deposed in March and that deposition was called off, approximately72 hours before it was to occur, due to a death in Defense counsel's family. Ms. Voycheske should have been preparing for her March deposition (just as she claims she was preparing a week ahead of her scheduled July deposition) and in March she should have noticed this error, if it actually was an error and not an intentional redaction to keep information for the Court or to supply less than complete information. But, even if she hadn't prepared for her March deposition,  Ms. Voycheske should have noticed the "error" when preparing the first declaration in which she and defense counsel <u>intentionally redacted</u> what they subsequently intentionally reveled as an epiphany in the second declaration. The Defendants knowingly allowed the Court to operate under a false statement for months while it was considering the 12(c) Motion. There is also the issue of ¶11 and ¶15 of the First Voycheske Declaration that conflict on their face as both cannot co-exist as truth. In one statement on January 5th MetLife had approved STD and in the other, MetLife had not. Then in the Second Voycheske Declaration, she swears that MetLife had approved STD on January 4th thereby making both of the statements in the First Voycheske Declaration false.

system (it appears to be an internal First Data report that First Data can modify at will), whereas Exhibit 2 from the first declaration is obviously a MetLife system..

Ms. Voycheske has now testified by sworn declaration <u>twice</u>. While many of her statements are demonstrably false and inconsistent, the one consistency is that Ms. Voycheske swears she receives information from MetLife through a computer interface and she used that information to make a completely separate decision to unilaterally override senior officers to retroactively redesignate Plaintiff's FMLA leave start date so that Plaintiff's 12-weeks of FMLA leave expired before the retroactive redesignation even occurred. This retroactive redesignation substantially impacts Plaintiff's right to reinstatement under the FMLA making the retroactive redesignation impermissible as Plaintiff was not given an opportunity to make a different decision had he known the revised designation. *Ross v. Youth Consultation Service, Inc.*, 2016 WL 7476352 (D. N.J. 2016).

Discovery regarding the means of data transfer between MetLife and First Data clearly is relevant to the issues of (i) when Plaintiff's FMLA leave began and ended, (ii) controls and permissions to receive Plaintiff's medical information, and (ii) the veracity of Ms. Voycheske, who executed two contradictory, and demonstrably false, sworn declarations. A properly prepared corporate representative on the issues is essential to the very questionable aspects of the sworn defense.

## V.    CONCLUSION AND REQUEST FOR RELIEF

First Data is trying to hide the witnesses and evidence that will show First Data's defense is an after-the-fact, manufactured cover for statutory violations of the FMLA and ADA. The fact witnesses have continually "bandied" the questions and claimed about the lack of knowledge on the specific noticed 30(b)(6) topics. A deposition of the corporation, through a properly prepared

witness to testify as to corporate knowledge on these topics, is the mechanism to prevent this conduct, and all of the topics are well within the purview of Rule 26(b). The 30(b)(6) topics were served nearly four months ago.

Plaintiff therefore requests that the Court, vacate Magistrate Bloom's Minute Entry Order of September 4, 2018 as clearly erroneous, contrary to the law and significantly prejudicial by allowing a named defendant to refuse to be deposed. Plaintiff further requests that the Court enter an order that either (i) properly prepared Rule 30(b)(6) witnesses on the topics subject of this Objection be designated and produced for deposition[25] or (ii) Defendants be precluded from presenting witnesses testifying as to those topics (whether written or live testimony) in the remaining proceedings of this case. Finally, Plaintiff seeks all other sanctions pursuant to Rule 37 that the Court determines to be just and equitable.

DATED:        September 13, 2018

Respectfully Submitted,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

_____/s/ Shawn Shearer_____
SHAWN SHEARER
shawn@shearerlaw.pro
Attorney for Plaintiff
Steven B. Barger

---

[25] If, despite Plaintiff's arguments to the contrary, the Court concludes that 30(b)(6) depositions do not count a single deposition for Rule 30(a) purposes, the Plaintiff requests that the Court permit Plaintiff such additional depositions as are necessary for First Data's designees to address the four topics subject of this Objection.

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, I transmitted the attached Rule 72(a) Objection to Order to the following CM/ECF registrants via e-mail to each of their CM/ECF registered e-mail addresses.

> Gary Eidelman
> Saul Ewing Arnstein & Lehr
> 500 E. Pratt Street, Suite 900
> Baltimore Maryland 21202-3133
>
> Gillian Cooper
> Saul Ewing Arnstein & Lehr
> 650 College Road East, Suite 400
> Princeton, NJ 08540-6603
>
> Lindsey Kennedy
> Saul Ewing Arnstein & Lehr
> One PPG Place, Suite 3010
> Pittsburgh, PA 15222
>
> *Attorneys for Defendants*

_____
Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (972) 803-4499
*shawn@shearerlaw.pro*