**PLAINTIFF'S OBJECTION TO ORDER**

**PURSUANT TO FED. R. CIV. P. 72(a)**

# EXHIBIT F

# Shawn Shearer

| | |
|---|---|
| **From:** | Eidelman, Gary B. <Gary.Eidelman@saul.com> |
| **Sent:** | Friday, July 27, 2018 10:45 AM |
| **To:** | 'Shawn Shearer'; Cooper, Gillian A.; Kennedy, Lindsey C. |
| **Cc:** | David Zeitlin |
| **Subject:** | RE: 30(b)(6) Witnesses - July 30 and 31 & First Data Statements About Plaintiff |

Shawn:

We are in the midst of preparing a response to your recent string of email communications and threats.
I trust that you have personal business in New York this weekend which is why you are traveling today.
You keep demanding that we appear for deposition in Brooklyn on July 30 and 31. It is your decision and your decision alone to appear for a deposition on those dates. As I have told you time and time again, First Data will not be present in Brooklyn on July 30 and 31. We are willing to consider dates in August once you identify the 10th witness that you want to depose in this case.

**Gary B. Eidelman, Esq.**
Saul Ewing Arnstein & Lehr LLP
Office: 410.332.8975
Mobile: 410.303.8832

---

**From:** Shawn Shearer [mailto:shawn@shearerlaw.pro]
**Sent:** Friday, July 27, 2018 11:26 AM
**To:** Eidelman, Gary B.; Cooper, Gillian A.; Kennedy, Lindsey C.
**Cc:** David Zeitlin
**Subject:** 30(b)(6) Witnesses - July 30 and 31 & First Data Statements About Plaintiff

**\*\*EXTERNAL EMAIL\*\* - This message originates from outside our Firm. Please consider carefully before responding or clicking links/attachments.**

THIS IS AN ATTEMPT TO SETTLE A DISCOVERY DISPUTE

Gary:

Plaintiff's counsel anticipated today's arrival of the case law that Defense counsel is relying on in his attempt to convince Plaintiff to forgo his necessary remaining 30(b)(6) witness testimony on topics outstanding scheduled for July 30 and 31, 2018 in Brooklyn. No such case law was forthcoming. Please provide your analysis, complete with the cites that support your assertion, for Plaintiff's counsel's evaluation. There is no way for Plaintiff to reach any understanding with Defendants on this matter short of filing a motion to compel, if Defense counsel refuses to provide the information upon which you are relying, for Plaintiff's review.

Plaintiff has made several good faith attempts to schedule these 30(b)(6) depositions, but none of them included the testimony of Ms. Jennifer Voycheske, who is not qualified to provide 30(b)(6) testimony. Plaintiff has indicated that Ms. Benhardt appears to be knowledgeable about Defendant's alleged "RIF" defense and associated topics covered by Plaintiff's now two month old accepted 30(b)(6) topics. Ms. Pulverenti has been

1

suggested by Defense counsel as a witness available to testify about benefits, including short term disability, the linchpin of the information accumulated and stored by MetLife and somehow allegedly relied upon to validate Defendant's two on the record sworn affidavits about First Data's attempt at date recounting for Plaintiff's FMLA leave dates. It appears that Ms. Pulverenti is qualified to provide adequate testimony about benefits, given her twenty plus years at First Data, all served in the benefits department. Plaintiff no longer has need of Mr. St.George's testimony, and counsel was informed of that earlier this week. Ms. Steffen has been on Defense Counsel's list of potential witnesses for months as well as on the "calendar" that Defendants provided the Court in May.

All correspondence between Plaintiff's counsel and Defendant's counsel supports Plaintiff's good faith belief that Defense counsel intended to provide witnesses on the topics outstanding. While Plaintiff understands that designation of said witnesses may not be mandatory, it is certainly customary in cases of this scope. Defense counsel continues to insist that this is "just" an employment case. Plaintiff finds that perspective both demeaning and inaccurate. This case involves the forced leave of a disabled executive and the circumstances surrounding First Data's policy of using information obtained possibly under fraudulent circumstances from MetLife in order to circumvent its FMLA and ADA obligations. Defense counsel put forth First Data's internal process for public scrutiny when you produced Ms. Voycheske's affidavits (including screenshots of MetLife's corporate interface containing Plaintiff's personal medical information - information that First Data likely has no legal right to access) as part of your Objection to Plaintiff's 12(c) Motion. Those screenshots are now available to the public, including Plaintiff's potential future employers.

Absent any contractually based support for First Data's legal ability to obtain the information underlying and included in these public declarations, they are now merely functioning (and have functioned for over five months) as a form of intentional defamation, continued interference in Plaintiff's possible future employment, retaliation due to the absence of any legal means by which to obtain the included screenshots and corresponding declaratory information, and harassment due to multiple, repeated violations of Plaintiff's right to privacy, with Defendants fraudulently requiring Plaintiff to fill out multiple release forms which they have no legal right to collect, under the guise of having "misplaced" his forms, or, as Defendant Johnson admits, faxing his information to the wrong place.

It is regrettable that Defendant First Data appears to have a fragmented, inefficient Human Resources department. But that is not Plaintiff's problem. Plaintiff did not bring this claim so that First Data could present to Plaintiff, the public, Judge and jury, its ineffective internal corporate learning curve. Plaintiff has no intention of trying those issues, as they are wholly irrelevant to the fact that Defendant Johnson has admitted, in email, First Data's EEOC response, Defendant's answer, and under oath in her deposition testimony to have accepted Plaintiff's timely return to work authorization and it is undisputed that Plaintiff's job duties remain with Ms. Robin Ording, and that his title and rank (and likely his salary) within Defendant Charron's organization are with Mr. EJ Jackson. What has become disturbingly relevant to Plaintiff, are the revelations of likely privacy violations, intentionally and persistently being used to damage Plaintiff.

