**PLAINTIFF'S OBJECTION TO ORDER**

**PURSUANT TO FED. R. CIV. P. 72(a)**

# EXHIBIT J

- 3 -

10. On December 21, 2016, after Barger's paid time off had been exhausted, I emailed Barger explaining his option to transition to short-term disability, which paid 66.67% of an employee's normal rate of pay. A true and correct copy of my email communication to Barger is attached as Exhibit 1.

[Annotation: STD NOT YET APPROVED ON 01/05. CONFLICTS WITH PARA. 15]

11. On January 5, 2017, I advised Barger that MetLife had not yet approved his short-term disability claim and that he should reach out directly to MetLife to ensure that he provided the necessary information so that his pay would not be impacted. *See* Ex. 1.

[Annotation: BARGER REPEATS WHAT HE HEARD FROM METLIFE ON STD. BARGER NOT COMMUNICATING FMLA LEAVE START DATE]

12. Barger replied to my email and said that MetLife had approved his short-term disability benefits from September 4, 2016, through October 15, 2016, and that MetLife needed additional information from his doctor to extend the benefit. *See* Ex. 1. This was new information because Barger was now reporting that his leave did not actually begin on October 24, 2016, but on September 5, 2016, some 7 ½ weeks earlier.

[Annotation left margin: This may have been new information for Ms. Voycheske, but not new information to First Data. All of the management officers superior to Plaintiff (CEO, EVPs Hack and Charron in Plaintiff's business group, and EVP Marino, head of HR were aware of Plaintiff's surgery, condition, recovery, remote work, and have admitted, keeping Plaintiff on regular payroll. This was not new information to First Data and not grounds for a manager to override previous decisions by Executive Vice Presidents, including the EVP head of HR.]

[Annotation: INACCURATE - BARGER REPORTED METLIFE'S PRELIMINARY STD DETERMINATION NOT LEAVE START. CONFLICTS WITH PARA. 11]

13. Because the September 5, 2016, date conflicted with First Data's records, I advised Barger of the discrepancy and asked him to confirm the date he began missing work. *See* Ex. 1.

14. When I spoke with Barger on the phone, he clarified that he began missing work on September 5, 2016, instead of October 24, 2016.

[Annotation: FIRST DATA REPRESENTED IN WRITTEN DISCOVERY RESPONSES THAT METLIFE DOES NOT ADMINISTER FMLA LEAVE. FMLA LEAVE IS HANDLED INTERNALLY. METLIFE COULD NOT HAVE MADE "LEAVE DETERMINATION" METLIFE MADE PRELIMINARY STD DETERMINATION]

15. I also contacted MetLife to confirm when Barger's leave began. I obtained a computer screenshot from MetLife indicating that it had approved Barger's short-term disability benefits beginning September 4, 2016, and not October 24, 2016. A true and correct copy of this screenshot is attached as Exhibit 2.

[Annotation: VOYCHESKE SWEARS EXHIBIT 2 SCREENSHOT OBTAINED ON JANUARY 5, 2017. SEE PARAGRAPHS 17 & 18 - CHANGES MADE BASED ON INFON RECEIVED FROM METLIFE. SCREEN SHOT COULD NOT POSSIBLY HAVE BEEN TAKEN ON 01/05/17 -- INFORMATION FROM 01/18/17 IS CONTAINED IN EXHIBIT 2]

16. I advised other members of First Data's Leave Management team about the discrepancy. I informed them that since both Barger and MetLife had confirmed that Barger's

leave began September 5, 2016, (not October 24, 2016), we needed to recalculate the start date of his FMLA leave to September 5, 2016, and recalculate his pay and benefits. A true and correct copy of this email is attached as Exhibit 3.

> IF THIS DECLARATION IS TO BE BELIEVED AT ALL, THIS IS COMPLETE MISCHARACTERIZATION OF THE STATEMENTS HEREIN. BARGER MERELY REPEATED WHAT METLIFE SAID ABOUT STD APPROVAL. METLIFE PROVIDED STD INFORMATION. METLIFE DOES NOT ADMINISTER FIRST DATA FMLA LEAVE. NEITHER BARGER NOR METLIFE GAVE FIRST DATA ANY INFORMATION ABOUT FMLA LEAVE. FIRST DATA FORCED LEAVE ON 11/19 AND KNEW WHEN IT STARTED.

17. Based on the information that First Data received from Barger and MetLife, First Data's records were changed to reflect that Barger's FMLA leave start date was September 5, 2016.

> DATE CHANGES BASED ON METLIFE SCREENSHOT ALL OCCURRED ON 01/05/17 ACCORDING TO VOYCHESKE. METLIFE SCREENSHOT COULD NOT HAVE BEEN TAKEN ON 01/05/17 BECAUSE IT CONTAINS INFORMATION FROM 01/18/17. THIS STORY SIMPLY CANNOT BE TRUE.

> VOYCHESKE E-MAILS TO COLLECT INFORMATION, BUT DOES NOT E-MAIL BARGER ABOUT RETROACTIVE CHANGE QUITE ODD

18. Because this change impacted the date range of Barger's FMLA leave, First Data sent him a letter dated January 5, 2017, advising that his FMLA leave was approved from September 5, 2016, through November 28, 2016. I inputted the information in the system to generate the January 5, 2017 letter, a true and correct copy of which is attached as Exhibit 4.

> THERE IS NO EVIDENCE LETTER WAS SENT - NOT OVERNIGHT DELIVERY, NOT CERTIFIED, NOT REGISTERED, AND IT WAS NOT RECEIVED BY PLAINTIFF

19. The January 5, 2017 letter stating that Barger's FMLA leave began on September 5, 2016, and expired on November 28, 2016, was not included as an exhibit to Barger's Complaint.

> SEE EXHIBIT L. ALL E-MAILS ON 01/05/17 RELATED TO CHANGING DATES ARE AFTER 6:00 PM. THE POST OFFICES IN OMAHA CLOSE PRIOR TO 6:00 PM. IF THIS LETTER WAS SENT AT ALL, IT DID NOT GET INTO THE MAIL UNTIL FRIDAY 01/06/17 AND WOULD NOT HAVE BEEN RECEIVED BY PLAINTIFF PRIOR TO HIS DELIVERY OF HIS RETURN TO WORK AUTHORIZATION AROUND NOON ON 01/10/17.

20. After First Data sent Exhibit 4 to Barger, he never contacted me to ask any questions about this letter or the change in his FMLA approval dates.

21. It is not unusual to adjust the dates of an employee's FMLA leave when First Data receives new medical information from an employee or MetLife, even if it requires First Data to retroactively designate leave as FMLA-approved leave in accordance with FMLA regulations.

22. According to First Data's records, Barger's 12 weeks of FMLA leave ended on November 28, 2016.

23. As stated in paragraph 16 above, the change in Barger's FMLA start date necessitated a recalculation of his pay. Accordingly, I reviewed Barger's payroll records from

- 4 -

# Exhibit 2

