Shawn E. Shearer (TX Bar No. 24049493)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (972) 803-4499
*shawn@shearerlaw.pro*

Attorneys for Plaintiff
Steven B. Barger

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | **Case No. 1:17-cv-4869-FB-LB**<br><br>**(Assigned to the Honorable Frederic Block)** |

# REPLY

### IN SUPPORT OF RULE 72(a) OBJECTION TO ORDER

### RE: DENIAL OF PLAINTIFF'S MOTION TO COMPEL
### RULE 30(b)(6) DESIGNEES AND DEPOSITIONS

**REPLY - RULE 72(a) OBJECTION TO ORDER**     1

# REPLY IN SUPPORT OF PLAINTIFF'S
# RULE 72(a) OBJECTION TO ORDER
## TABLE OF CONTENTS

I.    **CONCLUSION – ENTRY OF THE ORDER IS CONTRARY TO THE LAW** ........ 1

II.    **OPPOSITION IRRELEVANCE** ............................................................................... 3

III.   **TOPICS** ....................................................................................................................... 5

IV.   **VOYCHESKE DECLARATIONS** ........................................................................ 5

V.    **CONCLUSION & REQUEST FOR RELIEF** ....................................................... 9

**EXHIBITS**

**Exhibit A - Voycheske Declaration Documents**
- A-1 - Declaration Comparison & Counsel Involvement Tables
- A-2 - July 13th to 16th E-Mails Pre-Second Declaration
- A-3 - February 21, 2018 Letter Shearer to Eidelman re: First Declaration Fabrication
- A-4 - February 21, 2018 Letter Shearer to Eidelman re: First Declaration to be Filed After Refusal to Produce Voycheske for Deposition
- A-5 - July 20, 2018 Letter Shearer to Eidelman re: "Supplemental" Declaration and Voycheske Deposition Cancelation
- A-6 - August 29, 2018 First Data Response to RFP re: Phone Records

**Exhibit B - March 11 & 12 Communications**
- B-1 - Sunday, March 11, 2018, 12:00 pm Initial Notice of Cancelation of Voycheske March 14, 2018 Deposition
- B-2 - Sunday, March 11, 2018, 2:52 pm Initial Response to Notice of Cancelation of Voycheske March 14, 2018 Deposition
- B-3 - Sunday, March 11, 2018, 10:13 pm Letter From Eidelman to Shearer Advising of Passing of His Mother-In-Law
- B-4 - Sunday, March 11, 2018, 11:55 pm Shearer Condolences and Plaintiff Barger Requests Information About Honorarium and Deposition of Voycheske Confirmed Canceled & Monday, March 12, 2018 8:57 am Eidelman Thanks for Understanding
- B-5 - Monday, March 12, 2018, 8:35 am Letter Shearer to Eidelman Condolences and Requesting Bisignano Deposition

**Exhibit C - 30(b)(6) and Fact Witness Scheduling Obstruction**
- C-1 - June 17, 2018 - E-mails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling
- C-2 - July 5, 2018 - E-mails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling
- C-3 - July 10, 2018 - Emails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling
- C-4 - July 10, 2018 - Emails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling

    C-5 -    July 20, 2018 - Emails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling
    C-6 -    July 27, 2018 - Emails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling
    C-7 -    Aug. 21, 2018 - Emails Shearer and Eidelman - 30(b)(6) and Deposition Scheduling

**Exhibit D – July 28, 2018 E-Mail Shearer to Eidelman – Voycheske & MetLife**

**Exhibit E - August 3, 2018 E-mail Shearer to Eidelman re: Voycheske**

**Exhibit F – Letter Shearer to MetLife re: LTD checks March 29, 2017**

**Exhibit G – Amy Steffen Deposition**

**Exhibit H – June 25, 2018 Letter Shearer to Eidelman Deposition Obstruction**

**Exhibit J – Developments in Third-Party Subpoenas Subject of Extension of Discovery**
    J-1 -    August 14, 2018 Email to Eidelman
    J-2 -    September 11, 2018 Email to Eidelman
    J-3 -    September 11, 2018 Email from Eidelman
    J-4 -    September 14, 2018 Email to Eidelman
    J-5 -    September 25, 2018 Email to Eidelman

