

Gary B. Eidelman
Phone:  (410) 332-8975
Fax:  (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

October 12, 2018

**Via ECF**
Honorable Frederic Block, U.S.D.J.
U. S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Steven B. Barger v. First Data Corporation et al.*, Civil Case No. 1:17-cv-4869

Dear Judge Block:

    Pursuant to 2.A of Your Honor's Individual Rules, Defendants respectfully request a pre-motion conference on their summary judgment motion.

    **Background**. Plaintiff Steven Barger worked as a consultant for Defendant First Data Corporation from March 15, 2014, until June 30, 2014, at the rate of $30,000 per month. After several months of consulting, First Data hired Barger as a Senior Vice President, Head of Sales Transformation. His base salary was $480,000, and for the first year he was guaranteed a cash bonus of $250,000. Several months after joining First Data, Barger began managing the Sales Training Group. Barger's employment was not meant to be long-term and by the fall of 2014 and into 2015, Barger was working with Human Resources to hire his replacement.

    In February 2016, Plaintiff was diagnosed with throat cancer and began radiation treatments that ended in the early summer. The Company accommodated Barger and allowed him to continue as a speaker to employees in an informational program known as "First Data Way." The Company did not require Barger to take any leave during his treatments, but instead continued to pay him as if he was working full-time.

    In late July/early August 2016, company executives resumed discussions about the need to find a successor for Barger. During this period, the HR partner supporting Barger reported on the lack of management direction he provided to his direct reports, which was one of the reasons to find a successor. In August 2016, Barger needed laryngectomy surgery, requiring him to take time off from work. Barger underwent surgery in Tampa, Florida on September 6, 2016, and remained hospitalized for several weeks. During this time period, Barger emailed and texted employees, sometimes resulting in communications that did not make sense. First Data again continued to pay Barger his full salary during this time period and did not ask him to apply for leave.

500 E. Pratt Street ◆ Suite 900 ◆ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ◆ Fax: (410) 332-8862

DELAWARE   FLORIDA   ILLINOIS   MARYLAND   MASSACHUSETTS   NEW JERSEY   NEW YORK   PENNSYLVANIA   WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

On November 10, 2016, Barger texted Defendant Anthony Marino (EVP, Human Resources) that he needed additional surgery that would keep him out for at least five more weeks. Barger raised concerns during this time period as to the seriousness of his medical condition. In an effort to ensure that Barger could concentrate on his health, on November 19, 2016, Marino told Barger to apply for FMLA leave. The Company sent Barger an FMLA Certification of Health Care Provider form and short-term and long-term disability applications so that he would not have any salary interruption. Barger's communications with Marino suggested that he was seriously ill and might die. In response, even though annual bonuses are paid in March of the following year, Marino arranged for Barger to be paid his 2016 bonus immediately, in cash, something Marino had never done for any other employee. Vice President Robin Ording assumed Barger's job duties on an interim basis, while continuing to perform all of her previously assigned full-time duties. Ording makes significantly less than what Barger did.

Barger eventually returned his FMLA paperwork. Barger's doctor completed the form and indicated that Barger's leave began on October 22, 2016, and that he anticipated Barger returning to work on March 1, 2017. The Company sent Barger a letter confirming that his FMLA had started and that his 12 weeks of FMLA would expire on January 17, 2017. During this same time period, First Data employees were working with Barger and his wife to complete the necessary paperwork so he would be eligible for short-term and long-term disability when his Company paid leave ran out. On January 5, 2017, Barger communicated to First Data that MetLife, the disability carrier, had approved his leave beginning September 4, 2016, a much earlier leave date than what had been first communicated to First Data by Barger's doctor. Given this new information, First Data emailed Barger and asked, "when did you stop working?" Barger responded, "September 4." Confirming MetLife had the same information, First Data notified Barger (pursuant to DOL regulations) that his FMLA date had been rolled back to September 5, 2016, and since FMLA leave was exhausted, ADA leave had been requested.

