# THE LAW OFFICE OF SHAWN SHEARER, P.C.
3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
SHAWN@SHEARERLAW.PRO

October 12, 2018

**<u>Via ECF</u>**
Honorable Frederic Block, U.S.D.J.
Honorable Lois Bloom, U.S.M.J.
U.S District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Barger v. First Data Corporation et al.* - Civil Action No. 1:17-cv-4869
              Third-Party Discovery Status and Request for Rule 56 Pre-Motion Conference

Dear Honorable Judge Block and Honorable Judge Bloom:

    The Plaintiff, Steven B. Barger, is providing this letter to comply with the electronic entry orders of September 4, and September 18, 2018 regarding (i) the status of non-party discovery and (ii) requests for pre-motion conferences on potential Rule 56 motions.

    Fact discovery commenced on January 18, 2018 and was to end on August 31, 2018, with expert discovery to be completed by September 28, 2018. Defendants requested and received an extension of fact discovery to complete the depositions of non-parties in Alabama. Expert reports were exchanged between the parties the week ending September 28, 2018, and the parties have agreed to hold the deposition of both experts on October 30, 2018. Plaintiff has contested entry of Judge Bloom's order denying Plaintiff motion to compel Rule 30(b)(6) depositions through the currently pending Rule 72(a) Opposition [ECF 64, 70, 74, 75].

    Defendants have sought non-party discovery in Birmingham, Alabama. Plaintiff supplied the Court the grounds for his objection to the illegitimate justification advanced by Defendants for the extension of time for Birmingham in Plaintiff's Reply in Support of Rule 72(a) Opposition [<u>See</u> ECF 74-9]. Plaintiff further objects to the discovery on-going in Birmingham because First Data has already received the answer to their questions (received even prior to the request for extension and the discovery) (<u>see</u> <u>Exhibit</u> A), and that discovery is duplicative. No meet and confer has ever occurred with the Birmingham deponents. Protective Order motions are pending in Alabama (<u>see</u> dockets for N.D. Ala. 2:18-mc-01569-KOB (open) and 2:18-mc-01491-KOB (closed))

    Non-party discovery in Cincinnati, not included within the granted motion to extend time, remains on-going. A deposition of a third-party (Julie Kelly, a former employee of First Data who herself has filed a charge of discrimination against First Data) is scheduled for Monday, October 15, 2018. A separate motion for a protective order with respect to Ms. Kelly's subpoenas was filed by Plaintiff today. [ECF 76]

    The non-party discovery in Cincinnati and Birmingham is being sought for illegitimate purposes. Cincinnati discovery is late and outside of the scope of 26(b)(1) as it is seeking testimony from a former employee that has herself has filed a charge of discrimination against First Data. [<u>See</u> ECF 76] The Birmingham discovery is being sought solely to embarrass and

Honorable Frederic Block, U.S.D.J.
October 12, 2018 Page 2

harass Plaintiff, his family, and his financial professionals by demanding depositions of Plaintiff's son and tax preparer. [See ECF 74-9] Both proposed Birmingham depositions relate to Plaintiff's activities and income before he was employed by the Defendant First Data and are duplicative of the information already provided to First Data. See Exhibit A. Also, the scope of both Birmingham depositions and document production are well beyond the reasons articulated for Defendant's request for an extension of time for fact discovery that was granted. [ECF 54] Plaintiff has already provided Defendants the information being sought from the non-parties in Birmingham. Defendants' Cincinnati and Birmingham discovery efforts are nothing more than fishing expeditions and diversions from the real issues in this case.

Plaintiff insists, as set forth in the Rule 72(a) Opposition [ECF 64 & 74], that he is entitled either to (i) 30(b)(6) depositions of First Data designees or (ii) issue preclusion through an ordered factual stipulation that Plaintiff at all times between November 19, 2016 and January 16, 2017 was on FMLA leave.[1]

Plaintiff wishes to seek summary judgment pursuant to Rule 56 under both the FMLA and ADA. The Initial Complaint [ECF 1] alleged violations of the FMLA, and after issuance of the right-to-sue letter by the EEOC, the Supplemental Complaint [ECF 34], filed pursuant to rule 15(d) based upon the same factual allegations, added Plaintiff's claims under the ADA. Plaintiff is requesting a pre-motion conference on his proposed filing of a Rule 56 Motion alleging that the complaint, answer, testimony, and discovery demonstrate that First Data is liable for (i) interference with Plaintiff's Family Medical Leave Act (FMLA) right to reinstatement, and (ii) discrimination on the basis of disability under the Americans with Disabilities Act (ADA).

