# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER, an individual,

      Plaintiff,

v.

      Civil Case No. EDNY: 1:17-cv-04869-FB-LB

FIRST DATA CORPORATION, *et al.*,

      Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAUL EWING ARNSTEIN & LEHR LLP**
*A Delaware LLP*
Gary B. Eidelman, Esq. (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
Gary.Eidelman@saul.com

Gillian A. Cooper, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
Gillian.Cooper@saul.com

New York Office
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

*Attorneys for Defendants,*
*First Data Corporation, Frank Bisignano, Dan*
*Charron, Anthony Marino, Karen Whalen, and*
*Rhonda Johnson*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 1

LEGAL STANDARD .............................................................................................. 2

ARGUMENT ........................................................................................................... 2

   1.  BARGER'S CLAIM FOR FMLA INTERFERENCE FAILS ......................... 2

      1.1   Barger Was Not on FMLA Leave at the Time of Termination ................... 3

      1.2   Even If Barger Was on FMLA Leave, His Termination Was Lawful ....... 7

   2.  BARGER'S CLAIM FOR FMLA RETALIATION FAILS ......................... 12

      2.1   Barger Cannot Establish a Prima Facie Case of FMLA Retaliation ........ 12

      2.2   Even If Barger Can Establish a Prima Facie Case, Which He Cannot, Barger Was Terminated for a Legitimate, Non-Discriminatory Reason ................................. 13

      2.3   There Is No Evidence of Pretext ................................................................ 14

   3.  BARGER'S FMLA CLAIMS AGAINST DEFENDANTS BISIGNANO, WHALEN, AND JOHNSON FAIL BECAUSE THEY ARE NOT "EMPLOYERS" ............... 15

   4.  BARGER'S ADA DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW ...... 18

      4.1   Barger Was Not Included in the RIF Because He Was Disabled ............... 18

      4.2   First Data Did Not Fail to Accommodate Barger's Disability ................... 21

      4.3   There Are No Facts to Support a Claim for Retaliation Under the ADA ........ 22

   5.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT THAT BARGER FAILED TO MITIGATE HIS DAMAGES ........................................................ 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................................2

*Balut v. Loral Electronic Systems*,
  988 F. Supp. 339 (S.D.N.Y.1997) ...............................................................10

*Bergman v. Kids By the Bunch Too, Ltd.*,
  2018 WL 1402249 (E.D.N.Y. Feb. 16, 2018).................................................7

*Bolden v. Cablevision Sys., Corp.*,
  2011 WL 3439532 (E.D.N.Y. July 26, 2011) (Block, J.) ..............................2

*Broadnax v. City of New Haven*,
  415 F.3d 265 (2d Cir. 2005).........................................................................24

*Brown v. Manufacturers Hanover Trust Co.*,
  1993 WL 138823 (S.D.N.Y. Apr. 23, 1993).................................................10

*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000).........................................................................23

*Di Giovanna v. Beth Israel Med. Ctr.*,
  651 F. Supp. 2d 193 (S.D.N.Y. 2009)..........................................................11

*Douyon v. New York City Dep't of Educ.*,
  2015 WL 13034989 (S.D.N.Y. Oct. 29, 2015) ..............................................8

*Douyon v. New York City Dep't of Educ.*,
  665 F. App'x 54 (2d Cir. 2016) ...................................................................15

*Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*,
  2017 WL 1184278 (S.D.N.Y. Mar. 29, 2017) ...............................................8

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*,
  822 F.3d 620 (2d Cir. 2016)...........................................................................2

*Garcia v. Henry St. Settlement*,
  501 F. Supp. 2d 531 (S.D.N.Y. 2007)..........................................................10

*Gorzynski v. Jetblue Airways Corp.*,
  596 F.3d 93 (2d Cir. 2010).............................................................................2

*Governale v. Cold Spring Harbor Cent. Sch. Dist.*,
  2017 WL 4357337 (E.D.N.Y. Sept. 29, 2017) .............................................23

*Graziadio v. Culinary Inst. of Am.*,
  817 F.3d 415 (2d Cir. 2016)..................................................................... *passim*

*Greenway v. Buffalo Hilton Hotel*,
  143 F.3d 47 (2d Cir. 1998)..........................................................................24

*Hernandez v. Int'l Shoppes*,
  LLC, 100 F. Supp. 3d 232 (E.D.N.Y. 2015)...............................................23

*Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent
  Program*,
  198 F.3d 68 (2d Cir. 1999)..........................................................................21

*Johnson v. A.P. Prod., Ltd.*,
  934 F. Supp. 625 (S.D.N.Y. 1996) ..............................................................17

*Kelly v. New York State Office of Mental Health*,
  200 F. Supp. 3d 378 (E.D.N.Y. 2016) .........................................................22

*Laface v. E. Suffolk Boces*,
  2018 WL 6002395 (E.D.N.Y. Nov. 15, 2018).............................................24

*M & T Mortg. Corp. v. White*,
  736 F. Supp. 2d 538 (E.D.N.Y. 2010) .........................................................11

*McCaskill v. ShopRite Supermarket*,
  2015 WL 419658 (N.D.N.Y. Jan. 30, 2015)................................................13

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).....................................................................................12

*McPherson v. N.Y. City Dep't of Educ.*,
  457 F.3d 211 (2d Cir. 2006).........................................................................11

*Meng v. Ipanema Shoe Co.*,
  73 F. Supp. 2d 392 (S.D.N.Y. 1998)............................................................10

*Micari v. Trans World Airlines, Inc.*,
  43 F. Supp. 2d 275 (E.D.N.Y. 1999) ...........................................................18

*Missick v. City of New York*,
  707 F. Supp. 2d 336 (E.D.N.Y. 2010) .........................................................23

*Pearson v. Unification Theological Seminary*,
  785 F. Supp. 2d 141 (S.D.N.Y. 2011)............................................................8

*Pinto v. New York City Admin. for Children's Servs.*,
  2018 WL 4333990 (S.D.N.Y. Sept. 11, 2018).............................................23

*Potenza v. City of New York*,
   365 F.3d 165 (2d Cir. 2004).................................................................12

*Puglisi v. Town of Hempstead, Dep't of Sanitation, Sanitary Dist. No. 2*,
   545 F. App'x 23 (2d Cir. 2013) ............................................................15

*Rengan v. FX Direct Dealer, LLC*,
   2017 WL 3382074 (S.D.N.Y. Aug. 4, 2017)..........................................6

*Rizzo v. Health Research, Inc.*,
   2016 WL 632546 (N.D.N.Y. Feb. 16, 2016) .............................10, 11, 13

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir. 2011)....................................................................23

