# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER, an individual

Plaintiff

v.

FIRST DATA CORPORATION et al.

Defendants.

Case No. EDNY: 1:17-cv-4869-FB-LB

(Assigned to the Honorable Frederic Block)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dated: February 4, 2019

Shawn E. Shearer
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone: (972) 803-4499


David A. Zeitlin
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, NY 11201
Telephone: (710) 522-5644
*david@zeitlinlawfirm.com*

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  STATEMENT OF FACTS ..................................................................................... 3

III.  SUMMARY JUDGMENT STANDARD ................................................................. 6

IV.  ARGUMENT .......................................................................................................... 6

  A.  PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST THE DEFENDANTS VIOLATIONS OF THE FMLA ON INTERFERENCE AND RETAILIATION CLAIMS 6

    1. Defendant's Interfered with Plaintiff's Right to be restored to his position or an equivalent position. ................................................................................................ 8

    2. Defendants RETALIATED against Plaintiff for his EXERCISE of his FMLA Entitlement TO BE RESTORED ............................................................................ 10

    3. The Defendants are "Employers" for Purposes of the FMLA ................................... 12

  B.  PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST FIRST DATA FOR VIOLATING THE AMERICAN'S WITH DISABILITIES ACT. .................................... 13

    1. Forcing Leave Violated the ADA. ........................................................................... 13

    2. Revoking Remote Access Accommodation Violated the ADA ................................. 14

    3. Failure to Restore Violated the ADA and First Data's ADA Policies ........................ 15

  C.  DAMAGES ........................................................................................................... 16

    1. Back-Pay and Front Pay ......................................................................................... 16

    2. Double Damages .................................................................................................... 17

V.  CONCLUSION ...................................................................................................... 19

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**

**RULE 72(a) OBJECTION TO ORDER**

<u>**TABLE OF AUTHORITIES**</u>

Cases

*Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp 2d 668, 673 (W.D. Va. 2001) ...................... 8

*Chandler v. Specialty Tieres of America, Inc.*, 283 F.3d 818, 827 (6th Cir. 2002) ..................... 18

*Dechberry v. NYC Fire Dept.*, 124 F.Supp.3d 131, 147 (EDNY 2015) ...................................... 13

*Diaz v. Fort Wayne Corp.*, 131 F.3d 711, 712 (7th Cir. 1997) ................................................. 8

Emmanuel v. Cushman & Wakefield, Inc., *2015 WL 5036970, at *4 (S.D.N.Y. 2015)* .............. 15

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183-4 (2d Cir. 2006) .......................................... 14

*Graziado v. Culinary Institute of America* 817 F.3d 415, 422 (2d Cir. 2016).......................... 12

*Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999) ........................................ 19

*Hostettler v. College of Wooster*, 895 F.3d 844, 856-7 (6th Cir. 2018) ................................. 14

*Liu v. Amway*, 347 F.3d 1125, 1136 (9th Cir. 2003)............................................................ 8

*Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011) ................................................. 8

*Persky v. Cendant Corporation*, 547 F.Supp2d 152, 156 (D.Conn. 2008).............................. 18

*Reich v. Southern New England Telecomms. Corp*, 121 F.3d 58, 71 (2d Cir. 1997) ................ 18

*Rogers v. City of Troy*, 148 F.3d 52, 56 n.2 (2d Cir 1998) ................................................... 18

*Sharif v. United Airlines*, 841 F.3d 199, 203 (4th Cir. 2016) ................................................ 8

*Smith v. Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008)........................................... 9

*Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 524 (EDNY 2018)  16

*Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 525-6 (EDNY 2018)

...................................................................................................................................... 13

*Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) ............................................... 15

*Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991).............................. 13

*Williams v. New York City Department of Health and Mental Hygene*, 299 F.Supp.418, 425

(SDNY 2018) ................................................................................................................ 15

*Williams v. Shenango*, 986 F.Supp 309, 316-318 (W.D. Pa. 1997)........................................ 8

Statutes

42 U.S.C. §122(b)(5)(A) ..................................................................................................... 14

Regulations

29 C.F.R. §1630.2(o)(2)(ii)................................................................................................. 14

## I.    __PRELIMINARY STATEMENT__

This is case is brought by Plaintiff, Steven B. Barger ("Barger" or "Plaintiff") alleging

interference and retaliation causes of action under the Family and Medical Leave Act, 29 U.S.C.

2601, et seq.("FMLA") against all Defendants,[1] and alleging discrimination and retaliation by

Defendant First Data Corporation ("First Data") in violation of the Americans with Disabilities

Act, 42 U.S.C. 12101 et seq. ("ADA").

This case on its face may cry for a trial: thousands of page of documents, questions about

dates and times, questions about motivations, and questions about the authenticity of documents.

But that initial observation is flawed. This case is simple. First, the Plaintiff, with a cancer

diagnoses, treatment and surgery was forced to take leave, against his will, and the motivation

for forcing leave was his illness. Second, the Defendants cut-off Plaintiff's access to work when

Plaintiff wanted to be working. Third, Defendants accepted Plaintiff's physician's return to work

release and then did not allow him to return to work. The case is that simple. The rest is just dust

being kicked-up by lawyers.

