# EXHIBIT B
# KELLY DECLARATION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER, an individual

Plaintiff

v.

FIRST DATA CORPORATION et al.

Defendants.

Case No. 1:17-cv-4869-FB-LB

## DECLARATION OF JULIE KELLY
## IN SUPPORT OF PLAINTIFF STEVE BARGER'S
## RULE 56 CROSS-MOTION FOR SUMMARY JUDGMENT

I, Julie Kelly, hereby declare and certify as follows:

1. My name is Julie Kelly. I am 41years of age and I am competent to provide this written sworn testimony under oath.

2. This Declaration is based on my personal knowledge.

3. I am a citizen of the State of Ohio residing in Cincinnati.

4. From 1998 through November 30, 2017, I was employed by First Data Corporation ("First Data"), and several of its subsidiaries and affiliates. Over these nearly 20 years, I held several positions, primarily in the field of employee training and development. The last four positions I held were: Instructional Design & Development Manager – Sales Training (2005-2011); Learning Solutions Manager – Global Talent Management (2011-2013); Instructional Design & Development Leader – Sales Transformation (2013-2017); and Director, Organizational Development – Talent Management (Feb. 2017 – Nov. 2017).

5. From September 2013 through November 2017, my direct supervisors at First Data were the following: Bryan Fricke, VP Sales Training/Transformation (September 2013 to

**Declaration of Julie Kelly**  1

approximately August 2014); Plaintiff Steven Barger SVP Sales Transformation (approximately August 2014 to November 2016), and Robin Ording VP Human Resources and Training (November 2016 to November 2017).

6. Plaintiff Barger began working as a consultant to First Data in early 2014. Mr. Barger worked with my sales training group, as well as other areas of the company, during his period of consulting.

7. The entire time Mr. Barger was consulting for First Data, my direct supervisor was Bryan Fricke, and Mr. Fricke reported to Joe Plumeri, Vice Chairman of First Data.

8. Mr. Barger was hired as a full-time employee of First Data in late June 2014 and continued working on his same company-wide projects that he had previously been performing as a consultant. Immediately after Mr. Barger's hiring, I continued to report to Bryan Fricke as the head of the sales training group.

9. In approximately August 2014, Bryan Fricke abruptly, and unexpectedly to me, resigned from his position and employment with First Data.

10. After Mr. Fricke's resignation, Plaintiff Barger advised me that he would be my new direct supervisor, that he would head the sales training group, and that he was taking on Mr. Fricke's sales training group in addition to continuing to perform his other duties promoting cultural change across all areas of the company.

11. In approximately February 2016, Plaintiff Barger announced to me and his other direct reports that he had been diagnosed with throat cancer and that he would be undergoing a series of radiation treatments but that he was going to continue to work through the process.

12. During Plaintiff Barger's radiation treatments, I did not notice any change in his management of me and the sales training team. During this period, I observed Plaintiff Barger

**Declaration of Julie Kelly** 2

continuing to perform his duties and he continued normal communications and management in the same manner and with the same consistency and pattern as he had done over the prior year and a half since taking leadership of the sales training group. During Plaintiff Barger's radiation treatment period, I never noticed or felt Plaintiff Barger was absent from work, and he was always promptly responsive to my communications as his subordinate employee, and Plaintiff Barger's involvement in the sales training group business, planning, and execution, was unchanged during his radiation treatments.

13. In late August 2016, Plaintiff Barger announced to me and his other direct reports, and members of the sales training team, that the radiation treatments had been unsuccessful and that he would be undergoing surgery to remove his voicebox. He directed me and the team to continue about our business as normal and to keep him included in all communications as before.

14. Mr. Barger had surgery in early September 2016 and I conducted myself as directed. I continued to copy Mr. Barger on e-mails and he was included in, and participated in, meetings remotely from the hospital and from his home when he returned from surgery.

15. From my observation of Plaintiff Barger's communications and involvement in the sales training group's work after his surgery, Plaintiff Barger was working on First Data business daily while he was recovering in Tampa and after he returned to his home in Atlanta.

