# EXHIBIT C
# GRANT BARGER DECLARATION

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | Case No. 1:17-cv-4869-FB-LB |

**DECLARATION OF GRANT BARGER
IN SUPPORT OF PLAINTIFF STEVE BARGER'S
<u>RULE 56 MOTION FOR SUMMARY JUDGMENT</u>**

I, Grant Barger, hereby declare and certify as follows:

1.  My name is Grant Barger. I am 50 years of age and I am competent to provide this written sworn testimony under oath.

2.  This Declaration is based on my personal knowledge.

3.  I am a citizen of the State of Alabama residing in Birmingham.

4.  I am the biological son of the Plaintiff Steve Barger.

**PLAINTIFF'S SURGERY, RECOVERY & WORK (SEPTEMBER 7, 2016 – OCTOBER 14, 2018)**

5.  In February 2016, Plaintiff was diagnosed with cancer on his larynx (throat cancer). Plaintiff underwent radiation treatments from March to May 2016.

6.  In August 2016, Plaintiff was scheduled for laryngectomy surgery (removal of his voicebox) to be conducted at the Moffit Cancer Center in Tampa, Florida.

7.  On or about September 4, 2016, I traveled to Tampa, Florida to be with the Plaintiff and his wife, my mother, during Plaintiff's surgery and recovery. My mother and I

**Declaration of Grant Barger**                                                                                                         1

checked into a hotel nearby the hospital and Plaintiff was admitted to the hospital for pre-surgery procedures on September 5, 2016.

8. Plaintiff's surgery occurred as scheduled on September 6, 2016 in Tampa. I was present with Plaintiff in his recovery room as soon as family was permitted to enter.

9. On September 7, 2016, while in his hospital bed beginning his recovery from surgery the day before, Plaintiff requested his iPhone and laptop, and I observed Plaintiff log into the First Data system and he was then reviewing and sending e-mails related to First Data business.

10. I observed the Plaintiff for approximately 4 to 12 hours every day in Tampa, Florida between September 4, 2016 and October 14, 2016 as he was recovering in the hospital and in a nearby hotel.

11. I observed Plaintiff worked on First Data business every single day (excluding the date of his surgery, and a follow-up surgery).

12. First Data sent overnight packages to the hospital and the nearby hotel while he was recovering. I often accepted these packages on his behalf and brought them to him. My recollection is that the first such package was received on or about September 9 or 10, 2016 and First Data continued to send overnight packages containing business related materials.

13. On or about October 5, 2016, Plaintiff dropped his iPhone from his hospital bed and it broke. Plaintiff demanded that I immediately leave and purchase him a new iPhone so that he could attend a First Data teleconference that afternoon. I purchased the iPhone and directed and Plaintiff attended his First Data teleconference as scheduled.

14. Plaintiff's initial several weeks of recovery were difficult due to complications with surgical wound healing and difficulties in transitioning from his inpatient room where

**Declaration of Grant Barger** 2

wound packing and cleaning was performed by hospital staff to the hotel where my mother had to clean and pack his surgical wounds when a nurse that visited from the hospital daily and I were not there.

15. Plaintiff developed what the doctors called a fistula, which is a lack of healing of the wounds, and Plaintiff was re-admitted to the hospital for a second surgical procedure to attempt to close what was an open wound from the initial surgery. As with his first surgical procedure, after this second procedure and as soon as he was alert after the anesthesia wore-off, Plaintiff began to work on First Data business, review and send e-mails.

16. While in the hospital, one of Plaintiff's direct reports arranged for the use of the program Adobe Connect so that Plaintiff could attend First Data meetings by video conference from the hospital and hotel and he could communicate his questions and comments to the meeting through text entry that could be viewed by the others in the meeting. I assisted Plaintiff to install the necessary software on his laptop and observed the Plaintiff attend numerous meetings using this method while he recovered in Tampa.

17. On or about October 12, 13 or 14, 2016, my mother and I took Plaintiff for an examination by his physician at the hospital in Tampa. At the end of this examination, the Plaintiff, my mother and I did not know whether the surgery had successfully removed all of the cancer from Plaintiff's throat, and then the physician gave permission for us to take Plaintiff from Tampa to Plaintiff's home in Atlanta. I followed Plaintiff as he was taken by wheel chair to the door of the hospital and I picked him up to carry him and put him into the car to drive him home. As we were loading the car a **[nurse]** came **[running]** to the door and she told Plaintiff and me something along the lines of "the test results came-in and they got all of the cancer."

18. I spent 6 ½ weeks in Tampa with Plaintiff throughout his surgery and recovery.

**Declaration of Grant Barger** 3

Up until we were loading the car to leave, we had received no news as to whether the surgery had been successful in removing the cancerous cells. Plaintiff worked everyday on First Data business from surgery to being cleared to go home.

19. After we arrived at Plaintiff's home in Atlanta at the end of the drive from Tampa, I set up an office in his bedroom with all his technological needs to work.

20. I stayed in Atlanta with Plaintiff for approximately two days and observed him on a daily basis during that period. Plaintiff worked on First Data business every day I observed him at his home.

**PLAINTIFF'S PRE-FIRST DATA CONSULTING WORK**

21. I formed an entity, The Barger Group, LLC, an Alabama limited liability company (the "Barger Group"), in 2010. The Barger Group elected to be treated as an S-corporation for income tax purposes. I have always been the sole owner and sole member of The Barger Group. I am the custodian of records for The Barger Group.

