**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN B. BARGER, an individual | **Case No. 1:17-cv-4869-FB-LB** |
| Plaintiff | **(Assigned to the Honorable Frederic Block)** |
| v. | |
| FIRST DATA CORPORATION et al. | |
| Defendants. | |

<u>**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Shawn E. Shearer
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone: (972) 803-4499


David A. Zeitlin
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, NY 11201
Telephone: (710) 522-5644
*david@zeitlinlawfirm.com*

## TABLE OF CONTENTS

## Contents

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    STATEMENTS OF FACTS & LEGAL STANDARD ................................ 2

III.   ARGUMENT ......................................................................................... 3

  A.  FMLA INTERFERENCE ................................................................... 3

    1. Defendants' Motion on FMLA Interference is Factually Incorrect ........................... 3

    a. The OVERHWELMING evidence shows Barger was working diligently from September 6, 2016 to November 21, 2016. ...................... 4

    b. Barger's Leave Could Not Have Commenced Until He Requested Leave. ................ 6

    c. Voycheske had No Idea of the Facts, and Never Has ..................... 6

    2. Defendants' Motion on FMLA Interference is Legally Incorrect ............................. 7

    3. The "RIF" is not a defense to FMLA interference or retaliation. ................................ 9

    4. Forced Leave is Interference ........................................................... 14

  B.  FMLA RETALIATION ...................................................................... 14

  C.  EACH OF THE INDIVIDUAL DEFENDATS IS AN "EMPLOYER" FOR FMLA PURPOSES .................................................................. 15

    1. Legal Standard for Employer .......................................................... 15

    2. Bisignano, Charron Marino, Johnson and Whalen are "Employers" ...................... 17

  D.  BARGER'S FORCED LEAVE AND TERMINATION VIOLATED THE ADA AND FIRST DATA'S ADA POLICIES ................................... 18

    1. Forcing Leave Violated the ADA. ................................................... 18

    2. Revoking Remote Access Accommodation Violated the ADA ................ 19

    3. Failure to Restore Violated the ADA .............................................. 20

  E.  PLAINTIFF MITIGATED .................................................................. 21

IV.   CONCLUSION ..................................................................................... 22

## EXHIBITS

    A. <u>Declaration of Steven Barger dated February 4, 2019</u>
    B. <u>Declaration of Grant Barger, dated February 4, 2019</u>
    C. <u>Declaration of Julie Kelly, dated February 4, 2019</u>

**D.  <u>Declaration of Shawn Shearer, dated February 4, 2019 with Exhibits.</u>**

MEMORANDUM IN SUPPORT OF PLAINTIFF'S

RULE 72(a) OBJECTION TO ORDER

<u>TABLE OF AUTHORITIES</u>

Cases

*Broadnax v. City of New Haven*, 415 F.3d 265, 269-70 (2d Cir 2005) ........................................ 21
*Brooks v. Prospect of Orlando*, 2017 WL 6319552 (MD Fl 2017) ........................................... 13
*Brooks v. Woodline Motor Freight, Inc.* 852 F.2d 1061, 1065 (8th Cir. 1988) ........................... 21
*Carden v. Westinhouse Elec. Corp.* 850 F.2d 996, 1005 (3rd Cir. 1988) .................................. 21
*Cardova v. State of N.M.*, 2017 WL 4480748 (D.NM 2017) ..................................................... 16
*Coutard v. Municipal Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017) ........................................ 8
*Dailey v. Societe Generale*, 108 F.3d 451, 456-7 (2d Cir. 1997) ............................................. 21
*Dechberry v. NYC Fire Dept.*, 124 F.Supp.3d 131, 147 (EDNY 2015) ...................................... 18
*Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554-55, 557 (6th Cir. 2009) .................. 9
*Edelman v. Source Healthcare* 265, F.Supp 534 (ED Pa, 2017) ............................................. 16
*Emmanuel v. Cushman & Wakefield, Inc.*, 2015 WL 5036970, at *4 (S.D.N.Y. 2015) .............. 19
*Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183-4 (2d Cir. 2006) .......................................... 18
*Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016) .................................. 15
*Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998) ..................................... 21
*Hostettler v. College of Wooster*, 895 F.3d 844, 856-7 (6th Cir. 2018) .................................... 18
*Lupyan v. Corinthian College*, 761 F.3d 314, 320-1 (3rd Cir. 2014) ......................................... 8
*Miles v. Am. Red. Cross*, 2017 WL 5491004 (N.D. Ok. 2017) ............................................... 13
*Noia v. Orthopedic Assoc. of Long Island*, 93 F.Supp.3d 13, 16 (E.D.N.Y. 2015) ..................... 15
*Rengan v. FX Direct Dealer, LLC*, 2017 WL 3382074 at *6 (SDNY 2017) ............................... 8
*Smith v. Great American Restaurants* 969 F.2d 430, 438 (7th Cir. 1992) ................................ 21
*Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 524 (EDNY 2018) 20
*Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 525-6 (EDNY 2018)
........................................................................................................................................ 17
*Smith v. Rowe*, 761 F.2d 360, 366-7(7th Cir. 1985) ............................................................. 21
*Staub v. Proctor Hospital* 131 S.Ct. 1186 (2011) ................................................................ 16
*Stevens v. Rite Aird Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) ............................................... 19
*Syvock v. Milwaukee Boiler Mfg. Co.* 665 F.2d 149, 159 (7th Cir. 1981) ................................ 21
*Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991) ........................... 21
*Wallner v. J.J.B. Hilliard* 590 Fed.Appx. 546, 550 (6th Cir. 2014) ...................................... 8, 9
*Williams v. New York City Department of Health and Mental Hygene*, 299 F.Supp.418, 425
(SDNY 2018) ................................................................................................................. 19

Statutes
29 U.S.C. § 2614 ............................................................................................................... 3
29 U.S.C. §2614(a) ........................................................................................................... 11
29 U.S.C. §2614(a)(3) ................................................................................................... 10, 12
42 U.S.C. §122(b)(5)(A) ..................................................................................................... 19

Rules
Rule 56 ............................................................................................................................. 1
Rule 56.1(a) ....................................................................................................................... 1

