# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER,

        Plaintiff,

v.

FIRST DATA CORPORATION, *et al.*,

        Defendants.

Civil Case No. 1:17-cv-04869-FB-LB

---

## DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAUL EWING ARNSTEIN & LEHR LLP**
*A Delaware LLP*
Gary B. Eidelman, Esq. (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
Gary.Eidelman@saul.com

Gillian A. Cooper, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
Gillian.Cooper@saul.com

New York Office
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

*Attorneys for Defendants First Data Corporation, Frank Bisignano, Dan Charron, Anthony Marino, Karen Whalen, and Rhonda Johnson*

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

1.   There Are No Disputed *Material* Facts ............................................1

2.   The FMLA Is Not a Strict Liability Statute ......................................2

3.   Barger's Speculation, Innuendo, and Unsupported Arguments Do Not Establish a Dispute of Fact To Defeat Summary Judgment...........................4

4.   Barger Was Not on FMLA Leave When He Submitted His Authorization To Return To Work.....................................................8

5.   Forcing an Employee To Take FMLA Leave Is Lawful and Barger's Argument To the Contrary Is Unsupported by Any Case Law In This Jurisdiction ....................10

6.   Barger Was Not Forced To Work From Home ................................12

7.   Defendants Did Not Retaliate Against Barger ...............................13

8.   Forced Leave Does Not Violate the ADA.........................................14

9.   Suspending Plaintiff's Remote Access Did Not Violate the ADA ..16

10.   Bisignano, Whalen, and Johnson Are Not Employers.....................16

11.   Barger Failed To Mitigate His Damages or He Has Completely Mitigated.................17

12.   The Court Should Not Take Judicial Notice of Barger's Calculations...........................18

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................8

*Armstrong v. Trans World Airlines, Inc.*,
1991 WL 102511 (S.D.N.Y. May 29, 1991) ........................................................18

*Ballato v. Comcast Corp.*,
676 F.3d 768 (8th Cir. 2012) ....................................................................................4

*Blankenship v. Buchanan Gen. Hosp.*,
140 F. Supp. 2d 668 (W.D. Va. 2001) ..................................................................2

*Brooks v. Prospect of Orlando, Co.*,
2017 WL 6319552 (M.D. Fla. Dec. 11, 2017)....................................................12

*Browett v. City of Reno*,
2018 WL 2121000 (D. Nev. May 8, 2018)..........................................................19

*Cousin v. White Castle System, Inc.*,
2009 WL 1955555 (E.D.N.Y. July 6, 2009) ........................................................8

*Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*,
2017 WL 1184278 (S.D.N.Y. Mar. 29, 2017) ....................................................3

*Escriba v. Foster Poultry Farms, Inc.*,
743 F.3d 1236 (9th Cir. 2014) ......................................................................11, 12

*Fletcher v. Atex, Inc.*,
68 F.3d 1451 (2d Cir. 1995)........................................................................................8

*Gabriel v. Colorado Mountain Med., P.C*,
628 F. App'x 598 (10th Cir. 2015) ........................................................................3

*Garcia v. Henry St. Settlement*,
501 F. Supp. 2d 531 (S.D.N.Y. 2007)....................................................................8

*Graves v. Finch Pruyn & Co.*,
457 F.3d 181 (2d Cir. 2006)......................................................................................14

*Graziadio v. Culinary Inst. of Am.*,
817 F.3d 415 (2d Cir. 2016)......................................................................................17

*Greenway v. Buffalo Hilton Hotel*,
143 F.3d 47 (2d Cir. 1998)........................................................................................18

*Hockenjos v. Metro. Transportation Auth.*,
   016 WL 2903269 (S.D.N.Y. May 18, 2016), *aff'd*, 695 F. App'x 15 (2d Cir.
   2017) ...............................................................................................................................3

*Jeffers v. Redlands Community College Bd. of Regents*,
   2012 WL 137412 (W.D. Okla. Jan. 18, 2012) ...........................................................4

*Kaylor v. Fannin Reg'l Hosp. Inc.*,
   946 F. Supp. 988 (N.D. Ga. 1996) ..............................................................................3

*Kohler v. TE Wire & Cable LLC*,
   2016 WL 885045 (D.N.J. Mar. 8, 2016) .....................................................................3

*Kohls v. Beverly Enterprises Wisconsin, Inc.*,
   259 F.3d 799 (7th Cir. 2001) ......................................................................................3

*Lehtinen v. Town of Greenport*,
   2014 WL 3477037 (N.D.N.Y. July 11, 2014) .............................................................3

*McPherson v. N.Y. City Dep't of Educ.*,
   457 F.3d 211 (2d Cir. 2006)........................................................................................4

*Miles v. Am. Red Cross*,
   2017 WL 5491004 (N.D. Okla. Nov. 15, 2017) .......................................................12

*Museau v. Heart Share Human Servs. of New York*,
   2014 WL 1277006 (E.D.N.Y. Mar. 27, 2014) .........................................................12

*Powell v. Metro One Loss Prevention Servs. Grp.*,
   2015 WL 5853979 (S.D.N.Y. Sept. 29, 2015)..........................................................10

*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006)........................................................................................4

*Scott v. Harris*,
   550 U.S. 372 (2007)...................................................................................................14

*Sharif v. United Airlines, Inc.*,
   841 F.3d 199 (4th Cir. 2016) .......................................................................................2

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006)........................................................................3, 10, 11, 13

*Smith v. N. Shore-Long Island Jewish Health Sys.*,
   286 F. Supp. 3d 501 (E.D.N.Y. 2018) ......................................................................14

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)......................................................................................................6

iv

*Teahan v. Metro-N. Commuter R. Co.*,
    951 F.2d 511 (2d Cir. 1991)...............................................................................14

