# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual | **Case No. EDNY: 1:17-cv-4869-FB-LB** |
| Plaintiff | |
| v. | |
| FIRST DATA CORPORATION et al. | |
| Defendants. | |

## PLAINTIFF'S REPLY
## IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THE LAW OFFICE OF SHAWN SHEARER, P.C.
Shawn Shearer (admitted *pro hac vice*)
3839 McKinney Avenue #155-254
Dallas, TX 75204
T: (972) 803-4499
shawn@shearerlaw.pro

ZEITLIN & ZEITLIN, P.C.
David Zeitlin
50 Court Street, Suite 506
Brooklyn, NY 11201
T: (718) 596-6815
david@zeitlinlawfirm.com

Attorneys for Plaintiff
Steven B. Barger

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTS & LEGAL CONCLUSION ...................................................................... 2

III.    FIRST DATA ADMITS VIOLATING THE ADA .............................................. 3

IV.     FMLA – ENTITLEMENT TO REINSTATEMENT ............................................ 4

    A.   DEFENDANTS' INTERFERED WITH REINSTATEMENT ENTITLEMENT ..... 4

    B.   A REDUCTION-IN-FORCE IS NOT A DEFENSE ......................................... 5

    C.   RETROACTIVE RE-DESIGNATION IS NOT A DEFENSE ................................. 7

    D.   PLAINTIFF WAS ENTITLED "TO BE" RESTORED – *Chevron, Escriba, Wysong* 8

V.      CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

Cases

*Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005) ............................................. 5, 6

*Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005) ............................. 5

*Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015) ............ 8

*Chevron, USA Inc. V. Natural Res. Def. Council, Inc.*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778) ..... 8

*Conroy v. N.Y. State Dept. of Corr. Servs.*, 333 F.3d 88, 95-96 (2nd Cir. 2003) .......... 8

*Escriba v. Foster Poulty Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014) .......................... 8

*James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013) .......................... 6

*New Hampshire v. Maine*, 532 US 742, 749-750 (2001) ............................................. 7

*Nonnenmann v. City of New York*, 2004 WL 1119648, at *22 (S.D.N.Y. 2004) .......... 2

*United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) ...................................... 8

*Wysong v. Dow Chemical*, 503 F.3d 441 (6th Cir. 2006) ............................................ 8

Statutes

29 U.S.C. §2612(a) ..................................................................................................... 4

29 U.S.C. §2614(a) ..................................................................................................... 4

29 U.S.C. §2614(b) ..................................................................................................... 9

29 U.S.C. §2615(a)(1) .............................................................................................. 4, 8

42 U.S.C. §12112(a) ................................................................................................. 3, 4

42 U.S.C. §12112(b) ................................................................................................. 3, 4

Regulations

29 C.F.R. § 825.214 ..................................................................................................... 5

29 C.F.R. §825.216(a) ................................................................................................. 6

29 C.F.R. §825.216(a)(1) .......................................................................................... 5, 6

29 CFR §825.300(b)(1) ................................................................................................ 7

29 CFR §825.301(d) ................................................................................................. 7, 8

## I.  INTRODUCTION

"*The rich had been assured of his wealth and comfort, the toiler assured of his life and work. No doubt in that perfect world there had been no unemployed problem, no social question left unsolved. And*" - H.G. Wells, The Time Machine

Plaintiff, Steven Barger respectfully submits this Reply ("Reply") in Support of his Motion for Summary Judgment ("Plaintiff's Motion").[1]  Defendants' spin and manufacture facts, and create a fabricated history of events pre-February 28, 2017, the date, two-years ago, exactly, that Plaintiff's employment was unlawfully terminated. Defendants cannot go back in time and recount days, miraculously recharacterize work as leave, mischaracterize facts, and embellish stories of what should have, or could have been. See Exhibit 1 to this Reply. We don't get to go back and undo what was done. The Time Machine does not exist.

