**EXHIBIT 1**

**EXHIBIT 1**
**DEFENDANTS' MISCHARACTERIZATION OF FACTS AND LAW**

The misrepresentations of facts, the record, and the law are numerous in Defendants' Consolidated Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and Reply in Further Support of Defendants' Motion for Summary Judgment (the "Opposition"). Corrections to those misrepresentations are set forth below. All Exhibit References are to the Exhibit's attached to the Shearer Declaration.

1. **Opposition page 1** (<u>Standard of Review</u>) – The Defendants' allege that the Plaintiffs Motion and Opposition are "largely repetitive." This is not true. The Plaintiff's Motion examines the facts in the light most favorable to the Defendants' and concludes Plaintiff's should be awarded judgment on the basis of admitted violations of the ADA and FMLA, and the Plaintiff's Opposition looks at the evidence in the light most favorable to the Plaintiff to demonstrate material facts to be tried exist. These different standards of review necessitate differing analysis of the same evidence but with differing standards of review.

2. **Opposition page 2** (<u>Mischaracterization of Law</u>) – The Defendants intentionally mischaracterize the wording of 29 U.S.C. §2614(A)(3). The Defendants' statement that "<u>employees seeking job restoration</u>" are not entitled to any right, benefit, . . . to which the employee would have entitled had the employee not taken leave. 29 U.S.C. §2614(A)(3) provides a "<u>restored employee</u>" is not entitled . . ."  There is a significant difference between a "restored employee" as used in the statute and an "employee seeking job restoration" referenced in the Opposition.

3. **Opposition page 4 to 5** (<u>Mischaracterization of Facts in Dispute</u>) **–** Defendants bullet point several facts that are claimed to be undisputed. This is a complete mischaracterization of the facts as set forth in the parties' Rule 56.1(a) and 56.1(b) statements filed in this case.

> **First Bullet** – Plaintiff disputes that Barger's name appeared on a RIF list. Benhardt (VP in charge of human sources planning) testified that the initial list was a compilation of all employees in the top 3,000 in November as the basis for beginning the planning process. [PSOF ¶266] Barger's name did not appear on the "final list" until after he was notified of termination. [PSOF ¶¶239,270-274]
>
> **Second Bullet** – The cause of the growth of Barger's group (which included more than the training group) is contested. [PSOF ¶41, as amended by Notice of Errata]
>
> **Third Bullet** – Barger <u>does contest</u> the statement that Barger was in a RIF.  Barger was

1

added to the RIF until after he was notified of termination and after Plaintiff's counsel became involved in severance negotiations to create a defense to this lawsuit [PSOF ¶¶270-274] Moreover, most of the RIF cases cited by Defendants involve a RIF with specific selection criteria and planning a RIF prior to taking leave (e.g. RIFs where historical discipline or poor performance reviews were the delineated and clear criteria for selection and the plaintiff's pre-leave conducted selected them for the RIF, or RIF's that were being planned before leave was taken – neither of which apply to this case where Defendants admit that there is no selection criteria and the RIF was being planned after Plaintiff's leave started and after Plaintiff advised management he would be returning).

**Fifth Bullet –** Defendants' admit Barger's position was merely restructured, which is a restructuring entitling Barger to be restored to an equivalent position under 29 C.F.R. §825.214.

**Seventh Bullet –** Plaintiff does contest the economics of the RIF and its legitimacy as a business decision [PSOF ¶¶250-265]

**Eighth Bullet –** Barger's testimony about whether leave played a factor in his inclusion of the RIF is inadmissible. Barger has no first-hand knowledge of the RIF decision making and Barger asserts he was not included in the RIF until after his termination. [PSOF¶239, 270-274]

  4.  **Opposition page 5 and 6** (<u>Employer's Burden of Proof</u>) - The Defendants' mischaracterize the burden of proof. As provided in 29 C.F.R. §825.216(a) the burden of proof is on the employer to demonstrate that the employee would not otherwise have been employed <u>at the time reinstatement is requested</u>. Defendants will never be able to meet their burden because (i) Plaintiff was not terminated prior to requesting reinstatement and (ii) decisions to include an employee in a RIF are at the discretion of management, and there is no way to know if how that discretion would have been exercised if Plaintiff had been working and because First Data does not use any written selection criteria to apply to make the determination [PSOF ¶245].

