

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

May 1, 2019

**Via ECF**

Honorable Frederic Block, U.S.D.J.
U. S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    ***Steven B. Barger v. First Data Corporation et al.*, Civil Case No. 1:17-cv-4869**

Dear Judge Block:

We write concerning the April 18, 2019, decision in *Natofsky v. City of New York*, Case No. 17-2757 (2nd Cir. April 18, 2019).[1] In that case, the Second Circuit addressed the causation standard for claims under the Americans with Disabilities Act. Count II of Plaintiff's Supplemental Complaint alleges discrimination under the ADA and the parties have cross-moved for summary judgment on this claim. Please advise if the Court would like supplemental briefing on the application of *Natofsky* to this matter.

This case is currently on the trial calendar for June 17, 2019. We are inquiring as to when the Court would like to convene a pre-trial conference to set deadlines for motions *in limine*, voir dire, jury instructions, and other pre-trial matters.

Respectfully submitted,

*/s/ Gary B. Eidelman*
Gary B. Eidelman

Enclosure

cc:    Counsel of Record (via ECF)

---

[1] Enclosed is a copy of the Second Circuit's opinion.

500 E. Pratt Street ◆ Suite 900 ◆ Baltimore, MD 21202-3133
Phone: (410) 332-8600 ◆ Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

17-2757-cv
*Natofsky v. City of New York*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2018

ARGUED: SEPTEMBER 21, 2018
DECIDED: APRIL 18, 2019

No. 17-2757

————

RICHARD NATOFSKY,
*Plaintiff-Appellant,*

v.

THE CITY OF NEW YORK, SUSAN POGODA, SHAHEEN ULON, MARK
PETERS, and JOHN and JANE DOE, said names being fictitious, the persons
intended being those who aided and abetted the unlawful conduct of the named
defendants,
*Defendants-Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 14 Civ. 5498 – Naomi Reice Buchwald, *Judge.*

————

Before: WALKER, CHIN, *Circuit Judges*, and Keenan, *District Judge.*[*]

---

[*]     Judge John F. Keenan, of the United States District Court for the Southern
District of New York, sitting by designation.

Plaintiff-Appellant Richard Natofsky appeals from a judgment of

the United States District Court for the Southern District of New York (Naomi R.

Buchwald, *Judge*) granting summary judgment to Defendants-Appellees the City

of New York and certain of its employees (jointly, "Defendants").  Natofsky, who

suffers from a hearing disability, brought this action alleging violations of

Section 504 of Rehabilitation Act of 1973 (the "Rehabilitation Act"), codified at 29

U.S.C. § 794(a)-(d), and state and city law.  Natofsky claims that, during his

tenure working for the New York City Department of Investigation (the "DOI"),

he experienced several adverse employment actions because of his hearing

disability, including his eventual demotion.  He also claims that the DOI failed to

accommodate his disability and retaliated against him.  The district court held

that no reasonable jury could conclude that Natofsky had experienced any

adverse employment action "solely by reason of" his disability and further held

that Natofsky failed to establish a failure-to-accommodate or retaliation claim.

We hold that a plaintiff alleging an employment discrimination claim under

Section 504 of the Rehabilitation Act must show that the plaintiff's disability was

a but-for cause of the employer's action, not the sole cause.  We conclude,

however, that Natofsky failed to demonstrate that the adverse employment

decisions he experienced would not have been made but for his disability.

Accordingly, the district court's award of summary judgment to Defendants is

**AFFIRMED**.

Judge Chin dissents in a separate opinion.

————

FOR PLAINTIFF-APPELLANT:    WILLIAM W. COWLES (Samuel O. Maduegbuna, *on the brief*), Maduegbuna Cooper LLP, New York, New York.

FOR DEFENDANTS-APPELLEES:    MELANIE T. WEST, Assistant Corporation Counsel (Richard Dearing, Claude S. Platton, Of Counsel, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

————

Keenan, *District Judge*:

Plaintiff Richard Natofsky appeals from a judgment of the United

States District Court for the Southern District of New York granting summary

judgment to Defendants (Buchwald, *J.*).  Natofsky served as the Director of

Budget and Human Resources at the New York City Department of Investigation

(the "DOI") from December 2012 until March 2014, when he was demoted.  He

resigned from the DOI in June 2014.  Natofsky, who suffers from a hearing

disability, brought this action against the City of New York and three former high-ranking employees at the DOI alleging violations of Section 504 of Rehabilitation Act of 1973 (the "Rehabilitation Act"), codified at 29 U.S.C. § 794(a)-(d), and state and city law. Natofsky claims that, during his tenure at the DOI, he experienced several adverse employment actions because of his hearing disability, including his demotion. He also claims that the DOI failed to accommodate his disability and retaliated against him.

The district court held that no reasonable jury could conclude that Natofsky had experienced any adverse employment action "solely by reason of" his disability and further held that Natofsky failed to establish a failure-to-accommodate or retaliation claim. Accordingly, the district court granted summary judgment in favor of Defendants.

We hold that a plaintiff alleging an employment discrimination claim under Section 504 of the Rehabilitation Act must show that the plaintiff's disability was a but-for cause of the employer's action, not the sole cause. We conclude, however, that Natofsky failed to demonstrate that the adverse employment decisions he experienced would not have been made but for his disability. Thus, the district court's award of summary judgment to Defendants is **AFFIRMED**, albeit on different grounds.

