UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER,

    Plaintiff,

v.

FIRST DATA CORPORATION, *et al.*,

    Defendants.

Civil Case No. 1:17-cv-04869-FB-LB

### DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT WITNESS

Defendants First Data Corporation, Frank Bisignano, Anthony Marino, Dan Charron, and Rhonda Johnson move to exclude Dr. Steven Shapiro, Plaintiff Steven Barger's damages expert, from testifying at trial because his opinion is not based on any data, is an unsupported conclusion, and is therefore, not reliable.

### ARGUMENT

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements under Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n.10 (1993)). Under Rule 702, the trial court must first ensure that the witness is properly qualified as an expert to testify on matters that are scientific, technical, or specialized in nature. *Reynolds v. Am. Airlines, Inc.*, 2017 WL 5613115, at *2 (E.D.N.Y. 2017). Then, the court must ensure that an expert's testimony is reliable and relevant. *Id.* (citing *Daubert,* 509 U.S. at 597).

Although a district court has "broad latitude in deciding how to determine reliability," the court "may not abandon its gatekeeping function." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 641 (S.D.N.Y. 2014). "Expert testimony must rest on more than subjective belief or unsupported speculation." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 307 (S.D.N.Y. 2015) (citing *Daubert*, 509 U.S. at 599). Instead, the expert must have some justifiable basis for his conclusions. *See Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."). While Defendants do not challenge that Dr. Shapiro's background might otherwise qualify him as an expert, his opinion in this case is not reliable, and he should be precluded from testifying as to Barger's damages.

1.  **Dr. Shapiro's Opinion is Unreliable Because it is Conclusory and Unsupported by Any Evidence.** Dr. Shapiro testified that Barger's counsel Shawn Shearer, Esq., simply instructed him to calculate damages based on the assumption that Barger planned to work for five or ten more years after the date of his termination. Dr. Shapiro did not interview Barger, did not review Barger's deposition transcript, did not review the transcripts of any other witnesses, and did not review any documents from the case that might support his conclusions. Rather, Dr. Shapiro chose to blindly follow Shearer's instructions in calculating Barger's damages. *See* Deposition of Steven Shapiro Excerpts (Shapiro Dep.), attached hereto as Exhibit A at 8:20-9:1, 9:11-13, 21:1-19.[1] When pressed for the scientific rationale supporting his use of five or ten years as a baseline, Dr. Shapiro testified that "Mr. Shearer will have other information

---

[1] Dr. Shapiro also conceded that when calculating damages for front pay, he never considered that Barger could have been included in a subsequent reduction-in-force. Ex. A at 26:9-14.

that I don't have that would support that." Ex. A at 25:21-23. But it is Dr. Shapiro who Barger attempts to designate as a damages expert in this case, not Barger's counsel.

Relying on the representations of a lawyer without corroborating evidence warrants barring the expert from testifying. *See Info-Hold, Inc. v. Muzak LLC*, 2013 WL 4482442, at *5 (S.D. Ohio Aug. 20, 2013) (striking expert because he relied without verification on "plaintiff's counsel for information crucial to his opinions" and "performed no independent analysis"); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1240 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (precluding expert under Rule 702 based on testimony that the expert performed "no independent analyses . . . but instead relied on the representations of plaintiff's counsel"); *see also United States v. Mejia*, 545 F.3d 179, 197-98 (2d Cir. 2008) (holding that experts cannot transmit hearsay opinions of others to the jury, but instead "must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever."). Expert testimony that is speculative and unsupported by evidence—sometimes termed a "net opinion"—must be excluded under Rule 702. *Youngman as Tr. of Estate of Charkiewicz v. Robert Bosch LLC*, 2014 WL 12829170, at *5 (E.D.N.Y. June 17, 2014); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (expert testimony that is "speculative or conjectural" should be excluded).

