## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

STEVEN B. BARGER,

        Plaintiff,

v.

FIRST DATA CORPORATION, *et al.*,

        Defendants.

Civil Case No. 1:17-cv-04869-FB-LB

### DEFENDANTS' MOTIONS *IN LIMINE* AND MEMORANDUM OF LAW

**SAUL EWING ARNSTEIN & LEHR LLP**
Gary B. Eidelman (admitted *pro hac vice*)
Michael P. Cianfichi (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
gary.eidelman@saul.com
michael.cianfichi@saul.com

Gillian A. Cooper
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19125
T: (215) 972-7861
gillian.cooper@saul.com

**New York Office**
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

**BOND, SCHOENECK & KING PLLC**
Louis P. DiLorenzo
600 Third Avenue 22nd floor
New York, New York 10016-1915
T: (646) 253-2315
ldilorenzo@bsk.com

*Attorneys for Defendants, First Data Corporation,*
*Frank Bisignano, Dan Charron, Anthony Marino,*
*and Rhonda Johnson*

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ..................................................................................... 1

**ARGUMENT** ................................................................................................................. 2

   1.   Evidence Regarding the Individual Defendants' Compensation, Financial
Condition, and Net Worth Should be Excluded.................................................3

   2.   Evidence Regarding the Finances Associated with the Fiserv/First
Data Merger Should be Excluded. ...................................................................6

   3.   Allegations of Alleged Racial Bias Should be Excluded....................................8

   4.   Allegations and Evidence Regarding First Data's Alleged Use of Palantir
and First Data's IT systems Should be Excluded. .............................................9

   5.   Allegations Related to First Data's Hiring of E.J. Jackson as His
Replacement Should be Excluded ..................................................................12

   6.   Evidence of Prior Lawsuits Should be Excluded..............................................13

   7.   Evidence of the Details Regarding Other Reductions-In-Force Should be Excluded .......14

      **CONCLUSION** ................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Altman v. New Rochelle Public School District*, 2014 WL 2809134 (S.D.N.Y. June 19, 2014)........................................................................................................5

*Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1542560 (S.D.N.Y. Apr. 21, 2011) ................................................................................................................3

*Bermudez v. City of New York*, 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) .................................13

*Cooper Tire & Rubber Co. v. Farese*, 2008 WL 5382416 (N.D. Miss. Dec. 19, 2008) ..................................................................................................................7

*Draiper v. Airco, Inc.*, 580 F.2d 91 (3d Cir. 1978)................................................................7

*Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986) ............................................3

*Haskell v. Kaman Corp.*, 743 F. 2d 113 (2d Cir. 1984).................................................9

*Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994) .......................................................3

*Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651 (W.D. Pa. Jan. 6, 2016) .....................15

*Koufakis v. Carvel*, 425 F.2d 892 (2d. Cir. 1970).........................................................7

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ........................................................................................................4, 7

*Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421 (S.D.N.Y. July 14, 2005) ................................................................................................................7

*Manning v. New York Univ.*, 2001 WL 62872 (S.D.N.Y. Jan. 24, 2001)......................................8

*Martin v. Reno*, 2000 WL 1863765 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 2001 U.S. App. LEXIS 24404 (2d Cir. Nov. 8, 2001)..........................................................8, 9

*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995)............................................5

*McLeod v. Parsons Corp.*, 73 Fed.App'x 846 (6th Cir. 2003) .......................................9

*Norris v. New York City Coll. of Tech.*, 2009 WL 82556 (E.D.N.Y. 2009) .................................5

*Patterson v. McCarron*, 130 F. App'x 490 (2d Cir. 2004) ............................................9

*Penberg v. HealthBridge Mgmt.*, 2012 WL 13103710 (E.D.N.Y. Jan. 20, 2012)..........................4

*Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253 (2d Cir. 1999) ..................................................4

*Rodriguez v. NNR Glob. Logistics USA Inc.*, 2016 U.S. Dist. LEXIS 46093
(E.D.N.Y. Mar. 31, 2016) ........................................................................................................14

*Smith v. Westchester County*, 769 F. Supp. 2d 448 (S.D.N.Y. 2011) ...............................................4

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2002) ................................................3

*Stephen v. Hanley*, 2009 WL 1471180 (E.D.N.Y. May 21, 2009) ..................................................2

*Townsend v. Clairol Inc.*, 26 F. App'x 75 (2d Cir. 2002) ...............................................................9

