Shawn E. Shearer (TX Bar No. 24049493)
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (972) 803-4499
shawn@shearerlaw.pro

Attorneys for Plaintiff
Steven B. Barger

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | Case No. 1:17-cv-4869-FB-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>**(Assigned to the Honorable Frederic Block)** |

**TO THE COURT AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**

**NOTICE IS HEREBY GIVEN** that Plaintiff STEVEN B. BARGER ("Plaintiff") moves the Court for an Order imposing sanctions under Federal Rule 11(c) for the filing and maintaining the allegations and factual statements responses to specific allegations contained in the Defendants' Request for Extension of Discovery Period [ECF No. 54] on the following grounds:

(1) The filing and maintaining of the statement that "Since First Data based the amount of money to pay Barger on his representations of what he was earning, First Data needs discovery into this 'after acquired evidence' in connection with his claim for damages."("After-Acquired Evidence Statement") is contrary to the testimony given by

**MOTION FOR RULE 11(c) SANCTIONS**          1

    Defendant Whalen (former SVP of First Data) on May 31st and Defendant Marino (EVP of First Data) on June 1st. The evidence of Plaintiff's billings as a consultant prior to his employment by First Data is not after-acquired, and in fact, knowledge of Mr. Barger's rate for consulting was a negotiated term between sophisticated parties, and Mr. Barger's compensation upon employment (a raise from his consulting compensation) was a debated proposition inside of Defendant First Data back in 2014 – the information upon which the request for extension was made is 4-years stale. The information is not "after-acquired" for purposes of *McKennon*, it was actually "pre-acquired", and both the factual basis and legal basis upon which the extension of time was sought was knowingly contradictory to the evidence and law.

(2) Defense counsel ignored the Defense witness testimony contrary to the After-Acquired Evidence Statement. Compensation to be paid to Plaintiff as an employee was discussed within the Defendant First Data prior to the employment of Mr. Barger and the decision was made to hire Mr. Barger in 2014 by the Vice Chairman of the Board at a rate of pay despite the contrary recommendations of subordinate officers at First Data. The evidence surrounding Plaintiff's hiring is not after-acquired, it was acquired pre-hiring, not post-termination. All suggestions otherwise, and application of McKennon, are based on knowingly incorrect facts and knowingly incorrect applications of the law and should be sanctioned.

This Motion for Sanctions will be based upon this Notice and the accompanying Memorandum of Points and Authorities.

DATED:	August 29, 2018

                                                                Respectfully Submitted,

                                                                THE LAW OFFICE OF SHAWN SHEARER, P.C.

                                                                _____/s/ Shawn Shearer_____
                                                                SHAWN SHEARER
                                                               shawn@shearerlaw.pro

                                                               Attorney for Plaintiff
                                                               Steven B. Barger

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION AND PROCEDURAL HISTORY**

This case is an employment discrimination lawsuit brought to seek redress for the violation of the Plaintiff's federally protected rights under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") initially filed on August 18, 2017. Pursuant to the Court's Scheduling Order on January 18, 2018, the parties were ordered to complete all fact discovery by August 31, 2018.[1] By letter motion [ECF No. 54] ("Request for Extension"), a copy of which is attached as Exhibit A, Defendants requested to extend fact discovery through September 28, 2018 on the basis that third-party discovery was required to obtain evidence on "after-acquired evidence" as to Plaintiff's pre- First Data employment billings arising from Plaintiff's deposition on August 15, 2018. Defendant's Request for Extension was granted 48 hours later, before Plaintiff could file an opposition, by minute entry on August 17, 2018.

