## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual | **Case No. 1:17-cv-4869-FB-LB** |
| Plaintiff | |
| v. | **(Assigned to the Honorable Frederic Block)** |
| FIRST DATA CORPORATION et al. | |
| Defendants. | |

### PLAINTIFF'S PROPOSED JURY INSTRUCTIONS
### &
### PLAINTIFF'S GENERAL OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND JURY VERDICT FORM [ECF NOS. 103 & 104]

I.  **Plaintiff's Proposed Instructions**

Plaintiff Steven B. Barger, by and through his undersigned counsel, respectfully requests the Court deliver the instructions that follow to the jury pursuant to Rule 51 of the Federal Rules of Civil Procedures and Individual Practice Rule 3.B. Plaintiff respectfully requests leave to submit revised or additional requests based upon the evidence adduced at trial or to conform to any rulings of law the Court may render during the course of the trial.

II.  **General Objection to Defendant's Proposed Instructions and Verdict Forms**

Plaintiff Steven B. Barger, by and through his undersigned counsel, respectfully submits the following Objection to Defendants' Proposed Jury Instructions and Verdict Form. [ECF Nos. 103 & 104]. The objection below is in general to all of Defendants' instructions and proposed verdict questions. This objection does not waive any of Plaintiff's other potential objections to the instructions or verdict supplements that have been or may be proposed.  This objection further does not waive Plaintiff's right to object to any particular instruction or verdict form until expiration of the Rule 51 objection period.

1

**"Reduction-in-force" or "RIF" should not appear in the instructions or the verdict forms**

The term "reduction-in-force" appears numerous times in Defendants' proposed instructions and proposed jury verdict forms. The term "reduction-in-force" is an amorphous, undefined, and vacant term. It has no meaning other than that which is assigned by the person that reads or hears it. It is short-hand nomenclature of lawyers with no statutory or regulatory basis, no criteria, no factors, or other identified indicia of its meaning.

The term "reduction-in-force" does not appear anywhere in the FMLA or the ADA. Use of the term "reduction-in-force" or "RIF" in the jury's instructions provides no guidance. The use of the term in the verdict forms is a misstatement of the law and is prejudicial. Therefore, "reduction-in-force" and "RIF" should not be included in the instructions to the jury as a description of the law against which the jury is directed to apply the facts during their deliberations.

## FMLA

For purposes of the FMLA, the relevant statutory and regulatory authorities are the following (emphasis added):

**29 U.S.C. §2414(a)(1)**  Except as provided in subsection (b) [highly compensated employees that have received required notice], any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave  shall be <u>entitled</u> upon return from such leave – (A) <u>to be restored</u> by the employer to the position of employment held by the employee when the leave was commenced; or (B) <u>to be restored</u> to an equivalent position with equivalent employment benefits, pay, or other terms and conditions of employment.

**29 U.S.C. §2414(a)(3)**  Nothing in this section shall be construed to entitle any <u>restored</u>[1] employee to . . . (B) any right, benefit, or position of employment

---

[1] As has been argued by Plaintiff in his Motions pursuant to Rule 12(c) and Rule 56 ECF Nos. 37, 37-2, 94-5, 94-12, 94-17, the statutory reference is to a "restored" employee not being entitled to any greater benefits.  The statute does not say that an employee still on leave and yet to be restored is not entitled to restoration under 29 U.S.C. § 2914(a)(1). In other words, 29 U.S.C. §2914(a)(3) by the plain meaning of the statute does not apply to employees on leave, but only to employees that have been restored from leave.

other than any right, benefit, or position to which the employee been entitled had the employee not taken leave.

**29 C.F.R. § 825.214**   On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay and, other terms and conditions of employment.  <u>An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.</u>

**29 C.F.R. § 825.216(a)**   An employee has not greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. <u>An employer must be able to show that an employee would not otherwise have been employed **at the time reinstatement is requested in order to deny restoration to employment.**</u>

The term "reduction-in-force" appears nowhere in the above FMLA statutory and regulatory provision. The instructions and verdict form as written and proposed by the Defendants are inconsistent with the law.

(i)     If Plaintiff's was denied restoration because he had been replaced or his position restructured to accommodate his leave, the Defendants violated the FMLA as provided by 29 C.F.R. § 825.214.

(ii)    If Plaintiff requested reinstatement and then was denied restoration, the Defendants violated the FMLA unless the Defendants' prove that even if Plaintiff had been working and not on leave Plaintiff would have been terminated prior to the date he requested reinstatement.[2]

An in-process "RIF" planning is not a defense to violating the entitlement to restoration.

Once an employee submits a statement from [his] health care provider which indicates that [he] may return to work, the employer's duty to reinstate him has been triggered under the FMLA.

---

[2] Under the facts as admitted by the Defendants, this burden is impossible for the Defendants to meet. The Defendants have admitted that Plaintiff had not been terminated at the time Plaintiff requested reinstatement.

