# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual<br><br>Plaintiff<br><br>v.<br><br>FIRST DATA CORPORATION et al.<br><br>Defendants. | **Case No. EDNY: 1:17-cv-4869-FB-LB**<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 AND MEMORANDUM** |

PLEASE TAKE NOTICE that Steven B. Barger's ("Barger" or "Plaintiff"), for the reasons set forth more fully herein, pursuant to Fed. R. Civ. P. 59 moves this Court before the Honorable Frederic Block, United States District Judge, in the United States Courthouse located at 225 Cadman Plaza East, Brooklyn, New York, on a date to be set by the Court, for an Order pursuant to Rule 59(a) granting a new trial of all matters in the above referenced case.

DATED          October 22, 2019

Respectfully Submitted,

THE LAW OFFICE OF SHAWN SHEARER, P.C.

_____/s/ Shawn Shearer_____
Shawn Shearer (admitted *pro hac vice*)
3839 McKinney Avenue #155-254
Dallas, TX 75204
T: (972) 803-4499
shawn@shearerlaw.pro

ZEITLIN & ZEITLIN, P.C.
David Zeitlin
50 Court Street, Suite 506
Brooklyn, NY 11201
T: (718) 596-6815
david@zeitlinlawfirm.com

Attorneys for Plaintiff
Steven B. Barger

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN B. BARGER, an individual | **Case No. EDNY: 1:17-cv-4869-FB-LB** |
| Plaintiff | |
| v. | |
| FIRST DATA CORPORATION et al. | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR NEW TRIAL

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  RULE 59 AND INSTRUCTION STANDARDS ......................................... 1

III.  LAW/ARGUMENT – PLAINTIFF IS ENTITLED TO A NEW TRIAL ................. 2

   A.  A new trial is warranted as Plaintiff was denied discovery pursuant to Rule 30(b)(6) that would have produced evidence to impeach Defendants' witnesses testifying as to Plaintiff's performance before surgery and during his recovery ............................ 2

   B.  A new trial should be granted as the Court abused its discretion by allowing Defendants to present evidence contrary to Defendants' admissions in their Answer. ....................................................................................... 3

   C.  A new trial should be granted as the Court failed to rule, and provide its reasons for decision, as to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 56. .................................. 4

   D.  A new trial should be granted on Plaintiff's ADA claim because the jury verdict is contrary to the overwhelming evidence. .......................................................... 4

   E.  A new trial should be granted due to defense counsel's intimidating tactics towards the jury during closing arguments. ................................................................. 6

   F.  A new trial should be granted because of defense counsel's conduct intimidating witnesses not to testify at trial. .......................................................................... 6

   G.  If new trial should be granted a new judge should be assigned because of the prior relationship between Mr. DiLorenzo, defense counsel, and Judge Block. .................. 7

   H.  A new trial should be granted because of jury confusion as to questions of law regarding the Plaintiff's status as being on FMLA leave at the relevant times in January 2017. ....................................................................................... 9

   I.  A new trial should be granted as the Court improperly instructed the jury regarding Plaintiff's claims under the FMLA. ............................................................... 11

      1. A new trial should be granted because the Court failed to instruct the jury regarding Plaintiff's claim of RETALIATION by Defendants for his exercise of his FMLA entitlement to be restored to his position or an equivalent position. .............. 12

      2. A new trial should be granted because the Court's instruction to the jury regarding Plaintiff's claim of INTERFERENCE was inconsistent with the law and the factual burden of proof borne by the Defendants. ................................................. 15

**a. The FMLA Instruction failed to instruct properly regarding 29 C.F.R. §825.214** ... 19

**b. The FMLA Instruction failed to instruct properly regarding 29 C.F.R. §825.216** ... 19

**c. The FMLA Instruction failed to instruct as to the obligation to restore upon acceptance of the physician's return to work authorization** ....................................... 21

**d. "Legitimate Business Reason" is not a defense and inclusion of that reference in the verbal presentation of the charge was an instruction error.** ....................................... 22

**J.  A new trial should be granted as the jury's verdict with respect to FMLA interference (i) is contrary to the overwhelming evidence and (ii) is contrary to the law as Defendants admit Plaintiff was restored to a position slated for lay-off in violation of 29 C.F.R. §825.216** ..................................................................................... 23

**IV.  CONCLUSION** ..................................................................................... 23

## EXHIBITS

A        Trial Transcript (referenced pages)
B        Plaintiff's Proposed Instructions and Objections [ECF No. 122]
C         September 13, 2019 Letters to Judge Block
         C-1     DiLorenzo E-mail and Letter to Judge Block
         C-2     Shearer Email and Letter to Judge Block
D        Final Written Jury Charge [ECF No. 131]
E        Barger and Marino Text Messages

# TABLE OF AUTHORITIES

Cases

*Abromson v. American Pac. Corp.*, 114 F.3d 898 (9th Cir. 1997) ............................... 1

*Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005) ................................................ 21

*Caballero v. City of Concord*, 956 F.2d 204 (9th Cir. 1992) ........................................ 2

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) .................................................. 13

*Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005) ................................... 22

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ............................................ 9

*Chevron U.S.A., Inc.* v. *Nat. Res. Def. Council, Inc.*, 561 U.S. 2247 (1984) .............. 16

*Cosgrove v. Sears Roebuck Co.*, 9 F.3d 1033 (2d Cir. 1993) ...................................... 14

*Desrosiers v. Flight Int'l*, 156 F.3d 952 (9th Cir. 1998) .............................................. 1

*Diaz v. Fort Wayne Foundry Corp.* 131 F.3d 711 (7th Cir. 1997) ........................ 14, 16

*Gordon v. Ny City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000) ............................... 1, 13

*Graziado v. Culinary Inst. Of Am.*, 817 F.3d 415 (2d Cir. 2016) ............................... 15

*In re Aberl*, 78 F.3d 241, 44 (6th Cir. 1996) ........................................................... 17

*James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013) ................................ 21

*Keene Corp. v. United States*, 508 U.S. 200 (1993) ................................................. 17

*LNC Investments, Inc. v. First Fidelity Bank, N.A. New Jersey*, 173 F.3d 454 (2d Cir. 1999) 1, 18

*Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011) ..................................... 22

*Morrison v. National Australia Bank, Ltd.* . 561 U.S. 247 (2010) .............................. 17

*Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004) ........................................ 11

*Roy v. Volkswagen of America*, 896 F.2d 1174 (9th Cir. 1990) .................................... 1

*Smith v. Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008) ................................ 22

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ........................................... 13

*United States v. Masotto¸*73 F.3d 1233 (2d Cir. 1996) ................................................ 1

*Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158 (2d Cir. 2017) ...... 11, 12, 13

Statutes

28 U.S.C. §144 ......................................................................................................... 9

28 U.S.C. §455 ......................................................................................................... 9

29 U.S.C. §2612 ................................................................................................. 15, 16

29 U.S.C. §2614(a) ............................................................................. 11, 15, 16, 17

29 U.S.C. §2614(b) ................................................................................................. 16

29 U.S.C. §2615(a) ................................................................................................. 11

29 U.S.C. §2617 ..................................................................................................... 21

Regulations

29 C.F.R. §825.214 ..................................................................... 12, 16, 18, 19, 23

29 C.F.R. §825.216 ................................................................. 12, 16, 16, 19, 20, 22

29 C.F.R. §825.300 ............................................................................................. 1, 9, 10, 12

Rules

Fed. R. Civ. P. 8 ................................................................................................. 3, 6, 14

Fed. R. Civ. P. 30(b)(6) .................................................................................. 2, 3, 6, 14

Fed. R. Civ. P. 59 ............................................................................................. 1, 6, 14

Fed. R. Civ. P. 72 ............................................................................................. 2, 6, 14

## MEMORANDUM

### I.       INTRODUCTION

A jury trial was held in this matter from September 16 – 24, 2019. A verdict for Defendant was returned by the jury. The Court entered a final judgment on September 26, 2019 [ECF No. 133]. Plaintiff requests that the Court enter an Order granting a new trial.

