# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
STEVEN B. BARGER,

               Plaintiff,

      -against-

FIRST DATA CORPORATION,

              Defendant.
-------------------------------------------------x

**<u>JURY INSTRUCTIONS</u>**
Case No. 17-CV-4869-FB-LB


     Members of the jury, my instructions will be in three parts:

**First:**      I will give you instructions regarding the general rules that define and govern the duties of a jury in a civil case such as this;

**Second:**    I will instruct you as to the legal principles that govern the claims in this case and the contentions of each party; and

**Third:**     I will give you rules regarding your deliberations.

# I. GENERAL INSTRUCTIONS

**Roles of the Court and Jury**

Let me start by restating our respective roles as judge and jury.

Your duty, as I mentioned in my opening instructions, is to find the facts from all the evidence in this case. You are the sole judges of the facts, and it is for you and you alone to determine what weight to give the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence. Therefore, with respect to any question concerning the facts, it is your recollection of the facts that controls -- not counsels' recollections, as expressed in the opening or closing statements, or my recollections, if I have made any references to testimony.

My job is to instruct you on the law. You must apply the law, in accordance with my instructions, to the facts as you find them. If any of the lawyers has stated a legal principle which differs from any that I state to you in my instructions, you must be guided solely by what I instruct you about the law. You should not single out any instruction as alone stating the law, but should consider my instructions as a whole.

Since it is your job -- not mine -- to find the facts, I have neither expressed nor attempted to suggest an opinion about how you should decide the facts of the

2

case.  You should not interpret anything I have said or done as expressing an opinion about the facts.

**No Sympathy or Bias**

In determining the issues of fact and rendering your verdicts, you should perform your duty with complete impartiality and without bias, sympathy or prejudice as to any party.  All of the parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach just verdicts, regardless of the consequences. That First Data is a corporation does not mean it is entitled to any greater or lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration you would give an individual.

**The Definition of Evidence**

You must determine the facts in this case based solely on the evidence or those inferences that can reasonably be drawn from the evidence.  I will now instruct you on what evidence is and how you should consider it.

Evidence has been presented to you in the form of sworn testimony from the witnesses and exhibits that have been received in evidence by me during the course of the trial.

3

Certain other things are not evidence: arguments or statements by the lawyers and testimony that has been excluded, stricken, or that you have been instructed to disregard.

**Direct and Circumstantial Evidence**

Now that you know what evidence is and is not, let me note that, generally speaking, there are two types of evidence: direct and circumstantial. You may use both types of evidence in reaching your verdicts. There is no distinction between the weight to be given to these two types of evidence.

Direct evidence is testimony from a witness about something the witness knows by virtue of the witness' own senses -- something the witness has seen, felt, touched or heard.

The other type of evidence -- circumstantial evidence -- is proof of a chain of circumstances pointing to the existence or non-existence of certain facts. A simple example of circumstantial evidence would be as follows: Suppose you came to court on a day when the weather was clear and dry. However, after several hours in the courtroom, you observe a person come in wearing a raincoat and shaking a wet umbrella. Also, suppose you haven't had the opportunity to look outside during those several hours to see if it is raining. You wouldn't have direct evidence that it had rained, but you might infer that fact from the circumstances you had observed. That is all there is to circumstantial evidence. On the basis of reason and experience

4

and common sense, you infer the existence or non-existence of a fact from one or more established facts.

You are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.  Use your common sense in drawing inferences; you are not permitted to engage in mere guesswork or speculation.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  That plaintiff asks you to draw one set of inferences, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

**Credibility**

You the jury are the sole judges of the credibility -- or believability -- of the witnesses and the weight their testimony deserves.  You should carefully scrutinize all of the testimony given, the circumstances under which each witness testified, and every matter in evidence that tends to show whether a witness is worthy of your belief.

Your decision in this respect may depend on how that witness impressed you.  Was the witness candid and forthright or did the witness seem to be hiding something, being evasive or suspect in some way?  How did the witness's testimony on direct examination compare with the witness's testimony on cross-examination?

