STEVEN B. BARGER,

        Plaintiff,

v.                                      Civil Case No. 1:17-cv-04869-FB-LB

FIRST DATA CORPORATION,

        Defendant.

---

## DEFENDANT FIRST DATA CORPORATION'S OPPOSITION
## TO PLAINTIFF STEVEN BARGER'S MOTION FOR NEW TRIAL

**SAUL EWING ARNSTEIN & LEHR LLP**
Gary B. Eidelman (admitted *pro hac vice*)
Michael P. Cianfichi (admitted *pro hac vice*)
500 E. Pratt Street
Baltimore, Maryland 21202
T: (410) 332-8975
gary.eidelman@saul.com
michael.cianfichi@saul.com

Gillian A. Cooper
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
T: (215) 972-7861
gillian.cooper@saul.com

**New York Office**
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

**BOND, SCHOENECK & KING PLLC**
Louis P. DiLorenzo
600 Third Avenue 22nd Floor
New York, New York 10016-1915
T: (646) 253-2315
ldilorenzo@bsk.com
*Attorneys for Defendant,*
*First Data Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 2

ARGUMENT ............................................................................................................. 4

    1.    Plaintiff's Attempt to Relitigate Discovery Disputes Must Be Denied ................ 4

    2.    Plaintiff is Not Entitled to a New Trial to Remedy His Strategic Mistakes ........... 5

    3.    The Court was Not Required to Explain its Denial of Plaintiff's Motion for Summary Judgment ........................................................................................... 5

    4.    Substantial Evidence Supports the Jury's ADA Verdict ....................................... 6

    5.    Plaintiff's Jury Intimidation Arguments Are Unavailing ..................................... 7

    6.    Plaintiff's Theory of Witness Intimidation is Unsupported by Any Evidence ............................................................................................................ 8

    7.    There is No Basis for Judge Block to Recuse Himself .......................................... 9

    8.    There is No Evidence of Jury Confusion During Deliberations ........................... 11

    9.    The Jury Instructions are Not Erroneous ........................................................... 12

        9.1    Plaintiff's Failure to Object to the Jury Instructions is Fatal to His Motion ..................................................................................................... 12

        9.2    The Jury Instructions Accurately Reflect the Applicable Law ................. 13

        9.3    The FMLA is Not a Strict Liability Statute ............................................. 15

    10.    Substantial Evidence Supports the Jury's FMLA Verdict for Defendant............. 16

CONCLUSION ......................................................................................................... 18

36142536.5 11/05/2019

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. New York*, 2012 WL 4513410 (S.D.N.Y. Oct. 2, 2012) ..............................9

*Bailey v. Broder*, 1997 WL 73717 (S.D.N.Y. Feb. 20, 1997) ......................................10

*Bergman v. Kids By the Bunch Too, Ltd.*, 2018 WL 1402249 (E.D.N.Y. Feb. 16, 2018) .................................................................................................................16

*Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, 2017 WL 1184278 (S.D.N.Y. Mar. 29, 2017) ...................................................................................................16

*Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866 (8th Cir. 2010) ...........16

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2002) ............13

*Fleming v. Stradford*, 2018 WL 1033234 (S.D.N.Y. Feb. 22, 2018) ............................3

*Guzman v. Jay*, 303 F.R.D. 186 (S.D.N.Y. 2014) .......................................................7

*Hemmerdinger Corp. v. Ruocco*, 2016 WL 5115337 (E.D.N.Y. Sept. 20, 2016), *aff'd*, 711 F. App'x 659 (2d Cir. 2017) ..............................................................2

*Hill v. Quigley*, 336 F. Supp. 3d 283 (S.D.N.Y. 2018), *aff'd*, 2019 WL 4197165 (2d Cir. Sept. 5, 2019) ...........................................................................................2

*Jarvis v. Ford Motor Co.*, 283 F.3d 33 (2d Cir. 2002) ...............................................13

*Levin v. Gallery 63 Antiques Corp.*, 2007 WL 1288641 (S.D.N.Y. Apr. 30, 2007) .................5, 8

*Liteky v. United States*, 510 U.S. 540 (1994) ............................................................10

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120 (2d Cir. 2005) ............................7, 8

*McKinney v. Cent. Hudson Gas & Elec. Corp.*, 632 F. App'x 37 (2d Cir. 2016) ..........3

*Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019) ........................................6

*New York SMSA Ltd. P'ship v. Inc. Vill. of Muttontown*, 2013 WL 12383745 (E.D.N.Y. May 20, 2013) ........................................................................................5

*Patalano v. Am. President Lines*, 250 F. App'x 425 (2d Cir. 2007)..............................14

*Raedle v. Credit Agricole Indosuez*, 670 F.3d 411 (2d Cir. 2012) ..............................3

*Rafter v. Bank of Am.*, 2011 WL 5579029 (S.D.N.Y. Nov. 15, 2011), *aff'd sub nom. Rafter v. Fleet Bos. Fin. Corp.*, 523 F. App'x 79 (2d Cir. 2013).....................4

36142536.5 11/05/2019

*Rivas v. Suffolk Cty.*, 2010 WL 1286347 (E.D.N.Y. Apr. 1, 2010) ...............................................4

*Rowell v. Ferreira*, 2019 WL 4509048 (S.D.N.Y. Sept. 19, 2019) ..............................................3

*Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174 (9th Cir. 1990).............................................3

