*1036*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
STEVEN B. BARGER,                 :  17-CV-4869(FB)
                                  :
          Plaintiff,              :
                                  :
      -against-                   :  United States Courthouse
                                  :  Brooklyn, New York
                                  :
                                  :
                                  :
FIRST DATA CORPORATION, et        :  Tuesday, September 24, 2019
al.,                              :  10:00 a.m.
                                  :
          Defendants.             :
                                  :
                                  :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR JURY TRIAL
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES SENIOR DISTRICT JUDGE, AND A JURY.

A P P E A R A N C E S:

For the Plaintiffs:      THE LAW OFFICE OF SHAWN SHEARER, P.C.
                         Attorneys for the Plaintiffs -
                         Steven B. Barger
                            3839 McKinney Avenue
                            #155-254
                            Dallas, Texas 75204
                         BY: SHAWN SHEARER, ESQ.


                         ZEITLIN & ZEITLIN, P.C.
                         Attorneys for the Defendants -
                         First Data Corporation, et al.
                            50 Court Street
                            Suite 506
                            Brooklyn, New York 11201
                         BY: DAVID A. ZEITLIN, ESQ.

*1037*

A P P E A R A N C E S: (Continued.)

For the Defendants:        SAUL EWING ARNSTEIN & LEHR, LLP
                           Attorneys for the Defendants -
                           First Data Corporation, et al.
                               500 E. Pratt Street
                               Baltimore, Maryland 21202
                           BY: GARY B. EIDELMAN, ESQ.
                               GILLIAN A. COOPER, ESQ.


                           BOND SCHOENECK & KING, PLLC
                           Attorneys for the Defendants -
                           First Data Corporation, et al.
                               330 Madison Avenue
                               39th Floor
                               New York, New York 10017
                           BY: LOUIS P. DILORENZO, ESQ.


Court Reporter:  Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                 Official Court Reporter
                 Telephone: (718) 613-2487
                 Facsimile: (718) 613-2694
                 E-mail: Anthony_Frisolone@nyed.uscourts.gov


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

*Jury Charge* 1038

1          (In open court.)

2          COURTROOM DEPUTY:  Civil cause on trial.  All

3    counsel present and all parties are present.

4          THE COURT:  So is there any reason why we can't

5    bring the jurors in and give them the charge?

6          MR. SHEARER:  I have one quick housekeeping matter.

7          THE COURT:  Do it quickly.

8          MR. SHEARER:  The very last exhibit that was

9    admitted.  We were checking exhibit lists and you marked 91 as

10   admitted but it was 92 that was admitted.

11         THE COURT:  I worked that out.

12         MR. SHEARER:  We worked that out.

13         THE COURT:  Good.  So the exhibit list is okay now,

14   right.

15         MR. SHEARER:  91 is now 92 is in.

16         THE COURT:  Okay.

17         COURTROOM DEPUTY:  All rise.

18         (Jury enters courtroom at 10:36 a.m.)

19         COURTROOM DEPUTY:  You can all be seated.

20         THE COURT:  Good morning, everybody.

21         THE JURY: (Collectively) Good morning.

22         THE COURT:  So we're sort of not equidistant here.

23   I don't know if you should move over a little bit or I guess

24   we can do it like this.

25         So why am I standing here?  Because I think it's

---

*Jury Charge*                                                    *1039*

1    better for me to come down now and explain the law to you just

2    like, you know, I was a professor at a law school.  And I

3    think when the judge is hovering over you, you pay more

4    attention; right?

5              The first time I charged a jury a couple hundred

6    years ago, I did it in the traditional way up on the mount.

7    Judges don't like to come down.  And Juror No. 7 was sound

8    asleep.  It wasn't you, it was somebody else.  And so, I find

9    that when the judge is here you can hear me better and I think

10   that it makes for a more effective way for me to explain the

11   law to you, okay?  But if you don't think so, after the case

12   is over, I'm going to come and talk to you and say, Judge go

13   back up on the mount.  I'm always open to constructive

14   suggestions.  We always like to improve on what we do.

15   Because the jury trial, as you know now, really requires the

16   two of us to work together collaboratively and you can

17   understand why now that you've seen it all unfold.

18             So, at this point in the trial, I'm going to turn

19   the courtroom over to you folks and you're going to give me my

20   marching orders instead of other way.  I don't know how long

21   it's going to take for you to deliberate.  I don't know how

22   long, you may want to stay.  You can decide if you want to

23   come early if you don't have the case completed today.  If you

24   want to come back, you can back at 9:30, 9:00 o'clock whatever

25   is comfortable for you folks.  So this is your show now.

*Jury Charge*                                                      1040

1        So the instructions I'm going to give you are

2   basically in three parts.

3        The first part will explain the general principles

4   that apply to just about all civil cases.

5        The second part is going to talk about these claims.

6        And then the third part will instruct you about how

7   you go about your deliberations, selection of a foreperson,

8   and administrative things like that, right?  If you want to

9   communicate with me, if you want to see the exhibits, if you

10  want to hear any more testimony.  So it's not going to take

11  terribly long.

12       And while this case had lots of exhibits, in the

13  final analysis, there's just a couple of simple questions for

14  you to answer and you probably can figure out what they are

15  going to be already without me even telling you.  It's fine to

16  take those notes.  But, once again, if you're not clear about

17  anything that I've explained to you, you don't guess, you

18  don't speculate, just come back and ask.  We even have

19  Mr. Frisolone taking down all of my words of wisdom now.  So

20  everything that's happened here is available to you if you

21  want to hear testimony back.  If you want to hear more about

22  the charge that I'm going to give you.  But takes notes by all

23  means if you want to.  If that's your comfort level, then you

24  may feel that's helpful to you.

25       So now I have to make an executive decision.  I got

*Jury Charge*                                              1041

1  a cataract operation, I got these leaders.  And I'm in

2  between, I don't know whether to use them or not when I look

3  at this.  The charge I have is in writing, but I obviously

4  don't really adhere to the written word because I stop and I

5  emphasize things to you and explain things to you as we go

6  along.  But I'm going to give you a copy of this charge which

7  you can use as a guide and I think that it would be useful to

8  you.  But bear in mind, that what I'm telling you is the real

9  charge.  Substantively, it shouldn't be any different than the

10 written charge, right, but use it only as an aid and what I'm

11 telling you now is the real charge, okay?

12          So you know that your duty as jurors, as I told you

13 in my opening remarks and throughout the trial, is to find the

14 facts from all the evidence in the case.  Once again, you are

15 the sole judges of the facts and it is for you and you alone

16 to determine what weight to give the evidence, to resolve such

17 conflicts as they have appeared in the evidence, and to draw

18 such inferences as you deem to be reasonable and warranted

19 from the evidence.

20          Now, you remember I told you the difference between

21 guesswork and speculation.  You don't want to do that, all

22 right?  But you can draw inferences from the evidence.  There

23 is a big difference, you see.  Logical inferences that flow

24 from the evidence is one thing.  Idle speculation is a

25 dangerous thing.  And I gave you a pretty good example of what

*Jury Charge*                                                    1042

1   happened here because the case started with the individuals

2   named as defendants.  They no longer are defendants and you

3   can speculate from here to doomsday, I can tell you right now

4   you probably won't be correct.  So you can mindful of that.

5   After you can ask me.

6           Therefore, with respect to any question concerning

7   the facts, it is your recollection of the facts that controls,

8   not counsel's recollection as expressed in the opening or

9   closing statements, or even my recollection if I made any

10  references to testimony.  I may have wondered once or twice

11  and you understand that.  So a lot of what I'm telling you now

12  is repetitious.  It's okay to be repetitious when we're

13  summing up now.

14          You know exactly what I'm doing right now to

15  instruct you on the law.  You must apply the law in accordance

16  with these instructions to the facts as you fund them, this is

17  the seventh time you've heard that.

18          If any of the lawyers stated a legal principle which

19  differs from any that I'm going to tell you about in these

20  instructions, you must be guided solely by what I instruct you

21  about the law.  You should not see or allow any instructions

22  as alone stating the law but you consider my instructions as a

23  whole.

24          So, you know, you got to apply the law that I give

25  to you.  And Congress makes these statutes, we may other may

1   not agree with them all the time.  We all have differences of

2   opinions, but we have to keep in mind when it comes to the

3   legal system you have to accept the law whether you like it or

4   not.  A lot of laws I don't like but I have to apply them

5   because it is my oath of office, so you have to do the same

6   thing.

7           Since it is your job, not mine, to find the facts, I

8   neither expressed nor attempted to suggest an opinion of how

9   you should decide the facts of the case.  You should not

10  interpret anything I have said or done as expressing an

11  opinion about the facts.  And I told you I was going to

12  intervene and I did on a handful of occasions, not too often.

13  And I caution you whenever I spoke, whenever I asked

14  questions, that you are not to interpret that as my having an

15  opinion as to the credibility of the witnesses or any of the

16  facts in the case, right?

17          So now, we have to talk about sympathy or bias.  In

18  determining the issues of fact in rendering your verdict, you

19  should perform your duty with complete impartiality and

20  without bias, sympathy, or prejudice as to any party.

21          So here, I'm going to stop because this is a case

22  where sympathy could get in the way.  We all are sympathetic

23  to Mr. Barger, there's no question about that.  We ought to

24  be, otherwise we're not human.  But you got to put that aside.

25  You have to decide the case on the law, the facts, and the

*Jury Charge*                                          1044

1    evidence and we all wish him well.  But sympathy can't be part

2    of your deliberations.  And it's easy to be sympathetic when

3    you have somebody who is a sympathetic person, we understand

4    that.  And it's human to be that way, but you have to look at

5    the law here.  That's what counts, okay?

6           All of the parties expect that you will carefully

7    and impartially consider all the evidence, follow the law as

8    it is now being given to you, and reach such just verdicts

9    regardless of the consequences.

10          First Data is a corporation does not mean it is

11   entitled to any greater or lesser consideration by you.  All

12   litigants are equal before the law and corporations big or

13   small are entitled to the same fair consideration you would

14   give an individual.  Everybody's on the same level playing

15   field.  We don't have it in this case but we get a lot of

16   cases where there are officers, police officers, who testify.

17   And sometimes the jurors are surprised when I tell them that

18   they're just like any other witness.  And the if judge

19   testifies, the same thing, you size up the credibility and you

20   treat everybody the same, okay?

21          So now you must listen to the facts in this case

22   based solely on the evidence.  Those inferences, once again,

23   that can reasonably be draw from the evidence, not

24   speculation.

25          Now, let me tell what you evidence is.  So evidence

*Jury Charge*                                              1045

1   has been presented to you in the form of sworn testimony from

2   the witnesses and a lot of exhibits that have been received in

3   evidence by me during the course of the trial.  And, you know,

4   the fact that there are many exhibits is not unusual in a case

5   of this nature because a lot of inquiries had to be made about

6   the operations of the business and everything you heard about

7   that.  But we have made an exhibit list so you're not going to

8   be bombarded with 500 pieces of paper.  You'll have a list and

9   you can just call for whatever exhibits you may want to see

10  from that list, that works out well that way.  So you're going

11  to have that list in the jury room and you'll be able to use

12  that list to say, We want exhibit number so-and-so et cetera,

13  et cetera.  That should be helpful.  If there is any problem,

14  you come back and ask and we'll try to hip.

15          So certain other things are not evidence.  Arguments

16  or statements by the lawyers and testimony that has been

17  stricken by me, I think I did that once or twice or that, or

18  you've been instructed to disregard.

19          So now there are two types of evidence for you to

20  consider and they're both permissible.  One is called "direct

21  evidence" and one is called "circumstantial evidence."  Now,

22  you probably have heard of the phrase "circumstantial

23  evidence."  Everybody hears that phrase.  But I'm going to

24  explain to you the difference between direct and

25  circumstantial and you can consider both.

*Jury Charge*                                                        1046

1          So direct is pretty easy.  You have direct evidence

2   of me talking to you.  You have direct evidence of me taking a

3   not a martini, a glass of water.  What you see with your own

4   senses, et cetera, is direct evidence.

5          So the way we drive home circumstantial evidence

6   which is sort of one step removed from direct evidence is by

7   giving you an example.  And so, when you came to court today,

8   you have direct evidence of the weather.  I think we have the

9   sun out, it's a really nice time of year.  But you don't know

10  whether that sun is still shining or maybe something happened

11  and it's raining out.  If somebody walks into the courtroom

12  with a raincoat, they shouldn't do it, but let's assume they

13  do it.  You have direct evidence of somebody walking through

14  the door with a raincoat.  You still don't have direct

15  evidence of whether it's raining outside or sunny.  You're

16  becoming a little suspicious now, right?  Somebody else walks

17  into the courtroom with an umbrella dripping wet, you have

18  credible evidence of that.  But you still don't have direct

19  evidence of whether it is sunny or raining outside but you can

20  conclude based on those facts you can infer that indeed it's

21  raining outside.  So even though you don't have direct

22  evidence of that.  So that is really what circumstantial

23  evidence is all about.

24         On the basis of reason, experience, and God-given

25  common sense you infer the existence or nonexistence of a fact

1   or more established facts.  You hear on television all the

2   time circumstantial evidence, right?  But that's as simple as

3   that.  So you can do that but it's based upon facts that you

4   can then infer other facts and that's circumstantial evidence.

5           So you're permitted to draw from the fact which you

6   find to be proven such reasonable inferences once again as

7   would justified in light of your experience.  Use your common

8   in drawing inferences.  You are not permitted to engage in

9   mere guesswork or speculation.  I told you that 17 times.

10          So not only the question of fact that we don't have

11  any individual defendants, you heard a lot of names mentioned,

12  you can ask why weren't they called as witnesses?  That's

13  speculation all right.  For you all know they may be dead.

14  You have no idea, right?  Go based on the evidence in the

15  court.

16          So there are times when difference inferences may be

17  drawn from the facts whether proved by direct or

18  circumstantial evidence.  The plaintiff asks you to draw one

19  set of inferences while the defense asks you to draw another.

20  We have a lot of that in this case.  It is for to you and you

21  alone to decide what inferences you will drawn as the fact

22  finders.

23          Now, credibility I told you is an important part of

24  your fact-finding responsibility.  You are the sole judges of

25  the credibility or the believability of the witnesses and the

*Jury Charge*                1048

1   weight their testimony deserves.  You should carefully

2   scrutinize all the testimony given.  The circumstances under

3   which each with witness testified and every matter in evidence

4   that tends to show whether a witness is worthy of your belief.

5        Now, your decision in that respect may depend on

6   common sense things.  How the witness impressed you, was the

7   witness candid and forthright, or did the witness seem to be

8   hiding something, being evasive and suspect in some way.  How

9   did the witness's testimony on direct compare with the

10  witness's testimony on cross or redirect or re-cross?  Was the

11  witness insistent when the testimony was given or were there

12  contradictions.  Did the witness appear to know what the

13  witness was talking about and did the witness strike you as

14  someone who is trying to report that knowledge accurately?

15       How much you choose to believe any witness maybe

16  influenced by any bias that you may perceive the witness to

17  have.  If you find that any statement made by a witness was

18  false in whole or in part, you may disregard the particular

19  part you find to be false, or you may disregard the witness's

20  entire testimony as not worthy of belief.  So it's up to you,

21  and we had a lot of witnesses and you're looking at the

22  witnesses and making your notes.  So the credibility and

23  believability function is important.  Part of your

24  fact-finding responsibilities.

25       Now, you here about the burden of proof.  Let me

*Jury Charge*                                    1049

1    tell what you it is again.

2          The burden of proof in this civil case, unlike a

3    criminal case, which is proof beyond a reasonable doubt, is

4    what we call a "preponderance of the evidence."  You may have

5    heard the phrase beyond a reasonable doubt.  That is the

6    standard of proof required in a criminal trial does not apply

7    in a civil case, it just is.

8          So whatever I state in these instructions that a

9    party must prove something, it is implicit that the burden of

10   proof is the preponderance of the evidence.  I probably do

11   repeat it throughout the charge in any event.

12         To establish something by a preponderance of the

13   evidence, means to prove that it is more likely so than not

14   so.  You visualize those scales of justice if they tip ever so

15   much in the direction of the person that has the burden of

16   proof, that's what we're talking about.  So if the evidence

17   considered as a whole produces in your minds a belief that a

18   certain contention is more likely true than not true, then the

19   burden has been satisfied.  More likely true than not true.

20   But if the evidence does not produce that belief, either

21   because it convinces you that the contention is more likely

22   true than true, or because they weigh so evenly you cannot say

23   it is more likely true than not true then the burden has not

24   been satisfied.

25         In essence, a preponderance of the evidence means

1    the greater weight of the evidence.  That does not mean the

2    greater number of witnesses or the greater length of the time

3    taken by either side.  The determination is based on the

4    quality and persuasiveness of the evidence, that is, the

5    weight and effect it has on your minds.

6             In general, the plaintiff in a civil case has the

7    burden of proof, but for certain issues, the burden shifts to

8    the defendant.  There is a situation, one or two, which I'll

9    tell you about during course of these instructions where that

10   actually applies.  I'll tell you about that.

11            No matter which party has the burden of proof, the

12   burden of proof is always by the preponderance of the

13   evidence.  Whether it's the plaintiff's burden or the

14   defendant's burden in a couple of these situations that you'll

15   hear about.

16            Now, the claims.  So while we had hundreds of

17   documents, and don't think it appropriately so, it is the

18   nature of this case.  We've had a number of days of intense

19   testimony.  There was a lot for you to absorb.  I concur in

20   the assessment of the lawyers that I was really proud of the

21   way you paid attention to it.  And not always easy, not easy

22   for anybody to have to sit here every day for several days and

23   concentrate regardless of the nature.  And this was a case

24   that requires a lot of concentration.  A lot of exhibits, a

25   lot of e-mails, a lot of things you heard all about that.  But

1    when it comes down to the law, there's just a handful of

2    questions that you have to answer and the charge is not a

3    hundred pages, it's relatively short because of that.

4              So the plaintiff, Steven Barger, has sued the

5    defendant, First Data, for violating his rights under the

6    Americans with Disabilities Act which call by the acronym the

7    ADA, and under the Family Medical Leave Act which we refer to

8    as FMLA.