In addition, it has come to Plaintiff's attention that Defendant Marino has been referring publicly to Plaintiff as "retired," and commenting negatively on Plaintiff's performance, despite the fact that Marino was never in a position to evaluate Plaintiff's performance, and First Data has admitted that no written negative reviews of Plaintiff's performance while at First Data exist. Plaintiff is not retired. Plaintiff's counsel is placing Defense counsel on notice that this defamation will not be tolerated. Counsel has been demanding proof of Plaintiff's mitigation, and Defendant Marino is simultaneously interfering with Plaintiff's ability to find employment at age 73 by outright lying about Plaintiff being "retired." Plaintiff is currently considering his additional legal options where this defamation and continued interference is concerned, and Plaintiff's counsel is instructing counsel to inform Defendant Marino to cease and desist in this activity immediately, and let Plaintiff's counsel know when this task has been completed.

Interestingly, it would appear that the genesis of the supposed "leak" that Defendant First Data continually has harassed Plaintiff to name, (despite Plaintiff's repeated and truthful explanation that his January 2017 text messages to Defendant Marino were hyperbole), is, in fact, Marino himself. As Plaintiff has described in his interrogatory answers, Plaintiff thought nothing of comments made to him at the time by employees regarding his potential retirement - until he reflected on those comments months after they were made and AFTER he was notified of his termination on January 13, 2017. Plaintiff now understands that the reason that various employees had mentioned retirement to Plaintiff during the latter months of 2016, when Plaintiff had no intention of retiring, is undoubtedly due to Defendant Marino having seen him in person and unilaterally determining that Plaintiff was disabled, disfigured and no longer worthy of a job at First Data, summarily removing Plaintiff's existing ADA accommodation of remote access, then gossiping to employees about Plaintiff's disability. Mr. Marino so much as admitted in his deposition that Defendant Marino thought Plaintiff was terminal when Plaintiff requested that Marino move benefits into Plaintiff's wife's name in November 2016.

Defendant Marino continues to gossip, and is now actually intentionally lying, openly interfering with Plaintiff's ability to both mitigate and obtain employment. It is not lost on Plaintiff that Defendants are projecting - demanding invasive searches of Plaintiff's records under the guise of needing proof of mitigation, and simultaneously threatening an abusively broad sweep of Plaintiff's communications devices in an effort to cover Defendant Marino's own inability to stop damaging Plaintiff with lies. Defendant Marino is his own leak. Defendant Marino continues to try to make Plaintiff's ability to mitigate as difficult as possible.

This recent revelation, combined with the abuse of MetLife's questionable alleged "authority" to collect Plaintiff's personal medical information that took place directly under Defendant Marino's supervision and order in his Human Resources department, is looking to be an additional cause of action for Plaintiff.

None of the above referenced developments will get Defense counsel out of the quagmire in which you are currently stuck. This case will commence, on schedule. Defendants will comply with discovery deadlines, or suffer the consequences. Ms. Voycheske's declarations are public, they are now permanent, they conflict, they are not able to be supported with documents, nor will her personal knowledge be available for rehabilitation or supplementation by her office companions, as Defense counsel had planned.

In fact, we are quickly approaching a point where each of those office companions, along with Ms. Voycheske, whichever member(s) of First Data in-house Counsel prepared Voycheske's statements (my money is on former named defendant Graesser, but that remains to be seen), Defense Counsel from Saul Ewing (including you), and every other person who has demonstrated to have obtained knowledge, either directly or indirectly, of Plaintiff's personal medical records through the illegitimate conduit of MetLife, is a witness to both fact and damages in Plaintiff's likely legal cause of action resulting from First Data's intentional violations of his legally protected privacy.

I warned you that allowing an SVP to leave without a severance agreement was dangerous for your client due to the inevitable exposure of highly ranked executives in what would typically be a more boilerplate employment case. Counsel laughed at me and at my client. I still have that voicemail. I warned you that Plaintiff was going to take this to the mat in an attempt to protect other employees and ex-employees of Defendant First Data, who are not as well situated as Plaintiff, from similar illegalities. Counsel ignored me. I instructed you many times to pull Ms. Voycheske's affidavit. Counsel refused. It is now too late, the declarations are permanent, and counsel has created an entirely new cause of action for Plaintiff. When I realized that First Data has no benefits plan with MetLife, I told you it was time to settle. Counsel refused.

Plaintiff's counsel is leaving today for New York. I strongly suggest that Defense counsel appear, with 30(b)(6) witnesses as noticed, in Brooklyn on July 30 and 31. I have attached, for your reference, the applicable deposition transcripts that prove Cagwin was unprepared to discuss disability insurance accounting, gave

incorrect answers, and then Plaintiff's counsel had to lead Mr. Cagwin to conclusions, and then Defendant's counsel had to promise to stipulate to those conclusions the following day, due to Cagwin's lack of preparation by Defense counsel, and inability to provide testimony on the noticed topics.

Plaintiff's counsel and Defense counsel are certainly NOT, under any definition, 30(b)(6) witnesses. A witness should have been prepared to discuss the disability benefit accounting issues clearly identified in the 30(b)(6) notice. Mr. Cagwin was not and there was absolutely no reason for our discussion prior to Ms. Johnson's deposition (attached) to have occurred.

As noted yesterday – Defendants only 30(b)(6) witness to date was non-compliant with the requirements of 30(b)(6) preparation for testimony.

I will see you on Monday in Brooklyn.

-Shawn


**Shawn E. Shearer**
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue #155-254
Dallas, TX 75204
(972) 803-4499
www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~+
This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~+