**REPLY IN SUPPORT OF PLAINTIFF'S RULE 72(a) OBJECTION**

Plaintiff Steven Barger ("Plaintiff") respectfully submits this Reply ("Reply") in support of Plaintiff's Rule 72(a) Objection ("Motion") [ECF 64], and in response to Defendants Opposition ("Opposition") [ECF 70]. The paperless entry order ("Order") of September 4, 2018, denying Plaintiff's Motion to Compel 30(b)(6) designations and deposition of First Data Corporation ("First Data") [ECF 55] was clearly erroneous and contrary to the law. The Opposition provides nothing more than a few self-selected snippets of Defendants' discovery trials and tribulations. The Plaintiff could similarly burden the Court with all its gripes about Defendants' discovery conduct.[1] But, that is not the question before the Court. The question is whether First Data should be compelled to comply with a validly issued subpoena to which it refused to comply without ever raising affirmative objection. The orders requested in the Motion should be granted.

**I.     CONCLUSION – ENTRY OF THE ORDER IS CONTRARY TO THE LAW**

The Defendant's Opposition does not contest any of the following:

(i)  Rule 30(b)(6) imposes an <u>AFFIRMATIVE DUTY</u> on First Data to designate and testify on the topics that were properly served on May 22, 2018;[2]

(ii) A designee must be properly prepared beyond personal knowledge;[3]

---

[1] See Exhibits C-1 to C-7. The most obvious example of Plaintiff's frustration is, as indicated in the Opposition, Plaintiff has needed to issue 25 deposition subpoenas to take a resulting 9 depositions, plus the accounting portion of the 30(b)(6). Fifteen noticed depositions did not occur (i.e. 60% of the subpoenas were not complied with by Defendants). Each of those 15 has its own story that need not be told now. Plaintiff's view is that, overall, Defendants obstructed and refused to agree. It is not good faith meeting and conferring for the Defendants to repeatedly refuse to make witnesses available. Plaintiff's only remedy under those circumstances was to issue a subpoena so that there is something for the court to compel if the refusal to cooperate persisted, as it did numerous times.

[2] *Reilly v. Natwest Markets*, 181 F.3d 253, 268 (2d Cir. 1999).

[3] The obligation to prepare a designee on corporate knowledge is the important facet separating individual fact witnesses from a 30(b)(6) witnesses. No matter how many human resources individuals may have been deposed in this case, none of them was subject to this obligation to prepare beyond personal knowledge. It is patently unjust for the Defendant with the most information, First Data, to be allowed to avoid its deposition. Rule 30(b)(6) is designed to prevent exactly what is being advocated in the Opposition – i.e. the argument that Plaintiff's conduct of fact depositions justifies First Data's refusal to appear for a noticed 30(b)(6) deposition. There is a significant difference between personal knowledge and corporate knowledge. Plaintiff has been denied access to First Data's corporate knowledge. It's this denial that leads to the circumstances like sham affidavits where individual knowledge differences can create fact issues, 30(b)(6) testimony on corporate knowledge can prevent those games.

Defendants argue that Plaintiff's deposition of individual human resources department witnesses, prepared to

**REPLY - RULE 72(a) OBJECTION TO ORDER        1**

(iii) A 30(b)(6) deposition is a single deposition, no matter the number of designees;

(iv) More than four months have passed since the 30(b)(6) notice and topics were served;

(v) First Data witnesses have not been designated, prepared, and deposed on the topics; and

(vi) First Data did not seek a protective order with respect to the May 22nd 30(b)(6) Notice.