In mid-November 2016, the Company began planning a reduction-in-force. Barger's name, along with hundreds of other employees, appeared on lists of personnel to possibly be included in the RIF. On January 5, 2017, First Data expanded the RIF to focus on reducing 10% of the top 3000 most highly compensated employees to achieve meaningful savings. On January 9, 2017, Plaintiff's boss, EVP Jeff Hack, put Barger on the final list of employees from the GBS division he supervised to be included in the RIF. Hack's boss, Defendant Dan Charron, included Barger on the final list. Defendants testified that Barger was included in the RIF because his total annual compensation was disproportionate to his job duties, and including him in the 10% of the top 3000 reduction made business sense. Ording, who had taken over for Barger on an interim basis, assumed the role permanently in addition to her other duties and responsibilities. During the relevant time period, Ording also developed a restructuring plan for the Sales Training Group that saved millions of dollars in compensation. The RIF that included Barger impacted more than 350 employees, including 25 other SVPs and above. Long-term annualized savings from the December 2016/January 2017 RIF exceeded $45,000,000.

**Basis for Summary Judgment as to Liability**. To recover under the FMLA, Barger must first establish a *prima facie* case that: (1) he exercised rights protected by the FMLA; (2) he was qualified; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Assuming Barger can establish a *prima*

Hon. Frederic Block
October 12, 2018
Page 3

*facie* case, Defendants must demonstrate a legitimate, non-discriminatory reason for his termination. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). Upon such a showing, Barger must prove that the explanation is pretextual. *Id.*

First Data does not dispute that Barger suffered an adverse employment action when his employment was terminated as part of the RIF. However, Barger cannot establish a *prima facie* case of discrimination under the FMLA because his FMLA leave expired on November 28, 2016, after his FMLA start date was adjusted pursuant to information he provided to the Company on January 5, 2017. *See* 29 C.F.R. § 825.301.

Assuming, *arguendo*, that Barger can establish a *prima facie* case, Defendants have established that First Data had a legitimate business reason for including Barger in the RIF. The Company did not need an employee at Barger's compensation level running a training department of 50 employees. Barger's job duties were subsumed by an employee who restructured the sales training department and earns significantly less compensation. Under applicable law, it is lawful to include an employee on leave in a RIF.

Barger cannot prove that Defendants' proffered reason for his termination is pretextual under the FMLA or the ADA. Barger admitted at his deposition that RIFs are commonly used as a management tool to free up capital for restructuring and that this is not improper. He also testified that he did not believe he was terminated because he had cancer. It is also undisputed that as early as fall 2014, First Data had started the process to hire Barger's replacement with his knowledge and involvement. It is not enough for Barger to prove discrimination by testifying that "all I know is I wanted to come back and I couldn't."

Plaintiff has also failed to establish facts that support FMLA claims against Defendants Bisignano, Whalen, and Johnson in their individual capacities. Accordingly, summary judgment should be entered in their favor. *See Graziadio*, 817 F.3d at 422.

**Basis for Summary Judgment as to Damages**. Defendants are entitled to summary judgment as to damages. At his deposition, Barger testified that after he was terminated, he never applied for another W-2 job, instead resuming his consulting business. By not applying for work, he failed to mitigate his damages. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998). Alternatively, he fully mitigated his damages because his income as a consultant starting in 2017, after he was terminated exceeded what he had earned as a consultant in the years prior to doing work for First Data.[1]

                                          Respectfully submitted,

                                          */s/ Gary B. Eidelman*

                                          Gary B. Eidelman

cc:      Counsel of Record (via ECF)

---

[1] Additionally, Barger's compensation negotiations before he was hired as a consultant and his improper billing constitute after-acquired evidence that limit front pay and bars back pay. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361-62 (1995); *Norris v. New York City Coll. of Tech.*, 2009 WL 82556 (E.D.N.Y. 2009) (Block. J.).