Plaintiff was hired as a Senior Vice President of First Data on June 30, 2014. Plaintiff had laryngectomy surgery on September 6, 2016. All five individual defendants (including the CEO and EVP of HR) knew of his surgery at the time. From September 6, 2016 to November 19, 2016, Plaintiff worked remotely from his hospital bed, hospital hotel and home, did not take sick time or any other paid time off, and was on full payroll. [See ECF 64-2 hearing transcript 36:24-37:7]. On November 19, 2016, Defendant Marino told Plaintiff that he was being forced to take leave of absence and Plaintiff was given paperwork to complete. On or about November 21, 2016 Plaintiff's access to e-mail and systems was cut, intentionally, by First Data so he could no longer work remotely. On December 15, 2016, First Data designated the period between October 24, 2016 and January 16, 2017 as Plaintiff's FMLA leave.[2] Plaintiff was told that he must obtain a physician's clearance to return to work. During the last week of December and the first week of January, Plaintiff advised First Data that he was planning to get his physician's clearance and return to work by the end of his designated leave. On January 10, 2017, Plaintiff delivered his physician's authorization to Defendant Johnson, and First Data accepted Plaintiff's return to work authorization. Plaintiff scheduled to return to work on January 17, 2017 (the Tuesday following the MLK holiday). After the close of business on Friday, January 13, 2017, Defendant

---

[1] This fact also is legally correct. Once an employer designates leave, there are no provisions providing for "redesignation" of leave. Defendants admit that Plaintiff was on full payroll from September 6 through November 19. Plaintiff was not on leave of any type during that period.

[2] Plaintiff's FMLA leave legally started no earlier that November 19, 2016, but for purposes of the analysis as to the events of January 10-17, 2017, the start date is irrelevant to the conclusion that Plaintiff was denied his statutory right to be reinstated.

---------------------------------------------------------------
**THE LAW OFFICE OF SHAWN SHEARER, P.C.**
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204

Johnson called Plaintiff and advised him that he was being terminated and that he should not return to work the following business day as scheduled.

This admitted conduct, on its face, constitutes interference with Plaintiff's FMLA right to return. [See ECF 37] The reduction in force defense raised by Defendants is legally meaningless, for several reasons, including the inapplicability of 29 C.F.R. §825.216 because Plaintiff requested reinstatement prior to any notice of termination.[3] Plaintiff was on designated FMLA leave on January 10th. He delivered his physician's return to work authorization and requested reinstatement. Those admitted facts entitled him to be restored to his position or an equivalent position and there are no defenses to the failure to do so.

Under the ADA, forcing Plaintiff off of his full-pay, remote work, ADA accommodation to unpaid leave/66% STD benefits was based solely only Plaintiff's disability. There are no written records of Plaintiff's inability to perform the essential functions of his job from the date of his surgery through his being forced to take leave. Forcing Plaintiff to leave and forcing Plaintiff to reduced pay was the choice of Defendants. Plaintiff never requested leave and never requested to limit his work. The only reason Plaintiff was forced to leave on lesser pay was his disability. Plaintiff's accommodation was revoked without an interactive process. Plaintiff's access to e-mail and First Data systems were cut. Plaintiff was forced to apply for cut-pay under STD benefits.[4] All of this because of his disability.

Plaintiff's damages expert has estimated Plaintiff's lost earnings as between $4 million and $8 million depending upon years of front pay. The evidence demonstrates that First Data has a sophisticated leave management team that are "experts" on the FMLA and ADA. These experts failed to comply with the FMLA and ADA, and Plaintiff, therefore, is entitled to double these damages under the FMLA (29 U.S.C. §2617(a)(1)(A)(i) & (ii)) and punitive damages under the ADA (42 U.S.C. § 12117(a)).

Discovery has developed no new evidence changing the admissions in the Answer, but has only reinforced Plaintiff's position. By forcing Plaintiff to take leave, revoking his reasonable accommodation, and denying his return to work, First Data admits violating the FMLA and ADA. Back-pay is due (an easy calculation) and front-pay for a reasonable period under the Court's equitable authority can be determined based on the discovery record and without a fact finding by a jury.

Plaintiff looks forward to discussing these issues if your honor chooses to convene a pre-motion conference.

                          Very truly yours,
                          /s/ Shawn E. Shearer
                          *Attorney for the Plaintiff*

---

[3]    The Plaintiff also continues to maintain that 29 C.F.R. § 825.216 is invalid under *Chevron* and its progeny and that Plaintiff was entitled "TO BE" restored under 29 U.S.C. §2614(a). "To be" restored means "to be" restored.

[4]    First Data admits that there is no short-term disability plan. But, Plaintiff was led to believe, and First Data has wrongly represented in its ERISA filings, that such a plan existed when he signed his medical release documents.