*Scaria v. Ruben*,
   117 F.3d 652 (2d Cir. 1997)..................................................................12

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998)..................................................................21

*Singh v. New York State Dep't of Taxation & Fin.*,
   911 F. Supp. 2d 223 (W.D.N.Y. 2012) ..................................................17

*Snowden v. Trustees of Columbia Univ.*,
   2014 WL 1274514 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir.
   2015) .....................................................................................................23

*Spinelli v. City of New York*,
   2016 WL 5476001 (S.D.N.Y. Sept. 29, 2016)........................................7

*Sumner v. United States Postal Serv.*,
   899 F.2d 203 (2d Cir. 1990)..................................................................23

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003)..................................................................19

*Tuszynski v. Innovative Servs., Inc.*,
   2005 WL 221234 (W.D.N.Y. Jan. 29, 2005)..........................................25

*Wado v. Xerox Corp.*,
   991 F. Supp. 174 (W.D.N.Y. 1998) ................................................15, 20

*Zann Kwan v. Andalex Grp. LLC*,
   737 F.3d 834 (2d Cir. 2013)..................................................................14

*Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*,
   869 F. Supp. 2d 378 (S.D.N.Y. 2012)....................................................15

**STATUTES**

29 U.S.C. § 2611(4)(A)(ii)(I)........................................................................................16

29 U.S.C. § 2614........................................................................................................2, 7

42 U.S.C. § 12203..........................................................................................................23

29 U.S.C. § 2601, *et seq.*............................................................................ *passim*

42 U.S.C. § 12101, *et seq.*........................................................................... *passim*

**OTHER AUTHORITIES**

29 C.F.R. § 825.104(d) ................................................................................................16

29 C.F.R. § 825.216 ......................................................................................................10

29 C.F.R. § 825.300(c)(4)..........................................................................................6, 7

29 C.F.R. § 825.301 ......................................................................................................6

Fed. R. Civ. P. 11(b) ....................................................................................................18

Fed. R. Civ. P. 56(c) ...................................................................................................2

L. Civ. R. 56.1(a) ..........................................................................................................1

## PRELIMINARY STATEMENT

This case involves a challenge by Plaintiff Steven Barger to the lawful business decision by Defendant First Data Corporation to include him—along with more than 360 other employees—in an early-2017 reduction-in-force. That RIF targeted the 10% of First Data's top 3,000 wage earners. Barger admitted that RIFs are a legitimate tool used by many companies to manage their businesses. Barger, who had been out on leave under the Family Medical Leave Act, 29 U.S.C.§ 2601, *et seq.*, when the RIF planning first began, claims that his inclusion in the RIF is discriminatory and violates the FMLA and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, because he was ready to work, but instead First Data terminated his employment. He is wrong.

Defendants are entitled to summary judgment for the following reasons:

- Barger had exhausted the maximum of 12 weeks of FMLA leave at the time he was terminated, so no claim for interference exists;
- Even if Barger was on FMLA leave at the time he was terminated, his inclusion in the RIF was for legitimate business and lawful reasons;
- Barger's FMLA retaliation claim fails because he admitted that he was not terminated for taking FMLA leave;
- Barger's FMLA discrimination claims against a number of the individual Defendants fail because they are not "employers" under the FMLA;
- Barger's claims under the ADA are nonsensical, completely speculative, and do not demonstrate liability under the ADA;
- Barger's claim under the ADA also fails because he admitted that he was not terminated because he has a disability; and
- Barger is not entitled to back pay or front pay because he failed to mitigate his damages by not seeking another job.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For a complete statement of the material undisputed facts and underlying evidentiary support, Defendants respectfully refer the Court to Defendants' Rule 56.1(a) Statement of

1

Undisputed Material Facts (Defs. 56.1 Stmt.), with accompanying exhibits, all of which are incorporated by reference. In the interests of brevity, those facts are not repeated here.

## LEGAL STANDARD

"Summary judgment is warranted only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, 'there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *Bolden v. Cablevision Sys., Corp.*, 2011 WL 3439532, at *1 (E.D.N.Y. July 26, 2011) (Block, J.) (quoting *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009)); Fed. R. Civ. P. 56(c)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted). Disputes over facts that are irrelevant or unnecessary to the determination of the legal questions at issue do not prevent the entry of summary judgment. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) ("A fact is material if it might affect the outcome of the case under governing law."). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). As discussed below, the undisputed evidence supports entry of summary judgment in Defendants' favor as to all of Barger's claims.

## ARGUMENT

1. **BARGER'S CLAIM FOR FMLA INTERFERENCE FAILS**

The FMLA generally requires an employer to restore an eligible employee to their same or substantially similar position at the expiration of their leave. 29 U.S.C. § 2614. Here, Barger's FMLA interference claim fails for two reasons. First, his FMLA leave lapsed on November 28,

2016, seven weeks before his release to return to work, meaning that the FMLA did not apply to Barger when he submitted a return to work authorization from his physician. Alternatively, even if Barger was protected by the FMLA at that time, he cannot prove that First Data's reason for terminating his employment as part of a RIF was pretext for denying him rights under the FMLA. Summary judgment as to Barger's FMLA claims should be granted as to all Defendants.

### 1.1    Barger Was Not on FMLA Leave at the Time of Termination

To prevail on his claim of FMLA interference, Barger must prove that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

It is undisputed that on November 8, 2016, Barger sent a text message to Defendant Anthony Marino, First Data's EVP and Head of Human Resources, telling Marino he needed additional surgery that would hospitalize him for six days followed by four weeks of recovery. Defs. 56.1 Stmt. ¶ 82. Based on Barger's message, Marino advised Barger that he needed to go on FMLA leave to recuperate. *Id*. at ¶¶ 83-86.

To facilitate the leave, on November 18, 2016, First Data sent Barger a letter advising that he would be transitioned to the Company's leave of absence and disability programs and that he should concentrate on his recovery. *Id*. at ¶¶ 84-86. Included with this letter were forms for Barger to complete, including the FMLA Certification of a Medical Provider and application forms for disability insurance. *Id*. at ¶ 86.

On November 21, 2016, Barger sent Marino another text message advising that his cancer might be fatal and inoperable and he asked Marino for help in getting his finances

together. *Id*. at ¶¶ 87-88. Out of concern for Barger's health, Marino made a special arrangement for Barger to be paid his 2016 bonus on December 15, 2016, rather than in the first quarter of the following year when bonuses are normally paid. *Id*. at ¶¶ 89-92. In addition, even though the variable incentive bonus compensation pool for 2016 had been reduced by 5% (which meant executives would generally receive less than the previous year), First Data paid Barger the same bonus for 2016 that he had been paid in 2015. *Id*. at ¶ 92. In contrast to other First Data executives who received their bonus as a mix of cash and time-vested equity, Barger's bonus was paid in all cash. *Id*. at ¶¶ 20, 90. The beneficial treatment of Barger's 2016 bonus is something that First Data did not do for any other employee that year. *Id*. at ¶ 91.