**There are no issues of material fact. The question for the Court is whether it violates**

**federal law for a company, based solely on an employee having cancer and undergoing**

**surgery, to force leave, cut access to systems, and refuse a return to work after the**

**employee provided a physician's clearance for work. The obvious answer is YES, those**

**action by the employer are illegal under the FMLA and ADA.** If the Defendants' action in

this case are not violations of the law, as a society, let's just throw the FMLA and ADA into the

---

[1] The Defendants are comprised of Defendants First Data Corporation ("First Data"), Frank Bisignano ("Bisignano") - CEO of First Data,  Dan Charron ("Charron") - Executive Vice President ("EVP") Global Business Solutions ("GBS") of First Data, Anthony Marino ("Marino") – EVP of Human Resources ("HR") of First Data, Karen Whalen ("Whalen") – former Senior Vice President ("SVP") of HR of First Data, and Rhonda Johnson ("Johnson") – Vice President ("VP") of HR of First Data (together, the "Defendants" and each a "Defendant")

dust bin of history.

This case is unlike most FMLA and ADA cases. In this case, the Plaintiff has a long career, and unblemished employment history. Despite receiving a cancer diagnoses, Plaintiff insisted, and did, continue to work while undergoing radiation treatments and following laryngectomy surgery. The Plaintiff refused to take leave or time-off during his treatments and performed the essential functions of his job. Defendants forced Plaintiff to take FMLA leave against his will, and Defendants revoked Plaintiff's remote access reasonable accommodation he had been using to work following his surgery. The Defendants admit that "work was the Plaintiff's life" and that forcing leave, in their minds, was necessary for the Plaintiff to concentrate on his health. **This is a case where the Plaintiff wanted to continue working and wanted to return to his position as soon as possible, but was denied by Defendants.** The Defendants admitted in their Answer, and the evidence shows, that Defendants directly interfered with, and retaliated against, Plaintiff's exercise of his entitlement to be restored from FMLA leave. The Defendants have admitted, and the evidence shows, that Plaintiff's remote access reasonable accommodation was revoked, Plaintiff placed on short-term disability (66% pay) without any interactive process, and leave as an accommodation not provided, based solely

upon Plaintiff's disability.[2] This Motion[34] must be granted for the following reasons:

- The evidence is overwhelming that Barger was working daily on First Data business from September 6, 2016 (the date of his surgery) through November 19, 2016 (the date of his forced leave).

- No reasonable jury could conclude that Barger started FMLA leave at any time prior to November 19, 2016

- No reasonable jury could conclude that Barger was not on FMLA leave when he delivered his physicians return to work authorization on January 10, 2017.

- The evidence is uncontroverted that Barger's ADA accommodation of remote access was terminated by First Data based solely on concerns for Barger's health (i.e. disability).

- Defendant Marino testified that the reason Barger was terminated because he was exercising his right to return to work.

## II.   <u>STATEMENT OF FACTS</u>

For a complete listing of the material undisputed facts and underlying evidentiary

support, Plaintiff respectfully refers to Court to Plaintiff's Rule 56.1(a) Statement of Undisputed

Material Facts ("PSOF"), with accompanying exhibits, all of which are incorporated by

---

[2] The events over a period of only 56 days (November 19, 2016 through January 13, 2017, a period including the entire holiday season from Thanksgiving to New Year's) are critical to understanding this case. Over this period, Plaintiff was forced to take leave against his will (November 19th), then almost a month later (December 15th) First Data finally designated his FMLA leave to have started retroactively on October 24th (nearly a month prior to him being forced on leave), then just a week later (the last week of December and first week of January) Plaintiff advised First Data he would be returning to work at the end of his designated leave and exercised his right to be restored, Plaintiff obtained and delivered his physician's return to work authorization (January 10th), and then Plaintiff was notified of his termination (January 13th). Defendants now try to claim that on January 5th First Data discovered information that allows them to retroactively "re-designate" Plaintiffs leave as starting all the way back as of September 4, 2016. The Defendants' deception and the Plaintiff's detrimental reliance is palpable from the record.

[3] This Motion is supported by (i) Plaintiff's Local Civil Rule 56.1(a) Statement of Undisputed Facts; (2) the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and the exhibits thereto ("PSOF"); (3) the Declaration of Shawn E. Shearer, Esq. and the exhibits thereto ("Shearer Declaration"); and all of the pleadings in this action. Except as otherwise indicated, references to exhibits are references to the exhibits to the Shearer Declaration.

[4] The Plaintiff previously moved pursuant to Rule 12(c) for Judgment on the Pleadings ("Rule 12(c) Motion) with respect to Defendant's interference with Plaintiff's rights under the FMLA. ECF No. 37, 37-1, 37-2. With respect to the FMLA interference claim, this Motion should be considered also as a motion for reconsideration, and Plaintiff incorporates its motion and reply, ECF No. 37 and 37-2, herein by reference.

reference. All of those facts are not repeated herein.

Plaintiff was continually employed as a Senior Vice President of First Data from June 30, 2014 to February 28, 2017. Barger was diagnosed with throat cancer in February 2016 and underwent radiation treatments from March 2016 through May 2016. Barger Dec ¶32. Barger worked through the entire period of radiation treatments and did not take paid-time-off ("PTO") or request leave of absence of any kind. In August 2016, Plaintiff was informed that the radiation treatments had been ineffective and that laryngectomy surgery was required. PSOF ¶38. Plaintiff's surgery was conducted on September 6, 2016. PSOF ¶38. From September 7, 2016 through November 21, 2016, Plaintiff worked daily on First Data business using technological access (email, texts, conference calls, and voicemails). PSOF ¶38-44. Plaintiff did not request or use any leave of absence or PTO of any form during this period between September 6, 2016 and November 19, 2016. PSOF ¶38-44. First Data's management was aware of all events transpiring, including the date of Plaintiff's surgery, Plaintiff's recovery, and Plaintiff's use of remote access to perform the obligations of his job. PSOF¶38-44.