16. Overall, while Plaintiff Barger was undergoing treatment and surgery for his illness, he continuously provided the leadership and support that I expected him to have within his position, as he was still covering for the position vacated by Bryan Fricke, as well as his performance and leadership in the transformation of the entire First Data sales teams and management. Plaintiff Barger was always responding to e-mails, following-up or reaching-out to leaders in the business, and he asked about and kept up to date on all the projects under his

management in which I was involved. My team was responsible for building the project training system and Mr. Barger completed and reviewed the customized reports for tracking and communicating regarding project status and actions on a weekly basis.

17. During the entire period Plaintiff Barger was employed by First Data, I worked remotely from my home in Cincinnati. Because I was accustomed to working remotely, I saw no difference in my communications with Mr. Barger (other than his limitations on speech for a few months after surgery, which he compensated for by writing, texting emailing, IMing) whether he was in the Atlanta office, New York office, his hospital room, or recovering at his home.

18. After Plaintiff Barger's surgery and while he was recovering, I made the decision to use our "Adobe Connect", virtual, interactive platform to accommodate his speech limitations and his confines while recovering. From my experience with First Data's remote training platforms, and knowing Plaintiff Barger's circumstances, I was able to build-out a virtual meeting space that would allow Mr. Barger to interact with his team in real time. I built this platform using Plaintiff Barger's conference call details, that were handled by his administrative assistance. Plaintiff Barger was able to sign-in to the virtual meeting room via a custom URL (a click) and the virtual room would 'call him'. Once in the virtual room, there were 'pods' in the actual room that enabled real time collaboration and communication with Plaintiff Barger, including video, chat, notes, file uploads/downloads, screen sharing, and audio. This resource was not new, it was First Data's platform used for virtual training classes for employees spanning the globe. Plaintiff Barger was familiar with this training tool and system, as was everyone else on the team. When Mr. Barger returned to his home in Atlanta to complete his recovery, I directed a member of my staff in Atlanta, Mr. Matthew McDonald, to go to Mr. Barger's home to get him started and set-up for use of the system and answer any questions he

**Declaration of Julie Kelly** 4

may have had. Mr. Barger participated fully in meetings through this system, typing notes for questions, and had full access and was able to upload documents. Mr. Barger continued to use this system to work daily until his access to First Data's systems was terminated in the middle of November 2016 when he was forced to take leave.

19. In mid-November 2016, I was advised by Ms. Robin Ording and Mr. Tony Marino that Plaintiff Barger was taking leave to recover from his surgery, and that Ms. Ording would be taking responsibility for leadership of the sales training team on an interim basis until Mr. Barger could return.

20. Around the Christmas and New Year holidays at the end of 2016, Plaintiff Barger advised me that he would be returning to work in mid-January 2017.

21. During the week of January 16, 2017, by conference call, Ms. Ording and Mr. Marino advised the sales training team that Plaintiff Barger was not going to be returning to work and that Ms. Ording was assuming permanent responsibility for management of the sales training team. They did not announce on that conference call who was taking over Plaintiff Barger's other responsibilities within the company. During this conference call, Mr. Marino stated that Mr. Barger was "retiring" as the reason for him not returning as Mr. Barger had told his team he would.

22. I have observed several mass terminations during my nearly 20-year tenure at First Data. During the announcement of these types of terminations, which occurred several times a year over my last three years of employment, First Data has used terms such as "company-wide reduction" or "position elimination" to describe the reasons for employees being terminated. During conference call announcing to the sales training team that Mr. Barger was not returning to work, Mr. Marino did not state that Mr. Barger was terminated as part of a company-

**Declaration of Julie Kelly**                                                                                     5

wide reduction and he did not state Mr. Barger's position had been eliminated. Mr. Marino stated Mr. Barger was "retiring."

I declare under 28 U.S.C. §1746 and penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on February 4, 2019

_____
Julie Kelly