22. The Barger Group's primary business was providing consulting services to financial services companies, brokerage professionals, and wealth managers.

23. Plaintiff was engaged by The Barger Group as an independent contractor.

24. The Barger Group entered into consulting arrangements with its clients. Plaintiff was contracted by The Barger Group to fulfill the consulting terms of these arrangements. All client payments for Plaintiff's consulting work under contract with The Barger Group were paid to The Barger Group.

25. During 2012 and 2013, The Barger Group's revenue, derived from Plaintiff's consulting work as a contractor, averaged between $20,000 and $30,000 per month.

26. In independent contractor arrangement between the Plaintiff (my father) and The

**Declaration of Grant Barger** 4

Barger Group (owned by me) resulted in little being paid to Plaintiff as fees for his contractor services. The revenue generated was taxable to me as the sole owner of the LLC. The Barger Group reported Plaintiff's income from The Barger Group on Form 1099.

27. In December 2013 or January 2014, Plaintiff was approached by Joseph Plumeri, Vice-Chairman of the Board of First Data Corporation, asking if Plaintiff would provide consulting services to First Data.

28. I am aware that Plaintiff has known Mr. Plumeri since 1983 when I was a freshman in high school in West Des Moines, Iowa. Mr. Plumeri recruited Plaintiff to work with him at several companies throughout the 1980's and 1990's. Plaintiff accepted those positions.

29. In May of 1985, I moved with Plaintiff, my mother, and my younger brother to Ridgewood, New Jersey.

30. Plaintiff worked with Joe Plumeri until approximately 2001 when Mr. Plumeri moved to London as head of the Willis and my father could not go with him.

31. Mr. Plumeri and Plaintiff remain good friends through today. I have met and golfed with Mr. Plumeri, even in his and our family homes numerous times.

32. My impression from all my time and experience with Mr. Plumeri over the last 30 years is that Mr. Plumeri is a savvy, skilled, and very effective Wall Street senior executive with experience at the highest levels of some of the largest financial institutions in the world.

33. Mr. Plumeri, on page 116 of his best-selling book "The Power of Being Yourself: A Game Plan for Success By Putting Passion Into Your Life and Work" credits Plaintiff with the development of the concept of the "value gap", and on page 202 of that same book Mr. Plumeri includes the Plaintiff in his acknowledgements section. Copies of these two pages, along with the cover page and copyright page, in Mr. Plumeri's book are set forth in <u>Exhibit</u> A. I have

highlighted the Plaintiff's name on the pages by adding a box around it.

34. In January 2014, Plaintiff decided to accept the consulting work with First Data and began working with Mr. Plumeri and his staff as an independent contractor consulting for The Barger Group.

35. Because of the amount of time that Plaintiff would need to be working on First Data's consulting work, The Barger Group was forced to downsize the number of other clients it could serve.

36. Plaintiff, as The Barger Group's independent contractor, provided First Data consulting services from January 2014 to April 2014 without a written agreement, but with an oral agreement as to the $30,000 per month rate, travel reimbursement and client termination costs.

37. Plaintiff's consulting work for First Data on behalf of The Barger Group involved transforming the sales culture at First Data. Plaintiff and Mr. Plumeri had worked together on such transformation before and the programs they had used in the financial industry was modified to First Data's business.  In particular, the program would be used to transform the sales force to sell First Data's new product – the powerful data collection and distribution payment system, known as "Clover" or small merchant business analytics tool. First Data is able to capture consumer and merchant data through is processing service, then aggregate this data, and then sell the data as value added services. The initial steps of the project was to be implemented to begin the process of converting First Data's sales force from simply selling credit and debit card processing and equipment to merchants to consultants with the ability to bring value to the merchant's business by knowing their business and selling the data First Data had collected from consumers and merchants to other merchants and to provide business advice

**Declaration of Grant Barger**                                                                                                                        6

based on that data and product.

38. During the entire period between January 2014 to June 2014, Plaintiff resided in Birmingham, Alabama and traveled on First Data consulting business to Atlanta, New York, and anywhere else he was asked to go on nearly a weekly basis.

39. On April 15, 2014, First Data issued The Barger Group LLC a purchase order ("Purchase Order") for First Data's purchase of $400,000 in consulting services. The First Data contact on the Purchase Order was Laura Diaz, a human resources administrative assistant who worked directly Defendant Whalen, both located in First Data's office in Melville, New York at the time the Purchase Order was issued.

40. In June 2014, the Plaintiff advised The Barger Group that he had accepted an offer of employment as a Senior Vice President of First Data at a monthly salary of $40,000 per month to continue the cultural transformation process throughout the company that had just begun with The Barger Group's initial work on the sales force and the Clover product.

41. Plaintiff began his employment with First Data on June 30, 2014 and has not worked as an employee of The Barger Group or as an independent contractor for The Barger Group at any time since.

42. The departure of Plaintiff as an independent contractor for The Barger Group did substantial damage to The Barger Group's client base, revenues, business results.

43. The Barger Group has been a non-operating entity since 2015.

I declare under 28 U.S.C. §1746 and penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on February 4, 2019

_____
Grant Barger