Regulations
29 C.F.R. §1630.2(o)(2)(ii) ................................................................................................. 18
29 C.F.R. §825.214 ...................................................................................................... 10, 12
29 C.F.R. §825.216 ...................................................................................................... 10, 12
29 C.F.R. §825.301(d) ........................................................................................................ 8
29 C.F.R. 825.301(d) ......................................................................................................... 6

29. C.F.R. §825.216 .................................................................................................... 11

## I.   **PRELIMINARY STATEMENT**

This case can be summed-up as follows. First Data thought Plaintiff ("Barger") was sick and dying and forced him to take leave and stop working. They gave his job to someone else in the "interim" while he was on leave. Just under eight weeks later, he showed up at work with his doctor's note authorizing him to return to work. First Data accepted that note and said see you next week. At 6:00 pm the business day prior to Barger's scheduled return, after delivering his physician's return to work authorization, he was notified of his termination and told not to come into work the following business day as scheduled. This is exactly the scenario that the Congressional actions through the ADA and FMLA were designed to prohibit and First Data has been making excuses ever since.

The Defendants' Motion for summary judgment, mischaracterizes the case and the record of evidence obtained over 18 months of litigation, and the Motions amounts to 25 pages stated assertions of certitude when the record is overwhelmingly contrary to that represented. This is not a case about a "RIF", whatever that term means, by a company announcing its sale for $22 BILLION. This is not a company in distress. And, this is not a case involving a non-existent time machine that allows us to recreate the days on which events occurred to fit a cute legal theory. This is a case that involves First Data Corporation, acting through its senior executives included as individual defendants, interfering with Plaintiff Barger's entitlement to be restored to his position or an equivalent position under the FMLA, forcing leave on the disabled in violation of the ADA, revoking a reasonable accommodation without any justification other than Barger's disability, violating First Data's ADA policies, collecting unauthorized medical information, and the intentional distortion of facts by counsel. [1]

---

[1] Simultaneously with the filing of this Opposition to Defendants' Motion for Summary Judgment, the Plaintiff is filing his own Motion for Summary Judgment pursuant to Rule 56 ("Plaintiff's SJ Motion") and a supporting Rule

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION**   1

Defendants' motion for summary judgment must be denied for the following reasons:

- The evidence is overwhelming that Barger was working daily on First Data business from September 6, 2016 (the date of his surgery) through November 19, 2016 (the date of his forced leave).

- No reasonable jury could conclude that Barger started FMLA leave at any time prior to November 19, 2016

- No reasonable jury could conclude that Barger was not on FMLA leave when he delivered his physicians return to work authorization on January 10, 2017.

- The evidence is uncontroverted that Barger's ADA accommodation of remote access was terminated by First Data based solely on concerns for Barger's health (i.e. disability).

- Defendant Marino testified that the reason Barger was terminated was because he was exercising his right to return to work.

- The evidence is overwhelming that the term "RIF" is a façade, a cover for the ability to avoid the employment laws. First Data is always "RIFing", firing in mass and using it as an excuse to defend against cases like this, but then rehiring and using these repetitive "RIFs" to manipulate accounting for purposes of executive compensation. There is no RIF. It doesn't exist. And there is no "RIF" defense in the FMLA.

First Data's *modus operendi* is to fire people in mass every quarter, and call it a "RIF" which then creates a perfect cover for making illegal firings. It's arguments like those set forth in the Defendants' Motion that allow the Ferris wheel of mass firings followed by mass hiring to continue, without any need to comply with any of the employee protections enacted by Congress. It is not a defense to violating the FMLA or ADA that you fire lots of people in mass every quarter, quarter after quarter, for years and then sell the company for $22 billion.

## II.   STATEMENTS OF FACTS & LEGAL STANDARD

Plaintiff does not dispute the legal standards for summary judgment set forth in the Motion. For a complete statement of Plaintiff's material facts and underlying evidentiary

---

56.1(a) Statement of Undisputed Facts. The Plaintiff is also filing a Response to Defendants Rule 56.1(a) Statement of Undisputed Facts supporting this Motion. As referred to herein, "PSOF" refers to Plaintiff's Rule 56.1(a) Statement in Support of Plaintiff's Motion for Summary Judgment and "DSOF" refers to Defendants' Rule 56

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION**   2

support, Plaintiff respectfully refers the Court to Plaintiff's Rule 56.1(a) Statement in support of Plaintiff's concurrently filed Motion for Summary Judgment, with accompanying exhibits.

### III.   ARGUMENT

### A.  FMLA INTERFERENCE

The FMLA is not a statute addressing "discrimination." Title VII thinking in the FMLA interference context is misplaced. The FMLA outlines rights of employees and obligations of employers. In a way, the FMLA is a form of society's collectively bargained standards for balancing work with family/self.[2] See ECF No. 37-2 Exhibit D. Some Employers are obligated to grant leave and those employers are obligated to allow employees are entitled to return to their position or an equivalent position following leave. First Data failed to allow the Plaintiff to return to his position or an equivalent position. This case is that simple.

### 1.  Defendants' Motion on FMLA Interference is Factually Incorrect

The FMLA requires an employer to restore an eligible employee to their position or equivalent position at the expiration of approved leave 29 U.S.C. § 2614. The right to be restored is absolute other than for the single statutory exception set forth in 29 U.S.C. § 2614(b).[3] If the sole statutory exception to the entitlement "to be" restored is not satisfied, then the Article I Congressional pronouncement of that entitlement is to be given deference by the Article II

---

[2] In a way, First Data's corporate policy of constant "RIFs" as a ruse to avoid complying with the current employment laws (that is, First Data, a company being purchased for $22 billion, somehow believes that constantly hiring and firing exempts it from complying with the law) is akin to what occurred at the Triangle Shirt Factory. Complete disregard for employees and maintaining practices without any regard or remorse of the implications of those actions. First Data put thousands of families out of work to save $4 million, and then at the same time decided to pay its CEO more than $120 million the very same year. And then comes to this court to claim that its termination decisions do not need to comply with the law because they fire lots of people all at the same time. It is unconscionable.