*Throneberry v. McGehee Desha Cnty. Hosp.*,
    403 F.3d 972 (8th Cir. 2005) ...............................................................................3

*Varughese v. Mount Sinai Med. Ctr.*,
    2015 WL 1499618 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 F. App'x 41 (2d Cir.
    2017) ...................................................................................................................10

*Vitti v. Macy's Inc.*,
    2018 WL 6721091 (2d Cir. Dec. 21, 2018) .........................................................16

*Williams v. Shenango, Inc.*,
    986 F. Supp. 309 (W.D. Pa. 1997).......................................................................3

## STATUTES

29 U.S.C. § 1140 .......................................................................................................15

29 U.S.C. § 2612 .........................................................................................................8

29 U.S.C. § 2614 ......................................................................................................2, 3

42 U.S.C. § 12111 .....................................................................................................16

29 U.S.C. § 12112 .....................................................................................................16

## OTHER AUTHORITIES

29 C.F.R. § 825.216 .....................................................................................................2

29 C.F.R. § 825.301 ...................................................................................................12

29 C.F.R. § 825.307 .....................................................................................................9

Fed. R. Evid. 201 .......................................................................................................19

Fed. R. Civ. P. 56 ........................................................................................................5

L. Civ. R. 56.1....................................................................................................*passim*

# INTRODUCTION

Defendants First Data Corporation, Frank Bisignano, Dan Charron, Anthony Marino, Karen Whalen, and Rhonda Johnson respectfully submit their Consolidated Memorandum of Law in Opposition to Plaintiff Steven Barger's Motion for Summary Judgment and Reply in Further Support of their Motion for Summary Judgment. Despite filing two largely repetitive briefs of 20+ pages each, which argue the opposite sides of the same coin, Barger has not identified a dispute of material fact sufficient to deny summary judgment to Defendants, nor has he established any entitlement to summary judgment on his claims. To the contrary, none of his speculation, hyperbole, and unsupported and irrelevant factual allegations challenge what this case is ultimately about:[1]

- The FMLA *is not* a strict liability statute.

- Barger was legitimately included with hundreds of other highly-compensated First Data employees in the early-January 2017 reduction-in-force.

- Barger was included in the RIF because his position could be eliminated, saving hundreds of thousands of dollars in annual salary and incentive pay.

- Barger's FMLA and ADA leave had nothing to do with the decision to include him in the RIF.

- Wanting to return to work does not prove that First Data's non-discriminatory legitimate business decision to include Barger in the RIF violates the FMLA or ADA.

In Opposition and in Reply, Defendants state as follows:

1.     **There Are No Disputed *Material* Facts.** Whether or not they are disputed, the Court may disregard 132 paragraphs of Barger's 56.1(a) Statement of Material Facts because they are immaterial to the issues presented on summary judgment: ¶¶ 3, 5, 7, 8, 12-17, 19, 20,

---

[1] The Court should not be swayed or misled by Barger "dumping" thousands of pages of documents in the record in support of his motion on the guise that there must be some dispute of fact. His documents are irrelevant, immaterial, and do not create a dispute of material fact.

21, 23-27, 29, 37, 46, 58, 59, 63, 67, 68, 78, 88, 89, 92, 94, 98, 100, 108-10, 116, 123, 127, 141, 144, 150, 151, 155, 160, 164, 169, 174, 175, 184, 185, 195, 196, 203, 212, 225, 241-43, 245-59, 264, 274, 275, 279-84, 287, 289, 291-93, 295-99, 301, 303-26, 328-35, 340-45. Discussed more fully below, the balance of Barger's facts do not create a dispute of material fact to defeat Defendants' Motion.

      **2.**      **The FMLA Is Not a Strict Liability Statute.** Already having failed with this argument that the FMLA imposes strict liability on an employer, (see ECF Nos. 37, 53), Barger again implores this Court to rule that the FMLA is a strict liability statute and the right to restoration is absolute. He was wrong the first time and he is wrong again. The express language of the FMLA provides that employees seeking job restoration are not entitled to "any right, benefit, or position of employment other than any right, benefit, or position *to which the employee would have been entitled had the employee not taken the leave*." 29 U.S.C. § 2614(A)(3) (emphasis added). The directly applicable implementing DOL regulation states: "[i]f an employee is laid off during the course of taking FMLA leave" then the duty to "restore the employee cease at the time the employee is laid off." 29 C.F.R. § 825.216(a)(1). The RIF that included Barger is an exception to his right to be restored.

      The cases cited by Barger (Mot. at 8 fn.10) (which are from outside the Second Circuit or have been discredited), do not support his reading of the FMLA:

- *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 207 (4th Cir. 2016) (affirming summary judgment for employer because the proffered reasons for terminating the employee for disability fraud were not pretextual. The court does not state that the FMLA is a strict liability statute for interference claims).

- *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 673 (W.D. Va. 2001) (ruling that an employer can avoid liability for FMLA interference "by showing, by a preponderance of the evidence, that the employee would not have otherwise been employed at

the time reinstatement was requested." The court does not state that the FMLA is a strict liability statute for interference claims).

- *Williams v. Shenango, Inc.*, 986 F. Supp. 309 (W.D. Pa. 1997) (suggesting, in a very early decision under the FMLA, that a strict liability standard could apply to FMLA interference claims brought under § 2615 (not § 2614 regarding the right to restoration at issue here), but *Shenango* has since been roundly discredited as "stale." *Kohler v. TE Wire & Cable LLC*, 2016 WL 885045, at *8 (D.N.J. Mar. 8, 2016) (collecting cases from the Third, Sixth, Eighth, and Tenth Circuit Courts of Appeals, all of which "expressly rejected a strict liability application of FMLA interference claims" and utilize the common burden shifting approach).