If the basis for the defenses asserted – First Data's constant mass terminations followed by hirings, and *ex post facto* reconstruction of events by unilateral re-designation of previously designated leave – are held to be legally justified excuses, then the FMLA, ADA, Title VII, etc. are worthless. The defense asserts that First Data's repeated quarterly mass firings somehow immunize Defendants from compliance with statutory employee protections. Victims of First Data's illegal terminations are merely included in the next quarterly "RIF" and First Data hides

---

[1]     This Reply is being submitted in the context of cross-summary judgment motions. The other relevant documents are (i) Defendants' Motion for Summary Judgment ("Defendants' Motion"), (ii) Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition"), (iii) Defendants' Consolidated Opposition to Plaintiff's Motion and Reply in Support of Defendants' Motion for Summary Judgment ("Defendants' Reply"); (iv) Plaintiff's Rule 56(a)(1) Statement ("PSOF") and (v) the declaration of Plaintiff's counsel, Shawn Shearer, with attached exhibits ("Shearer Declaration"). Plaintiff also incorporates by reference Plaintiff's filings in connection to his Motion for Judgment on the Pleadings. ECF No. 37 & 37-2. Except as otherwise defined herein, capitalized terms have their meanings as defined in Plaintiff's Motion. Except as otherwise noted, all exhibit references contained herein refer to the exhibits to the Shearer Declaration. Plaintiff stands on the ample evidence presented in the Motion and supporting documents regarding the employer status of Bisignano, Johnson and Whalen. Plaintiff further stands on the Motion's justification for liquidated damages under the FMLA. Plaintiff also relies upon the Motion as evidencing that he has properly mitigated by returning to his consulting business. Plaintiff is entitled to the difference between what he would have earned at First Data and his consulting earnings (passed and future). The calculations of damages in the Motion take into account Plaintiff's mitigation (both for back-pay and front-pay) using the Defendants' expert estimations.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**                    1

behind the next "RIF" as a "non-discriminatory business justification." Constantly firing en

masse (while gross employee headcount and compensation expense continues to increase [PSOF

¶240-265]) is not an excuse for violating the law. First Data and Bisignano have created a culture

in which compliance with the basic protections of the American worker are ignored with

impunity behind the legal fog of supposed continual "RIFs."

## II.  FACTS & LEGAL CONCLUSION

Based on the timeline, most favorable to the Defendants, the following events occurred

(items disputed by the Plaintiff, but assumed for Plaintiff's Motion, are marked with "***"):[2]

| 09/06/16 | Plaintiff has laryngectomy **surgery**. All Defendants are aware of that surgery was schedule this date. |
| --- | --- |
| 09/07/16 | Plaintiff begins **working** on First Data business from his hospital room in Tampa and continues to do so for the next month from his hospital hotel, at all times, performing the basic and essential functions of his job. All Defendants had knowledge of Plaintiff's surgery, his remote work and the status of Plaintiff's recovery. [PSOF ¶45-59] |
| 10/15/16 | Plaintiff **returns to his home** in Atlanta and continues **working** on First Data business daily and has assistance from First Data personnel to provide him the necessary technology to participate in meetings and conduct the basic and essential functions of his job. All Defendants had knowledge of Plaintiff's remote work and the status of Plaintiff's recovery. [PSOF ¶45-59] |
| 11/03/16 | Defendant **Marino visits Plaintiff's home and personally observes Plaintiff's physical condition.** [PSOF ¶60] |
| 11/16/16 | Defendant **Johnson and Marino decide to force Plaintiff to take leave** and "**begin** to transition" to First Data's leave and STD programs so that he could recover and focus on his health. [PSOF ¶61-79] |
| 11/19/16 | Defendant **Marino advises Plaintiff that he is being forced to take leave**. At no time prior did Plaintiff request leave or use paid-time-off ("PTO"). At no time prior did any First Data personnel force or require Plaintiff to take leave or PTO. In his texts with Marino, Plaintiff asks to continue working and his request, **a request for an accommodation, is denied. [PSOF ¶73-74]** |
| 11/22/16 | **Plaintiff's access** to First Data's systems he had been using to work remotely for 75 days is **cut-off** at the direction of Marino and Johnson outside of the normal course of leave practices at First Data. [PSOF ¶111-115] |
| 12/15/16 | **First Data designates Plaintiff's approved twelve-week FMLA leave as the period from October 24, 2016 to January 16, 2017** |

---

[2]    The temporal proximity of these events is sufficient for Plaintiff to survive Defendants' motion for summary judgment and proceed to trial. *Nonnenmann v. City of New York*, 2004 WL 1119648, at *22 (S.D.N.Y. 2004). Moreover, Plaintiff is entitled to judgment based on the admitted facts as set forth in the Motion and herein.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**                              2