  5.  **Opposition page 6** (<u>Mischaracterization of Facts in Dispute</u>) – Defendants wrongly state that it is undisputed that the Group had unnecessarily expanded under Plaintiff's leadership. That statement is contested. [PSOF ¶41, as amended by Notice of Errata]

  6.  **Opposition page 6** (<u>Mischaracterization of Facts in Dispute</u>) – Defendants

2

wrongly state that it is undisputed that RIFs in 2015-2017 reduced employee headcount. This statement is not only disputed, the CEO admits headcount (combined employees and contractors) and compensation expense has increased. [PSOF ¶¶253-265, 297]

7. **Opposition page 8** (Mischaracterization of Facts in Dispute) – Defendants' wrongly state that Barger's inclusion on the RIF list was finalized on January 9, 2017. There is substantial evidence otherwise and Benhardt testified that the list is always fluid and that no individual is finally in a "RIF" until they actually are notified of termination. [PSOF ¶267]

8. **Opposition page 8** (Inapplicability of Title VII) – Defendants' cite to *Garcia v. Henry St. Settlement* for demonstration that position elimination is a legitimate business reason. This case is a Title VII case that does not take into account the "entitlement" and affirmative obligations of the employer to restore in the FMLA and does not take into account 29 CFR §825.214 that provides a restructuring is not an excuse for a failure to reinstate. In addition, interference claims are not discrimination claims. See *Callison v. City of Philadelphia* 430 F.3d 117 (3d Cir. 2005)**.**

9. **Opposition page 9** (Mischaracterization of Facts) **–** Plaintiff did not provide false information regarding his medical condition. Barger's physician testified that Barger was hospitalized for one night for pneumonia like symptoms, which was the basis for the physician providing the October 24th date on his medical information form. Ex 1 at 24:10-21.

10. **Opposition page 9** (Last Day Working Issue) – Defendants' admit that their entire date recounting and reclassification is based on this e-mail exchange on January 5, 2017 between Voycheske and Barger "Can you clarify when you stopped working?" and the response from Plaintiff was "9/4. My operation was 9/6." This was not new information to First Data. Senior management was aware of Barger's surgery date the day it happened, and knew Barger had been working remotely since. Barger testified that he thought Voycheske's question meant what his last day was going into the office. He answered "9/4," which was a Sunday when he went into the office, not a workday. During her deposition, when Johnson was asked "who then, would be able to identify Mr. Barger's last day of work in the system" Johnson responded with the questions "When you say last day worked, In what sense? On the premises?" [PSOF¶340] As fully outlined in footnote 22 of ECF 64 and PSOF ¶¶336-341, three First Data human resources professionals were unable in their depositions in 2018 to answer the question of when Barger "stopped working" and Johnson did not know who would be able to answer that question.

3

**11.**     **Opposition page 10 footnote 6** (<u>Misstatement of Facts</u>) – Defendants knowingly misstate the facts regarding Barger's receipt of long-term disability benefits from MetLife. Barger received two checks from MetLife. Those checks were deposited in Plaintiff's counsel's trust account and remain there today. Plaintiff's counsel advised MetLife of the location of those funds in the spring of 2017. MetLife has not requested the funds be returned. Documents evidencing this notice to MetLife were produced in discovery by both Plaintiff and MetLife. The drama and insinuation that the Plaintiff has received and kept funds he is not entitled to should be disregarded.