## BACKGROUND

The facts are summarized as follows:

### A. Natofsky's Disability

Natofsky suffered nerve damage as an infant, leaving him with a lasting and severe hearing impairment. He wears hearing aids and, to fully understand what someone is saying, has to focus intently on the speaker and read lips. He also speaks imperfectly and more slowly than the average person.

### B. The DOI Hires Natofsky

The DOI hired Natofsky in December 2012 as the Director of Human Resources and Budget with a starting salary of $125,000. His direct supervisor was Shaheen Ulon, the then Deputy Commissioner for Administration. When the DOI hired Natofsky, Rose Gill Hearn was the Commissioner of the DOI.

In November 2013, Bill de Blasio was elected mayor of New York City. Shortly before the de Blasio administration came into office, Natofsky received two awards: one for "going above and beyond" in his job performance and one for a good record of performance. On December 31, 2013, Natofsky also received a memo from Hearn informing him that the DOI was increasing his salary by $4,000 for good performance.

At the end of 2013, as a result of the mayoral transition, Hearn left the DOI. In February 2014, Mark Peters assumed the role of Commissioner. He appointed Susan Pogoda as the DOI's Chief of Staff and Deputy Commissioner for Agency Operations. Natofsky's supervisor, Ulon, remained in place.

### C. Ulon's Treatment of Natofsky

Natofsky testified that when he started at the DOI, he informed Ulon that he had a severe hearing impairment and, consequently, might have trouble hearing her. He also told her that she would have to face him when speaking and that background noise made hearing more difficult for him.

Although the first three months of Natofsky's employment passed without significant incident, in or about March 2013, Ulon asked Natofsky to follow up on e-mails more quickly. Natofsky replied that he could not respond to emails as promptly as Ulon wanted because he had to put "extraordinary effort into listening" to a speaker during meetings and, thus, could not multitask while listening in meetings. He also suggested that "if someone has an extremely urgent or time sensitive issue, he or she contact [a secretary] so that she can alert me." Ulon and Natofsky had no further discussions on the topic.

In June 2013, Ulon requested that Natofsky arrive at work between 9:00 a.m. and 10:00 a.m., as opposed to between 8:00 a.m. and 8:30 a.m., which

- 6 -

was when Natofsky usually arrived. She also requested he submit fewer leave requests, although the requests could be for longer periods of time. Natofsky contacted Hearn to object to Ulon's requests; he explained that an early arrival allowed him to catch up on emails that he could not respond to while in meetings, and that Ulon was not understanding of his hearing needs. Hearn organized a meeting with Ulon and Natofsky to discuss Natofsky's concerns, after which Ulon withdrew her demands.

On March 10, 2014, after Hearn's resignation and during Peters's and Pogoda's tenures, Ulon wrote Natofsky a counseling memorandum addressing his performance deficiencies. She asked him "to carefully review and edit the work of [his] staff on routine HR assignments, including the new employee welcome letters and job postings" as there had been "numerous, repeated grammatical/typographical and other errors on this type of correspondence."

In April 2014, Pogoda informed Ulon that the DOI was eliminating Ulon's position. Pogoda offered Ulon a job with a reduced salary in the newly created New York Police Department Office of the Inspector General, but Ulon declined and resigned on May 1, 2014.

On her last day, Ulon provided Natofsky with a written evaluation of his work performance from January 2, 2012 to December 31, 2013. She rated

his overall performance a two out of five and gave him a "needs improvement" rating in seven of fourteen categories. She stated, among other complaints, that "tasks have not been completed in a timely manner" and "[e]mail responsiveness needs improvement." On May 8, 2014, Natofsky appealed his evaluation to Pogoda, which she denied on September 11, 2014.

### D. Pogoda and Peters's Treatment of Natofsky

Pogoda met Natofsky for the first time on February 21, 2014. According to Natofsky, Pogoda kept staring at his ears and observing him while he spoke. Natofsky testified that, on or about March 6, 2014, he told Pogoda about his hearing disability and that, in response, she shook her head and rolled her eyes at him. Natofsky further testified that throughout March and April 2014, Pogoda was noticeably impatient when speaking to him and told him that he needed to speak more clearly and quickly.

In March 2014, Peters had at least one meeting with Pogoda, Ulon, and Natofsky in which Peters asked about the number of additional people he could hire based on the budget. Ulon and Natofsky did not know the answer, prompting Peters to express his frustration with them to Pogoda. On March 5, 2014, Pogoda emailed a DOI Associate Commissioner that "Shaheen [Ulon] and Richard [Natofsky] are clueless."

In May 2014, Pogoda wrote Natofsky informing him that he would

be demoted to Associate Staff Analyst, and that his salary would be decreased to

$68,466. Natofsky's position was temporarily assumed by two non-disabled

employees: Edgardo Rivera, the new Assistant Commissioner for

Administration, and Shayvonne Nathaniel, the new Director of Administration

for the Office of the Inspector General. Peters testified that he made the decision

to demote Natofsky, although he discussed it with Pogoda.

## E. Retaliation and Natofsky's Resignation

Natofsky wrote an email to both Peters and Pogoda on May 28, 2014,

protesting their decision to demote him. On June 6, 2014, Pogoda informed

Natofsky that he would be moved from his private office to a cubicle. The

cubicle was in a high-traffic, high-volume area, and had been used previously by

Natofsky's secretary. Natofsky alerted Rivera to the loud volume, and Natofsky

was subsequently moved to a different location.