It is undisputed that Dr. Shapiro did not rely on a theory or technique that can be tested, peer-reviewed, or publicized. His opinion was not based on a technique with a known or potential rate of error or on a theory that has gained general acceptance in the scientific community. In actuality, the only thing that Dr. Shapiro did was add up some numbers based on what Barger's counsel told him to do and wrote those numbers in a report. His "net opinion"

cannot withstand challenge under the *Daubert* factors.[2] Dr. Shapiro should not be permitted to testify as to Barger's alleged damages in this case because his opinion is not grounded in any reliable theory or technique.

**2.     Dr. Shapiro's Opinion is Unreliable Because it Ignores Generally Accepted Factors Utilized by Damages Expert Witnesses.** Dr. Shapiro should also be barred from testifying because when he calculated Barger's total lost compensation, he did not perform any analysis to lay a reliable foundation, ignoring basic factors used by experts who are qualified to testify about damages in employment discrimination cases. Had Dr. Shapiro conducted a proper lost compensation analysis, he would have at least considered Barger's statistical work life expectancy, fringe benefits from First Data, mitigation efforts, average earnings growth rate in the United States labor market, and the probability of his length of unemployment based on unemployment statistics. *Hamza v. Saks Fifth Ave., Inc.*, 2011 WL 6187078, at *2 (S.D.N.Y. Dec. 5, 2011).

**2.1.     Statistical Work Life Expectancy.** Dr. Shapiro did not apply any statistical method to support his work-life expectancy assumption of five or ten years. Ex. A at 21:1-22:9. The lack of scientific or statistical support for Dr. Shapiro's "expert" conclusion that Barger could have worked five or ten more years is even more glaring when compared to cases where courts did determine there was adequate support for a work-life expectancy determination by the plaintiff's expert. *See Earl v. Bouchard Transp. Co.*, 735 F. Supp. 1167, 1175 (E.D.N.Y.

---

[2] *Daubert* identifies four specific factors that bear upon the reliability of proposed expert testimony: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevance scientific community. *Daubert*, 509 U.S. at 593-94.

1990) (acknowledging that "statistical charts, such as the mortality tables and the work-life expectancy tables prepared by the United States Department of Labor . . . are often deemed authoritative."). As noted above, Dr. Shapiro's exclusive reliance on Barger's counsel for such a crucial component of his expert opinion, without anything else, renders his opinion entirely unreliable.

        **2.2. Fringe Benefits.** Dr. Shapiro calculated that Barger's damages for lost medical benefits from First Data total $125,163 from 2019-2027. In calculating these damages, Dr. Shapiro did not rely on First Data's actual costs for medical benefits but instead he used an irrelevant study on the average dollars that employers contribute to workers health insurance.[3]

This is an error that cannot be cured and goes directly to the issue of Dr. Shapiro's lack of reliability and flawed methodology. Simply stated, Barger does not have any lost medical benefits from First Data because he voluntarily opted out of First Data's group medical plan at the time of his hire. Dr. Shapiro's testimony demonstrates that he simply relied on Plaintiff's counsel for the underlying facts in his report without conducting his own independent investigation:

> Q. (Mr. Eidelman) You also indicate that you were calculating damages based on lost health benefits?
>
> A. (Dr. Shapiro) Yes.
>
>            \*      \*      \*
>
> Q. Did Mr. Shearer tell you that Mr. Barger was getting health benefits from First Data?
>
> A. Yes.

---

[3] Kaiser Family Foundation and Health Educational and Research Trust, Employer Health Benefits: 2017 Annual Survey. SBB2087 n. 5

> Q. Would it have been helpful for you to know that Mr. Barger had elected not to take health insurance benefits from First Data in preparing your report of alleged damages that he suffered?
>
> A. Yes.
>
> Q. If Mr. Barger had not in fact taken health benefits, am I correct that the calculation of health benefits that you included in your expert report would be valued at zero?
>
> A. That's correct.

Ex. A at 18:7-9, 20:2-14. Dr. Shapiro's complete reliance on what Barger's counsel told him and his lack of due diligence in preparing his report is disqualifying under *Daubert*.