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ....................................................................2

*United States v. Krulewitch*, 145 F.2d 76 (2d Cir. 1944) ................................................................3

*Vichare v. AMBAC Inc.*, 106 F.3d 457 (2d Cir. 1996) ....................................................................5

## STATUTES

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ............................................... *passim*

Family Medical Leave Act, 29 U.S.C.§ 2601, *et seq.*........................................................... *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 72(a) ......................................................................................................................11

Fed. R. Evid. 401 .............................................................................................................................2

Fed. R. Evid. 403 .........................................................................................................................3, 4

Fed. R. Evid. 402 .................................................................................................................2, 4, 13

Fed. R. Evid. 404(b)........................................................................................................................14

Defendants First Data Corporation,[1] Frank Bisignano, Daniel Charron, Anthony Marino, and Rhonda Johnson, by their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motions *in Limine*.

## PRELIMINARY STATEMENT

Plaintiff Steven B. Barger contends Defendants interfered with his rights under the Family Medical Leave Act, 29 U.S.C.§ 2601, *et seq.* (FMLA) by terminating his employment rather than restoring him to his job. He also claims that Defendant First Data violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA) by not providing a reasonable accommodation of remote access to email and by not providing additional leave after he submitted a return to work authorization stating that he had no restrictions.

Defendants deny Barger's allegations asserting Barger received all of his FMLA rights because under the FMLA, an employee has no greater rights than any other employee with respect to job protection if they otherwise would be impacted by a job elimination. Barger was terminated as part of a reduction-in-force, which had nothing to do with his leave status. More specifically, Barger was lawfully terminated as part of a reduction-in-force that affected 10% of the top 3,000 wage earners. Barger was included in the reduction-in-force because First Data did not need an employee at Barger's salary level running a small sales training department that is a cost center with no P&L responsibilities.[2] The RIF that included Barger impacted more than 360 other highly-compensated employees. First Data also denies that it failed to accommodate Barger's disability under the ADA.

---

[1] Fiserv, Inc. completed its merger with First Data Corporation effective July 29, 2019. First Data is now a wholly owned subsidiary of Fiserv. While the fact that a merger occurred may be relevant in this case, the financial details are not relevant and should be excluded. *See infra* Part 2.

[2] A more detailed discussion of Defendants' arguments that Barger's claims are meritless are more fully set forth in the Defendants' Motion and Memorandum in Support of the Motion Summary Judgement and their Omnibus Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendants' Motion. ECF No. 94.

As discussed below, Defendants respectfully move *in limine* for an order excluding the presentation of evidence on the following:

1. Excluding documentary and testimonial evidence concerning the compensation, financial condition, equity holdings and net worth of Mr. Bisignano, Mr. Charron, Mr. Marino, and Ms. Johnson;

2. Excluding documentary and testimonial evidence concerning the financial terms of Fiserv's merger with First Data;

3. Excluding documentary and testimonial evidence regarding alleged racial bias at First Data;

4. Excluding documentary and testimonial evidence regarding Palantir software and First Data's IT systems;

5. Excluding documentary and testimonial evidence regarding the hiring of EJ Jackson as Barger's alleged replacement;

6. Excluding documentary and testimonial evidence concerning any other lawsuits involving or against any of Defendants; and

7. Excluding documentary and testimonial evidence regarding the details of other reductions-in-force.

## <u>ARGUMENT</u>

To be relevant and thus admissible, evidence must have "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401, 402. In other words, to be relevant "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). Relevancy is influenced by the nature of the claims in the matter. *Stephen v. Hanley*, 2009 WL 1471180, at *3 (E.D.N.Y. May 21, 2009). In this case, that means that Barger's evidence must be probative of whether Barger was denied rights under the FMLA, discriminated against in violation of the ADA, or his alleged damages.

Relevant evidence may be excluded from trial because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The advisory committee note to Fed. R. Evid. 403 clarifies that '[u]nfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Trial courts are afforded broad discretion in making Fed. R. Evid. 403 determinations, balancing the probative value and prejudicial effect of evidence. *Fiacco v. City of Rensselaer*, 783 F.2d 319, 327-28 (2d Cir. 1986). In ruling on the prejudicial effect of evidence, a court should analyze whether its value "is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict." *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944).