II.  **LEGAL STANDARDS**

Under Rule 11, by presenting the Request for Extension to the Court, Defense Counsel certified that to the best of the signatory's (and the signatories law firm) knowledge, information, and belief formed "after inquiry reasonable under the circumstances", that (i) the Request for Extension was not being presented for any improper purpose, such as to harass, cause

---

[1] **Discovery commenced January 18, 2018 and Defendants did not notice the Plaintiff for deposition until July 10th (six months after discovery began), and the deposition occurred on August 10, 2018.** After seven months of discovery lethargy (not even deposing the Plaintiff), Defendants requested an extension of discovery based on information supposedly "acquired" in Plaintiff's deposition. But, as set forth herein, – all of the information had been in Defendants' possessions for years and months Plaintiff's. Had Defendants properly used the prior **seven months** of discovery to depose THE PLAINTIFF, no request to extended time would have been necessary and this case would be proceeding to trial on schedule. Moreover, the question for *McKennon* is not when outside counsel received the information the question is when the Defendant received the information, and Defendant First Data has known everything since 2014 – Mr. Eidelman learning of facts in discovery that were already known to his client years before is not "after-acquired evidence", it is merely Mr. Eidelman and Defense Counsel getting up to speed on the events of the prior four years.

MOTION FOR RULE 11(c) SANCTIONS            4

unnecessary delay or needlessly increase the cost of litigation, (ii) the legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions are warranted on the evidence. Fed. R. Civ. P. 11(b). If the court, after notice and opportunity to respond, determines Rule 11(b) has been violated, the court may impose an appropriate sanction any attorney, law firm, or party that violated the rule or is responsible for a violation, and a law firm may be held jointly responsible for the acts of its partner, associate or employee. Fed. R. Civ. P. 11(c)(1).

      Throughout the Federal Rules of Civil Procedure, there is a general theme that the Court is authorized to protect the sanctity of its proceedings. The Supreme Court has described fraud on the court as "a wrong against the institutions set up to protect and safeguard the public." *Hazel Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). Rules 11, 16, 26, 37, and 41 of the Federal Rules of Civil Procedure all divine a general equitable principle that the Court is empowered to sanction activity, especially misrepresentations of known acts and the application of law, contrary to the proper operation of the judicial system. *See* Jonathan M. Stern, *Untangling A Tangled Web Without Trial*, 66 J. Air L. & Com. 1251, 1272–1285 (Summer 2001) (collecting cases).

    **III.**    **SIGNING AND PRESENTING THE REQUEST FOR EXTENSION IS SANCTIONABLE UNDER RULE 11 AND THE GENERAL AUTHORITY OF THE COURT TO PROTECT THE PROPER OPERATION OF THE JUDICIAL SYSTEM**

The Request for Extension was based upon an unsupportable application of *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). For *McKennon* to apply, the first step in the analysis is to determine whether information was discovered after the adverse employment action was taken. There has been nothing new discovered. The rate of pay of Plaintiff while a consultant and upon negotiation of employment was not a secret, and as the Defense witnesses

**MOTION FOR RULE 11(c) SANCTIONS**       5

have testified, was debated back in 2014 – IT IS NOT NEW INFORMATION. **No evidence has been discovered post-Plaintiff's termination that was not already in First Data's possession pre-Plaintiff's hiring.**

The Request for Extension begins its analysis on the basis that Mr. Barger, at the time working as an employee of The Barger Group, LLC, was hired by First Data as consultant at the rate of $30,000 per month during the first quarter of 2014 and was then hired as an employee of First Data, earning $40,000 per month (plus benefits and equity) on June 30, 2014. In other words, after observing Mr. Barger's work for nearly six months, First Data decided to increase its expenditure on Mr. Barger's services to obtain his exclusive attention away from other clients for whom he was consulting. There is absolutely no evidence that either the $30,000 per month consulting fee or the $40,000 per month salary were based on Mr. Barger's personal income prior to 2014.

The questioning of Plaintiff Barger at his deposition regarding his personal tax returns cannot possibly be informative of Plaintiff Barger's billings and revenue for his prior employer. And, Mr. Barger's billings and revenue for his prior employer and his personal income prior to his employment by First Data are irrelevant for any *McKennon* analysis. Just like you cannot determine Defense Counsel Gary Eidelman's billable hours and collections for Saul Ewing by looking at his personal tax return, you cannot determine Plaintiff Barger's billables and collections as a consultant from looking at his personal tax returns. Moreover, Mr. Barger's billables and personal collections prior to his employment by First Data have absolutely nothing to do with the salary under which he worked for three years while at First Data.