3

*Brumbalough v. Camelot* 427 F.3d 996, 1004 (6th Cir. 2005).

The Plaintiff submitted his physician's return to work authorization on January 10, 2017. That delivery triggered the Plaintiff's entitlement to restoration and Defendants' DUTY to reinstate. The Defendants did not reinstate Plaintiff. The ongoing planning of an unexecuted RIF at the same time is irrelevant under the law and will be confusing to the jury.

The existence of a RIF, in and of itself, is not an excuse for a failure to reinstate or restore. If Plaintiff proves that his position was replaced or restructured to accommodate his absence and he was not restored, the Defendants violated the FMLA. 29 C.F.R. §825.214. If the Defendants are unable to prove that the Plaintiff would have been terminated prior to his request for restoration, the Defendants violated the FMLA. 29 C.F.R. §825.216. A RIF is meaningless to these standards for FMLA liability. The instructions and jury verdict forms should reflect the law as set forth in 29 C.F.R. §§825.214 & 825.216 and not reference a "reduction-in-force."

## ADA

The Plaintiff claims that Defendant violated the ADA through (i) forcing plaintiff onto unpaid leave against his will (an adverse employment action based solely on a disability); and (ii) revoking Plaintiff's remote access accommodation upon forcing of leave. The forcing of leave and revocation of access occurred in November 2016. Even looking at the evidence in the light most favorable to Defendants the "RIF" planning process did not commence until after Plaintiff was forced to take leave. The RIF cannot possibly be a defense to events that occurred prior to it even being planned. Therefore, there should be no references to the RIF in the instructions or jury verdict form with respect to these ADA claims by Plaintiff.

**CONCLUSION**

The term "reduction-in-force" or "RIF" never appears in the ADA or FMLA. The instructions and jury verdict forms must reflect the law. The existence of a RIF is not a defense without the Defendants also meeting their other burdens as outlined in the FMLA and ADA. Therefore, the terms "reduction-in-force" or "RIF" should not appear in the instructions or jury verdict forms.

Plaintiff's proposed instructions follow.

DATED:        September 9, 2019

                                          Respectfully Submitted,
THE LAW OFFICE OF SHAWN SHEARER, P.C.
   /s/ Shawn Shearer
SHAWN SHEARER
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
Telephone (972) 803-4499
*shawn@shearerlaw.pro*
Attorney for Plaintiff
Steven B. Barger

**REQUESTED INSTRUCTION NO. 1**
**At-Will Employment**

Plaintiff Barger was an at-will employee.

This also means that unless it violated the law, First Data could terminate Barger with or without notice and with or without cause, for good reason, bad reason or no reason at all.

This also means that unless it violated the law, First Data could increase or decrease Barger's compensation and benefits with or without notice and with or without cause, for good reason or no reason at all.

# REQUESTED INSTRUCTION NO. 2
## Corporate Knowledge

First Data is a corporation. A corporation under the law is a person, but can only act through its employees, agents, directors, or officers. A corporation can only act through human hands and decisions people make.

The knowledge of a corporation is comprised of the knowledge of its directors, officers and controlling persons. [3] The knowledge of First Data is comprised of the knowledge of all of its officers and directors.

---

[3] **AUTHORITIES:** *Baker v. Latham Sparrowbush Associates*, 72 F.3d 246, 255 (2d Cir. 1995) ("the knowledge of a director, officer or sole shareholder or controlling person of a corporation is imputable to that corporation (citations omitted)); *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (finding in a retaliation case that "plaintiff made her . . . complaint to. . . an officer of the corporation. This complaint is sufficient to impute to . . .  general corporate knowledge"); *In re Soundview Elite, Ltd.*, 15 Civ. 566 (KPF), 2016 WL 1178778 (SDNY Mar. 23, 2016)(finding a director's presence at two judicial conferences was sufficient to impute knowledge to the corporation)

## REQUESTED INSTRUCTION NO. 3
### Explanatory: Stipulated and Admitted Facts

The Plaintiff and the Defendants have admitted or stipulated – that is, they have agreed –
that the following facts are true. You must, therefore, treat those facts as having been proved.

1.      Plaintiff has been an executive in the financial services industry for 40 years.
During that time, Plaintiff served as an executive at CitiGroup Financial Services, Primerica,
Shearson/Smith Barney, and First Data. Plaintiff also operated his own consulting business with
major financial institution clients.[4]

2.      Plaintiff was hired as an employee of First Data on June 30, 2014.

3.      From June 2014 to August 2014, Plaintiff did not have any individuals directly
reporting to him as Senior Vice President of First Data, and during this time period, Plaintiff
interacted with a broad scope of employees across multiple sales channels within First Data.[5]

4.      From June 30, 2014 through September 1, 2015 Plaintiff Reported to Joe Plumeri.
On or about September 1, 2015, Plaintiff began reporting to Executive Vice President Jeff Hack.
Jeff Hack reported to Defendant Charron.[6]