### II.      RULE 59 AND INSTRUCTION STANDARDS

A motion for a new trial under Fed. R. Civ. P. 59 may be granted because, *inter alia*, the verdict is contrary to the clear weight of the evidence, or errors were committed at trial. See Fed. R. Civ. P. 59. The court may grant a new trial to prevent, in the sound discretion of the trial court, a miscarriage of justice. *Roy v. Volkswagen of Amer.*, 896 F.2d 1174, 1176 (9th Cir. 1990).

Jury instructions must fairly and adequately cover the issues presented, correctly state the law, and must not be misleading. An error exists if the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law. *LNC Investments, Inc. v. First Fidelity Bank, N.A. New Jersey*, 173 F.3d 454, 460 (2d Cir. 1999).  An erroneous instruction requires a new trial unless the error was harmless. *United States v. Masotto¸*73 F.3d 1233, 1238 (2d Cir. 1996). If an instruction improperly directs the jury on a party's burden of proof, "it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted."[1]  *LNC Investments*, 173 F.3d at 460; *Gordon v. NY City Bd. Of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)   "[I]n reviewing a civil jury instruction, the prevailing party is not entitled to have disputed factual questions resolved in its favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations

---

[1] Burden of proof instruction errors were made as to both the Plaintiff's and the Defendant's burdens on both the FMLA retaliation and FMLA interference claims raised by Plaintiff. Instruction errors also occurred as to the Court's mid-trial ruling on 29 C.F.R. §825.300 prohibiting retroactive re-designation of Plaintiff's leave dates.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**       1

in favor of the prevailing party. See *Caballero v. City of Concord*, 956 F.2d 204, 206-07 (9th Cir.

1992).[2]

### III. LAW/ARGUMENT – PLAINTIFF IS ENTITLED TO A NEW TRIAL

**A. A new trial is warranted as Plaintiff was denied discovery pursuant to Rule 30(b)(6) that would have produced evidence to impeach Defendants' witnesses testifying as to Plaintiff's performance before surgery and during his recovery.**

Throughout discovery, Plaintiff repeatedly sought, and was denied, an order for Defendant

First Data to designate and produce corporate witnesses pursuant to Fed. R. Civ. P. 30(b)(6). See,

e.g., ECF Nos. 46, 48, 49, 55. The Plaintiff filed a Motion Pursuant to Rule 72(a) [ECF No. 64]

seeking review of the denial of Plaintiff's ECF No. 55 motion to compel. [3] As predicted in that

72(a) Motion, the Plaintiff was substantially prejudiced at trial from a lack of testimony from

properly prepared 30(b)(6) witnesses on human resources topics. [See ECF 64 at Memo pgs 7 &

11][4] Plaintiff was entitled as a matter of law to these depositions of prepared and educated

witnesses testifying to corporate, not only individual, knowledge. *Reilly v. Natwest Markets*, 181

F.4d 253, 268 (2d Cir. 1999). Had an order compelling 30(b)(6) depositions been entered,

Plaintiff would have had remedies under Fed. R. Civ. P. 30 and 37 to address witness

preparation, bandying, and lack of memory. Akin to the discretionary remedies available under

---

[2] As described below, jury misapprehension of Plaintiff's legal leave status in January 2017 may have led to an improper defense verdict and that possibility alone justifies a new trial.

[3] The Court denied Plaintiff's Rule 72(a) Motion. [ECF No. 86] By the end of the trial, First Data was the only defendant. Plaintiff had not been permitted to depose the corporate defendant on any topics other than accounting. While the accounting evidence was relevant and probative, it certainly is not the heart of an ADA and FMLA case. The lack of corporate human resources discovery significantly harmed development of the case for trial.

[4] Defendants repeatedly referred to incidents regarding Plaintiff's performance and conduct (shirtless on video call, weight comments, arranging alcohol treatment for an employee), yet produced no written documentation as to any of these incidents. Had the corporate defendant testified during discovery regarding its human resources recordkeeping process and procedures, Plaintiff would have had corporate testimony to impeach the live witnesses' lack of recollection or knowledge at trial as the non-existence of written records.See e.g. Transcript at 232:5-24 (Ms. Johnson's lack of knowledge of recordkeeping and bandying of counsel's questions) The relevant portions of the trial transcript cited throughout this Memorandum are attached as Exhibit A.

Rule 37, a new trial should be set to correct this error and prejudice, with 30(b)(6) depositions ordered to occur prior to that trial.

**B.** **A new trial should be granted as the Court abused its discretion by allowing Defendants to present evidence contrary to Defendants' admissions in their Answer.**

Fed. R. Civ. P. 8(b) requires a defendant to admit, deny or declare lack of knowledge or information, and that an allegation is admitted if the allegation is not denied. Defendants made the following admissions, in addition to others, in their Answer [ECF. No. 19] ("Answer") to Plaintiff's Complaint [ECF No. 1] ("Complaint"): [5]

- Plaintiff did not receive any written performance reviews. Plaintiff was never asked to attend a personal performance review meeting. [Complaint/Answer ¶¶80, 81]

- After surgery, Plaintiff refused to take leave, Plaintiff kept working, and First Data did not force him to take leave until November 19, 2016. [Complaint/Answer ¶¶ 118, 119]

- During recovery, Plaintiff kept senior management aware of his condition and he continued to communicate with his team and management. [Complaint/Answer ¶ 122]

- First Data placed Plaintiff on medical leave due to his condition. [Answer ¶ 141]

- At no time from surgery to notice of termination was Plaintiff informed in writing or otherwise that First Data had issues with his performance. [Complaint/Answer ¶163]

- Plaintiff was not terminated for cause. [Defendants' Trial Exhibit D-273; Plaintiff's Trial Exhibit P-92 (spreadsheet stating termination "Involuntary Not for Cause")]

Plaintiff requested, and was not granted, an instruction providing the jury a list of the Defendants admissions. See ECF No. 122 attached as Exhibit B at pages 8-12. Defendants presented testimony and arguments at trial contrary to their admissions.[6] Placing admitted facts,

---

[5] The Plaintiff's Requested Jury Instruction No. 3 (pages 8 to 12 of ECF No. 122) contained a complete list of the relevant admissions made by Defendants at the outset of this litigation. Defendants should not have been permitted to present evidence or argue a position contrary to any of these factual admissions that served as the background against which the entire discovery process was conducted.

[6] Defendants' performance based justifications for forcing leave and terminating Plaintiff were inconsistent with these admissions. During closing, defense counsel, Mr. DiLorenzo, asked the jury why Plaintiff presented no evidence regarding Plaintiff's work from September 6th to November 19th [Transcript 962:19 - 963:17] – the reason

which were assumed to be true and not in question during discovery, at issue during trial substantially prejudiced Plaintiff's discovery and presentation of the case. Failure to instruct the jury to ignore evidence contrary to these admissions prejudiced Plaintiff. The only remedy to rectify Defendants' conduct is a new trial in which Defendants are bound by their admissions.