Was the witness consistent in the testimony given or were there contradictions? Did the witness appear to know what the witness was talking about and did the witness strike you as someone who was trying to report that knowledge accurately? How much you choose to believe any witness may be influenced by any bias that you may perceive the witness to have.

If you find that any statement made by a witness was false, in whole or in part, you may disregard the particular part you find to be false or you may disregard the witness' entire testimony as not worthy of belief.

**Burden of Proof**

The burden of proof in a civil case is what we call "a preponderance of the evidence." You may have heard the phrase "proof beyond a reasonable doubt." That is the standard of proof required in a criminal trial and does not apply in a civil case such as this. So whenever I state in these instructions that a party must prove something, it is implicit that the burden of proof is the preponderance of the evidence.

To establish something by a preponderance of the evidence means to prove that it is more likely so than not so. So if the evidence, considered as a whole, produces in your minds a belief that a certain contention is more likely true than not true, then the burden has been satisfied. If the evidence does not produce that belief, either because it convinces you that the contention is more likely not true than true,

or because it weighs so evenly that you cannot say whether it is more likely true or not true, then the burden has not been satisfied.

In essence, a preponderance of the evidence means the greater weight of the evidence. That does not mean the greater number of witnesses or the greater length of the time taken by either side. This determination is based on the quality and persuasiveness of the evidence—the weight and effect it has on your minds.

In general, the plaintiff in a civil case has the burden of proof. But for certain issues the defendant has the burden of proof. I will tell you which party has the burden of proof when I explain the elements of the claims in this case. No matter which party has the burden of proof, the burden is proof by a preponderance of the evidence.

## II. THE CLAIMS

The plaintiff, Steven Barger, has sued the defendant, First Data, for violating his rights under the Americans With Disabilities Act (ADA) and under the Family Medical Leave Act (FMLA).

### ADA CLAIM

The ADA provides that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

7

The parties agree that First Data is a covered entity under the ADA.

Plaintiff claims that First Data intentionally discriminated against him when it required him to take medical leave. First Data argues that it placed plaintiff on medical leave because he was not able to perform his job. Plaintiff's termination is not part of his ADA claim.

The first thing you will have to decide is whether requiring plaintiff to take medical leave was an adverse employment action. Plaintiff claims it was an adverse employment action because it (1) reduced his compensation and (2) deprived him of remote access to First Data's systems.

There is no exhaustive list of what constitutes an adverse employment action. A reduction in compensation certainly qualifies, but an employee may still suffer an adverse employment action even if he continues to receive his compensation. An adverse employment action can also be a significant diminishment in work responsibilities, a reduction in benefits, a denial of a requested employment accommodation, an involuntary job transfer, or new and inferior working conditions.

Therefore, any change that creates a significant disadvantage with respect to the terms of a person's employment may qualify as an adverse employment action. However, that there is a change in any employee's working condition is not enough to constitute an adverse employment action. The change must be more disruptive than an inconvenience to the employee. You must decide, given all the evidence

8

presented, whether plaintiff has shown by a preponderance of that evidence that requiring him to take medical leave adversely affected the terms, conditions or privileges of his employment.

If you decide that requiring plaintiff to take medical leave was an adverse employment action, then you must decide if the plaintiff was a "qualified individual," meaning whether at the time he was placed on medical leave, he could perform the essential functions of his job.

The essential functions of a job are the fundamental duties of that job. In making that determination, you must consider:

(i)    the employer's judgment as to which functions are essential;

(ii)    written job descriptions;

(iii)    the amount of time plaintiff spent performing the function;

(iv)    the consequences of not requiring someone in that job to perform the function; and

(v)    the work experience of employees who currently have or previously held the job.

This list is not exclusive, and no one factor will mean that a function is or is not essential.

Thus, in addition, you may also consider the following additional factors:

(i)    whether the reason the position exists is to perform those functions;

(ii)    whether there are a limited number of employees available who can perform that function; and/or

(iii)   whether the function is highly specialized, such that the plaintiff was hired for his ability to perform those functions.