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) ...........................................................5

*United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992) ...........................................................10

*United States v. Masotto*, 73 F.3d 1233 (2d Cir. 1996) ............................................................3

*Wolfson v. Palmieri*, 396 F.2d 121 (2d Cir. 1968)...................................................................10

**FEDERAL STATUTES**

28 U.S.C. § 455.......................................................................................................................9, 10

29 U.S.C. § 2614...................................................................................................................14, 15

29 C.F.R. § 825.214..............................................................................................................12, 14

29 C.F.R. § 825.216..................................................................................................12, 15, 16, 17

**FEDERAL RULES**

Fed. R. Civ. P. 30......................................................................................................................4

Fed. R. Civ. P. 51....................................................................................................................13

Fed. R. Civ. P. 56......................................................................................................................6

Fed. R. Civ. P. 59............................................................................................................4, 6, 11

Fed. R. Civ. P. 72(a) .................................................................................................................4

36142536.5 11/05/2019

## INTRODUCTION

The jury trial in this case began on Monday, September 16, 2019. During his case-in-chief, Plaintiff Steven Barger called nine witnesses, read deposition testimony into the record from three additional witnesses, and also cross-examined the three defense witnesses. The parties collectively moved ninety-six exhibits into evidence. Before the second Charge Conference on Monday, September 23, 2019, Plaintiff voluntarily dismissed the remaining individual Defendants. See Order dated September 23, 2019.

Plaintiff claimed Defendant First Data Corporation violated the Americans with Disabilities Act by "forcing" him out on medical leave and revoking his remote access. His second claim was that First Data violated the Family and Medical Leave Act by terminating his employment instead of reinstating him. On Monday, September 23, 2019, the parties conferred with the Court on the proposed jury instructions. The parties had the opportunity to object to the proposed jury instructions and the jury verdict sheet. Trial Proceedings Transcript, Exhibit 1, 866:18-890:23. The parties agreed that the following two substantive questions would appear on the jury verdict sheet (in addition to damages):

1.    Is First Data liable under the ADA for requiring Plaintiff to take medical leave?

2.    Is First Data liable under the FMLA for terminating Plaintiff's employment?

*Id.* at 886:24-887:5; ECF No. 132.

The Court charged the jury on the morning of Tuesday, September 24, 2019, and the jury began deliberations. After requesting exhibits to review and asking a question regarding one of the jury instructions, the jury returned a verdict for First Data later that afternoon, answering both substantive questions on the verdict sheet in the negative. ECF No. 132.

36142536.5 11/05/2019

Having lost, Plaintiff now moves for a new trial arguing nine separate unpersuasive grounds for relief, all of which lack support in the record and the law. There is substantial evidence in the record supporting the jury's verdict that First Data did not violate either the ADA or the FMLA. The witnesses testified that Plaintiff was placed on leave for a variety of non-discriminatory factors, including his inability to perform his job functions, his medical incapacitation per his physician, and the desire for him to get better, all of which were supported by exhibits. The witnesses also testified that Plaintiff's inclusion in the reduction-in-force that impacted 361 other employees was for legitimate, non-discriminatory reasons and that the decision to include him in the RIF pre-dated his request to return from leave. The jury also heard Plaintiff testify that he **was not** terminated for taking FMLA leave or because he had cancer. Ex. 1, 672:1-673:20.

There is no basis for ordering a new trial and the clear weight of the evidence supported a defense verdict. Plaintiff's Motion for New Trial must be denied.[1]

## **LEGAL STANDARD**

The trial court should not grant a motion for new trial unless convinced "that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hill v. Quigley*, 336 F. Supp. 3d 283, 288 (S.D.N.Y. 2018), *aff'd*, 2019 WL 4197165 (2d Cir. Sept. 5, 2019) (citing *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 (2d Cir. 2001)); *see also Hemmerdinger Corp. v. Ruocco*, 2016 WL 5115337, at *2 (E.D.N.Y. Sept. 20, 2016), *aff'd*, 711 F. App'x 659 (2d Cir. 2017) ("A court considering a Rule 59 motion for a new trial, however, 'must bear in mind . . . that the court should only grant such a motion when the jury's verdict is egregious.'"). A new trial may be ordered if substantial errors were made in admitting

---

[1] Plaintiff already has filed a Notice of Appeal to the United States Court of Appeals for the Second Circuit. ECF No. 139.

or excluding evidence, or with the jury instructions. *Fleming v. Stradford*, 2018 WL 1033234, at *16 (S.D.N.Y. Feb. 22, 2018). It is improper to grant a new trial solely to give the movant a chance to try new litigation strategies. *Rowell v. Ferreira*, 2019 WL 4509048, at *4 (S.D.N.Y. Sept. 19, 2019) ("A Rule 59(a) motion is not a vehicle for taking a 'second bite at the apple.'").