9              Now, as far as the ADA claim is concerned, here's

10   what the statute says.

11             The ADA provides that no covered entity shall

12   discriminate against a qualified individual with a disability

13   because of the disability of such individual in regard to job

14   application, procedures, the hiring, advancement or discharge

15   of employees, employee compensation, job training and other

16   terms, conditions, and privileges of employment.

17             Pretty good statute.  We all like the fact that

18   people with disabilities have this type of protection, right?

19   Now, the parties agree that First Data is a covered entity

20   under the ADA, no question about that.

21             Plaintiff claims that First Data intentionally

22   discriminated against him when it required him to take medical

23   leave.  First Data argues that it placed plaintiff on medical

24   leaving because he was not be a to perform his job.

25             Plaintiff's termination is not part of his ADA

1    claim.  It's not claimed he was terminated because of a

2    disability because of cancer.  The first thing you have to

3    decide is whether requiring plaintiff to take medical leave

4    was an adverse employment action.

5            Plaintiff claims it was an adverse employment action

6    because it reduced his compensation and deprived him of remote

7    access to First Data's systems.  There is no exhaustive list

8    of what constitutes an adverse employment action.  Reduction

9    in compensation obviously qualifies.  But an employee may

10   still suffer an adverse employment action even if he continues

11   to receive his compensation.

12           An adverse employment action can also be a

13   significant diminishment in work responsibilities and

14   reduction in benefits and denial of a requested employment

15   accommodation and involuntary job transfer or new and inferior

16   working conditions.

17           Therefore, any change that creates a significant

18   disadvantage with respect to the terms of a person's

19   employment may qualify as an adverse employment action.

20   However, that there is a change in any employee's working

21   condition, it is not enough to constitute an adverse

22   employment action.  The change must be more disruptive than an

23   inconvenience to the employee.  You must decide, given all of

24   the evidence presented, whether plaintiff has shown by the

25   preponderance of the evidence that required him to take

1    medical leave adversely affected the terms, conditions, or

2    privileges of his employment.

3            If you decide and require the plaintiff to take

4    medical leave was an adverse employment action, that you must

5    next decide if the plaintiff was a qualified individual,

6    meaning, whether at the time he was placed on medical leave,

7    he could perform the essential functions of his job.  The

8    essential functions of the job are the fundamental duties of

9    that job.

10           In making that determination, you must consider:

11           One:  The employer's judgment as to which functions

12   are essential.

13           Two:  Written job descriptions.

14           Three:  The amount of time plaintiff spent

15   performing the function.

16           Four:  The consequences of not requiring someone in

17   that job to perform the function; and,

18           Five:  The work experience of employees who

19   currently have or previously held a job.

20           This list is not exhaustive and no one factor will

21   mean that a function is or is not essential.  Thus, in

22   addition, you may also consider the following factors:

23           One, whether the reason the position exists is to

24   perform those functions.

25           Two:  Whether there are a limited number of

*Jury Charge*                                                    1054

1   employees available who can perform that function; and,

2          Three:  Whether the function is highly specialized

3   so if the plaintiff was hired for his ability to perform those

4   functions.

5          If you decide the plaintiff could perform the

6   essential functions of his job, even if he was on medical

7   leave, regardless of his disability, then he is a qualified

8   individual.  You must, therefore, find that First Data

9   unlawfully discriminated against him.  He could perform it

10  then, you know, you can't find discrimination if you can do

11  the job.  So you heard a lot of argument about whether he

12  could or could not.  It's a large part of his case and you

13  have to determine two things in order to find liability under

14  the Americans with Disabilities Act that when he was placed on

15  medical leave he suffered an adverse employment action.  And

16  (2), that he was qualified to do his job.

17         So I think you can understand that it's not that

18  complicated.  The case is complicated because of hundreds of

19  exhibits and lots of testimony back and forth.  But the law is

20  pretty clear and I think you will be able to figure out to

21  decide this case.

22         Now, the plaintiff also make a case claim against

23  FMLA against First Data.  The Family Medical Leave Act is a

24  little bit different than the Americans with Disabilities Act.

25         The FMLA requires that employers allow eligible

1   employees to take up to 12 weeks of unpaid medical leave each

2   year.  An eligible employee may take this leave if he or she

3   is unable would work due to a serious health condition.

4        Now, everyone agrees that the plaintiff was an

5   eligible employee; that his cancer was obviously a serious

6   health condition.  So you have this nice law that gives you

7   12 weeks, everybody, Congress passed that law.  And when that

8   12-weeks you're entitled to medical leave, you can't be fired

9   or discharged unless it was for a legitimate reason.  That's

10  what this case is basically about.

11       The plaintiff had not exhausted his 12-week

12  entitlement to leave time before he was terminated on

13  January 13, 2017.  That's when he got the notice saying he was

14  going to be terminated effective whatever date, okay?  That

15  termination, therefore, was unlawful unless First Data proves

16  by the preponderance of the evidence that the plaintiff would

17  have been terminated even if he had not been on leave.

18       In that respect, First Data argues that the decision

19  to terminate plaintiff was part of a reduction in force.

20  Therefore, if you find that the termination of plaintiff's

21  employment with First Data would have occurred because of

22  First Data's reduction in force, it was not merely a coverup

23  for a decision to terminate the plaintiff because he had taken

24  FMLA leave, then you must find for the defendant.

25       In determining whether you believe First Data's

1  stated reason for terminating the plaintiff, that is, the

2  reduction in force, you may not question First Data's business

3  judgment, that is, you cannot find an FMLA violation simply

4  because you disagree with the business sense of First Data or

5  believe its decision was harsh or unreasonable.  In other

6  words, you are not to consider First Data's wisdom.  You have

7  to determine whether there was a true reduction in force or

8  whether you thought a good idea or bad idea.

9          Now, I'm going to talk to you about damages.

10         If you find liability on either of the ADA claim or

11 the FMLA claim, then you consider what damages, if any, to

12 ward the plaintiff.  If you do not find liability, then you

13 don't have to consider damages, obviously.  But I've got to

14 tell you about the damages.  The fact I'm instructing you

15 about damages doesn't mean I'm telling you what to do.  But

16 you have to have the law in front of you in case you reach

17 damages you have to know what the law is.

18         The fact that I am giving you this instruction does

19 not mean, therefore, that I have any view as to whether

20 plaintiff is entitled to a verdict against defendant with

21 respect to any of his claims.  Instructions as to the measure

22 of damages are given only for your guidance.

23         In the event that you find in favor of plaintiff on

24 the question of liability as to any of his claims by a

25 preponderance of the evidence in accordance with the other

1    instructions I have given you.  If you decide that the

2    plaintiff is not entitled to prevail with respect to any of

3    these claims, you need not go further.

4            So now compensatory damages.

5            If you find that First Data violated the ADA by

6    requiring plaintiff to take medical leave, then the

7    plaintiff's entitled to any compensatory damages caused by

8    that violation.

9            The first element of compensatory damages is the

10   back pay of lost wages the plaintiff would have earned if

11   First Data had not placed him on leave.  The back pay starts

12   on the day plaintiff was placed on leave and ends on the date

13   he was terminated.  So then to determine back pay, you should

14   calculate the amount of income plaintiff would have earned

15   between November 19, 2016, when he was formally placed on

16   leave and January 13, 2017, when he was notified of his

17   termination.  And there was testimony and you heard evidence

18   about the plaintiff's claims with respect to that.  From that

19   amount, subtract any disability insurance payments he received

20   during that period.

21           In addition, compensatory damages are intended to

22   compensate plaintiff for the emotional distress including

23   mental anguish, shock, and discomfort that he had suffered

24   because of the defendant's wrongful conduct.  Plaintiff claims

25   that he requested to take medical leave and, in particular,

*Jury Charge*                                                                 1058

1    being deprived of remote access of First Data's systems caused

2    him such monetary.  The value emotional distress need be, not

3    necessarily can be introduced into evidence.  Nor is there any

4    exact standard for the compensation you may award for such

5    damages.

6            However, damage award must be supported by competent

7    evidence concerning the injury.  The damages that you award

8    must be fair and reasonable, neither inadequate nor excessive.

9    You should not award compensatory damages based on arbitrary

10   guesswork or speculation.  Let me make a note.  When I go over

11   this, sometimes I find little mistakes.

12           So you should not award compensatory damages based

13   on arbitrary guesswork or speculation, but only for those

14   injuries that plaintiff has actually suffered for which he is

15   reasonably likely to suffer in the future.

16           In awarding compensatory damages, if you decide to

17   award them you must be guided by dispassion and common sense.

18   You are to use your sound discretion in fixing an award of

19   compensatory damages drawing reasonable inferences where you

20   deem appropriate and the facts and circumstances in evidence.

21   Do not engage in arbitrary guesswork or speculation.

22           Now, as far as back pay is concerned if you have

23   concluded that plaintiff was wrongfully terminated under the

24   FMLA, the law permits him to recover any "back pay" or "lost

25   wages" he would have concerned if he had not been terminated.

*Jury Charge* 1059

1   So that only applies to the FMLA.

2             Under the ADA, the back pay, back wages, is only for

3   the period of time when he was placed on medical leave as you

4   determine it to be until the time he was terminated on

5   January 13th for that period of time because there's no claim

6   here that he was wrongfully terminated under the ADA, just

7   that he was just improperly placed on medical leave and he

8   suffered damages as a result of that.  So there's a difference

9   between back pay when you deal with the ADA, which ends at the

10  time of his termination, and under the Family Medical Leave

11  Act which does deal with whether he was wrongfully terminated

12  and as a result of that as he suffered loss of back pay or

13  lost wages from that period of time to the present time.

14            That is the only type of damages available under the

15  testimony what is back pay.

16            The back pay period for this claim starts from the

17  day plaintiff was terminated, as I mentioned, from First Data

18  and ends at the date plaintiff obtained or could have obtained

19  reemployment in an a comparable position.  Thus, to determine

20  back may, you should first calculate the amount of income

21  plaintiff would have earned if he had remained employed by

22  First Data after January 13, 2017.  From that amount, subtract

23  whatever amount plaintiff actually earned during that period

24  including money from self-employment.

25            Finally, if you decide that plaintiff was entitled

*Jury Charge* 1060

1  to any back pay, you should consider whether the amount of

2  back pay should be limited.

3          In this case, defendants claim that plaintiff's back

4  pay, if any, should be limited for two reasons.  I would refer

5  to the first reason as "mitigation,' and the second reason is

6  "after acquired evidence."  Let me describe to you the law of

7  "mitigation" and then the law of "after acquired evidence."

8          Now, as far as mitigation is concerned, when

9  determining the amount of damages a plaintiff is entitled to

10 recover, the law provides that the plaintiff must make every

11 reasonable effort to minimize or reduce his damages for loss

12 of compensation by seeking employment.  This is called

13 "mitigation of damages."

14         If you determine that plaintiff's entitled to

15 damages, you must reduce these damages by the amount that

16 plaintiff actually earned following his termination, or the

17 amount you determine that plaintiff could have earned through

18 reasonable effort.

19         If you determine that plaintiff failed to seek out

20 or take advantage of a business or employment opportunity that

21 was reasonably available to him, then you should reduce the

22 amount of damages by the amount he could have earned if he

23 would have sought out or taken advantage of the opportunity.

24 In determining whether plaintiff's failure to seek out or take

25 advantage of a business or employment opportunity was

*Jury Charge*          *1061*

1   reasonable, you should be aware that a plaintiff is only

2   required to seek out or accept employment that is "of a like

3   nature."

4          In determining whether employment is "of a like

5   nature," you may consider:

6          The type of work;.

7          The hours worked; the compensation;

8          The job security;

9          The working conditions; and

10         Other conditions of employment.

11         Now, here's the defendant's burden to prove by a

12   preponderance of the evidence that plaintiff failed to

13   mitigate his damages by failing to seek out or accept

14   employment of a like nature.

15         What about after acquired evidence?  You heard about

16   that.

17         Defendants also contend that they would have made

18   the same decision to terminate the plaintiff's employment

19   because of other misconduct by plaintiff that defendants

20   discovered during the course of this lawsuit.  I wouldn't say

21   "other misconduct," just misconduct.  Specifically, defendants

22   claim they would have terminated plaintiff's employment had

23   they known about either, (1) the invoices that plaintiff

24   submitted to First Data for his work that predated his

25   employment, or (2), that plaintiff's pre-First Data salary

1  which defendants claim is actually much lower than the $20,000

2  per month that plaintiff rented to First Data prior to his

3  being hired.

4         If you determine that defendants had proven by a

5  preponderance of the evidence, this is the burden on the

6  defendant again, that they would have made the same decision

7  to terminate plaintiff's employment because of either piece of

8  this "after acquired evidence" then you may not award

9  plaintiff for any back pay for wages that plaintiff would have

10 after the date the defendant became aware of the alleged

11 misconduct.  In this case, First Data claims that the date

12 they became aware of the information that would have he led to

13 plaintiff's termination was August 10, 2018.

14        I'll now give you examples of how the of "after

15 required evidence" applies to limit recovery, and this example

16 should not be understood by you as an instruction or what you

17 should or should not determine.  If you find that plaintiff

18 was entitled to back pay, let's say, from the day of his

19 termination, namely, January 13, 2017, through the present

20 date, which is what September 24th today.  I think I'll put

21 23rd.  And you also determine that First Data would have

22 discharged plaintiff anyway on August 10, 2018, then you must

23 limit plaintiff's back pay to the period between January 13,

24 2017, and August 10, 2018.

25        Now, let's talk about punitive damages under the

*Jury Charge*                                        1063

1  ADA.  You may, but are not required, to consider awarding

2  plaintiff punitive damages in connection with his ADA claim.

3  Punitive damages are not available for violation of the FMLA,

4  that's ADA.  So if you determine that defendants are not

5  liable under the ADA, then you do not need to consider

6  punitive damages at all.

7          Punitive damages may, in certain cases, be awarded

8  by you in addition to a verdict for other damages.  Punitive

9  damages are not intended as compensation to an injured

10 plaintiff.  Rather, the law permits a jury in a civil case to

11 assess punitive damages against a defendant as a punishment

12 for wrongful conduct and to deter the defendant from engaging

13 in such conduct in the future.

14          Plaintiff is not automatically entitled to punitive

15 damages simply because you may find that defendant wrongfully

16 placed him on leave or because you have awarded damages to

17 compensate plaintiff for his injuries.  You may award punitive

18 damages only if plaintiff has proven certain matters that I'm

19 now going to explain to you.

20          Now, punitive damages may only be awarded against

21 defendant.  If you find that defendant acted maliciously or

22 with a reckless disregard for plaintiff's legal rights.  He

23 had to act maliciously, First Data, or with a reckless

24 disregard for the plaintiff's rights.  "Malicious" conduct is

25 intentional wrongdoing in a sense that the evil-minded act.

*Jury Charge*                                                    *1064*

1    "Reckless" conduct is a deliberate act or omission with

2    knowledge of a high degree of probability of harm and

3    indifference to the consequences.

4          If you determine that First Data's conduct justifies

5    an award of punitive damages, you should take into

6    consideration all of the circumstances of this case including:

7    (1) the nature of the wrong doing; (2) the extent of the

8    injury or harm inflicted by the wrongdoing; (3) the intent of

9    the party that committed the wrongdoing; and (4) the effect

10   the judgment will have on the defendant.  You may also

11   consider any mitigating circumstances that you find justify

12   the reduction of the amount of punitive damages.

13         Most importantly, you should make sure that there is

14   a reasonable relationship between the actual injuries

15   sustained by plaintiff and any punitive damages you may award.

16   Punitive damages may be higher than, equal to, or lower than

17   actual damages.

18         You may decide not to impose punitive damages at

19   all, the call is entirely up to your discretion.  If you find

20   that the circumstances exist you can, you need not award

21   punitive damages.  It's your call.  So the award of punitive

22   damages is within your discretion.  You are not squired to

23   award them.

24         If you decide to award them, you must find first

25   that First Data acted maliciously or recklessly so as to

*Jury Charge* 1065

1  justify additional damages as punishment.

2       If you were to find that First Data's conduct

3  violate the law that finding alone would not be sufficient to

4  support an award of punitive damages.  You have to find

5  malicious and reckless disregard.  If you do award punitive

6  damages, you should fix the amount using calm discretion and

7  sound reason.  You must be not influenced by bias prejudice,

8  sympathy for, or dislike any party in the case.

9       So that's the second part my instruction.  You're

10 going to have the written instruction as a guide for you.  I

11 found a couple little mistakes.  I'm going to change it.  So

12 you will get to shortly.  As soon as I finish the

13 instructions, I should have to do you in 15 to 20 minutes.

14      So my closing instructions here are as follows.

15      Keep in mind nothing that I have sad in these

16 instructions is intended, once again, to suggest to you in

17 anyway what I think your verdict should be and it's entirely

18 for you to decide.

19      By way of reminder, I charge you once again that it

20 is your responsibility to judge the facts and the evidence

21 presented during the trial and to apply the law as I have

22 given it to you to the facts as you find them from the

23 evidence.

24      Remember also that your verdict must be based solely

25 on the evidence in the case and the law I've just given to you

*Jury Charge*                                            1066

1    now, not on anything else.

2            In order for your deliberations to proceed in an

3    orderly fashion, you have to have a foreperson.  The

4    foreperson will be responsible for signing all communications

5    to the Court and for handling them to the marshal during your

6    deliberations.  But, of course, his or her vote is entitled to

7    no greater weight than that of any other juror.

8            Now, the fact that you are here, it's okay you can

9    be the foreperson, you need not be.  You just have to be

10   sitting in the first place because that's the way the wheel

11   came out.  So what I want you to do, it will probably be the

12   first thing you do, select amongst yourselves the person who

13   will be comfortable in standing up at the end of the case and

14   delivering the verdict in open court.  Some people are more or

15   less shy, they're not comfortable in doing that.  So the

16   foreperson is going to have to deliver the verdict in open

17   court.