First Data used an impermissible, obstructionist, remedy to evade 30(b)(6) depositions – i.e. refusing to comply. Plaintiff is authorized to compel. Fed. R. Civ. P. 37(a)(3)(b)(ii). Sanctions are authorized and were requested under Rule 37 in the letter motion to compel. [ECF 55] First Data's refusal and failure to designate and appear "<u>is not excused</u> on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). First Data did not, and does not, have a motion pending under Rule 26(c), and its failure is not excused. First Data improperly took the law into its own hands, and refused to comply with validly issued subpoena. The Order

---

only testify as to their individual knowledge, and unprepared to testify for the corporation, are adequate to provide Plaintiff all the information needs, is a judicial admission that all of the named Defendants from HR (Whalen, Johnson, and Marino) are employers under *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016). If they have all the FMLA leave information necessary, they all, in whole or part, control Plaintiff's rights under the FMLA.

The Opposition misstates the law. *Graziado* used the four factors from FSLA "employer" jurisprudence as a guide for interpreting the definition "employer" under the FMLA. However, the four factors are not the touchstone for the analysis. Even in the FSLA context they are a non-exclusive overlapping group of indicia of a much broader concept. The Second Circuit in *Graziado* advanced the translation of the FSLA "economic reality" concept to the FMLA:

> In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer "<u>controlled in whole or in part plaintiff's rights under the FMLA</u>" *Graziado* at 423 (quoting *Noia v. Orthopedic Assoc. of Long Island*, 93 F.Supp.3d 13, 16 (E.D.N.Y. 2015).

The question in an FMLA case is who "controlled in whole or in part Plaintiff's rights under the FMLA." Forcing the FSLA concepts regarding matters such as hiring, firing, compensation and personnel files into the FMLA context may divert from the overriding economic reality of FMLA leave (i.e. control of personnel files may have little to do with FMLA leave, see 29 C.F.R. §825.500(g) – FMLA medical records must be kept separate from personnel files). The FSLA factors listed in *Graziado* should not be applied in a formulaic way, but instead they are only FSLA indicia that need counterparts in the FMLA context. The Court must examine the overriding issue (control over FMLA rights). Strictly applying the FSLA employer factors in the FMLA context will gut the statutory protections of the FMLA by excluding those with the most direct control leave from liability imposed by the statute because FSLA "employers" may not be the same as FMLA "employers".

REPLY - RULE 72(a) OBJECTION TO ORDER      2

denying Plaintiff's motion to compel and sanctions is contrary to the law.

## II.     OPPOSITION IRRELEVANCE

The Opposition is filled with irrelevance, ad hominem, strawmen, misleads, and fabrications.[4] That sentence is not hyperbole, and each word was chosen with intent. These words are not chosen out of being "too close" or "losing my perspective". Misrepresentations have driven this case, both in discovery and in evidence (i.e. sworn declarations) presented to the Court. A little small lie here and there slowly becomes the misrepresentation that drives the entire discovery process makes the system unworkable. Just look to the Opposition to see how every passing comment on the record is used by Defendants as a pronouncement of law and fact.

The strawmen[5] in the Opposition can be knocked down as follows.

(1)     Plaintiff is not seeking the deposition of Jennifer Voycheske or any other particular individual.[6] Plaintiff is seeking to depose First Data. First Data can choose its designees as it is

---

[4] As an example of how far Defendants will go to misrepresent to the Court, see Opposition footnote 6, in which the Court was misled by Defendants into believing "Plaintiff acted unreasonably by insisting that Defendants' counsel should have telephonically attended a deposition on the day he was burying his mother-in-law." This simply did not occur. See Exhibits B-1, B-2, B-3. Plaintiff suggested a shortened deposition, defended in person by one of the other 800 Saul Ewing lawyers, with Mr. Eidelman attending remotely due to his ailing mother-in-law. When advised that she had passed, Plaintiff immediately canceled the depositions, and Plaintiff personally asked for information about the family's honorarium wishes and delivered condolences. See Exhibits B-4, B-5. All of the relevant communications occurred within a 18-hour period on March 11th and 12th. Not only was Judge Bloom misled, but Defendants are now trying to mislead your honor as well, on a topic designed solely to impugn. Plaintiff promptly acted with social decorum to Mr. Eidelman's family loss. Mr. Eidelman received plenty of time. Even though discovery began in January, no depositions occurred from March 12th through May 31st.