*BARGER v. FIRST DATA*

OCTOBER 12, 2018

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION, *et al.*<br><br>Defendants. | Case No. 1:17-cv-4869-FB-LB<br><br>**PLAINTIFF STEVEN BARGER'S ANSWERS AND OBJECTIONS TO DEFENDANT FIRST DATA CORPORATION'S FIRST SET OF INTERROGATORIES (REVISED)(SUPPLEMENT 1)** |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the local Rules of this District, Plaintiff Steven B. Barger ("Barger" or "Plaintiff"), by and through his undersigned attorneys, hereby supplements his answers the First Set of Interrogatories propounded by Defendant First Data Corporation ("First Data") as follows:

## GENERAL OBJECTIONS

The following general objections apply to the interrogatories as a whole and to each interrogatory contained therein and shall be deemed incorporated by reference into each and every objection made herein to a specific interrogatory:

1. Plaintiff objects to the interrogatories to the extent they require or purport to require disclosure of information, materials, or documents protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, immunity, statute, law, or rule. Any statement herein to the effect that Plaintiff will provide information in response to an interrogatory is limited to information that does not fall within the scope of any relevant privilege.

2. Plaintiff objects to the interrogatories to the extent they seek information prepared in anticipation of litigation or for trial until and unless Plaintiff, by the requisite showing of need and cause, obtains an order requiring the disclosure of said information.

3. Plaintiff objects to the interrogatories to the extent they require or purport to

from Plaintiff within thirty (30) days of service. Plaintiff's investigation of the claims and defenses at issue in this Action is continuing; accordingly, Plaintiff's response to each interrogatory is based on information and documents presently available to it after reasonable inquiry, and Plaintiff expressly reserves the right to supplement these responses as necessary. In addition, Plaintiff's responses are given without prejudice to their rights to introduce as evidence at trial any subsequently discovered or unintentionally omitted information and/or documents.

12. Plaintiff objects to each interrogatory to the extent it is compound, or includes the use of discrete subparts, in violation of Fed. R. Civ. P. 33.

**SPECIFIC OBJECTIONS AND ANSWERS (REVISED)(SUPPLEMENT 1)**

**INTERROGATORY NO. 17.** Describe, in detail, your work history, including but not limited to each and every position (whether as an employee, independent contractor, self-employment, or otherwise) that you have held from 2000, through the present, including in your Answer with respect to each such position, the identity of the employer/business or entity/person for whom you performed services, your job title(s) and job functions, the date the employment commenced, the date employment terminated, the reason for termination, and the rate of pay at termination.

> **Supplemental Answer**: Subject to the general and specific objections previously provided, the Plaintiff states as follows.
>
> During 1997, 1998 and 1999, I worked at Primerica & CitiBank. Mr. Joe Plumeri was my direct superior and approved my compensation packages. My average annual W-2 ordinary income from 1997 through 1999 was $2.5 million.
>
> From early 2011 through June 2014, I worked as a consultant and all my client billings were paid to The Barger Group, LLC. Based on the records in my possession, my aggregate billings for my consulting work during the 30-month period between January 1, 2011 and June 30, 2013 was $654,920. I do not have records for the last six months of 2013, but my recollection is that I continued to bill at approximately the same rate during the latter half of 2013. During these periods, I worked every day on my consulting work. I billed $3,000 per day plus expenses. However, I only billed for those days on which I

Barger Responses to First Data Interrogatories (Revised)(Supplement No. 1)
4

worked directly with clients.  My work in preparation for client meetings and preparation of materials for client meetings and presentations was not billed. In 2014, prior to my employment by First Data, I worked as a consultant for First Data in addition to continuing my consulting for other clients. I invoiced First Data, and First Data processed and paid, approximately $188,000 in consulting fees and expenses to The Barger Group over the first 6-months of 2014. As I testified during my deposition in this case, during my employment with The Barger Group, I intentionally did not draw much in salary, choosing to leave the revenue from my consulting billings in the company.

As to Objections,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (972) 803-4499
*shawn@shearerlaw.pro*
Attorneys for Plaintiff

Dated: August 16, 2018

## VERIFICATION

I, Steven B. Barger, hereby state, based on reasonable inquiry, that any facts contained in the foregoing Supplement No. 1 to the Answer and Objections to Defendant First Data's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 16th day of August, 2018

_____
Steven B. Barger

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2018, I transmitted the attached document and a copy of the same to the following CM/ECF registrants via e-mail to each of their CM/ECF registered e-mail addresses.

>Gary Eidelman
>Saul Ewing Arnstein & Lehr
>500 E. Pratt Street, Suite 900
>Baltimore Maryland 21202-3133
>
>Gillian Cooper
>Saul Ewing Arnstein & Lehr
>650 College Road East, Suite 400
>Princeton, NJ 08540-6603
>
>Lindsey Kennedy
>Saul Ewing Arnstein & Lehr
>One PPG Place, Suite 3010
>Pittsburgh, PA 15222
>
>*Attorneys for Defendants*

_____
Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (972) 803-4499
*shawn@shearerlaw.pro*