On December 14, 2016, Barger returned the FMLA certification completed by his physician indicating that his period of disability had begun on October 22, 2016. *Id*. at ¶ 96. Upon receipt of this documentation, First Data sent Barger a letter advising that his FMLA leave had been approved with a retroactive start date of October 24, 2016. *Id*. at ¶ 97. The letter informed Barger that his 12 weeks of FMLA leave would expire on January 16, 2017. *Id*. at ¶ 98. On December 21, 2016, First Data emailed Barger to advise him that his accrued paid leave had been exhausted and that he should work with MetLife, the administrator for the short- and long-term disability programs, to access those benefits. *Id*. at ¶ 100.

On January 5, 2017, Barger advised Jennifer Voycheske, Manager or HR Operations and the employee in charge of First Data's leave management office, that MetLife had approved his short-term disability benefits, with a disability start date of September 4, 2016 for purposes of triggering short-term disability. *Id*. at ¶ 107. Because that date conflicted with the date on Barger's FMLA Certification, on January 5, 2017, Voycheske emailed Barger to inquire about the difference in dates: "Our records from your physician indicates that you didn't start missing

work until 10/22/16. **When did you start missing work?**" *Id*. at ¶ 108 (emphasis added). Barger responded to Voycheske by email: "9/4. My operation was 9/6." *Id*. at ¶ 109. After receiving this information from Barger that he had stopped working at an earlier date, Voycheske checked MetLife's records, which First Data was authorized to do, and confirmed that MetLife had established September 4, 2016 as Barger's disability date. *Id*. at ¶ 110. MetLife also sent letters to Barger confirming his disability date of September 4, 2016. *Id*. at ¶ 115.

Based on this new information provided by Barger, First Data adjusted Barger's FMLA start date from October 22, 2016, to September 5, 2016. *Id*. at ¶ 111. On January 5, 2017, First Data sent Barger a letter informing him that since his FMLA start date was September 5, 2016, his 12 weeks of FMLA leave had expired on November 28, 2016. *Id*. at ¶ 112. The updated FMLA letter also advised Barger that a request had been sent to his business unit regarding an extension of his leave eligibility. *Id*. at ¶ 114.

While Barger was out on leave, in mid-November 2016 First Data started planning for a RIF. *Id*. at ¶ 118. Barger's name, along with hundreds of other employees' names, began appearing on possible RIF lists. *Id*. This process continued into early January 2017 when the RIF was expanded to include 10% of the top 3,000 wage earners, which included Barger. *Id*. at ¶¶ 120-125. On January 9, 2017, Barger's name was added by his manager to the final RIF list for employees in Global Business Solutions (GBS), the organization to which the Sales Training Group (the Group) was assigned. *Id*. at ¶¶ 137-38. On January 10, 2017, Barger presented First Data with a return to work authorization from his physician, stating he could return "without any restrictions." *Id*. at ¶ 117. On January 13, 2017, First Data notified Barger that his position of SVP of Sales Transformation was eliminated. *Id*. at ¶ 153. His last date of employment was February 28, 2017. *Id*. at ¶ 155.

Barger contends Defendants violated the FMLA by not allowing him to return to work. Based on the undisputed facts, the FMLA protections no longer applied to Barger at the time he submitted his return to work authorization. Under 29 C.F.R. § 825.301, which sets forth the regulations regarding the designation of FMLA leave, subsection (a) provides that an employer's decision to designate leave as being FMLA-qualifying must be based on information the employer receives from the employee. The DOL regulations permit an employer to retroactively calculate the date FMLA leave begins provided the employer provides the employee with the requisite notice. 29 C.F.R. § 825.301(d); *see also Rengan v. FX Direct Dealer, LLC*, 2017 WL 3382074, at *6 (S.D.N.Y. Aug. 4, 2017) ("An employer may retroactively designate leave as FMLA leave 'with appropriate notice to the employee' provided that 'the employer's failure to timely designate leave does not cause harm or injury to the employee.' 29 C.F.R. § 825.301(d)."). If the specific information provided by the employer in its FMLA notice to the employee changes, the employer is required to issue a new notice to the employee within five days. 29 C.F.R. § 825.300(c)(4).[1]

First Data complied with its obligations under the FMLA to designate Barger's leave. After receiving Barger's FMLA certification on December 14, 2016, the Company sent him a notice the next day, retroactively calculating his FMLA start date as October 24, 2016, in compliance with 29 C.F.R. § 825.301(d). Defs. 56.1 Stmt. ¶ 97. Barger then provided First Data with new information that he had started missing work on September 5, 2016. *Id*. at ¶¶ 109-11. After Barger provided this information to First Data, the Company immediately sent him an

---

[1] The Court should reject any claim from Barger that Defendants created the theory that his FMLA leave had already expired when he tried to return to work solely in response to this lawsuit. First Data's Position Statement to the EEOC, which Barger appended to and made a part of his Complaint, explains that Barger's FMLA leave began on September 5, 2016. See ECF No. 1, Compl. Ex. B, n. 1.

amended notice under 29 C.F.R. § 825.300(c)(4) advising that he had already received his full FMLA benefits. *Id*. at ¶ 112.

When Barger presented his return to work authorization on January 10, 2017, First Data had no obligation under 29 U.S.C. § 2614 to restore Barger to his job because he had already exhausted all of his FMLA leave and he had been added to the RIF list by his direct supervisor, Jeff Hack, on January 9, 2017.[2] *Id*. at ¶ 137. First Data did not and could not have interfered with Barger's right to be restored to his job under the FMLA because his leave was exhausted. *Spinelli v. City of New York*, 2016 WL 5476001, at *2 (S.D.N.Y. Sept. 29, 2016) ("[Plaintiff] cannot make a *prima facie* case for FMLA interference because her leave was granted and fully exhausted."). For this reason alone, Count I for FMLA interference fails and summary judgment should be granted as to all Defendants.

### 1.2    Even If Barger Was on FMLA Leave, His Termination Was Lawful

Assuming that Barger's FMLA leave should not have started on September 5, 2016, (the date provided by Barger), Count I still fails. First Data had legitimate business reasons for including Barger in the RIF, which makes his termination lawful and FMLA-compliant.