On November 3, 2016, Defendant Marino, EVP of HR, visited Plaintiff at his home. This was the first time Plaintiff had seen an executive of First Data in person since his surgery. Just two weeks later, on November 19, 2016, Plaintiff was forced by Marino, with the influence and advice of Johnson and Whalen, was forced to "begin" leave of absence and apply for short-term disability benefits, both against his will. PSOF ¶60-75. Outside of the normal leave of absence process used by First Data, on or about November 21, 2016, at the direction of Marino and Johnson, First Data terminated Barger's access to First Data's systems (including, email and videoconferencing capabilities) that Barger had been using to perform his duties from September 6th through November 19th. PSOF ¶111-115

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION** 4

Despite management of First Data having been aware of Barger's medical condition from September 6, 2016 through November 19, 2016, First Data's leave management team began an unnecessary investigation into Barger's medical past. Nothing the Leave Management Team learned was new information, as senior level management was aware of Barger's condition and work for the entire period of time. Nevertheless, despite Barger being forced onto leave based on Marino's observations, and Johnson's and Whalen's influence, it took more than a month for the Leave Management team to issue Barger a leave designation letter on December 15, 2016.[5] First Data, after consulting with Barger's physicians made the determination that Barger's FMLA leave was for the period from October 24, 2016 through January 16, 2017, PSOF ¶302-358, even though Barger had been working October 24th through November 19th.[6] Barger was instructed that prior to returning to work, he was required to obtain a physician's return to work authorization.

Relying upon First Data's leave designation notice of December 15th, Barger scheduled an appointment with his physician for January 10th. On Tuesday, January 10, 2017, Barger obtained his physician's written return to work authorization and delivered that document, the same day, personally by hand-delivery, to Johnson at First Data. First Data (Johnson) accepted that letter and Barger scheduled Tuesday, January 17th (Monday the 16th being the MLK holiday), for his return to work. At 6:00 p.m. on Friday January 13th, Johnson, at the instruction of Charron and Marino called to notify Barger that he was terminated and that he should not

---

[5] Plaintiff's position is that the leave designation letter of December 15, 2016 was flawed and inaccurate. Plaintiff's leave could not have possibly started prior to November 19, 2016 as Plaintiff was working every day prior to that. However, for purposes of this motion for summary judgment, Plaintiff is assuming that on December 15, 2016, First Data designated and approved Barger's FMLA leave for the period of October 24, 2016 through January 16, 2017.
[6] Plaintiff believes that this designation was incorrect and the start date of Plaintiff's leave should have been November 21, 2016 as originally requested, but for purposes of this analysis, the only issue is whether Barger was on FMLA leave when he delivered his return to work authorization on January 10, 2016, so the incorrect designation has no impact on the legal analysis.

come into the First Data offices of January 17th as planned. From January 13th through February 28th, Barger was on non-working status.

## III.   SUMMARY JUDGMENT STANDARD

The Plaintiff does not dispute the legal standards for summary judgment set forth by Defendants in their Motion pursuant to Rule 56 filed contemporaneously herewith. See *Bolden v. Cablevision Sys., Corp.*, 2011 WL 3439532, at *1 (E.D.N.Y. 2011(quoting *McBride v. BIC Consumer Products Mfg. Co., Inc.* 538 F.3d 92, 96 (2d Cir. 2009). In response to this motion, Defendants must set forth specific facts showing that there is no genuine issue for trial in order to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV.   ARGUMENT

### A.   PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST THE DEFENDANTS VIOLATIONS OF THE FMLA ON INTERFERENCE AND RETAILIATION CLAIMS

The FMLA is part of America's collective bargaining agreement.[7] The FMLA is a societal determination of the manner in which we balance work with personal health and family. The FMLA defines obligations on the part of both the employee and the employer. It limits the types of employers subject to its requirements (e.g. 50 employees, 75 miles, etc.), it excludes certain employees (e.g. 12 months tenure, 1,250 hours of work) from coverage. It also establishes hurdles and hoops through which an employee must jump to properly notify and take leave, and it establishes the requirement if an employee of an employer subjet to the act, properly makes it through the hoops, that employees' job is protected and that employee is to be returned to their position or an equivalent position. Once there is an employer and employee subject to the

---

[7] See Exhibit D to ECF No. 37-2 for the history of the bargaining occurred in Congress, some representing the interest of employers and some the interests of employees, and the executive for over decades to reduce these worker's rights to statutory words that became the FMLA. That process should not be discounted. The Statute says what the statute says, and the statutory words were arrived at by a process that must be respected.

act, and an employee has gone through the hoops, the strictures of the FMLA are firm, the employee is <u>entitled</u> to 12-weeks of unpaid leave and <u>entitled</u> to be restored (with the only statutory exception being for key persons, an exception that is not at issue in this case). The only statutory exception is the key man provision in 29 U.S.C. §2614(b), which has never been invoked by the Defendants. Once all of those filters are applied, you are left with the Congressional pronouncement that the Plaintiff was "ENTITLED TO BE RESTORED." Congress spoke clearly. There is nothing that Article II and Article III can do to change the unequivocal language of Article I's passage of 29 U.S.C. §2614.The FMLA is an astounding feat of Congressional action, over decades of work, and one that has now been diluted by excuse after excuse by employers. Our society collectively bargained through our representatives for a contract balancing of work and life, and caring for the disabled in the work place. That collective bargain represented by Congresses' words must be respected. It is not represented by the excuses being offered by First Data (e.g. fake RIFs and costs of returning an employee from leave being a justification for not reinstating the employee) that were the reasons that the workers of America demanded the protection implemented in the form of the FMLA and ADA in the first place. Allowing Defendants' defenses (time travel, recreating dates, and terminating people coming back from leave because you will have to start paying them again) guts the entire meaning of the protections that were the result of decades of fights through Congress on the people's behalf.