[3] Plaintiff incorporates herein by reference, all of Plaintiff's arguments and positions set forth in Plaintiff's Motion for Judgment Pursuant to Rule 12(c) and Plaintiff's Reply filed in Support of that Motion.  See ECF No. 37. Nothing that has occurred during discovery or that is mentioned in the Motion is different than what was on the record prior to a determination on that Motion.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION**   3

Executive and the Article III Judiciary. Plaintiff reasserts his argument that any executive or judicial ruling that dilutes the Congressional pronouncement of an eligible employee's entitlement "to be restored" is not subject to deference under *Chevron*. See ECF No. 37.

### a. __The OVERHWELMING evidence shows Barger was working diligently from September 6, 2016 to November 21, 2016.__

Astoundingly, of all things, the Family and Medical Leave Act does not define the term "leave." It has become a term of art without definition. The FMLA does provide for unpaid leave. It seems obvious that work without pay is prohibited by the 13th Amendment. Therefore, the term "leave" as used in the FMLA must mean that an employee is excused from working. On the flip-side, it must be concluded that an employee that is working is not on "leave." First Data's policies confirm this. PSOF ¶ 7

There is no evidence presented by the Defendants that Barger was not working during the period of September 6, 2016 to November 19, 2016. Two statement are presented by Defendants. The first is a statement from his physician in Atlanta that tells the date of Barger's surgery to MetLife in Chicago who then tells Voycheske/First Data in Omaha that the physician in Atlanta said that the forms he has from the surgeon in Tampa say that the date of Barger's surgery in Tampa was on September 6. (Talk about hearsay upon hearsay). Yes, Barger's surgery was on September 6, 2016. That is not the question. When did his leave begin? It certainly could not have begun at a time that he was working remotely. The second is a statement from Barger that says the date of his surgery was on September 6, 2016 and that his last day of work was on September 4. From Ex. 29 it is obvious that Mr. Barger was not intending to convey on January 5, 2017 that he had not worked for First Data during the period between September 6, 2016 and November 19, 2016 when he was forced onto leave. There are more than 780 pages of exhibits to the contrary – Barger was working from September 6, 2016 to November 19, 2016.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION     4**

The question is not when Barger had surgery or when he stopped going into the office. The question is when he started taking "leave, "not when he became subject to a disability. The question is when did Barger stop working on First Data business and his failure to work was excused under approved FMLA leave. That date is November 21st when he was illegally forced to take leave against his will and First Data terminated his reasonable accommodation of remote access.

Under First Data's policies, and more importantly the law, if Barger was working with the accommodation of remote access from September 6, 2016 to November 19, 2016, he was not on leave and he was not eligible for short-term disability benefits. See PSOF ¶13-15 There is overwhelming evidence that Barger was working during the period between his surgery and the time Marino forced him to take leave on November 19, 2016, and First Data cut his access to First Data's systems so that he could stop working. Adjustments made to human resources records in January 2017 does not conclusively prove anything about what really occurred from September to November 2016. Barger was working that entire period. PFOS ¶¶45-57

So as not to burden the Court with the volume of evidence demonstrating Barger's work from September 6, 2016 to November 19, 2016, the Plaintiff has provided only 780 pages of the available thousands of pages from discovery to evidence Barger's work on behalf of First Data. See Exhibit 29 to the Affidavit of Shawn Shearer in Support of Plaintiff's Motion for Summary Judgment. The expanse of Exhibit 29 is enough in itself to overcome the assertion that Barger was not on leave when he requested reinstatement. Barger could not possibly have started his FMLA leave prior to November 19, 2016. On January 10, when he provided his physician's return to work authorization, he was well within his 12 weeks of authorized FMLA leave. PSOF ¶ 103

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION    5**

- When Defendant Marino forced Plaintiff to take leave on November 19, 2016, he indicated in his letter and in his text messages that Barger needed to stop <u>working</u>.

- Defendants admitted in their answer that Barger did not take leave and was not forced to take leave for the period of September 6, 2016 to November 19, 2016.  Complaint ECF No. 1 & Answer ECF No. 19 ("C&A") at ¶118; PSOF ¶¶137

- In First Data's position statement filed with the EEOC, First Data stated Barger refused to take leave and insisted that he would work during his recovery.

### b.  <u>Barger's Leave Could Not Have Commenced until He Requested Leave.</u>

Barger did not use any leave or paid time-off between September 6, 2018 and November 19, 2018. First Data admits that prior to November 19, 2016, Barger did not take leave. Barger's leave, therefore, could not possibly have started prior to when he was forced to request leave. Redesignation of working time to non-working leave is not contemplated by 29 C.F.R. 825.301(d).

### c.  <u>Voycheske had No Idea of the Facts, and Never Has</u>

The Declarations of Ms. Jennifer Voycheske (two of them), and their veracity have already been put at issue.  <u>See</u> ECF No. 14, 75 Summary judgment is not the time to determine veracity issues, those should be left to a jury. On November 23, 2016, Ms. Voycheske did not know Barger and did not even know if he was salaried or commissioned, let alone whether he was a Senior Vice President as he was. <u>P Ex.138</u> Ms. Voycheske had no clue whatsoever whether Barger had been working or not. The physician didn't know if job or his duties and MetLife ever asked him about his job or his work. PSOF ¶303-306, 313-315.She never asked that question. Ms. Voycheske merely relied upon information obtained from MetLife asking Mr. Barger's doctors about when he had surgery.

Having never met Barger, never asked him about whether he was working on company business while recovering, relying on MetLife (who in turn in relying on a physician's office records clerk) to make a determination that Barger was on leave, when his manager Hack and himself had never reported himself on leave, and Johnson, who was aware of his working never reported him on leave, as the sole defense of changing the dates of the start of Barger's leave is beyond. The fact that there are sworn affidavits on the record in this case to such effect submitted by counsel is mind-boggling.