- *Kaylor v. Fannin Reg'l Hosp. Inc.*, 946 F. Supp. 988 (N.D. Ga. 1996) (*Kaylor*, like *Shenango*, has been discredited as an outdated case. *Kohler*, 2016 WL 885045 at *8, fn.8).

Barger does not cite any Second Circuit case that comes close to supporting his theory because there are none. To the contrary, the overwhelming authority holds that the "right to reinstatement under the FMLA is not absolute." *Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, 2017 WL 1184278, at *9 (S.D.N.Y. Mar. 29, 2017); *see also Lehtinen v. Town of Greenport*, 2014 WL 3477037, at *9 (N.D.N.Y. July 11, 2014) ("[T]he FMLA does not require an employer to reinstate an employee who would have lost his position even if he had not taken FMLA leave." *quoting Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006)); *Hockenjos v. Metro. Transportation Auth.*, 2016 WL 2903269, at *8 (S.D.N.Y. May 18, 2016), *aff'd*, 695 F. App'x 15 (2d Cir. 2017) ("The right to reinstatement is not absolute, and so long as the plaintiff's leave did not constitute a factor in defendant's termination decision, plaintiff may properly be terminated.").[2] Barger's argument that First Data was obligated to restore him to his job regardless of the RIF should be rejected.

---

[2] Courts across the country have ruled that the right to reinstatement under the FMLA is not absolute. *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001) ("The right to reinstatement under FMLA is not absolute."); *Gabriel v. Colorado Mountain Med., P.C.*, 628 F. App'x 598, 602 (10th Cir. 2015) ("[T]he FMLA does not impose strict liability."); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005) ("As long as an employer can show a lawful reason, *i.e.*, a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights."); *Jeffers v. Redlands Community College Bd. of Regents*, 2012 WL 137412, at

**3.      Barger's Speculation, Innuendo, and Unsupported Arguments Do Not**

**Establish a Dispute of Fact To Defeat Summary Judgment.** Since there is no strict liability

under the FMLA, for Barger to prevail on his FMLA and ADA claims, he must prove

Defendants interfered with his right to take FMLA leave, he was terminated for taking FMLA

leave, and he was included in the RIF because he had cancer. Throughout his Opposition and

Motion, Barger speculates and offers unsubstantiated arguments as to why it was unlawful to

select him for the RIF. E.g., Pl. Mot. at 11, Pl. Opp. at 12, 14-15. Far more than speculation is

needed to defeat a summary judgment motion. *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d

211, 215 n.4 (2d Cir. 2006). Barger is *required* to point to specific evidence in the record to

create a dispute of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).

The following facts remain undisputed:

- Barger's name appeared on possible RIF lists as early as November 2016, not
  after he announced he was ready to return to work. Defs 56.1 Stmt. ¶ 119.

- After Barger went out on leave, First Data conducted a review of the Sales
  Training Group and determined that it needed a leader with a stronger
  development background and that under Barger's leadership, the Group was
  operating inefficiently, with a 46% headcount increase and 47% attrition rate. *Id*.
  at ¶¶ 131-34.

- On January 4, 2017, First Data management expanded the RIF to eliminate 10%
  of the top 3,000 wage earners in the Company. *Id*. at ¶¶ 120-23.

- At $480,000 in base salary plus the opportunity for incentive compensation,
  Barger was among the top 3,000 highest paid employees at First Data. *Id*. at ¶
  139.

- Based on the comprehensive review of the Group, First Data decided that it did
  not need an SVP running the Group and it could eliminate Barger's position
  (along with his $480,000 + per year compensation package) and assign his duties

---

*2 (W.D. Okla. Jan. 18, 2012) (FMLA "is not a strict liability statute, and the employer will not be liable if it would
have taken the same action regardless of the employee's request for FMLA leave."); *Ballato v. Comcast Corp.*, 676
F.3d 768, 772 (8th Cir. 2012) ("[T]he FMLA does not impose strict liability on employers for interference claims
. . . . If there exists a showing of interference, the burden shifts to the employer to prove there was a reason unrelated
to the employee's exercise of FMLA rights for terminating the employee.").

to Robin Ording (VP, Talent Management), who took on those duties in addition to existing full time duties. *Id*. at ¶¶ 139-40, 164.

- At the same time, 22 other employees (in addition to Barger) were laid off in the Group as part of the restructuring. *Id*. at ¶ 141.

- A total of 362 employees were included in the RIF, resulting in projected $43.6 million dollars in annual salary and benefits savings (after First Data paid approximately $20 million in severance packages). *Id*. at ¶¶ 143, 145.

- Barger testified that his FMLA leave played no factor in his inclusion in the RIF. *Id*. at ¶ 158.[3]

In response to these facts, Barger offers three hypotheses: (i) if he had not been on leave when the review of his department was conducted, his position would not have been selected for elimination (Pl. Opp. at 13); (ii) the RIF that led to his job elimination was not "real," but a continuous event (Pl. Opp. at 2); and (iii) his name did not appear on a RIF list until after he announced he was returning to work (Pl. Mot. at 11 fn.15). These do not establish a dispute of material fact under Fed. R. Civ. P. 56.