| 12/22/16 | **Whalen and Marino are informed** that Barger **intends to return** in Mid-January. [PSOF ¶118] |
|---|---|
| 12/28/16 | **Plaintiff advises** Jeff Hack, his **immediate supervisor**, **that he will be returning** from leave on January 16, 2017, and Hack provides Marino that information. [Ex. 77] [PSOF ¶119] |
| 01/04/17 to 01/06/17 | **Plaintiff advises Johnson, Marino, Whalen, Charron, and First Data Leave Management** that he will be obtaining his physician's release to work at his appointment on January 10, 2017 **and he will be returning to work on January 17, 2017** (the Tuesday immediately after the MLK holiday). [PSOF ¶120-122] [Voycheske after 6:00 pm on January 5, 2017 decides to **retroactively re-designate the previously designated dates**. ***] |
| 01/06/17 | **Bisignano**, CEO of First Data, decides and **directs a reduction of the headcount of the top 10% of First Data employees. ***** |
| 01/09/17 | Hack and Charron place Plaintiff's name on the list for termination within the top 10% category. *** |
| 01/10/17 | **Plaintiff obtains his physician's return to work authorization, delivers that authorization to Johnson, Johnson accepts the authorization, and Plaintiff sets his reinstatement.** Johnson advises Marino, Whalen and Charron that the required medical documentation has been received. [PSOF ¶124] |
| 01/13/17 | **Johnson calls Plaintiff and advises him that he is being terminated and that he should not return to the office as scheduled.** The call was made after the close of business on this Friday and Plaintiff was scheduled to return to work the following business day (the day after the MLK holiday). |

Defendants committed the following statutory violations: (i) interfering with Plaintiff's FMLA entitlement to reinstatement; (ii) interfering with Plaintiff's FMLA entitlement to take leave when needed (due to the retroactive re-designation of leave dates); (iii) forcing leave based solely on Plaintiff's disability; and (iv) revoking Plaintiff's reasonable accommodation.

## III.   FIRST DATA ADMITS VIOLATING THE ADA

First Data is prohibited against discriminating against the Plaintiff on the basis of disability in regard to compensation and other terms and conditions of employment.[3] 42 U.S.C. §12112(a). This includes acts based upon perceived disability. 42 U.S.C. §12102(1).  The evidence is clear that Plaintiff's disability was the <u>SOLE</u> motivating factor in Marino's decisions to (i) force Plaintiff onto unpaid leave (with the opportunity for reduced payments under STD benefits), and (ii) revoke Plaintiff's remote access reasonable accommodation. The DSOF ¶¶82-85 and the

---

[3]    42 U.S.C. §12112(b) defines ADA discrimination as including failure to make reasonable accommodations.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**                    3

Defendants' Reply at page 11, admit that Marino made these decisions because of his perception that Plaintiff needed to focus on his health. Those actions and that motivation violate the ADA.[45]

There is no business justification defense to these admitted violations. There is no *McDonnell Douglas* burden shifting to be applied. First Data admits it altered Plaintiff's compensation and terms and conditions of his employment based solely upon Plaintiff's disability and perceived disability (potential recovery from a surgery that never occurred).

## IV.   FMLA – ENTITLEMENT TO REINSTATEMENT

The FMLA provides two fundamental entitlements: (i) the entitlement to twelve weeks unpaid leave and (ii) the entitlement to be reinstated to one's position or equivalent position at the end of leave. 29 U.S.C. §2612(a) & 29 U.S.C. §2614(a). [6]

### A.  DEFENDANTS' INTERFERED WITH REINSTATEMENT ENTITLEMENT

Defendants admit that on December 15, 2016, they designated October 24, 2016 to January 16, 2017 as Plaintiff's twelve weeks of FMLA leave, and that his return was conditioned on a physician's return authorization. Plaintiff did exactly as instructed; yet he was not reinstated. Defendants' knowingly violated the FMLA. Upon accepting Plaintiff's return to work

---

[4]     In the November 19th text messages [Ex 45], when Plaintiff was advised by Marino of his forced leave, Plaintiff attempted to engage in an interactive process by asking whether he was being fired. Marino stated that he was forcing leave to "allow [Plaintiff] to focus all energies on getting better and not being burdened by First Data Work." This statement proves Plaintiff had been working on First Data business from September 6, 2016 through November 19, 2016, and that Plaintiff's disability was the motivation for forcing leave and revoking access.

[5]     Setting aside the issue of whether underlined forced leave is an accommodation, it certainly is not an interactive process. Even if Plaintiff's leave was a reasonable accommodation, First Data's employee handbook provides that while on ADA leave as an accommodation, Plaintiff's position is protected (without any qualifiers as to RIF's or changing leave dates). [PSOF ¶11] The failure of First Data to reinstate Plaintiff after, as assumed under the standard of review, agreeing to leave as an accommodation, is an independent violation of the ADA for failure to complete the accommodation under 42 U.S.C. §12112(a) and (b)(1) and failure to comply with First Data policy.