**12.**     **Opposition pages 10 to 11** (<u>Forced Leave is Actionable Interference</u>) – Defendant's rely heavily of *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006) for the proposition that forced leave is not actionable. The Second Circuit stated in *Sista* at 175 "If Sista were able to demonstrate that such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right protected under the FMLA, a cause of action might lie. 42 U.S.C. §§2615(a), 2617(a)." Barger did not request leave until forced to take leave on November 19th. The entire defense assertion that Barger was not on FMLA leave on January 10th, (7.5 weeks after being forced to take leave) due the forced unilateral retro-active re-designation of leave dates, conclusively proves that the forcing of leave on November 19th and the January 5th unilateral forcing of recalculated leave dates interfered with Barger's right to take up to twelve weeks of leave that was suddenly unavailable when needed on January 10th due solely to the unilateral actions of Defendants, not to Plaintiff's voluntary use of FMLA leave prior to November 19th. <u>See</u> *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014). *Wysong v. Dow Chemical*, 503 F.3d 441 (6th Cir. 2006).

**13.**     **Opposition page 12** (<u>Judicially Estopped from Denying Barger's Work</u>) – Defendants are judicially estopped from arguing Barger was not working. See this Reply's footnote 11. *Museau v. Heart Share Human Servs. Of New York*, 2014 WL 1277006 relied upon by Defendants is inapplicable. That case involved an employee that requested leave and voluntarily worked while knowingly on leave after she had received her FMLA leave disclosures and designation. Under 29 C.F.R. §§825.300(b)(1) and (d) when an employer has enough information to determine that an employee's leave may be, or is, respectively, for an FMLA qualifying purpose, the employer must, within 5 business days, provide the employee notice of eligibility and designation notice, respectively. An employer's failure to timely designate when

the employer has knowledge of FMLA qualifying reasons is a waiver of the employer's ability to retroactively designate. See *Viereck v. City of Gloucester City*, 961 F.Supp. 703, 708 (D.N.J. 1997). Plaintiff did not receive his notice of eligibility until Marino (who had been aware of Barger's surgery since September 6th) forced Barger onto FMLA leave on November 19, 2016 and he did not receive a designation notice until December 15, 2016. The date of Mr. Barger's surgery had been known by First Data senior management since before September 6th. Therefore, Barger could not have been on FMLA leave from September 6th through November 19th because with that knowledge First Data did not provide the required eligibility notice or designation notice within 5 business days at any point during that period. Defendants admitted on the record [ECF 64-2 at 34:9-11; 36:22-37: 19; 38:6-24] that Barger had not taken any paid-time-off prior to November 19th. Rather, Barger was working and First Data intentionally kept him on the regular payroll. He was not on leave of any type from September 6th through November 19th.

   14. **Opposition page 13 to 14** (Mischaracterization of Plaintiff's ADA Claims) – Defendant's completely mischaracterize Plaintiff's ADA claim to create a strawman. Plaintiff's claim is that the decision to force Barger onto leave and STD (reduced pay) (both adverse employment actions) was based solely upon Marino's observation of Barger's health on November 3rd and Marino's belief that Barger may need additional surgery (surgery that did not occur). Taking adverse employment actions based on a disability or a perceived disability is the violation of the ADA. 42 U.S.C. §§12112(a) & 12102(1).

   15. **Opposition page 14** (Mischaracterization of Plaintiff's Retaliation Claim) – Defendant's completely mischaracterize Plaintiff's retaliation claim to create a strawman. Plaintiff alleges, and proves through Marino's testimony, that the reason Barger was terminated was because he exercised his FMLA right to return. [PSOF ¶1]

   16. **Opposition page 17** (Mischaracterization of Plaintiff's Employer Allegations) – Another strawman is created by Defendants construing Plaintiff's position to be that all CEO's are employers. That is not the case. Plaintiff's position is that this CEO, Bisignano, under Barger's particular circumstances was an employer. Bisignano was directly involved in Barger's choice of doctor, and testified that he is responsible for everything at First Data, and that he was directly involved in the decision to RIF the top 10% (the Defendants admit Bisignano's decision to initiate terminations on page 7 of the Opposition). [PSOF¶147-165]

5