On June 18, 2014, Natofsky appealed his demotion to the Deputy

Commissioner for Administration in the Department of Citywide Administrative

Services (the "DCAS"), stating that he "was given no justifiable reason as to why

[his] salary was so drastically cut," and that his demotion was "illegitimate and

contrary to law." On June 23, 2014, DCAS wrote to Rivera regarding Natofsky's

nearly fifty percent pay cut:  "In general, managers should not lose more than

20% of their salary when they are reassigned to a lower managerial level or to

their permanent leave line."  However, DCAS noted that a twenty percent cut

from $125,000 -- Natofsky's prior salary -- would result in a salary above the

maximum allowed for an Associate Staff Analyst, Natofsky's new position.

DCAS thus ordered Natofsky's salary be raised from $68,466 to $88,649 -- the

maximum permitted for Natofsky's new title.  Natofsky's salary was readjusted

one month later.

   In December 2014, Natofsky resigned from the DOI and began

working as an Operations and Budget Administrator at the New York City

Department of Transportation with a salary of $100,437.

## F.  The District Court's Decision

   Natofsky filed the complaint in this action on July 22, 2014, alleging

that the City of New York, Pogoda, Ulon, and Peters violated the Rehabilitation

Act by discriminating against Natofsky on the basis of his disability, by failing to

accommodate his hearing impairment, and by retaliating against him when he

complained about their discriminatory actions.  He brought similar claims under

state and local law, although he also premised those claims on age

discrimination.

Following discovery, Defendants moved for summary judgment, which, on August 8, 2017, the district court granted.  Addressing Natofsky's employment discrimination claims, the district court held that (1) Ulon's request that Natofsky adjust his work hours and vacation time was not an adverse employment action; (2) Natofsky failed to show that Ulon gave her negative performance review "solely because of Natofsky's disability," (3) Natofsky failed to demonstrate that Peters demoted Natofsky for any discriminatory reason, and (4) Pogoda's purported discriminatory animus could not be imputed to Peters. The district court also held that Natofsky had failed to establish a failure-to-accommodate or retaliation claim under the Rehabilitation Act.  The district court declined to exercise supplemental jurisdiction over Natofsky's state and city law claims as it had dismissed all of the claims over which it had original jurisdiction. This appeal followed.

## DISCUSSION

### I.    MOTION TO SUPPLEMENT THE RECORD

As a preliminary matter, Natofsky has moved pursuant to Federal Rule of Appellate Procedure 10(e)(2) to supplement the record to include deposition testimony that he failed to present to the district court.  Specifically, he seeks to include additional transcript pages from Pogoda's and Peters's

depositions in an attempt to show that Pogoda, along with Peters, had the authority to demote Natofsky. Rule 10(e)(2) only permits a party to supplement the record when that party omitted material evidence "by error or accident." Fed. R. App. P. 10(e)(2). As we have previously stated, "Rule 10(e) is not a device for presenting evidence to this Court that was not before the trial judge." *Eng v. New York Hosp.*, 199 F.3d 1322 (2d Cir. 1999). Natofsky admits that he did not omit the deposition testimony he now seeks to include because of error or mistake. Thus, his motion to supplement the record must be denied. Defendants' cross-motion to strike Natofsky's supplementary materials and the portions of his brief that refer to those materials is granted.

## II. MERITS

### A. Legal Standard

Natofsky contests the district court's award of summary judgment to Defendants. We review *de novo* a grant of summary judgment, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). A moving party is entitled to summary judgment where the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute

is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B. Employment Discrimination Claims

### 1. The Rehabilitation Act's Causation Standard for Employment Discrimination Claims

The district court dismissed Natofsky's employment discrimination

claims, in part, because Natofsky could not demonstrate that impermissible bias

was "the *sole* reason" for any of the adverse employment actions he experienced.

*Natofsky v. City of New York*, No. 14 CIV. 5498 (NRB), 2017 WL 3670037, at *12

(S.D.N.Y. Aug. 8, 2017).  On appeal, Natofsky argues that the district court erred

in relying on a sole-cause standard because the Rehabilitation Act makes a

distinction between employment discrimination claims, which require courts to

adopt the more lenient causation standard used in the Americans with

Disabilities Act ("the ADA"), and other types of discrimination claims.

The Rehabilitation Act provides that no individual shall be subject to

discrimination in any program or activity receiving federal financial assistance

"*solely by reason* of her or his disability."  29 U.S.C. § 794(a) (emphasis added).

This language differs from the ADA, which makes it unlawful for an employer to

discriminate against an individual "*on the basis of* disability."  42 U.S.C. § 12112(a)

(emphasis added).  Although the two acts appear to have different causation

standards, Congress amended the Rehabilitation Act in 1992 to add a provision

which states that "[t]he standards used to determine whether this section has

been violated in a complaint alleging employment discrimination . . . shall be the

standards applied under title I of the Americans with Disabilities Act of 1990."

29 U.S.C. § 794(d).

       Whether § 794(d) requires courts to use the ADA's causation

standard for claims alleging employment discrimination under the Rehabilitation

Act is an issue of first impression in this Circuit.  The two principal cases cited by

Defendants are not dispositive.  In *Sedor v. Frank*, we affirmed the dismissal of a

plaintiff's Rehabilitation Act employment discrimination claim because the

plaintiff failed to show that his disability was "the only cause of the discharge-

triggering conduct."  42 F.3d 741, 746 (2d Cir. 1994).  In *Borkowski v. Valley Central

School District*, we also accepted the premise that to avoid summary judgment a

plaintiff must "introduce evidence sufficient to permit a factfinder to conclude

that she was denied tenure solely because of her disabilities."  63 F.3d 131, 143

(2d Cir. 1995).  In both *Sedor* and *Borkowski*, however, the parties accepted that a

plaintiff had to demonstrate that any adverse employment action was taken

"solely" because of the plaintiff's disability.  Neither party raised, and this Circuit

never addressed, the issue of whether § 794(d) altered the causation standard for

employment discrimination claims brought under the Rehabilitation Act.