**2.3. Failure to Consider Mitigation.** It is well settled that a plaintiff claiming employment discrimination must mitigate his damages and offset his interim earnings to reduce the amount of back pay that may be awarded. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998) (holding that employees claiming discrimination are required to mitigate their damages). In performing back pay calculations, Dr. Shapiro completely ignored Barger's mitigation earnings as reported on Barger's 2017 income tax returns, even though Dr. Shapiro reviewed and relied up those documents in preparing his report. Dr. Shapiro also testified that he never requested documentation of any earnings by Barger in 2018 at the time he prepared his report in September 2018. Ex. A at 41:25-42:6. This blatant omission by Dr. Shapiro provides yet another reason for his disqualification as an expert witness.

**2.4. Earnings Growth.** Dr. Shapiro also used no scientific basis or theory for projecting earnings growth. Without any support, Dr. Shapiro's front pay models assume Barger would receive a salary increase raise, even though Barger's base salary remained unchanged for the entire period of his employment at First Data. Dr. Shapiro did not speak to anyone at First Data, nor did he review any documents that support his assumption that Barger's salary would ever have increased. Ex. A at 34:19-35:1. He admitted that there was no economic evidence to

support his opinion that Barger would have received annual salary increases of 2.5%. Ex. A at 36:11-21.

With respect to his lost bonus calculations, Dr. Shapiro assumes Barger's annual bonus would either be the average of his historical bonuses from 2014-2016 or that his bonuses would equal or exceed $250,000 per year, the bonus Barger received only in his first year of employment. Among other things, Dr. Shapiro's assumptions are skewed by the fact that First Data chose to pay Barger an all cash bonus of $174,000 in December 2016 after he told the Company that his condition might be fatal, when otherwise his bonus would have been paid in a combination of cash and equity and out of an incentive compensation pool that was smaller than the year prior. Dr. Shapiro's back pay and front pay calculations are based on speculation and not scientific reasoning or evidence in the record.

**2.5. Length of Unemployment.** Dr. Shapiro's report does not address how likely it is that Barger could have obtained a comparable position and salary or how long that could have taken. He instead assumes, without any support, that Barger could never have found a comparable position so Barger is entitled to his full First Data salary for up to ten years, with the only discount applied being a present value discount. The failure to even consider basic factors like job employment statistics in Barger's geographic area or statistics concerning the likelihood of obtaining comparable employment further discredit Dr. Shapiro's qualifications as an expert in this case.

**2.6. Other Considerations.** Dr. Shapiro also failed to account for how Barger's heart attack in 2000 or his cancer in 2016 might affect his work life expectancy, which is a standard in conducting a lost wages analysis. *See Israel v. Spring Indus., Inc.*, 2006 WL 3196956, at *13 (E.D.N.Y. Nov. 3, 2006) (criticizing plaintiff's expert report for failing to factor

into a work-life expectancy calculation given the plaintiff's preexisting medical conditions). Dr. Shapiro never considered Barger's medical history in formulating his opinion. *Id.* at 27:12-15.

## CONCLUSION

For the foregoing reasons, Dr. Shapiro should be disqualified as a damages expert and not permitted to present testimony on Barger's alleged damages to the jury.

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Gary B. Eidelman*
Gary B. Eidelman (admitted *pro hac vice*)
Michael P. Cianfichi (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
gary.eidelman@saul.com
michael.cianfichi@saul.com

Gillian A. Cooper
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19125
T: (215) 972-7861
gillian.cooper@saul.com

**New York Office**
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

**BOND, SCHOENECK & KING PLLC**

Louis P. DiLorenzo
600 Third Avenue 22nd floor
New York, New York 10016-1915
T: (646) 253-2315
ldilorenzo@bsk.com

*Attorneys for Defendants, First Data Corporation, Frank Bisignano, Dan Charron, Anthony Marino, and Rhonda Johnson*

Dated: August 30, 2019

-8-