## 1.     Evidence Regarding the Individual Defendants' Compensation, Financial Condition, and Net Worth Should be Excluded.

Courts presume prejudice from the introduction of evidence about a defendant's wealth because of the potential that a jury will use their verdict to express biases to those whose income exceeds what they earn. *See e.g., Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2002); *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1542560, at *1 (S.D.N.Y. Apr. 21, 2011) ("[C]ourts have typically found that evidence of a defendant's net worth is too prejudicial to allow for its introduction during the liability phase of a trial, or with respect to the issue of compensatory damages.").

Barger alleges that Mr. Bisignano, Mr. Charron, Mr. Marino, and Ms. Johnson, whom he incorrectly claims are "employers" under the FMLA, violated the statute. Their individual or

collective compensation, financial condition, equity holdings, and net worth have absolutely nothing to do with Barger's claims that he was denied rights under the FMLA and retaliated against when he attempted to return to work. This category of evidence presents a textbook example of the kind of evidence that is both irrelevant under Rule 402 and highly prejudicial under Rule 403. There is no legitimate basis for Barger to try to admit such evidence, other to embarrass these defendants, divert the jury's attention from the relevant issues, and inflame class-based bias.

Yet another reason to exclude this category of evidence is that the FMLA does not permit recovery for emotional distress, pain and suffering, physical injury, and punitive damages. *See Penberg v. HealthBridge Mgmt.*, 2012 WL 13103710, at *4 (E.D.N.Y. Jan. 20, 2012) (granting motion *in limine* to bar punitive and emotional distress damages in an FMLA case); *Smith v. Westchester County*, 769 F. Supp. 2d 448, 469 n.23 (S.D.N.Y. 2011). "Evidence of wealth, which can be taken as suggesting that the defendant should respond in damages because he is rich, is generally inadmissible in trials not involving punitive damages." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (upholding curative admission of wealth evidence where trial judge gave a proper limiting instruction to the jury that a party's wealth, which was introduced to impeach the witness, "must not enter into your judgment nor influence your decision in any respect"); *see also L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (granting defendant's motion *in limine* to preclude argument and examination regarding the individual's wealth and lifestyle).

Barger may argue that simply because information regarding some of the Individual Defendants is publicly available because First Data is a publicly traded company, he should be able to introduce evidence of their compensation, equity holdings, net worth, etc. That is absurd.

The mere fact that some information may be available because of government reporting requirements or otherwise does not make evidence automatically relevant, nor does it strip away the prejudice that will result if the jury hears the evidence.

Barring evidence of the Individual Defendants' compensation and equity is particularly appropriate in this case where Defendants are seeking an after acquired evidence jury instruction. The after acquired evidence doctrine limits the award of back pay from the date on which the unlawful discrimination occurred and the date on which the discovery of the after-acquired evidence was made. The Court is also barred from awarding front pay. *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995). The after acquired evidence doctrine is applicable in the Second Circuit. *Vichare v. AMBAC Inc*., 106 F.3d 457, 468 (2d Cir. 1996) (applying rationale of *McKennon* to deny front pay); *Altman v. New Rochelle Public School District*, 2014 WL 2809134, at *14-15 (S.D.N.Y. June 19, 2014); *Norris v. New York City Coll. of Tech.*, 2009 WL 82556 (E.D.N.Y. 2009) (Block. J.).

Defendants will introduce evidence uncovered during discovery, which would have led to Barger's immediate termination, and therefore, assuming liability, would limit back pay as a matter of law to the period from March 1, 2017 (the date after Barger's termination), until August 10, 2018 (the date of Barger's deposition when the evidence was discovered). The evidence is that Barger was retained by First Data as a consultant effective March 15, 2014, at the rate of $30,000 per month. He worked as a consultant for three-and-one-half months until the end of June 2014 when he became a full time W-2 employee. His billings as a consultant for three-and-one-half months should have been no more than $105,000 ($30,000 x 3.5). Instead of billing First Data $105,000 for his services, Barger instead submitted additional invoices, which led to him being overpaid by $65,000. One of the invoices was dated June 20, 2014, in the

amount of $50,000 which indicates that it was a "Final fee for Business Consulting Services 2014 (March thru June)." It is undisputed that he had already been paid his fees for those months. When asked at his deposition to explain the basis for billing First Data an additional $50,000 that was not authorized by his consulting agreement, Barger claimed that he was entitled to bill First Data for his intellectual property and proprietary information even though his agreement provided that the use of any intellectual property and proprietary information was included with the $30,000 monthly fee.