Plaintiff Barger's billables, collections and compensation are red-herrings diverting from the real issue. THERE IS NO AFTER-ACQUIRED EVIDENCE AND DEFENSE COUNSEL

MOTION FOR RULE 11(c) SANCTIONS        6

KNEW SUCH WHEN THE REQUEST FOR EXTENSION WAS FILED.

The documents produced by Defendants from 2014 demonstrate that the pre-employment consulting arrangement between First Data and Plaintiff Barger was a negotiated transaction between two sophisticated parties. Exhibit B. The Consulting Agreement contained a typical integration clause (Bates No. FDC 53146) providing:

> This Agreement constitutes the complete and exclusive statement between the parties and supersedes and merges all prior proposals and all other agreements, oral or written, between the parties relating to the subject matter of the Agreement.

The Consulting Agreement also contained a typical disclaimer of drafter, indicating the terms and conditions of the document were negotiated by two willing parties and not a contract of adhesion or a contract entered without diligence or under duress.

> First Data and the Consultant have jointly participated in the negotiation of this Agreement. This Agreement shall be construed as if drafted jointly by First Data and Consultant, and no presumptions arise favoring any party by virtue of authorship or of any provision of this Agreement.

Between the integration clause and the joint drafting clause, there is no evidence that Plaintiff Barger's hourly rates as a consultant for other clients was at all a consideration in the entry of the Consulting Agreement. In fact, First Data specifically agreed in the joint drafting of the Consulting Agreement, through the integration clause, that the Consulting Agreement supersedes all prior discussions. Any discussion regarding the basis of the transaction was integrated away in a jointly negotiated and drafted agreement. The compensation paid to Plaintiff Barger's former employer under the pre-employment Consulting Agreement is irrelevant to the *McKennon* analysis.[2] First Data was fully apprised of the terms of the negotiated agreement it entered in

---

[2] This is not a breach of contract case against Barger Group, LLC. It is not the forum for First Data to be seeking information to be developing any potential cause of action against a non-party to Plaintiff Barger's FMLA and ADA claims arising out of his illegal termination.

**MOTION FOR RULE 11(c) SANCTIONS**         7

2014 – those terms are not after-acquired evidence.

A decision was made by First Data to terminate the Consulting Agreement and employ Mr. Barger directly for a salary of $40,000 per month, $250,000 cash bonus, equity awards, and benefits. This was an increase of $10,0000 per month over that First Data was paying for a consultant who was also working for other clients – First Data knowingly chose to increase the compensation to Plaintiff as an employee over that First Data had been paying to Plaintiff's employer as a consultant. A business decision was made after observing Mr. Barger's consulting work for six months to hire him as an employee of First Data.

Prior to filing the Request for Extension, Defense Counsel knew that the decision to hire Plaintiff at his compensation level was a decision debated inside of First Data. The evidence of this debate was not after-acquired, it was as old as 2014 when the decision was made to hire Mr. Barger instead of continuing with him as a consultant.[3]

Defendant Whalen testified at her deposition on May 31, 2018 (three months prior to the Request for Extension) that as internal discussions regarding Mr. Barger's compensation was discussed pre-hiring (<u>Exhibit</u> C):

> He came in at a comp level that I was astounded by and <u>disagreed with openly</u>.
> (Whalen 92:20-22)

---

[3] Simply because that in 2018 outside counsel learned of events that occurred in 2014 that were known to employees of First Data in 2014, does not make that knowledge "after-acquired". The question is not when counsel learned the information, the question is when the Defendant learned the information. First Data had all the information it needed to enter into a consulting agreement with an integration clause and then employ Mr. Barger at an increased rate in 2014. The fact that Saul Ewing, defense counsel, just learned such, does not make that discovery after-acquired evidence for purpose of *McKennon*.