5.      Defendant Charron had overall profit and loss responsibility for the Global
Business Solutions division of First Data. [7]

6.      Plaintiff's annual salary remained $480,000 his entire tenure with First Data.[8]

7.      For his services in 2014, 2015, and 2016, Plaintiff received bonus payments from
First Data as follows:

2014:   $250,000 gross cash payment (paid in February 2015);

---

[4] Complaint/Answer ¶31
[5] Complaint/Answer ¶55
[6] First Data's Answers to Plaintiff's First Set of ROGS #1.
[7] First Data's Answers to Plaintiff's First Set of ROGS #1.
[8] Complaint/Answer¶41

2015:   $174,000 paid as $20,389 net cash payment and a grant of 12,912 First Data restricted stock units (paid in February 2016);

2016:   $174,000 gross cash payment (paid in November 2016).[9]

8.      The 12,912 restricted stock units Plaintiff received as part of his bonus for services provided in 2015 vested annually on February 24th over a three-year period in the amounts of 2,582 shares in 2017, 5,165 shares in 2018, and 5,165 shares in 2019.[10]

9.      On July 22, 2014, Plaintiff was granted options to purchase 94,909 shares of First Data common stock at an exercise price of $12.65 per share, with the options vesting annually on July 22nd in one-third increments over a three-year period.[11]

10.     Plaintiff did not receive any written performance reviews during his employment with First Data.[12]

11.     Plaintiff was not asked or instructed to attend a personal performance review meeting during his employment with First Data.

12.     Plaintiff Barger's supervisor, Jeff Hack, gave Plaintiff a rating of 4.5 out of 5.0 in Plaintiff's 360 Degree report compiled by a consultant to First Data's human resources department.[13]

13.     Plaintiff Barger's duties and responsibilities were much broader than merely heading the Sales Training Group.[14]

14.     During Plaintiff's period of radiation treatments, Plaintiff rejected any suggestion that he need to take leave. During his radiation treatments Plaintiff continued working.[15]

---

[9] Complaint/Answer ¶43
[10] Complaint/Answer ¶45
[11] Complaint/Answer ¶44
[12] Complaint/Answer ¶80
[13] Complaint/Answer ¶¶85-87
[14] Complaint/Answer ¶210
[15] Complaint/Answer ¶102

15.     Defendant Bisignano offered to assist Plaintiff in making an appointment with a Dr. Harrison in Tampa, Florida.[16]

16.     Plaintiff advised Defendants Bisignano, Marino, Charron, and Johnson that his laryngectomy surgery was scheduled for Tuesday September 6, 2016 in Tampa, Florida.[17]

17.     After Plaintiff's surgery, Plaintiff refused to take leave and insisted that he keep working.[18]

18.     During, and for more than two months after surgery, it was Plaintiff's choice to refuse leave and First Data did not force him to take leave.[19]

19.     Plaintiff refused, and was not required by First Data, to take FMLA leave from the time of his diagnosis through the time Defendant Marino advised Plaintiff on November 19, 2016 that First Data was requiring him to take leave.[20]

20.     During Plaintiff's entire time in Tampa for surgery and recovery, Plaintiff kept senior management aware of his condition and he continued to communicate with his team and management at First Data.[21]

21.     On November 3, 2016 Defendant Marino and Joe Plumeri, Vice Chairman of First Data, flew by private jet to Atlanta and visited Plaintiff at his personal residence.[22]

22.     First Data placed Plaintiff on medical leave due to his condition.[23]

---

[16] Complaint/Answer ¶97, 98
[17] Complaint/Answer ¶ 113
[18] Complaint/Answer ¶ 118
[19] Complaint/Answer ¶119
[20] Complaint/Answer ¶200
[21] Complaint/Answer¶122
[22] Complaint/Answer ¶127
[23] Answer ¶141

23.     On December 15, 2016, First Data approved Plaintiff's FMLA leave for the period from October 24, 2016 to January 16, 2017.[24]

24.     At no time during the period of October 24, 2016 to January 16, 2017 was Plaintiff informed in writing or otherwise that First Data had issues with his performance.[25]

25.     Plaintiff received medical clearance to return to work and delivered that clearance to First Data's Vice President of Human Resources, Defendant Johnson, on January 10, 2017.[26]

26.     On January 13, 2017, Plaintiff was advised by First Data's Vice President of Human Resources, Defendant Johnson, that he was being terminated and not to return to work.[27]

27.     None of the documents sent to Plaintiff by First Data on or after January 13, 2017 mentioned a company-wide reduction-in-force.[28]

28.     On February 27, 2017, First Data had hundreds of job openings posting advertising available employment opportunities at First Data across the United States and in other countries.[29]

29.     Upon Plaintiff's termination from employment, all of Plaintiff's unvested Stock Options and Restricted Stock Units were forfeited.[30]