**C.** **A new trial should be granted as the Court failed to rule, and provide its reasons for decision, as to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 56.**

The Plaintiff's fully briefed Motion for Summary Judgment pursuant to Rule 56 [ECF No. 94-5] ("Plaintiff's Rule 56 Motion") and Defendants' fully briefed Motion for Summary Judgment [ECF No. 94] ("Defendants' Rule 56 Motion") were filed on February 28, 2019. On May 6, 2019 the Court scheduled oral arguments on Defendants' Rule 56 Motion for May 22, 2019. No argument was ever scheduled on Plaintiff's Rule 56 Motion.  Following the May 22, 2019 arguments, the Court denied Defendant's Rule 56 Motion due to the temporal proximity between relevant events creating genuine issues of material fact. [ECF No. 98] The Court never ruled upon the Plaintiff's Rule 56 Motion. The trial occurred without the Plaintiff knowing the Court's determinations as to the reasons why Plaintiff was not entitled to judgment of liability as a matter of law. The Court should re-open the case, rule upon Plaintiff's Rule 56 Motion and provide its reasons for that ruling, and a new trial conducted with the parties fully apprised of the Court's legal reasoning on the issues raised by the Plaintiff's Rule 56 Motion (most of which are addressed herein as well).

**D.** **A new trial should be granted on Plaintiff's ADA claim because the jury verdict is contrary to the overwhelming evidence.**

The Defendants admitted in their Answer that Plaintiff was forced to take leave because of

---

such evidence need not be presented was because Defendants had admitted Plaintiff's work during this period in the Answer and the issue should not have been subject to question. Closing was used improperly to place admitted facts in doubt. [See, e.g., Transcript 961:9-963:17]

his medical condition (i.e. disability was the cause of forced leave). [See Answer, ECF No. 19 at ¶141] Defense counsel's summation took a contrary position to these admissions; [Transcript 960:9-16] The Defendants presented no evidence as to the functions of Plaintiff's position or the essential functions of Plaintiff's job for the jury to consider.[7] On this record, it is impossible for the jury to conclude that Plaintiff was not a qualified individual under the ADA when forced to take leave. At best the evidence only shows that First Data may have had issues with how Plaintiff was performing his functions, but there is no evidence Plaintiff was incapable of performing them. Poor performance does not equate to incapability to perform with or without an accommodation. Forcing Plaintiff to quit working and go on leave by definition reduced his job responsibilities and is an adverse employment action. A reasonable jury had no evidentiary basis to conclude either (i) the Plaintiff could not perform the essential functions of his entire job at the time he was forced onto leave, or (ii) that forcing leave was not an adverse employment action.[8] The jury's verdict on the ADA claim was contrary to the overwhelming evidence on both issues.

---

[7] The jury charge provided the jury a list of factors for determining the essential functions of Plaintiff's job. [ECF No. 131, Exhibit D at pgs 9 to 10] There was no evidence presented as to the following factors: employer's judgment, written job descriptions, time spent by Plaintiff performing a function, consequence of not requiring someone to perform the functions, the limited number of employees who could perform the function, or the functions specialization (in fact evidence was presented that the current less experienced employee (Stamey) could perform the essential functions). The Defendants took the position that the training team management portion of Plaintiff's functions, only part of Plaintiff's duties, was not specialized. [Stamey testimony Transcript 813:13-815:5] Plaintiff's medical professional's were never told Plaintiff's job functions [Transcript 256:11-18] No evidence at all was presented by Defendants' as to the essential functions of Plaintiff's entire scope of job responsibilities. Plaintiff continued to perform his job and never received any performance evaluations or performance meetings. A review of the department's effectiveness or it "not running well" as described in Defendant's closing [Transcript 960:12] is not failing to perform essential functions. The Plaintiff provided evidence that Plaintiff's job was broader than just managing the training group previously managed by Mr. Fricke. [Transcript 491:19-23;584:7-585:2] The Defendants stated that management of the training group was a small function. [Stamey testimony Transcript 813:13-815:5]  There is no evidence at all that Plaintiff was not performing his other functions outside the small training group, and there is no evidence that the training group management functions were essential and not being performed.

[8] The Court tamped down the Plaintiff's description of his ADA claims and those claims were not reflected in the instructions. [Transcript at 874:13-875:24].

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      5

**E.  A new trial should be granted due to defense counsel's intimidating tactics towards the jury during closing arguments.**

The evidence at trial was clear that the Plaintiff and Joseph Plumeri had a working relationship together at financial institutions for more than three decades. The two moved together from bank to bank during the 80's and 90's. During his direct testimony, the Plaintiff described this relationship as "Batman and Robin." [Transcript 584:11-12] Mr. DiLorenzo, during Defendant's closing statement, tried to belittle this "Batman and Robin" description, and instead changed the terminology from "Batman" to "Godfather." DeLorenzo used this testimony to re-characterize of Mr. Plumeri as a "Godfather" who is handing-out favors and who was somebody who was going to "take care" of people, which was a direct appeal to the jury's emotional reaction to those descriptions. [See Transcript 976:16-18; 977:22; 980:10; 983:3] "Batman and Robin" have no relationship to a singular "Godfather" - fictional Bruce Wayne turned into Vito Corleone who has real world counterparts.  Mr. DiLorenzo specifically said "in my world we would call him the Godfather." [Transcript 976:16-18] Mr. DiLorenzo stated in his summation that without the protection of the Godfather Mr. Barger could not make it alone. [Transcript 983:21-22] Mr. DiLorenzo even referred to Mr. Barger being a "target" long before January 2017. [Transcript 983:18-19] Mr. DiLorenzo was directly stating that in his world there are "Godfathers" like Mr. Plumeri (who has targets and takes care of people). This not so subtle subtext could have been viewed by jurors as a threat – in Mr. DiLorenzo's world, only the Godfather can protect you and can target you. Mr. DiLorenzo's insinuations could have been enough to influence a defense verdict. A new trial with a new jury free from these insinuations is required for a full and fair decision.

**F.  A new trial should be granted because of defense counsel's conduct intimidating witnesses not to testify at trial.**

By letter dated, September 13. 2019, Mr. DiLorenzo wrote to Judge Block, delivered by e-

mail to his clerk, Mr. Innelli. Exhibit C-1. Neither the e-mail nor the letter were filed by ECF. Plaintiff's counsel responded through similar methods, although noting the impropriety of this method of communication. Exhibit C-2. These letters did not appear on the docket and they addressed information obtained by Plaintiff that counsel for the Defendants (Mr. DiLorenzo, Mr. Eidelman, and Mr. Adam Rosman who was General Counsel for First Data prior to the Fiserv merger and whose current employment/agency relationship with First Data is undisclosed) just weeks before trial spoke with one of Plaintiff's witnesses - Mr. Ed Labry, former CEO of First Data who had worked with Plaintiff, Mr. Plumeri, and Mr. Marino during 2014 and 2015. Mr. Labry was listed as a witness on Plaintiff's original initial Rule 26(a) disclosures in February 2018. Defense counsel never took the opportunity to depose or conduct any discovery regarding Mr. Labry. At Plaintiff's request, Mr. Labry had agreed to voluntarily testify at trial. Mr. Labry was to provide important testimony about his observations of Plaintiff's performance and value within the organization while Mr. Labry was CEO. As trial neared, Plaintiff advised Defendants' counsel that Mr. Labry would be testifying. Defense counsel, lacking discovery as to Mr. Labry's testimony, engaged in a call of these three attorneys to a non-attorney to dissuade Mr. Labry from testifying. After these calls, Mr. Labry decided not to testify at trial. Combined with all of the other errors described herein, and defense counsel's other misconduct outlined in ECF Nos. 64, 74, 81, 111, and Plaintiff's repeated attempts to obtain Defendants cooperation in discovery (ECF Nos. 43, 46, 48, 49, 50, 55, 56, 59, 60, 64, 74), the intimidation of Mr. Labry was just another example of the denial of Plaintiff's access to evidence for trial. Plaintiff was substantially prejudiced by this interference and a new trial is justified.