If you decide that plaintiff could perform the essential functions of his job even if he was on medical leave, regardless of his disability, then he is a qualified individual, and you must therefore find that First Data unlawfully discriminated against him.

## FMLA CLAIM

Plaintiff also makes a claim under the FMLA against First Data.

The FMLA requires that employers allow eligible employees to take up to 12 weeks of unpaid medical leave each year. An eligible employee may take this leave if he or she is unable to work due to a serious health condition. The parties agree that plaintiff was an eligible employee and that his cancer was a serious health condition.

The plaintiff had not exhausted his 12-week entitlement to leave time before he was terminated on January 13, 2017. That termination therefore was unlawful unless First Data proves by the preponderance of the evidence that the plaintiff would have been terminated even if he had not been on leave. In that respect, First Data argues that the decision to terminate plaintiff was part of a reduction-in-force.

10

Therefore, if you find that the termination of plaintiff's employment with First Data would have occurred because of First Data's reduction-in-force, and was not merely a cover-up for a decision to terminate plaintiff because he had taken FMLA leave, then you must find for the defendant.

In determining whether you believe First Data's stated reason for terminating plaintiff's employment, you may not question First Data's business judgment. That is, you cannot find an FMLA violation simply because you disagree with the business sense of First Data or believe its decision was harsh or unreasonable. In other words, you are not to consider First Data's wisdom.

## DAMAGES

I am about to instruct you regarding the law of damages available for the claims raised in this case. The fact that I am giving you this instruction does not mean that I have any view as to whether plaintiff is entitled to a verdict against defendants with respect to any of his claims. Instructions as to the measure of damages are given only for your guidance, in the event that you find in favor of plaintiff on the question of liability as to any of his claims by a preponderance of the evidence in accordance with the other instructions I have given you. If you decide that the plaintiff is not entitled to prevail with respect to any of his claims, you need not go further.

**Compensatory Damages**

If you find that First Data violated the ADA by requiring plaintiff to take medical leave, then the plaintiff is entitled to any compensatory damages caused by the violation.

The first element of compensatory damages is the "back pay" or "lost wages" the plaintiff would have earned if First Data had not placed him on leave. The back pay starts from the day plaintiff was placed on leave and ends on the date he was terminated. Thus, to determine back pay, you should first calculate the amount of income plaintiff would have earned between November 19, 2016, when he was formally placed on leave, and January 13, 2017, when he was notified of his termination. From that amount, subtract any disability insurance payments he received during that period.

In addition, compensatory damages are intended to compensate a plaintiff for the emotional distress—including mental anguish, shock and discomfort—that he or she has suffered because of a defendant's wrongful conduct. Plaintiff claims that being required to take medical leave—and, in particular, being deprived of remote access to First Data's systems—caused him such damages.

No evidence of the monetary value of emotional distress need be, nor necessarily can be, introduced into evidence; nor is there any exact standard for the compensation you may award for such damages. However, a damage award must

be supported by competent evidence concerning the injury.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages based on arbitrary guesswork or speculation, but only for those injuries that plaintiff has actually suffered or which he is reasonably likely to suffer in the future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  You are to use your sound discretion in fixing an award of compensatory damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.  Do not engage in arbitrary guesswork or speculation.

**Back Pay**

If you have concluded that plaintiff was wrongfully terminated under the FMLA, the law permits him to recover any "back pay" or "lost wages" he would have earned if he had been reinstated.  This is the only type of damages available under the FMLA.

The back pay period for this claim starts from the day plaintiff was terminated from First Data and ends on the date plaintiff obtained or could have obtained re-employment in a comparable position.  Thus, to determine back pay, you should first calculate the amount of income plaintiff would have earned if he had remained employed by First Data after January 13, 2017.  From that amount, subtract

13

whatever plaintiff actually earned during that period, including money from self-employment.

Finally, if you decide that plaintiff is entitled to any back pay, you must then consider whether the amount of back pay should be limited. In this case, defendants claim that plaintiff's back pay, if any, should be limited for two reasons—I will refer to the first reason as "mitigation" and the second reason as "after acquired evidence." I will now describe the law "mitigation" and for "after acquired evidence."