It is well settled that a motion for new trial is not warranted when the outcome hinges on the jury's assessment of witness credibility. *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) ("Where the resolution of the issues depended on an assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."); *McKinney v. Cent. Hudson Gas & Elec. Corp.*, 632 F. App'x 37, 38 (2d Cir. 2016) (holding the jury verdict could not be set aside because the case hinged on witness credibility and the jury is owed substantial deference to make credibility assessments after hearing several days of testimony).[2]

In this case, the jury evaluated the credibility of the witnesses, virtually all of whom were called by Plaintiff in the order he chose. Plaintiff decided that he would be his last witness after eight other witnesses testified. The jury evaluated whether the witnesses were credible in explaining their reasons for requiring Plaintiff to take leave and the reasons for including him in the RIF. The jury also evaluated whether Plaintiff was credible in presenting his theories as to alleged disability discrimination and that the RIF was a "sham" to cover up discrimination.[3]

---

[2] Several of the cases cited by Plaintiff in his legal standard section did not grant new trials, including a decision out of the Ninth Circuit: *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174 (9th Cir. 1990) (district court abused its discretion by setting aside jury verdict and ordering new trial); *United States v. Masotto*, 73 F.3d 1233 (2d Cir. 1996) (affirming district court judgment and finding harmless error in jury instructions).

[3] It is astonishing that Plaintiff has the audacity to now claim that "[t]his case was never about whether or not the RIF was legitimate." ECF No. 138, p. 18, n.23. His statement is simply not true. For more than two years, Barger argued to this Court that the case is about whether the RIF is a sham. ECF No. 1, Compl., ¶ 267 ("Any attempt to justify Barger's termination as part of a company-wide reduction-in-force ("RIF") will be an *ex post-facto* re-writing of history to try to defend First Data's illegal termination[.]);" ECF No. 37, Rule 12(c) Mot., p. 12 ("The Defendants admit that Plaintiff's position was not eliminated as part of a reduction-in-force. The Defendants' deliberate misuse of the term 'reduction-in-force' is a red herring."); ECF No. 94-12, Pl.'s Opp'n Defs.' Mot. Summ. J., p. 17 ("There

# ARGUMENT

1.    **Plaintiff's Attempt to Relitigate Discovery Disputes Must Be Denied.** Plaintiff

argues he should receive a new trial because he was allegedly treated unfairly during discovery

and he should be allowed to reopen discovery for additional depositions. ECF No. 138, p. 2.[4]

These complaints are virtually identical to those he previously presented to the Court in Motions

to Compel, (ECF Nos. 46, 55), at oral argument before Magistrate Judge Bloom (ECF No. 62),

and in his Rule 72(a) motion seeking to overturn Judge Bloom's decision (ECF No. 64). Plaintiff

was unsuccessful on all of those motions. Magistrate Bloom's Orders dated June 12, 2018 and

September 4, 2018; ECF No. 86.

Plaintiff is not entitled to a new trial for motions he already lost. *Rafter v. Bank of Am.*,

2011 WL 5579029, at *1 (S.D.N.Y. Nov. 15, 2011), *aff'd sub nom. Rafter v. Fleet Bos. Fin.

Corp.*, 523 F. App'x 79 (2d Cir. 2013) (denying Rule 59 motion because it "seeks, among other

things, to relitigate discovery disputes that plaintiff lost"). Plaintiff's false allegation that First

Data behaved improperly during discovery also does not warrant a new trial. *Rivas v. Suffolk

Cty.*, 2010 WL 1286347, at *1 (E.D.N.Y. Apr. 1, 2010) ("A jury has returned a verdict in the

Defendants favor, the Court will not overturn that verdict simply because Rivas believes that the

Defendants engaged in dilatory tactics and discovery abuses."). "It is well-settled that Rule 59 is

---

is substantial evidence for a jury to consider as to whether or not the RIF is a façade unworthy of consideration as an excuse for illegal terminations. . . . First Data is always 'Riffing.'"); ECF No. 113, Pl.'s Resp. Opp. Defs.' Mot. in Limine, p. 6, ("First Data is a constant Ferris wheel with employees onboarding taking a ride and then debarking while others take their seat and there is no change, or possibly an increase, in the number riding at any point in time. At First Data, there is no 'reduction' in 'reduction-in-force'."). These filings previewed his opening statement, where he argued the RIF was a subterfuge, a smoke screen, and not a true reduction in head count because of accounting manipulation. He described the RIF as a "Ferris wheel" and promised to prove RIF terminations were not legitimate. Ex. 1, 48:25-50:20. During summation, he argued "it's not a real RIF, it's a rotation in force and it's being used for accounting purposes and for legal defense purposes, and it's not for showing up in the financial statements." *Id.,* 892:24-894:5.

[4] Plaintiff cites no case law to support his untenable position and cites only one case (*Reilly v. Natwest*) that does not involve Rule 59, but instead generally analyzes the already-litigated issue of the obligations of a Rule 30(b)(6) witness. Aside from the one irrelevant citation to *Reilly*, Plaintiff does not cite to a single case in the entirety of Parts A-G of his Motion.

not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

**2.**     **Plaintiff is Not Entitled to a New Trial to Remedy His Strategic Mistakes.** As another ground for a new trial, Plaintiff claims witnesses testified in a manner contrary to First Data's Answer. ECF No. 138, p. 3. Defendant denies the accusation that its witnesses testified contrary to its Answer.[5] To the extent Plaintiff believes this to be true, his remedy was to impeach the witnesses at trial and then allow the jury to determine the credibility of their testimony. Plaintiff never once impeached a First Data witness during trial with a so-called admission. If Plaintiff made mistakes in the way he conducted his examinations, the remedy is not a new trial. There is no remedy available to him. *Levin v. Gallery 63 Antiques Corp.*, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007) ("Motions for reconsideration allow the district court to correct its own mistakes, not those of the [p]arties.").