18           And also, you're going to be given ample paper and

19   you if have any questions, any readbacks, anything you're not

20   clear about, the law, you're not going to speculate, you're

21   going to write were you questions out on that yellow piece

22   paper.  You're going to date it, sign it, and it's hopeful

23   that the person who will be the foreperson will have legible

24   handwriting so that Judge Block can read it.  I will write

25   answer back on the sheet of paper, or I may call you back to

1   answer the question here in court depending upon, you know,

2   the type of question you ask.  If you want any readbacks, let

3   me know what they are.  But you can continue your

4   deliberations in the meantime or you can stop until you get

5   the information you want.  It may take us a little time to

6   locate the readbacks.  It depends upon how extensive the

7   request is.  Hopefully, you won't ask for everything to be

8   read back just focus on what you are concerned about or that

9   you may not recall and we'll have the to find it and then

10  we'll have you come back into the court and we'll read it to

11  you.

12          So all that information will be put on the yellow

13  piece of paper that your foreperson who is just going to be

14  the conduit to communicate between you and me we'll make out

15  and sign and date.

16          I don't want to know if you have any questions how

17  you stand during your deliberations.  Don't say you split 5-3

18  or this or that it's only for you.  I just want to answer your

19  questions.

20          In order your deliberations to proceed, then you

21  have the foreperson, all right.  So it is very important that

22  you not communicate with anyone outside the jury room about

23  your deliberations, about anything touching on this case.  The

24  only exception to that, once again, if you need to contact me

25  or have a note you'll hand it to the marshal who will be

1    sitting outside and we'll see how we're going to process it.

2              No member of the jury should ever attempt to

3    communicate with me except by a signed writing signed by the

4    foreperson.  Now, I will never communicate with any member of

5    the jury on any subject touching upon the merits of this case

6    other than in writing or orally in open court.

7              Now, if, in the course of the deliberation, once

8    again, your recollection of any part of the testimony should

9    fail I already told you, you can come back, be as specific as

10   you can be, and we'll have the readback that you may want.  I

11   already told you have that exhibit list and call for exhibits

12   that you deem appropriate.

13             Now, your duty is to reach a fair conclusion from

14   the law and the evidence -- here's the wrap-up -- it is an

15   important one.  When you are in the jury room, listen to each

16   other and discuss the evidence and issues in the case among

17   yourselves.  Now, I told you don't discuss the case at all

18   until, you know, I told you to start your deliberations.  Then

19   you discuss it collectively.  If somebody has to leave the

20   room for the facilities or whatever, you stop, you wait until

21   everyone is all together.  You have to hear each other, that's

22   why we have eight people deliberating collectively.  It is the

23   duty of you each you as jurors to consult with one another and

24   to deliberate with a view toward reaching agreement on the

25   verdict if you can to so without violating your individual

*Jury Charge* 1069

1   judgment or conscience.  Nor you should not surrender your

2   conscientious convictions of what the truth is and the weight

3   and effect of the evidence, and while each of you must decide

4   the case for yourself, and not merely acquiesce to the

5   conclusions of your fellow jurors, you should examine the

6   issues and the evidence before you with candor and frankness

7   and with proper deference to and regard for the opinions of

8   each other.

9          You should not hesitate to reconsider your opinions

10  from time to time and to change them if you are convinced they

11  are wrong.  However, do not surrender an honest belief or

12  conviction as to the weight and effect of the evidence simply

13  to arrive at a verdict.

14         The decision you reach must be unanimous on each of

15  the questions that you're going to answer.  I have prepared a

16  verdict sheet which I'm going to go over with you now to help

17  guide you in your deliberations.  When you have reached a

18  verdict you will simply send me a note signed note signed by

19  the foreperson that you reached a verdict to the marshal who

20  will be sitting outside the jury room.  You are to indicate

21  what your verdict is.  In no communication with the Court

22  should you give a numerical count once again of where you

23  stand.  Remember, in your deliberations that the dispute

24  between the parties follower for no passing matter.  So when

25  you reach a verdict send a note to the marshal stating we have

*Jury Charge*                                                    1070

1   a verdict.  Then I'll call you into court with the marshal and

2   the foreperson will have the verdict sheet and we'll stand and

3   Mr. Innelli will ask you the questions that you have to

4   answer.  Okay.

5          So, once again, remember that the dispute between

6   the parties is for them no passing matter.  They and the Court

7   rely upon you to give full and conscientious consideration and

8   deliberation to the issues and evidence before you.  By so

9   doing, you carrying out to the fullest your oath as jurors.  I

10  told you we end the way we began:  To well and truly try the

11  issues of this case and render a true verdict and that will be

12  solely based on evidence.

13         What I'm going to do is hand out the verdict sheet

14  to you and we'll go over it.

15         So there should be here nine copies.  You'll keep an

16  extra one which will be the official verdict sheet and I'll

17  let you have afterwards I'll be happen happy to sign then as

18  souvenirs if you want you keep two and pass them.

19         There should be just enough.  Great.  Okay.

20         So the first one is the Americans with Disabilities

21  Act claim.  A:  Is First Data liable under the ADA to require

22  medical leave, yes or no?

23         Now, obviously you refer back to the instructions

24  because I can't give you all the instruction again in the

25  verdict sheet.  So you know you're going to look at the

*Jury Charge* 1071

1   instructions and you're going to consider whether or not there

2   was adverse employment action and whether plaintiff was

3   qualified.  The way I explained it to you in the charge,

4   right, you have to answer those questions, right?  That will

5   allow to you determine that whether or not First Data was

6   liable under the ADA.  If there was an adverse action, if

7   there was a qualified individual, as I explained the law to

8   you.  So you can refer back to the instructions, right?

9           So if you answered no then you skip to question two.

10  That will be the FMLA claim.  But if you answered yes to that

11  then you answered questions 1-B and 1-C.

12          B:  What amount of compensatory damages should be

13  award against First Data for requiring plaintiff to take

14  medical leave.  And compensatory damages includes the pain and

15  suffering.  I explained to you the back pay for that period of

16  time to a determination.  And then what amount of punitive

17  damages, if any, should be awarded against First Data for

18  requiring plaintiff to take medical leave.  And I instructed

19  you about punitive damages.  And, of course, you go back to

20  the charge if you have any problems understanding what that's

21  all about by all means.

22          And then on the FMLA claim.  Is First Data liable

23  under the FMLA for terminating plaintiff's employment?  Either

24  yes or no.  Once again, you go back to my instructions about

25  termination, reduction in force and everything I explained to

*Jury Charge*                                                     1072

1    you in the charge, right, in order for you to have the

2    necessary information to allow you to answer that question.

3    So if you answered no, your verdict is complete.  If you

4    answered yes, then you go to the damage aspect which is only

5    about back pay and what amount of back pay should be awarded

6    to plaintiff and you go back to my instructions.  We'll have

7    back pay for the FMLA from the date of termination until the

8    present time and we have the mitigation and the after acquired

9    evidence charge and we'll go over that.

10        So I think you're going able to understand

11   everything clearly.  I made it easy for you.  But if you have

12   any questions, you can just ask me about it.  Don't guess and

13   I'll be happy to answer them if you have any.

14        Now, at this time, you're going to give me a second

15   while I sneak over there so you can't hear me and ask the

16   lawyers whether Judge Block may have inadvertently made any

17   mistakes in explaining the law to you if I have.  I want to

18   make sure I go it down correctly.  I want to talk to the

19   lawyers.

20        (Continued on the next page.)

21

22

23

24

25

*Sidebar*                                                            *1073*

1          (Sidebar conference held on the record in the

2     presence of the Court and counsel, out of the hearing of the

3     jury.)

4          THE COURT:   So we're going to ask Mr. Shearer first.

5     Any exceptions to the charge as given?  Whatever other

6     exceptions you may do in the course of the trial whatever they

7     may are preserved I want to know whether or not I've

8     instructed the jurors correctly enough.

9          MR. SHEARER:   No objection.

10          THE COURT:   Now I'm going to ask these two

11     distinguished gentlemen whether they have anything to do Judge

12     Block.

13          MR. EIDELMAN:   No exceptions judge.

14          THE COURT:   Great.   Let's go.

15          (Sidebar discussion concludes.)

16          (Continued on the next page.)

17

18

19

20

21

22

23

24

25

*Proceedings*                                                    *1074*

1          (In open court.)

2          THE COURT:  I'm happy to announce they all think I

3    did a perfect job.  Sometimes we make mistakes, obviously.

4          So, at this time, Mr. Innelli is going to ask the

5    marshal to come forward and he's going to take an oath and

6    he's going to lead you on to the jury room and you'll be able

7    to commence your deliberations.

8          It's 11:30.  Food will be brought in when, Mike?

9          COURTROOM DEPUTY:  I will give them the menus now.

10   I will bring it in at 11:00 o'clock or 12:30.

11         THE COURT:  And you can start your deliberations now

12   and we'll see how it goes, all right.  Let's give the oath to

13   the marshal.

14         COURTROOM DEPUTY:  Raise your right hand.

15         (Deputy U.S. Marshal sworn by courtroom deputy.)

16         DEPUTY U.S. MARSHAL:  Yes, I do.

17         THE COURT:  Let's see how it goes and we'll stand

18   by.

19         (Jury exits courtroom at 11:28 a.m.)

20         THE COURT:  Just coordinate with Mike if you leave

21   so he knows how to get ahold of you, all right?

22         (Discussion held off the record.)

23         THE COURT:  Good job, Counsel.  You did a very good

24   job and were passionate for your client you should be very

25   grateful to you.

*Proceedings*                                    *1075*

1          MR. ZEITLIN:  Thank you.

2          MR. SHEARER:  Thank you.

3          (A recess in the proceedings was taken.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Proceedings*                                          *1076*

1          (In open court; 12:34 p.m.)

2          (Court's Exhibits 1, 2, 3 were marked in evidence as

3   of this date.)

4          THE COURT:  So I received a note, we marked it

5   Exhibit No. 3.

6          For the record, No. 1 and No. 2 would be what,

7   Mr. Innelli?

8          COURTROOM DEPUTY:  No. 1 is the joint exhibit list

9   and No. 2 is the jury charge.

10          Jury entering.

11          (Jury enters courtroom at 12:35 p.m.)

12          COURTROOM DEPUTY:  You can be seated.

13          THE COURT:  So I see Jessica Antigua is our

14   foreperson.  And so, I have very nice note and it's been

15   marked Court Exhibit No. 3.  We keep a record of it as it

16   comes.

17          And Court Exhibit No. 1 was the verdict sheet, Mike?

18          COURTROOM DEPUTY:  No. 1 was the exhibit list.

19   No. 2 is the jury charge.  And this is No. 3.

20          THE COURT:  Okay.  So you have the jury charge now,

21   I think, right.  And you have this the exhibit list.  So now

22   you've called for some of the exhibits.

23          The reason I called you into the courtroom is that

24   P-92 is the spreadsheet and it's hard to make a copy of it

25   that's legible.  So what we're going to do is you're going to

*Proceedings*                                    *1077*

1    look at it on the screen here now and tell me as long as you

2    need it's fine.  Put it up, Mike.  You have it?

3            COURTROOM DEPUTY:  It's up yes, Judge.

4            (A brief pause in the proceedings was held.)

5            THE COURT:  Just let me know.  Take as much time as

6    you need and let me know when you are satisfied that you

7    looked at what you need to look at.

8            (A brief pause in the proceedings was held.)

9            THE COURT:  So I guess the food is going to be

10   brought in at 1:00 o'clock.

11           COURTROOM DEPUTY:  12:45.

12           THE COURT:  So you'll have some opportunity to eat

13   soon and you can continue your deliberations while you're

14   eating, or you can stop and take a break.  Whatever you want

15   to do.  So the record will reflect that we marked in as

16   Exhibit No. 3 your note asking for all these exhibits.

17   They've been sent in to you.  I take and you have them all,

18   correct?  So continue with your deliberations.

19           COURTROOM DEPUTY:  All rise.

20           (Jury exits courtroom at 12:39 p.m.)

21           (A recess in the proceedings was taken.)

22

23

24

25

*Proceedings*                                                    *1078*

1              (In open court; 2:20 p.m.)

2              (Court's Exhibit 4 was marked in evidence as of this

3     date.)

4              THE COURT:  So we have a note that we marked Court

5     Exhibit No. 4.  And it says, Page 10, 1st sentence, of the

6     charge, 2nd paragraph under FMLA claim.  Question:  Is this a

7     statement of fact or opinion?

8              So I don't have to call them in I can just write

9     back it's a statement of fact.

10             What's the problem.

11             MR. ZEITLIN:  We agree.  It should be deemed a

12    statement of fact.

13             THE COURT:  What is it that you're saying?

14             MR. ZEITLIN:  Only agree with your Honor whether

15    it's a statement of fact.  The question is whether it's the

16    second or third paragraph and I want to be very precise.

17             THE COURT:  Let's see what we're talking about.

18    Second paragraph under the FMLA claim.

19             MR. ZEITLIN:  Technically, it's the third paragraph.

20             THE COURT:  Pardon.

21             MR. ZEITLIN:  The only issue, it's technically the

22    third paragraph and I want to be very precise about this.

23             THE COURT:  Under FMLA claim, first sentence of the

24    second paragraph it says, "The FMLA requires that employers

25    allow eligible employees to take up to 12 weeks of unpaid

*Proceedings*                                                        *1079*

1  medical leave each year."

2          MR. ZEITLIN:  Here's the issue, your Honor.  When we

3  received this -- first what's marked as Court's Exhibit No. 3

4  requesting certain documents, seven or eight different

5  documents.

6          THE COURT:  Look, let's what are you trying to say?

7  Do you want to know whether or not what is a statement of fact

8  that the plaintiff was exhausted his 12-week entitlement?

9          MR. ZEITLIN:  We believe that's what the jury wants

10  to know.

11          THE COURT:  Stop it.  I think that's what they are

12  asking.

13          MR. ZEITLIN:  We agree.

14          THE COURT:  Okay.  Bring them in.  We'll clarify

15  that.  The we're going to find out.

16          MR. EIDELMAN:  That's a good way to do it.

17          (A brief pause in the proceedings was held.)

18          THE COURT:  I think they want to know whether the

19  plaintiff has exhausted his 12 weeks of entitlement before he

20  was terminated I think that's what they're looking at.

21          MR. EIDELMAN:  Because also, your Honor, looking at

22  the first one, of course, is under the FMLA it's a 12-week

23  period, to doesn't necessarily have to be a calendar year.

24          THE COURT:  I'm going to ask them, Mr. Eidelman what

25  exactly is it that they want to know.

*Proceedings*                                                   **1080**

1          MR. EIDELMAN:  Good.  Thank you, Judge.

2          THE COURT:  Very simple.

3          MR. EIDELMAN:  Agreed.

4          THE COURT:  Everyone gets antsy at this time.

5          MR. EIDELMAN:  It's very true, it's very true.

6          THE COURT:  After we.

7          COURTROOM DEPUTY:  All rise.

8          (Jury enters courtroom at 2:40 p.m.)

9          THE COURT:  Okay.  Madam foreperson, you are the

10   spokesperson for the jurors.  I just want to make sure I have

11   this down correctly.  You told me Page 10 of the charge, first

12   sentence, second paragraph, under FMLA claim, is this a

13   statement of fact or opinion?  I think you're referring to

14   what technically is the third paragraph.  I may be wrong about

15   that.

16          JUROR:  Oh, yeah.

17          THE COURT:  First, plaintiff also makes a claim

18   under the FMLA against First Data.  The second paragraph that

19   says the plaintiff had not exhausted his 12-week entitlement

20   to leave time before he was terminated on January 13, 2017.  I

21   think that's what you are referring to, am I right?

22          JUROR:  Yes.

23          THE COURT:  So that's a statement of fact, okay?

24   That answers your question.  I was going to write it down

25   here, but since we're not technically counted on this thing it

*Proceedings*                                            *1081*

1   looks like it could be the third paragraph.  So we want it be

2   certain we know exactly what's on your mind.

3           Does that answer your question?

4           JUROR:  We're referring to this right here.

5           THE COURT:  Are you referring to this?  Listen to me

6   carefully.  The plaintiff had not exhausted his 12-week

7   entitlement to leave time before he was terminated on

8   January 13, 2017.

9           Is that what you want to know?

10          JUROR:  Yes.

11          THE COURT:  It's a statement of fact or opinion.

12          JUROR:  Yes.

13          THE COURT:  That's your question?  Do you want to

14  talk to each other?  Is there some confusion about it?

15          JUROR:  There is.

16          THE COURT:  You're talking to each other.  Why don't

17  you go back to the jury room and let me know whether you want

18  to know whether that statement is a statement of fact or an

19  opinion, is that your question?  I'll answer it.

20          When I see two of your colleagues whisper to each

21  other it makes me insecure.  Go back to the jury room.  Come

22  back and let me know in a written statement what exactly --

23  write it out what the statement is that you want me to tell

24  you about whether it's a statement of fact or opinion.  Just

25  write it down on your note.  That will be the easiest way I

*Proceedings*                                               *1082*

1    think, right?

2              JUROR:  Yes.

3              THE COURT:  So do that.  Go ahead and I'll wait for

4    you.

5              COURTROOM DEPUTY:  All rise.

6              (Jury exits courtroom at 2:42 p.m.)

7              COURTROOM DEPUTY:  You can all be seated.

8              THE COURT:  It's not easy.  Sometimes things seem

9    very simple and you have to be really, really careful to just

10   get it down right.

11             Off the record.

12             (Discussion held off the record.)

13             COURTROOM DEPUTY:  All rise.

14             (Jury enters courtroom at 3:45 p.m.)

15             COURTROOM DEPUTY:  You can all be.

16             (Court's Exhibit 5 was marked in evidence as of this

17   date.)  Seated.

18             THE COURT:  All right, folks.  We have the note

19   which I marked as Exhibit No. 5 that you have reached a

20   verdict.  And I guess you didn't need any further

21   clarification from me on the other thing, right?

22             So at this time, Ms. Antigua.

23             THE FOREPERSON:  Yes.

24             THE COURT:  So you're going to stand and Mr. Innelli

25   is going to ask you for the verdict.  Listen carefully.