[5] Defendants repeated statements as to the volume of documents produced and the number of completed depositions is not persuasive. Documents have been produced in redacted and unredacted forms, multiple copies of the same document in duplicate and triplicate or more, and Plaintiff's entire e-mail server file (including every meeting notice and cc: over three years) have been produced – the volume does not represent the content, especially when specific document production requests are repeatedly refused. In other words, producing a pile of irrelevance does not make it relevant. Moreover, in terms of witnesses, Defendants have listed more than 20 potential witnesses on their Rule 26(a) disclosure and there are five individual defendants. Under these circumstances, nine fact depositions and a 30(b)(6) deposition are not out of line or burdensome. The Court should expect declarations from the listed and undeposed witnesses when Rule 56 Motions are brought to fill-in the constructed story that has been presented.

[6] Plaintiff chose not to depose Ms. Voycheske as a fact witness. Exhibit A-5. Ms. Voycheske is a manager level employee that collects paper forms and inputs information into computer systems that generate letters. She is a manager level employee and has been employed by First Data for 16 years without advancing to an officer position. Ms. Voycheske has already provided two contrary sworn declarations. Plaintiff knows Ms. Voycheske's testimony is not trustworthy and providing her more chances to develop her constantly changing, and admittedly inaccurate, story. Yet, it is interesting to note, that all the other witnesses, and Defense counsel, continually point at Voycheske

**REPLY - RULE 72(a) OBJECTION TO ORDER      3**

entitled under Rule 30(b)(6).

(2)     The Opposition, and Mr. Eidelman's Declaration [ECF71], overly address the 30(b)(6) subpoena the Plaintiff originally issued and was withdrawn in April. Those proceedings and documents are irrelevant to this Motion except to the extent they demonstrate Defendants' knowledge of the process for seeking a protective order that they did not similarly exercise with respect to the May 22nd 30(b)(6) Notice subject of this Motion[7] that has been intentionally, and willfully, disregarded.

(3)     The Motion did not raise any issues seeking restrictions on Defendants' 30(b)(6) designees. First Data may designate "any officer, director, or managing agent, or designate other persons who consent to testify on its behalf."

(4)     The Plaintiff requested issue preclusion in the original letter motion. [ECF 55] By seeking sanctions under Rule 37 in the letter motion, Plaintiff requested sanctions for failure to designate and appear. Available sanctions include issue preclusion. See Motion footnote 7.

(5)     Long-term disability benefits payments are not a factor an issue affecting Plaintiff's FMLA leave designation or Defendants' failure to reinstate. See Exhibit F.

(6)     The Opposition on page 8 cites to Ms. Whalen's testimony regarding access to the PeopleSoft systems in which her testimony is that the "HR Solutions/HR Help Desk Team" can make changes to that particular system. Plaintiff then deposed the Vice President, Amy Steffen, responsible for those HR areas. That VP could not answer the questions.[8] In essence, the SVP Whalen, referred Plaintiff to VP Steffen, who referred Plaintiff to the manager. That is the definition of bandying. A properly prepared designee of First Data needs to answer the questions without passing the question off due to lack of personal knowledge.

---

as the oracle with all the answers. It is as if she is First Data's designated manufacturer of defenses. [See Exhibit A].