Contrary to Barger's unsupported arguments, the FMLA is not a strict liability statute. Rather, the FMLA provides "no greater job security than that to which the employee would have been entitled to prior to taking leave." *Bergman v. Kids By the Bunch Too, Ltd*., 2018 WL 1402249, at *9 (E.D.N.Y. Feb. 16, 2018) (quoting *Hale v. Mann*, 219 F.3d 61, 66 (2d Cir. 2000)). This Court has previously stated that the FMLA "is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause

---

[2] On January 13, 2017, Barger was notified that his position had been eliminated but his employment was not terminated at that time. Rather, his pay was restored and he was placed on a non-working notice from January 15, 2017, until February 28, 2017, in part so that he could vest in the next tranche of equity that he had been granted. His last date of employment was February 28, 2017. Defs. 56.1 Stmt. ¶ 155.

for the termination." *Id*. In other words, "[t]he right to reinstatement under the FMLA is not

absolute." *Ejiogu v. Grand Manor Nursing & Rehab. Ctr*., 2017 WL 1184278, at *9 (S.D.N.Y.

Mar. 29, 2017). "[I]t is well-settled that an employer is not liable for 'interfering' with an

employee's leave when the employee would have been terminated regardless of the leave."

*Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) (citing

*Sista v. CDC Ixis N.A., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) and 29 C.F.R. § 825.216(a)); *see*

*also Douyon v. New York City Dep't of Educ.*, 2015 WL 13034989, at *4 (S.D.N.Y. Oct. 29,

2015) (holding that employee's FMLA interference claim "has no merit" because her position

was eliminated during reorganization while she was on leave).

> After Barger went out on leave in mid-November, Robin Ording, Vice President of
>
> Talent Development, took on his day-to-day duties and responsibilities in managing the Group
>
> on an interim basis, in addition to all of her regular duties. Defs. 56.1 Stmt. ¶ 164. Ording
>
> initially began a review of the operations of the Group to formulate ways to improve its
>
> performance, which included a review of its personnel. *Id*. at ¶ 131. Ording and Patricia Hadler,
>
> SVP of Operations/Internal Consulting, conducted a more formal review and assessment of the
>
> Group's operations. *Id*. at ¶¶ 129-35. They concluded that restructuring the Group by cutting
>
> personnel and not filling open positions could reduce headcount in the Group from 71 to 55
>
> employees, resulting in annual savings of $2.2 million in salaries and benefits. *Id*.[3] Additionally,
>
> the Group would be better organized and run more efficiently. *Id*. Eliminating Barger's position
>
> as SVP with his base salary of $480,000, plus potential variable compensation of up to $250,000,
>
> was included in the cost savings for the Group. *Id*. Ording, who had taken over managing the

---

[3] At her deposition, Ording testified that the Group is now down to under 30 employees. Defs. 56.1 Stmt. at ¶ 142.

Group, was paid a base salary of $250,000 per year and her compensation was not increased after she took on these additional duties and responsibilities. *Id*. at ¶ 167.

The Group that Barger supervised was assigned to GBS, is headed by Defendant Dan Charron, EVP of GBS. *Id*. at ¶ 40. Barger's immediate supervisor was Jeff Hack, an EVP who was involved with running operations for GBS. *Id*. at ¶ 23. Hack reported to Charron. *Id*. at. ¶ 62. Hack left First Data in February 2017. *Id*. at. ¶ 63.

On January 5, 2017, Defendant Frank Bisignano, First Data's Chief Executive Officer, told management that First Data needed to expand the RIF that had begun in late 2016 because not enough meaningful cost savings had been achieved to impact the Company's financial performance goals as part of his broader restructuring and turnaround plan.[4] *Id*. at ¶¶ 120-25. Bisignano ordered that the Company eliminate additional expenses by reducing the headcount of 10% of the top 3,000 compensated employees. *Id*.

To achieve this target, each of the business unit leaders, including Charron and Hack, were tasked with identifying 10% of their most highly compensated employees to be included in the RIF. *Id*. at ¶¶ 121-23, 136. On January 9, 2017, Hack sent his finalized list of his direct reports, including Barger, to be impacted by the RIF to Charron. *Id*. at ¶ 137. Charron approved Hack's choices and included them with a list his of GBS direct reports to achieve their portion of the 10% reduction. *Id*. at ¶ 138. Barger's position was eliminated because the Company did not need an SVP at Barger's compensation level running a small sales training group, nor did the Company need Barger in that role to accomplish the Company's business objectives. *Id*. at

---

[4] The efficacy of First Data's use of RIFs, as one tool to improve its financial performance, is demonstrated by its public filings. From 2015-2017, earnings before interest, tax, depreciation, and amortization (EBITDA) increased by 2.70 % in part because of reductions in force. Defs 56.1 Stmt. ¶ 147. This increase coincided with a period during which the number of employees fell by 2,000 even with several acquisitions. *Id*. at ¶ 146.

¶¶ 139-40. Marino testified that this was the business reason for eliminating Barger's position and assigning the majority of his duties to Ording. *Id.*

A total of 362 employees were terminated as a part of the December 2016/January 2017 RIF that included Barger, resulting in projected savings of $43.6 million in annual base and fringe expense savings on a full year basis. *Id.* at ¶¶ 143, 145. A total of 26 employees at Barger's L-6 level were impacted by the RIF. *Id.* at ¶ 144. Barger was among the highest paid employees whose jobs were eliminated. There is no evidence that Hack included Barger on the RIF list because he had been out on FMLA leave. *Id.* at ¶¶ 149, 158. There is also no evidence that Charron approved Hack's decision to include Barger in the RIF because he had taken FMLA leave.[5] *Id.* at ¶¶ 150, 159.

FMLA Regulations provide that employees on FMLA leave are not immune from a non-discriminatory adverse employment action. 29 C.F.R. § 825.216, entitled "*Limitations on an employee's right to reinstatement*" provides:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, . . . . An employer would have the burden of proving that an employee would

---

[5] Eliminating a position as part of a RIF is a well-established legitimate and non-discriminatory reason that supports summary judgment in an employer's favor. *See Meng v. Ipanema Shoe Co.*, 73 F. Supp. 2d 392, 398 (S.D.N.Y. 1998) ("C]ourts in this circuit have generally recognized reduction-in-force as sufficient evidence to rebut plaintiff's *prima facie* showing."); *Balut v. Loral Electronic Systems*, 988 F. Supp. 339, 349-50 (S.D.N.Y.1997) (finding RIF was legitimate, non-discriminatory reason for termination); *Brown v. Manufacturers Hanover Trust Co.*, 1993 WL 138823, at *5 (S.D.N.Y. Apr. 23, 1993) (granting summary judgment where "no reasonable jury could find that [defendant's] "reduction in force" was merely a pretext for racial discrimination"); *Rizzo v. Health Research, Inc.*, 2016 WL 632546, at *16 (N.D.N.Y. Feb. 16, 2016) (holding that corporate restructuring is a legitimate, nondiscriminatory reasons for eliminating a position). "It is well-settled in the Second Circuit that a reduction in force in response to economic and budgetary concerns constitutes a legitimate, non-discriminatory employment action." *Garcia v. Henry St. Settlement*, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2007).