       This is a unique case. Here, the Plaintiff did not want to take leave. The Plaintiff wanted to continue to work. The Plaintiff was forced to take leave against his will. When the Plaintiff, after being forced onto leave on November 19th, satisfied the condition of obtaining a physician's return to work authorization on January 10th, he was terminated on January 13th (less than 55 days of leave, not near 12 weeks (84 days))

The FMLA establishes two entitlements for eligible employees with a serious health condition: (i) the entitlement to leave 29 U.S.C. 2612, and (ii) the entitlement to be restored to the employee's position or an equivalent position, 29 U.S.C. 2614(a).[8] The FMLA " 'creates a private right of action to seek both equitable relief and money damages against any employer ...' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Nev. Dept. of Human Res. V. Hibbs*, 538 U.S. 721, 724-25 (2003). The Second Circuit recognizes distinct claims of interference and retaliation under the FMLA." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017); *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 511 (E.D.N.Y. 2018).

1. **Defendant's Interfered with Plaintiff's Right to be restored to his position or an equivalent position.**

*Graziado v. Culinary Institute of America* 817 F.3d 415, 424 (2d Cir. 2016) sets forth the four factors for FMLA interference. (i) "eligible employee", (ii) "employer", (iii) entitled to leave; (iv) notice of intent for leave; and (v) denial of FMLA benefit.[9] See also, *Walls v. Central Contra Costa Transit. Auth.*, 653 F.3d 963 (9th Cir. 2011)(refusal to reinstate interferes with employee's rights under the FMLA).[10] With respect to each of these elements: (i) Defendants

---

[8] The right to leave and the right to restoration are two sides of the same coin. An employee taking unpaid FMLA leave and then being terminated for exercising his right to return has been deprived of both leave and restoration. Unpaid absence from work, without the right to return, is meaningless. The right to restoration is integral to giving meaning to the right to unpaid leave. Allowing the right to return to be watered-down, correspondingly reduces the real-world meaning and efficiency of the right to leave.

[9] The *Gradziado* standards are not directly applicable to this case. Here, we have an employee, and at least one employer both of which agree that the employee took leave. The question is about the employee's right to return after that approved leave. The benefit denied is the right to be restored.

[10] The *McDonnell Douglas* burden-shifting analysis used in FMLA retaliation claims does not apply to claims of interference. *Diaz v. Fort Wayne Corp.*, 131 F.3d 711, 712 (7th Cir. 1997); *Liu v. Amway*, 347 F.3d 1125, 1136 (9th Cir. 2003); *Blankenship v. Buchanan Gen. Hosp.*, 140 F.Supp 2d 668, 673 (W.D. Va. 2001). Claims for FMLA interference are strict liability offenses and the employer's intent or business justifications are irrelevant. *Sharif v. United Airlines*, 841 F.3d 199, 203 (4th Cir. 2016); *Blankenship* at 673; *Williams v. Shenango*, 986 F.Supp 309, 316-318 (W.D. Pa. 1997) (interference with FMLA rights is a strict liability offense); *Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp 988, 996-7 (N.D. Ga 1990) "Legitimate business reason" is not a defense to an interference claim. The employer's intent is irrelevant. *Williams* at 318; *Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011);

admit Plaintiff is an "eligible employee" (as defined in 29 U.S.C. 2611(2)) C&A ¶¶32, 76; PSOF

¶¶131-144 and Plaintiff's cancer diagnoses, surgery, and recovery were all "serious health

conditions as defined in 29 U.S.C. 2611(11) and 29 C.F.R. 825.113-.115 C&A ¶159; FMLA

designation notice, Ex. G to ECF No.1; (ii) First Data was Plaintiff's "employer" for purposes of

29 U.S.C. 2611(4) C&A ¶32, 7; 12(c) Motion pg. 8-9 (as were the individual defendants, see

section IV.A.3. below); (iii) each of the individuals defendants was an "employer" for purposes

of the FMLA, [see Section A.3. below]; (iv) Defendants admit Plaintiff was eligible for leave

and Defendants designated FMLA leave for the period of October 24, 2016 through January 16,

2017 C&A ¶¶1(ii),152,158,159,160; Complaint Ex. G, PSOF ¶86; (iv) employer gave notice of

leave (actually, Defendants admit they forced leave and made Plaintiff's request for him)[11]

PSOF¶81 and (v) Defendants admit Plaintiff exercised his right to restoration by delivery of his

physician's authorization to return to work and that Plaintiff was not restored to his position or

an equivalent position C&A ¶215; PSOF ¶103-105.

 Based on these admitted facts, Plaintiff is entitled to summary judgment for interference

with his FMLA right to restoration. The affirmative duty to restore Plaintiff was triggered when

Plaintiff requested reinstatement and Defendants accepted his physicians' return to work

authorization.[12]

 Once an employee submits a statement from [his] health care provider which

---

*Smith v. Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008).