Barger's physician and nurse have testified that they have never spoken with First Data. Both testify that they did not know Barger's job. Both testified that they did not know Barger's job duties. Voycheske has never met Barger, and until November 23, 2016, didn't even know if he was commission r salary. But yet, Defendants want this Court to believe that a decision made by Voycheske on hearsay upon hearsay is definitive that Barger's leave started on September 6, 2016 when the record is full of Barger's work from September 6th through November 19th. Too many pages and words have been spent on this issue already.  Barger was working up to and including November 19, 2016 and had 12-weeks of FMLA available to him on that date. Barger was on FMLA leave when he gave First Data his physician's return to work authorization on January 10. 2016.

2.  **Defendants' Motion on FMLA Interference is Legally Incorrect**

Voycheske could not have mailed the January 5, 2017 (Thursday) letter on that date. Ms. Voycheske's emails and her badge-in/badge-out data have her supposedly working on the letter after the post-office was closed on January 5th. Even assuming the letter was even mailed, it was mailed on Friday January 6th (7th and 8th Saturday and Sunday), and Barger received his mail late in the day. Barger delivered his return to work authorization around noon on Tuesday the 10th,

Even if the Voychekse letter redesignating dates was received by Barger, a fact he denies, it

could not have been received prior to his delivery of his physician's return to work authorization

around noon on January 10th.   Mailbox Rule[4] – Voycheske's claims to have mailed the "re-

designation" letter must be ignored. Barger never received that letter in the mail. Barger Dec ¶58.

Barger denies receipt of that letter. See *Lupyan v. Corinthian College*, 761 F.3d 314, 320-1 (3rd

Cir. 2014)(denial of receipt sufficient to create a material issues of fact).[567]

---

[4] Because the presumption is weak where proof of receipt is attempted solely by circumstantial evidence, we require the affiant to have "personal knowledge" of the procedures in place at the time of the mailing. *Kyhn v. Shinseki,* 716 F.3d 572, 574 (Fed Cir.2013). First Data refused to respond to discovery regarding the procedures used to mail the supposed January 5, 2017 letter revising dates to Barger.

[5] "In this age of computerized communications and handheld devices, it is certainly not expecting too much to require businesses that wish to avoid a material dispute about the receipt of a letter to use some form of mailing that includes verifiable receipt when mailing something as important as a legally mandated notice. The negligible cost and inconvenience of doing so is dwarfed by the practical consequences and potential unfairness of simply relying on business practices in the sender's mailroom." *Lupyan* 761 F.3d at 322

[6] Defendants' rely upon *Rengan v. FX Direct Dealer, LLC*, 2017 WL 3382074 at *6 (SDNY 2017). The court tin that case prefaced redesignation as requiring "appropriate notice to the employee". There is no appropriate notice in this case. Voycheske emailed Barger repeatedly about STD benefits and leave from November 21 to January 5. Then, miraculously, Voycheske goes silent on email and never tells Barger by email that his leave dates have changed. She merely emails Johnson and herself and allegedly sends a snail mail to Barger with his revised leave dates. That story is simply not believable. At worst, a jury should decide the veracity of the story. At best, the court should see through the façade for what it is, an after the fact manufactured story. If Barger's dates of leave were really changed on January 6, 2017 as asserted, First Data should have been able to produce something (an email, a certified letter, anything) proving Barger was advised of those changes on January 6, 2017. There is no evidence. The reason is because the whole story is a fabrication.

[7] Defendants' reliance on 29 C.F.R. §825.300(c)(4) is also misplaced. That regulation provides that if the specific information provided by the employer changes, the employer is required to issue a new notice. All of the named defendants were aware that the Plaintiff had surgery on September 6, 2016. PSOF ¶51. The date of Plaintiff's surgery was not new information. It had been known by First Data since August 2016 and management was aware that Barger had been working from the hospital while recovering. Ms. Voycheske and leave management learning this information in January 2017 is factually irrelevant. First Data knew Barger's surgery was conducted on September 6, 2016. That knowledge was sufficient to trigger a duty to investigate and provide notice in September if First Data wanted to declare time in September as FMLA leave. See *Coutard v. Municipal Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017). It is the employer's responsibility once possessing tht information to decide if the FMLA applies. *Id.* First Data, with that knowledge, never designated any of the time between September 6, 2016 and November 19, 2016 as FMLA leave. Retroactive redesignation under 29 C.F.R. §825.301(d) applies only when an employer learns that an employee had used time off for an FMLA purpose and then notifies the employee that the time off will be considered against the employee's 12-week eligibility. In this case, First Data did not obtain any new information and Barger was working remotely. There is nothing to "redesignate." Barger's response to one email does not override the actual facts. Moreover, the failure to timely notify Barger did harm Barger. Barger's nurse testified that she routinely will issue return to work authorizations for people in Barger's condition (feeding tube and wounds that need to be cared for). PSOF ¶310,316-320, had Barger known his leave was ending as re-designated by Voycheske, he could have obtained a physician's clearance to return to work at that time. The lateness

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION**     8

An employer interferes with an employee's exercise of FMLA rights whenever the employee does not receive the rights that are due under the statute, the intent of the employer is irrelevant to whether an FMLA violation has occurred under the interference theory. *Wallner v. J.J.B. Hilliard* 590 Fed.Appx. 546, 550 (6th Cir. 2014).

First Data is equitably estopped from the redesignation of dates as attempted by Voycheske.  See,  *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554-55, 557 (6th Cir. 2009)(holding a misrepresentation, reasonable reliance, and to the detriment apply to FMLA claims). Barger relied on the December 15, 2016 letter advising him that his leave had been designated from October 24, 2016 to January 16, 2017. In reliance on that letter, Barger planned his physician's appointment for January 10, 2017, went to that appointment, and obtained his physician's return to work authorization. Voycheske and the re-designation attempts to retroactively, on January 5, 2017, apply the start of Barger's leave such that his twelve weeks of leave ended prior to his ever having received his first letter of designation on December 15, 2016. Between December 15, 2016 and January 5, 2017, First Data did not learn any new facts. Barger relied upon First Data's December 15, 2016 designation notice. Yet now, First Data asserts Barger's FMLA leave expired weeks before they issued the letter designated his leave. That can't be. There was no indication from First Data that Barger was being considered on "leave" beginning September 6, 2016. Barger has been harmed by that reliance because had he known his revised leave date, he would have acted differently with his physicians, whom have testified that they would issue a return to work authorization to a patient with a feeding tube or open fistula wounds if asked. PSOF ¶ 320, 323

3. **The "RIF" is not a defense to FMLA interference or retaliation**.