3.1 *"If I had not been out on leave, the review of my Group could have been different."* This statement demonstrates a total miscomprehension of his burden of proof, as Barger argues there is no way to know if First Data's reasons for including him in the RIF are legitimate because it may have been different had he not taken leave when the review of his Group occurred. Pl. Opp. at 13. This speculation proves that Barger has no facts to challenge First Data's legitimate business decision other than "I wanted to come back to work." *Id.* at ¶ 160. In fact, when asked whether he would have been included in the RIF had he not taken

---

[3] The Court should note that of Barger's 138 exhibits attached to his motion for summary judgment, he does not rely on his own deposition. Defs. 56.1 Stmt. Ex. 6. Barger was deposed for seven hours, comprising 286 pages of testimony, but instead of relying on his own testimony (all of which demonstrates he has no claims against First Data), he submits an affidavit instead (Pl. 56.1 Stmt. Ex. A) to fabricate disputes of fact, at times contradicting his own deposition testimony.

leave, Barger testified "I have no clue. I have no idea. I don't have a belief about that." Defs. 56.1(b) Cntr. Stmt. ¶ 9.

Nothing in the record supports Barger's suggestion that the review and analysis of the Group, which found it to be overstaffed by several dozen employees and not well-run (Defs. 56.1 Stmt. at ¶ 134), would have been any different if he had been the one to lead the review. It is undisputed that under his leadership, the Group had unnecessarily expanded and more hires were planned, which is the exact opposite of what the review determined was needed for the Group. *Id*. at ¶¶ 132-35. Interestingly, Barger did not ask any witness whether things would have been different during the review if he had been present.

It is not Defendants' burden to show how an alternate history would have unfolded, rather they only must show that they had a legitimate non-discriminatory reason to support their decision. Barger admits he has no facts to challenge that decision. He carries the ultimate burden of persuasion at all times and has failed to meet that burden. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). It bears repeating that Barger testified that being on FMLA leave had nothing to do with his job elimination. Defs. 56.1 Stmt. ¶ 158. This Court should not entertain Barger's alternative theory.

3.2     *"The January 2017 RIF Was Not a Real RIF."* Barger keeps repeating that the RIF was not "real," but the evidence demonstrates otherwise. The RIF that included Barger was a distinct and separate event from other RIFs that have occurred since Bisignano became CEO of First Data in 2013. When he became CEO, Bisignano's goal was to implement financial management and operations changes in the Company to correct its dire financial condition. Defs. 56.1 Stmt. ¶ 25; Defs. 56.1(b) Cntr. Stmt. ¶ 1. It is undisputed that because of RIFs from 2015-2017, First Data reduced employee headcount by 2,000, despite acquiring several companies,

increasing EBITDA by 2.7%, paying down significant debt and was able to free up money for investment. Defs. 56.1 Stmt. at ¶¶ 146-47. The specific RIF that impacted Barger was included in First Data's 2017 10-K. Defs. 56.1(b) Cntr. Stmt. ¶ 8. Barger cannot change his testimony that RIFs are a management tool used by Wall Street financial services firm to reduce headcount and improve financial performance. Defs. 56.1 Stmt. ¶ 148, Defs. 56.1(b) Cntr. Stmt. ¶ 2.[4]

3.3    *"I was put on the RIF list because I complained."* On December 28, 2016, Barger texted his supervisor EVP, Jeff Hack that he expected to be released to return to work in the near term. Pl's 56.1 Stmt. ¶ 119. Knowing that Company policy required him to provide a return to work authorization in order to return, Barger submitted that authorization from his physician on January 10, 2017. Defs. 56.1 Stmt. ¶ 117.[5] What Barger cannot ignore is the intervening event that occurred between December 28, 2016 (his text to Hack) and January 10, 2017 (delivery of his return to work form), which was the expansion of the RIF. *Id*. at ¶¶ 120-21.

On January 5, 2017, Bisignano determined that the RIF had not achieved significant enough savings, so he directed his Management Committee members to eliminate 10% of the Top 3,000 highest paid employees. *Id*. at ¶ 121. On January 9, 2017, Hack finalized his list of direct Global Business Solution reports to be included in the RIF, which included Barger. *Id*. at ¶ 137. The employees on Hack's list were added to those identified by EVP, Dan Charron (Hack's boss) to achieve a 10% reduction of GBS's share of the top 3,000 employees. *Id*. at ¶¶ 136-38. In deciding what positions to include in the RIF, GBS looked at factors such as

---

[4] Barger argues that companies that get acquired cannot engage in RIFs. Pl. Opp. at 1. This statement demonstrates a fundamental misunderstanding of how businesses operate. His comparison of the 146 workers who lost their lives in the Triangle Shirtwaist Factory fire in 1911 (Pl. Opp. at 3 fn.2) to how he was treated by First Data is an affront to the memory of those employees who perished.

[5] Barger's filings demonstrate a misunderstanding of why employers require employees who have been out on leave to provide a doctor's note releasing them to return to duty with or without accommodations. Employers need to ensure that an employee will not injure or exacerbate a medical condition by coming back too early which could expose the employer to claims, including worker's compensation. Yet, according to Barger, he could have gotten his physician to release him to work on a whim whenever Barger asked him, even if he had not recovered. Pl. Opp. at 8 fn.7.

redundant roles, roles where different groups could be consolidated under single management, and layers of management that were not needed. *Id*. at ¶ 127. Barger's position met these criteria. *Id*. at ¶ 140.

Barger's inclusion on the RIF list was finalized on January 9, 2017. At that time, Barger had not submitted a return to work authorization. *Id*. at ¶ 137. Barger has not produced any evidence that Hack or Charron eliminated Barger's position and included him in the RIF because he took FMLA or ADA leave, or for any other unlawful reason. Eliminating a position as part of a RIF is a well-established legitimate and non-discriminatory reason that supports summary judgment. *E.g.*, *Garcia v. Henry St. Settlement*, 501 F. Supp. 2d 531, 540 (S.D.N.Y. 2007).