[6]     The amount of ink spent on the term "strict liability" is a waste. The entire point (whether "strict liability" is the proper term or not) is that motivation is not a defense to FMLA interference. Either an employer provided the employee the entitlements required by the FMLA or the employer did not. 29 U.S.C. §2615(a)(1) ("It shall be unlawful for any employer to interfere . . . .") Defendants interfered with and denied Plaintiff his entitlement to be reinstated. There is nothing in the statute that provides for a "non-discriminatory business justification" as justification for interfering with entitlements. Title VII concepts do not apply in this FMLA interference context.

authorization, an <u>affirmative duty to reinstate</u> was triggered. *Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005). A restoration cannot be to a position slated for layoff and assigning Plaintiff's job to Ording also constitute interference. 29 C.F.R. §825.216(a)(1).

While Plaintiff was on disability benefits, First Data paid STD (66 2/3% of salary) for the first 90 days, and thereafter First Data was fully insured and Plaintiff would be paid by MetLife, at no further salary expense to First Data. [PSOF ¶329] Marino testified that the only reason Plaintiff was terminated was because Plaintiff announced he was returning to work, meaning First Data would have to start paying salary instead of MetLife paying LTD. [PSOF ¶1] A termination, motivated in part by Plaintiff exercising his FMLA entitlement to reinstatement, is an interference violation of the FMLA. *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168-9 (2d Cir. 2017)

## B.  A REDUCTION-IN-FORCE IS NOT A DEFENSE

There is no "business justification" or similar defense in the statutory language of the FMLA. 29 C.F.R. § 825.214 provides that "An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." As set forth in the Motion, Plaintiff's job was merely restructured in his absence and, therefore, he still was entitled to reinstatement. Defendants are conflating Title VII decisions (often quoted in their briefing) with the statutory and regulatory requirements of the FMLA. The FMLA establishes affirmative obligations on the employer (e.g. reinstatement) that do not have equivalents in the proscriptions against Title VII discrimination.[7]

---

[7]   "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**                                    5

DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN under 29 C.F.R. §825.216(a)(1)[8] that provides "An EMPLOYER MUST BE ABLE TO SHOW that an employee would not otherwise have been employed AT THE TIME REINSTATEMENT IS REQUESTED in order to deny restoration to employment."[9] There is absolutely no evidence that Plaintiff would have been terminated as part of a RIF had he been at work. The burden is on Defendants to show he would have been terminated prior to his request for reinstatement. It is not the burden of the Plaintiff to prove otherwise.[10] At the time Plaintiff requested reinstatement (November 19th, December 22nd and 28th, January 5th, and then with delivery of physician's authorization on January 10th), Plaintiff would have been employed and not yet terminated in the "RIF." Looking at the evidence most favorable to the Defendants, a decision to terminate the Plaintiff on January 13th can in no way constitute evidence that Plaintiff would have been terminated prior to his repeated requests for reinstatement. The Defendants have not, and can never, meet their burden of proof under 29 C.F.R. §825.216(a) because (i) Plaintiff was not terminated prior to his request for reinstatement, and (ii) there are no written RIF selection criteria or plans to apply to determine whether Plaintiff would have been included if at work (RIF decisions are made on the fly without standards or third-party review). [PSOF ¶ 245] Therefore, the termination of Barger

---

[8]   29 U.S.C §2614(a)(3)(B) provides "Nothing in this section shall be construed to entitle any <u>restored</u> employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken leave." In other words, an employee returning from leave is not entitled to no more than an equivalent position. The past tense "restored" in this statutory provision means that it does not apply to an employee on leave that is not "restored." That is the clear and proper usage of the past tense in this context. The judiciary (Article III) and the executive (Article II) continually have gotten it wrong and have infringed on the authority of Article I Congress. <u>See</u> footnote 14.

[9]   Once an employee submits a statement from [his] health care provider which indicates that [he] may return to work, the employer's duty to reinstate him has been triggered under the FMLA. *Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005); see also *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013).

[10]   Nearly all of the "RIF" cases cited by Defendants involve either complete office or plant closures, or reductions that were planned BEFORE the employee took leave. Here, under the admitted facts, the planning of the supposed "RIF" did not occur until after Plaintiff had already notified First Data management of his request to return.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**                    6

on January 13, 2016, even if conducted in a RIF, is not a defense to the Plaintiff's interference claim due to Defendants inability to meet their burden of proof.