We now hold that when a plaintiff alleges an employment

discrimination claim under the Rehabilitation Act, the causation standard that

applies is the same one that would govern a complaint alleging employment

discrimination under the ADA.  The text of the statute, § 794(d), requires

applying the ADA causation standard to employment discrimination claims

asserted under the Rehabilitation Act.  It is an established canon of construction

that a specific provision "controls over one of more general application." *Gozlon-*

*Peretz v. United States*, 498 U.S. 395, 407 (1991).  Subsection 794(d) is, in our

opinion, more specific than § 794(a) and, therefore, displaces the causation

standard expressed in § 794(a) in the employment discrimination context.  In

other words, § 794(a) establishes a general causation standard that applies to

most discrimination claims brought under the Rehabilitation Act, *see e.g., Reg'l*

*Econ. Cmty. Action Program v. City of Middletown,* 294 F.3d 35 (2d Cir. 2002)

(applying the "solely by reason of" causation language to a housing

discrimination case), *superseded by statute on other grounds*, ADA Amendments of

2008, Pub. L. No. 110–325, 122 Stat. 3553, but § 749(d) removes employment

- 15 -

discrimination claims from the application of § 794(a)'s general causation

standard and mandates the application of the ADA's causation standard.[1]

        The other cases cited by Defendants in defense of their position do

not persuade us that our reading of the statute should be otherwise. *Parker v.*

*Columbia Pictures Industries* was an employment discrimination case brought

under the ADA, and any discussion of the Rehabilitation Act was *dicta*. 204 F.3d

326, 337 (2d Cir. 2000). *Henrietta D. v. Bloomberg* was a case based on the

defendants' failure to provide plaintiffs with public benefits, not an employment

discrimination case. 331 F.3d 261, 272 (2d Cir. 2003). Thus, any discussion of

differences between the ADA and Rehabilitation Act in that case is irrelevant

---

[1] We recognize that our reading of these two provisions conflicts with the Fifth Circuit's holding that § 794(d) does not modify § 794(a)'s causation standard in the employment discrimination context. *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). In *Soledad*, the Fifth Circuit found the text of § 794(a) to be more specific than the text of § 794(d). *Id.* As stated above, we disagree with this conclusion because § 794(d) states the causation standard that applies to the general universe of Rehabilitation Act discrimination cases, and § 794(d), which came later in time, speaks specifically to the causation standard that applies in *employment* discrimination cases brought under the Rehabilitation Act. The Fifth Circuit also found dispositive the fact that Congress "chose not to repeal the 'solely by reason of' language of §794(a) when it amended the statute," thereby indicating that "Congress did not intend to adopt the ADA standard of causation with the § 794(d) amendment." *Id.* This reasoning is unpersuasive. Establishing § 794(d) as a carve-out for employment discrimination claims would not require Congress to amend the language of § 794(a)'s general causation standard because that standard continues to govern all discrimination claims brought under the Rehabilitation Act except employment discrimination claims.

here. In D*oe v. Board of Education of Fallsburgh Central School District*, we stated

that the Rehabilitation Act does not permit mixed-motive suits. 63 F. App'x 46,

48 (2d Cir. 2003). This is not the same as stating that the causation standard of

the Rehabilitation Act for employment discrimination claims is a "solely by

reason of" standard. Finally, Defendants rely on *Lewis v. Humboldt Acquisition

Corp.*, but the argument addressed there was whether the ADA imported the

"solely" causation standard from § 794(a). 681 F.3d 312, 315 (6th Cir. 2012) (en

banc). The Sixth Circuit declined to hold that "because of" under the ADA meant

a plaintiff must show that his disability was the "sole" cause of the adverse

employment action. *Id.* This is an entirely different question than whether the

Rehabilitation Act contains a carve-out for employment discrimination claims

pursuant to § 794(d) and renders *Lewis* irrelevant to the instant issue.

## 2. The ADA's Causation Standard for Employment Discrimination Claims

Having concluded that the Rehabilitation Act incorporates the

ADA's causation standard for employment discrimination claims, we must now

clarify the ADA's causation standard. Title I of the ADA prohibits employers

from "discriminat[ing] against a qualified individual *on the basis of* disability in

regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. §

12112(a) (emphasis added). Historically, this Circuit has applied a "mixed-

motive" test to ADA claims, "under which disability [need only be] one motivating factor in [the employer's] adverse employment action but [need not be] its sole but-for cause." *Parker*, 204 F.3d at 336. When we decided *Parker*, the ADA proscribed discriminatory acts that were engaged in "because of" a disability, instead of "on the basis of." *See* 42 U.S.C. § 12112(a) (1991).

Natofsky argues that, because the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims, the district court erred by not applying a mixed-motive standard to his discrimination claims in accordance with *Parker*. Natofsky argues that he presented sufficient evidence for a factfinder to conclude that his disability was a "motivating factor" in the adverse employment actions taken against him. Accordingly, he argues, the district court's decision must be reversed.