Defendants will also present evidence that Barger misrepresented what he was making as a consultant when he negotiated his compensation package to become a First Data consultant, which led First Data to pay him $30,000 per month. Evidence will show that Barger did not make $30,000 in either 2012 or 2013, let alone any month of those years.

The jury will hear evidence that had First Data known about Barger's fraudulent billings and misrepresentations regarding his compensation, his relationship with First Data would have been terminated immediately. For all of these reasons, evidence of the compensation, financial condition, equity holdings, and net worth of Mr. Bisignano, Mr. Charron, Mr. Marino, and Ms. Johnson must be excluded at trial as irrelevant and highly prejudicial.

**2.      Evidence Regarding the Finances Associated with the Fiserv/First Data Merger Should be Excluded.**

Defendants anticipate that Barger will attempt to introduce evidence and/or make arguments during trial concerning the financial terms of Fiserv's merger with First Data. Evidence concerning the size of the transaction should excluded as irrelevant because the value of Fiserv's acquisition has nothing to do with Barger's FMLA and ADA claims. Even if somehow the amount of money involved were relevant, any probative value of this information is far outweighed by the prejudice that Defendants will suffer.

The financial details of the merger have no bearing on the elements needed to support Barger's claims that all of the Defendants (corporate and individual) violated the FMLA and/or whether First Data violated the ADA. *L-3 Commc'ns Corp.*, 2006 WL 988143, at *6 (precluding evidence regarding the result of an acquisition because it is not probative of any element of the claims, would mislead the jury, and result in confusion of the issues); *Cooper Tire & Rubber Co. v. Farese*, 2008 WL 5382416, at *3 (N.D. Miss. Dec. 19, 2008) (finding that references to party as "wealthy, thriving, large company" and references to company's finances and size held irrelevant and excluded on motion *in limine*).

Numerous courts have held that "[a]ny probative value that evidence of the corporate [d]efendants' wealth, financial condition, and unrelated revenues may have during the liability phase of the trial is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusion on the relative wealth of the parties." *Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005); *see also Koufakis v. Carvel*, 425 F.2d 892, 902 (2d. Cir. 1970) (holding that references by counsel about the "little" plaintiff with "modest resources" up against a "powerful" defendant with "untold wealth," "can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor, are grounds for a new trial"); *Draiper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (granting a new trial in part where plaintiff's counsel "repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff").

Due to the inevitable prejudice that First Data will suffer by the disingenuous implication that it should be held liable for FMLA or ADA violations because of its perceived wealth in comparison to that of Barger, evidence of the financial terms of the Fiserv/First Data merger should not be permitted at trial.

7

### 3.        Allegations of Alleged Racial Bias Should be Excluded.

The only claims at issue in this case are whether Barger can prove that he was denied rights under the FMLA or was discriminated against because he has a disability. *There are no claims of racial discrimination under any federal, state, or local law in this case.* Yet, Defendants expect Barger may try to show that First Data is biased against African Americans. During discovery, Barger produced a 2017 news article about the movie King Kong and how its title is racist. He produced a 2018 news article about a woman in London—who does not work for First Data—who received racist messages on a dating app. He also produced a First Data internal newsletter which referred to First Data as an 800 pound gorilla. In Barger's opinion, First Data referring to itself as an 800 pound gorilla somehow means the Company is racist.

Over objection, Barger questioned witnesses about the gorilla reference in the newsletter. Witnesses testified that First Data viewed itself as the dominant player in the payments processing industry, akin to being the 800 pound gorilla or disruptor. Comparing First Data's business accomplishments to the title of a Hollywood movie in an effort to somehow prove that the Company is racist belies credulity. This Court must put a stop to Barger's side shows.

For obvious reasons and even more so in today's political climate, courts have recognized that "unrelated allegations of racial discrimination are inflammatory." *Manning v. New York Univ.*, 2001 WL 62872, at *4 (S.D.N.Y. Jan. 24, 2001). Allegations of discrimination by other employees are irrelevant because they do not make it any more probable that another plaintiff was subjected to discrimination in a particular case. *See, e.g.*, *Martin v. Reno*, 2000 WL 1863765, at *8-11 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 2001 U.S. App. LEXIS 24404 (2d Cir. Nov. 8, 2001). This limitation is even more appropriate because Barger does not allege racial discrimination.