Ms. Whalen also explained in her testimony on May 31, 2018, the reason why Plaintiff was employed at the decided compensation level (and it was not because of representations as to his billable hours as a consultant):

> [Plaintiff] and Joe Plumeri had worked together to turn around large sales forces. And he always was the guy with Joe. And <u>Joe felt that he could add value here as part of the sales transformation effort</u>. (Whalen 93:4-8)

Defendant Marino echoed the statements of Defendant Whalen when he testified on June 1, 2018 as follows (<u>Exhibit</u> D):

> I believe that that was a mistake to hire him at the rate in which he was paid. In fact, I believe <u>Ms. Whalen testified yesterday that she completely disagreed with Mr. Plumeri when he made the decision to do so</u>. . . . I think that in Mr. Barger's case he was hired by Joe Plumeri. And my deposition and Ms. Whalen's deposition, we believe he was hired at a rate of pay that far exceeded the responsibilities of the job. And <u>Ms. Whalen</u>, I believe, <u>went on the record of that</u>. I support that. (Marino 186:7-187:16)

In other words, the issue of Mr. Barger's salary compensation paid by First Data was debated internally within First Data back in 2014 before the offer of employment was made. At the time these discussions were ongoing, Mr. Plumeri was the Vice Chairman of the Board of First Data, Ms. Whalen was a Senior Vice President, and Mr. Marino was not yet employed by First Data. Mr. Plumeri, after considering his decades of history with Mr. Barger and the recent input of his subordinate Defendant Whalen, made the decision to hire Mr. Barger at the salary of $40,000 per month plus benefits and equity. Mr. Plumeri was fully informed, and First Data through its officers Plumeri and Whalen was fully informed, in 2014 when the hiring decision was made.[4] Nothing new has been or needs to be discovered.

---

[4] Joe Plumeri at the time of hiring the Plaintiff was the Vice Chairman of the Board of Directors and an officer of First Data Corporation. Mr. Plumeri has decades of experience as a senior executive on Wall Street and has written a NYT best seller on management. Mr. Plumeri is not a rookie easily capable of being duped on a simple employment hire. <u>Exhibit</u> F is the biography of Mr. Plumeri from the First Data corporate website. Mr. Barger did not put one over on Mr. Plumeri, which is what has to be believed possible to even approach any *McKennon* analysis.

This case was filed in August 2017, more than three years after Mr. Plumeri, Vice Chairman of the Board of Directors, made a decade long informed and educated decision to establish Plaintiff's compensation. There is no "after-acquired evidence". The evidence was "pre-acquired" as shown by Defendant Whalen's testimony that she openly advised Mr. Plumeri back in 2014 before Plaintiff was hired as an employee.[5] First Data did not suddenly find evidence that its own employees disagreed with a 2014 decision made by First Data's Vice Chairman of the Board that had input of subordinates, and to suggest otherwise is an intentional misapplication of the law to known facts (facts of which have been misrepresented to the court). The sworn testimony is that the Vice Chairman of the Board (Plumeri) of First Data and a Senior Vice President of First Data (Whalen) had pre-employment discussions regarding the business decision as to Barger's salary and compensation in 2014. Moreover, Defendant Marino testified that this issue had continued during Mr. Barger's employment at First Data. There is no after-acquired evidence. The supposed evidence upon which the motion to extend was based has been out in the open for years.

The issue is not whether Mr. Barger was over compensated – no matter the level of his compensation – the issue in this case is that no matter his compensation, while on FMLA leave Plaintiff Barger was entitled to a statutory right TO BE REINSTATED at his pre-leave pay.

> On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position **with equivalent benefits, pay, and other terms and conditions of employment**. An employee is entitled to reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence. 29 C.F.R. 825.214

---

[5] The Plaintiff completely disagrees that his compensation was out of market or out of line for his responsibilities, but for Defendants to present to the court that issues around his compensation were newly discovered as part of this litigation is a complete misrepresentation of facts known by the Defendants prior to the commencement of this litigation.

**MOTION FOR RULE 11(c) SANCTIONS**          10

*McKennon* is inapplicable to Plaintiff's right to return. Internal disagreements as to compensation amounts do not change Plaintiff's entitlement to restoration to an equivalent position with the same pay as had been debated internally by First Data for years.