30.     Defendant Johnson is a Vice President in First Data's Human Resources Department with significant years of experience in the human resources field, knowledge of the FMLA, and experience in hiring and firing decisions.[31]

---

[24] Complaint/Answer ¶2(ii)
[25] Complaint/Answer ¶163
[26] Complaint/Answer ¶2(iii)
[27] Complaint/Answer ¶2(v)
[28] Complaint/Answer ¶¶168, 267g
[29] Complaint/Answer ¶ 175
[30] Complaint/Answer ¶177
[31] Complaint/Answer ¶229c

31.     First Data has established a leave dedicated group within its human resources department, the Leave Management Team at the First Data HR Service Center.[32]

32.     One of First Data's Leave Management Team's responsibilities is to assure First Data's operations comply with the FMLA.[33]

33.     First Data's specialized Leave Management Team wrote and issued the December 15, 2016 FMLA Approval Letter approving Plaintiff's FMLA leave for the period between October 24, 2016 and January 16, 2017.[34]

34.     Short-Term Disability Benefits (66 2/3% of salary) are a form of self-funded salary continuation. Short-Term Disability Benefits are paid by First Data to its employees out of First Data's general assets. [35]

35.     The amount of Short-Term Disability Benefits paid by First Data to its employees is an expense to First Data akin to salary expense. [36]

36.     Long-Term Disability Benefits are an insurance product. Payment of Long-Term Disability Benefits (50% of salary) is paid by the insurance company to the First Data employee. First Data does not pay Long-Term Disability Benefits to employees out of its general assets. [37]

37.     The amount of Long-Term Disability Benefits paid to First Data employees is not an expense to First Data.[38]

---

[32] Complaint/Answer¶229g
[33] Complaint/Answer ¶229b
[34] Complaint/Answer ¶229i
[35] Johnson Depo at 11:5-18 (counsels' recorded stipulation); First Data's Response to Plaintiff's Second Set of Requests for Admission #7, 8 and 21
[36] Johnson Depo at 11:5-18 (counsels' recorded stipulation); First Data's Response to Plaintiff's Second Set of Requests for Admission #7, 8 and 21
[37] Johnson Depo at 11:5-18 (counsels' recorded stipulation); First Data's Response to Plaintiff's Second Set of Requests for Admission #7, 8 and 21
[38] Johnson Depo at 11:5-18 (counsels' recorded stipulation); First Data's Response to Plaintiff's Second Set of Requests for Admission #7, 8 and 21

## REQUESTED INSTRUCTION NO. 4
### FMLA – Individual Liability[39]

Plaintiff has sued Mr. Bisignano, Mr. Charron, Mr. Marino, and Ms. Johnson under the FMLA. The parties have agreed that First Data is an "employer" under the FMLA. However, Defendants Bisignano, Charron, Marino, and Johnson dispute that they can be held liable as an "employer" under the FMLA.

Mr. Bisignano, Mr. Charron, Mr. Marino and Ms. Johnson are not "employers" under the FMLA just because of the positions that they held at First Data.

Plaintiff Barger must prove by a preponderance of the evidence that Mr. Mr. Bisignano, Mr. Charron, Mr. Marino and Ms. Johnson are an "employer." You may find that the Plaintiff has met that burden with respect to all, none, or one or more of those individuals.

For you to determine that Mr. Bisignano, Mr. Charron, Mr. Marino or Ms. Johnson is an employer, Plaintiff Barger must prove by a preponderance of the evidence that the individual exercised control, in whole or in part, Plaintiff's rights under the FMLA, which include the entitlement to take leave and the entitlement to be restored to a position or equivalent position upon completion of leave.

Many factors can be considered in determining whether an individual exercised control over Plaintiff's entitlements under the FMLA. Some of these factors include (1) the power to hire or fire the Plaintiff; (2) supervised control of Plaintiff's work schedule or conditions of employment; (3) determining the rate and methods of Plaintiff's compensation; and (4) maintaining employment records.

These factors are non-exclusive. In other words, you should consider these factors, but

---

[39] **AUTHORITIES:** 20 U.S.C. 2611(4)(A); *Graziado v. Culinary Inst. Of Am.*, 817 F.3d 415 (2d Cir. 2016)

13

they are not the only factors you may consider. The overriding criteria to be applied to determine whether each individual defendant is was Plaintiff's employer under the FMLA was whether that individual exercised control, in whole or in part, over the Plaintiff's rights under the FMLA. If the Plaintiff proves by a preponderance of the evidence that an individual defendant did exercise control, in whole or in part, over Plaintiff's rights under the FMLA, you must find that individual defendant to be an "employer" for purposes of the FMLA and that individual defendant liable for any violations of the FMLA.

## REQUESTED INSTRUCTION NO. 5
## FMLA - Nature of Plaintiffs Claims[40]

Plaintiff has asserted claims against all of the Defendants for (1) interfering with his right to reinstatement under the FMLA following his leave and also for retaliating against him for seeking to return to work (2) interfering with his right to choose when to take leave by forcing him to take leave against his will; and (3) for changing the start date of his leave after.