**G. If new trial should be granted a new judge should be assigned because of the prior relationship between Mr. DiLorenzo, defense counsel, and Judge Block.**

This case commenced with the filing of the Complaint on August 18, 2017. Counsel for the

Defendants consisted only of associates and partners at Saul Ewing until Mr. DiLorenzo filed his notice of appearance on July 16, 2019 (nearly two years after the case commenced). [ECF No. 99] The Court did not hold any hearings or conferences in this case between Mr. DiLorenzo's notice of appearance and the first pre-trial conference held on September 6, 2019 (ten days prior to the commencement of the trial). Mr. DiLorenzo appeared in-person at this pre-trial conference.  During the conference, Mr. DiLorenzo initiated a casual, off-the-record, conversation with Judge Block describing how the two were acquaintances from a bus trip on which they sat by each other and conversed for several hours, and he discussed a missed dinner invitation involving them. This description seemed odd, but innocuous,[9] and trial was looming and further delays would cost the Plaintiff more. For these reasons, at that time Plaintiff's counsel did not request recusal. Judge Block did indicate during the off-the-record conference that he had thought about whether or not he should recuse himself.

While the jury was deliberating between 2:45p.m.and 3:45 p.m. on September 24, 2019 [Transcript 1082:6-14] another casual, off-the-record, conversation occurred between Judge Block and all counsel, including DiLorenzo. During this conversation, more information was stated indicating Mr. DiLorenzo and Judge Block appeared to be more than casual acquaintances from a single happenstance bus ride as previously described (e.g., the rapport was noticeably familiar and Judge Block commented about his knowledge of Mr. DiLorenzo's homes and their

---

[9] Following the September 6, 2019 off-the-record conference, Plaintiff's counsel sought his own legal advice on the issue. During this September 6, 2019 off-the-record, pre-trial conference, Mr. DiLorenzo stated that he had not been before Judge Block, he acted as if he had not seen Judge Block since the bus ride, and he asked basic questions regarding federal trial procedure that led Judge Block to inquire of him along the lines of "when were you last in federal court?" Plaintiff's counsel has since discovered that just a few months earlier, in 1:19-cv-0081 (Trippett v. Five Star Elec. Corp) being heard by Judge Block, Mr. Di Lorenzo (and his partner Michael Collins) filed their notices of appearance on May 29, 2019, and Mr. DiLorenzo appeared in-person before Judge Block in an off-the-record pre-motion conference on June 5, 2019 in that case. DiLorenzo's partner, Michael Collins has also been appearing before Judge Block in several cases, such as Mannapova v. P.S.C. Comm. Serv. 1:18-cv-04186. In retrospect, Mr. DiLorenzo's off-the-record disclosures of past relationships at the September 6, 2019 pre-trial conference does not appear to have been a full and complete disclosure of the potential impartiality issues.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**       8

size). [10]

When impartiality can reasonably be questioned, the appropriate remedy is

disqualification/recusal to protect a litigants due process rights. *Caperton v. A.T. Massey Coal

Co.*, 556 U.S. 868 (2009). See also Canon 3C of the Code of Conduct for United States Judges,

28 U.S.C. §§ 144 and 455. The relationship between Mr. DiLorenzo and Judge Block raises

questions of impartiality. The disclosures made to Plaintiff's counsel were off-the-record, and

even then were not complete, or accurate (i.e. Mr. DiLorenzo's claim not to have appeared in

federal court or before Judge Block when that was not the case). A new trial before a different

judge must be granted.

### H. A new trial should be granted because of jury confusion as to questions of law regarding the Plaintiff's status as being on FMLA leave at the relevant times in January 2017.

In Plaintiff's Rule 56 Motion briefing, the Plaintiff raised the issue of 29 C.F.R. §825.300.

[See ECF No. 94-17 at pgs 7 – 8] Mid-trial, the Court ruled, separately and not on Plaintiff's

Rule 56 Motion, that 29 C.F.R. §825.300 prohibited retroactive leave designation under the facts

of this case (management's knowledge of Plaintiff's condition since before surgery and

following surgery). The Court announced its ruling without the jury present. [Transcript 887:6 –

888:11] However, before the Court made that ruling, the Defendants already had submitted

evidence (e.g. Ms. Voycheske testimony Transcript 789:3-791:12), over Plaintiff's objection

[Transcript 791:5], that raised a factual question as to Plaintiff's leave start date due to

retroactivity and Plaintiff's corresponding leave status in January 2017.

The admission of this evidence, coupled with no clear instruction as to the Court's ruling

---

[10] During this off-the-record session before the jury returned its verdict, Your Honor brought up the story of Lord Jim in reference to the question of judicial temperament.  "He was imprisoned within the very freedom of his power." Lord Jim by Joseph Conrad, Chapter 29.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      9

on the 29 C.F.R. §825.300 issue, caused confusion with the jury and a written request for clarification from the jury. [ECF No. 132 Ct Ex 4] The Court brought the jury back into the courtroom to address their request. The transcript of that brief session reveals the confusion of all involved, including Judge Block, counsel for both parties, and the jury. [See Transcript 1078:4-1082:4] The Court did not answer the jury's question. Instead, the jury, still confused and without their requested clarification provided, was dismissed to re-write their question and come back with that revised clarification request. The jury, however, did not return with a revised, more focused question. Instead, an hour after being dismissed to write a focused question, the jury returned with a verdict in Defendant's favor. [Transcript 1082:3-1803:23]

The jury was clearly confused over the Plaintiff's leave start date, the relevance of the evidence presented as to the retroactive change to the start date, and Plaintiff's FMLA leave status in January 2017.[11] The Court never clearly instructed the jury that as a matter of law Plaintiff was on FMLA leave on the relevant dates in January 2017.

The admission of retroactive re-designation evidence, the mid-trial ruling on 29 C.F.R. §825.300, and the lack of a clear instruction, raises a substantial question as to whether it was the jury's misapprehension of the law and Plaintiff's legal leave status led to the defense verdict. It is not speculative, but possible if not likely, that during only the hour of deliberation without having received clarifying instructions, the jury determined that Plaintiff was not on FMLA leave when terminated.[12] This possibility arises directly out of a failure to properly instruct the jury or to provide clarification as to the Court's legal ruling under 29 C.F.R. §825.300. This instruction

---

[11] The jury's confusion is evident in the Transcript 1078:4-1082:4, the jury's note requesting clarification ECF No. 132 Ct. Ex 4, and in the content of the documents in the jury's initial request for exhibits ECF No. 132 Ex 3 which included evidence presented on the retroactive designation issue during Voycheske's testimony.

[12] The jury's short period of deliberation (less tha an hour after being sent to re-write their clarification question) raises even further concern that misapprehension was the cause of the verdict because additional issues would need to be deliberated if the jury concluded the Plaintiff was on leave.

error was not harmless.[13] *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir. 1998) (it is an error if the jury is misled about the correct legal standard or inadequately informed regarding the controlling law). A new trial is mandated and at that trial the Plaintiff's FMLA leave status cannot be questioned and the new jury must be properly instructed that Plaintiff was on FMLA leave on the relevant dates in January 2017.

## I.   A new trial should be granted as the Court improperly instructed the jury regarding Plaintiff's claims under the FMLA.