**Mitigation**

When determining the amount of damages a plaintiff is entitled to recover, the law provides that the plaintiff must make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. This is called "mitigation of damages."

If you determine that plaintiff is entitled to damages, you must reduce these damages by the amount that plaintiff actually earned following his termination or the amount you determine that plaintiff could have earned through a reasonable effort.

If you determine that plaintiff failed to seek out or take advantage of a business or employment opportunity that was reasonably available to him, then you should reduce the amount of damages by the amount he could have earned if he would have sought out or taken advantage of the opportunity. In determining whether plaintiff's

14

failure to seek out or take advantage of a business or employment opportunity was reasonable, you should be aware that plaintiff is only required to seek out or accept employment that is "of a like nature."

In determining whether employment is "of a like nature," you may consider:

    a.  The type of work;

    b.  The hours worked;

    c.  The compensation;

    d.  The job security;

    e.  The working conditions; and

    f.  Other conditions of employment.

It is defendants' burden to prove by a preponderance of the evidence that plaintiff failed to mitigate his damages by failing to seek out or accept employment of a like nature.

**After-Acquired Evidence**

Defendants also contend that they would have made the same decision to terminate plaintiff's employment because of misconduct by plaintiff that defendants discovered during the course of this lawsuit. Specifically, defendants claim that they would have terminated plaintiff's employment had they known about *either* (1) the invoices that plaintiff submitted to First Data for his work that pre-dated his employment, *or* (2) plaintiff's pre-First Data salary, which defendants claim was

15

actually much lower than the $20,000 per-month that plaintiff represented to First Data prior to his being hired.

If you determine that defendants have proven, by a preponderance of the evidence, that they would have made the same decision to terminate plaintiff's employment because of either piece of "after acquired evidence," then you may not award plaintiff any back pay for wages that plaintiff would have received *after* the date defendant became aware of the alleged misconduct. In this case, First Data claims that the date it became aware of information that would have led to plaintiff's termination was August 10, 2018.

I will now give an example to illustrate how the law of "after acquired evidence" applies to limit recovery, and this example should not be understood by you as an instruction of what you should or should not determine. If you find that plaintiff is entitled to back pay from the date of his termination (January 13, 2017) through the present date (September 24, 2019), and you also determine that First Data would have discharged plaintiff anyway on August 10, 2018, then you must limit plaintiff's back pay to the period between January 13, 2017 and August 10, 2018.

**ADA Punitive Damages**

You may, but are not required to, consider awarding plaintiff punitive damages in connection with his ADA claim. Punitive damages are not available

under the FMLA.  So if you determine that defendants are not liable under the ADA, then you do not need to consider punitive damages at all.

Punitive damages may, in certain circumstances, be awarded by you in addition to a verdict for other damages.  Punitive damages are not intended as compensation to an injured plaintiff.  Rather, the law permits a jury in a civil case to assess punitive damages against a defendant as a punishment for wrongful conduct and to deter the defendant and others from engaging in such conduct in the future.

Plaintiff is not automatically entitled to punitive damages simply because you may find that defendant wrongfully placed him on leave, or because you have awarded damages to compensate plaintiff for his injuries.  You may award punitive damages only if plaintiff has proven certain matters that I am now going to explain to you.

Punitive damages may only be awarded against defendant if you find that defendant acted maliciously or with a reckless disregard for plaintiff's legal rights. "Malicious" conduct is intentional wrongdoing in the sense of an evil-minded act. "Reckless" conduct is a deliberate act or omission with knowledge of a high degree of probability of harm and indifference to the consequences.

If you determine that First Data's conduct justifies an award of punitive damages, you should take into consideration all of the circumstances of this case, including: (1) the nature of the wrongdoing; (2) the extent of the injury or harm

17

inflicted by the wrongdoing; (3) the intent of the party that committed the wrongdoing; and (4) the effect the judgment will have upon the defendant. You may also consider any mitigating circumstances that you find justify reduction of the amount of punitive damages.

Most importantly, you should make sure that there is a reasonable relationship between the actual injury sustained by plaintiff and any punitive damages you may award. Punitive damages may be higher than, equal to, or lower than actual damages.