**3.**     **The Court was Not Required to Explain its Denial of Plaintiff's Motion for Summary Judgment.** Plaintiff next argues he is entitled to a new trial because he was not "fully apprised of the Court's legal reasoning" for denying his Rule 56 summary judgment motion. ECF No. 138, p. 4. Plaintiff's motion for summary judgment was filed on February 28, 2019. ECF No. 94. The parties argued First Data's summary judgment motion on May 22, 2019. ECF

---

[5] Although not relevant for the purposes of denying this motion, Plaintiff deceptively argues that Defendant made admissions in its Answer, but Plaintiff fails to note that the cited "admissions" are not in fact wholesale admissions but are actually qualified (ECF No. 19, ¶ 81) or actually were expressly denied (*Id.* at ¶ 141). Plaintiff also alleges that "Defendants had admitted Plaintiff's work" after his surgery and that it was improper for there to be testimony that Plaintiff did not in fact work the entire time after his surgery. ECF 138, p. 3 n.6. To the contrary, Defendant never admitted that Plaintiff worked during that entire time period and Plaintiff misquotes his own Complaint, which stated "he *insisted* that he keep working." ECF No. 1, ¶ 118. Defendant's Answer admitted that Plaintiff "*insisted* that he keep working," but never admitted that Plaintiff in fact did keep working. ECF No. 19, ¶ 118. Lastly, Defendant properly denied that Plaintiff never received a "written performance review" (*Id.*, ¶ 80), which is supported by Plaintiff's admission to this fact. Ex. 1, 586:18 ("I've never had a performance review in my entire life."). His voluntarily, self-requested 360 review by his direct reports was not a written performance review. Ex. 1, 586:21-587:5.

No. 98. Between those dates and the first day of trial, Plaintiff never inquired about the status of his summary judgment motion, nor did he request a ruling. When the Court denied his motion for summary judgment, Plaintiff did not ask for an explanation of why his motion was denied.

The Federal Rules of Civil Procedure do not require district courts to provide reasons for denying summary judgment motions. F.R.C.P 56(a); *New York SMSA Ltd. P'ship v. Inc. Vill. of Muttontown*, 2013 WL 12383745, at *1 (E.D.N.Y. May 20, 2013) (citing *Johnson v. Jones*, 515 U.S. 304, 319 (1995) (recognizing that "[d]istrict judges may simply deny summary judgment motions without indicating their reasons for doing so")). Plaintiff's request for a detailed ruling on his summary judgment motion is not a proper request for relief under Rule 59 and must be rejected.

**4.      Substantial Evidence Supports the Jury's ADA Verdict.** Plaintiff had the burden to prove he suffered an adverse employment action and was discriminated against on the basis of his disability. *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019). He failed to meet his burden.

Here, the jury was properly instructed that it first needed to determine if Plaintiff had suffered an adverse employment action. ECF No. 131, pp. 8-9. If the jury determined that Plaintiff had suffered an adverse employment action, then it had to decide if Plaintiff was a qualified individual who was able to perform the essential functions of his job. *Id.*

There was ample evidence in the record for the jury to conclude that Plaintiff had not suffered an adverse employment action and that even if he had, he was nonetheless not qualified to perform the essential functions of his job. For example, Dr. Baddour and Nurse Parrish testified by way of deposition about the debilitating nature of Plaintiff's condition post-surgery. Ex. 1, 255:25-284:13 (Baddour), 848:9-852:10 (Parrish). The Certification of Healthcare

Provider Form completed and signed by Plaintiff's physician on December 13, 2016, indicated

Plaintiff had been completely incapacitated (i.e., unable to perform his job) since October 22,

2016. Compilation of Admitted Trial Exhibits, Exhibit 2, Def. Ex. 154. This was consistent with

text messages between Joe Plumeri and Plaintiff that revealed how serious his health condition

was. Ex. 2, Def. Ex. 310. Anthony Marino testified about Plaintiff's medical condition when he

and Plumeri visited him. Ex. 1, 391:2-19. Most telling was the text message exchange between

Marino and Plaintiff that detailed Plaintiff's health condition where Plaintiff revealed that he

might be dying and asked Marino to help him with financial details. Ex. 2, Def. Ex. 115. The

jury heard evidence about Plaintiff's conduct and performance after his September 6, 2016

surgery. Ex. 1, 192:9-25 (Johnson), 215:8-220:22 (Johnson), 392:1-398:13 (Marino); Ex. 2, Def.

Exs. 104, 108, 110, 111, 115, 117. The jury also heard evidence that Plaintiff was not performing

his work duties after his September 2016 surgery. *Id.* The evidence also demonstrated that

Plaintiff was not working full-time despite his claims to the contrary. *Id.* Finally, Plaintiff

admitted that Marino put him on leave because he cared about him and wanted him to get better.

Ex. 1, 594:21-25, 708:19-22. The jury's verdict finding First Data did not violate the ADA is

supported by the substantial evidence in the record.