*Proceedings*               *1083*

1          COURTROOM DEPUTY:  Has the jury reached a unanimous

2   verdict?

3          THE FOREPERSON:  Yes.

4          COURTROOM DEPUTY: 1:  ADA.  1-A:  Is First Data

5   liable under the ADA for requiring plaintiff to take medical

6   leave, yes or no?

7          THE FOREPERSON:  No.

8          COURTROOM DEPUTY:  No.  So you went on to

9   Question No. 2, correct?

10         THE FOREPERSON:  Yes.

11         COURTROOM DEPUTY: 2:  FMLA.  2-A:  Is First Data

12   liable under the FMLA for terminating plaintiff's employment,

13   yes or no?

14         THE FOREPERSON:  No.

15         COURTROOM DEPUTY:  And you've answered no further

16   questions, correct?

17         THE FOREPERSON:  Correct.

18         THE COURT:  You may be seated.

19         COURTROOM DEPUTY:  Juror No. 1, is that your

20   verdict?

21         JUROR NO. 1:  Yes.

22         COURTROOM DEPUTY:  Juror No. 2, is that your

23   verdict?

24         JUROR NO. 2:  Yes.

25         COURTROOM DEPUTY:  Juror No. 3, is that your

*Proceedings*                                                    **1084**

1    verdict.

2              JUROR NO. 3:  Yes.

3              COURTROOM DEPUTY:  Juror No. 4, is that your

4    verdict.

5              JUROR NO. 4:  Yes.

6              COURTROOM DEPUTY:  Juror No. 5, is that your

7    verdict.

8              JUROR NO. 5:  Yes.

9              COURTROOM DEPUTY:  Juror No. 6, is that your

10   verdict.

11             JUROR NO. 6:  Yes.

12             COURTROOM DEPUTY:  Juror No.  7, is that your

13   verdict.

14             JUROR NO. 7:  Yes.

15             COURTROOM DEPUTY:  Jury is polled, your Honor.

16             THE COURT:  Did you sign the verdict sheet?

17             THE FOREPERSON:  I printed.  I need a pen.

18             COURTROOM DEPUTY:  There you go.

19             THE COURT:  So, folks, that completes your

20   responsibilities and I will talk to you briefly inside.  If

21   you want to chat with the judge, I'll come in there for a few

22   minutes if you'd like and I'll answer whatever questions or

23   curiosities you may have and bid you a farewell.

24             I want to thank you publicly for the service that

25   you rendered and, of course, the first question I'm going to

*Proceedings*                                              1085

1    ask you is whether I should go to Washington and recommend

2    that we abolish our jury system.  So think about that, right?

3    But you know how I feel about it, obviously, and I hope you

4    found this to be an important experience in the course of your

5    life and service to our country.  And we know you had to give

6    up a week of your valuable time and you found it to be a

7    sacrifice you're more than willing to make for our system of

8    justice what we all think is the best in the world.  I'm a

9    little patriotic about that, I hope you feel you had a very

10   meaningful experience and I will talk to you now briefly.

11         So there's no gag on you, I mean, if you wanted run

12   into anybody and you can talk to or you don't have to talk.

13   Sometimes you meet people, lawyers may want to ask you

14   questions.  I'm not worried about any security issues here,

15   it's not that type of case.  The lawyers have been

16   professional so we're not concerned about that.  Sometimes we

17   have a case where we have to be a little cautious but this is

18   not that type of case.

19         I always tell the lawyers, I try to get them to

20   settle cases, right, set somebody who is disappointed and you

21   know people have the right to have access to the Court to have

22   their legal disputes litigated that's what we're here for

23   there were factual issues here that the party took issue with

24   and Mr. Barger had the trite come to court.

25         Your verdict is one which I accept completely.  You

*Proceedings*                                                          *1086*

1    did a very good job and we congratulate you for the time and

2    the energy that you gave and especially for showing up by

3    10:00 o'clock every day for sure.  So I'll come to you talk in

4    a few minutes, okay.

5              COURTROOM DEPUTY:  All rise.

6              (Jury exits courtroom at 3:49 p.m.)

7              COURTROOM DEPUTY:  All right.

8              THE COURT:  All right.  There's nothing much I can

9    say.  I want to thank you four your professionalism and that

10   ends this case.

11             MR. EIDELMAN:  Thank you.

12             MR. SHEARER:  Thank you.

13             (WHEREUPON, this matter was adjourned.)

14

15                         *   *   *

16

17

18

19

20

21

22

23

24

25

1087

1    <u>INDEX</u>

2

3    <u>COURT EXHIBITS:</u>

4

5    Court's Exhibits 1, 2, 3 were marked in          1076

6    evidence as of this date........................

7    Court's Exhibit 4 was marked in evidence as of   1078

8    this date.......................................

9    Court's Exhibit 5 was marked in evidence as of   1082

10   this date.......................................

11

12   <u>VERDICT:</u>

13   Verdict.........................................  1083

14

15                        * * * * *

16

17

18

19

20

21

22

23

24

25

# #

**#155-254** [1] - 1036:16

# $

**$20,000** [1] - 1062:1

# 1

**1** [11] - 1061:23, 1064:7, 1076:2, 1076:6, 1076:8, 1076:17, 1076:18, 1083:4, 1083:19, 1083:21, 1087:5
**1-A** [1] - 1083:4
**1-B** [1] - 1071:11
**1-C** [1] - 1071:11
**10** [5] - 1062:13, 1062:22, 1062:24, 1078:5, 1080:11
**10017** [1] - 1037:9
**1076** [1] - 1087:5
**1078** [1] - 1087:7
**1082** [1] - 1087:9
**1083** [1] - 1087:13
**10:00** [2] - 1036:8, 1086:3
**10:36** [1] - 1038:18
**11201** [1] - 1036:21
**11:00** [1] - 1074:10
**11:28** [1] - 1074:19
**11:30** [1] - 1074:8
**12** [4] - 1055:1, 1055:7, 1078:25, 1079:19
**12-week** [5] - 1055:11, 1079:8, 1079:22, 1080:19, 1081:6
**12-weeks** [1] - 1055:8
**12:30** [1] - 1074:10
**12:34** [1] - 1076:1
**12:35** [1] - 1076:11
**12:39** [1] - 1077:20
**12:45** [1] - 1077:11
**13** [7] - 1055:13, 1057:16, 1059:22, 1062:19, 1062:23, 1080:20, 1081:8
**13th** [1] - 1059:5
**15** [1] - 1065:13
**17** [1] - 1047:9
**17-CV-4869(FB** [1] - 1036:3
**19** [1] - 1057:15
**1:00** [1] - 1077:10
**1st** [1] - 1078:5

# 2

**2** [12] - 1054:16, 1061:25, 1064:7, 1076:2, 1076:6, 1076:9, 1076:19, 1083:9, 1083:11, 1083:22, 1083:24, 1087:5
**2-A** [1] - 1083:11
**20** [1] - 1065:13
**2016** [1] - 1057:15
**2017** [7] - 1055:13, 1057:16, 1059:22, 1062:19, 1062:24, 1080:20, 1081:8
**2018** [3] - 1062:13, 1062:22, 1062:24
**2019** [1] - 1036:7
**21202** [1] - 1037:4

**23rd** [1] - 1062:21
**24** [1] - 1036:7
**24th** [1] - 1062:20
**2:20** [1] - 1078:1
**2:40** [1] - 1080:8
**2:42** [1] - 1082:6
**2nd** [1] - 1078:6

# 3

**3** [10] - 1064:8, 1076:2, 1076:5, 1076:15, 1076:19, 1077:16, 1079:3, 1083:25, 1084:2, 1087:5
**330** [1] - 1037:8
**3839** [1] - 1036:16
**39th** [1] - 1037:9
**3:45** [1] - 1082:14
**3:49** [1] - 1086:6

# 4

**4** [6] - 1064:9, 1078:2, 1078:5, 1084:3, 1084:5, 1087:7

# 5

**5** [5] - 1082:16, 1082:19, 1084:6, 1084:8, 1087:9
**5-3** [1] - 1067:17
**50** [1] - 1036:20
**500** [2] - 1037:4, 1045:8
**506** [1] - 1036:21

# 6

**6** [2] - 1084:9, 1084:11
**613-2487** [1] - 1037:12
**613-2694** [1] - 1037:13

# 7

**7** [3] - 1039:7, 1084:12, 1084:14
**718** [2] - 1037:12, 1037:13
**75204** [1] - 1036:17

# 9

**91** [2] - 1038:9, 1038:15
**92** [1] - 1038:10, 1038:15
**9:00** [1] - 1039:24
**9:30** [1] - 1039:24

# A

**a.m** [3] - 1036:8, 1038:18, 1074:19
**ability** [1] - 1054:3
**able** [4] - 1045:11, 1054:20, 1072:10, 1074:6
**abolish** [1] - 1085:2
**absorb** [1] - 1050:19
**accept** [4] - 1043:3, 1061:2, 1061:13,

1085:25
**access** [3] - 1052:7, 1058:1, 1085:21
**accommodation** [1] - 1052:15
**accordance** [2] - 1042:15, 1056:25
**accurately** [1] - 1048:14
**acquiesce** [1] - 1069:4
**acquired** [5] - 1060:6, 1060:7, 1061:15, 1062:8, 1072:8
**acronym** [1] - 1051:6
**act** [3] - 1063:23, 1063:25, 1064:1
**Act** [7] - 1051:6, 1051:7, 1054:14, 1054:23, 1054:24, 1059:11, 1070:21
**acted** [2] - 1063:21, 1064:25
**action** [11] - 1052:4, 1052:5, 1052:8, 1052:10, 1052:12, 1052:19, 1052:22, 1053:4, 1054:15, 1071:2, 1071:6
**actual** [2] - 1064:14, 1064:17
**ADA** [18] - 1051:7, 1051:9, 1051:11, 1051:20, 1051:25, 1056:10, 1057:5, 1059:2, 1059:6, 1059:9, 1063:1, 1063:2, 1063:4, 1063:5, 1070:21, 1071:6, 1083:4, 1083:5
**addition** [3] - 1053:22, 1057:21, 1063:8
**additional** [1] - 1065:1
**adhere** [1] - 1041:4
**adjourned** [1] - 1086:13
**administrative** [1] - 1040:8
**admitted** [3] - 1038:9, 1038:10
**advancement** [1] - 1051:14
**advantage** [3] - 1060:20, 1060:23, 1060:25
**adverse** [11] - 1052:4, 1052:5, 1052:8, 1052:10, 1052:12, 1052:19, 1052:21, 1053:4, 1054:15, 1071:2, 1071:6
**adversely** [1] - 1053:1
**affected** [1] - 1053:1
**afterwards** [1] - 1070:17
**ago** [1] - 1039:6
**agree** [5] - 1043:1, 1051:19, 1078:11, 1078:14, 1079:13
**agreed** [1] - 1080:3
**agreement** [1] - 1068:24
**agrees** [1] - 1055:4
**ahead** [1] - 1082:3
**ahold** [1] - 1074:21
**aid** [1] - 1041:10
**aided** [1] - 1037:15
**al** [4] - 1036:8, 1036:20, 1037:3, 1037:8
**alleged** [1] - 1062:10
**allow** [5] - 1042:21, 1054:25, 1071:5, 1072:2, 1078:25
**alone** [4] - 1041:15, 1042:22, 1047:21, 1065:3
**Americans** [4] - 1051:6, 1054:14, 1054:24, 1070:20
**amount** [17] - 1053:14, 1057:14, 1057:19, 1059:20, 1059:22, 1059:23, 1060:1, 1060:9, 1060:15, 1060:17, 1060:22, 1064:12, 1065:6, 1071:12, 1071:16, 1072:5
**ample** [1] - 1066:18
**analysis** [1] - 1040:13
**AND** [1] - 1036:12
**anguish** [1] - 1057:23

**announce** [1] - 1074:2
**answer** [13] - 1040:14, 1051:2, 1066:25, 1067:1, 1067:18, 1069:15, 1070:4, 1071:4, 1072:2, 1072:13, 1081:3, 1081:19, 1084:22
**answered** [6] - 1071:9, 1071:10, 1071:11, 1072:3, 1072:4, 1083:15
**answers** [1] - 1080:24
**Anthony** [1] - 1037:11
**Antigua** [2] - 1076:13, 1082:22
**antsy** [1] - 1080:4
**anyway** [2] - 1062:22, 1065:17
**appear** [1] - 1048:12
**appeared** [1] - 1041:17
**application** [1] - 1051:14
**applies** [3] - 1050:10, 1059:1, 1062:15
**apply** [6] - 1040:4, 1042:15, 1042:24, 1043:4, 1049:6, 1065:21
**appropriate** [2] - 1058:20, 1068:12
**appropriately** [1] - 1050:17
**arbitrary** [3] - 1058:9, 1058:13, 1058:21
**argues** [2] - 1051:23, 1055:18
**argument** [1] - 1054:11
**arguments** [1] - 1045:15
**ARNSTEIN** [1] - 1037:2
**arrive** [1] - 1069:13
**aside** [1] - 1043:24
**asleep** [1] - 1039:8
**aspect** [1] - 1072:4
**assess** [1] - 1063:11
**assessment** [1] - 1050:20
**assume** [1] - 1046:12
**attempt** [1] - 1068:2
**attempted** [1] - 1043:8
**attention** [2] - 1039:4, 1050:21
**attorneys** [1] - 1037:7
**Attorneys** [3] - 1036:15, 1036:19, 1037:3
**August** [3] - 1062:13, 1062:22, 1062:24
**automatically** [1] - 1063:14
**available** [5] - 1040:20, 1054:1, 1059:14, 1060:21, 1063:3
**Avenue** [2] - 1036:16, 1037:8
**award** [18] - 1058:4, 1058:6, 1058:7, 1058:9, 1058:12, 1058:17, 1058:18, 1062:8, 1063:17, 1064:5, 1064:15, 1064:20, 1064:21, 1064:23, 1064:24, 1065:4, 1065:5, 1071:13
**awarded** [5] - 1063:7, 1063:16, 1063:20, 1071:17, 1072:5
**awarding** [2] - 1058:16, 1063:1
**aware** [3] - 1061:1, 1062:10, 1062:12

**B**

**bad** [1] - 1056:8
**Baltimore** [1] - 1037:4
**BARGER** [1] - 1036:3
**Barger** [4] - 1036:15, 1043:23, 1051:4, 1085:24
**based** [9] - 1044:22, 1046:20, 1047:3, 1047:14, 1050:3, 1058:9, 1058:12, 1065:24, 1070:12

**basis** [1] - 1046:24
**bear** [1] - 1041:8
**became** [2] - 1062:10, 1062:12
**becoming** [1] - 1046:16
**BEFORE** [1] - 1036:12
**began** [1] - 1070:10
**belief** [5] - 1048:4, 1048:20, 1049:17, 1049:20, 1069:11
**believability** [1] - 1047:25, 1048:23
**benefits** [1] - 1052:14
**best** [1] - 1085:8
**better** [2] - 1039:1, 1039:9
**between** [10] - 1041:2, 1041:20, 1045:24, 1057:15, 1059:9, 1062:23, 1064:14, 1067:14, 1069:24, 1070:5
**beyond** [2] - 1049:3, 1049:5
**bias** [4] - 1043:17, 1043:20, 1048:16, 1065:7
**bid** [1] - 1084:23
**big** [2] - 1041:23, 1044:12
**bit** [2] - 1038:23, 1054:24
**BLOCK** [1] - 1036:12
**Block** [3] - 1066:24, 1072:16, 1073:12
**bombarded** [1] - 1045:8
**BOND** [1] - 1037:7
**break** [1] - 1077:14
**brief** [3] - 1077:4, 1077:8, 1079:17
**briefly** [2] - 1084:20, 1085:10
**bring** [3] - 1038:5, 1074:10, 1079:14
**Brooklyn** [2] - 1036:5, 1036:21
**brought** [2] - 1074:8, 1077:10
**burden** [14] - 1048:25, 1049:2, 1049:9, 1049:15, 1049:19, 1049:23, 1050:7, 1050:11, 1050:12, 1050:13, 1050:14, 1061:11, 1062:5
**business** [5] - 1045:6, 1056:2, 1056:4, 1060:20, 1060:25

**C**

**calculate** [2] - 1057:14, 1059:20
**calendar** [1] - 1079:23
**calm** [1] - 1065:6
**cancer** [2] - 1052:2, 1055:5
**candid** [1] - 1048:7
**candor** [1] - 1069:6
**cannot** [2] - 1049:22, 1056:3
**careful** [1] - 1082:9
**carefully** [4] - 1044:6, 1048:1, 1081:6, 1082:25
**carrying** [1] - 1070:9
**case** [42] - 1039:11, 1039:23, 1040:12, 1041:14, 1042:1, 1043:9, 1043:16, 1043:21, 1043:25, 1044:15, 1044:21, 1045:4, 1047:20, 1049:2, 1049:3, 1049:7, 1050:6, 1050:18, 1050:23, 1054:12, 1054:18, 1054:21, 1054:22, 1055:10, 1056:16, 1060:3, 1062:11, 1063:10, 1064:6, 1065:8, 1065:25, 1066:13, 1067:23, 1068:5, 1068:16, 1068:17, 1069:4, 1070:11, 1085:15, 1085:17, 1085:18, 1086:10
**cases** [4] - 1040:4, 1044:16, 1063:7, 1085:20
**cataract** [1] - 1041:1