[7] There is not currently a meet and confer requirement for Rule 30(b)(6), see Advisory Committee on Civil Rule proposed changes to include meet and confer under Rule 30(b)(6).
[8] See, as examples, Exhibit G [Steffen Deposition 66:2-68:18 and 75:1-77:11]

**REPLY - RULE 72(a) OBJECTION TO ORDER        4**

### III. TOPICS

The Motion fully outlined the justifications for Plaintiff's requests for each of the topics at issue and there is no need to repeat those justifications. The Opposition does nothing but raise issues that properly must be brought by Rule 26(c) motion and were not done timely. There is no meet and confer requirement for Rule 30(b)(6), but yet Plaintiff took Defendants concerns into account and the topics were re-written for those concerns, while also addressing Plaintiff's discovery needs. The topics at issue are all described with reasonable particularity and narrowly tailored to the claims and defenses at issue. A proper 30(b)(6) Notice was served on May 22, 2018. No motion seeking a protective order under Rule 26(c) has been filed. First Data breached its affirmative duty under Rule 30(b)(6) to designate and present prepared witnesses on those topics.

### IV. VOYCHESKE DECLARATIONS

As outlined in the Motion, the two contradictory declarations of Ms. Voycheske demonstrate the methods of testimony Defendants will use in the forthcoming Rule 56 motions and at trial. A 30(b)(6) deposition on the topics will provide some protection against further "sham affidavits" arising.

The Defendants' "retroactive redesignation" of leave defense to Plaintiff's 12(c) Motion was supported only by the First Declaration of February 20, 2018. If believed, and lawful, this "retroactive redesignation" would be complete defense to Plaintiff's claim that he was denied his right to return under the FMLA because he would not have been on FMLA leave on January 10, 2017 when he requested reinstatement.[9] Within hours of receiving that First Declaration, Plaintiff

---

[9] This "retroactive redesignation" is not permitted under 29 C.F.R. §825.301(d) because First Data did not learn any new information causing the redesignation on January 5th. As of September 6, 2016, senior management (including the CEO, the EVP head of First Data's HR group, the two EVPs superior to SVP Plaintiff in the Global Business Solutions group, and the SVP and VP of HR supporting that group) knew Plaintiff had surgery. Ms. Voycheske's

**REPLY - RULE 72(a) OBJECTION TO ORDER**     5

advised defense counsel that the declaration contained false statements and provided defense counsel an opportunity to withdraw the statement and re-write its opposition to the 12(c) Motion. Defense counsel refused to withdraw the statement, refused to allow Voycheske to be deposed, and allowed the declaration to be filed knowing Plaintiff's objections. Exhibits A-3 & A-4. The Motion describes the First Declaration's facial inaccuracies. The First Declaration, and its "retroactive redesignation defense" have driven the discovery process and were the fundamental argument creating fact issues in the 12(c) Motion. Without that declaration, there was a simple legal question of whether RIF can be a defense after a request for reinstatement has already been delivered.

On July 16, 2018. the Second Declaration was filed, a week prior to Voycheske's scheduled deposition (subsequently canceled, Exhibit A-4), without any procedural justification. The only reason for such a filing was a retraction. Despite being named a "Supplemental Declaration", the Second Declaration was in fact a correction of prior inaccurate and false sworn testimony. Defense counsel participated in the drafting and naming. Defense counsel knew that the Second Declaration was a correction and not a supplement. Defense counsel intentionally chose to improperly characterize Ms. Voycheske's testimony as a supplement to avoid a retraction. See Exhibit A-2.[10] This became completely obvious to Plaintiff's counsel when on August 29, 2018,

---

receipt on January 5, 2017 of information confirming the surgery date four months earlier was not new information obtained by First Data. 29 C.F.R. §825.301(a) provides that within 5 days of learning an absence is for a qualifying FMLA reason, the employer must so designate. From September 6th forward, First Data knew of Plaintiff's surgery and condition and did not designate leave. The reason leave was not designated is because senior management knew Plaintiff was working remotely at full-pay, and was not absent (i.e. Plaintiff was not on leave until forced to take leave on November 19th). Ms. Voychekse's confirmation of known information does not justify redesignation to four months earlier when senior management was fully aware and the paper processing manager had not gotten that information. Given senior management's knowledge, First Data could not have designated any date prior to November 19th as the start date of Plaintiff's FMLA leave.