have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

The only allegation Barger presents is that he wanted to return to work and that First Data would not let him; that is not evidence of discrimination. Barger's subjective belief that his FMLA rights were allegedly interfered with—which is unsupported by any evidence and indeed contradicted by his own deposition testimony—is not enough to create a genuine dispute of fact on summary judgment. *Rizzo v. Health Research, Inc.*, 2016 WL 632546, at *18 (N.D.N.Y. Feb. 16, 2016) ("Plaintiff's subjective feelings that HRI attempted to interfere with her FMLA leave is insufficient to raise a triable issue of fact with respect to her FMLA interference claim."); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 208 (S.D.N.Y. 2009) (holding plaintiff's "unsupported feeling" of FMLA retaliation was insufficient to raise an issue of triable fact). Barger has nothing more than his speculative allegations in the pleadings to support any claim that his position elimination was related to his FMLA leave. *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 552 (E.D.N.Y. 2010) (holding that non-movant "cannot rest on the pleadings, and must set forth specific facts in affidavits, depositions, answers to interrogatories, or admissions on file, which together demonstrate a genuine issue for trial"); *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("speculation alone is insufficient to defeat a motion for summary judgment").

Barger concedes that many companies use RIFs as a business strategy and management tool, but that he disagrees with them. Defs. 56.1 Stmt. ¶ 148. Barger's subjective belief in the propriety of using RIFs to improve financial results does not create a dispute of material fact as to the reasons for including him in the 10% of the top 3,000 RIF. Barger cannot identify material facts that create a dispute as to the reasons why First Data included him in the RIF. Any subjective opinion about the value of his position cannot defeat summary judgment because the

Court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Scaria v. Ruben*, 117 F.3d 652, 655 (2d Cir. 1997). Barger cannot identify any admissible evidence to counter First Data's legitimate business reasons for including him in the RIF. It is undisputed that Barger's position would have been eliminated regardless of whether he took FMLA leave.

**2.      BARGER'S CLAIM FOR FMLA RETALIATION FAILS**

Summary judgment on Barger's FMLA retaliation claim (Count II) also should be granted. Even Barger admits that he does not believe his position was eliminated in retaliation for him taking FMLA leave. Defs. 56.1 Stmt. ¶ 158.

**2.1      Barger Cannot Establish a *Prima Facie* Case of FMLA Retaliation**

Besides Barger's admission, additional reasons exist for granting summary judgment as to Count II, namely there is no evidence to support a claim of retaliation under the FMLA. FMLA retaliation is analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. At the outset, to establish a *prima facie* case, Barger must produce evidence that he:

(1)      exercised rights protected under the FMLA;
(2)      was qualified for his position;
(3)      suffered an adverse employment action; and
(4)      the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.

*Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *Graziadio*, 817 F.3d at 429. For purposes of summary judgment, Defendants admit Barger took FMLA leave, that he was qualified as the head of the Group, and he suffered an adverse employment action when he was terminated as part of the RIF. However, the facts surrounding his termination do not raise any inference of retaliation.

Barger was initially identified as a possible candidate for inclusion in a RIF event in mid-November 2016. Defs. 56.1 Stmt. ¶ 119. After Bisignano decided to increase the scope of the RIF to focus on 10% of the top 3,000 wage earners, Hack decided to put Barger on the list along with other employees Hack supervised. *Id*. at ¶¶ 136-38. Hack put Barger on his list on January 9, 2017. *Id*. at ¶ 137. These circumstances do not suggest that Barger's FMLA leave had anything to do with Hack's decision to put Barger on the RIF list. Indeed, Barger testified as follows:

| | |
|---|---|
| Q. (Mr. Eidelman) | Do you believe you were terminated because you had taken leave? |
| A. (Mr. Barger) | No. |

*Id*. at ¶ 158. When pressed as to the basis for claims, Barger did not point to any evidence of discrimination. Rather, he states that he "wanted to come back to work and wasn't allowed to." *Id*. at ¶ 160. Barger's subjective belief that he wanted to return to work and was upset that he was not allowed to does not raise any cognizable inference of retaliation under the FMLA. *Rizzo*, 2016 WL 632546 at *18; *McCaskill v. ShopRite Supermarket*, 2015 WL 419658, at *8 (N.D.N.Y. Jan. 30, 2015) (holding the "plaintiff has demonstrated nothing more than his own subjective belief and feeling that he was discriminated against, which is not enough to make out a *prima facie* discrimination case"). Here, Barger's retaliation claim fails as a matter of law because he has no facts to provide even an inference of retaliatory intent in his termination because he took FMLA leave.

### 2.2 Even If Barger Can Establish a *Prima Facie* Case, Which He Cannot, Barger Was Terminated for a Legitimate, Non-Discriminatory Reason

Even if Barger could establish a *prima facie* case of retaliation, First Data can rebut his case by showing it had a legitimate, non-discriminatory reason for its action. *Graziadio*, 817 F.3d at 429. The record evidence demonstrates that First Data had legitimate, non-discriminatory

business reasons to terminate Barger. After he went on leave, First Data assigned Ording to supervise the Group. Defs. 56.1 Stmt. ¶ 164. Ording conducted a review of the Group and determined that it was overstaffed and that significant money could be saved by restructuring its operations, including eliminating positions and canceling Barger's plan to hire more personnel. *Id*. at ¶ 131. The Company decided it did not need an SVP at Barger's level of compensation to lead the Group. *Id*. at ¶¶ 139-40. First Data saved more than $2 million in salaries and benefits after implementing the changes to the Group, part of a much larger saving of over $40 million from the 10% of the Top 3,000 RIF, which included 26 SVPs. *Id*. at ¶¶ 132, 144-45. First Data has demonstrated that it had a legitimate business reason to include Barger in the RIF.

### 2.3    There Is No Evidence of Pretext

Since First Data has demonstrated its legitimate, non-retaliatory reason for its action, it is up to Barger to show that First Data's reasons are pretextual. *Graziadio*, 817 F.3d at 429. To do so, Barger is required to prove that his exercise of FMLA rights was the "but-for" cause of the adverse action, and not simply a "substantial" or "motivating" factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013)). A plaintiff can show "but-for" causation by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" that could cause a reasonable juror to conclude the explanations were a pretext for discrimination. *Graziadio*, 817 F.3d at 430.