[11] The Plaintiff also urges this Court to adopt the analysis of the 9th Circuit in *Escribe v.Foster Poultry Farms*, 743, F.3d 1236 (9th Cir, 2014) holding that forcing an employee to take FMLA leave is, in and of its self, a violations of the FMLA by depriving that employee of the ability to use that leave entitlement at the time of the employee's choice, not at the time of the employer's choice. The admitted forcing of Plaintiff to apply for and take FMLA leave was an interference with Plaintiff's FMLA rights.

[12] The Defendants' duty to reinstate was triggered earlier, when Plaintiff requested restoration immediately upon being told he was being forced onto leave. PSOF ¶69-74. The forcing of leave under such circumstances is a separate violation of the ADA and not an engagement in an interactive process for accommodation.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**   9

indicates that [he] may return to work, the employer's duty to reinstate him has been triggered under the FMLA.

*Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005); see also *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013).

Plaintiff reincorporates his arguments regarding "to be" and "restored" as used in the FMLA, and the DOL's implementing regulations from the 12(c) Motion, and Plaintiff's Opposition to Defendant's motion for summary judgment under Rule 56 in this case. Plaintiff first relies upon the position that under *Chevron*, the right of restoration for an employee is absolute, subject to the single exception for the keyman if procedures are properly followed. Congress made no other exceptions (and they thought about the one they did adopt). Anything contrary is unconstitutional under *Chevron*. And Plaintiff relies on 29. C.F.R. 825.214 that provides employee is entitled to reinstatement even if replaced or restructured to accommodate the employee's absence while on leave.

Barger's exercise of his right to return was a motivating factor in his termination. It was solely because Barger exercised his right to return that he was terminated. Defendant Marino testified that it was the expense of reinstating Barger from leave that motivated his termination. Marino testified as follows (PSOF ¶1):

Q: So if he – if he already received his bonus, and you put a zero in there, so it's zero expense right?
A: That was an expense that was incurred in November.
Q: Right. But it was – is has already been paid. I mean that liability has already been satisfied. You offered three weeks of pay and you vest his equity. <u>What savings does First Data achieve from this termination?</u>
A: <u>At this point he is returning.</u>
Q: At this point in time, January 11. Okay? And if he stays out on disability, he's going to go on long-term disability. And if I understand it right, long term disability is paid by MetLife, not First Data.
A: Correct.

## 2. <u>Defendants RETALIATED against Plaintiff for his EXERCISE of his FMLA</u>

## Entitlement TO BE RESTORED

Retaliation claims "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subject to some adverse employment action by the employer." *Woods v. START Treatment & Recovery Centers, Inc*., 864 F.3d 158, 165-166 (2d Cir. 2017). [13] In retaliation claims, a causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . .or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 307, 319 (2d Cir. 2015). [14] In this case, there is both indirect and direct evidence. In terms of temporal proximity, Barger began notifying management of his intent to return in late December 2016 and advised First Data's leave management team on January 5, 2017 that he would be obtaining his physician's return to work authorization on January 10th. PSOF ¶116-125. With full knowledge of that intent to return, and looking at the facts most favorable to Defendants, on January 9th Barger's name was added to a list for potential termination in a RIF.[15] Barger received and delivered his physician's

---

[13] Generally, at the summary judgment stage, retaliation claims brought pursuant to the FMLA are analyzed under the burden-shifting test set forth in *McDonnell Douglas*. *Alexander v. The Bd. of Educ. of City of New York*, 648 Fed.Appx. 118, 121 (2d Cir. 2016).  However, this case is different than cases in which Plaintiffs allege that an employer retaliated for an employee taking leave. In this case, the claim is that the employer retaliated against the employee exercising the right to be restored. The retaliation claim should be treated the same as the interference claim. Pretext is not an issue because there is no non-discriminatory business justification permitted to prohibit an employee that has satisfied the condition for return by providing his physician's release.

[14] "Direct evidence may ... include evidence of discriminatory statements or actions by employees who, while not the ultimate decision makers, have 'enormous influence in the decision-making process.' " *Emmanuel v. Cushman & Wakefield, Inc.*, No. 13-CV-2894, 2015 WL 5036970, at *4 (S.D.N.Y. Aug. 26, 2015). Indirect evidence may include a "showing that the protected activity was closely followed in time by the adverse action." *Colon v. Fashion Inst. of Tech.*, 983 F.Supp.2d 277, 287 (S.D.N.Y. 2013) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ); *see also, e.g.*, *Feingold v. New York*, 366 F.3d 138, 156–157 (2d Cir. 2004) ("[T]he requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." (collecting cases) ); *Nonnenmann v. City of New York*, 02–CV–10131, 2004 WL 1119648, at *22 (S.D.N.Y. May 20, 2004)

[15] Plaintiff's position is that Barger was added to an ongoing restructuring only after Plaintiff raised issues with his termination as cover for an illegal firing. PSOF ¶270-275

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**          11

authorization on January 10th. First Data accepted his return to work authorization that day and scheduled him to return to work on January 17th (Tuesday after the MLK holiday). The temporal proximity of events is obvious. It was only after Barger advised management of his return that he was added to the list for termination. There is substantial direct evidence of retaliation against Barger for exercising his right to return. As set forth above Marino testified that Barger's return was not only a motivating factor in his termination, but THE reason he was terminated. PSOF ¶1.