---

of the redesignation by Voycheske, if it actually occurred prejudiced Barger and therefore 29 C.F.R. §825.301(d) is in applicable.

There is no reduction in force defense within the FMLA statute or it's implementing regulations. The Plaintiff reasserts its position set forth in the 12(c) Motion that the right to be restored (subject only to the one statutory exception in 29 U.S.C. §2614(b), is absolute and any regulations or judicially established exceptions to the entitlement "to be" restored constitutionally invalid under *Chevron*.

There also is no "legitimate business reason" defense to FMLA interference or retaliation. In an interference claim, the employer's motivation is irrelevant. *Wallner v. J.J.B. Hilliard* 590 Fed.Appx. 546, 550 (6th Cir. 2014). The legitimate business reason put forth by the Defendants is that by terminating Barger instead of allowing him to return from leave saved First Data the cost and expense of Barger's salary going forward. That cannot possibly be a legitimate business reason justifying violations of the FMLA because that justification could be raised with regard to every single legitimate leave of absence under the FMLA. FMLA leave is unpaid. Every return from FMLA unpaid leave will increase the employer's expense going forward as compared to when the employee was on unpaid leave. The cost of reinstating an employee on unpaid leave back to paid status being used as a "legitimate business reason" for a termination of that employee guts the FMLA of all meaning whatsoever. Yes, an employer's expenses increase when an employee returns from unpaid leave. That is the whole point of the leave being unpaid (no cost to the employer) with the right to return as the consideration for allowing unpaid leave. The FMLA becomes completely worthless if the employer can defend a failure to restore based on the "legitimate business reason" of not wanting to pay the employee that was on leave when he returns.

The Defendants rely on 29 U.S.C. §2614(a)(3) and 29 C.F.R. §825.216 that provide an employee on leave is not entitled to greater benefits than if employed. However, Defendants, and

many courts, have misread the statutory provision. 29 U.S.C. §2614(a)(3) provides that a "restored" employee is not entitled to greater benefits. It is the past tense. In order for the provision to apply the employee must first be "restored" to his or her position or equivalent position, and after the restoration, the employee is not entitled to greater benefits than the employee would have had had the employee not taken leave.

DOL regulation 29 C.F.R. §825.214 provides that an employee on FMLA leave is entitled to be returned to the same position or equivalent position "even if the employee has been replaced or his or her position "restructured" to accommodate the employee's absence." There is plenty of evidence for a jury to consider on the question of whether Barger's position was simply restructured in his absence and that, if so, whether Barger was entitled to return to an equivalent position under the DOL regulation. Defendants admit that Barger's sales training job duties were assumed by Ording on an "interim" basis and then on a permanent basis, and Barger's other job duties were distributed to others within the company. PSOF ¶268-269 At First Data a "RIF" by definition is treated as a "Restructuring" under First Data's accounting policies. PSOF¶240-249.

The Plaintiff reasserts his *Chevron* objection to 29. C.F.R. §825.216 as being inconsistent with the statutory provisions of 29 U.S.C. §2614(a) as set forth in the 12(c) Motion. However, if that regulation is valid, 29. C.F.R. §825.216 places the burden of proof on the employer.

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. <u>An employer must be able to show</u> that an employee would not otherwise have been employed **at the time reinstatement is requested** in order to deny restoration to employment. For example:
>
>> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. <u>An employer would have the burden of</u>

> proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration. Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position. . . .

By text message, Barger requested restoration immediately upon being told he was being forced onto leave. PSOF ¶73. Barger again requested restoration when he delivered his physician's return to work authorization on January 10, 2017. At both of those points in time, Barger had not been notified of his termination and there is evidence that until that notification occurs, no one is actually included in a RIF because the list of those included and excluded is constantly changing. PSOF¶267 It is impossible for the Defendants to meet their burden of proof under §825.216 because Barger did request reinstatement and at that point his job had not been eliminated. Therefore, Barger was entitled to restoration to his position or an equivalent position not slated for lay-off under §825.216.

There is substantial evidence for a jury to consider as to whether or not the RIF is a façade unworthy of consideration as an excuse for illegal terminations. See PSOF ¶¶240-299. First Data is always "RIFing". Nearly every quarter for years and years and constantly backfilling positions with new hires or filling positions with contractors. Even while conducting supposed reductions-in-force, First Data maintains nearly a thousand open job position requisitions. PSOF¶257. Barger inherited the training group as an addition to his other job duties when Bryan Fricke abruptly resigned in 2015. PSOF ¶¶32-34. Even if First Data desired to have Ording assume Mr. Fricke's responsibilities, that does not mean the Barger's original job and position were not still available. The work Barger was performing did not disappear, it was merely assumed by others. This is exactly the type of "restructuring" that is not an excuse for failing to restore under 29 C.F.R. §825.214. Labor expense has continued to increase, and

Bisignano himself admits that these RIFs have not reduced headcount. Constantly firing in mass cannot be permitted to be a legitimate cover for violations of employee protections. Simply firing lots of people at the same time does not give an excuse for failing to restore an employee that has requested to return from FMLA leave. The "RIFs" at First Data simply are used to provide a cover for violating the law and for excuse making like that reflected in the Motion.

This is not a situation akin to a plant closing where all of the jobs at the plant are eliminated and it is clear that the employee's position no longer exists. This is a situation where the work Barger was performing was not eliminated, his work was merely given to other employees to perform. The "RIF" behind which the Defendants hide was a company-wide, world-wide termination event with the individuals to be included hand-picked without any written standards or criteria whatsoever. PSOF ¶¶245-247.