As demonstrated, Barger's briefs rely not on evidence in the record, but on conclusory legal arguments which fall short of establishing disputes of material fact. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in memoranda or oral argument are not evidence" and cannot create genuine issue of material fact). No trial is needed here because Barger has failed to set forth concrete facts to dispute the central issues in this case surrounding his termination. *Cousin v. White Castle System*, *Inc.*, 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**4.      Barger Was Not on FMLA Leave When He Submitted His Authorization To Return To Work.** Barger argues that the earliest date he stopped working was November 19, 2016, when he received the text message from Marino letting him know that the Company was putting him on leave to recover from his upcoming surgery. Defs. 56.1 Stmt. ¶¶ 83-86. Barger was then sent a leave package, including the Certification of Health Care Provider form to be completed by his physician. *Id*. The FMLA authorizes an employer to require an employee seeking FMLA to ask for this certification. 29 U.S.C. § 2612. On December 14, 2016, Barger

returned the forms, including the form completed by *his* doctor stating that his first day of incapacity was October 22, 2016, with a return to work date of March 1, 2017. Defs. 56.1 Stmt. ¶ 96. Based on his doctor's certification, First Data notified Barger that his FMLA leave was approved beginning October 24, 2016. *Id*. at ¶ 97.

   Barger now seems to claim that the form that he submitted, completed by his doctor, was not correct and that his FMLA leave could not have started before November 21, 2016. Pl. Opp. at 4. Assuming that any of this makes a difference, (which it does not), First Data did not complete the FMLA paperwork, Barger's doctor did. FMLA regulations only permit an employer to request additional information from a health care provider who has completed an FMLA Certification Form in very limited circumstances (e.g., such as where handwriting is not clear). 29 C.F.R. § 825.307. First Data cannot be blamed if Barger submitted false information.

   It fundamentally does not matter if Barger had exhausted his FMLA leave at the time First Data eliminated his position because an employer can include an employee on leave in a RIF. See, *supra*, Part 2.

   Barger misleads this Court by suggesting that First Data acted unlawfully because it *unilaterally* changed his FMLA start date to September 4, 2016, from October 24, 2016. Pl. Opp. at 7. First Data did no such thing. On January 5, 2017, Jennifer Voycheske (Manager, HR Operations) emailed Barger because his request for short-term disability benefits had not yet been approved and she was assisting him with the process. Defs. 56.1 Stmt. ¶ 106. Barger responded that MetLife had approved his STD benefits with a start date of September 4, 2016, a date that was a month earlier than what had been on his FMLA Certification Form. *Id*. at ¶ 107. Due to this inconsistency, Voycheske emailed Barger again, asking "Can you clarify when you stopped working?" to which Barger responded "9/4. My operation was 9/6." *Id*. at ¶ 109.

Voycheske then confirmed that MetLife's records indicated that Barger's STD benefits had been approved beginning September 4, 2016. *Id.* at ¶ 110. STD and LTD benefits are only paid to employees who are *not working*.[6]

Based on Barger's response and in accordance with DOL regulations, Voycheske recalculated the leave start date and mailed him a letter to that effect.[7] *Id.* at ¶ 112. The undisputed evidence established that First Data did not act unilaterally, but that changes were made only *after* Barger informed that September 4, 2016, was his last day working. First Data did not create that date: it was Barger who advised of it. Because Barger was not on FMLA leave at the time he requested reinstatement, First Data did not violate the FMLA by not restoring him. Again, whether he was on FMLA leave is immaterial because it was lawful for First Data to include Barger in the RIF.

**5.     Forcing an Employee To Take FMLA Leave Is Lawful And Barger's Argument To the Contrary Is Unsupported by Any Case Law In This Jurisdiction.** Barger contends Defendants violated the FMLA by forcing him to take leave. The Second Circuit has expressly proclaimed that "forced leave, by itself, does not violate any right provided by the FMLA." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006); *see also Powell v. Metro One Loss Prevention Servs. Grp.*, 2015 WL 5853979, at *12 (S.D.N.Y. Sept. 29, 2015) ("Neither party argues that forced FMLA leave, in and of itself, is unlawful; indeed, it is not."). This case is similar to a recent case where the court granted the employer's motion for summary

---

[6] It is undisputed that after Barger submitted his authorization to return to work without restrictions on January 10, 2017, First Data put him back on the payroll from January 15, 2017 until February 28, 2017, when his job ended. Defs. 56.1 Stmt. ¶ 155. It is further undisputed that MetLife paid Barger long-term disability benefits from December 4, 2016 to March 3, 2017, totaling $41,557.50, meaning that Barger was paid both his salary by First Data and LTD by MetLife for the same time period. Defs. 56.1(b) Cntr. Stmt. ¶ 6. An employee is not allowed to collect both wages and disability payments, but Barger chose not to refund the LTD benefits paid by MetLife. *Id.* at ¶ 7.

[7] Barger's claims that Voycheske could not have mailed the updated FMLA letter on January 5, 2017 is pure speculation and the trappings of desperation. Voycheske's sworn testimony in her declarations remains undisputed. Defs. 56.1 Stmt. ¶ 112. MetLife also sent Barger letters verifying the September 4, 2016, date, which in turn led to MetLife paying Barger LTD benefits. *Id.* at ¶ 115; Defs. 56.1(b) Cntr. Stmt. ¶ 6.

judgment, rejecting the employee's "forced leave" theory. *Varughese v. Mount Sinai Med. Ctr.*, 2015 WL 1499618, at \*70 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 F. App'x 41 (2d Cir. 2017). Citing *Sista*, the court ruled that forced leave *does not* violate the FMLA, explaining that "the Defendants wanted [the plaintiff] to exercise her rights under FMLA; they believed she was unstable and needed to take some leave. They did nothing to prevent her from taking FMLA leave; they encouraged her to take a leave." *Id*.