## C. RETROACTIVE RE-DESIGNATION IS NOT A DEFENSE

29 CFR §825.300(b)(1) and (d) require an employer to notify of eligibility and designate leave "when an employer has enough information" to determine whether leave is being taken for a FMLA-qualifying reason the employer must notify the employee . . . within five business days." The evidence is clear that senior management of First Data was aware of Plaintiff's condition and his continued work following surgery. [PSOF ¶50-57] At no time during that period was FMLA notice of eligibility notice provided or leave designated.[11] All Defendants (i.e. First Data management) knew the date of Plaintiff's surgery and his remote work. The mere fact that MetLife, Voycheske, and Leave Management learned the information already known to senior management is irrelevant and does not change the obligation of the employer to notify of eligibility and designate leave. If First Data believed Plaintiff was on leave starting September 6th based on the information known to management, then First Data was under those obligations. First Data did not notify of eligibility until November 19th and did not designate leave until December 15th as October 24th to January 16th. Voycheske and MetLife learning of the surgery date is irrelevant. Johnson,[12] Marino, Bisignano, Charron, and Whalen (i.e. First Data

---

[11]   First Data is judicially estopped (*New Hampshire v. Maine*, 532 US 742, 749-750 (2001)) from asserting that Barger was on any type of leave based upon Defense Counsel's representations to the Court in this case in which he stated that Barger had not taken vacation or paid-time off and that Barger was intentionally kept on active payroll. [See ECF 64-2 at 34:9-11; 36:22-37:19; 38:6-24] The date recounting and re-designation defense should be excluded completely as inconsistent with the position taken by Defendants to successfully defeat Plaintiff's motion to compel 30(b)(6) depositions. The Defendants cannot now take a position inconsistent with that previously affirmatively asserted in this case to defeat Plaintiff's motion to compel and 72(a) appeal.

[12]   Johnson is essential to this story. Before January 10th, Johnson was being told by Marino and Whalen to make sure Plaintiff had his physician's release before he could return. Johnson received that release on January 10th. Johnson was advised by Marino to terminate Plaintiff on January 13th. [PSOF ¶123-124] Given all the communication over the need for a physician's release before January 10th, and Johnson accepting the release on the 10th, any claim that there was a decision to terminate Plaintiff prior to the 10th should be given no credibility. Johnson, who was directly involved in the planning of the reduction [PSOF ¶238], accepted the doctors note because

management) all had that information in September. [PSOF ¶40-43] First Data learned nothing on January 5th from that it did not already know from Barger. 29 CFR §825.301(d) therefor is inapplicable. Moreover, §825.301(d) only applies "if an employer does not designate leave as FMLA leave." First Data did designate leave on December 15th. There is no provision in the statute or regulations for "re-designating leave" after it has already been designated.[13]

### D.  PLAINTIFF WAS ENTITLED "TO BE" RESTORED – *Chevron, Escriba, Wysong*

The plain language of 29 USC § 2614(a)(1)(A)[14] provides that Plaintiff was "entitled"

---

there had not been a decision to terminate Plaintiff and the acceptance of that letter triggered the "AFFIRMATIVE DUTY" to reinstate.

[13]   This case is exactly the type of case for which the courts have left open the concept that forced leave can be FMLA interference that ripens upon leave not being available when needed due to prior forced, and unwanted leave. From September 6th through November 19th, Plaintiff did not request and Defendants did not require Plaintiff to take leave and Plaintiff worked on company business daily and was paid through normal payroll. Management was fully aware of Plaintiff's condition and work. From Plaintiff's perspective, he was continuing to work with an accommodation on regular payroll. When forced to take leave, Plaintiff completed his forms and received a leave designation of October 24 to January 16. Plaintiff relied on that representation he received on December 15th and scheduled an appointment to receive his physician's notification on January 10th with plenty of time to satisfy the designated leave end date (Defendants are estopped from arguing that determination due to Plaintiff's reliance of the designation notice in planning his return to leave and his treatment, and the failure of Defendants to prove under the mailbox rule discussed in the Motion that the second "re-designation" notice was ever sent). Yet, the Defense rests on the argument that on January 5th Voycheke learned that Plaintiff's surgery was on September 6th and recast the calculation of designated leave such that Plaintiff's newly designated leave ended just a week after he was forced to take leave and that Plaintiff was not on FMLA leave on January 10th when he delivered his physician's release. Not only did the Defendants force Plaintiff to take leave against his will, but they also unilaterally force Plaintiff, through date re-designation, to take leave during periods in which both he and the company were aware that he was working. This is exactly the situation where forced leave, and the raised defense of unilateral re-designation (contrary to all the facts known by management for four months) constitute an interference cause of action. See *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014); *Wysong v. Dow Chemical*, 503 F.3d 441 (6th Cir. 2006). The forcing of leave and re-designation left Plaintiff without leave when it was need. **Also, if the defense is correct, and the Plaintiff was not on FMLA leave on January 10th, the acceptance of his physician's letter was a violation of the ADA.** See 42 U.S.C. §12112(d)(4)(A); *Conroy v. N.Y. State Dept. of Corr. Servs.*, 333 F.3d 88, 95-96 (2nd Cir. 2003).