Defendants argue that if the Rehabilitation Act does indeed incorporate by reference the ADA's causation standard, then the standard to be applied to Natofsky's employment discrimination claims must be that "but for" the disability, the adverse action would not have been taken. According to Defendants, the Supreme Court decisions *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), and *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), effectively overrule this Circuit's decision in *Parker*. Defendants

argue that Natofsky has failed to demonstrate that his disability was a but-for

cause of any adverse employment action taken against him, and that the district

court's decision must be affirmed.  For the following reasons, we agree with

Defendants.

The "mixed-motive" test originates from Title VII, which prohibits

employment discrimination "because of" an individual's race, color, religion, sex,

or national origin.  42 U.S.C. § 2000e-2(a)(1).  In 1989, the Supreme Court in *Price*

*Waterhouse v. Hopkins* read the prohibition against acting "because of" a

discriminatory motive to mean that an employer cannot take any illegal criterion

into account.  490 U.S. 229, 240 (1989).  Thus, a defendant would be liable under

Title VII if a plaintiff could demonstrate that discrimination was a motivating

factor in the defendant's adverse employment action.  *Id.* at 244.  A defendant,

however, could avoid all liability if it could prove it would have taken the same

action regardless of any impermissible consideration.  *Id.*

In 1991, Congress amended Title VII and determined that "an

unlawful employment practice is established when the complaining party

demonstrates that race, color, religion, sex, or national origin was *a motivating*

*factor* for any employment practice, even though other factors also motivated the

practice."  42 U.S.C. § 2000e-2(m) (emphasis added).  Congress disagreed that an

- 19 -

employer could avoid all liability by proving it would still have taken the same adverse action in the absence of discriminatory motivation. Instead, where an employer could demonstrate that it would have taken the adverse action even in the absence of discriminatory motivation, Congress denied the plaintiff damages and limited the plaintiff's remedies to "declaratory relief, injunctive relief . . . , and attorney's fees and costs." 42 U.S.C. § 2000e-5(g)(2)(B). Even though *Price Waterhouse* and the subsequent 1991 Congressional amendments dealt only with Title VII, the majority of circuit courts, including this one, held that the mixed-motive burden-shifting framework applied equally to other anti-discrimination statutes that employed the "because of" causation language, including, prior to 2008, the ADA. *See Parker*, 204 F.3d at 336–37.

In 2009, the Supreme Court in *Gross* addressed whether Title VII's "motivating factor" standard applied outside of the Title VII context to claims brought under the Age Discrimination in Employment Act (the "ADEA"), which prohibits employers from "discriminat[ing] against any individual . . . because of such individual's age." 27 U.S.C. § 623(a)(1); *see also Gross*, 557 U.S. at 174. The Court held that it did not because "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross*, 557 U.S. at 174. Furthermore, the Court

- 20 -

found that Congress must have omitted the language intentionally because, at the time it added §§ 2000e-2(m) and 2000e-5(g)(2)(B) to Title VII, "Congress . . . contemporaneously amended the ADEA in several ways." *Id.* Examining the text of the ADEA, the Court concluded that the words "because of" mean "that age was the 'reason' that the employer decided to act." *Id.* at 176. Thus, the Court held that a plaintiff must prove that age was the but-for cause of the employer's adverse decision -- not just a motivating factor. *Id.*

In *Nassar*, the Supreme Court revisited the principle defined in *Gross*: that the text of an anti-discrimination statute must expressly provide for a "motivating factor" test before that test can be applied. The Court held that even though Title VII permits mixed-motive causation for claims based on the personal characteristics of race, color, religion, sex, or national origin (*i.e.*, "status-based" discrimination), it does not permit mixed-motive causation for retaliation-based claims. *Nassar*, 570 U.S. at 360. The Court based its holding on the text and structure of Title VII. *Id*. It noted that § 2000e-2(m), which contains the mixed-motive causation provision, "mentions just the . . . status-based [factors]; and . . . omits the final two, which deal with retaliation." *Id.*; *see also* 42 U.S.C. § 2000e-2(m). It also noted that "Congress inserted [the 'mixed-motive' test] within the section of the statute that deals only with [the status-based

factors], not the section that deals with retaliation claims or one of the sections

that apply to all claims of unlawful employment practices." *Id.* Because,

according to the Court, Title VII has a "detailed structure," the Court could

conclude that Congress knew how to word the mixed-motive provision to

encompass the anti-retaliation section and intentionally chose not to do so. *Id.*

As a result, Title VII retaliation "must be proved according to traditional

principles of but-for causation, not the lessened causation test stated in § 2000e-

2(m)." *Id.*

       *Gross* and *Nassar* dictate our decision here. The ADA does not

include a set of provisions like Title VII's § 2000e-2(m) (permitting a plaintiff to

prove employment discrimination by showing that discrimination was a

"motivating factor" in the adverse decision) and § 2000e-5(g)(2)(B) (limiting the

remedies available to plaintiffs who can show that discrimination was a

"motivating factor" but not a but-for cause of the adverse decision). There is no

express instruction from Congress in the ADA that the "motivating factor" test

applies. Moreover, when Congress added § 2000e-2(m) to Title VII, it

"contemporaneously amended" the ADA but did not amend it to include a

"motivating factor" test. *See* Pub. L. No. 102-166, §§ 109, 315; *see also Gross*, 557

U.S. at 174. We, therefore, join the conclusion reached by the Fourth, Sixth, and

- 22 -

Seventh Circuits that the ADA requires a plaintiff alleging a claim of

employment discrimination to prove that discrimination was the but-for cause of

any adverse employment action. *See Gentry v. E. W. Partners Club Mgmt. Co. Inc.*,

816 F.3d 228, 235–36 (4th Cir. 2016); *Lewis,* 681 F.3d at 321; *Serwatka v. Rockwell*

*Automation, Inc.*, 591 F.3d 957, 963–64 (7th Cir. 2010).