In *Haskell v. Kaman Corp.*, and its progeny, courts in the Second Circuit have consistently found that the probative value of evidence of discrimination or retaliation against other employees is substantially outweighed by the danger of unfair prejudice to the employer defending such discrimination claims. 743 F.2d 113 (2d Cir. 1984); *see Patterson v. McCarron*, 130 F. App'x 490, 491 (2d Cir. 2004) (holding that the district court did not "exceed its allowable discretion in declining to permit plaintiff's co-worker from testifying about the circumstances surrounding her discharge because such testimony was not relevant to the circumstances surrounding plaintiff's discharge"); *Townsend v. Clairol Inc.*, 26 F. App'x 75, 78 (2d Cir. 2002) (holding the "District Court did not commit manifest error in refusing to admit testimony about alleged discrimination toward other individuals"); *Martin*, 2000 WL 1863765 at * 10 (precluding plaintiff "from submitting any evidence about claims of discrimination other than his own" on the grounds that "[s]uch testimony is entirely irrelevant to [plaintiff's] claims, and would merely protract the trial by taking the testimony too far afield from [plaintiff's] actual claims"); *see also McLeod*, 73 Fed. App'x at 854 ("[T]he potential for prejudice that would have accompanied the [introduction of evidence of prior lawsuits] would have substantially outweighed its probative value, and . . . would have misled the jury.").

First Data should not be required to defend itself against allegations of racism when such a spurious and lightening rod allegation has nothing to do with Barger's claims in this case. Barger must be precluded from introducing evidence about alleged racial bias.

### 4. Allegations and Evidence Regarding First Data's Alleged Use of Palantir and First Data's IT systems Should be Excluded.

There are no claims for invasion of privacy or misappropriation of Barger's personal data in this case. Yet, another irrelevant and frivolous conspiracy theory that Barger explored during discovery over objection is his claim—without any proof—that First Data uses software

developed by Palantir to monitor employee communications and unlawfully gather customer data. Once again, these spurious allegations have nothing to do with Barger's claims under the FMLA and ADA.

Barger first raised Palantir in an email to counsel on April 20, 2018, in which his counsel emailed a link to a news article discussing Palantir and its big data aggregation abilities, and the employment of some First Data executives who had worked at JP Morgan Chase, including Defendant Bisignano, claiming that he needed to understand if First Data used Palantir to monitor employees and what its capabilities were. The message from Barger's counsel stated as follows:

> When three First Data executives, Bisignano (CEO), Chiarello (President) and Chavicchia (SVP) are all mentioned in connection with a Peter Theil software enterprise that monitors employee communications, and related to Zuckerberg, Musk and privacy invasions, and Mr. Bisignano is implicated as a leak of JP Morgan Chase information to the New York Times while he was CEO of First Data, all of the information regarding the systems included in your document production as relevant the the [sic] Plaintiff and his employment are very relevant issues to be addressed as part of Plaintiff's discovery. This is in addition to the fact that First Data is a data collection and aggregation company that, as part of it's [sic] business model, aggregates transaction information and sells it as part of its business. As you know, Judge Block is currently serving on the 9th Circuit, where any actions against Theil, Zuckerberg, or Musk may be brought. I think he will be interested in this issue.

The referenced news article discussed how large technology companies use Palantir to mine data and alluded to potential abuses. Assuming that one can even understand what Barger's counsel is suggesting, other than trying to assassinate the character of several First Data executives, Palantir is not relevant to any of Barger's claims.

To further the point, Barger only asked questions about Palantir to just one deponent, Defendant Bisignano, who testified that First Data does not use Palantir to monitor employee

communications. He also questioned numerous witnesses about First Data's technology systems generally, the mobile applications for email, and the VPN system for remote logins when out of the office. There is no evidence that First Data used Palantir in any manner relating to Barger.

Throughout this case, Barger has tried to prove that First Data's IT systems are somehow relevant to his claims. He forced First Data to spend tens of thousands of dollars in legal fees to respond to motions to compel and motions for sanctions, all of which were denied. For instance, Barger moved to compel First Data to produce a 30(b)(6) witness to testify about First Data's IT systems. *See* ECF No. 46. Judge Bloom denied his first motion to compel on June 12, 2018, because she found the need for such a witness unnecessary. *See* Docket Entry, June 12, 2018.