For purposes of *McKennon* the issue is whether First Data obtained evidence after the commencement of this litigation that if known earlier would have resulted in Plaintiff's termination. There is no such evidence, in fact the testimony is the opposite. First Data hired Plaintiff as a consultant. The consulting agreement was a negotiated document integrating all prior discussions. First Data received, processed and paid all of Plaintiff's consulting invoices. First Data then hired Plaintiff as an employee at an increased rate of pay, benefits, and equity. Both the consulting and hiring terms were internally discussed by First Data BACK IN 2014 prior to entering those relationships with Mr. Barger.

Defense Counsel was aware of these testified facts when the Request to Extend was filed on the false basis of having discovered new evidence that required both an extension of time and the harassment of non-parties with extensive document production requests over private matters involving tax returns, former employer financials statements, etc. See Exhibit E.

IV.     **CONCLUSION AND REQUEST FOR RELIEF**

Defendants knowingly misrepresented the facts surrounding Plaintiff Barger's PRE-EMPLOYMENT relationship with Mr. Plumeri and with First Data for purposes of obtaining an extension of time solely for the purposes of harassing non-parties, increasing the cost and time of this litigation, and increasing the burden on all parties (and non-parties) from Defendants' late, tardy, delinquent, and oppressive discovery efforts, all based on a fabrication of "after-acquired evidence".

Defense counsel knew from sworn testimony given at the end of May 2018 that the rate of

Mr. Barger's pay was determined by Mr. Plumeri, not because of Plaintiff's billable rate, but because Mr. Plumeri had worked with Plaintiff for years and wanted Plaintiff to assist in the transformation of the sales team and believed he would bring "value" as testified by Defendant Whalen. This information was confirmed by Mr. Barger in his deposition when he testified that he requested a consulting fee of $20,000 and Plumeri, Vice Chairman of the Board of First Data, offered $30,000.

The Request for Extension under the subterfuge of "after-acquired evidence" was a fraud on the court. There is no after-acquired evidence. The concept is the figment of Defense Counsel's imagination and intentional disregard for testified facts, and sanctionable.

The request for an extension of time was designed merely to delay these proceedings, increase Plaintiff's costs, impose burdens on third-parties, invade the privacy and financial information of third parties, and generally embarrass Plaintiff publicly through these filings and through subpoenas of members of his community.

The filing and maintaining of the statement: "Since First Data based the amount of money to pay Barger on his representations of what he was earning, First Data needs discovery into this 'after acquired evidence' in connection with his claim for damages." is contrary to the testimony given by Defendant Whalen (former SVP of First Data) and Defendant Marino (EVP of First Data). The evidence is not after-acquired, and in fact, knowledge of Mr. Barger's negotiated rate for consulting was a negotiated term between sophisticated parties and Mr. Barger's compensation upon employment was a debated proposition inside of Defendant First Data even before Mr. Barger was hired.

Plaintiff requests the following relief:

(i)     The extension of time for fact discovery, being based upon knowingly inaccurate

**MOTION FOR RULE 11(c) SANCTIONS**             12

      representations of facts, should be immediately revoked and fact discovery ordered completed in this matter;

(ii)   Plaintiff should be awarded attorney's fees in connection with all matters related to the filing of this motion and in evaluating Defendants' third-party discovery attempts following the granting of ECF No. 54, and all expenses and fees incurred in connection therewith; and

(iii)   As an equitable penalty for falsely representing facts to the Court, Defendants should be barred from raising *McKennon* as a defense in any manner arising out of the process of entering the Consulting Agreement or the negotiations of the terms of Mr. Barger's hiring.

DATED:     August 29, 2018

                                              Respectfully Submitted,

                                              THE LAW OFFICE OF SHAWN SHEARER, P.C.

                                              _/s/ Shawn Shearer_
                                              SHAWN SHEARER
                                              shawn@shearerlaw.pro
                                              Attorney for Plaintiff
                                              Steven B. Barger