Plaintiff also has asserted claims just against First Data under the ADA claiming that First Data violated the ADA by (1) forcing Plaintiff to take leave because of his health conditions, (2) terminating Plaintiff's access to work through disconnecting his computer access to First Data's Systems, and (3) refusing to allow him to return to work after his physician had authorized him to return.

The required elements of the FMLA claims and ADA claims will be explained to you and you will have to reach a verdict on each of the separate claims.

All of the Defendants deny there interfered with the Plaintiff's rights under the FMLA and First Data denies that it violated the ADA.

---

[40] **AUTHORITIES**: 29 U.S.C. §261(a)(1); 29 C.F.R. §§825.122, 825.114; 42 U.S.C. § 1211(8); 42 U.S.C. § 12102(2)(A).

## REQUESTED INSTRUCTION NO. 6
### FMLA Interference - Introduction[41]

Plaintiff has made claim under the FMLA, a law that requires employers to provide an eligible employee up to 12 weeks per year of unpaid leave for the employee's own serious health conditions. The Plaintiff and Defendants have agreed the First Data is an employer that was required to provide Plaintiff this leave and that Plaintiff's cancer and his surgical recovery where serious health conditions entitling Plaintiff to 12-weeks of unpaid leave.

For purpose of the FMLA, "leave" means an absence from work. In other words, if an employee is working, and subject to discipline for non-attendance or performance, that employee is not on leave. An employee is on leave when that employee not working when otherwise scheduled to be working with the employer's permission.

When an employee is on FMLA leave, the employee's job is protected the entire period of leave, up to 12 weeks. The FMLA provides that at the end of the employee's leave, the employee is entitled to be restored to the position the employee held when leave started or to an equivalent position.

Plaintiff alleges that at the end of his leave, after he had delivered to First Data his physicians return to work authorization, Defendants did not restore him to his position or an equivalent position and retaliated against him for requesting reinstatement by terminating him.

Defendants assert Plaintiff was included in a reduction-in-force.

The term "reduction-in-force" does not appear in the FMLA or in the Department of Labor's regulations governing FMLA leave.

You must determine whether Plaintiff proved by a preponderance of the evidence that any or all of the Defendants (1) interfered with Plaintiff's entitlement to take leave at the time

---

[41] **AUTHORITIES** 29 U.S.C. § 2612; 29 U.S.C. §2614(a); 29 U.S.C. §2612; 29 U.S.C. §2615(a)

requested by Plaintiff; (2) interfered with Plaintiff's right to be restored to his position or an equivalent position; or (3) retaliated against Plaintiff for exercising his right to return to his position or an equivalent position.

Defendants deny that they interfered with Plaintiff's FMLA rights or that they retaliated against Plaintiff.

## REQUESTED INSTRUCTION NO. 7
### FMLA Interference - Elements

In order for you to find for the Plaintiff, the Plaintiff must prove by a preponderance of the evidence that Defendants interfered with his rights to take FMLA leave or return from FMLA leave. The Plaintiff must prove by a preponderance of the evidence that:

(i)       He was entitled to FMLA leave;

(ii)      Defendants interfered with his right to take leave or his right to be restored to his position or an equivalent position after leave; and

(iii)     Defendants' actions were related to Plaintiff's exercise or attempted exercise of his FMLA rights.

The Defendants have admitted that Plaintiff's leave was designated to begin on October 24, 2016. The Defendants have asserted that on January 5, 2017, they changed the start date of leave from October 24, 2016 to September 4, 2016. If you find that this change resulted in the Plaintiff not having FMLA leave available when he needed it, you may find that one or more Defendants interfered with Plaintiff's rights under the FMLA.[42]

---

[42] **AUTHORITIES:** Forcing leave ripens into interference when leave is not available when the employee needs it. *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 175 (2d Cir. 2006);*Wysong v. Dow Chemical*, 503 F.3d 441 (6th Cir. 2006); *Miles v. Am. Red Cross*, 2017 WL 5491004 (N.D. Ok. 2017), *Brooks v. Propsect of Orlando*, 2017 WL 6319552 (MD Fl 2017); *Escribe v. Foster Poultry Farms*, 743 F.3d 1236 (9th Cir. 2014).

**REQUESTED INSTRUCTION NO. 8**
**FMLA Interference - Right to Reinstatement[43]**

At the end of FMLA leave, the Plaintiff is entitled to be returned to the position he held at the time leave commenced or to be placed in an equivalent position. The Plaintiff is entitled to reinstatement to his position or an equivalent position even if he was replaced or his or her position has been restructured to accommodate his absence.

If you find (i) the Plaintiff was on FMLA leave when he requested reinstatement; and (ii) he was not restored upon that request, even if he had replaced or his position restructured to accommodate his absence, you must find for the Plaintiff on his FMLA interference claim.