The Second Circuit recognizes at least two types of FMLA claims (*Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 165-166 (2d Cir. 2017)):

> An employee has the right to return to the position [he] held before taking leave, or to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment. . . . FMLA claims come in at least two varieties: interference and retaliation. *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004)(per curiam). In a general sense, an employee brings an "interference" claim when [his] employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. *See Graziadio v. Culinary Inst. Of Am.*, 817 F. 3d 415, 424 (2d Cir. 2016). "Retaliation" claims on the other hand, involve an employee exercising [his] rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. *See Potenza*, 365 F.3d at 168. The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

The Plaintiff's Complaint [ECF No. 1] alleged both interference and retaliation claims under 29 U.S.C. §§2614(a)(1) & 2615(a)(1): (i)  Defendants interfered with Plaintiff's entitlement to be restored; and (ii) Defendants terminated Plaintiff in retaliation for exercising his statutory entitlement to be restored (i.e. Plaintiff was selected for termination because he had properly requested reinstatement from leave). See Complaint, ECF No. 1 ¶¶188-228.

---

[13] When the jury's confusion arose, the jury should have been clearly instructed not to address any questions as to whether Plaintiff was or was not on leave at the relevant times in January 2017, and the jury should have been specifically instructed that as a matter of law, the Plaintiff was on FMLA protected leave at all times between November 21, 2016 and January 13, 2017.

The Court (i) improperly excluded Plaintiff's requested FMLA instructions [ECF No. 122 at pgs 15-20],[14] (ii) instructed the jury inconsistent with, and contrary to, the law of both interference and retaliation, (iii) failed to clearly instruct the jury as to the Court's 29 C.F.R. §825.300 legal conclusion, and (iv) omitted portions, and misstated portions, of the law under 29 C.F.R. §§825.214 & 825.216. Each of these errors caused harm individually, and significantly, if not completely, in the aggregate. A copy of the Court's written FMLA instruction provided to the jury is attached hereto as Exhibit D [ECF No. 131, p. 10 to 11][15] The Court's instruction was a blend of retaliation and interference standards, and the result was an instruction that was inconsistent with, and misstated, the law applicable to both claims.

> 1.   **A new trial should be granted because the Court failed to instruct the jury regarding Plaintiff's claim of RETALIATION by Defendants for his exercise of his FMLA entitlement to be restored to his position or an equivalent position.**

The "motivating factor" test is applied to FMLA retaliation claims.[16] *Woods* 864 F.3d at 167-169.  In this case, the Plaintiff needed to prove that his exercise of his statutory entitlement to restoration was a factor influencing First Data's decision to take adverse employment action. Here, as in *Woods*, the failure to instruct the jury on the "motivating factor" standard requires a new trial because that failure resulted in impermissible prejudice to the Plaintiff. *Woods* 864 F.3d at 170.[17] In a retaliation case, "the job of the jury is simply to decide whether an impermissible

---

[14] The Plaintiff provided the Court written proposed instructions and comments/objections to instructions in ECF Nos. 112 and 122. Plaintiff objected in writing to the Court's draft instructions in ECF No. 127. Plaintiff further objected during the proceeding. [Transcript 866:24-872:14; 890:1-12]

[15] During the verbal presentation of the charge to the jury, the Court diverted from the written instruction and ad-libbed new sentences that were prejudicial and incorrect to the applicable legal standards. [Transcript 1055:6-24]

[16] The Plaintiff proposed for the jury to be instructed on retaliation. ECF No. 122 at pg 17. Plaintiff did not object to and agreed with Defendants' Requested Instruction No. 10. ECF No. 103 at pg 12 on retaliation The proposed instructions submitted by the Defendants even addressed the "motivating factor" standard for retaliation.. Plaintiff further outlined the analysis of his proposed instructions in ECF No. 112 and ECF No. 122. The Plaintiff's objections were raised at Transcript 631:20-632:17 and 867:8-870:7).

[17] Further, the jury charge directing the jury not to question the business decision of First Data [ECF 131, Exhibit D at pg11] compounded the problem by advising the jury that they should not question the reasons for the decision

factor was a motivating factor in the adverse employment action." *Gordon* 232 F.3d at 116;

*Cabrera v. Jakobovitz*, 24 F.3d 372, 382 (2d Cir. 1994).

The Court's written instruction to the jury, in part, was as follows [the written FMLA

instruction is attached hereto as <u>Exhibit</u> D pgs 10 to 11, the jury verdict form ECF No. 132 Ct.

Ex 6, also included in <u>Exhibit</u> D, and the verbal presentation is in <u>Exhibit</u> A Transcript 1054:22-

1056:8) (together, the "<u>FMLA Instruction</u>")]:

> Therefore, if you find that the termination of plaintiff's employment with First Data
> would have occurred because of First Data's reduction-in-force, and was not merely
> a cover-up for a decision to terminate plaintiff because he had taken leave,[18] then
> you must find for the defendant.

The FMLA Instruction (i) completely misstates the applicable retaliation legal standard and (ii)

is devoid of any instruction to the jury as to the "motivating factor" test under *Woods*.[19] The

questions for the jury were not simply whether the Plaintiff was in a RIF or whether the RIF was

a "cover-up." <u>See</u> *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)(The employee's

burden is to prove a violation of the statute; proof of "pretext" may have evidentiary value but is

neither necessary nor sufficient). Similar to *Gordon*, the Court's FMLA Instruction unduly

---

[18] when First Data's motivation for including Plaintiff in the RIF is directly at issue in the retaliation claim. If a portion of the decision to include Barger in the RIF was motivated by Plaintiff's exercise of his right to restoration, then the motivating factor test would be satisfied and even if the jury believed Plaintiff's performance and compensation also were factors, the adverse employment action was still partially motivated by retaliation and the FMLA violated. The reasons for the decision to include Plaintiff in the RIF were directly relevant and the instruction not to question the business decision, when the decision was at issue, was contrary to the law and was not harmless.

[18] The FMLA Instruction only addresses retaliation for exercise of the entitlement to "take leave." Plaintiff's claim has always been the retaliation was a response to Plaintiff's exercise of the entitlement "to be restored." The jury was never instructed to determine whether Plaintiff's exercise of his right to restoration was a motivating factor in the decision to terminate him. At trial, the Plaintiff produced evidence that Plaintiff's termination was only economically beneficial (i.e. created a cost savings for First Data) if Plaintiff exercised his right to be restored (i.e. while on leave and long-term disability, Plaintiff was not a cost to First Data).[18] [Dan Charron Testimony - Transcript 352:9-358:8] It was only Plaintiff's exercise of his right to return that made it economically justified to terminate him.

[19] The jury verdict form contained these same errors. The only FMLA liability question was "Is First Data liable under the FMLA for terminating plaintiff's employment?" There were not separate retaliation and interference. This verdict form did not incorporate the motivating factor standards, and as discussed below regarding interference, focused on the termination and not the lack of restoration.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      13

placed the burden on Plaintiff to disprove Plaintiff's inclusion in the RIF. The only question for

the jury was whether Plaintiff's exercise of his entitlement to restoration was a motivating factor

in the decision to terminate him (whether he was terminated in a RIF or otherwise).

The FMLA Instruction misstated the law by (i) implicitly imposed a "but-for" analysis instead of

a "motivating factor" standard, and (ii) improperly placed the burden on Plaintiff to prove the

RIF is a "cover-up." The FMLA Instruction was contrary to the *Woods* standard.

The FMLA Instruction also was legally erroneous as to retaliation for the following

reasons: (i) the FMLA Instruction and verdict form only addressed retaliation for "taking leave;"

the jury also should have been instructed and asked if the Plaintiff was terminated for requesting

restoration from leave; and (ii) the FMLA Instruction incorrectly imposed a burden shifting

standard that is not present for motivating factor retaliation claims. There is no "pre-text" or

burden shifting element to the "motivating factor" analysis under the FMLA. Application of

those concepts to the FMLA is "apt to cause confusion."[20] The instruction asking whether the

RIF was a "cover-up" led the jury down the wrong factual analysis. There could have been

multiple factors, but if one was because Plaintiff requested reinstatement, the other reasons are

irrelevant. The *bone fides* of the RIF were not an issue. Plaintiff did not need to prove the RIF

was a "cover-up." The Plaintiff only need to prove his request for restoration motivated, in part,

his inclusion in the RIF (whether the RIF was *bona fide* or not).