You may decide not to impose punitive damages at all. The awarding of punitive damages is within your discretion—you are not required to award them. If you decide to award them, you must first find that First Data acted maliciously or recklessly so as to justify additional damages as punishment. If you were to find that First Data's conduct violated the law, that finding alone would not be sufficient to support an award of punitive damages.

If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by bias, prejudice, sympathy for, or dislike of, any party in the case.

### III. CLOSING INSTRUCTIONS

In a few minutes you will retire to the jury room for your deliberations. I will now give you some general rules regarding your deliberations.

18

Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be. That is entirely for you to decide.

By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case from the evidence presented during the trial and to apply the law as I have given it to you to the facts as you find them from the evidence.

Remember also that your verdict must be based solely on the evidence in the case and the law I have given to you, not on anything else.

In order for your deliberations to proceed in an orderly fashion, you must have a foreperson. The foreperson will be responsible for signing all communications to the court and for handing them to the marshal during your deliberations, but, of course, his or her vote is entitled to no greater weight than that of any other juror.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me, you may send a note, to the marshal, signed by your foreperson. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with any member of the jury on any subject touching upon the merits of the case other than in writing, or orally here in open court.

19

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should find yourself in doubt concerning my instructions to you on the law, it is your privilege, if you so desire, to return to the courtroom for the purpose of having such testimony or instructions read back to you. Again, you may make such a request by a note to the marshal. I suggest, however, that you be specific to avoid hearing testimony you do not desire to assist in your deliberations and be patient because it sometimes takes a while to find the testimony in the record.

During the trial certain items were received into evidence as exhibits. If, after you have begun your discussions of the case, you think it would be helpful to have any of the exhibits with you in the jury room, you may make the request by a note to the marshal and I will send the exhibits in to you.

Your duty is to reach a fair conclusion from the law and the evidence. It is an important one. When you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and conscience. While you should not surrender conscientious convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case for yourself, and not merely acquiesce in the conclusion of your

fellow jurors, you should examine the issues and the evidence before you with candor and frankness, and with proper deference to and regard for the opinions of each other.

You should not hesitate to reconsider your opinions from time to time and to change them if you are convinced they are wrong.  However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

The decision you reach must be unanimous; you must all agree on every relevant entry on the verdict sheet.  I have prepared a verdict sheet to help guide you in your deliberations.  You will have this sheet with you during the deliberations.

When you have reached a verdict, simply send me a note signed by your foreperson, that you have reached a verdict.  Do not indicate what the verdict is.  In no communication with the court should you give a numerical count of where the jury stands in its deliberations.

Remember in your deliberations that the dispute between the parties is, for them, no passing matter.  They and the court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you.  By so doing, you carry out to the fullest your oath as jurors to well and truly try the issues of this case and render a true verdict.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
STEVEN B. BARGER,

                 Plaintiff,

     -against-

FIRST DATA CORPORATION,

                 Defendant.

----------------------------------------------x

**VERDICT**
Case No. 17-CV-4869-FB-LB

1.    **ADA**

     a.   Is First Data liable under the ADA for requiring plaintiff to take medical leave?

        Yes___    No _✓_

        If you answered "No," skip to Question 2.

        If you answered "Yes," proceed to Questions 1b and 1c.

     b.   What amount of compensatory damages, if any, should be awarded against First Data for requiring plaintiff to take medical leave?

        $_____

     c.   What amount of punitive damages, if any, should be awarded against First Data for requiring plaintiff to take medical leave?

        $_____

1

2.   **FMLA**

    a. Is First Data liable under the FMLA for terminating plaintiff's employment?

    Yes\_\_\_   No ✓

    If you answered "No," your verdict is complete.

    If you answered "Yes," proceed to Question 2b.

    b. What amount of back pay, if any, should be awarded to plaintiff?

    $_____

*Have your foreperson date and sign the verdict sheet.*

Dated:  September 24, 2019
       Brooklyn, New York

*Jessica Antigua*
FOREPERSON
*J Antigua*

2