    **5.**    **Plaintiff's Jury Intimidation Arguments Are Unavailing.** Plaintiff argues that

because Defendant's counsel allegedly intimidated the jury he is entitled to a new trial.[6] This

argument fails because Plaintiff did not object during Defendant's summation. *Guzman v. Jay*,

---

[6] Plaintiff's comparison of Plumeri to a "Godfather" who would "take care" of people must be viewed in proper context. First Data argued in summation that Plumeri had "taken care" of Plaintiff for over 30 years by helping him find gainful employment. Ex. 1, 976:12-977:4. The term "take care of" was not used in a threatening manner or in the context of implying physical harm. The presentation to the jury must be viewed in its entirety, not in isolation, and where the "jury's verdict finds substantial support in the evidence, counsel's improper statements will frequently be *de minimis* in the context of the entire trial." *Marcic*, 397 F.3d at 124. Ironically, Plaintiff compared his relationship with Plumeri to "Batman and Robin," but claims extreme prejudice when First Data did the same with a comparison. There is no evidence that any remarks by counsel intimidated the jury into finding in favor of First Data.

303 F.R.D. 186, 195 (S.D.N.Y. 2014) ("[E]ven if the remarks were improper, the Court finds that it had no more than a *de minimis* effect on the trial, and that [movant's] arguments to the contrary are seriously undercut, if not waived, by counsel's failures to lodge a contemporaneous objection and to raise this issue before his reply brief"); *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 127-28 (2d Cir. 2005) (affirming denial of motion for new trial and noting "to the extent that [trial counsel's] statements were improper, they were not objected to, and occurred in the context of a summation spanning thirty-seven pages of trial transcript, at the end of a week-long trial in which voluminous evidence was introduced that sufficed to support the jury's verdict"). Plaintiff's failure to object during closing precludes his request for a new trial.

6.    **Plaintiff's Theory of Witness Intimidation is Unsupported by Any Evidence.**

Plaintiff next accuses Defendant's counsel of witness tampering, an accusation that was brought to the Court's attention by Defendant's counsel. ECF No. 138-3. Specifically, Plaintiff contends that Ed Labry, the former CEO of First Data, was intimidated from testifying at trial by Defendant's counsel. Noticeably, Plaintiff fails to supply an affidavit from Labry that would support this contention. Plaintiff's arguments, which impugn the integrity of Defendant's counsel, improperly and exclusively rely on Plaintiff's own personal beliefs.

If Plaintiff thought Labry's testimony was critical to his case, then he should have preserved that testimony by deposing him. His failure to obtain testimony from a witness he now believes was relevant to his case is not sufficient grounds for a new trial. *See Levin v. Gallery 63 Antiques Corp.*, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007) ("Motions for reconsideration allow the district court to correct its own mistakes, not those of the [p]arties.").

As if his accusation of improper conduct were not enough, Plaintiff misleads this Court as to the scope of Labry's possible testimony. Plaintiff represents that Labry would have testified

about "his observations of Plaintiff's performance and value within the organization while Mr. Labry was CEO." ECF No. 138, p. 7. Labry was never CEO when Barger worked at First Data. Rather, Frank Bisignano was the CEO at the time Plaintiff was hired. Labry only knew Plaintiff from the First Data Way programs that were led by Marino. Ex. 1, 388:1-24 (Marino), 528:9-13 (Bisignano).

By Plaintiff's own admission, Labry has no knowledge about the circumstances surrounding Plaintiff's leave of absence or his inclusion in the RIF and would have only testified about his observations of Plaintiff's performance years before the relevant events to this lawsuit. ECF No. 138, p. 7. Where a witness's testimony would not have affected the jury's decision, even if there were intimidation (which does not exist here), it is not a basis for a new trial. *Anderson v. New York*, 2012 WL 4513410, at *5 (S.D.N.Y. Oct. 2, 2012) (denying motion for new trial based on witness intimidation because "even if [witness] was intimidated into not testifying at trial" she was a "tangential witness" whose absence did not prevent plaintiff from "fully and fairly presenting her case").

7.     **There is No Basis for Judge Block to Recuse Himself.** Plaintiff argues that if a new trial is granted, Judge Block must recuse himself because of an allegedly improper relationship with Lou DiLorenzo (Defendant's counsel). Plaintiff claims that the judge had an off-the-record conversation with *all* counsel about a time he and DiLorenzo met each other when they sat next to each other on a bus ride. ECF No. 138, p. 8. Plaintiff alleges he was somehow prejudiced by this encounter. Plaintiff presents no case law supporting recusal under these facts.

There are specific factors listed in 28 U.S.C. § 455(b) requiring recusal, like when a judge has personal knowledge of disputed facts or where a judge has a financial interest in the case's outcome. *Id.* at (b)(1), (b)(3). Plaintiff does not allege that any of the factors under

§ 455(b) apply here. Rather, Plaintiff states in conclusory fashion that the Court's impartiality can be questioned under § 455(a), an outrageous claim in light of the Court's extreme patience with Plaintiff's counsel's chaotic and disorganized litigation of this matter.

Justice Kennedy explained the high bar requiring recusal, stating § 455(a) "is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings" and that recusal should only occur if the judge "harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky v. United States*, 510 U.S. 540, 557 (1994) (Kennedy, J., concurring). The test for recusal is therefore an objective test that looks at whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). The strong presumption of impartiality can only be overcome by sufficient evidence to the contrary. *Wolfson v. Palmieri*, 396 F.2d 121, 126 (2d Cir. 1968).