**CAUSE** [1] - 1036:11
**caused** [2] - 1057:7, 1058:1
**caution** [1] - 1043:13
**cautious** [1] - 1085:17
**certain** [7] - 1045:15, 1049:18, 1050:7, 1063:7, 1063:18, 1079:4, 1081:2
**cetera** [3] - 1045:12, 1045:13, 1046:4
**change** [5] - 1052:17, 1052:20, 1052:22, 1065:11, 1069:10
**charge** [20] - 1038:5, 1040:22, 1041:3, 1041:6, 1041:9, 1041:10, 1041:11, 1049:11, 1051:2, 1065:19, 1071:3, 1071:20, 1072:1, 1072:9, 1073:5, 1076:9, 1076:19, 1076:20, 1078:6, 1080:11
**charged** [1] - 1039:5
**chat** [1] - 1084:21
**checking** [1] - 1038:9
**choose** [1] - 1048:15
**circumstances** [5] - 1048:2, 1058:20, 1064:6, 1064:11, 1066:22
**circumstantial** [8] - 1045:21, 1045:22, 1045:25, 1046:5, 1046:22, 1047:2, 1047:4, 1047:18
**civil** [6] - 1038:2, 1040:4, 1049:2, 1049:7, 1050:6, 1063:10
**CIVIL** [1] - 1036:11
**claim** [19] - 1051:9, 1052:1, 1054:22, 1056:10, 1056:11, 1059:5, 1059:16, 1060:3, 1061:22, 1062:1, 1063:2, 1070:21, 1071:10, 1071:22, 1078:6, 1078:18, 1078:23, 1080:12, 1080:17
**claimed** [1] - 1052:1
**claims** [10] - 1040:5, 1050:16, 1051:21, 1052:5, 1056:21, 1056:24, 1057:3, 1057:18, 1057:24, 1062:11
**clarification** [1] - 1082:21
**clarify** [1] - 1079:14
**clear** [3] - 1040:16, 1054:20, 1066:20
**clearly** [1] - 1072:11
**client** [1] - 1074:24
**closing** [2] - 1042:9, 1065:14
**collaboratively** [1] - 1039:16
**colleagues** [1] - 1081:20
**Collectively** [1] - 1038:21
**collectively** [2] - 1068:19, 1068:22
**comfort** [1] - 1040:23
**comfortable** [3] - 1039:25, 1066:13, 1066:15
**commence** [1] - 1074:7
**committed** [1] - 1064:9
**common** [4] - 1046:25, 1047:7, 1048:6, 1058:17
**communicate** [5] - 1040:9, 1067:14, 1067:22, 1068:3, 1068:4
**communication** [1] - 1069:21
**communications** [1] - 1066:4
**comparable** [1] - 1059:19
**compare** [1] - 1048:9
**compensate** [2] - 1057:22, 1063:17
**compensation** [8] - 1051:15, 1052:6, 1052:9, 1052:11, 1058:4, 1060:12, 1061:7, 1063:9
**compensatory** [10] - 1057:4, 1057:7, 1057:9, 1057:21, 1058:9, 1058:12, 1058:16, 1058:19, 1071:12, 1071:14

**competent** [1] - 1058:6
**complete** [2] - 1043:19, 1072:3
**completed** [1] - 1039:23
**completely** [1] - 1085:25
**completes** [1] - 1084:19
**complicated** [2] - 1054:18
**Computer** [1] - 1037:15
**Computer-aided** [1] - 1037:15
**computerized** [1] - 1037:14
**concentrate** [1] - 1050:23
**concentration** [1] - 1050:24
**concerned** [6] - 1051:9, 1058:22, 1058:25, 1060:8, 1067:8, 1085:16
**concerning** [2] - 1042:6, 1058:7
**conclude** [1] - 1046:20
**concluded** [1] - 1058:23
**concludes** [1] - 1073:15
**conclusion** [1] - 1068:13
**conclusions** [1] - 1069:5
**concur** [1] - 1050:19
**condition** [3] - 1052:21, 1055:3, 1055:6
**conditions** [5] - 1051:16, 1052:16, 1053:1, 1061:9, 1061:10
**conduct** [7] - 1057:24, 1063:12, 1063:13, 1063:24, 1064:1, 1064:4, 1065:2
**conduit** [1] - 1067:14
**conference** [1] - 1073:1
**conflicts** [1] - 1041:17
**confusion** [1] - 1081:14
**congratulate** [1] - 1086:1
**Congress** [2] - 1042:25, 1055:7
**connection** [1] - 1063:2
**conscience** [1] - 1069:1
**conscientious** [2] - 1069:2, 1070:7
**consequences** [1] - 1044:9, 1053:16, 1064:3
**consider** [15] - 1042:22, 1044:7, 1045:20, 1045:25, 1053:10, 1053:22, 1056:6, 1056:11, 1056:13, 1060:1, 1061:5, 1063:1, 1063:5, 1064:11, 1071:1
**consideration** [4] - 1044:11, 1044:13, 1064:6, 1070:7
**considered** [1] - 1049:17
**constitute** [1] - 1052:21
**constitutes** [1] - 1052:8
**constructive** [1] - 1039:13
**consult** [1] - 1068:23
**contact** [1] - 1067:24
**contend** [1] - 1061:17
**contention** [2] - 1049:18, 1049:21
**continue** [3] - 1067:3, 1077:13, 1077:18
**Continued** [2] - 1037:1, 1073:16
**continued** [1] - 1072:20
**continues** [1] - 1052:10
**contradictions** [1] - 1048:12
**controls** [1] - 1042:7
**conviction** [1] - 1069:12
**convictions** [1] - 1069:2
**convinced** [1] - 1069:10
**convinces** [1] - 1049:21
**COOPER** [1] - 1037:5

**coordinate** [1] - 1074:20
**copies** [1] - 1070:15
**copy** [2] - 1041:6, 1076:24
**CORPORATION** [1] - 1036:7
**corporation** [1] - 1044:10
**Corporation** [3] - 1036:20, 1037:3, 1037:8
**corporations** [1] - 1044:12
**correct** [5] - 1042:4, 1077:18, 1083:9, 1083:16, 1083:17
**correctly** [3] - 1072:18, 1073:8, 1080:11
**Counsel** [1] - 1074:23
**counsel** [2] - 1038:3, 1073:2
**counsel's** [1] - 1042:8
**count** [1] - 1069:22
**counted** [1] - 1080:25
**country** [1] - 1085:5
**counts** [1] - 1044:5
**couple** [4] - 1039:5, 1040:13, 1050:14, 1065:11
**course** [10] - 1045:3, 1050:9, 1061:20, 1066:6, 1068:7, 1071:19, 1073:6, 1079:22, 1084:25, 1085:4
**Court** [11] - 1036:20, 1037:11, 1037:12, 1066:5, 1069:21, 1070:6, 1073:2, 1076:15, 1076:17, 1078:4, 1085:21
**court** [14] - 1038:1, 1046:7, 1047:15, 1066:14, 1066:17, 1067:1, 1067:10, 1068:6, 1070:1, 1074:1, 1076:1, 1078:1, 1085:24, 1087:3
**Court's** [7] - 1076:2, 1078:2, 1079:3, 1082:16, 1087:5, 1087:7, 1087:9
**Courthouse** [1] - 1036:5
**courtroom** [13] - 1038:18, 1039:19, 1046:11, 1046:17, 1074:15, 1074:19, 1076:11, 1076:23, 1077:20, 1080:8, 1082:6, 1082:14, 1086:6
**COURTROOM** [32] - 1038:2, 1038:17, 1038:19, 1074:9, 1074:14, 1076:8, 1076:12, 1076:18, 1077:3, 1077:11, 1077:19, 1080:7, 1082:5, 1082:7, 1082:13, 1082:15, 1083:1, 1083:4, 1083:8, 1083:11, 1083:15, 1083:19, 1083:22, 1083:25, 1084:3, 1084:6, 1084:9, 1084:12, 1084:15, 1084:18, 1086:5, 1086:7
**covered** [2] - 1051:11, 1051:19
**coverup** [1] - 1055:22
**creates** [1] - 1052:17
**credibility** [5] - 1043:15, 1044:19, 1047:23, 1047:25, 1048:22
**credible** [1] - 1046:18
**CRI** [1] - 1037:11
**criminal** [2] - 1049:3, 1049:6
**cross** [2] - 1048:10
**CRR** [1] - 1037:11
**curiosities** [1] - 1084:23

# D

**Dallas** [1] - 1036:17
**damage** [2] - 1058:6, 1072:4
**damages** [53] - 1056:9, 1056:11,

1056:13, 1056:14, 1056:15, 1056:17, 1056:22, 1057:4, 1057:7, 1057:9, 1057:21, 1058:5, 1058:7, 1058:9, 1058:12, 1058:16, 1058:19, 1059:8, 1059:14, 1060:9, 1060:11, 1060:13, 1060:15, 1060:22, 1061:13, 1062:25, 1063:2, 1063:3, 1063:6, 1063:7, 1063:8, 1063:9, 1063:11, 1063:15, 1063:16, 1063:18, 1063:20, 1064:5, 1064:12, 1064:15, 1064:16, 1064:17, 1064:18, 1064:21, 1064:22, 1065:1, 1065:4, 1065:6, 1071:12, 1071:14, 1071:17, 1071:19
**dangerous** [1] - 1041:25
**DATA** [1] - 1036:7
**Data** [33] - 1036:20, 1037:3, 1037:8, 1044:10, 1051:5, 1051:19, 1051:21, 1051:23, 1054:8, 1054:23, 1055:15, 1055:18, 1055:21, 1056:4, 1057:5, 1057:11, 1059:17, 1059:22, 1061:24, 1061:25, 1062:2, 1062:11, 1062:21, 1063:23, 1064:25, 1070:21, 1071:5, 1071:13, 1071:17, 1071:22, 1080:18, 1083:4, 1083:11
**Data's** [8] - 1052:7, 1055:22, 1055:25, 1056:2, 1056:6, 1058:1, 1064:4, 1065:2
**date** [12] - 1055:14, 1057:12, 1059:18, 1062:10, 1062:11, 1062:20, 1066:22, 1067:15, 1072:7, 1076:3, 1078:3, 1082:17
**date**........................ [1] - 1087:6
**date**..................................... [2] - 1087:8, 1087:10
**DAVID** [1] - 1036:22
**days** [2] - 1050:18, 1050:22
**dead** [1] - 1047:13
**deal** [2] - 1059:9, 1059:11
**decide** [17] - 1039:22, 1043:9, 1043:25, 1047:21, 1052:3, 1052:23, 1053:3, 1053:5, 1054:5, 1054:21, 1057:1, 1058:16, 1059:25, 1064:18, 1064:24, 1065:18, 1069:3
**decision** [8] - 1040:25, 1048:5, 1055:18, 1055:23, 1056:5, 1061:18, 1062:6, 1069:14
**deem** [1] - 1041:18, 1058:20, 1068:12
**deemed** [1] - 1078:11
**defendant** [5] - 1056:20, 1063:11, 1063:15, 1063:21
**defendant's** [3] - 1050:14, 1057:24, 1061:11
**defendants** [11] - 1036:9, 1042:2, 1047:11, 1060:3, 1061:17, 1061:19, 1061:21, 1062:1, 1062:4, 1063:4
**Defendants** [4] - 1036:19, 1037:2, 1037:3, 1037:7
**defense** [1] - 1047:19
**deference** [1] - 1069:7
**degree** [1] - 1064:2
**deliberate** [3] - 1039:21, 1064:1, 1068:24
**deliberating** [1] - 1068:22
**deliberation** [2] - 1068:7, 1070:8
**deliberations** [15] - 1040:7, 1044:2, 1062:2, 1066:6, 1067:4, 1067:17, 1067:20, 1067:23, 1068:18, 1069:17,

1069:23, 1074:7, 1074:11, 1077:13,
1077:18

**deliver** [1] - 1066:16

**delivering** [1] - 1066:14

**denial** [1] - 1052:14

**deprived** [2] - 1052:6, 1058:1

**DEPUTY** [33] - 1038:2, 1038:17,
1038:19, 1074:9, 1074:14, 1074:16,
1076:8, 1076:12, 1076:18, 1077:3,
1077:11, 1077:19, 1080:7, 1082:5,
1082:7, 1082:13, 1082:15, 1083:1,
1083:4, 1083:8, 1083:11, 1083:15,
1083:19, 1083:22, 1083:25, 1084:3,
1084:6, 1084:9, 1084:12, 1084:15,
1084:18, 1086:5, 1086:7

**deputy** [2] - 1074:15

**describe** [1] - 1060:6

**descriptions** [1] - 1053:13

**deserves** [1] - 1048:1

**deter** [1] - 1063:12

**determination** [3] - 1050:3, 1053:10,
1071:16

**determine** [15] - 1041:16, 1054:13,
1056:7, 1057:13, 1059:4, 1059:19,
1060:14, 1060:17, 1060:19, 1062:4,
1062:17, 1062:21, 1063:4, 1064:4,
1071:5

**determining** [5] - 1043:18, 1055:25,
1060:9, 1060:24, 1061:4

**difference** [5] - 1041:20, 1041:23,
1045:24, 1047:16, 1059:8

**differences** [1] - 1043:1

**different** [3] - 1041:9, 1054:24, 1079:4

**differs** [1] - 1042:19

**DILORENZO** [1] - 1037:10

**diminishment** [1] - 1052:13

**direct** [14] - 1045:20, 1045:24, 1046:1,
1046:2, 1046:4, 1046:6, 1046:8,
1046:13, 1046:14, 1046:18, 1046:21,
1047:17, 1048:9

**direction** [1] - 1049:15

**disabilities** [1] - 1051:18

**Disabilities** [4] - 1051:6, 1054:14,
1054:24, 1070:20

**disability** [5] - 1051:12, 1051:13,
1052:2, 1054:7, 1057:19

**disadvantage** [1] - 1052:18

**disagree** [1] - 1056:4

**disappointed** [1] - 1085:20

**discharge** [1] - 1051:14

**discharged** [2] - 1055:9, 1062:22

**discomfort** [1] - 1057:23

**discovered** [1] - 1061:20

**discretion** [4] - 1058:18, 1064:19,
1064:22, 1065:6

**discriminate** [1] - 1051:12

**discriminated** [2] - 1051:22, 1054:9

**discrimination** [1] - 1054:10

**discuss** [3] - 1068:16, 1068:17,
1068:19

**discussion** [1] - 1073:15

**Discussion** [2] - 1074:22, 1082:12

**dislike** [1] - 1065:8

**dispassion** [1] - 1058:17

**dispute** [2] - 1069:23, 1070:5

**disputes** [1] - 1085:22

**disregard** [6] - 1045:18, 1048:18,
1048:19, 1063:22, 1063:24, 1065:5

**disruptive** [1] - 1052:22

**distinguished** [1] - 1073:11

**distress** [2] - 1057:22, 1058:2

**DISTRICT** [3] - 1036:1, 1036:1,
1036:12

**documents** [3] - 1050:17, 1079:4,
1079:5

**done** [1] - 1043:10

**doomsday** [1] - 1042:3

**door** [1] - 1046:14

**doubt** [2] - 1049:3, 1049:5

**down** [9] - 1039:1, 1039:7, 1040:19,
1051:1, 1072:18, 1080:11, 1080:24,
1081:25, 1082:10

**draw** [6] - 1041:17, 1041:22, 1044:23,
1047:5, 1047:18, 1047:19

**drawing** [2] - 1047:8, 1058:19

**drawn** [2] - 1047:17, 1047:21

**dripping** [1] - 1046:17

**drive** [1] - 1046:5

**due** [1] - 1055:3

**during** [8] - 1045:3, 1050:9, 1057:20,
1059:23, 1061:20, 1065:21, 1066:5,
1067:17

**duties** [1] - 1053:8

**duty** [4] - 1041:12, 1043:19, 1068:13,
1068:23

# E

**E-mail** [1] - 1037:13

**e-mails** [1] - 1050:25

**early** [1] - 1039:23

**earned** [7] - 1057:10, 1057:14,
1059:21, 1059:23, 1060:16, 1060:17,
1060:22

**easiest** [1] - 1081:25

**EASTERN** [1] - 1036:1

**easy** [6] - 1044:2, 1046:1, 1050:21,
1072:11, 1082:8

**eat** [1] - 1077:12

**eating** [1] - 1077:14

**effect** [4] - 1050:5, 1064:9, 1069:3,
1069:12

**effective** [2] - 1039:10, 1055:14

**effort** [2] - 1060:11, 1060:18

**EIDELMAN** [8] - 1037:5, 1073:13,
1079:16, 1079:21, 1080:1, 1080:3,
1080:5, 1086:11

**Eidelman** [1] - 1079:24

**eight** [2] - 1068:22, 1079:4

**either** [6] - 1049:20, 1050:3, 1056:10,
1061:23, 1062:7, 1071:23

**element** [1] - 1057:9

**eligible** [4] - 1054:25, 1055:2, 1055:5,
1078:25

**emotional** [2] - 1057:22, 1058:2

**emphasize** [1] - 1041:5

**employed** [1] - 1059:21

**employee** [5] - 1051:15, 1052:9,
1052:23, 1055:2, 1055:5

**employee's** [1] - 1052:20

**employees** [5] - 1051:15, 1053:18,

1054:1, 1055:1, 1078:25

**employer's** [1] - 1053:11

**employers** [2] - 1054:25, 1078:24

**employment** [29] - 1051:16, 1052:4,
1052:5, 1052:8, 1052:10, 1052:12,
1052:14, 1052:19, 1052:22, 1053:2,
1053:4, 1054:15, 1055:21, 1059:24,
1060:12, 1060:20, 1060:25, 1061:2,
1061:4, 1061:10, 1061:14, 1061:18,
1061:22, 1061:25, 1062:7, 1071:2,
1071:23, 1083:12

**end** [2] - 1066:13, 1070:10

**ends** [4] - 1057:12, 1059:9, 1059:18,
1086:10

**energy** [1] - 1086:2

**engage** [2] - 1047:8, 1058:21

**engaging** [1] - 1063:12

**entering** [1] - 1076:10

**enters** [4] - 1038:18, 1076:11, 1080:8,
1082:14

**entire** [1] - 1048:20

**entirely** [2] - 1064:19, 1065:17

**entitled** [12] - 1044:11, 1044:13,
1055:8, 1056:20, 1057:2, 1057:7,
1059:25, 1060:9, 1060:14, 1062:18,
1063:14, 1066:6