[10] On Friday, July 13, 2018, Plaintiff's counsel received an e-mail chain from Mr. Eidelman. This e-mail included the distribution of the drafted version of the Second Declaration for Ms. Voycheske's signature. See Exhibit A-2. A signature that was obtained on Monday, July 16, 2018 and the Second Declaration was filed. Within that chain of e-mails, Mr. Eidelman first circulated a document entitled "Declaration of Jennifer Voycheske (Corrected).DOCX" to

**REPLY - RULE 72(a) OBJECTION TO ORDER        6**

Mr. Eidelman signed objections to a request for production that completely contradicted the statements set forth in the First Declaration. See Exhibit A-1 Table I, and Exhibit A-6.

The original letter motion to compel subject of this 72(a) Objection was filed on August 22, 2018 [ECF 55] and the Defendants response to that motion was filed on August 24, 2018 [ECF 58]. Because of this timing, Judge Bloom did not receive any writing involving the August 29, 2018 RFP answer completely abrogating the statement made in the First Declaration. During the Motion to compel hearing discussing the information technology systems at First Data, Plaintiff discussed OOO and PeopleSoft, but never had the opportunity to discuss the MetLife interface system that is subject of the First Declaration.

Judge Bloom's ruling as to the irrelevance of the MetLife interface for purposes of Topic 1(c) on June 12, 2018[11] predated both the Second Declaration (acknowledging that the testimony in the First Declaration was incorrect on the screenshot issue, Exhibit A-1 Table III) and the

---

his staff of outside and inside counsel for First Data at 4:44 pm on July 13th. At 4:48 pm, Mr. Eidelman then writes to his associate, Michael Cianfichi the following:

> Please change the name to Supplemental Declaration. I want to get away from the idea that this is a correction as opposed to a supplement.

Mr. Cianfichi complied and at 4:49 pm confirmed that he had changed the name of the document to "Declaration of Jennifer Voycheske (Supplement).DOCX".

Plaintiff's counsel was obviously concerned when this e-mail chain was received. The Second Declaration was filed on Monday July 16th and presented to the Court as a "Supplemental Declaration." However, as set forth in Exhibit A-1 (Tables I, II and III), the Second Declaration was not a supplement, it was in fact a correction.

The crime-fraud exception to the attorney-client privilege "strips the privilege from attorney-client communications that 'relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.' " *In re Enron Corp.,* 349 B.R. 115, 127 (S.D.N.Y.2006) (quoting *John Doe, Inc. v. United States,* 13 F.3d 633, 636 (2d Cir.1994)). Thus, documents that "would otherwise be protected from disclosure by the attorney-client privilege are not protected if they relate to communications in furtherance of a crime or fraud." *Duttle v. Bandler & Kass,* 127 F.R.D. 46, 53 (S.D.N.Y.1989). The Second Circuit has noted that "advice in furtherance of a fraudulent or unlawful goal" is not considered worthy of protection under the attorney-client privilege. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984).

[11] The Opposition improperly states that Judge Bloom ruled that the entire topic of IT systems was ruled irrelevant at the June __, 2018 hearing. Rather, at that time, the only discussion was the relevance of the MetLife interface. The facts developed since then, along with the retraction of the statements in the First Declaration have changed the factors. The MetLife interface is clearly so relevant that it required Ms. Voycheske to change her testimony by submitting the Second Declaration in July.