Barger testified that he was not retaliated against for taking FMLA leave. Defs. 56.1 Stmt. 158. Based on that admission alone, no reasonable juror could conclude that First Data retaliated against him or that its decision to eliminate an employee running a small training department who was earning $480,000 per year, with a bonus potential of $250,000 is a pretext

for retaliation. There also is no evidence that Barger was replaced by an employee making the same or more than he was to support a pretext argument. To the contrary, Barger's job duties were subsumed into Ording's job and she did not receive an increase in compensation. *Id*. at ¶¶ 164-67. *See Wado v. Xerox Corp.*, 991 F. Supp. 174, 199 (W.D.N.Y. 1998) ("[T]he mere fact that after a RIF, a terminated employee's duties are redistributed to other employees does not in itself suggest any discrimination.")

Barger cannot demonstrate pretext because his position was legitimately eliminated as part of the RIF. *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 399 (S.D.N.Y. 2012) (dismissing FMLA retaliation claim because "[t]he evidence is uncontroverted that the Plaintiff was terminated when her position was eliminated as part of the firm's August 2008 RIF. She has not presented any evidence to suggest that her taking a leave was a factor in that decision."); *see also Douyon v. New York City Dep't of Educ.*, 665 F. App'x 54, 57 (2d Cir. 2016) (holding that elimination of plaintiff's position during reorganization was not pretext for FMLA retaliation); *Puglisi v. Town of Hempstead, Dep't of Sanitation, Sanitary Dist. No. 2*, 545 F. App'x 23, 26 (2d Cir. 2013) (holding that elimination of plaintiff's position was not pretext for retaliation). Wanting to return to work does not create a triable issue of fact and there is no legal or factual basis to support Barger's claim for FMLA retaliation. Summary judgment should be granted to all Defendants as to Count II of the Complaint.

3. **BARGER'S FMLA CLAIMS AGAINST DEFENDANTS BISIGNANO, WHALEN, AND JOHNSON FAIL BECAUSE THEY ARE NOT "EMPLOYERS"**

Barger sued Bisignano, Charron, Marino, Whalen, and Johnson in their individual capacities under the FMLA.[6] If summary judgment is somehow not entered on Counts I and II as

---

[6] Barger also sued Lori Graesser, an Associate General Counsel, claiming without any basis in fact or law that she somehow retaliated against him in violation of the FMLA due to her negotiations over a severance package with his lawyer. That proposed severance package included payment of the cash equivalent of 100% of Barger's unvested equity. Defs. 56.1 Stmt. ¶ 163. He has since dismissed Graesser from this frivolous claim. See ECF No. 28.

to all Defendants, the Court should still grant summary judgment to Defendants Bisignano, Whalen, and Johnson because they did not exercise the necessary degree of control under the economic realities test to be liable under the FMLA.[7]

Unlike most federal discrimination statutes, a person may be held liable under the FMLA but only if he or she is deemed to be an "employer," defined as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I); *see also* 29 C.F.R. § 825.104(d). To determine individual liability under the FMLA, the Second Circuit applies the "economic realities" test which considers the following factors, none of which is solely dispositive, to determine if an individual defendant:

    (1)    had the power to hire and fire the employees;
    (2)    supervised and controlled employee work schedules or conditions of employment;
    (3)    determined the rate and method of payment; and
    (4)    maintained employment records.

*Graziadio*, 817 F.3d at 422. The most important part of the inquiry is whether the alleged individual employer "controlled in whole or in part plaintiff's rights under the FMLA." *Id.*

Here, Barger cannot produce evidence to prove that Bisignano, Johnson, and Whalen are employers under the FMLA. Bisignano is First Data's CEO. He did not supervise, set compensation, set work schedules, nor did he maintain employment records for Barger. Defs. 56.1 Stmt. ¶¶ 26-31. While he was aware that Barger was being included in the RIF, he was not involved with Barger's request for FMLA leave or his return to work. Bisignano's lack of involvement in supervising Barger or controlling his FMLA leave is analogous to what happened in *Singh v. New York State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 242 (W.D.N.Y.

---

[7] For the reasons set forth *supra* Part 1 and 2, all individual Defendants should be dismissed because Barger's FMLA claims fail as a matter of law. By not moving for summary judgment in their individual capacities, Defendants do not concede that Charron and Marino qualify as "employers" under the FMLA. Defendants Charron and Marino reserve all rights and do not waive any argument that they are not employers under the FMLA.

2012). In *Singh*, the plaintiff sought to hold company executives individually liable under the FMLA. Applying the economic realities test, the Court granted summary judgment for the interim president on the grounds that "[h]e had no involvement with any personnel decisions relating to plaintiff's requests for time off, FMLA leave, or her return to work following her leave." *Id.* at 242-43. Similarly, CEO Bisignano was not involved in Barger's day-to-day employment or exercise of FMLA rights and cannot be considered an "employer."

Summary judgment should also be entered in favor of Whalen (SVP of Human Resources) and Johnson (VP of Human Resources), both of whom provided HR support to Barger. Barger is unable to cite with any specificity how Whalen and Johnson, as First Data HR professionals, controlled the terms and conditions of his employment. A similar situation was present in *Johnson v. A.P. Prod., Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996). There, the court applied the economic realities test to dismiss a human resources manager. *Id.* It explained that merely alleging that the defendant worked in HR as a manager and that she and the employer terminated the employee—without alleging how the individual defendant exercised control over the plaintiff's termination or ability to take FMLA leave—is insufficient to create liability. *Id.*

Here, Barger must concede that neither Whalen or Johnson:

- Had the power to hire or fire him. Defs. 56.1 Stmt. ¶¶ 45-46, 55-56.
- Supervised or controlled his work schedule or conditions of employment, determined compensation, or maintained employment records. *Id.* at ¶¶ 47-49, 57-59.
- Played a role in any decisions as to his FMLA leave. *Id.* at ¶¶ 93-117.
- Made any decisions regarding termination of Barger's employment. *Id.* at ¶¶ 46, 56.

At best, Whalen and Johnson served as conduits for information provided by others and communicators of decisions made by others. *Id.* at ¶ 93.[8]

---

[8] Other courts have ruled that human resources personnel may not wield sufficient authority or control to be an FMLA "employer," especially when the plaintiff was a high-ranking employee. *Crittendon v. Arai Americas*, Inc.,

When asked at his deposition why he sued the First Data employees, Barger testified that "I needed -- I needed to find out. I wanted whoever is responsible for not allowing me to come back to work, and that's why I had no idea who it was, so that's why." *Id.* at ¶ 161. Barger's explanation as to why he sued the individual Defendants does not pass muster under Rule 11(b).[9] There is no evidence to support his claims against these individual defendants. Summary judgment should be granted as to Defendants Bisignano, Whalen, and Johnson.