### 3.   The Defendants are "Employers" for Purposes of the FMLA

First Data admits that it was Barger's employer for purposes of the FMLA. PSOF ¶145-146. Each of the individual defendants was also Barger's "employer" as each acted directly or indirectly in the interest of First Data towards Plaintiff Barger. *Graziado v. Culinary Institute of America* 817 F.3d 415, 422 (2d Cir. 2016). In *Graziado* the Second Circuit applied the "economic reality" test developed in the FLSA context to the FMLA and applied the four factor test.[16] However those four factors are not the only factors to be considered. The "economic reality" test means the Court must determine whether an individual defendant "controlled in whole or in part plaintiff's rights under the FMLA. *Graziado* 817 F.3d at 423. Substantial evidence exists on each of the four factors, and the general touchstone for each of the five individual defendants. PSOF¶¶147-230. As examples of all the evidence set forth in the PSOF¶¶147-230, Defendants Marino and Charron made the decision to terminate Barger, Defendant Johnson assisted Barger in his leave processing and was the liaison between Barger and the leave management team and maintained the records of Barger's employment, Whalen was influenced the hiring of Barger and the restructuring of the sales training group headed by

---

[16] The four factors identified from the FLSA are (1) the power to hire and fire; (2) supervision and control of work schedules or conditions of employment; (3) determination of the rate and method of payment; and (4) maintenance of employment records.

Barger while he was on leave, and Bisignano testified "I am the CEO and accountable for everything."

**B. PLAINTIFF IS ENTITLED TO JUDGMENT AGAINST FIRST DATA FOR VIOLATING THE AMERICAN'S WITH DISABILITIES ACT.**

First Data violated the American's with Disabilities Act in two ways: (i) First Data forced Plaintiff to stop working, begin leave, and begin short-term disability salary replacement at 66 2/3% of pay based solely on the perception Barger's disability; and (ii) First Data, based solely upon Barger's health condition, revoked Barger's remote access reasonable accommodation that he was using from September 6, 2016 through November 19, 2016.[17]

**1. Forcing Leave Violated the ADA.**

The Defendants admit in the Motion, and the evidence is overwhelming, that the decision to force Barger to take leave and apply for short-term disability was based solely upon concerns for Barger's health, not concerns about his job performance. See *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 525-6 (EDNY 2018)(adverse employment action from material changes to terms and conditions of employment. Citing *Dechberry v. NYC Fire Dept.*, 124 F.Supp.3d 131, 147 (EDNY 2015)); *Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991)(An employer takes action because of a disability where he acts based on conduct caused by the disability). There is no evidence that Barger was ever advised of job performance issues. There are no written documents, whatsoever, indicating that Barger was not performing the essential functions of his job from September 6, 2016 through November 19,

---

[17] First Data was a "covered entity" as defined in in 29 U.S.C. §12111(2). PSOF ¶145-146 Plaintiff was an "employee" (as defined in 29 U.S.C. §12111(4)) of First Data. PSOF ¶131-144 Plaintiff was and is a "qualified individual" (as defined in 29 U.S.C. §12111(8)). PSOF ¶131-144 Plaintiff's throat cancer is a "disability" (as defined in 29 U.S.C. §12102(1)) as it impaired "major life activity" (as defined in 29 U.S.C. §12102(2)(A)), including impairing a "major bodily function" (as defined in 29 U.S.C. §12102(2)(B)) -- the normal growth of cells. Plaintiff's condition during and after his recovery from laryngectomy surgery was a "disability" (as defined in 29 U.S.C. §12102(1)).

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION** 13

2016. Barger was working on First Data business that entire period. PSOF ¶45-57

In Marino's November 18, 2016 letter forcing leave and in the text messages between Barger and Marino on November 19, 2016, it is clear that the motivation for forcing leave was to "provide [Barger] with the ability to focus all of [his] time and attention on [his] recovery. Ex.46. There is direct evidence of the motivation for forcing leave. See PSOF ¶300-301. No inferences are required and *McDonnel Douglas* burden shifting is inapplicable.

2. **Revoking Remote Access Accommodation Violated the ADA**

Working and managing employees remotely through technology is a common practice at First Data (i.e. remote access is not an "undue hardship" as it is a common practice by all of First Data's executive management). PSOF ¶58-59. Remote access is a recognized reasonable accommodation under the ADA See *Hostettler v. College of Wooster*, 895 F.3d 844, 856-7 (6th Cir. 2018); 29 C.F.R. §1630.2(o)(2)(ii). It is well established that "discrimination" under the ADA includes a failure to provide a reasonable accommodation. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183-4 (2d Cir. 2006). Management of First Data was aware that Barger was conducting First Data business while recovering in the hospital and from his home. PSOF ¶45-57 Outside of normal procedures, at the direction of Marino and Johnson, First Data terminated Barger's remote access on or about November 21, 2016. PSOF ¶111-115 All of those facts are admitted. Revoking a previously granted reasonable accommodation, combined with forcing an employee onto unpaid or short-term disability reduced pay, based solely on concerns for his cancer surgery recovery, violates the ADA. Prohibited discrimination under the ADA includes "not making reasonable accommodations." 42 U.S.C. §122(b)(5)(A). This is direct proof of a failure to accommodate that does not require the burden shifting analysis of *McDonnel Douglas*. *Hostettler* 895 F.3d at 852. "Direct evidence may ... include evidence of discriminatory

statements or actions by employees who, while not the ultimate decision makers, have 'enormous influence in the decision-making process." *Emmanuel v. Cushman & Wakefield, Inc.*, 2015 WL 5036970, at *4 (S.D.N.Y. 2015). In this case, there is direct evidence of actions taken by Johnson and Marino. No inferences are necessary by a trier of fact to determine that which has been admitted. First Data, outside of its normal course of business, intentionally chose to terminate Barger's remote access accommodation to force him, disabled, to cease working and take lesser pay under First Data's short-term disability benefit. Barger was a qualified individual with a disability[18] and there is no evidence in the record that he was not performing the essential functions of his position with his reasonable accommodation of remote access.