Finally, both 29 U.S.C. §2614(a)(3) and 29 C.F.R. §825.216 seek a comparison of the benefits or position the employee would have had if the employee had not taken leave. We will never know, and we cannot know, how Barger would have been treated in the RIF if he had been at work instead of on leave. Defendants admit in the Motion that the planning of the RIF did not start until after Barger had begun his leave. It is therefore impossible to know how Barger would have been treated in the RIF had he been on the job and possibly consulted in the decision-making process. Had Barger been at work, his position would not have been given to Ording on an "interim" basis. The analysis of the sales training group performed by Ording and Hadler may have instead been performed by Barger and Hadler. We will never be able to know how that analysis may have differed had Barger been involved instead of Ording. We will never be able to know if Hack and Charron would have made the same decisions as to those to include on the list had Barger been at work. All of this is unknowable, and the burden of proof is on the Defendants

to show what would have happened had Barger been at work instead of on leave. They can't

meet that burden, it is impossible.

4. **Forced Leave is Interference**

The forcing of an employee to take leave ripens into a claim for FMLA interference when

leave is not available when needed by the employee. *Miles v. Am. Red. Cross*, 2017 WL 5491004

(N.D. Ok. 2017); *Brooks v. Prospect of Orlando*, 2017 WL 6319552 (MD Fl 2017). In this case,

the Defendants forced Plaintiff, against his will to take FMLA leave on November 19, 2016.

After more than eight weeks, Voycheske, on her own claims to override the nearly thousand

pages of documents demonstrating Barger was working, and declare based on what she heard

from MetLife based on what they heard from Barger's doctors, to recalculate dates so that

Barger's leave had expired before he had provided his return to work authorization. Barger

needed his FMLA leave on January 10, 2016 when he requested reinstatement. The fact that such

leave was not available to him was solely due to him being forced onto FMLA by Marino against

his will and then Voycheske retroactively redesignating his leave start date. Both actions taken

without Barger ever requesting leave of any type prior to being forced to do so. The

redesignation itself constitutes interference with Barger's right to take and return from leave.

**B.  FMLA RETALIATION**

The parties have stipulated that short-term disability is paid by First Data and long-term

disability is paid by MetLife. At the time Barger began notifying management of his intended,

First Data believed that Barger was eligible for long-term disability paid by MetLife (i.e. no

expense other than continuing to pay group insurance premiums, First Data had already paid

Barger his bonus for 2016 early. Barger on long-term disability and bonus already paid meant

that Barger, remaining on leave was absolutely no expense to First Data whatsoever. During his

deposition, Mr. Marino testified as follows:

> Q:  So if he – if he already received his bonus, and you put a zero in there, so it's zero expense right?
> A:  That was an expense that was incurred in November.
> Q:  Right. But it was – is has already been paid. I mean that liability has already been satisfied. You offered three weeks of pay and you vest his equity. <u>What savings does First Data achieve from this termination?</u>
> A:  <u>At this point he is returning.</u>
> Q:  At this point in time, January 11. Okay? And if he stays out on disability, he's going to go on long-term disability. And if I understand it right, long term disability is paid by MetLife, not First Data.
> A: Correct.

It's right there from the mouth of Marino, Executive Vice President of Human Resources, Barger was terminated because he exercised his right to return to work from FMLA leave instead of remaining out on leave collecting long-term disability funded by MetLife, not First Data. That is, by definition, retaliation – Barger was terminated because he exercised his right to be restored under the FMLA and at the very least, Barger's exercise of his right to return was a motivating factor in the decision to terminate him. This evidence alone is enough for a jury to consider the question of whether Barger was terminated as retaliation for exercising his FMLA right to return, and whether that exercise was a motivating factor in the decision to terminate him.

## C.  EACH OF THE INDIVIDUAL DEFENDATS IS AN "EMPLOYER" FOR FMLA PURPOSES

### 1.  <u>Legal Standard for Employer</u>

The Defendants' continually misstate the holding of *Graziado*. The four factors of an FLSA "employer" jurisprudence only guides an interpretation of an "employer" under the FMLA.  The four factors are not the touchstone. Even in the FLSA context they are a non-exclusive overlapping group of indicia of a much broader concept. The Second Circuit in *Graziado* advanced the translation of the FLSA "economic reality" concept to the FMLA:

> In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative

employer "controlled in whole or in part plaintiff's rights under the FMLA"
*Graziado* at 423 (quoting *Noia v. Orthopedic Assoc. of Long Island*, 93 F.Supp.3d
13, 16 (E.D.N.Y. 2015).

*Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016). Forcing the FLSA

concepts regarding matters such as hiring, firing, compensation and personnel files into the

FMLA context may divert from the overriding economic reality of FMLA leave (i.e. control of

personnel files may have little to do with FMLA leave, see 29 C.F.R. §825.500(g) – FMLA

medical records must be kept separate from personnel files). The FLSA factors listed in

*Graziado* should not be applied in a formulaic way, but instead they are only FLSA indicia that

need counterparts in the FMLA context. The Court must examine the overriding issue (controlled

in whole or in part plaintiff's rights under the FMLA). Strictly applying the FLSA employer

factors in the FMLA context will gut the statutory protections of the FMLA by excluding those

with the most direct control over leave (not compensation) from liability imposed by the statute

because FLSA "employers" may not be the same as FMLA "employers".

 In this case, the employer question becomes a bit like the *Murder on the Orient Express* -

everyone one did it, as a group, each with a small part and each as culpable as the others.[8] The

group-wide excuse making can be overcome. Under the economic reality test, designed in part to

avoid this problem, in the FMLA context, an employer has control over or involvement in the

ability to take or return from leave, or an individual that took some part in the alleged violation

of the FMLA while acting in the employers' interest. *Cardova v. State of N.M.*, 2017 WL

4480748 (D.NM 2017). Involvement in the hiring, termination, directing of leave or the return

from leave by Barger constitutes an employer for purposes of the FMLA. *Edelman v. Source*

---

[8] The "cat's paw" theory is applicable to this case as well. Each of the individual defendants motivated or directed the others, in one way or another, regarding the treatment of Barger's employment and leave. See *Staub v. Proctor Hospital* 131 S.Ct. 1186 (2011).