First Data did not tell Barger that he needed to go out on FMLA leave unilaterally. Once again, it was information *from* Barger that led to this decision. Specifically, on November 8, 2016, Barger texted Marino the following message:

> Going in for additional repair surgery next week. 6 days in hospital. 4 weeks full recovery. Should be talking round Christmas time.

Defs. 56.1 Stmt. ¶ 82. After receiving this news, Marino advised his friend Barger on November 18, 2016, that he needed to take leave so that he could focus on his health and not worry about First Data. *Id*. at ¶¶ 84-86. Marino had every reason to take the situation seriously, particularly after Barger texted the following message on November 21, 2016:

> Tony, Rhonda [Defendant Johnson] just took care of everything for my STD. I appreciate her gentle loving care. I need to discuss my options with you and Joe. They need to be transferred into my wife's name and make certain they are all issued. All my other accounts will be in her name also. I need your help getting my finances together. Dr. Harrison at Moffit was very concerned about the lymph node cancer being inoperable. Don't know length of time but need your help for my family security. Please don't broadcast this.

*Id*. at ¶ 88.

Despite Second Circuit law rejecting the "forced leave" theory, Barger asks this Court to adopt the Ninth Circuit's decision in *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014), where the court held that an employee can affirmatively decline to use FMLA even if

11

his underlying condition qualifies, in order to preserve the FMLA leave for a later use.[8] *Id*. at

1244. *Escriba* is inapplicable because in that case, the plaintiff affirmatively declined to use

FMLA leave, opting instead to use unprotected vacation leave to strategically save her FMLA

for later use.[9] *Id*. at 1245-46. Barger did not decline to use FMLA leave. He had his physician

complete the FMLA form and he was accorded the full benefit of FMLA leave (regardless of

what date is used). Defs. 56.1 Stmt. ¶ 96. Having exercised his right to take FMLA leave, Barger

cannot now claim that he did not want to. What Barger fails to appreciate is that if he had

declined FMLA leave, then whatever leave he took would not be protected. None of the

Defendants interfered with Barger's right to take FMLA leave.[10]

**6.      Barger Was Not Forced To Work From Home.** Barger argues that because he

was "working" between September 4, 2016, and November 18, 2016, that he could not have

been on FMLA leave. Barger's position is contrary to the law. Under similar circumstances,

Judge Irizarry granted summary judgment to an employer finding that it did not violate the

FMLA when an employee voluntarily participated in work activities such as checking emails

while on leave. *Museau v. Heart Share Human Servs. of New York*, 2014 WL 1277006, at *1

(E.D.N.Y. Mar. 27, 2014). There, the court concluded that "as a matter of law, [the defendants]

did not interfere with [the plaintiff's] FMLA leave under a forced to work from home theory."

*Id.* at *4. Like here, in that case the evidence demonstrated that the plaintiff "volunteered to work

---

[8] *Escriba* is an outlier and its ruling is contrary to the express language of the FMLA, which mandates that it is up to the employer—not employee—to designate FMLA leave. 29 C.F.R. § 825.301(a).

[9] After exhausting her allotted unprotected vacation leave, the plaintiff did not return to work and was terminated after missing three consecutive shifts. *Escriba*, 743 F.3d at 1241. Summary judgment was granted for the employer on the FMLA interference claim because her vacation leave was not FMLA protected. *Id*. at 1244.

[10] The other cases cited by Barger are inapposite. In *Miles v. Am. Red Cross*, 2017 WL 5491004, at *2 (N.D. Okla. Nov. 15, 2017), the court held that an involuntary leave claim can only exist if the plaintiff did not have an underlying "serious health condition" making him otherwise ineligible for FMLA. There is no claim here that Barger was not suffering from a serious health condition, as confirmed by his own doctor. In another of his cases, the court provided a hypothetical in dicta that even if involuntary leave were a viable FMLA claim, it could only ripen if the employee applied for FMLA leave at a later time, but was denied because he had been forced to exhaust his leave at the earlier time. *Brooks v. Prospect of Orlando, Co.*, 2017 WL 6319552, at *9 (M.D. Fla. Dec. 11, 2017). Barger never had an application for FMLA leave denied because of having exhausted it at some earlier time.

from home and sought to insert herself into [the employer's] operations at every opportunity. . . . For example, at the start of her [FMLA] leave, she sent an email to a colleague indicating that she would be 'on medical leave,' but she would be 'checking her e-mail periodically' and he should feel free to e-mail her.'" *Id.* Additionally, the plaintiff never complained about being contacted while on FMLA leave and did not ask them to stop contacting her. *Id.* For these exact reasons, Barger's claim fails.

Here, Barger's 700+ pages of documents, which purportedly demonstrate that he was "working" until November 18, 2016, create no material dispute of fact. These emails do not dispute that Barger was, in fact, on FMLA leave at that time. A review of Barger's Exhibit 29 shows that the emails are mostly him responding with a one-word "approved" to various administrative matters or communicating updates on his health.[11] Further, Barger never complained about being contacted while on FMLA leave, and in fact, affirmatively inserted himself into work-related matters.

Ultimately, it does not matter whether Barger was working until November 18, 2016. The issue to be resolved is whether Barger has any evidence to challenge First Data's legitimate business decision to include him in the RIF. He does not.