[14]   "When construing a statute, [the Court must] begin with its language and proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning...." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015).  "If the meaning is plain, the inquiry ends there." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). The Supreme Court has directed that before deferring to an agency's regulations, a court must first employ "traditional tools of statutory construction' to determine whether Congress has expressed its intent unambiguously on the question before the court." *Chevron, USA Inc. V. Natural Res. Def. Council, Inc.*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43 (1984). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9.

upon return from leave "to be restored" to his position or equivalent position.[15] Congress after years of debate (see Exhibit D to ECF 37-2 at page 52) decided on just one exception to this "entitlement." See 29 USC §2614(b) that provides that the sole statutory exception to the restoration entitlement is that an employer may deny restoration of a key employee (i.e. top 10%) to prevent "substantial and grievous economic injury to the employer," but only if proper notice is given to the employee, the employee is given the opportunity to return, and the employee does not return early. There are no other exceptions in the statute. Congress could have, but did not, include a business justification exception (because all returns from unpaid leave increase an employer's cost, which is why the FMLA was needed in the first place) or a RIF exception. There is only one statutory exception and it does not apply to this case. Plaintiff was in the top 10% of employees. [DSOF ¶121 and 136] First Data did not exercise its obligations to give Plaintiff notice and the opportunity to return early or be terminated (the only statutory exception). The plain language of §2614 says all employees are entitled to be restored, except those key employees that have received notice. All the additional exceptions to restoration developed over the years are creations of the of the DOL and the courts, and they are inconsistent with the plain and unequivocal language of Congress of the right to be restored with a single limited exception.

Article III decisions and Article II regulations contrary to this plain language violates the Article I powers of Congress. Plaintiff understands that this interpretation runs counter to years of regulatory work and FMLA jurisprudence. But, Plaintiff's position is correct. There is an

---

[15]   See Plaintiff's Motion for Judgment on the Pleadings discussing the incongruence of the interpretation of §2612(a) as being absolute, with the interpretation of the identical language in §2614(a) for no reason being absolute. The DOL and the judiciary have strayed from the cannon of statutory construction and from the ruling in *Cheveron* and its progeny.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RULE 56 MOTION**          9

Article I clearly express statutory entitlement "TO BE RESTORED" with only one statutory exception. After applying *Chevron* to 29 U.S.C. §2614, to interpret the clear language of both the "to be restored" entitlement and past tense of "restored" discussed above, the entirety of the RIF defense in this case asks this Court to uphold regulations and decisions that patently are inconsistent with the expressed intent, and clear language of Congress. See also discussion of *Chevron* in ECF 37.

## V.  CONCLUSION

The Defendants have admitted violating Plaintiff's entitlement to restoration from FMLA leave, admitted violating the ADA through making decisions on employment conditions based on the Plaintiff's disability, and revoking a reasonable accommodation unilaterally without interaction. In defense of these admissions, Defendants advocate the proposition that unilaterally changing dates and constant RIFs (really, restructurings that are not protected 29 C.F.R. §825.214) are total defenses. Moreover, these defenses are inconsistent with the plain language of the statute.  The Plaintiff is entitled to judgment as a matter of law under the FMLA and ADA. Damages are easily calculable as described in the Motion. Plaintiff was fired because he wanted to requested reinstatement from forced leave. If the FMLA and ADA are to have any meaning, this has to be the case where that meaning is given.

February 28, 2019                          Respectfully Submitted,

                                           THE LAW OFFICE OF SHAWN SHEARER, P.C.

                                           ____/s/ Shawn Shearer_____
                                           SHAWN SHEARER
                                           *shawn@shearerlaw.pro*

                                           ZEITLIN & ZEITLIN, P.C.

                                           ____/s/ David Zeitlin_____
                                           DAVID ZEITLIN
                                           *david@zeitlinlawfirm.com*