Natofsky argues that *Gross* does not determine the outcome of this

case because, unlike the ADEA, the ADA indirectly incorporates Title VII's

mixed-motive standard by reference in its "Enforcement" provision, which states:

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-
> 5, 2000e-6, 2000e-8, and 2000e-9 of [Title VII] shall be the powers, remedies,
> and procedures this subchapter provides to the Commission, to the
> Attorney General, or to any person alleging discrimination on the basis of
> disability in violation of any provision of this chapter. . . .

42 U.S.C. § 12117(a). Notably absent from this provision, however, is § 2000e-

2(m), which establishes Title VII's mixed-motive test. *See Gentry*, 816 F.3d at 234

("However, while [42 U.S.C. § 12117(a)] incorporates Title VII's 'Enforcement

provisions' in § 2000e–5, it does not incorporate the 'Unlawful employment

practices' in § 2000e–2, including § 2000e–2(m), which establishes mixed motive

employment practices as unlawful.").

Natofsky points out that the ADA incorporates § 2000e-5(g)(2)(B),

which cross-references § 2000e-2(m). This cross-cross-reference, however, cannot

be used to create new substantive liability under the ADA as section 2000e-5(g)(2)(B) deals exclusively with the remedies available to plaintiffs who have first proven a violation under § 2000e-2(m), *i.e.*, a violation based on individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(m). Section 2000e-2(m) makes no mention of disability. An ADA plaintiff will never be able to invoke § 2000e-5(g)(2)(B) because, as the Fourth and Sixth Circuits have explained, an ADA plaintiff can only invoke Title VII's enforcement provisions after first "alleg[ing] a violation of the ADA itself -- a violation of '*this* chapter.'" *Gentry*, 816 F.3d at 235 (quoting 42 § U.S.C. 12117(a)); *Lewis*, 681 F.3d at 319–20. As stated above, the ADA's text does not mention that a violation occurs when discrimination is the "motivating factor" in an employer's decision.

Natofsky argues that our interpretation renders the ADA's incorporation of § 2000e-5 superfluous. This is not so. The majority of the other provisions in § 2000e-5 clearly apply to the ADA. *See Lewis*, 681 F.3d at 230 ("[2000e-5] contains more than a dozen other provisions detailing procedures that remain applicable under the ADA.") By incorporating § 2000e-5, which contains all of Title VII's "Enforcement provisions," into the ADA, we can assume that Congress was aware that some of those provisions would apply only to Title VII cases. *See id.* ("In incorporating a wide range of Title VII enforcement

- 24 -

procedures and remedies into the ADA, it is hardly surprising that some of those provisions . . . apply by their terms only to Title VII cases.").

Having determined that the ADA does not incorporate Title VII's mixed-motive standard, the remaining question is what precisely "on the basis of disability" means. 42 U.S.C. § 12112(a). In *Gross*, the Court held that "because of" -- the language used in the ADA prior to the 2008 amendments -- meant "by reason of: on account of" and required a showing of but-for causation. *Gross*, 557 U.S. at 176 (quoting 1 Webster's Third New Int'l Dictionary 194 (1966)). The Court cited to a prior case, *Safeco Insurance Co. of America v. Burr*, which stated that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship." *Gross*, 557 U.S. at 176 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63, 64 n.14 (2007)). We find no reason to hold that there is any meaningful difference between "on the basis of," "because of," or "based on," which would require courts to use a causation standard other than "but-for." We conclude that "on the basis of" in the ADA requires a but-for causation standard.

Further, nothing in the legislative history of the ADA indicates that "on the basis of" was supposed to lower the causation standard for employment discrimination claims below the traditional but-for standard. The ADA originally prohibited discrimination "against a qualified individual with a

disability because of the disability of such individual."  Pub. L. No. 101-336, § 102

(1990).  The ADA Amendments Act of 2008 changed this language, prohibiting

discrimination "against a qualified individual on the basis of disability."  Pub. L.

No. 110-325, § 5 (2008).  Legislative history suggests that Congress intended this

change to return the "ADA's focus" to "where it should be – the question of

whether the discrimination occurred, not whether the person with a disability is

eligible in the first place."  154 Cong. Rec. S9626 (Sept. 26, 2008) (statement of Sen.

Reid) (2008); *see also* 154 Cong. Rec. S8840-01 (Sept. 16, 2008) (Senate Statement of

Managers) ("[L]ower court cases have too often turned solely on the question of

whether the plaintiff is an individual with a disability rather than the merits of

discrimination claims . . . .").  Thus, as stated by the Fourth Circuit, "[t]he

legislative history suggests the language was changed to decrease the emphasis

on whether a person is disabled, not to lower the causation standard."  *Gentry*,

816 F.3d at 236.

### 3.  Application of ADA's But-For Causation Standard to Natofsky's Claims

Natofsky bases his employment discrimination claims on Pogoda

and Peters's decision to demote him, and Ulon's conduct when she was his

immediate supervisor.  Natofsky has failed to demonstrate that discrimination

based on his disability was the but-for cause of any of these actions.

### a. Demotion Claim

Natofsky claims that his demotion was caused by unlawful discrimination based on his hearing disability. The core of his claim is that Pogoda, not Peters, demoted him with discriminatory intent.