Not satisfied, Barger filed yet another motion to compel a 30(b)(6) on First Data's IT systems. *See* ECF No. 55. After a court hearing on September 4, 2018, Judge Bloom denied this motion, ruling that it was unnecessary because "everybody agrees that there is a paper trail of what happened in this case, so it's not dependent on internal control technology." On January 4, 2019, this Court denied Barger's Rule 72(a) objection and affirmed Judge Bloom's order denying further discovery on this topic. ECF No. 86.

This case is not about Palantir, electronic data handling, IT systems, data mining, or hacking. This case is about whether First Data had a legitimate non-discriminatory reason for including Barger in the RIF. Nothing about its IT systems, Palantir, or Barger's wild conspiracy theories have any relation to the issues to be decided by the jury. The Court should put an end to this complete waste of time and judicial resources and preclude Barger from trying to introduce any evidence or claims relating to Palantir or First Data's IT systems at trial.

5.      **Allegations Related to First Data's Hiring of E.J. Jackson as His Replacement Should be Excluded.**

On January 13, 2017, First Data issued a press release that an individual named E.J. Jackson had been hired by First Data in San Francisco to run a software development group within the Integrated Solutions Group (ISG). January 13, 2017, was the same day Barger was notified of his termination. Barger has tried to conflate these two distinct events by claiming that Jackson was his replacement. Despite the fact that Barger worked in sales transformation and was in charge of the sales training group, he insisted that Jackson, who worked in software development on the other side of the country, was his replacement.

First Data objected to Barger's efforts to depose Jackson, so he moved to compel First Data to produce him for deposition. Like all of the other discovery motions brought by Barger, Judge Bloom denied his motion to compel Jackson's deposition after conducting a hearing. Judge Bloom ruled that Jackson's deposition "is irrelevant to your case. Your case is a reduction in force case . . . you have to prove that the reduction in force is a pretext for discrimination. That's what the case is about." Judge Bloom went on to rule that "Jackson being hired on the same date that Mr. Barger was fired does not mean that Mr. Jackson has relevant testimony regarding this discrimination case." Sept. 4 Hr'g, ECF No. 62 at 14:13-17.[3]

It is undisputed that First Data employee Robin Ording took over Barger's duties in running the sales training group, in addition to retaining all of her previous duties. Accordingly, Jackson's hiring by First Data has nothing to do with Barger's claims. Jackson held a different job, in a different business unit, in a different state, had different responsibilities, and had entirely different reporting relationships. In a company of over 20,000 employees, Barger's

---

[3] The only issue Judge Bloom permitted further discovery on was to order First Data to respond to a Request for Admission regarding Jackson's salary. First Data subsequently admitted that Jackson's base salary was substantially less than Barger's.

conspiracy theory that there is some relationship between his termination and Jackson's hiring in January 2017 is based on pure conjecture. Barger should be precluded from trying to introduce any evidence concerning the hiring of Jackson because such evidence is not relevant under Rule 402.

**6.    Evidence of Prior Lawsuits Should be Excluded.**

Defendants anticipate Barger may try to introduce evidence from other lawsuits before the jury. The Court should exclude evidence any evidence relating to prior lawsuits against any of the Defendants as irrelevant and highly prejudicial. Judge Bloom already dealt with this issue during discovery when Barger sought production of evidence relating to other lawsuits. Judge Bloom correctly denied Barger's motions to compel discovery on these cases explaining that:

> The *Fountain* case was about intermittent leave that went into the 2009 or thereabouts. So, again, you're talking about things that are so tangentially related here, Mr. Shearer, that I don't get what you're trying to prove. . . . I do see it as a frolic and a detour in what is your essential case to prove. You have to prove discrimination. So, again, I understand you're trying to show that their reduction in force is a pretext, but I don't get how any of these other things that you're asking me to compel go to the issue of discrimination."

Sept. 4 Hr'g, ECF No. 62 at 12:2-23.