---

[43] 29 U.S.C. §2614; 29 C.F.R. §825.214;  *Brumbalough v. Camelot* 427 F.3d 996,1004 (6th Cir. 2005)

**REQUESTED INSTRUCTION NO. 9**
**FMLA Interference - Limitation on an Employee's Right to Reinstatement[44]**

The Defendants assert that Plaintiff was terminated as part of a company-wide "reduction-in-force." If you find that Defendants did not restore Plaintiff to his position or an equivalent position, Plaintiff's inclusion in a reduction-in-force is not a defense unless the Defendants also prove by a preponderance of the evidence that the Plaintiff would not have been employed by First Data at the time job reinstatement was requested.

---

[44] 29 C.F.R.§825.216.

**REQUESTED INSTRUCTION NO. 10**
**FMLA Interference - Damages – Backpay[45]**

If you find that Defendants violated Plaintiff's rights under the FMLA, then you must determine the amount of damages that Defendants' actions have caused Plaintiff. Plaintiff has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Plaintiff for any lost wages and benefits, taking into consideration any increase in salary and benefits that Plaintiff would have received from Defendants had Plaintiff's rights not been violated. Your award of damages must be the amount of Plaintiff's lost wages and benefits during the period starting March 1, 2017 through the date of your verdict.

If you award damages for lost wages, you are instructed to deduct from this figure whatever wages Plaintiff has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and benefits from an award of lost wages.

You are further instructed that Plaintiff has a duty to mitigate his damages – that is Plaintiff is required to make reasonable efforts under the circumstances to reduce his damages. It is Defendant's burden to prove that Plaintiff has failed to mitigate. So if Defendant persuades you by a preponderance of the evidence that Plaintiff failed to obtain substantially equivalent job opportunities that were reasonably available to him, you must reduce the award of damages by the amount of wages that Plaintiff reasonably would have earned if he had obtained those opportunities. The Defendants' must prove Plaintiff failed to reasonably seek employment and that substantially equivalent job opportunities were reasonably available to him.

---

[45] **AUTHORITIES:** Third Circuit FMLA Model Instruction 10.4.2

Defendant contends that it would have made the same decision to terminate Plaintiff's employment because of conduct that Defendants discovered after it made the employment decision. Specifically, Defendants claim [describe after acquired evidence] was discovered after commencement of this case.

If Defendants prove by a preponderance of the evidence that this information was discovered after commencement of this case and that it would have made the same decision and would have terminated Plaintiff because of that information, you must limit your award of lost wages to the date Defendant would have made the decision to terminate Plaintiff as a result of discovering that after-acquired information.

**REQUESTED INSTRUCTION NO.11**
**ADA – Introduction[46]**

Plaintiff has also made a claim against First Data under the Americans with Disabilities Act. He alleges First Data intentionally discriminated against him by (i) forcing Plaintiff to take unpaid leave due to his disabilities and (ii) revoking Plaintiff's reasonable accommodation of remote access and work from his home upon commencement of his leave.

First Data denies that it discriminated against Plaintiff because of his disabilities and denies that it failed to reasonably accommodate him.

---

[46] **AUTHORITIES:** 42 U.S.C. § 1211; 42 U.S.C. 12102(2)(A)

**REQUESTED INSTRUCTION NO.12**
**ADA – Discrimination – Definition of Disability[47]**

It is unlawful for an employer to intentionally discriminate against an employee because of his disability. A qualified individual with a disability means an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that individual holds.

Plaintiff and First Data agree that cancer is a disability as defined by the ADA. Plaintiff and First Data agree that the restrictions on Plaintiff's ability to speak without a prosthetic device is a disability as defined by the ADA.

---

[47] **AUTHORITIES:** 42 U.S.C. § 12102, 12111(8); 29 C.F.R. § 1630.2

## REQUESTED INSTRUCTION NO.13
### ADA – Discrimination – Elements[48]

Plaintiff alleges that First Data intentionally discriminated against him on the basis of his disability by (i) forcing Plaintiff to take unpaid leave against his will and (ii) terminating Plaintiff after his physician authorized him to return to work without any restrictions. To prevail on this claim of discrimination under the ADA, Plaintiff must prove by a preponderance of the evidence, that:

1. He was a qualified individual with a disability;

2. He was subject to an adverse employment action; and

3. His disability was the "but for" factor in the decision to take the adverse employment action.

The Plaintiff and First Data agree that the Plaintiff is an individual with a disability. The following actions constitute adverse employment actions: (i) requiring an employee to take unpaid leave when leave was not requested; and (ii) terminating an employee.

In determining whether any of Plaintiff's disabilities were the "but for" factor in First Data's decision to take an adverse employment action, Plaintiff must prove by a preponderance of the evidence that his disability was the only reason he was forced onto leave or terminated, not just a motivating factor.

If you find the Plaintiff has failed to prove any one of these elements by a preponderance of the evidence, then you must find for First Data.