The failure to instruct the jury in a manner consistent with the law applicable to Plaintiff's

retaliation claim resulted in impermissible prejudice to Plaintiff and a new trial is required.

---

[20] A statute like the FMLA, unlike Title VII, creates substantive rights that an employer must honor. The FMLA is "like the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act, all implemented without using the McDonnell Douglas approach. Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done." *Diaz v. Fort Wayne Foundry Corp*. 131 F.3d 711, 712 (7th Cir. 1997).

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      14

2. **A new trial should be granted because the Court's instruction to the jury regarding Plaintiff's claim of INTERFERENCE was inconsistent with the law and the factual burden of proof borne by the Defendants.**

The Court's FMLA Instruction failed to properly instruct the jury as to the elements of a claim for FMLA interference. Nowhere in the FMLA Instruction does the Court inform the jury that the failure to restore is a violation of the FMLA. The entirety of the FMLA Instruction is related to the end result, the termination. The motivation for the termination may be relevant to the FMLA retaliation claim, but that motivation is irrelevant to whether First Data interfered with Plaintiff's restoration entitlement. [See footnote 20 above]

Both the Plaintiff and the Defendants submitted proposed instructions setting forth the interference elements from *Graziado*, 817 F.3d at 424.[21]  Applying those factors, (i) the Plaintiff was eligible to take FMLA leave, (ii) the Plaintiff was approved for, and took, FMLA leave, (iii) the Plaintiff was on protected FMLA leave when he delivered his physician's return to work authorization on January 10th; and (iv) Plaintiff was not restored to his position or equivalent position. The only issue to be decided by the jury was whether Defendants' action of refusing to reinstate Plaintiff to his position or an equivalent position interfered with Plaintiff's restoration entitlement. The relevant interference statutory and regulatory provisions are as follows (emphasis added):

| | |
|---|---|
| **29 U.S.C. §2614(a)(1) (Statute)** | Except as provided in subsection (b) [key employees], any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave  shall be <u>entitled</u> upon return from such leave – (A) <u>to be restored</u> by the employer to the position of employment held by the employee when the leave was commenced; or (B) <u>to be restored</u> to an equivalent position with equivalent employment benefits, pay, or other terms and conditions of employment. |

---

[21] <u>See</u> ECF No. 122 at pages 16 to 20 (Plaintiff's proposed interference instructions); and ECF No. 103 at pages 8 to 11 (Defendants' proposed instruction). <u>See</u>, <u>also</u>, Transcript 882:21-883:5 where the focus on the lack of restoration instead of the termination was raised by Defendants, and Plaintiff never objected. <u>See also</u> ECF No. 127 at pg 2 (Plaintiff's position is that the question for the jury is restoration, not termination).

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      15

| | |
|---|---|
| **29 U.S.C. §2614(a)(3) (Statute)** | Nothing in this section shall be construed to entitle any <u>restored</u> employee to (A) the accrual of any seniority or employment benefits during any period of leave; or (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee been entitled had the employee not taken leave. |
| **29 C.F.R. § 825.214 (Regulation)** | On return from FMLA leave, an employee is <u>entitled to be returned</u> to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.  <u>An employee is **entitled** to such reinstatement **even if** the employee has been **replaced or** his or her **position** has been **restructured** to accommodate the employee's absence.</u> |
| **29 C.F.R. § 825.216(a) (Regulation)** | An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. <u>An employer must be able to show that an employee would not otherwise have been employed **at the time reinstatement is requested in order to deny restoration to employment.**</u> For example: (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated . . . <u>An employer would have the burden of proving an employee would have been laid-off during the FMLA leave period . . . Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position.</u> [22] |

---

[22] The Plaintiff reasserts his position that the provisions of 29 C.F.R. §825.216(a) permitting termination of an employee while on FMLA protected leave are contrary to the plain and unambiguous language of the statute, 29 U.S.C. § 2614(a)(1), and therefore 29 C.F.R. §825.216 is not subject to judicial deference under *Chevron U.S.A., Inc.* v. *Nat. Res. Def. Council, Inc.,* 561 U.S. 2247 (1984). Plaintiff's complete analysis of this issue, including supporting citations, is set forth in the following documents, each incorporated herein by this reference: ECF Nos. 37; ECF No. 94-5; and ECF No. 94-17. The language of 29 U.S.C. §2614(a)(1) is unambiguous and provides a statutory entitlement to restoration that is not subject to any exception for lay-offs or RIFs. As Plaintiff has acknowledged, certain circuits have addressed a portion, but not all of the arguments offered by Plaintiff below. See ECF No. 37 at pg 14, fn 6. Plaintiff's argument is as follows:

- The entitlement to take leave is set forth in 29 U.S.C. § 2612 provides "an eligible employee <u>shall be entitled to leave</u>" and this entitlement is absolute and without exception. *Diaz v. Fort Wayne Foundry Corp.* 131 F.3d 711, 713 (7th Cir. 1997).

- The statutory entitlement to be restored at the end of leave uses nearly identical language to §2912 and provides an employee "shall be entitled to be restored". 29 U.S.C. §2614(a)(1) provides: "**Except as provided in subsection (b), any eligible employee who takes leave** under section 2612 of this title for the intended purposes of leave **shall be entitled**, on return from such leave (A) **to be restored** by the employer to the position of employment held by the employee when the leave commenced; or (B) <u>to be restored</u> to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

- The statute, 29 U.S.C. §2914(a)(1) clearly states that the only exception to the restoration entitlement is in 29 U.S.C. §2614(b). Section 2914(b) allows for the termination of key employees on leave, but only if the

employee is provided notice and opportunity to return from leave early before the employee may be terminated while on leave. Even this sole statutory exception in §2614(b) for a key employee is limited and does not give an employer an absolute right to deny restoration. If the key employee returns after being noticed, the key employee is entitled to restoration. This small group with these procedural requirements is the sole exception to the statutory entitlement to restoration. There are no other statutory exceptions. There is no statutory lay-off or RIF exception to the entitlement to restoration.

- The exception created by the Department of Labor ("DOL") in 29 C.F.R. §825.216 allowing the termination and non-restoration of any employee on leave is contrary to the plain, unambiguous language of the statute. There is nothing in §2614(b), the only statutory restoration exception, authorizing either (i) an employer to refuse restoration to an employee that does not meet the key employee requirements or (ii) an employer to refuse restoration to a key employee that decides to return early after proper notice is provided.