Here, Plaintiff's argument for recusal is based on one interaction between Judge Block and Defendant's counsel on a bus ride years ago. The argument that recusal is warranted by a mere one-off acquaintance is unsustainable and must be rejected. *See Bailey v. Broder*, 1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997) ("Moreover, it is well settled that a judge's acquaintance with a party, an attorney or a witness, without some factual allegation of bias or prejudice, is not sufficient to warrant recusal."). The Second Circuit has emphasized that a judge has a duty *not to recuse* himself unless the facts warrant it, and this duty is as strong as the duty to do so when warranted. *Lovaglia*, 954 F.2d at 814-15. Plaintiff's unjustified attack on the integrity and impartiality of Judge Block must be rejected.

36142536.5 11/05/2019

**8.** **There is No Evidence of Jury Confusion During Deliberations.** Plaintiff fabricates a story of jury confusion that is unsupported by the written jury instructions and transcripts. During deliberations, the jury submitted a question to the Court inquiring whether a sentence in the jury instructions was "fact" or "opinion." ECF No. 132, p. 2. The question related to a sentence in the jury instructions that read: "The plaintiff had not exhausted his 12-week entitlement to leave time before he was terminated on January 13, 2017." ECF No. 131, p. 10. The Court first addressed this matter with counsel and stated how he intended to respond to the jury. Plaintiff's counsel agreed with the Court that the jury instruction represented a statement of fact. Ex. 1, 1078:11-12.

The Court then called the jury into the courtroom. After confirming the question, the Court advised that the sentence in question was a statement of fact. Ex. 1, 1080:23. While still in the courtroom, the jury began discussing this matter amongst themselves. The Court sent the jury back to the jury room to continue deliberations in private. Ex. 1, 1081:16-21. The Court also instructed the jury that if it had additional questions about this topic, it could submit another question. Ex. 1, 1081:21-25. The jury did not submit any additional questions.

Plaintiff has no basis for claiming "the Court never clearly instructed the jury" on this issue. ECF No. 138, p. 10. The jury instruction was clear, the jury's question was clear, and the Court's response was clear. Moreover, before the jury announced its verdict, the Court asked, and the foreperson confirmed, that the jury needed no further clarification on this issue. Ex. 1, 1082:20-23. There is no evidence that the jury was confused on this issue and it cannot be a basis for granting a new trial.

36142536.5 11/05/2019

**9.    The Jury Instructions are Not Erroneous.** Finally, Plaintiff claims he is entitled

to a new trial under Rule 59(a) because the Court improperly instructed the jury regarding

Plaintiff's claims under the FMLA for the following reasons:

- The Court failed to instruct the jury regarding Plaintiff's claim of retaliation by First Data because he exercised his FMLA right to be restored to his position or an equivalent position. ECF No. 138, p. 12;

- The jury instruction regarding Plaintiff's claim of interference was inconsistent with the law and the factual burden of proof by First Data. *Id.*;

- The jury instruction failed to properly instruct on the law regarding 29 C.F.R. §§ 825.214 and 825.216. *Id.*;

- The jury instruction failed to instruct that First Data was obligated to restore Plaintiff to his job upon acceptance of his physician's return to work authorization. *Id.*; and

- The inclusion of "legitimate business reason" in the instructions was an error because it is not a defense to Plaintiff's claims. *Id.*

Plaintiff's attack on the jury instructions fail for a multitude of reasons:

1.    Plaintiff failed to object to the jury instructions.

2.    The jury instructions accurately reflect the applicable law.

3.    The Court has broad discretion to fashion jury instructions.

4.    Even if the instruction might be considered erroneous, the result was harmless error.

**9.1    Plaintiff's Failure to Object to the Jury Instructions is Fatal to His Motion.**

Plaintiff first argues the Court failed to instruct the jury that under the FMLA, he was only

required to prove that his desire to return to work was a "motivating factor" in Defendant's

decision to terminate his employment. ECF No. 138, pp. 12-14. Plaintiff also claims the Court

failed to give a jury instruction on his FMLA retaliation claim. ECF No. 138, pp. 15-18. Plaintiff

had ample opportunity to raise his issues with the Court and object, but he failed to do so during the two charging conferences on jury instructions. Ex. 1, 619:1-633:11, 866:18-890:23. Plaintiff also failed to object to these issues in the letter he submitted to the Court on September 25, 2019, in which he objected to certain other aspects of the proposed jury instructions that the Court circulated to the parties on Sunday, September 22, 2019. ECF No. 127.

Under Rule 51, a party waives his right to assign as error any jury instruction unless he objects "on the record and out of the jury's hearing before the instructions and arguments are delivered." Rule 51 is strictly applied:

> Under Rule 51 of the Federal Rules of Civil Procedure, a party in a civil action must make specific objections to jury instructions before the jury retires to deliberate. The failure to so object results in waiver, in which case this court may review the instruction for "fundamental error" only. Fundamental error is a more exacting standard than the "plain error" standard in the criminal context and must be "so serious and flagrant that it goes to the very integrity of the trial."

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 61 (2002) (internal citations omitted); *see also Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002) (litigants do not get another opportunity to assign as error an allegedly incorrect charge). Because Plaintiff never objected to the Court's proposed jury instructions on the issue of motivating factor or retaliation, he has waived his right to object that the alleged failure is grounds for a new trial. In addition, there is no error with the FMLA instructions the Court gave to the jury.