**entitlement** [5] - 1055:12, 1079:8,
1079:19, 1080:19, 1081:7

**entity** [2] - 1051:11, 1051:19

**equal** [2] - 1044:12, 1064:16

**equidistant** [1] - 1038:22

**especially** [1] - 1086:2

**ESQ** [5] - 1036:17, 1036:22, 1037:5,
1037:5, 1037:10

**essence** [1] - 1049:25

**essential** [5] - 1053:7, 1053:8,
1053:12, 1053:21, 1054:6

**establish** [1] - 1049:12

**established** [1] - 1047:1

**et** [7] - 1036:7, 1036:20, 1037:3,
1037:8, 1045:12, 1045:13, 1046:4

**evasive** [1] - 1048:8

**evenly** [1] - 1049:22

**event** [2] - 1049:11, 1056:23

**evidence** [76] - 1041:14, 1041:16,
1041:17, 1041:19, 1041:22, 1041:24,
1044:1, 1044:7, 1044:22, 1044:23,
1044:25, 1045:3, 1045:15, 1045:19,
1045:21, 1045:23, 1046:1, 1046:2,
1046:4, 1046:5, 1046:6, 1046:8,
1046:13, 1046:15, 1046:18, 1046:19,
1046:22, 1046:23, 1047:2, 1047:4,
1047:14, 1047:18, 1048:3, 1049:4,
1049:10, 1049:13, 1049:16, 1049:20,
1049:25, 1050:1, 1050:4, 1050:13,
1052:24, 1052:25, 1055:16, 1056:25,
1057:17, 1058:3, 1058:7, 1058:20,
1060:6, 1060:7, 1061:12, 1061:15,
1062:5, 1062:8, 1062:15, 1065:20,
1065:23, 1065:25, 1068:14, 1068:16,
1069:3, 1069:6, 1069:12, 1070:8,
1070:12, 1072:9, 1076:2, 1078:2,
1082:16, 1087:6, 1087:7, 1087:9

**evil** [1] - 1063:25

**evil-minded** [1] - 1063:25

**EWING** [1] - 1037:2

**exact** [1] - 1058:4
**exactly** [4] - 1042:14, 1079:25, 1081:2, 1081:22
**examine** [1] - 1069:5
**example** [3] - 1041:25, 1046:7, 1062:15
**examples** [1] - 1062:14
**except** [1] - 1068:3
**exception** [1] - 1067:24
**exceptions** [3] - 1073:5, 1073:6, 1073:13
**excessive** [1] - 1058:8
**executive** [1] - 1040:25
**exhausted** [5] - 1055:11, 1079:8, 1079:19, 1080:19, 1081:6
**exhaustive** [2] - 1052:7, 1053:20
**Exhibit** [11] - 1076:5, 1076:15, 1076:17, 1077:16, 1078:2, 1078:5, 1079:3, 1082:16, 1082:19, 1087:7, 1087:9
**exhibit** [9] - 1038:8, 1038:9, 1038:13, 1045:7, 1045:12, 1068:11, 1076:8, 1076:18, 1076:21
**EXHIBITS** [1] - 1087:3
**exhibits** [10] - 1040:9, 1040:12, 1045:2, 1045:4, 1045:9, 1050:24, 1054:19, 1068:11, 1076:22, 1077:16
**Exhibits** [2] - 1076:2, 1087:5
**exist** [1] - 1064:20
**existence** [1] - 1046:25
**exists** [1] - 1053:23
**exits** [4] - 1074:19, 1077:20, 1082:6, 1086:6
**expect** [1] - 1044:6
**experience** [5] - 1046:24, 1047:7, 1053:18, 1085:4, 1085:10
**explain** [6] - 1039:1, 1039:10, 1040:3, 1041:5, 1045:24, 1063:19
**explained** [5] - 1040:17, 1071:3, 1071:7, 1071:15, 1071:25
**explaining** [1] - 1072:17
**expressed** [2] - 1042:8, 1043:8
**expressing** [1] - 1043:10
**extensive** [1] - 1067:6
**extent** [1] - 1064:7
**extra** [1] - 1070:16

## F

**facilities** [1] - 1068:20
**Facsimile** [1] - 1037:13
**fact** [22] - 1043:18, 1045:4, 1046:25, 1047:5, 1047:10, 1047:21, 1047:24, 1048:24, 1051:17, 1056:14, 1056:18, 1066:8, 1078:7, 1078:9, 1078:12, 1078:15, 1079:7, 1080:13, 1080:23, 1081:11, 1081:18, 1081:24
**fact-finding** [2] - 1047:24, 1048:24
**factor** [1] - 1053:20
**factors** [1] - 1053:22
**facts** [19] - 1041:14, 1041:15, 1042:7, 1042:16, 1043:7, 1043:9, 1043:11, 1043:16, 1043:25, 1044:21, 1046:20, 1047:1, 1047:3, 1047:4, 1047:17, 1058:20, 1065:20, 1065:22

**factual** [1] - 1085:23
**fail** [1] - 1068:9
**failed** [2] - 1060:19, 1061:12
**failing** [1] - 1061:13
**failure** [1] - 1060:24
**fair** [3] - 1044:13, 1058:8, 1068:13
**false** [2] - 1048:18, 1048:19
**Family** [3] - 1051:7, 1054:23, 1059:10
**FAPR** [1] - 1037:11
**far** [3] - 1051:9, 1058:22, 1060:8
**farewell** [1] - 1084:23
**fashion** [1] - 1066:3
**favor** [1] - 1056:23
**fellow** [1] - 1069:5
**few** [2] - 1084:21, 1086:4
**field** [1] - 1044:15
**figure** [2] - 1040:14, 1054:20
**final** [1] - 1040:13
**finally** [1] - 1059:25
**finders** [1] - 1047:22
**fine** [2] - 1040:15, 1077:2
**finish** [1] - 1065:12
**fired** [1] - 1055:8
**FIRST** [1] - 1036:7
**first** [17] - 1039:5, 1040:3, 1052:2, 1057:9, 1059:20, 1060:5, 1064:24, 1066:10, 1066:12, 1070:20, 1073:4, 1078:23, 1079:3, 1079:22, 1080:11, 1080:17, 1084:25
**First** [41] - 1036:20, 1037:3, 1037:8, 1044:10, 1051:5, 1051:19, 1051:21, 1051:23, 1052:7, 1054:8, 1054:23, 1055:15, 1055:18, 1055:21, 1055:22, 1055:25, 1056:2, 1056:4, 1056:6, 1057:5, 1057:11, 1058:1, 1059:17, 1059:22, 1061:24, 1061:25, 1062:2, 1062:11, 1062:21, 1063:23, 1064:4, 1064:25, 1065:2, 1070:21, 1071:5, 1071:13, 1071:17, 1071:22, 1080:18, 1083:4, 1083:11
**Five** [1] - 1053:18
**fix** [1] - 1065:6
**fixing** [1] - 1058:18
**Floor** [1] - 1037:9
**flow** [1] - 1041:23
**FMLA** [22] - 1051:8, 1054:23, 1054:25, 1055:24, 1056:3, 1056:11, 1058:24, 1059:1, 1063:3, 1071:10, 1071:22, 1071:23, 1072:7, 1078:6, 1078:18, 1078:23, 1078:24, 1079:22, 1080:12, 1080:18, 1083:11, 1083:12
**focus** [1] - 1067:8
**folks** [4] - 1039:19, 1039:25, 1082:18, 1084:19
**follow** [1] - 1044:7
**follower** [1] - 1069:24
**following** [2] - 1053:22, 1060:16
**follows** [1] - 1065:14
**food** [2] - 1074:8, 1077:9
**FOR** [1] - 1036:11
**force** [5] - 1055:19, 1055:22, 1056:2, 1056:7, 1071:25
**FOREPERSON** [7] - 1082:23, 1083:3, 1083:7, 1083:10, 1083:14, 1083:17, 1084:17
**foreperson** [13] - 1040:7, 1066:3,

1066:4, 1066:9, 1066:16, 1066:23, 1067:13, 1067:21, 1068:4, 1069:19, 1070:2, 1076:14, 1080:9
**form** [1] - 1045:1
**formally** [1] - 1057:15
**forth** [1] - 1054:19
**forthright** [1] - 1048:7
**forward** [1] - 1074:5
**four** [2] - 1053:16, 1086:9
**frankness** [1] - 1069:6
**FREDERIC** [1] - 1036:12
**Frisolone** [2] - 1037:11, 1040:19
**front** [1] - 1056:16
**full** [1] - 1070:7
**fullest** [1] - 1070:9
**function** [6] - 1048:23, 1053:15, 1053:17, 1053:21, 1054:1, 1054:2
**functions** [6] - 1053:7, 1053:8, 1053:11, 1053:24, 1054:4, 1054:6
**fund** [1] - 1042:16
**fundamental** [1] - 1053:8
**future** [2] - 1058:15, 1063:13

## G

**gag** [1] - 1085:11
**GARY** [1] - 1037:5
**general** [2] - 1040:3, 1050:6
**gentlemen** [1] - 1073:11
**GILLIAN** [1] - 1037:5
**given** [11] - 1044:8, 1046:24, 1048:2, 1048:11, 1052:23, 1056:22, 1057:1, 1065:22, 1065:25, 1066:18, 1073:5
**glass** [1] - 1046:3
**God** [1] - 1046:24
**God-given** [1] - 1046:24
**grateful** [1] - 1074:25
**great** [2] - 1070:19, 1073:14
**greater** [5] - 1044:11, 1050:1, 1050:2, 1066:7
**guess** [5] - 1038:23, 1040:17, 1072:12, 1077:9, 1082:20
**guesswork** [5] - 1041:21, 1047:9, 1058:10, 1058:13, 1058:21
**guidance** [1] - 1056:22
**guide** [3] - 1041:7, 1065:10, 1069:17
**guided** [2] - 1042:20, 1058:17

## H

**hand** [3] - 1067:25, 1070:13, 1074:14
**handful** [2] - 1043:12, 1051:1
**handling** [1] - 1066:5
**handwriting** [1] - 1066:24
**happy** [3] - 1070:17, 1072:13, 1074:2
**hard** [1] - 1076:24
**harm** [2] - 1064:2, 1064:8
**harsh** [1] - 1066:5
**health** [2] - 1055:3, 1055:6
**hear** [8] - 1039:9, 1040:10, 1040:21, 1047:1, 1050:15, 1068:21, 1072:15
**heard** [9] - 1042:17, 1045:6, 1045:22, 1047:11, 1049:5, 1050:25, 1054:11, 1057:17, 1061:15

**hearing** [1] - 1073:2
**hears** [1] - 1045:23
**held** [7] - 1053:19, 1073:1, 1074:22, 1077:4, 1077:8, 1079:17, 1082:12
**help** [1] - 1069:16
**helpful** [2] - 1040:24, 1045:13
**hesitate** [1] - 1069:9
**hiding** [1] - 1048:8
**high** [1] - 1064:2
**higher** [1] - 1064:16
**highly** [1] - 1054:2
**hip** [1] - 1045:14
**hired** [2] - 1054:3, 1062:3
**hiring** [1] - 1051:14
**home** [1] - 1046:5
**honest** [1] - 1069:11
**Honor** [4] - 1078:14, 1079:2, 1079:21, 1084:15
**HONORABLE** [1] - 1036:12
**hope** [2] - 1085:3, 1085:9
**hopeful** [1] - 1066:22
**hopefully** [1] - 1067:7
**hours** [1] - 1061:7
**housekeeping** [1] - 1038:6
**hovering** [1] - 1039:3
**human** [2] - 1043:24, 1044:4
**hundred** [2] - 1039:5, 1051:3
**hundreds** [2] - 1050:16, 1054:18

## I

**idea** [3] - 1047:14, 1056:8
**idle** [1] - 1041:24
**impartiality** [1] - 1043:19
**impartially** [1] - 1044:7
**implicit** [1] - 1049:9
**important** [5] - 1047:23, 1048:23, 1067:21, 1068:15, 1085:4
**importantly** [1] - 1064:13
**impose** [1] - 1064:18
**impressed** [1] - 1048:6
**improperly** [1] - 1059:7
**improve** [1] - 1039:14
**inadequate** [1] - 1058:8
**inadvertently** [1] - 1072:16
**includes** [1] - 1071:14
**including** [3] - 1057:22, 1059:24, 1064:6
**income** [2] - 1057:14, 1059:20
**inconvenience** [1] - 1052:23
**indeed** [1] - 1046:20
**INDEX** [1] - 1087:1
**indicate** [1] - 1069:20
**indifference** [1] - 1064:3
**individual** [8] - 1044:14, 1047:11, 1051:12, 1051:13, 1053:5, 1054:8, 1068:25, 1071:7
**individuals** [1] - 1042:1
**infer** [3] - 1046:20, 1046:25, 1047:4
**inferences** [10] - 1041:18, 1041:22, 1041:23, 1044:22, 1047:6, 1047:8, 1047:16, 1047:19, 1047:21, 1058:19
**inferior** [1] - 1052:15
**inflicted** [1] - 1064:8
**influenced** [1] - 1048:16, 1065:7

**information** [4] - 1062:12, 1067:5, 1067:12, 1072:2
**injured** [1] - 1063:9
**injuries** [3] - 1058:14, 1063:17, 1064:14
**injury** [2] - 1058:7, 1064:8
**inquiries** [1] - 1045:5
**insecure** [1] - 1081:21
**inside** [1] - 1084:20
**insistent** [1] - 1048:11
**instead** [1] - 1039:20
**instruct** [3] - 1040:6, 1042:15, 1042:20
**instructed** [3] - 1045:18, 1071:18, 1073:8
**instructing** [1] - 1056:14
**instruction** [5] - 1056:18, 1062:16, 1065:9, 1065:10, 1070:24
**instructions** [17] - 1040:1, 1042:16, 1042:20, 1042:21, 1042:22, 1049:8, 1050:9, 1056:21, 1057:1, 1065:13, 1065:14, 1065:16, 1070:23, 1071:1, 1071:8, 1071:24, 1072:6
**insurance** [1] - 1057:19
**intended** [3] - 1057:21, 1063:9, 1065:16
**intense** [1] - 1050:18
**intent** [1] - 1064:8
**intentional** [1] - 1063:25
**intentionally** [1] - 1051:21
**interpret** [2] - 1043:10, 1043:14
**intervene** [1] - 1043:12
**introduced** [1] - 1058:3
**invoices** [1] - 1061:23
**involuntary** [1] - 1052:15
**issue** [3] - 1078:21, 1079:2, 1085:23
**issues** [8] - 1043:18, 1050:7, 1068:16, 1069:6, 1070:8, 1070:11, 1085:14, 1085:23

## J

**January** [8] - 1055:13, 1057:16, 1059:5, 1059:22, 1062:19, 1062:23, 1080:20, 1081:8
**Jessica** [1] - 1076:13
**job** [19] - 1043:7, 1051:13, 1051:15, 1051:24, 1052:15, 1053:7, 1053:8, 1053:9, 1053:13, 1053:17, 1053:19, 1054:6, 1054:11, 1054:16, 1061:8, 1074:3, 1074:23, 1074:24, 1086:1
**joint** [1] - 1076:8
**JUDGE** [1] - 1036:12
**judge** [6] - 1039:3, 1039:9, 1044:18, 1065:20, 1073:13, 1084:21
**Judge** [6] - 1039:12, 1066:24, 1072:16, 1073:11, 1077:3, 1080:1
**judges** [3] - 1039:7, 1041:15, 1047:24
**judgment** [4] - 1053:11, 1056:3, 1064:10, 1069:1
**juror** [8] - 1066:7, 1083:19, 1083:22, 1083:25, 1084:3, 1084:6, 1084:9, 1084:12
**JUROR** [14] - 1080:16, 1080:22, 1081:4, 1081:10, 1081:12, 1081:15, 1082:2, 1083:21, 1083:24, 1084:2,

1084:5, 1084:8, 1084:11, 1084:14
**Juror** [1] - 1039:7
**jurors** [8] - 1038:5, 1041:12, 1044:17, 1068:23, 1069:5, 1070:9, 1073:8, 1080:10
**JURY** [3] - 1036:11, 1036:12, 1038:21
**Jury** [8] - 1038:18, 1074:19, 1076:11, 1077:20, 1080:8, 1082:6, 1082:14, 1086:6
**jury** [21] - 1039:5, 1039:15, 1045:11, 1063:10, 1067:22, 1068:2, 1068:5, 1068:15, 1069:20, 1073:3, 1074:6, 1076:9, 1076:10, 1076:19, 1076:20, 1076:9, 1081:17, 1081:21, 1083:1, 1084:15, 1085:2
**justice** [2] - 1049:14, 1085:8
**justified** [1] - 1047:7
**justifies** [1] - 1064:4
**justify** [2] - 1064:11, 1065:1

## K

**keep** [5] - 1043:2, 1065:15, 1070:15, 1070:18, 1076:15
**KING** [1] - 1037:7
**knowledge** [2] - 1048:14, 1064:2
**known** [1] - 1061:23
**knows** [1] - 1074:21

## L

**large** [1] - 1054:12
**last** [1] - 1038:8
**LAW** [1] - 1036:14
**law** [31] - 1039:1, 1039:2, 1039:11, 1042:15, 1042:21, 1042:22, 1042:24, 1043:3, 1043:25, 1044:5, 1044:7, 1044:12, 1051:1, 1054:19, 1055:6, 1055:7, 1056:16, 1056:17, 1058:24, 1060:6, 1060:7, 1060:10, 1063:10, 1065:3, 1065:21, 1065:25, 1066:20, 1068:14, 1071:7, 1072:17
**laws** [1] - 1043:4
**lawsuit** [1] - 1061:20
**lawyers** [8] - 1042:18, 1045:16, 1050:20, 1072:16, 1072:19, 1085:13, 1085:15, 1085:19
**lead** [1] - 1074:6
**leaders** [1] - 1041:1
**Leave** [3] - 1051:7, 1054:23, 1059:10
**leave** [30] - 1051:23, 1052:3, 1053:1, 1053:4, 1053:6, 1054:7, 1054:15, 1055:1, 1055:2, 1055:8, 1055:12, 1055:17, 1055:24, 1057:6, 1057:11, 1057:12, 1057:16, 1057:25, 1059:3, 1059:7, 1063:16, 1068:19, 1070:22, 1071:14, 1071:18, 1074:20, 1079:1, 1080:20, 1081:7, 1083:6
**leaving** [1] - 1051:24
**led** [1] - 1062:12
**legal** [5] - 1042:18, 1043:3, 1063:22, 1085:22
**legible** [2] - 1066:23, 1076:25
**legitimate** [1] - 1055:9
**LEHR** [1] - 1037:2