**REPLY - RULE 72(a) OBJECTION TO ORDER**     7

August 29th retraction of the First Declaration by RFP response. The knowing inaccuracies in the First Declaration have substantially impacted this proceeding,[12] including the course of discovery, the evidence considered as part of the 12(c) Motion, the denial of the Motion to Compel on June 12, 2018, and even in reviewing the Opposition relies on these previous decisions as justification for non-compliance with May 22nd 30(b)(6) subpoena.

    Rather than deal head-on with the substantial issues raised regarding the two sworn declarations presented in this case, even after directly participating in the preparation of those statements, redacting and unredacting information, presenting exhibits (e.g. the MetLife screenshot attached to the First Declaration) that could not possibly be what claimed to be (e.g. a screen shot taken on January 5th could not possibly contain information for January 18th), and drafting and signing discovery response that completely contradict previously filed sworn testimony, [Exhibit A-1 Tables I, II, and III] Defendants take a completely dismissive position in footnote 11 of the Opposition by stating:

> Plaintiff's baseless attacks on the veracity of Ms. Voycheske's affidavits have no place in a Rule 72 Objection and do not justify a response from Defendants.

Plaintiff's statements are not attacks, but statements of the truth, and are not baseless. Defendants' language of "attack" proves the defensiveness. The veracity of Ms. Voycheske's declarations have been raised repeatedly (since February 21st), and defense counsel's involvement in the corrections of previously incorrect testimony has just recently come to light. The lack of veracity of these statements is directly relevant to the Rule 72 Objection. Testimony by First Data, binding on First Data, on the topics at issue – HR IT system controls, leave

---

[12] *Ades v. 57th St. Laser Cosmetica, LLC*, 2013 WL 2449185 at *11-12 (S.D.N.Y. 2013)(sanctions for defendant fabricating and testifying in support of evidence establishing a complete defense to one of plaintiff's theories of liability); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 440-45 (S.D.N.Y. 2002) (defendant fabricated and testified in support of multiple pieces of evidence that formed the basis for her counterclaims)

**REPLY - RULE 72(a) OBJECTION TO ORDER**     8

policies and procedures, and disability benefit procedures - are all directly implicated within both declarations. Counsel's cavalier dismissal of the serious issues raised by these declarations is concerning for the integrity of the process by which Plaintiff's claims are to be adjudicated.[13]

Defense counsel dismisses the veracity of the Voycheske declarations as being unworthy of a response. Yet, those statements have been the very driver of the last seven months of activity in this case, seeking discovery on IT interfaces, 12(c) Motion decisions, 30(b)(6) motion to compel decisions, etc. The pattern of counsel's deceptive practices has been established.  Those practices have directly impacted the Court's rulings on the 12(c) Motion, the motion to extend time, and Plaintiff's motions to compel.

## V.     CONCLUSION & REQUEST FOR RELIEF

---

[13] This is not the only case of Defense counsel, at best going beyond just blurring the lines, or at worst intentionally providing partial, false or incorrect information to the Court. For example, there are representations about Plaintiff's statements outlined in <u>Exhibit</u> B. In addition, as noted in footnote 8 of the Opposition, Plaintiff served a Rule 11 Motion on Defendants related to their factual misrepresentations to Judge Bloom in their Motion seeking an extension of discovery for purposes of deposing third-parties surrounding supposed "after-acquired evidence" based on *McKennon*. The factual representations in the motion to extend were knowingly incorrect and inconsistent with the record when made. A copy of Plaintiff's Rule 11 Motion as served to Defendants is attached as <u>Exhibit</u> I hereto. There are further developments from e-mails between the third-party since service of the Rule 11 filing on Defendants demonstrating that the reasons for an extension proffered to Judge Bloom were a subterfuge and knowingly without any merit or intent to seek discovery on the topics as represented. The pattern of Defense counsel's misleading and misrepresentation have been obvious from the filing of the Defendant's EEOC Position Statement, to the Answer in this Complaint, throughout discovery, and in motion practice. Plaintiff has not run to the Court with each of these. However, in the matters of the Voycheske declarations, the representations to Judge Bloom around the MetLife interface, and now the representations to Judge Bloom in the request for an extension of discovery, Plaintiff now has the evidence to demonstrate this pattern of deception.