## 4.    BARGER'S ADA DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

In Count III, Barger alleges that First Data discriminated against him in violation of the Americans with Disabilities Act. He claims discriminatory discharge, failure to accommodate, and retaliation under the ADA. Barger has no facts to support these claims.

### 4.1    Barger Was Not Included in the RIF Because He Was Disabled

To establish a *prima facie* claim of ADA discrimination, Barger must prove that: (1) First Data is subject to the ADA; (2) he is disabled under the ADA; (3) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 279 (E.D.N.Y. 1999). For purposes of summary judgment, First Data admits that it is covered by the ADA, that Barger suffers from a disability, and that he was otherwise qualified to perform the essential functions of his job. First Data denies that there is any evidence to prove that it terminated Barger because of his disability.

---

2014 WL 354517, at *5 (E.D. Va. Jan. 28, 2014) (holding that although HR manager signed off on senior vice president's FMLA documents, she did not exercise "substantial control" over him to be liable as an "employer").
[9] At the conclusion of Bisignano's deposition, Barger was asked to voluntarily dismiss Bisignano, Whalen, and Johnson for having failed to establish facts that would support liability against them as "employers" under the FMLA. He refused to do so, thus necessitating this Motion as to those Defendants. Defs. 56.1 Stmt. ¶ 162.

Under the ADA, an "adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Examples of an actionable adverse action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*.

To support his ADA claims, Barger alleges that First Data's "decision to terminate Plaintiff was based upon Defendant Marino's observations and perception of Plaintiff's abilities and disabilities derived from Defendant Marino's personal visit to Plaintiff's residence on November 3, 2016." This allegation is not supported by a single fact. In November 2016, Joseph Plumeri, Vice Chairman of First Data, who has known and worked with Barger for years, chartered a private plane to visit Barger to "cheer him up." *Id*. at ¶ 78. Plumeri hired Barger for First Data. *Id*. at ¶ 10. Plumeri asked Marino to join him on the trip, since Marino was also good friends with Barger. *Id*. at ¶ 79. Barger testified that in his view, the purpose of the visit was for his friends to see how he was doing. *Id*. at ¶ 80. Marino testified that he and Plumeri "just wanted to express our support for him and use the visit to show that he---that he had friends that, you know, cared about him and supported him." *Id*. at ¶ 80. After they left, Barger sent a text message to Marino, thanking him for the wonderful visit and commenting that "[p]ersonal things are the only ones that count. . . . Love you Tony." *Id*. at ¶ 81.

It is true Barger was recovering from cancer surgery when Plumeri and Marino visited him. However, Barger admits they visited because they were all friends and they wanted to see how he was doing. *Id*. at ¶ 80. Barger can only speculate as to some nexus between this personal visit and the decision by Hack and Charron to include him on the RIF list two months later

because he was one of the 10% of the top 3,000 highest paid employees. The evidence is undisputed that Marino did not decide that Barger needed to go out on leave to concentrate on his recovery until after Barger texted him on November 10, 2016, that he needed additional surgery and hospitalization. *Id*. at ¶ 83.

After he was diagnosed with cancer in 2016, Barger would openly discuss his medical condition with his employees. Some of these employees approached Johnson, who was the lead HR professional for the Group, to express their discomfort with him openly discussing his personal health information. In turn, Johnson spoke to Barger to relay these concerns. Barger claims these actions by First Data demonstrate that there is an animus towards individuals with disabilities and that the employees should have been counseled not to be upset by Barger talking about his medical condition.

Barger admits that Johnson did not terminate his employment, nor did she have any authority to do so. *Id*. at ¶ 56. *See Wado*, 991 F. Supp. at 200 (holding that ADA discrimination claim failed because "there is no evidence that [the alleged perpetrator of discrimination] had any involvement in the decision to terminate [the plaintiff]"). There is no evidence that Johnson telling Barger that his conversations with employees had made them uncomfortable had any connection with the decision by Hack and Charron to include Barger in the RIF.[10] Neither the Plumeri/Marino visit to Atlanta to see Barger, nor Johnson's conversation with Barger, qualify as adverse actions under the ADA.

Even assuming that Barger can somehow assert a *prima facie* case of disability discrimination, First Data has legitimate business reasons why he was included in the RIF. A RIF

---

[10] The suggestion that First Data discriminates against individuals with disabilities is unsupported. Charron, who approved Barger's name on Hack's list, suffers from a hearing disability and wears hearing aids. Defs. 56.1 Stmt. ¶ 42. Marino testified that at the time of his deposition, First Data had 95 employees working under some form of reasonable accommodation in order to allow them to perform the essential functions of their jobs. *Id*. at ¶ 151.

is a legitimate and non-discriminatory employer action. See *supra*, footnote 5. For Barger to

prevail on his ADA claim, he would need to produce evidence demonstrating that First Data's

reasons were a pretext for discrimination. A legitimate, non-discriminatory reason that is not

defeated by pretext will defeat any claim of ADA discrimination. *Heyman v. Queens Vill. Comm.*

*for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999).

At his deposition, Barger conceded that he was not terminated because he has a

disability:

| | |
|---|---|
| Q: (Mr. Eidelman) | Okay. Do you believe that you were terminated because you had cancer? |
| A: (Mr. Barger) | All I know is I did not get to come back to work. That's all I know. |
| Q: | I agree that you didn't come back to work. I'm asking you what you believe. This is your case as a plaintiff, and I want you -- if you stand up in front of a jury, are you going to say, I believe I was terminated because I have cancer, because I had cancer? |
| A: | Not necessarily. Because I have cancer? |
| Q: | Yeah, I'm asking you, did – |
| A: | I don't think it's because I had cancer. |

Defs. 56.1 Stmt. ¶ 159.

Based on this admission, it is evident that Barger's allegations in Count III that he was

terminated in violation of the ADA are unsupported and unsubstantiated conclusory allegations.

Unsupported conclusory claims cannot defeat a motion for summary judgment. *Scotto v.*

*Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

### 4.2    First Data Did Not Fail to Accommodate Barger's Disability

For the failure to accommodate claim, Barger must establish: (1) he has a disability under

the ADA; (2) First Data had knowledge of his disability; (3) he could perform his job with a

reasonable accommodation; and (4) First Data refused to accommodate him. *Kelly v. New York*

*State Office of Mental Health*, 200 F. Supp. 3d 378, 398 (E.D.N.Y. 2016).