During the text message exchange between Marino and Barger on November 19, 2016, Barger asked Marino whether he could continue working and attend meetings as he had been doing remotely. Without engaging in any interactive process,[19] Marino simply responded with a "no" and informed Barger that he must stop working on First Data business.[20]

### 3. <u>Failure to Restore Violated the ADA and First Data's ADA Policies</u>

If Defendants are successful in the retroactive redesignation of Plaintiff's FMLA leave such that it began on September 6, 2016 rather than on November 18, 2016, Plaintiff's absence from work must be considered leave as a reasonable accommodation under the ADA. <u>See</u> *Smith*

---

[18] The most obvious of Barger's disabilities was his cancer diagnoses, the removal of his voicebox, and his reliance on a voice prosthetic.

[19] The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017).

[20] A two-step process is applied to evaluating a failure to accommodate. The Plaintiff first bears the burden of proving that an accommodation exists that permits him to perform the essential functions of the job and then the question is whether the accommodation is reasonable (where the burden of persuasion lies with the defendant). *Williams v. New York City Department of Health and Mental Hygene*, 299 F.Supp.418, 425 (SDNY 2018). In this case, a reasonable accommodation was reasonable and in place from the date of surgery through the date of forced leave. There is no evidence that the Plaintiff was not performing the essential functions of the job. Evidence is overwhelming that Plainitff was performing the essential functions of his position from surgery through forced leave. PSOF ¶¶45-57.

*v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 524 (EDNY 2018).   First

Data's American's with Disabilities policy recognizes leave as an accommodation. PSOF ¶6, 10.

In addition, First Data's ADA policy provides that upon returning from ADA approved leave, the

employee is entitled to be restored to his position or an equivalent position. PSOF ¶11. Even if

Barger was on ADA leave instead of FMLA leave (a conclusion the Plaintiff disagrees with as

set forth above), Plaintiff was still entitled under First Data's ADA policies to be restored to his

position or an equivalent position upon delivering his physician's return to work authorization to

Johnson on January 10, 2017.

### C. <u>DAMAGES</u>

### 1. <u>Back-Pay and Front Pay</u>

The FMLA and ADA provides damages for back-pay, interest on back-pay, front-pay,

costs and expenses, and the FMLA also provides for liquidated damages equal to twice the

awarded back-pay, front-pay and interest. <u>See</u> 12(c) Motion. Plaintiff's employment was

terminated exactly two years ago. Calculation of back-pay and interest is simple. Barger was

terminated on February 28. Barger's salary was $480,000 per year and he received bonuses of

$174,000 the last two years of his employment. Back-pay is $1,308,000 plus interest (subject to

required doubling; see section IV.D.3 below)

Front-pay is an equitable remedy within the discretion of the Court. *Dominic v. Con. Ed.

Co. of NY*, 822 F.2d 1249, 1256-1257 (2d Cir. 1987). The Court may take judicial notice of the

fact that a 72-year old veteran of Wall Street is more than capable of working to the age of 82 or

longer. Moreover, the Court may take judicial notice of the U.S. Bureau of Labor Statistics data

regarding the significant percentage of the population continuing to work after age 70. *See*

<u>Exhibit</u> B to ECF No. 37-2. The Court also may take notice that financial services positions in

Atlanta paying $654,000 per year, plus equity awards, available to a 72-year old cancer survivor

are rare to non-existent, making mitigation into a comparable or substantially similar position

nearly impossible.

The Defendants' own expert, applying the work-life expectancy table Ex14, used the mean average that of all 72-year olds with a bachelor's degree work an additional 3.3 years. Two of those 3.3 years have passed. Based on 3.3 years (two years of back-pay and 1.3 years of front pay), taking into account mitigation, Defendants' expert calculated damages in the amount of $1.96 million. Ex 132 at p.32.

In reviewing the work-life expectancy table relied upon by Defendants' expert, see Ex14, 10% of those in the work-force age 72 with bachelor's degrees work for 7.5 years. Using the Defendants' experts' model (which Plaintiff believed is flawed for double counting mortality rates, among other issues, but for purposes of summary judgment will be relied upon), the Plaintiff is entitled to judgment for back-pay and front pay for at least 7.5 years from the date of termination in the amount of $4.4 million plus interest (7.5yrs/3.3yrs x $1.95 million) and in the amount of $5.9 million plus interest (10yrs/3.3yrs x $1.95 million).

Plaintiff Barger has already worked, as a consultant, for two years since his termination. Barger accepted the position with First Data with the intention to fully implement his program, which in his experience takes seven to ten years to fully implement throughout an organization. S.Barger Dec ¶20 Based on these facts, and the Court's equitable authority to establish front-pay awards, and the egregiousness of Defendants' conduct, an award of front-pay and back-pay in the amount of approximately $5.9 million, plus interest, fees and expenses is reasonable based on the record and based on Defendants' own expert's modeling.

## 2. **Double Damages**

First Data's leave management team are experts in the FMLA. PSOF ¶126-130.