*Healthcare* 265, F.Supp 534 (ED Pa. 2017)

 2. **Bisignano, Charron Marino, Johnson and Whalen are "Employers"**

The Defendants' in the Motion do not contest that Marino and Charron were Barger's employers. They were clearly employers making the decisions to force Plaintiff onto leave and then terminating Plaintiff.  PSOF ¶¶166-239. Both Marino and Charron admit they made the decision to terminate the Plaintiff and directed Johnson to make the call doing so. PSOF ¶166

The evidence is abundant that there is clearly triable issues of fact, if not already certitude, that each of the remaining defendants, Bisignano, Johnson, and Whalen, are "employers" for purposes of the FMLA. PSOF ¶¶166-239. Not to take away from the plethora of evidence on each, in PSOF and supporting exhibits, a few examples from the above paragraphs of the PSOF showing the employer status of Bisignano, Whalen, and Johnson follow: Bisignano claims responsibility for everything that happens at First Data, especially decisions regarding mass firings and executive committee decisions. Ms. Whalen's name appears on nearly every email involving anything to do with decisions regarding Barger's employment and she was there to negotiate the terms and conditions of his consulting agreement and employment, as well as organizing his leave and then exit. Johnson's fingers are so entwined with this entire case that there is no way to extricate her from being an employer.  Johnson influenced Marino to force Barger's leave. Johnson assisted Barger in completing his forms and was liaison (whether effective or not) between Barger and First Data for his FMLA and STD purposes. And, Johnson made the phone call to terminate Barger.

As set forth in the PSOF, there is ample evidence to create a triable issue of fact on each of the named individual defendants. Under the economic reality test, every single one of the named defendants exercised some control over Barger's hiring, leave and termination. In

*Graziado,* the mere ability to influence the decision-maker on leave decisions was found to be sufficient for the Plaintiff to overcome summary judgment. *Graziado* **[Cite]**. In this case, each of the named individual defendants either made or influenced the decision to terminate Barger instead of allowing him to return from leave as he requested.

### D.  BARGER'S FORCED LEAVE, REVOCATION OF REMOTE ACCESS ACCOMODATION,  AND TERMINATION VIOLATED THE ADA AND FIRST DATA'S ADA POLICIES

The Defendants violated the American's with Disabilities Act in two obvious ways: (i) Defendants forced Plaintiff to stop working, begin leave, and begin short-term disability salary replacement at 66 2/3% of pay based solely on the perception Barger's disability; and (ii) Defendants revoked Barger's remote access reasonable accommodation that he was using from September 6, 2016 through November 19, 2016.

### 1.  Forcing Leave Violated the ADA.

The Defendants admit in the Motion, and the evidence is overwhelming, that the decision to force Barger to take leave and apply for short-term disability was based solely upon concerns for Barger's health, not concerns about his job performance. See *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 525-6 (EDNY 2018)(adverse employment action from material changes to terms and conditions of employment. Citing *Dechberry v. NYC Fire Dept.*, 124 F.Supp.3d 131, 147 (EDNY 2015)); *Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991)(An employer takes action because of a disability where he acts based on conduct caused by the disability). There is no evidence that Barger was ever advised of job performance issues. There are no written documents, whatsoever, indicating that Barger was not performing the essential functions of his job from September 6, 2016 through November 19, 2016.

In Marino's November 18, 2016 letter forcing leave and in the text messages between

Barger and Marino on November 19, 2016, it is clear that the motivation for forcing leave was to "provide [Barger] with the ability to focus all of [his] time and attention on [his] recovery. P.Ex.46. There is direct evidence of the motivation for forcing leave. No inferences are required and *McDonnel Douglas* burden shifting is inapplicable.

## 2. **Revoking Remote Access Accommodation Violated the ADA**

Working and managing employees remotely through technology is a common practice at First Data. PSOF ¶58-59. Remote access is a recognized reasonable accommodation under the ADA See *Hostettler v. College of Wooster*, 895 F.3d 844, 856-7 (6th Cir. 2018); 29 C.F.R. §1630.2(o)(2)(ii).  It is well established that "discrimination" under the ADA includes a failure to prove a reasonable accommodation. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183-4 (2d Cir. 2006). Management of First Data was aware that Barger was conducting First Data business while recovering in the hospital and from his home. PSOF ¶51 Outside of normal procedures, at the direction of Marino and Johnson, First Data terminated Barger's remote access on or about November 21, 2016. PSOF ¶¶ 111-115. All of those facts are admitted. Revoking a previously granted reasonable accommodation, combined with forcing an employee onto unpaid or short-term disability reduced pay, violates the ADA. Prohibited discrimination under the ADA includes "not making reasonable accommodations." 42 U.S.C. §122(b)(5)(A). This is direct proof of a failure to accommodate that does not require the burden shifting analysis of *McDonnel Douglas*. *Hostettler* at 852. "Direct evidence may ... include evidence of discriminatory statements or actions by employees who, while not the ultimate decision-makers, have 'enormous influence in the decision-making process." *Emmanuel v. Cushman & Wakefield, Inc.*, 2015 WL 5036970, at *4 (S.D.N.Y. 2015). In this case, there is direct evidence of actions taken by Johnson and Marino. No inferences are necessary by a trier of fact to determine that which

has been admitted, First Data, outside of its normal course of business, intentionally chose to terminate Barger's remote access accommodation to force him, disabled, to cease working and take lesser pay under First Data's short-term disability benefit. Barger was an individual with a disability and there is no evidence in the record that he was not performing the essential functions of his position with his reasonable accommodation of remote access.

During the text message exchange between Marino and Barger on November 19, 2016, Barger asked Marino whether he could continue working and attend meetings as he had been doing remotely. Without engaging in any interactive process,[9] Marino simply responded with a "no" and informed Barger that he must stop working on First Data business.[10]

### 3. **Failure to Restore Violated the ADA**

If Defendants are successful in the retroactive redesignation of Plaintiff's FMLA leave such that it began on September 6, 2016 rather than on November 18, 2016, Plaintiff's absence from work must be considered leave as a reasonable accommodation under the ADA. See *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 524 (EDNY 2018).   First Data's American's with Disabilities policy recognizes leave as an accommodation. In addition, First Data's ADA policy provides that upon returning from ADA approved leave, the employee is entitled to be restored to his position or an equivalent position. Shearer Dec ¶17 Even if Barger was on ADA leave instead of FMLA leave (a conclusion the Plaintiff disagrees with as set forth

---

[9] The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017).