**7.    Forced Leave Does Not Violate the ADA.** Barger asserts that it was a violation of the ADA for First Data to insist that he take leave to focus on his health, because he was not forced to take leave for performance reasons. Again, First Data did not spontaneously proclaim "Barger, you need to take leave." To the contrary, Barger told Marino that he was going to have surgery that would require five weeks of recovery. Defs. 56.1 Stmt. at ¶ 82. Assuming that

---

[11] Plaintiff inflates the number of pages in this exhibit by also including over 100 pages of attachments to emails like PowerPoint presentations that he did not create. Plaintiff further inflates the exhibit by attaching multiple strings of the same email or emails that were sent by his Executive Assistant Gita Patel on his behalf. *See, e.g.*, Pl. 56.1 Stmt. Ex. 29 at 028, where Patel responds on Barger's behalf "Steve is currently OOO for surgery and recovery" and suggests that a meeting be rescheduled for November (which shows he was not working).

Barger's condition qualified as an ADA disability, First Data accommodated his condition by having him take leave.

Contrary to Barger's position, leave may be a reasonable accommodation under the ADA. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 n.5 (2d Cir. 2006) (most other circuits and the EEOC have concluded that an unpaid leave of absence can be a reasonable accommodation under the ADA). The cases cited by Barger do not support his ADA claim or theory. *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 525 (E.D.N.Y. 2018) (denying transfer request qualifies as an adverse action under the ADA); *Teahan v. Metro-N. Commuter R. Co.*, 951 F.2d 511 (2d Cir. 1991) (analyzing whether an alcoholic is a substance abuser covered by Section 504 of the Rehabilitation Act; case did not involve the ADA).

**8.      Defendants Did Not Retaliate Against Barger.** To support his retaliation claims, Barger asserts without any legitimate evidentiary support, that he was added to the RIF list only after alleging unlawful termination. Pl. Mot. at 11 fn.15. This allegation contradicts the undisputed facts that Hack and Charron put Barger on the final RIF list for GBS on January 9, 2017, and that Barger was notified of his termination on January 13, 2016, weeks before Barger hired his son-in-law to represent him in severance negotiations. Defs. 56.1 Stmt. ¶ 137; Pl. 56.1 Stmt. Exs. 76, 77, 99; Defs. 56.1(b) Cntr. Stmt. ¶ 10. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Barger seemingly relies on the following deposition testimony to argue that First Data retaliated by terminating his employment so that he could not continue collecting LTD. In response to questioning from Barger's counsel about his client's severance package, Marino

testified:

> Q: (Mr. Shearer) So if he -- if he already received his bonus, and you put a zero in there, so that's zero expense, right?
>
> A: (Mr. Marino) That was an expense that was incurred in November.
>
> Q: Right. But it was -- it has already paid. I mean, that liability has already been satisfied. You offered three weeks of pay, and you vest his equity. What savings does First Data achieve from this termination?
>
> **A: Mr. Barger's $750,000 compensation package on a go-forward basis.**
>
> **Q: But at this point, he's applied for short-term disability; is that correct?**
>
> A: At this point he's returning.
>
> Q: At this point in time, January 11. Okay? And if he stays out on disability, he's going to go onto long-term disability. And if I understand it right, long-term disability is paid by MetLife, not by First Data.
>
> A: Correct.

Pl. 56.1 Stmt. Ex. 8 at 210:10-211:8 (bolded portion indicates text omitted by Barger). This questioning was about the generous severance package that First Data offered Barger and the savings it achieved by eliminating Barger's position. Regardless of the context, Barger's speculation that First Data terminated him to deny him LTD benefits (however baseless) has absolutely no bearing on his FMLA or ADA claims. If he wanted to bring a claim for the denial of benefits, he would have needed to include a claim under ERISA, 29 U.S.C. § 1140. There are no ERISA claims in this case.[12]

---

[12] It strains credulity for Barger to even try to suggest that there are facts to support this theory. It is undisputed that First Data finalized the decision to terminate Barger's employment on January 9, 2017, while he was covered by the Company's disability plans. Defs. 56.1 Stmt. ¶ 137. The next day, Barger submitted his return to work authorization without any restrictions, thereby unilaterally declaring that he no longer had any disability. *Id*. at ¶ 117. On January

9.     **Suspending Plaintiff's Remote Access Did Not Violate the ADA.** It is undisputed that once Barger notified Marino that he would be out for five weeks recovering from his next surgery, Marino decided that in addition to going out on leave, Barger's remote access to email and other systems should be disabled so that he could concentrate on his recovery. Pl. 56.1 Stmt. ¶ 114. There is no evidence that Marino's decision was for a discriminatory reason. To the contrary, because Barger would be on leave, he did not need this accommodation (connectivity) to perform the essential functions of his job. 42 U.S.C. § 12111(8), 12112(b)(5)(A) (defining qualified individual).

Perhaps more importantly, it is the employee's obligation to request a reasonable accommodation under the ADA. *Vitti v. Macy's Inc.*, 2018 WL 6721091, at *3 (2d Cir. Dec. 21, 2018). Nowhere in his 345-paragraph Statement of Undisputed Material Facts does Barger allege that he requested any accommodation after his September 2016 surgery. Because he never engaged in the interactive process to request an accommodation, there can be no claim that any "accommodation" was revoked.

Nowhere in his Opposition or Motion does Barger counter First Data's arguments that there is no evidence to support his ADA claims that he was terminated because he requested the "reasonable accommodation" of returning to work or that he was included in the RIF because he was disabled. *See* Defs. Mot., Part 4. Plaintiff concedes that he has no ADA retaliation claim by failing to provide any evidence disputing Defs. 56.1 Stmt. ¶ 159. These claims fail.

10.     **Bisignano, Whalen, and Johnson Are Not Employers.** If the Court does not grant summary judgment on Counts I and II for the reasons stated above, summary judgment

---

13, 2017, when First Data notified Barger of his termination, he had been cleared to return to work. *Id*. at ¶ 153. What makes this more absurd is that despite his full and complete release to return to work, Barger accepted LTD payments from MetLife while he was being paid a salary by First Data. Defs. 56.1(b) Cntr. Stmt. 6-7. If anyone has a claim regarding Barger's disability benefits, it is MetLife. See *supra*, fn.6.

should still be granted in favor of Defendants Bisignano, Whalen, and Johnson because Barger has failed to create a genuine dispute of material fact regarding their status as an employer. The undisputed evidence is that none of these Defendants exercised the degree of control necessary to impose liability to be considered an employer under the economic realities test in *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2d Cir. 2016).