In his statement of material facts in opposition to Defendants' motion for summary judgment, Natofsky admitted that Peters, not Pogoda, executed his demotion.[2] Natofsky argues, however, that the City may still be held liable for Peters's act because Pogoda's discriminatory intent can be imputed to Peters through a "Cat's Paw" theory of liability.

### i. Cat's Paw

Under a Cat's Paw theory of liability, a discriminatory motive may be imputed to a final decision-maker if the decision-maker's adverse employment action was proximately caused by a subordinate who had a discriminatory motive "and intended to bring about the adverse employment

---

[2] On appeal, Natofsky tries to argue that Pogoda was the ultimate decision-maker and points to deposition testimony that could possibly suggest as much. Natofsky, however, never presented that testimony to the district court. Because we have denied Natofsky's motion to supplement the record, we may not rely on that testimony now.

action." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016)

(quoting *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012)). Natofsky

argues that Pogoda's animus towards Natofsky's disability was the proximate

cause of Peters's decision to demote Natofsky.

The Supreme Court and this Circuit have permitted plaintiffs to use

a Cat's Paw theory of liability in anti-discrimination statutes requiring the more

lenient mixed-motive causation standard. *See Staub v. Proctor Hosp.*, 562 U.S. 411,

422 (2011); *Vasquez*, 835 F.3d at 272–73. Neither the Supreme Court nor this

Circuit, however, has addressed whether the same theory would apply to

statutes requiring plaintiffs to demonstrate that discriminatory intent was the

but-for cause of an adverse employment action. The district court held that Cat's

Paw liability does not apply to Rehabilitation Act cases under the assumption

that the stricter "solely" causation standard applies. *Natofsky*, 2017 WL 3670037,

at *12.

While the question of whether Cat's Paw liability applies outside of

the mixed-motive context is an important one, we decline to decide it now.

Defendants never responded on appeal to Natofsky's application of Cat's Paw

liability to the Rehabilitation Act, and, as a consequence, Defendants have

waived any objection to proceeding under this theory. We will therefore assume

that Natofsky can pursue a Cat's Paw theory and, thus, any discriminatory intent harbored by Pogoda can be imputed to Peters.

### ii. Liability

Even assuming Pogoda's discriminatory intent can be imputed to Peters, Natofsky failed to present the district court with evidence from which a reasonable factfinder could conclude that, but for his hearing disability, Natofsky would not have been demoted.  There was ample evidence that Pogoda and Peters had reason to (and did) think that Natofsky's performance was deficient and demoted him on that basis.  First, Pogoda noted in March 2014 her view that Natofsky was "clueless."  Second, that same month, Natofsky failed to provide Peters with information regarding staffing and budgeting at the DOI, two areas under Natofsky's purview.  Third, there was a new administration in office that was restructuring the department in which Natofsky worked.  Defendants presented evidence that other employees had been asked to leave or were transferred from their positions, including Natofsky's immediate supervisor, Ulon.  We conclude that "construing the evidence in the light most favorable" to Natofsky and "drawing all reasonable inferences in his favor," no reasonable juror could conclude that Natofsky would have retained his position but for his disability.  *McElwee*, 700 F.3d at 640 (2d Cir. 2012).

We also note that, drawing all inferences in Natofsky's favor, no reasonable factfinder could conclude that the explanation of poor performance proffered by Pogoda and Peters was pretextual. Pogoda's March 2014 email calling Natofsky "clueless," Ulon's negative performance review on or about May 1, 2014, and Natofsky's failure to answer Peters's staffing and budgetary inquiries are contemporaneous evidence of Natofsky's poor performance. That a prior administration had praised Natofsky's work is not enough to establish that the new administration could not have concluded that he was underperforming. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717–18 (2d Cir. 1994) (concluding that a first-time negative performance review, although given on the eve of dismissal, was not suspect).

### b. Claims Based on Ulon's Conduct

Natofsky also argues that Ulon's denial of his preferred work hours and vacation time, as well as the negative performance review she gave him, constitute adverse employment actions, and that those actions would not have occurred but for Ulon's discriminatory intent. For the reasons set forth below, we agree with the district court's decision to grant summary judgment to Defendants on these claims.

- 30 -

First, fatal to Natofsky's claims is his failure to provide evidence of Ulon's discriminatory intent. Natofsky points to Ulon's complaints about his timeliness in responding to emails as evidence of discriminatory intent. He attributes any delay in responding to emails a result of his inability to reply to emails during meetings, which he was unable to do because of his hearing disability. Natofsky, however, points to no evidence that Ulon's critique of his email responsiveness was based specifically on Natofsky's failure to respond to emails during meetings, as opposed to a more general critique of his timeliness in responding to emails. Therefore, criticism of his email practices provides no basis to conclude that Ulon had discriminatory intent.

Second, Ulon's initial demands that Natofsky change his work hours and vacation time did not adversely affect him because she dropped her demands after meeting with Hearn and Natofsky. Furthermore, it is unlikely that these workplace changes, had they even occurred, would count as actionable adverse actions. *See Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (for an employer's action to be "materially adverse with respect to the terms and conditions of employment," it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" (internal quotation marks omitted)); *see e.g.*, *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp.

2d 317, 332 (S.D.N.Y. 2010) ("[D]enial of vacation time and alteration of Plaintiff's lunch schedule, taken alone, do not rise to the level of an adverse employment action.").