The relevance and admissibility of prior lawsuits depends on a probative-prejudice balancing test of "the nature of the prior lawsuit, including whether the prior lawsuit is sufficiently related to the instant case, and the purpose for which such evidence will be used at trial." *Bermudez v. City of New York*, 2019 WL 136633, at *7 (E.D.N.Y. Jan. 8, 2019). "Unrelated prior lawsuits are unlikely to yield evidence sufficiently probative to overcome the risk of unfair prejudice to defendants or confusing the issues for the jury." *Id.*

Rule 404(b) makes inadmissible "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance

with the character." *See also Rodriguez v. NNR Glob. Logistics USA Inc.*, 2016 U.S. Dist. LEXIS

46093, at *15 (E.D.N.Y. Mar. 31, 2016) ("[E]vidence of a person's character or a trait of

character is not admissible for the purpose of proving action in conformity therewith.")

Barger would want to use evidence from prior lawsuits to try to demonstrate that because

Defendants were "confused" in a prior lawsuit regarding the FMLA, they must also be

"confused" in this case. This propensity evidence from prior lawsuits is exactly what Rule 404(b)

prohibits as inadmissible.

At Defendant Dan Charron's deposition, Barger's counsel questioned him about *Belfiore*

*v. Merchant Link LLC*, a case that he was involved in when he was CEO of Merchant Link for

which summary judgment was granted in his favor and subsequently affirmed on appeal. In that

case, Mr. Charron was falsely accused of discriminating against an employee in connection with

the employee's wages. There were no claims in that case under the FMLA or ADA, nor was Mr.

Charron accused of being an employer. None of the false and unproven claims in that case

(which was dismissed on behalf of Merchant Link) have anything to do with Barger's claims that

Charron was his employer and/or violated the FMLA. For these reasons, the Court must preclude

evidence relating to the *Fountain*, *Golbin*, and *Merchant Link* cases, as well as all other prior

lawsuits against any of the Defendants or any other cases in which they were involved.

> **7.    Evidence of the Details Regarding Other Reductions-In-Force Should be Excluded.**

Barger admitted during his deposition that reductions-in-force are a business tool used by

many companies to address financial situations. It is undisputed that First Data undertook a

number of restructuring actions, including reductions-in-force while Barger was employed. First

Data asserts Barger was terminated for a legitimate, non-discriminatory reason, namely that

Barger's position was eliminated as part of a broad cost-saving RIF that affected 10% of the top

3,000 highest compensation employees in January 2017. The only relevant issue to be decided at trial is whether Barger's inclusion in the 10% of the top 3,000 RIF was legitimate. Other RIFs have no bearing on Barger's termination.

Defendants anticipate Barger will try to introduce evidence of other RIFs that First Data has implemented, either before or after Barger's termination, and will want to delve into the financial details of each of those restructuring events. The Court should exclude evidence regarding the granular financial details of RIFs other than the one in which Barger was included because such evidence is irrelevant to the claims at issue. *See Karlo v. Pittsburgh Glass Works, LLC*, 2016 WL 69651, at *5 (W.D. Pa. Jan. 6, 2016) (excluding evidence of prior RIFs by the defendant).

To permit detailed evidence of other RIFs will distract the jury by creating a series of mini-trials over the legitimacy of each and every other RIF, and every employee impacted, that Barger will seek to attack as "illegitimate." Analyzing this exact issue, the court in *Karlo* reasoned that "[p]ermitting the introduction of all of this evidence [on past RIFs] would risk turning the trial into a series of "mini-trials" on the propriety of [defendant's] reductions in force . . . . That would amount to a substantial waste of the jury's time and tend to obscure rather than shed light on the key issue of whether Plaintiffs were retaliated against." 2016 WL 69651, at *5. The only RIF relevant to this trial is the January 2017 RIF in which Barger was included and the Court should bar evidence of any other RIFs as irrelevant.

15

## CONCLUSION

For these reasons, Defendants request that their Motions in *Limine* be granted.

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Gary B. Eidelman*

Gary B. Eidelman (admitted *pro hac vice*)
Michael P. Cianfichi (admitted *pro hac vice*)
500 E Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
gary.eidelman@saul.com
michael.cianfichi@saul.com

Gillian A. Cooper
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19125
T: (215) 972-7861
gillian.cooper@saul.com

**New York Office**
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

**BOND, SCHOENECK & KING PLLC**

Louis P. DiLorenzo
600 Third Avenue 22nd floor
New York, New York 10016-1915
T: (646) 253-2315
ldilorenzo@bsk.com

*Attorneys for Defendants,*
*First Data Corporation, Frank Bisignano, Dan*
*Charron, Anthony Marino, and Rhonda Johnson*

Dated: August 30, 2019

16