---

[48] *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019); *Smith v. North Shore-Long Island Jewish Health System*, 286 F.Supp. 501, 525-6 (E.D.N.Y. 2018) *Teahan v. Metro-N Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991)

## REQUESTED INSTRUCTION NO.14
### ADA – Discrimination – Definition of Disability[49]

Plaintiff has also alleged that First Data failed to accommodate his disability in violation of the ADA by (i) forcing Plaintiff to take unpaid leave when he did not request leave and (ii) by removing his remote access to email and First Data's systems at the time Plaintiff's leave commenced. To meet his burden of establishing this claim of failure to accommodate his disability, Plaintiff must prove each of the elements by a preponderance of the evidence:

1. That he was a qualified individual with a disability;

2. That First Data knew of Plaintiff's physical limitations associated with his disability; and

3. That First Data failed to make a reasonable accommodation for Plaintiff.

A reasonable accommodation is a modification or adjustment to the workplace that makes it possible for a person with a disability to enjoy the same benefits and privileges of employment that are available to any person without a disability.

Remote access is a recognized reasonable accommodation under the ADA.

An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept.

It is First Data's position that it was not required to continue Plaintiff's remote access once he took FMLA leave. It is First Data's position that it accommodated Plaintiff by having him take leave. It is the Plaintiff's position that he did not want to take leave and that he was forced to do so, and his remote access was eliminated, because of his disabilities.

If you determine that Plaintiff has failed to prove any elements of failure to accommodate

---

[49] *Hostettler v. College of Wooster*, 895 F.3d 844, 856-7 (6th Cir. 2018); 29 C.F.R. § 1630(o)(2)(ii); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 183 (2d Cir. 2006); 29 C.F.R. §1630.9(d)

by the preponderance of the evidence, you must find for First Data. If you determine that

Plaintiff proved each of the elements of failure to accommodate by the preponderance of the

evidence, you must find for Plaintiff.

## REQUESTED INSTRUCTION NO. 15
### ADA – Retaliation

Plaintiff alleges that First Data intentionally retaliated against him for submitting his physician's return to work authorization. To establish his retaliation claim against First Data under the ADA for disability discrimination, Plaintiff must prove by a preponderance of the evidence that:

1. He engaged in protected activity under the ADA;

2. He subsequently experienced an adverse employment action;

3. The person or persons who took the adverse action against him were aware of his protected activity; and

4. There was a causal connection between the protected activity and the adverse employment action.

Termination of employment is an adverse employment action under the ADA.

To establish that Plaintiff engaged in protected activity, the first element of the test for retaliation under the ADA, Plaintiff must show he had a good-faith, objectively reasonable belief that the conduct of which he was engaged (that is, submitting a return to work authorization) was based on a good-faith reasonably objective belief that he was engaged in a protected activity.

To prevail on his claims under the ADA, Plaintiff must prove by the preponderance of the evidence that First Data retaliated against him because he submitted a return to work authorization. Plaintiff is required to show the retaliation against him was the "but for" cause of the termination. This means that "but for" his disability and/or his request to return to work without the need for accommodation, he would have been terminated.

To prevail on this retaliation claim, Plaintiff must prove to you by a preponderance of the evidence that any non-discriminatory or non-retaliatory reasons offered by First Data were a

pretext for discrimination or retaliation. Pretext means that the reasons given by First Data were designed to conceal the real motive for its decision.

## REQUESTED INSTRUCTION NO. 16
### Damages

I am about to instruct you regarding the law of damages available for the claims raised in this case. The fact that I am giving you this instruction should not be considered as an indication of any view of mine as to whether Plaintiff is entitled to a verdict against Defendants with respect to any of his claims. Instructions as to the measure of damages are given only for your guidance, in the event that you find in favor of Plaintiff on the question of liability as to any of his claims by a preponderance of the evidence in accordance with the other instructions I have given you. If you decide that the Plaintiff is not entitled to prevail with respect to any of his claims, you need not go further.

**REQUESTED INSTRUCTION NO. 17**
**Damages – Purpose of Damages**

The purpose of the law of damages is to compensate a party as far as possible for the loss, if any, that resulted from the violation of the party's rights. Damages seek to make a party whole, that is, t put the party in as good a position as he would have been had the injury not occurred. You may not award damages based on sympathy, speculation, general principles of fairness, or a desire to give Plaintiff something for his trouble. Plaintiff must demonstrate the loss he sustained, if any, as a result of Defendants alleged unlawful conduct. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

## REQUESTED INSTRUCTION NO. 18
### Damages - Mitigation[50]

In determining the amount of damages, if any, Plaintiff is entitled to recover, the law provides that the Plaintiff must mitigate his damages – that is, Plaintiff must exercise reasonable diligence under the circumstances to minimize his damages. The Defendants have the burden to prove lack of reasonable diligence under the circumstances. The obligation to mitigate is not an onerous burden. The duty to mitigate only requires an honest, good faith effort, it does not require that the Plaintiff be successful. Self-employment, if undertaken in good faith and is a reasonable alternative to seeking comparable employment may be considered permissible mitigation.