- The DOL's regulation, 29 C.F.R. §825.216, purportedly finds its basis in 29 U.S.C. §2614(a)(3) which provides: "Nothing in this section shall be construed to entitle any restored employee to (A) the accrual of any seniority or employment benefits during any period of leave; or (B) any right, benefit, or position to which the employee would have been entitled had the employee not taken leave."  The DOL regulation, 29 C.F.R. §825.216(a), then improperly authorizes termination of employees while on FMLA leave based on this provision. This expansion of employer rights by the DOL beyond those in §2614(a)(1) cannot be justified by 29 U.S.C. §2614(a)(3)(B) for the following reasons:

  o The restoration entitlement statute, 29 U.S.C. §2614(a)(1), states that the only exception to the restoration entitlement is in §2614(b) (key employee). Section 2614(a)(1) does not state that there are any other exceptions. Section 2614(a)(1) does not state that §2614(a)(3)(B) is an exception to the restoration entitlement. Congress knew how to identify the exceptions when it referenced §2614(b), and it did not reference §2614(a)(3)(B) as an exception to the entitlement to restoration. Therefore, the DOL's reliance on §2614(a)(3)(B) to create a new exception is directly inconsistent with the statute and broadens employer rights beyond those in the statute.

  o The plain and unambiguous language of 29 U.S.C. §2614(a)(3) applies only to "restored" employees – past tense. Section 2614(a)(3) provides "restored employees" are not entitled to greater benefits than they would have had if leave would not be taken. Section 2614(a)(3) does not apply to an employee who is on leave and has not yet been "restored."

  o The only statutory exception is the key employee provisions in §2614(b). The DOL regulation (825.216) adds an exception providing: "An employee has no greater right to reinstatement . . . than if the employee had been continually employed. . ." "No greater right to reinstatement" is not in the statute (§2614(a)(3)) addressing "restored" employee benefits and rights after restoration. 29 C.F.R. §825.216 is an improper exercise of the Article I authority through the DOL creating a new exception to restoration not adopted by Congress.

  o The DOL's reading of the past tense "restored employee" in the statute (§2914(a)(3)) to mean "an employee on leave and not yet restored" clearly is inconsistent with the plain and normal meaning of the words in the statute. The DOL's interpretation is contrary to basic grammar. The future tense, "to be restored" in §2614(a)(1) and the past tense "restored" in §2614(a)(3) do not mean the same thing.

  o The entitlement to restoration must be read consistently with the absoluteness of the entitlement to take leave. The language granting these entitlements is identical, with the only statutory exception being key employees (after notice and opportunity to return are provided). 29 C.F.R. § 825.216 expands the exceptions beyond those key employees to all employees on leave (with no notice or opportunity to return) and there is no statutory basis for doing so.

- 29 C.F.R. §825.216(a)(1) is inconsistent with the clear and unambiguous language of the statute and therefore is not entitled to judicial deference. When statutory language is unambiguous, the court must apply that language without considering other factors. *Morrison v. National Australia Bank, Ltd. .* 561 U.S. 247 (2010). The courts have a duty to refrain from reading a phrase into a statute when Congress has left it out. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). It is not the court's role to address perceived inadequacies in a statute. *In re Aberl*, 78 F.3d 241, 44 (6th Cir. 1996). Congress created one, and only one, statutory exception (key employee –

The FMLA Instruction did not provide the jury any information regarding the law applicable to interference reflected in these statutory and regulatory provisions. The FMLA Instruction mislead the jury and misstated defense's burden of proof, which is not harmless error. See *LNC Investments*, 173 F.3d at 460. The FMLA Instruction stated (the bracketed language below was included in the verbal presentation (Transcript 1055:6-24), but was not in the written instruction provided to the parties immediately prior to giving the charge):

> [So, you have this nice little law that gives 12-weeks, everybody, Congress passed that law. And when that 12-weeks you're entitled to medical leave, you can't be fired or discharged unless it is for a legitimate business reason. That's what this case is basically about.][23] The Plaintiff had not exhausted his 12-weeks entitlement to leave before he was terminated on January 13, 2017. [That's when he got the notice saying he was going to be terminated effective whatever date, OK. That] termination therefore was unlawful unless First Data proves by a preponderance of the evidence that the Plaintiff would have been terminated even if he had not been on leave. . . . Therefore, if you find that the termination of plaintiff's employment with First Data would have occurred because of First Data's reduction-in-force, and was not merely a cover-up for a decision to terminate plaintiff because he had taken FMLA leave, then you must find for the defendant.

This instruction is contrary to law as it did not incorporate the standards of 29 C.F.R. §825.214 or §825.216 (assuming its validity). The issue on which the jury should have been instructed was not whether Plaintiff was terminated in a RIF or whether the RIF was a legitimate business reason, but rather whether Defendants interfered with Plaintiff's entitlement to restoration.

---

inapplicable to this case). Out of thin air, with no statutory support, the DOL created additional exceptions to the restoration entitlement. These encroachments by the executive branch acting in a manner contrary to the plain language of Congress are not subject to the judiciary's deference. The judiciary is compelled to enforce unambiguous Congressional pronouncements. The statute does not contain an exception to restoration for lay-offs or RIFs. The DOL's regulation, 29 C.F.R. §825.216 is invalid to the extent it permits employers to refuse restoration to employees with the limited exception of terminations complying with the requirements of the key employee provision, and is not a legally justifiable defense to Plaintiff's claims in this case..

[23] The Court also had previously characterized the case as being about the legitimacy of the RIF rather than the motivation for inclusion of the Plaintiff in the RIF or the interference with restoration. See, e.g., Transcript 835:19-836:2. This case was never about whether or not the RIF was legitimate. This case was about whether Plaintiff's return from leave motivated First Data not to restore him and whether accepting Plaintiff's return to work letter triggered the obligation to restore Plaintiff to his position or equivalent position, without exception or excuse.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      18

**a.   The FMLA Instruction failed to instruct properly regarding 29 C.F.R. §825.214**

The instruction failed to address the language of 29 C.F.R. §825.214 that provides that the Plaintiff was entitled to reinstatement "even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence."[24] The planning of a RIF to make the replacement or restructured position permanent is not an exception to 29 C.F.R. §825.214. If Plaintiff was terminated because of replacement or restructuring, the FMLA was violated. The Plaintiff presented evidence that his duties were simply moved to Ording, his tasks were not eliminated, and his position simply replaced or his duties restructured in his absence.[25] The jury was never asked to determine whether Plaintiff had been replaced or his position restructured while on leave and, if so, instructed to find First Data liable for interference under the FMLA. These were the questions required to be answered under 29 C.F.R. § 825.214, and the jury was not properly instructed, or even instructed at all, as to those standards. This error was not harmless. Evidence was produced for the jury to find for the Plaintiff if a proper instruction had been given that First Data was liable for interference if the Plaintiff was not restored because he was replaced or his position restructured to accommodate him while on leave.

**b.   The FMLA Instruction failed to instruct properly regarding 29 C.F.R. §825.216**

The FMLA Instruction committed harmful error by misstating the Defendants' burden of proof under 29 C.F.R. §825.216(a)(1) (assuming its validity) which provides:

> An employer must be able to show that an employee would not otherwise have been employed <u>at the time reinstatement is requested</u> in order to deny restoration to

---

[24] The entire purpose of the FMLA was to provide employees with job security while on covered leave. A defense that involves claims that restoration is not required because while the employee was gone the employer learned that others could do the job without needing to employ the employee on leave is antithetical to, and completely guts the, purpose of the FMLA. <u>See</u> ECF No. 37-2 Exhibit D.

[25] Mr. Marino admitted that on November 19, 2016, Ms. Ording was assuming Plaintiff's job responsibilities on an interim basis while he was on leave. <u>See e.g.</u>, Marino 11/19/16 text to Barger Ex. P-35 attached hereto as <u>Exhibit</u> E; Admission in the Complaint/Answer at ¶¶140 & 146; and Charron Testimony Transcript 350:6-19.

employment.

The FMLA Instruction, contrary to this regulation, stated that the Defendant merely must prove Plaintiff would have been terminated even if not on leave. That was an incorrect statement of the law in 29 C.F.R. §825.216(a)(1), as the temporal test of the regulation is not incorporated ("at the time reinstatement is requested"). **The burden is on the Defendant to show Plaintiff would not otherwise have been employed <u>at the time reinstatement is requested.</u>** If the Defendants do not prove Plaintiff would have been terminated prior to the time he requested reinstatement, then 29 C.F.R. § 825.216 is not a defense and the statutory entitlement to restoration controls.