**9.2** **The Jury Instructions Accurately Reflect the Applicable Law.** As noted above, Plaintiff did not object that the jury instructions did not separate his alleged interference and retaliation FMLA claims. Nonetheless, Plaintiff contends the FMLA instruction was a "blend of retaliation and interference standards and the result was an instruction that was

inconsistent with, and misstated, the law." ECF No. 138, p. 12. Not so. With respect to the

FMLA, the Court instructed the jury as follows:

> Plaintiff also makes a claim under the FMLA against First Data.
> The FMLA requires that employers allow eligible employees to take up to 12 weeks of unpaid medical leave each year. An eligible employee may take this leave if he or she is unable to work due to a serious health condition. The parties agree that plaintiff was an eligible employee and that his cancer was a serious health condition.
>
> The plaintiff had not exhausted his 12-week entitlement to leave time before he was terminated on January 13, 2017. That termination therefore was unlawful unless First Data proves by the preponderance of the evidence that the plaintiff would have been terminated even if he had not been on leave. In that respect, First Data argues that the decision to terminate plaintiff was part of a reduction-in-force. Therefore, if you find that the termination of plaintiff's employment with First Data would have occurred because of First Data's reduction-in-force, and was not merely a cover-up for a decision to terminate plaintiff because he had taken FMLA leave, then you must find for the defendant.
>
> In determining whether you believe First Data's stated reason for terminating plaintiff's employment, you may not question First Data's business judgment. That is, you cannot find an FMLA violation simply because you disagree with the business sense of First Data or believe its decision was harsh or unreasonable. In other words, you are not to consider First Data's wisdom.

ECF No. 131, pp. 10-11.

This instruction accurately captured the FMLA law applicable to this case as in 29 U.S.C.

§ 2614(a)(3)(B), and the implementing regulations in 29 C.F.R. §§ 825.214 (Employee Right to

Reinstatement) and 825.216(a) (Limitations on an Employee's Right to Reinstatement).

Plaintiff takes issue that the Court did not quote verbatim language from the regulations

in the jury instructions. ECF No. 138, pp. 12-18. The Court properly rejected Plaintiff's request

for such an instruction, believing that the lengthy and verbose regulatory language was

unnecessary. The Court stated: "It's wordy. We're giving the jury a pristine charge that I spent a

lot of time reducing to simple language so the jury can understand it." Ex. 1, 872: 3-6. "[A] trial court has considerable discretion in the formulation and style of jury instructions." *Patalano v. Am. President Lines*, 250 F. App'x 425, 427-28 (2d Cir. 2007) (holding the trial court did not abuse its discretion even where requested wording might have conveyed more clearly the ultimate question).

Plaintiff also contends that "no reasonable jury could conclude that Plaintiff would have been terminated before January 10, 2017." ECF No. 138, p. 21. The overwhelming evidence proves him wrong. Numerous witnesses testified as to the circumstances that led to Plaintiff being included on the RIF list before the date he submitted his return to work note. Ex. 1, 164:1-176:17 (Whalen), 329:13-333:11 (Charron), 351:9-17 (Charron), 369:10-370:16 (Charron), and 441:7-445:25 (Marino), 455:13-456:23 (Marino). This testimony is also supported by exhibits that were introduced at trial. Ex. 2, Def. Exs. 182, 214, 273. There is no evidence to support Plaintiff's claim that the jury instruction misled the jury.

**9.3    The FMLA is Not a Strict Liability Statute.** Plaintiff is wrong as a matter of law that the FMLA provides for strict liability or otherwise guarantees an absolute right to reinstatement. It was therefore proper for the jury instructions to exclude an instruction on strict liability. The FMLA provides that employees are not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). The regulations are in accord: "an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). Nonetheless, Plaintiff argues yet again that the Court erred by not instructing the jury that because Plaintiff was on FMLA leave, Defendant was required to

reinstate him no matter what once he submitted his physician's return to work authorization. According to Plaintiff, "the RIF is not a defense" to the interference claim so the inclusion in the instruction about the "legitimate business reason" was also erroneous. ECF No. 138, p. 21. This Court has twice rejected this strict liability theory for FMLA interference liability in denying Plaintiff's Rule 12(c) and Rule 56 motions.[7] Plaintiff's requested instruction would have been contrary to the law. Therefore, the Court properly excluded a jury instruction as to strict liability under the FMLA interference claim.

### 10. Substantial Evidence Supports the Jury's FMLA Verdict for Defendant.

Defendant presented substantial evidence supporting the reason for the decision to include Plaintiff in the RIF—namely that he was amongst the highest paid employees in the Company, which lawfully determined that it did not need a Senior Vice President at his salary level running the sales training group. Ex. 1, 164:1-176:17 (Whalen), 329:13-333:11 (Charron), 351:9-17 (Charron), 369:10-370:16 (Charron), and 441:7-445:25 (Marino), 455:13-456:23 (Marino), 540:3-548:7 (Bisignano); Ex. 2, Def. Exs. 182, 214, 273. The jury heard evidence that instead of 70 employees in the group while Plaintiff was in charge, the sales training group is now down to 20 employees, is now led by a director earning a fraction of Plaintiff's compensation, and costly programs that Plaintiff created while leading the group have been eliminated. Ex. 1, 329:21-330:2 (Charron), 432:2-436:23 (Marino), 810:13-812:23 (Stamey). First Data met its