**length** [1] - 1050:2
**less** [1] - 1066:15
**lesser** [1] - 1044:11
**level** [2] - 1040:23, 1044:14
**liability** [4] - 1054:13, 1056:10, 1056:12, 1056:24
**liable** [6] - 1063:5, 1070:21, 1071:6, 1071:22, 1083:5, 1083:12
**life** [1] - 1085:5
**light** [1] - 1047:7
**likely** [6] - 1049:13, 1049:18, 1049:19, 1049:21, 1049:23, 1058:15
**limit** [2] - 1062:15, 1062:23
**limited** [3] - 1053:25, 1060:2, 1060:4
**list** [12] - 1038:13, 1045:7, 1045:8, 1045:10, 1045:11, 1045:12, 1052:7, 1053:20, 1068:11, 1076:8, 1076:18, 1076:21
**listen** [4] - 1044:21, 1068:15, 1081:5, 1082:25
**lists** [1] - 1038:9
**litigants** [1] - 1044:12
**litigated** [1] - 1085:22
**LLP** [1] - 1037:2
**locate** [1] - 1067:6
**logical** [1] - 1041:23
**look** [6] - 1041:2, 1044:4, 1070:25, 1077:1, 1077:7, 1079:6
**looked** [1] - 1077:7
**looking** [3] - 1048:21, 1079:20, 1079:21
**looks** [1] - 1081:1
**loss** [2] - 1059:12, 1060:11
**lost** [3] - 1057:10, 1058:24, 1059:13
**LOUIS** [1] - 1037:10
**lower** [2] - 1062:1, 1064:16

## M

**madam** [1] - 1080:9
**Madison** [1] - 1037:8
**mail** [1] - 1037:13
**mails** [1] - 1050:25
**malicious** [2] - 1063:24, 1065:5
**maliciously** [3] - 1063:21, 1063:23, 1064:25
**marching** [1] - 1039:20
**marked** [13] - 1038:9, 1076:2, 1076:4, 1076:15, 1077:15, 1078:2, 1078:4, 1079:3, 1082:16, 1082:19, 1087:5, 1087:7, 1087:9
**marshal** [7] - 1066:5, 1067:25, 1069:19, 1069:25, 1070:1, 1074:5, 1074:13
**Marshal** [1] - 1074:15
**MARSHAL** [1] - 1074:16
**martini** [1] - 1046:3
**Maryland** [1] - 1037:4
**matter** [6] - 1038:6, 1048:3, 1050:11, 1069:24, 1070:6, 1086:13
**matters** [1] - 1063:18
**McKinney** [1] - 1036:16
**mean** [6] - 1044:10, 1050:1, 1053:21, 1056:15, 1056:19, 1085:11
**meaning** [1] - 1053:6

**meaningful** [1] - 1085:10
**means** [4] - 1040:23, 1049:13, 1049:25, 1071:21
**meantime** [1] - 1067:4
**measure** [1] - 1056:21
**Medical** [3] - 1051:7, 1054:23, 1059:10
**medical** [19] - 1051:22, 1051:23, 1052:3, 1053:1, 1053:4, 1053:6, 1054:6, 1054:15, 1055:1, 1055:8, 1057:6, 1057:25, 1059:3, 1059:7, 1070:22, 1071:14, 1071:18, 1079:1, 1083:5
**meet** [1] - 1085:13
**member** [2] - 1068:2, 1068:4
**mental** [1] - 1057:23
**mentioned** [2] - 1047:11, 1059:17
**menus** [1] - 1074:9
**mere** [1] - 1047:9
**merely** [2] - 1055:22, 1069:4
**merits** [1] - 1068:5
**Mike** [4] - 1074:8, 1074:20, 1076:17, 1077:2
**mind** [4] - 1041:8, 1043:2, 1065:15, 1081:2
**minded** [1] - 1063:25
**mindful** [1] - 1042:4
**minds** [2] - 1049:17, 1050:5
**mine** [1] - 1043:7
**minimize** [1] - 1060:11
**minutes** [3] - 1065:13, 1084:22, 1086:4
**misconduct** [4] - 1061:19, 1061:21, 1062:11
**mistakes** [4] - 1058:11, 1065:11, 1072:17, 1074:3
**mitigate** [1] - 1061:13
**mitigating** [1] - 1064:11
**mitigation** [5] - 1060:5, 1060:7, 1060:8, 1060:13, 1072:8
**monetary** [1] - 1058:2
**money** [1] - 1059:24
**month** [1] - 1062:2
**morning** [2] - 1038:20, 1038:21
**most** [1] - 1064:13
**mount** [2] - 1039:6, 1039:13
**move** [1] - 1038:23
**Mr. Innelli** [4] - 1070:3, 1074:4, 1076:7, 1082:24
**must** [21] - 1042:15, 1042:20, 1044:21, 1049:9, 1052:22, 1052:23, 1053:4, 1053:10, 1054:8, 1055:24, 1058:6, 1058:8, 1058:17, 1060:10, 1060:15, 1062:22, 1064:24, 1065:7, 1065:24, 1069:3, 1069:14

## N

**named** [1] - 1042:2
**namely** [1] - 1062:19
**names** [1] - 1047:11
**nature** [7] - 1045:5, 1050:18, 1050:23, 1061:3, 1061:5, 1061:14, 1064:7
**necessarily** [2] - 1058:3, 1079:23
**necessary** [1] - 1072:2
**need** [11] - 1057:3, 1058:2, 1063:5,

1064:20, 1066:9, 1067:24, 1077:2, 1077:6, 1077:7, 1082:20, 1084:17
**never** [1] - 1068:4
**new** [1] - 1052:15
**NEW** [1] - 1036:1
**New** [4] - 1036:5, 1036:21, 1037:9
**next** [3] - 1053:5, 1072:20, 1073:16
**nice** [3] - 1046:9, 1055:6, 1076:14
**nine** [1] - 1070:15
**NO** [7] - 1083:21, 1083:24, 1084:2, 1084:5, 1084:8, 1084:11, 1084:14
**nonexistence** [1] - 1046:25
**note** [11] - 1058:10, 1067:25, 1069:18, 1069:25, 1076:4, 1076:14, 1077:16, 1078:4, 1081:25, 1082:18
**notes** [3] - 1040:16, 1040:22, 1048:22
**nothing** [2] - 1065:15, 1086:8
**notice** [1] - 1055:13
**notified** [1] - 1057:16
**November** [1] - 1057:15
**number** [4] - 1045:12, 1050:2, 1050:18, 1053:25
**numerical** [1] - 1069:22

## O

**o'clock** [4] - 1039:24, 1074:10, 1077:10, 1086:3
**oath** [4] - 1043:5, 1070:9, 1074:5, 1074:12
**objection** [1] - 1073:9
**obtained** [2] - 1059:18
**obviously** [7] - 1041:3, 1052:9, 1055:5, 1056:13, 1070:23, 1074:3, 1085:3
**occasions** [1] - 1043:12
**occurred** [1] - 1055:21
**OF** [3] - 1036:1, 1036:11, 1036:14
**office** [1] - 1043:5
**OFFICE** [1] - 1036:14
**officers** [2] - 1044:16
**Official** [1] - 1037:12
**official** [1] - 1070:16
**often** [1] - 1043:12
**omission** [1] - 1046:1
**once** [13] - 1040:16, 1041:14, 1042:10, 1044:22, 1045:17, 1047:6, 1065:16, 1065:19, 1067:24, 1068:7, 1069:22, 1070:5, 1071:24
**one** [16] - 1038:6, 1041:24, 1045:20, 1045:21, 1046:6, 1047:18, 1050:8, 1053:11, 1053:20, 1053:23, 1068:15, 1068:23, 1070:16, 1070:20, 1079:22, 1085:25
**open** [8] - 1038:1, 1039:13, 1066:14, 1066:16, 1068:6, 1074:1, 1076:1, 1078:1
**opening** [2] - 1041:13, 1042:8
**operation** [1] - 1041:1
**operations** [1] - 1045:6
**opinion** [8] - 1043:8, 1043:11, 1043:15, 1078:7, 1080:13, 1081:11, 1081:19, 1081:24
**opinions** [3] - 1043:2, 1069:7, 1069:9
**opportunity** [4] - 1060:20, 1060:23,

*(orally - re)*

1060:25, 1077:12
**orally** [1] - 1068:6
**order** [4] - 1054:13, 1066:2, 1067:20, 1072:1
**orderly** [1] - 1066:3
**orders** [1] - 1039:20
**otherwise** [1] - 1043:24
**ought** [1] - 1043:23
**outside** [6] - 1046:15, 1046:19, 1046:21, 1067:22, 1068:1, 1069:20
**own** [1] - 1046:3

## P

**P-92** [1] - 1076:24
**P.C** [2] - 1036:14, 1036:19
**p.m** [8] - 1076:1, 1076:11, 1077:20, 1078:1, 1080:8, 1082:6, 1082:14, 1086:6
**page** [2] - 1072:20, 1073:16
**Page** [2] - 1078:5, 1080:11
**pages** [1] - 1051:3
**paid** [1] - 1050:21
**pain** [1] - 1071:14
**paper** [5] - 1045:8, 1066:18, 1066:22, 1066:25, 1067:13
**paragraph** [10] - 1078:6, 1078:16, 1078:18, 1078:19, 1078:22, 1078:24, 1080:12, 1080:14, 1080:18, 1081:1
**pardon** [1] - 1078:20
**part** [13] - 1040:3, 1040:5, 1040:6, 1044:1, 1047:23, 1048:18, 1048:19, 1048:23, 1051:25, 1054:12, 1055:19, 1065:9, 1068:8
**particular** [2] - 1048:18, 1057:25
**parties** [5] - 1038:3, 1044:6, 1051:19, 1069:24, 1070:6
**parts** [1] - 1040:2
**party** [6] - 1043:20, 1049:9, 1050:11, 1064:9, 1065:8, 1085:23
**pass** [1] - 1070:18
**passed** [1] - 1055:7
**passing** [2] - 1069:24, 1070:6
**passionate** [1] - 1074:24
**patriotic** [1] - 1085:9
**pause** [3] - 1077:4, 1077:8, 1079:17
**pay** [21] - 1039:3, 1057:10, 1057:11, 1057:13, 1058:22, 1058:24, 1059:2, 1059:9, 1059:12, 1059:15, 1059:16, 1060:1, 1060:2, 1060:4, 1062:9, 1062:18, 1062:23, 1071:15, 1072:5, 1072:7
**payments** [1] - 1057:19
**pen** [1] - 1084:17
**people** [5] - 1051:18, 1066:14, 1068:22, 1085:13, 1085:21
**per** [1] - 1062:2
**perceive** [1] - 1048:16
**perfect** [1] - 1074:3
**perform** [9] - 1043:19, 1051:24, 1053:7, 1053:17, 1053:24, 1054:1, 1054:3, 1054:5, 1054:9
**performing** [1] - 1053:15
**period** [9] - 1057:20, 1059:3, 1059:5, 1059:13, 1059:16, 1059:23, 1062:23,

1071:15, 1079:23
**permissible** [1] - 1045:20
**permits** [2] - 1058:24, 1063:10
**permitted** [2] - 1047:5, 1047:8
**person** [4] - 1044:3, 1049:15, 1066:12, 1066:23
**person's** [1] - 1052:18
**persuasiveness** [1] - 1050:4
**phrase** [3] - 1045:22, 1045:23, 1049:5
**piece** [3] - 1062:7, 1066:21, 1067:13
**pieces** [1] - 1045:8
**place** [1] - 1066:10
**placed** [9] - 1051:23, 1053:6, 1054:14, 1057:11, 1057:12, 1057:15, 1059:3, 1059:7, 1063:16
**Plaintiff** [1] - 1036:4
**plaintiff** [67] - 1047:18, 1050:6, 1051:4, 1051:21, 1051:23, 1052:3, 1052:5, 1052:24, 1053:3, 1053:5, 1053:14, 1054:3, 1054:5, 1054:22, 1055:4, 1055:11, 1055:16, 1055:19, 1055:23, 1056:1, 1056:12, 1056:20, 1056:23, 1057:2, 1057:6, 1057:10, 1057:12, 1057:14, 1057:22, 1057:24, 1058:14, 1058:23, 1059:17, 1059:18, 1059:21, 1059:23, 1059:25, 1060:9, 1060:10, 1060:16, 1060:17, 1060:19, 1061:1, 1061:12, 1061:19, 1061:23, 1062:2, 1062:9, 1062:17, 1062:22, 1063:2, 1063:10, 1063:14, 1063:17, 1063:18, 1064:15, 1071:2, 1071:13, 1071:18, 1072:6, 1079:8, 1079:19, 1080:17, 1080:19, 1081:6, 1083:5
**plaintiff's** [18] - 1050:13, 1051:25, 1055:20, 1057:7, 1057:18, 1060:3, 1060:14, 1060:24, 1061:18, 1061:22, 1061:25, 1062:7, 1062:13, 1062:23, 1063:22, 1063:24, 1071:23, 1083:12
**Plaintiffs** [2] - 1036:14, 1036:15
**playing** [1] - 1044:14
**PLLC** [1] - 1037:7
**point** [1] - 1039:18
**police** [1] - 1044:16
**polled** [1] - 1084:15
**position** [2] - 1053:23, 1059:19
**Pratt** [1] - 1037:4
**pre** [1] - 1061:25
**pre-First** [1] - 1061:25
**precise** [2] - 1078:16, 1078:22
**predated** [1] - 1061:24
**prejudice** [2] - 1043:20, 1065:7
**prepared** [1] - 1069:15
**preponderance** [10] - 1049:4, 1049:10, 1049:12, 1049:25, 1050:12, 1052:25, 1055:16, 1056:25, 1061:12, 1062:5
**presence** [1] - 1073:2
**present** [5] - 1038:3, 1059:13, 1062:19, 1072:8
**presented** [3] - 1045:1, 1052:24, 1065:21
**preserved** [1] - 1073:7
**pretty** [4] - 1041:25, 1046:1, 1051:17, 1054:20
**prevail** [1] - 1057:2
**previously** [1] - 1053:19
**principle** [1] - 1042:18

**principles** [1] - 1040:3
**printed** [1] - 1084:17
**privileges** [2] - 1051:16, 1053:2
**probability** [1] - 1064:2
**problem** [2] - 1045:13, 1078:10
**problems** [1] - 1071:20
**procedures** [1] - 1051:14
**proceed** [2] - 1066:2, 1067:20
**Proceedings** [1] - 1037:14
**proceedings** [5] - 1075:3, 1077:4, 1077:8, 1077:21, 1079:17
**process** [1] - 1068:1
**produce** [1] - 1049:20
**produced** [1] - 1037:15
**produces** [1] - 1049:17
**professional** [1] - 1085:16
**professionalism** [1] - 1086:9
**professor** [1] - 1039:2
**proof** [9] - 1048:25, 1049:2, 1049:3, 1049:6, 1049:10, 1049:16, 1050:7, 1050:11, 1050:12
**proper** [1] - 1069:7
**protection** [1] - 1051:18
**proud** [1] - 1050:20
**prove** [3] - 1049:9, 1049:13, 1061:11
**proved** [1] - 1047:17
**proven** [3] - 1047:6, 1062:4, 1063:18
**proves** [1] - 1055:15
**provides** [2] - 1051:11, 1060:10
**publicly** [1] - 1084:24
**punishment** [2] - 1063:11, 1065:1
**punitive** [21] - 1062:25, 1063:2, 1063:3, 1063:6, 1063:7, 1063:8, 1063:11, 1063:14, 1063:17, 1063:20, 1064:5, 1064:12, 1064:15, 1064:16, 1064:18, 1064:21, 1065:4, 1065:5, 1071:16, 1071:19
**put** [4] - 1043:24, 1062:20, 1067:12, 1077:2

## Q

**qualified** [6] - 1051:12, 1053:5, 1054:7, 1054:16, 1071:3, 1071:7
**qualifies** [1] - 1052:9
**qualify** [1] - 1052:19
**quality** [1] - 1050:4
**questions** [12] - 1040:13, 1043:14, 1051:2, 1066:19, 1066:21, 1067:16, 1067:19, 1069:15, 1070:3, 1071:4, 1071:11, 1072:12, 1083:16, 1084:22, 1085:14
**quick** [1] - 1038:6
**quickly** [1] - 1038:7

## R

**raincoat** [2] - 1046:12, 1046:14
**raining** [4] - 1046:11, 1046:15, 1046:19, 1046:21
**raise** [1] - 1074:14
**rather** [1] - 1063:10
**RDR** [1] - 1037:11
**re** [1] - 1048:10