This Court has the inherent to power manage its own affairs to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991); *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d Cir.1960). "[T]ampering with the administration of justice ... is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated. . . ." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944); *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988) ("[F]raud on the court ... threatens the very integrity of the judiciary and the proper administration of justice."). A Court has the inherent authority to sanction parties <u>and</u> counsel for committing a fraud on the court. *Bravia Capital Partners Inc. v. Fike,* 2015 WL 1332334 at *3 (S.D.N.Y. 2015); *Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 106-07 (2d Cir. 2002); *Chen v. Wai Cafe Inc.*, 2016 WL 722185 at *3 (S.D.N.Y. 2016) *In re Dynex Capital, Inc.* Sec. Litig., 2011 WL 2581755 at *4-5 (S.D.N.Y. 2011) (addressing whether counsel committed fraud on the court). "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" *Passlogix, Inc. v. 2FA Tech., LLC,* 708 F.Supp.2d 378, 393 (S.D.N.Y.2010) (quoting *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002)).

REPLY - RULE 72(a) OBJECTION TO ORDER      9

The Order was contrary to the law. There is a Motion to compel pursuant to Fed. R. Civ. P. 37(a)(3)(b)(ii) pending. Fed. R. Civ. P. 37(d)(2) provides that objections to the topics are no excuse for non-performance of a subpoena without a pending motion pursuant to Fed. R. Civ. P. 26(c). There is no motion pursuant to Fed. R. Civ. P. 26(c) pending. There are significant issues upon which the corporate defendant, First Data, must testify especially when its employees, and counsel, are submitting sworn statements that are inconsistent and incorrect. Issue preclusion is a permitted remedy under Rule 37 for refusal to be deposed. Sanctions under Rule 37 were requested in original letter motion requesting compulsion of 30(b)(6) testimony. [ECF 55] The Court should deny entry of the Order and:

(i) Order First Data to designate and present witnesses to testify on all the topics subject of the Motion;

(ii) Impose sanctions pursuant to Rule 37 for First Data's intentional refusal to designate and comply with a validly issued Rule 30(b)(6) Notice Deposition;

(iii) Preclude the introduction of any evidence by First Data that Plaintiff's FMLA leave subject of this case expired at any time prior to January 16, 2017; and/or

(iv) Impose such other sanctions as the Court may deem equitable and just pursuant to Rule 37 and its inherent powers.

DATED: October 4, 2018

                                                                      Respectfully Submitted,[14]

                                                                      THE LAW OFFICE OF SHAWN SHEARER, P.C.

                                                                      _____/s/ Shawn Shearer_____
                                                                      SHAWN SHEARER
                                                                      shawn@shearerlaw.pro
                                                                      Attorney for Plaintiff
                                                                      Steven B. Barger

---

[14] By signing, I certify and declare that the Exhibits attached hereto are true and correct copies of the documents they purport to be.

**REPLY - RULE 72(a) OBJECTION TO ORDER**    10

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2018, I transmitted the attached Reply in Support of Rule 72(a) Objection to the following CM/ECF registrants via e-mail to each of their CM/ECF registered e-mail addresses.

>Gary Eidelman
>Saul Ewing Arnstein & Lehr
>500 E. Pratt Street, Suite 900
>Baltimore Maryland 21202-3133
>
>Gillian Cooper
>Saul Ewing Arnstein & Lehr
>650 College Road East, Suite 400
>Princeton, NJ 08540-6603
>
>Lindsey Kennedy
>Saul Ewing Arnstein & Lehr
>One PPG Place, Suite 3010
>Pittsburgh, PA 15222
>
>*Attorneys for Defendants*

_____
Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (972) 803-4499
*shawn@shearerlaw.pro*