Barger ignores the fact that during his employment, First Data accommodated his medical condition. In early 2016, Barger was first diagnosed with throat cancer. Defs. 56.1 Stmt. ¶ 72. He began to undergo a series of radiation treatments which impaired his ability to speak. *Id*. at ¶ 73. During this time period, Barger was accompanying other employees, including Marino and Ording, on a speaking tour called "First Data Way." *Id*. at ¶ 74. Even though it was difficult for Barger to speak, First Data never stopped him from participating in these events. *Id*.

Although it is hard to decipher, Barger appears to allege that First Data failed to accommodate his disability by including him in the RIF, which meant that he was not allowed to return from ADA leave.[11] Barger cannot claim First Data was required to offer him some other form of accommodation in order to allow him to do his job. On January 10, 2017, Barger presented a return to work authorization from his physician indicating he was cleared to return to work "without any restrictions." *Id*. at ¶ 117. The decision to include Barger in the RIF was made before he provided his authorization to return to work. Inasmuch as First Data had terminated his employment for legitimate business reasons, it is not a reasonable accommodation for First Data to have allowed him to return.[12] There is no factual support for Barger's claim that First Data discriminated against him by not accommodating his disability.

### 4.3    There Are No Facts to Support a Claim for Retaliation Under the ADA

A claim for retaliation under the ADA cannot exist without an underlying protected activity. Protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 566 (2d Cir. 2000). It can include filing a charge, testifying, assisting, or participating in an investigation, hearing, or proceeding

---

[11] On January 5, 2017, First Data advised Barger that his FMLA leave had expired but that ADA leave had been requested. Defs. 56.1 Stmt. ¶¶ 112, 114.

[12] Although Barger was notified on January 13, 2017, that his employment was being terminated, he was put back on the payroll effective January 15, 2017, and remained employed through February 28, 2017. *Id.* at ¶¶ 155-56.

about disability discrimination. 42 U.S.C. § 12203. It may take the form of formal or informal complaints. *Hernandez v. Int'l Shoppes*, LLC, 100 F. Supp. 3d 232, 267 (E.D.N.Y. 2015). Complaints cannot be generalized and must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the statute. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011). Protected activities can include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Here, First Data denied Barger's request to return to work because it had previously eliminated his position in the RIF. Asking to return to work is not protected activity under the ADA.[13] Because Barger did not engage in protected activity, he cannot establish a *prima facie* ADA retaliation case. *Governale v. Cold Spring Harbor Cent. Sch. Dist.*, 2017 WL 4357337, at *5 (E.D.N.Y. Sept. 29, 2017) (listing *prima facie* elements of ADA retaliation claim).

Without any evidentiary support, Barger also claims that First Data retaliated against him by eliminating his position because he took leave. There is no support in the record to demonstrate a causal connection between his protected activity (taking ADA leave) and his adverse action (his position being eliminated). To prevail on an ADA retaliation claim, Barger "must show that retaliation was a but-for cause of the adverse action, and not simply a substantial or motivating factor in the employer's decision." *Laface v. E. Suffolk Boces*, 2018 WL 6002395, at *10 (E.D.N.Y. Nov. 15, 2018) (citation and internal quotation marks omitted).

---

[13] This claim is what courts describe as the impermissible "bootstrapping" of a failure to accommodate claim as a retaliation claim. *Pinto v. New York City Admin. for Children's Servs.*, 2018 WL 4333990, at *11 (S.D.N.Y. Sept. 11, 2018). As this court has previously explained, a failure to accommodate claim "cannot be bootstrapped into a viable disability retaliation claim." *Missick v. City of New York*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010); *see also Snowden v. Trustees of Columbia Univ.*, 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014), *aff'd*, 612 F. App'x 7 (2d Cir. 2015) ("[A]ny activity comprising Plaintiff's failure-to-accommodate claim . . . cannot also constitute protected activity such as that required to form the basis of a retaliation claim."). Barger cannot plead an ADA retaliation claim premised on a failure to accommodate because his request was not an ADA accommodation.

23

Put another way, causation only exists if "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (citing *Kwan*, 737 F.3d at 846). It is undisputed that Barger's position was eliminated because of legitimate business reasons and Barger admitted that his termination was not because he had taken leave:

| Q: (Mr. Eidelman) | Do you think it was because you went out on leave that you were included? |
| A: (Mr. Barger) | Say that again. |
| Q: | Okay. You just said that you don't believe it was because you had cancer is the reason why you were terminated. Do you believe you were terminated because you had taken leave? |
| A: | No. Because the leave was requested by Tony. I didn't want to go on leave. |

Defs. 56.1 Stmt. ¶¶ 158-59. For all of the foregoing reasons, there is no dispute of material fact that would support an ADA retaliation claim.

**5.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT THAT BARGER FAILED TO MITIGATE HIS DAMAGES**

Under federal discrimination statutes, the failure by a former employee to mitigate damages is an affirmative defense that an employer can raise if it can prove that "(1) suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005). However, the employer "is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998).

At the time of his termination, Barger was a full-time W-2 employee. It is undisputed that he did not apply for another full-time job following his termination. Defs. 56.1 Stmt. ¶ 168. Instead, he chose to return to consulting, working as an independent contractor. *Id.* at ¶ 169. Because Barger made no efforts to obtain comparable employment, he is not entitled to damages

as a matter of law. *See Tuszynski v. Innovative Servs., Inc.*, 2005 WL 221234, at *6 (W.D.N.Y. Jan. 29, 2005).[14]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant its Motion for Summary Judgment and dismiss Barger's claims in the Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 34) in their entirety.

**SAUL EWING ARNSTEIN & LEHR LLP**
*A Delaware LLP*

*/s/ Gary B. Eidelman*
Gary B. Eidelman, Esq. (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
Gary.Eidelman@saul.com

Gillian A. Cooper, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
Gillian.Cooper@saul.com

New York Office
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

*Attorneys for Defendants,*
*First Data Corporation, Frank Bisignano, Dan*
*Charron, Anthony Marino, Karen Whalen, and*
*Rhonda Johnson*

Dated: January 14, 2019,
            Baltimore, Maryland

---

[14] Alternatively, Barger completely mitigated his damages. In 2012, Barger reported $15,602 from consulting services on his Schedule C federal tax return. Defs. 56.1 Stmt. at ¶ 173, In 2013, Barger he reported $16,210 from consulting services. *Id.* at ¶ 174. In 2017, the year he was terminated, he reported $61,263 from his consulting services. *Id.* at ¶ 175.