Plaintiff is therefore entitled to recover damages pursuant to 29 U.S.C. §2617(a)(1)(A)(i) & (ii) (back pay, front pay, lost benefits, and interest on back pay and lost benefits). In addition, Plaintiff is entitled to the doubling of that award pursuant to 29 U.S.C. §2617(a)(1)(A)(iii) plus fees and costs under 29 U.S.C. §2617(a)(3).

In *Persky v. Cendant Corporation*, 547 F.Supp2d 152, 156 (D.Conn. 2008)(emphasis added):

> The FMLA provides that an employer "**shall** be liable" for liquidated damages when it interferes with an employee's substantive rights under the Act. 29 U.S.C. § 2617(a)(1)(A). Under the Act, liquidated damages are an amount equal to the compensation denied or lost to an employee, plus interest, by reason of the employer's violation of the statute. *Id.* 'Doubling of an award is the norm under the FMLA, because a plaintiff is awarded liquidated damages in addition to compensation lost." *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 929 (5th Cir.1999). "The deterrent of double damages found in the FMLA ... prevents employers from gambling on their ability to evade providing coverage, and therefore, acts as insurance that employees will not be denied FMLA benefits.' *Rhoads v. F.D.I.C.,* 956 F.Supp. 1239, 1262 (D.Md.1997), *aff'd in part, rev'd in part on other grounds,* 257 F.3d 373 (4th Cir.2001); *see also Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir.1999) ("[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the [the statute].").

The court may only decline to impose liquidated damages where an employer proves that the act or omission which violated §2615 was in good faith and that it had reasonable grounds for believing that the act or omission was not a violation. 29 U.S.C. §2617(a)(1)(A)(iii). The burden is on the employer to show *both* good faith *and* reasonable grounds for the act or omission. *Chandler v. Specialty Tieres of America, Inc.*, 283 F.3d 818, 827 (6th Cir. 2002). Good faith requires more than ignorance of the prevailing law. *Reich v. Southern New England Telecomms. Corp,* 121 F.3d 58, 71 (2d Cir. 1997) (discussing the similar liquidated damages provision under the FLSA); see also *Persky* 547 F.Supp2d at 157. The employer bears the burden of establishing both subjective good faith and objective reasonableness, and this burden "is a difficult one to meet . . . and double damages are the norm, single damages are the exception." *Reich*, 121 F.3d at 71; see also *Rogers v. City of Troy*, 148 F.3d 52, 56 n.2 (2d Cir 1998)(stating that the good faith exception under the FLSA "has been construed narrowly"); *Persky* 547 F.Supp2d at 156 (discussing that the legislative history of the FMLA reveals Congress intended

the remedial measures of the FMLA to mirror those of the FLSA); *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999) (FLSA liquidated damages are not a penalty, but compensation to the employee for the delay in receiving wages unpaid due to the employer's violation of the statute). See PSOF ¶¶ 126-130; ECF No. 37 pages 21-23.

Based solely upon the Defendants' expert's model, the Defendants' (including the individuals) are liable for damages under the FMLA in the following amounts based upon two years of back-pay and equitable front-pay in the following amounts (plus interest, fees and costs thereon), measured from Barger's termination on February 28, 2017: $3.9 million (3.3 years – 2 years back-pay and 1.3 years front-pay); $8.8 million (7.5 years – 2 years back-pay and 5.5 years front-pay); or $11.8 million (10 years – 2 years back-pay and 8 years front-pay).

Based upon Barger's desire to continue working and Defendants' admission that to Barger "work is my life," 3.3 years is extremely short given that two of those years have already passed and Barger is still working. Barger will be 82 years old on February 28, 2027 (10 years after his termination). There is no evidence to indicate Barger intends to retire during that period, and there are many 82-year old men working today. All of the evidence suggests that Barger will continue working, and even taking into account mitigation as Defendants' expert does, Barger is entitled to judgment in the amount of $11.8 million, plus interest, fees, and costs, based on the evidence in the most favorable light to the Defendants, for violations of the FMLA.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff moves the Court pursuant to Fed. R. Civ. P. 56 for judgment ad that this Court determine, find and rule as a matter of law as follows:

(i)     Defendants First Data, Bisignano, Charron, Marino, Johnson and Whalen interfered with Plaintiffs right to restoration under the FMLA 29 U.S.C. §§2614 and 2615;

(ii)     Defendant First Data discriminated against Plaintiff in violation of the American's with Disabilities Act by forcing Plaintiff to take unwanted leave based on his medical condition and for revoking Plaintiff's reasonable accommodation of remote access;

(iii)    Award damages in the form of back-pay and front-pay in the amount of $5.9 million (10 years) plus interest fees, and costs for violations of the FMLA and ADA

(iv)    Defendants' conduct entitles Plaintiff to doubling of the damages awarded as set forth in (iii) above as provided in 29 U.S.C. §2617(a)(1)(A)(iii) for a total judgment of $11.8 million plus interest, fees and costs; and

(v)     Plaintiff is entitled to $600,000 in punitive damages ($300,000 per violation of the ADA) pursuant to 42 U.S.C. § 12117(a); 42 U.S.C. §1981a(a)(3), for a total of $12.4 million plus interest, expenses and costs.

February 4, 2019

Respectfully Submitted,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

_____/s/ Shawn Shearer_____
SHAWN SHEARER
*shawn@shearerlaw.pro*

ZEITLIN & ZEITLIN, P.C.

_____/s/ David Zeitlin_____
DAVID ZEITLIN
*david@zeitlinlawfirm.com*

Attorneys for Plaintiff
Steven B. Barger

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**          20