[10] A two-step process is applied to evaluating a failure to accommodate. The Plaintiff first bears the burden of proving that an accommodation exists that permits him to perform the essential functions of the job and then the question is whether the accommodation is reasonable (where the burden of persuasion lies with the defendant). *Williams v. New York City Department of Health and Mental Hygiene*, 299 F.Supp.418, 425 (SDNY 2018). In this case, a reasonable accommodation was reasonable and in place from the date of surgery through the date of forced leave. There is no evidence that the Plaintiff was not performing the essential functions of the job. Evidence is overwhelming that Plaintiff was performing the essential functions of his position from surgery through forced leave. PSOF ¶¶45-57

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 56 MOTION**   20

above), Plaintiff was still entitled under First Data's ADA policies to be restored to his position or an equivalent position upon delivering his physician's return to work authorization to Johnson on January 10, 2017.

### E.  PLAINTIFF MITIGATED

Prior to joining First Data as an employee in June 2014, Barger served as consultant to financial services companies. S.Barger Dec. ¶¶5-8  The revenue generated from Barger's consulting work during 2012 to 2013 was between $25,000 and $30,000 per month. PSOF ¶18. During 2014, First Data paid Barger $30,000 per month for consulting services. Barger was employed by First Data from June 30, 2014 through February 28, 2017. When Barger accepted employment with First Data, he terminated his consulting business.

After being terminated by First Data, Barger worked through his rolodex of contacts attempting to rekindle prior relationships, seeking employment, and seeking consulting opportunities. Restarting a business takes some time. In 2017, Barger generated consulting revenue of $61,000 and in 2018, Barger's consulting revenue was $125,000. Barger Dec ¶70.

The employer bears the burden of proof that Plaintiff failed to discharge his duty of reasonable diligence in attempting to mitigate damages by finding comparable work. *Broadnax v. City of New Haven*, 415 F.3d 265, 269-70 (2d Cir 2005) *Syvock v. Milwaukee Boiler Mfg. Co.* 665 F.2d 149, 159 (7th Cir. 1981).[11] The Second Circuit has stated that with respect to the employee, "[t]his obligation is not onerous and does not require the [plaintiff] be successful." *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998).  The issue of mitigation is a question of fact for the jury. *Dailey v. Societe Generale*, 108 F.3d 451, 456-7 (2d Cir. 1997) *Smith v. Rowe*, 761 F.2d 360, 366-7(7th Cir. 1985). Self-employment can constitute employment

---

[11] The duty to mitigate has limits. "For example, a plaintiff need not go into another line of work, accept a demotion, or take a demeaning position. *Ford Motor Co. v. EEOC*, 458 US 219, 231 (1982).

for mitigating damages, as long as the self-employment was a reasonable alternative to finding comparable employment. *Hawkins* 163 F.3d at 696 ("self-employment, if it is undertaken in good faith and is a reasonable alternative to seeking other comparable employment may be considered permissible mitigation"); *Smith v. Great American Restaurants¸*969 F.2d 430, 438 (7th Cir. 1992); *Carden v. Westinhouse Elec. Corp*. 850 F.2d 996, 1005 (3rd Cir. 1988)("[A] self-employed person is 'employed' for purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment"); *Brooks v. Woodline Motor Freight, Inc.* 852 F.2d 1061, 1065 (8th Cir. 1988) Moreover, the Plaintiff's burden to mitigate damages does not require success, but only an honest, good faith effort. *Id*.

Returning to the consulting business that Barger conducted prior to his hiring by First Data constitutes a reasonable effort to obtain suitable work. A choice to engage in self-employment, especially in circumstances like those of Barger when that was his employment prior to First Data, is sufficient to satisfy Barger's mitigation obligation, or at least a question of fact to be decided by a jury. The burden is therefore on Defendants to demonstrate that suitable work in the Atlanta area where Barger lived existed. There is absolutely no evidence in the record upon which Defendants can rely to meet their burden.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, looking at the evidence in the light most favorable to the Plaintiff (the non-moving party), the Plaintiff has demonstrated that ample evidence exists upon which a reasonable jury could rely in reaching a decision in favor of the Plaintiff on all causes of action set forth in the Complaint (FMLA interference, FMLA retaliation, and discrimination on the basis of disability (revocation of accommodation and refusal to restore following leave) and there is ample evidence that each of the named individual defendants is an "employer" for

purposes of the FMLA. Therefore, Defendants' Motion for Summary Judgment must be denied in all respects.

February 4, 2019,

Respectfully Submitted,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

_____/s/ Shawn Shearer_____
SHAWN SHEARER
*shawn@shearerlaw.pro*

ZEITLIN & ZEITLIN, P.C.

_____/s/ David Zeitlin_____
DAVID ZEITLIN
*david@zeitlinlawfirm.com*

Attorneys for Plaintiff
Steven B. Barger

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, I transmitted the attached Rule 72(a) Objection to Order to the following CM/ECF registrants via e-mail to each of their CM/ECF registered e-mail addresses.

Gary Eidelman
Saul Ewing Arnstein & Lehr
500 E. Pratt Street, Suite 900
Baltimore Maryland 21202-3133

Gillian Cooper
Saul Ewing Arnstein & Lehr
650 College Road East, Suite 400
Princeton, NJ 08540-6603

Lindsey Kennedy
Saul Ewing Arnstein & Lehr
One PPG Place, Suite 3010
Pittsburgh, PA 15222

*Attorneys for Defendants*

_____
Shawn Shearer (*Pro Hac Vice*)
3839 McKinney Avenue, Suite 155-254
Dallas, TX 75204
Tele: (972) 803-4499
*shawn@shearerlaw.pro*