With respect to Bisignano, there is no evidence in the record that he had control over any terms or conditions related to Plaintiff's FMLA leave. Defs. 56.1 Stmt. ¶¶ 26-31. Barger's so-called evidence is that Bisignano must be an "employer" because he is the CEO of First Data. Pl. Mot. at 13**.** Under this theory, every CEO would be liable under the FMLA. Such a finding would be antithetical to the economic reality test of *Graziadio* and is certainly not an intent expressed by Congress.

Whalen and Johnson also cannot be individually liable as "employers." In *Graziadio*, the Second Circuit ruled that an HR Director might be an employer where she admitted having the ultimate power to terminate the employee, determine the adequacy of the plaintiff's FMLA paperwork, approve her return to work, and that she was the only person to correspond with plaintiff during her FMLA leave. 817 F.3d at 423-24. It is undisputed that neither Whalen nor Johnson had any of these powers. Defs. 56.1 Stmt. ¶¶ 45-49, 55-59, 93-117. In fact, Plaintiff admits that Johnson was a liaison between the Leave Management Team and himself. Pl. Mot. at 12. Under *Graziadio,* Bisignano, Whalen, and Johnson should be dismissed from this action.

**11.      Barger Failed To Mitigate His Damages or He Has Completely Mitigated.**

In addition to Barger's inability to establish liability, he is not entitled to damages under the FMLA or ADA. Barger not only admits that he did not apply to a single job, (Defs. 56.1 Stmt. ¶ 168), but further proudly claims that people like him "do not apply for jobs" because of his

alleged status and experience. Pl. 56.1(b) Cntr. Stmt. ¶ 168. Neither the FMLA nor the ADA

carves out exceptions that do not require employees to mitigate because of their status and

experience. Because Barger failed to apply for even a single job, he did not mitigate his

damages. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998).

Assuming, *arguendo*, that Barger satisfied his legal obligation to mitigate by returning to

consulting, then it follows that he fully mitigated and is thus entitled to no damages. Barger

reported consulting revenue on his 2017 tax return that is four times the amount he made in 2012

and 2013 as a consultant before joining First Data, meaning that Barger is not entitled to back

pay. *Id*. at ¶¶ 173-75.[13] *Armstrong v. Trans World Airlines, Inc.*, 1991 WL 102511, at *3

(S.D.N.Y. May 29, 1991) ("Where interim earnings exceed any back pay award, back pay is not

appropriate.").

**12.     The Court Should Not Take Judicial Notice of Barger's Calculations.** Without

any legal or factual support, Barger improperly implores the Court to take "judicial notice" that

he wanted to work until age 82 and there was no comparable job for him in Atlanta. Barger

fundamentally misunderstands the concept of judicial notice and the burden of proving damages

which in this case requires expert testimony. A court can take judicial notice of an adjudicative

fact "that is not subject to reasonable dispute because it (1) is generally known within the trial

court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

whose accuracy cannot reasonable be questioned." Fed. R. Evid. 201. Barger's desire to work

---

[13] Barger alleges that he generated $25,000-$30,000 per month in "revenue" as a consultant for The Barger Group prior to joining First Data. Pl. Opp. at 21. It does not matter what Barger allegedly generated; it matters what he earned. It is undisputed that Barger claimed income of only $15,602 from consulting for 2012 and $16,210 in consulting for 2013. Defs. 56.1 Stmt. ¶¶ 173-74. His tax returns rather than his affidavit is what is dispositive here. It is undisputed that his income as a consultant following his termination from First Data is four times greater than what he was earning as a consultant before he joined First Data. *Id*. at ¶ 175.

until he is 82 and his inability to find alternate work are not proper adjudicative facts for which

the Court can take judicial notice.[14]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant its Motion for

Summary Judgment, deny Barger's Motion for Summary Judgment, and dismiss Barger's claims

in the Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 34) in their entirety.

**SAUL EWING ARNSTEIN & LEHR LLP**
*A Delaware LLP*

*/s/ Gary B. Eidelman*
Gary B. Eidelman, Esq. (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
Gary.Eidelman@saul.com

Gillian A. Cooper, Esq.
650 College Road East, Suite 4000
Princeton, New Jersey 08540
T: (609) 452-5021
Gillian.Cooper@saul.com

New York Office
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

*Attorneys for Defendants,*
*First Data Corporation, Frank Bisignano, Dan*
*Charron, Anthony Marino, Karen Whalen, and*
*Rhonda Johnson*

Dated: February 20, 2019
        Baltimore, Maryland

---

[14] Barger is also not entitled to liquidated damages because First Data acted in good faith and had a reasonable basis for its actions. The adjustment of Barger's FMLA start date was based on information he gave to First Data. Defs. 56.1 Stmt. ¶ 109. There is no evidence that Barger's inclusion in the RIF with hundreds of other employees, was for anything other than the First Data's desire to save hundreds of thousands of dollars a year. *Id.* at ¶¶ 139-40. Liquidated damages are also not available on front pay. *Browett v. City of Reno*, 2018 WL 2121000, at *7 (D. Nev. May 8, 2018) (denying liquidated damages on front pay because the FMLA only permits liquidated damages on back pay and interest, not to equitable remedies like front pay). Barger also fails to offset interim earnings from consulting revenue from his damages calculation.