Finally, Natofsky's argument regarding Ulon's negative performance review cannot survive summary judgment because, as stated above, there is no evidence of Ulon's discriminatory intent. In addition, there is no evidence that either Pogoda or Peters relied upon Ulon's review in deciding to demote Natofsky, and a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action. *Fairbrother v. Morrison*, 412 F.3d 39, 56–57 (2d Cir. 2005) (surveying cases and concluding that a negative performance evaluation cannot be considered an adverse employment action without evidence that the evaluation "altered . . . compensation, benefits, or job title"), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).

## C. Failure-to-Accommodate Claim

Natofsky argues that Defendants are liable for violating the Rehabilitation Act because they failed to accommodate his hearing disability. Specifically, Natofsky argues that the DOI failed to accommodate his request to

have a secretary alert him to urgent emails during meetings.  We affirm the district court's judgment against Natofsky on this claim.

To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that "(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks omitted); *see also Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995) (stating that the elements needed to demonstrate a failure-to-accommodate claim under either the ADA or the Rehabilitation Act are the same).  In addition, a plaintiff must show "the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action."  *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001) (emphasis in original).

Natofsky has failed to provide evidence from which a reasonable juror could conclude that (1) the DOI's failure to accommodate his disability by

providing secretarial alerts while he was in meetings resulted in the negative

performance review he received from Ulon, or (2) Ulon's negative performance

review ultimately resulted in Natofsky's demotion.  As previously stated, there is

no evidence that Ulon was referring to Natofsky's inability to respond to emails

during meetings in her performance review.  Nor as noted earlier is there any

evidence that Pogoda or Peters considered Ulon's review when they decided to

demote Natofsky.  Accordingly, we find that the district court correctly granted

summary judgment for Defendants on this claim.

### D. Retaliation Claim

Natofsky asks us to vacate the district court's dismissal of his

retaliation claims.  He argues that (1) Ulon retaliated against him for his

complaints to Hearn, (2) he was demoted in retaliation for appealing Ulon's

negative performance review, and (3) the DOI subjected him to a slew of

retaliatory actions -- including moving him to a noisy cubicle and delaying his

salary adjustment -- after he contested his demotion.  We agree with the district

court that Natofsky failed to provide sufficient support for any claim for

retaliation under the Rehabilitation Act.

"[T]he elements of a retaliation claim under either [the Rehabilitation

Act] or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the

- 34 -

alleged retaliator knew that plaintiff was involved in protected activity; (iii) an

adverse decision or course of action was taken against plaintiff; and (iv) a causal

connection exists between the protected activity and the adverse action." *Weixel*

*v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal

quotations omitted). "A causal connection in retaliation claims can be shown

either '(1) indirectly, by showing that the protected activity was followed closely

by discriminatory treatment, or through other circumstantial evidence such as

disparate treatment of fellow employees who engaged in similar conduct; or (2)

directly, through evidence of retaliatory animus directed against the plaintiff by

the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)

(quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Natofsky's first claim of retaliation is against Ulon. He argues that

Ulon wrote the March 10, 2014 counseling memo and May 1, 2014 negative

performance review in retaliation for Natofsky's decision to complain about Ulon

to Hearn. He argues that the protected activity -- the decision to speak to Hearn -

- was followed closely by Ulon's adverse employment actions. This argument,

however, must fail because Ulon's actions occurred in 2014, almost a year after

the meeting with Hearn -- too long a period of time for a jury to be able to infer a

causal connection. *See Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir.

2011) (concluding a period of "several months" between when a plaintiff engaged in a protected activity and when he suffered an adverse employment action was too long to support the inference of a causal connection).  Natofsky argues that Ulon stalled in retaliating against him because she was waiting until Hearn left the DOI.  Natofsky, however, provides no evidence for this assertion, and, therefore, summary judgment was appropriate for his claim of retaliation based on Ulon's conduct.

Natofsky next argues that Pogoda and Peters retaliated against him for his decision to appeal Ulon's negative performance review on May 8, 2014 by demoting him.  This claim fails for two reasons.  First, appealing a negative performance review is not a protected activity that can give rise to a retaliation claim.  "Protected activity" is "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85.  The record shows that Natofsky was not protesting discrimination in his appeal but offering a defense of why he may have been slow in responding to emails.  Second, the record reveals that the decision to reorganize the department and demote Natofsky was made in March or April 2014, in advance of Ulon's performance review and Natofsky's decision to appeal that review.  Thus, Natofsky's

demotion could not have been in retaliation for his appeal of Ulon's performance review. The district court properly awarded Defendants summary judgment on this claim.

Natofsky's final retaliation claim relating to the challenges he made to his demotion cannot survive summary judgment because those challenges also do not constitute protected activity. Natofsky challenged his demotion first by sending the May 28, 2014 email to Peters and Pogoda, and then by appealing to DCAS on June 18, 2014. Neither gave any specific indication that Natofsky was protesting discrimination. Natofsky's May 28, 2014 email and DCAS appeal stated that his demotion was "illegitimate and contrary to law." This statement is too general to indicate that Natofsky was protesting his demotion as discriminatory and, therefore, cannot sustain a retaliation claim. *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014) ("While it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert her employer to her protected activity, there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity."). Thus, we affirm the district court's grant of summary judgment on Natofsky's retaliation claims.

## CONCLUSION

Accordingly, for the reasons set forth above, the judgment of the district court is **AFFIRMED**.  The motion to supplement the record on appeal is hereby **DENIED**, and the cross-motion to strike supplementary materials and any reference to those materials in Natofsky's brief is **GRANTED.**