If you determine Plaintiff is entitled to damages, you must reduce those damages by the amount Plaintiff actually earned following his termination or the amount you determine Plaintiff could have earned through reasonable diligence to find comparable work under the circumstances during the period from his termination until the date of your verdict.

If you determine that Defendants have proven, by the preponderance of the evidence, that Plaintiff failed to seek out or take advantage of a position of comparable work, then you should reduce damages by the amount he could have earned if he would have sought out or taken advantage of such opportunity of comparable work.

Plaintiff is only required to seek out or accept employment that is comparable to his position at First Data. In determining whether employment is comparable work, you may consider: the type of work, the hours worked, the compensation, the job security, the working conditions, the location, and other conditions of employment. The Plaintiff is not required to seek employment requiring him to move.

---

[50] **AUTHORITIES**: *Hawkins v. 1115 Legal Serv. Care* 163 F.3d 684, 695-6 (2d Cir. 1998).

Self-employment, if undertaken in good faith and is a reasonable alternative to seeking comparable employment may be considered permissible mitigation.

It is Defendants' burden to prove by a preponderance of the evidence that Plaintiff failed to mitigate his damages.

**REQUESTED INSTRUCTION NO. 19**
**Damages – Back Pay**

The law permits a successful Plaintiff to recover "back pay" or "lost wages" he would have earned if the discriminatory or retaliatory decisions had not been made. If you find that Plaintiff was discharged in violation of the FMLA or the ADA, Plaintiff may be entitled to a backpay award.

If you determine that Plaintiff is entitled to back pay, the back pay starts from the day Plaintiff was terminated and ends as of the date of your verdict, unless you find Plaintiff could have obtained employment of like nature, in which case through the date on which that employment could have been taken.

To determine back pay, you should first calculate the amount of income Plaintiff would have earned if he had remained employed by First Data from March 1, 2017 through the date of your verdict. From tht amount, subtract whatever Plaintiff actually earned from other employment during that period, including money from self-employment. However, if you find Plaintiff failed to "mitigate" his back pay damages then you should subtract the amount of pay Plaintiff could have earned during that period if he had made a reasonable effort under the circumstances to secure comparable employment. The burden is on the Defendants to prove Plaintiff failed to mitigate.

If you find Defendants liable on more than one of Plaintiff's claims, you should only determine and award back pay once.

## REQUESTED INSTRUCTION NO. 20
### Damages – ADA Punitive Damages[51]

In addition to the damages in the other instructions, the law permits the jury under certain circumstances to award punitive damages.

If you find in favor of the Plaintiff under the ADA discrimination or retaliation instructions, then you must decide whether the Defendant acted with malice or reckless indifference to the Plaintiff's right not to be discriminated against on the basis of a disability. The Defendant acted with malice or reckless indifference if the Plaintiff proves by a preponderance of the evidence that any officer of First Data knew that the termination was in violation of the law prohibiting discrimination or acted with reckless disregard of that law.

If Plaintiff has proven by the preponderance of the evidence that Defendants acted with malice or reckless indifference, then, in addition to any other damages to which you find the Plaintiff entitled, you may, but are not required to, award the Plaintiff an additional amount of punitive damages for the purpose of punishing the defendant for engaging in such misconduct and deterring the Defendant and others from engaging in such misconduct in the future. You should presume the Plaintiff has been made whole for his injuries by the damages awarded under Instructions [___].

In determining whether to award punitive damages, you should consider whether the Defendant's conduct was reprehensible. In this regard, you may consider whether the harm suffered by the Plaintiff was physical or economic or both, whether there was violence, deceit, intentional malice, reckless disregard for human health or safety, whether the Defendant's conduct that harmed the Plaintiff also caused harm or posed a risk of harm to others, and whether

---

[51] **AUTHORITIES**: *State Farm Mutual v. Campbell* 538, U.S. 408 (2003) *Kolstad v. American Dental Ass'n*, 527 US. 526 (1999); *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *Fabri v. United Tech., Int'l* 387 F.3d 109 (2d Cir. 2004); Eighth Circuit Model Instruction 9.72

there was any repetition of the wrongful conduct and past conduct of the sort that harmed the Plaintiff.

If you decide to award punitive damages, you should consider the following in deciding the amount of punitive damages to award.

1. How much harm the Defendant's wrongful conduct caused the Plaintiff and could cause the Plaintiff in the future; and

2. What amount of punitive damages, in addition to other damages already awarded, is needed, considering the Defendant's financial condition, to punish the Defendant for its wrongful conduct toward the Plaintiff and to deter Defendant from similar wrongful conduct in the future

The amount of any punitive damages award should bear a reasonable relationship to the harm caused to the Plaintiff.