It is undisputed that Plaintiff delivered his physician's return to work authorization and requested reinstatement on January 10, 2019.[26] Plaintiff was still employed on January 10, 2017. Plaintiff was not restored to his position or equivalent position despite this request. The Defendant failed to meet its burden in this case because Plaintiff had not been terminated at the time he requested reinstatement.

The instruction failed to instruct the jury that the relevant time for measurement of Defendant's interference is "the time reinstatement is requested." The instruction allowed the jury to look at, and speculate, as to the implications of possible events if Plaintiff had not taken leave that possibly could have occurred after January 10th even if Plaintiff was at work.[27] The

---

[26] Plaintiff's position is that Plaintiff requested reinstatement on November 19, 2016 when resisted being placed involuntarily on leave in his text messages with Mr. Marino. (Trial Ex. P-35 attached hereto as <u>Exhibit</u> E)

[27] In this case, it is impossible to ever know what would have occurred had Plaintiff never taken leave, because Plaintiff was on leave and unable to communicate with management the entire time the RIF was being planned. Had Plaintiff been at work, his presense and communications may have influenced decisions, and his presense without illness would have meant the performance issues raised by Defendant as justification for forcing leave would not have occurred. In addition, the evidence is clear that there were no written or uniform standards for selecting individuals for inclusion in a RIF. This was not a plant closing or a RIF with specific selection criteria that would have applied to Plaintiff whether he had been at work or not. This was not a reduction being planned to include Plaintiff prior to Plaintiff taking leave. There is no evidence as to what would have occurred had Plaintiff been at work instead of on leave, and there can never be such evidence under these circumstances. First Data cannot meet its burden under §825.216.

**PLAINTIFF'S MOTION FOR A NEW TRIAL**      20

simple question for the jury was whether Defendant's had satisfied their burden to show Plaintiff would have been terminated, even if at work, prior to the date he requested reinstatement. No reasonable jury could conclude that Plaintiff would have been terminated prior to January 10, 2017 if Plaintiff was at work, instead of on leave, because Plaintiff was not notified or terminated until after he submitted his physician's authorization requesting restoration.

c. **The FMLA Instruction failed to instruct as to the obligation to restore upon acceptance of the physician's return to work authorization**

First Data had a statutory obligation to restore upon delivery of the physician's release:

Once an employee submits a statement from [his] health care provider which indicates that [he] may return to work, the employer's <u>duty</u> to reinstate him has been triggered under the FMLA. *Brumbalogh v. Camelot* 427 F.3d 996 (6th Cir. 2005); <u>see</u> also *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013).

The events that possibly could have occurred after Plaintiff's reinstatement are legally irrelevant to the question as to whether First Data interfered with Plaintiff's entitlement to be restored. We will never know, nor can we know, what would have occurred if Plaintiff had been restored as required. The FMLA does not guaranty employment after reinstatement. But, the FMLA does require restoration and prohibits retaliatory termination. Failing to restore alone constitutes interference, creates liability, and entitles Plaintiff to the remedies within 29 U.S.C. §2617.

The possibility that Plaintiff may have been terminated at some indeterminate time after restoration is legally irrelevant to the interference claim. This would have been a completely different case had First Data reinstated Plaintiff and, after that reinstatement, Plaintiff was included in a reduction-in-force. In that situation, the Plaintiff's only claim would be retaliation as his entitlement to restoration would have been satisfied (assuming he was not restored to a position clated for lay-off). However, First Data did not take that legally required course of action. Instead, First Data decided not to restore Plaintiff to his position or an equivalent position

even though the Plaintiff had requested reinstatement. This decision by First Data gives rise to Plaintiff's claim for interference. The RIF is not a defense because Plaintiff was not terminated until after he had satisfied First Data's prerequisites to restoration by requesting reinstatement and delivering his physician's authorization.

### d. "Legitimate Business Reason" is not a defense and inclusion of that reference in the verbal presentation of the charge was an instruction error.

"Legitimate business reason," a term used in the verbal, but not written, charge is not a defense to an interference claim. The only question is whether an entitlement was denied. The employer's intent is irrelevant. *Williams v. Shenango*, 986 F.Supp 309, 318 (W.D. Pa. 1997); *Marshall v. The Rawlings Co.*, 854 F.3d 368 (6th Cir. 2011); *Smith v. Blue Dot Services Co.*, 283 F.Supp. 368 (D.Kan 2008). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005); see also footnote 20 above. The Title VII legitimate business reason standards are inapplicable. If the Defendant's burden under 29 U.S.C. §825.216(a) is not met, Defendant is liable for interference regardless of the justification presented, legitimate or not – the statute was violated. Plaintiff requested reinstatement and provided his return to work authorization. First Data did not restore Plaintiff. The jury was not properly instructed on the factual issues on which the Defendant bears the burden of proof set forth in 29 C.F.R. §825.216. The verdict is contrary to the law and evidence. Defendants did not, and cannot, offer proof that Plaintiff would have been terminated prior to January 10th if he had been at work and not on leave.

**J.** **A new trial should be granted as the jury's verdict with respect to FMLA interference (i) is contrary to the overwhelming evidence and (ii) is contrary to the law as Defendants admit Plaintiff was restored to a position slated for lay-off in violation of 29 C.F.R. §825.216**

The Defendants rely upon 29 C.F.R. § 825.216 as a basis for laying-off Plaintiff as part of a RIF. However, during the trial, Defense Counsel repeatedly attempted to correct the record to demonstrate that Plaintiff was notified of his termination on January 13, 2017, but that he was returned to regular payroll and was on non-working status from January 17, 2017 to February 28, 2019 receiving full pay. [Transcript 825:4-25; 1020:12-1021:17] The final sentence of 29 C.F.R. §825.216(a)(1) clearly states First Data's conduct constitutes interference with Plaintiff's entitlement to restoration:

> Restoration to a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position.

Ording had Plaintiff's job on an interim basis, it was not eliminated. [See footnote 25] Had the jury been properly instructed on the employer's restoration requirements and this prohibition on restoration to a position slated for lay-off, the evidence was overwhelming that the Defendants failed to restore the Plaintiff to his position or an equivalent position as they brought him back full-salary, but on non-working status (not equivalent) and then terminated him in a lay-off six weeks later. Under these circumstances, 29 C.F.R. §825.216 is not a defense and the jury was not instructed on this aspect of §825.216 at all.

**IV.    CONCLUSION**

The FMLA instruction was legally flawed for the reasons stated above, including, but not limited to, with respect to the retaliation claim as it did not include the motivating factor standard, improperly placed the burden on Plaintiff to prove the RIF was a "cover-up," failed to instruct on the entitlement to restoration, failed to instruct as to 29 C.F.R. §825.214, failed to instruct on the proper burden of Defendants under 29 C.F.R. §825.216, and failed to instruct on

the prohibition on restoration to a job slated for lay-off. These instruction failures, and the others errors described above, were not harmless. For these reasons, the Court should enter an Order pursuant to Fed. R. Civ. P. 59 granting Plaintiff a new trial.


October 22, 2019                              Respectfully Submitted,
                                             THE LAW OFFICE OF SHAWN SHEARER, P.C.

                                                  /s/ Shawn Shearer
                                             SHAWN SHEARER
                                             *shawn@shearerlaw.pro*

                                             ZEITLIN & ZEITLIN, P.C.

                                                  /s/ David Zeitlin
                                             DAVID ZEITLIN
                                             *david@zeitlinlawfirm.com*


**PLAINTIFF'S MOTION FOR A NEW TRIAL**       24