---

[7] In his Motion, Plaintiff cites to the same few misguided cases from other jurisdictions and raise the same failed arguments advanced in his 12(c) and summary judgment motions. *Compare* ECF No. 138, pp. 15-20, *with* ECF Nos. 37 and 94. Plaintiff again makes the unsupported argument about *Chevron* deference and how the Department of Labor was not permitted to issue 29 C.F.R. § 825.216(a). The case law rightfully interprets that there is no strict liability theory for FMLA interference claims. *See, e.g.*, *Bergman v. Kids By the Bunch Too, Ltd.*, 2018 WL 1402249, at *9 (E.D.N.Y. Feb. 16, 2018) (holding the FMLA provides "no greater job security than that to which the employee would have been entitled to prior to taking leave.") (quoting *Hale v. Mann*, 219 F.3d 61, 66 (2d Cir. 2000); *Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, 2017 WL 1184278, at *9 (S.D.N.Y. Mar. 29, 2017) ("The right to reinstatement under the FMLA is not absolute."); *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010) ("[T]he FMLA is not a strict-liability statute."). Defendant also incorporates its arguments in opposition to Plaintiff's Rule 12(c) and Rule 56 motions. ECF Nos. 37 and 94.

burden of proving that Plaintiff would have been included in the RIF regardless of whether he had been on leave. 29 C.F.R. 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").

Plaintiff claims the jury's FMLA verdict was contrary to the overwhelming weight of the evidence. This argument is dependent upon a fundamental misapplication of the relevant regulation to the facts of this case. Plaintiff asserts that the regulation First Data relied on is inapplicable because "restoration for a job slated for lay-off when the employee's original position is not would not meet the requirements of an equivalent position." 29 C.F.R. § 825.216(a)(1). Plaintiff claims without any evidentiary support that because he should have been restored to his *original* position that was not slated for layoff, First Data interfered with his FMLA rights. ECF No. 138, p. 23. That is not this case, nor is there evidence to support the application of this portion of the regulation to this case.

The regulation contemplates a scenario where a plaintiff returns from leave but is restored to a *different* position—slated to be eliminated—while the *original* position is not eliminated. That scenario did not occur in this case. The SVP Sales Training position was eliminated. Ex. 1, 463:3-6. The jury heard testimony that Robin Ording assumed some of Plaintiff's job duties, in addition to all of her other job duties. Ex. 1, 432:2-436:23. Plaintiff presented no facts supporting this fictional theory that he was returned to a different position, which was slated for layoff, while his original position of SVP Sales Training remained available. The jury heard evidence that Plaintiff was notified that his position, SVP Sales Training, had been eliminated. Ex. 1, 204:9-13; Ex. 2, Def. Exs. 182, 214.

There was absolutely no evidence that Plaintiff was to be restored to a different position that was slated for layoff and that his original position would remain. The jury heard multiple witnesses testify that Plaintiff's SVP position running sales training, which he also testified included his sales transformation activities, no longer exists. The evidence is that the decision to include Plaintiff in the RIF was not in response to his cancer. Charron testified that he discussed with Plaintiff his concerns with his salary and role in the Company in 2015, before Plaintiff was diagnosed with cancer. Ex. 1, 331:6-332:19. Whalen and Johnson testified about discussions to replace Plaintiff beginning in 2015 and that Plaintiff was aware of these discussions. Ex. 1, 168:10-21 (Whalen), 188:4-13 (Johnson); Ex. 2, Def. Ex. 77. The overwhelming evidence demonstrated that Plaintiff would have been included in the RIF regardless of whether he had been at work or on leave. That is an exception to the requirement that First Data was required to restore him to his position or an equivalent position when his FMLA leave ended. First Data met its burden to prove that Barger would not have been restored regardless of if he had been working or on leave. 29 C.F.R. § 825.216(a). The jury was justified in returning its verdict for First Data on Plaintiff's FMLA claim.

## CONCLUSION

Plaintiff's Motion fails to demonstrate that the jury's verdict was egregious or that the outcome of the trial was a miscarriage of justice. As demonstrated above, there was substantial evidence to support the jury's verdict on both the ADA and FMLA claims. There is no basis for a new trial, and therefore, Plaintiff's Motion must be denied.

36142536.5 11/05/2019

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Gary B. Eidelman*
Gary B. Eidelman (admitted *pro hac vice*)
Michael P. Cianfichi (admitted *pro hac vice*)
500 E. Pratt Street
Baltimore, Maryland 21202
T:  (410) 332-8975
gary.eidelman@saul.com
michael.cianfichi@saul.com

Gillian A. Cooper
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102
T:  (215) 972-7861
gillian.cooper@saul.com

**New York Office**
1270 Avenue of the Americas, Suite 2005
New York, New York 10020

**BOND, SCHOENECK & KING PLLC**
Louis P. DiLorenzo
600 Third Avenue 22nd Floor
New York, New York  10016-1915
T:  (646) 253-2315
ldilorenzo@bsk.com

*Attorneys for Defendant,*
*First Data Corporation*

Dated:  November 5, 2019

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served on the following

counsel via ECF:

David A. Zeitlin, Esquire
Zeitlin & Zeitlin, P.C.
50 Court Street, Suite 506
Brooklyn, New York  11201
T:  (718) 522-5644
david@zeitlinlawfirm.com
*Attorneys for Plaintiff*

Shawn E. Shearer, Esquire
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue, Suite 155-254
Dallas, Texas 75204
T:  (214) 434-1594
shawn@shearerlaw.pro
*Attorneys for Plaintiff*

*/s/ Gary B. Eidelman*
Gary B. Eidelman

Dated: November 5, 2019

36142536.5 11/05/2019