**re-cross** [1] - 1048:10
**reach** [5] - 1044:8, 1056:16, 1068:13, 1069:14, 1069:25
**reached** [4] - 1069:17, 1069:19, 1082:19, 1083:1
**reaching** [1] - 1068:24
**read** [3] - 1066:24, 1067:8, 1067:10
**readback** [1] - 1068:10
**readbacks** [3] - 1066:19, 1067:2, 1067:6
**real** [2] - 1041:8, 1041:11
**really** [7] - 1039:15, 1041:4, 1046:9, 1046:22, 1050:20, 1082:9
**reason** [9] - 1038:4, 1046:24, 1053:23, 1055:9, 1056:1, 1060:5, 1065:7, 1076:23
**reasonable** [10] - 1041:18, 1047:6, 1049:3, 1049:5, 1058:8, 1058:19, 1060:11, 1060:18, 1061:1, 1064:14
**reasonably** [3] - 1044:23, 1058:15, 1060:21
**reasons** [1] - 1060:4
**receive** [1] - 1052:11
**received** [4] - 1045:2, 1057:19, 1076:4, 1079:3
**recess** [2] - 1075:3, 1077:21
**reckless** [4] - 1063:22, 1063:23, 1064:1, 1065:5
**recklessly** [1] - 1064:25
**recollection** [4] - 1042:7, 1042:8, 1042:9, 1068:8
**recommend** [1] - 1085:1
**reconsider** [1] - 1069:9
**record** [7] - 1073:1, 1074:22, 1076:6, 1076:15, 1077:15, 1082:11, 1082:12
**recorded** [1] - 1037:14
**recover** [2] - 1058:24, 1060:10
**recovery** [1] - 1062:15
**redirect** [1] - 1048:10
**reduce** [3] - 1060:11, 1060:15, 1060:21
**reduced** [1] - 1052:6
**reduction** [8] - 1052:8, 1052:14, 1055:19, 1055:22, 1056:2, 1056:7, 1064:12, 1071:25
**reemployment** [1] - 1059:19
**refer** [4] - 1051:7, 1060:4, 1070:23, 1071:8
**references** [1] - 1042:10
**referring** [4] - 1080:13, 1080:21, 1081:4, 1081:5
**reflect** [1] - 1077:15
**regard** [1] - 1051:13, 1069:7
**regardless** [3] - 1044:9, 1050:23, 1054:7
**relationship** [1] - 1064:14
**relatively** [1] - 1051:3
**rely** [1] - 1070:7
**remained** [1] - 1059:21
**remarks** [1] - 1041:13
**remember** [4] - 1041:20, 1065:24, 1069:23, 1070:5
**reminder** [1] - 1065:19
**remote** [2] - 1052:6, 1058:1
**removed** [1] - 1046:6
**render** [1] - 1070:11

**rendered** [1] - 1084:25
**rendering** [1] - 1043:18
**rented** [1] - 1062:2
**repeat** [1] - 1049:11
**repetitious** [2] - 1042:12
**report** [1] - 1048:14
**Reporter** [2] - 1037:11, 1037:12
**request** [1] - 1067:7
**requested** [2] - 1052:14, 1057:25
**requesting** [1] - 1079:4
**require** [1] - 1053:3, 1070:21
**required** [6] - 1049:6, 1051:22, 1052:25, 1061:2, 1062:15, 1063:1
**requires** [3] - 1039:15, 1050:24, 1054:25, 1078:24
**requiring** [6] - 1052:3, 1053:16, 1057:6, 1071:13, 1071:18, 1083:5
**resolve** [1] - 1041:16
**respect** [7] - 1042:6, 1048:5, 1052:18, 1055:18, 1056:21, 1057:2, 1057:18
**responsibilities** [3] - 1048:24, 1052:13, 1084:20
**responsibility** [2] - 1047:24, 1065:20
**responsible** [1] - 1066:4
**result** [2] - 1059:8, 1059:12
**rights** [3] - 1051:5, 1063:22, 1063:24
**rise** [6] - 1038:17, 1077:19, 1080:7, 1082:5, 1082:13, 1086:5
**room** [8] - 1045:11, 1067:22, 1068:15, 1068:20, 1069:20, 1074:6, 1081:17, 1081:21
**run** [1] - 1085:11

## S

**sacrifice** [1] - 1085:7
**sad** [1] - 1065:15
**salary** [1] - 1061:25
**satisfied** [3] - 1049:19, 1049:24, 1077:6
**SAUL** [1] - 1037:2
**scales** [1] - 1049:14
**SCHOENECK** [1] - 1037:7
**school** [1] - 1039:2
**screen** [1] - 1077:1
**scrutinize** [1] - 1048:2
**seated** [5] - 1038:19, 1076:12, 1082:7, 1082:17, 1083:18
**second** [9] - 1040:5, 1060:5, 1065:9, 1072:14, 1078:16, 1078:18, 1078:24, 1080:12, 1080:18
**security** [2] - 1061:8, 1085:14
**see** [11] - 1040:9, 1041:23, 1042:21, 1045:9, 1046:3, 1068:1, 1074:12, 1074:17, 1076:13, 1078:17, 1081:20
**seek** [4] - 1060:19, 1060:24, 1061:2, 1061:13
**seeking** [1] - 1060:12
**seem** [2] - 1048:7, 1082:8
**select** [1] - 1066:12
**selection** [1] - 1040:7
**self** [1] - 1059:24
**self-employment** [1] - 1059:24
**send** [2] - 1069:18, 1069:25
**SENIOR** [1] - 1036:12

**sense** [5] - 1046:25, 1048:6, 1056:4, 1058:17, 1063:25
**senses** [1] - 1046:4
**sent** [1] - 1077:17
**sentence** [3] - 1078:5, 1078:23, 1080:12
**September** [2] - 1036:7, 1062:20
**serious** [2] - 1055:3, 1055:5
**service** [2] - 1084:24, 1085:5
**set** [2] - 1047:19, 1085:20
**settle** [1] - 1085:20
**seven** [1] - 1079:4
**seventh** [1] - 1042:17
**several** [1] - 1050:22
**shall** [1] - 1051:11
**SHAWN** [2] - 1036:14, 1036:17
**Shearer** [1] - 1073:4
**SHEARER** [9] - 1036:14, 1036:17, 1038:6, 1038:8, 1038:12, 1038:15, 1073:9, 1075:2, 1086:12
**sheet** [8] - 1066:25, 1069:16, 1070:2, 1070:13, 1070:16, 1070:25, 1076:17, 1084:16
**shifts** [1] - 1050:7
**shining** [1] - 1046:10
**shock** [1] - 1057:23
**short** [1] - 1051:3
**shortly** [1] - 1065:12
**show** [2] - 1039:25, 1048:4
**showing** [1] - 1086:2
**shown** [1] - 1052:24
**shy** [1] - 1066:15
**side** [1] - 1050:3
**Sidebar** [2] - 1073:1, 1073:15
**sign** [4] - 1066:22, 1067:15, 1070:17, 1084:16
**signed** [4] - 1068:3, 1069:18
**significant** [2] - 1052:13, 1052:17
**signing** [1] - 1066:4
**simple** [4] - 1040:13, 1047:2, 1080:2, 1082:9
**simply** [4] - 1056:3, 1063:15, 1069:12, 1069:18
**sit** [1] - 1050:22
**sitting** [3] - 1066:10, 1068:1, 1069:20
**situation** [1] - 1050:8
**situations** [1] - 1050:14
**size** [1] - 1044:19
**skip** [1] - 1071:9
**small** [1] - 1044:13
**sneak** [1] - 1072:15
**so-and-so** [1] - 1045:12
**sole** [1] - 1041:15, 1047:24
**solely** [4] - 1042:20, 1044:22, 1065:24, 1070:12
**someone** [2] - 1048:14, 1053:16
**sometimes** [6] - 1044:17, 1058:11, 1074:3, 1082:8, 1085:13, 1085:16
**soon** [2] - 1065:12, 1077:13
**sort** [2] - 1038:22, 1046:6
**sought** [1] - 1060:23
**sound** [3] - 1039:7, 1058:18, 1065:7
**souvenirs** [1] - 1070:18
**specialized** [1] - 1054:2
**specific** [1] - 1068:9

**specifically** [1] - 1061:21
**speculate** [3] - 1040:18, 1042:3, 1066:20
**speculation** [8] - 1041:21, 1041:24, 1044:24, 1047:9, 1047:13, 1058:10, 1058:13, 1058:21
**spent** [1] - 1053:14
**split** [1] - 1067:17
**spokesperson** [1] - 1080:10
**spreadsheet** [1] - 1076:24
**squired** [1] - 1064:22
**stand** [5] - 1067:17, 1069:23, 1070:2, 1074:17, 1082:24
**standard** [2] - 1049:6, 1058:4
**standing** [2] - 1038:25, 1066:13
**start** [2] - 1068:18, 1074:11
**started** [1] - 1042:1
**starts** [2] - 1057:11, 1059:16
**state** [1] - 1049:8
**statement** [14] - 1048:17, 1078:7, 1078:9, 1078:12, 1078:15, 1079:7, 1080:13, 1080:23, 1081:11, 1081:18, 1081:22, 1081:23, 1081:24
**statements** [2] - 1042:9, 1045:16
**stating** [2] - 1042:22, 1069:25
**statute** [2] - 1051:10, 1051:17
**statutes** [1] - 1042:25
**stay** [1] - 1039:22
**stenography** [1] - 1037:14
**step** [1] - 1046:6
**STEVEN** [1] - 1036:3
**Steven** [2] - 1036:15, 1051:4
**still** [4] - 1046:10, 1046:14, 1046:18, 1052:10
**stop** [6] - 1041:4, 1043:21, 1067:4, 1068:20, 1077:14, 1079:11
**Street** [2] - 1036:20, 1037:4
**stricken** [1] - 1045:17
**strike** [1] - 1048:13
**subject** [1] - 1068:5
**submitted** [1] - 1061:24
**substantively** [1] - 1041:9
**subtract** [2] - 1057:19, 1059:22
**sued** [1] - 1051:4
**suffer** [1] - 1052:10, 1058:15
**suffered** [5] - 1054:15, 1057:23, 1058:14, 1059:8, 1059:12
**suffering** [1] - 1071:15
**sufficient** [1] - 1065:3
**suggest** [2] - 1043:8, 1065:16
**suggestions** [1] - 1039:14
**Suite** [1] - 1036:21
**summing** [1] - 1042:13
**sun** [2] - 1046:9, 1046:10
**sunny** [2] - 1046:15, 1046:19
**support** [1] - 1065:4
**supported** [1] - 1058:6
**surprised** [1] - 1044:17
**surrender** [2] - 1069:1, 1069:11
**suspect** [1] - 1048:8
**suspicious** [1] - 1046:16
**sustained** [1] - 1064:15
**sworn** [2] - 1045:1, 1074:15
**sympathetic** [3] - 1043:22, 1044:2, 1044:3

**sympathy** [5] - 1043:17, 1043:20, 1043:22, 1044:1, 1065:8
**system** [3] - 1043:3, 1085:2, 1085:7
**systems** [1] - 1052:7, 1058:1

---

## T

**technically** [4] - 1078:19, 1078:21, 1080:14, 1080:25
**Telephone** [1] - 1037:12
**television** [1] - 1047:1
**tends** [1] - 1048:4
**terminate** [4] - 1055:19, 1055:23, 1061:18, 1062:7
**terminated** [15] - 1052:1, 1055:12, 1055:14, 1055:17, 1057:13, 1058:23, 1058:25, 1059:4, 1059:6, 1059:11, 1059:17, 1061:22, 1079:20, 1080:20, 1081:7
**terminating** [3] - 1056:1, 1071:23, 1083:12
**termination** [10] - 1051:25, 1055:15, 1055:20, 1057:17, 1059:10, 1060:16, 1062:13, 1062:19, 1071:25, 1072:7
**terms** [3] - 1051:16, 1052:18, 1053:1
**terribly** [1] - 1040:11
**testified** [1] - 1048:3
**testifies** [1] - 1044:19
**testify** [1] - 1044:16
**testimony** [16] - 1040:10, 1040:21, 1042:10, 1045:1, 1045:16, 1048:1, 1048:2, 1048:9, 1048:10, 1048:11, 1048:20, 1050:19, 1054:19, 1057:17, 1059:15, 1068:8
**Texas** [1] - 1036:17
**the defendant** [7] - 1050:8, 1051:4, 1055:24, 1062:5, 1062:10, 1063:12, 1064:10
**therefore** [6] - 1042:6, 1052:17, 1054:8, 1055:15, 1055:20, 1056:19
**they've** [1] - 1077:17
**third** [6] - 1040:6, 1078:16, 1078:19, 1078:22, 1080:14, 1081:1
**three** [3] - 1040:2, 1053:14, 1054:2
**throughout** [2] - 1041:13, 1049:11
**tip** [1] - 1049:14
**today** [3] - 1039:23, 1046:7, 1062:20
**together** [2] - 1039:16, 1068:21
**took** [1] - 1085:23
**touching** [2] - 1067:23, 1068:5
**toward** [1] - 1068:24
**traditional** [1] - 1039:6
**training** [1] - 1051:15
**TRANSCRIPT** [1] - 1036:11
**Transcript** [1] - 1037:14
**Transcription** [1] - 1037:15
**transfer** [1] - 1052:15
**treat** [1] - 1044:20
**TRIAL** [1] - 1036:11
**trial** [8] - 1038:2, 1039:15, 1039:18, 1041:13, 1045:3, 1049:6, 1065:21, 1073:6
**trite** [1] - 1085:24
**true** [12] - 1049:18, 1049:19, 1049:22, 1049:23, 1056:7, 1070:11, 1080:5

**truly** [1] - 1070:10
**truth** [1] - 1069:2
**try** [3] - 1045:14, 1070:10, 1085:19
**trying** [2] - 1048:14, 1079:6
**Tuesday** [1] - 1036:7
**turn** [1] - 1039:18
**twice** [2] - 1042:10, 1045:17
**Two** [1] - 1053:25
**two** [10] - 1039:16, 1045:19, 1050:8, 1053:13, 1054:13, 1060:4, 1070:18, 1071:9, 1073:10, 1081:20
**type** [6] - 1051:18, 1059:14, 1061:6, 1067:2, 1085:15, 1085:18
**types** [1] - 1045:19

---

## U

**U.S** [2] - 1074:15, 1074:16
**umbrella** [1] - 1046:17
**unable** [1] - 1055:3
**unanimous** [2] - 1069:14, 1083:1
**under** [23] - 1048:2, 1051:5, 1051:7, 1051:20, 1054:13, 1058:23, 1059:2, 1059:6, 1059:10, 1059:14, 1062:25, 1063:5, 1070:21, 1071:6, 1071:23, 1078:6, 1078:18, 1078:23, 1079:22, 1080:12, 1080:18, 1083:5, 1083:12
**understood** [1] - 1062:16
**unfold** [1] - 1039:17
**United States** [3] - 1036:1, 1036:5, 1036:12
**unlawful** [1] - 1055:15
**unlawfully** [1] - 1054:9
**unless** [2] - 1055:9, 1055:15
**unlike** [1] - 1049:2
**unpaid** [2] - 1055:1, 1078:25
**unreasonable** [1] - 1056:5
**unusual** [1] - 1045:4
**up** [12] - 1039:6, 1039:13, 1042:13, 1044:19, 1048:20, 1055:1, 1064:19, 1066:13, 1068:14, 1077:2, 1077:3, 1078:25, 1085:6, 1086:2
**useful** [1] - 1041:7

---

## V

**valuable** [1] - 1085:6
**value** [1] - 1058:2
**VERDICT** [1] - 1087:12
**verdict** [34] - 1043:18, 1056:20, 1063:8, 1065:17, 1065:24, 1066:14, 1066:16, 1068:25, 1069:13, 1069:16, 1069:18, 1069:19, 1069:21, 1069:25, 1070:1, 1070:2, 1070:11, 1070:13, 1070:16, 1070:25, 1072:3, 1076:17, 1082:20, 1082:25, 1083:2, 1083:20, 1083:23, 1084:1, 1084:4, 1084:7, 1084:10, 1084:13, 1084:16, 1085:25
**Verdict.........................................** [1] - 1087:13
**verdicts** [1] - 1044:8
**view** [2] - 1056:19, 1068:24
**violate** [1] - 1065:3
**violated** [1] - 1057:5

(violating - ZEITLIN)

**violating** [2] - 1051:5, 1068:25
**violation** [3] - 1056:3, 1057:8, 1063:3
**visualize** [1] - 1049:14
**vote** [1] - 1066:6

## W

**wages** [5] - 1057:10, 1058:25, 1059:2, 1059:13, 1062:9
**wait** [2] - 1068:20, 1082:3
**walking** [1] - 1046:13
**walks** [2] - 1046:11, 1046:16
**wants** [1] - 1079:9
**ward** [1] - 1056:12
**warranted** [1] - 1041:18
**Washington** [1] - 1085:1
**water** [1] - 1046:3
**weather** [1] - 1046:8
**week** [1] - 1085:6
**weeks** [4] - 1055:1, 1055:7, 1078:25, 1079:19
**weigh** [1] - 1049:22
**weight** [7] - 1041:16, 1048:1, 1050:1, 1050:5, 1066:7, 1069:2, 1069:12
**wet** [1] - 1046:17
**wheel** [1] - 1066:10
**whisper** [1] - 1081:20
**whole** [3] - 1042:23, 1048:18, 1049:17
**willing** [1] - 1085:7
**wisdom** [2] - 1040:19, 1056:6
**wish** [1] - 1044:1
**witness** [13] - 1044:18, 1048:3, 1048:4, 1048:6, 1048:7, 1048:11, 1048:12, 1048:13, 1048:15, 1048:16, 1048:17
**witness's** [3] - 1048:9, 1048:10, 1048:19
**witnesses** [7] - 1043:15, 1045:2, 1047:12, 1047:25, 1048:21, 1048:22, 1050:2
**wondered** [1] - 1042:10
**word** [1] - 1041:4
**words** [2] - 1040:19, 1056:6
**work;** [1] - 1061:6
**works** [1] - 1045:10
**world** [1] - 1085:8
**worried** [1] - 1085:14
**worthy** [2] - 1048:4, 1048:20
**wrap** [1] - 1068:14
**wrap-up** [1] - 1068:14
**write** [6] - 1066:21, 1066:24, 1078:8, 1080:24, 1081:23, 1081:25
**writing** [3] - 1041:3, 1068:3, 1068:6
**written** [5] - 1041:4, 1041:10, 1053:13, 1065:10, 1081:22
**wrongdoing** [3] - 1063:25, 1064:8, 1064:9
**wrongful** [2] - 1057:24, 1063:12
**wrongfully** [4] - 1058:23, 1059:6, 1059:11, 1063:15

## Y

**year** [4] - 1046:9, 1055:2, 1079:1, 1079:23
**years** [1] - 1039:6
**yellow** [2] - 1066:21, 1067:12
**YORK** [1] - 1036:1
**York** [4] - 1036:5, 1036:21, 1037:9
**yourself** [1] - 1069:4
**yourselves** [2] - 1066:12, 1068:17

## Z

**ZEITLIN** [11] - 1036:19, 1036:22, 1075:1, 1078:11, 1078:14, 1078:19, 1078:21, 1079:2, 1079:9, 1079:13